**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CENTER FOR TAXPAYER RIGHTS, *et al.*,

              *Plaintiffs*,

      v.

INTERNAL REVENUE SERVICE, *et al.*,

              *Defendants*.

Case No. 1:25-cv-00457-CKK

**MEMORANDUM OF LAW AND POINTS OF AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

BACKGROUND ...................................................................................................... 2

I.      The United States DOGE Service Executive Order ...................................... 2

II.     Plaintiffs' Complaint ...................................................................................... 3

LEGAL STANDARD .............................................................................................. 5

ARGUMENT ........................................................................................................... 7

I.      Plaintiffs Lack Standing................................................................................. 7

        A.      Plaintiffs Lack Associational Standing. ............................................. 8

                1.      Plaintiffs Have Not Pled That Any of Their Members Have Article III
                        Standing. ............................................................................... 8

                2.      The Participation of Plaintiffs' Members in This Lawsuit Is Necessary
                        as to Their Privacy Act Claim ............................................... 13

        B.      Plaintiffs Lack Organizational Standing. ......................................... 14

II.     Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted. .............. 16

        A.      Plaintiffs Fail to Establish Reviewable Final Agency Action (Counts I–III) ....... 16

        B.      Plaintiffs Cannot Assert Violations of the Internal Revenue Code or the Privacy
                Act on Behalf of Their Members Through the APA (Counts I and III). .............. 19

        C.      Plaintiffs Cannot Prevail on Their FISMA Claim (Count II). ............................. 22

        D.      Plaintiffs Have Not Sufficiently Pleaded the Existence of a Privacy Act
                "Matching Program" (Counts III and IV). ............................................. 24

        E.      Plaintiffs' Freestanding Privacy Act Claim Should Be Dismissed (Count IV). .... 26

        F.      Plaintiffs Fail to Plead the Exceedingly High Bounds of Ultra Vires Review
                (Count V). ............................................................................... 26

CONCLUSION........................................................................................................ 27

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Agbanc Ltd. v. Berry*,
   678 F. Supp. 804 (D. Ariz. 1988) ........................................................................ 21

*Air Brake Sys., Inc. v. Mineta*,
   357 F.3d 632 (6th Cir. 2004) ............................................................................. 18

*Air Transp. Ass'n of Am. v. Reno*,
   80 F.3d 477 (D.C. Cir. 1996) ............................................................................. 14

*Alliance for Retired Americans v. Bessent*,
   --- F. Supp. 3d ----, 2025 WL 740401 (D.D.C. Mar. 7, 2025).................................... 10, 12, 13

*Al-Zahrani v. Rodriguez*,
   669 F.3d 315 (D.C. Cir. 2012) ............................................................................. 5

*Am. Fed'n of Gov't Emps. v. Hawley*,
   543 F. Supp. 2d 44 (D.D.C. 2008) ....................................................................... 14

*Am. Fed'n of Labor & Congress of Indus. Orgs. v. Dep't of Labor*,
   --- F. Supp. 3d ----, 2025 WL 1129227 (D.D.C. Apr. 16, 2025) ...................................... *passim*

*Am. Fed'n of Tchrs. v. Bessent*,
   No. 25-1282, 2025 WL 1023638 (4th Cir. Apr. 7, 2025) ................................................ *passim*

*Am. Legal Found. v. FCC*,
   808 F.2d 84 (D.C. Cir. 1987) ............................................................................. 15

*Am. Nat'l Ins. v. FDIC*,
   642 F.3d 1137 (D.C. Cir. 2011) ............................................................................. 5

*Arabzada v. Donis*,
   725 F. Supp. 3d 1 (D.D.C. 2024) ........................................................................ 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................... 6, 25

*Ass'n of Flight Attendants—CWA, AFL-CIO v. U.S. Dep't of Transp.*,
   564 F.3d 462 (D.C. Cir. 2009) ............................................................................. 8

*Attias v. CareFirst, Inc.*,
   344 F.R.D. 38 (D.D.C. 2023)............................................................................. 12

*Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
    502 U.S. 32 (1991).................................................................................................... 27

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................. 6, 25

*Bennett v. Spear*,
    520 U.S. 154 (1997)........................................................................................... 16, 17

*Block v. Cmty. Nutrition Inst.*,
    467 U.S. 340 (1984).................................................................................................... 19

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988).................................................................................................... 19

*California Cmtys. Against Toxics v. EPA*,
    934 F.3d 627 (D.C. Cir. 2019).................................................................................. 18

*Cell Assocs., Inc. v. Nat'l Insts. of Health*,
    579 F.2d 1155 (9th Cir. 1978) .................................................................................. 22

*Chung v. U.S. Dep't of Just.*,
    333 F.3d 273 (D.C. Cir. 2003).................................................................................. 19

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)........................................................................................... 8, 9, 15

*Cobell v. Kempthorne*,
    455 F.3d 301 (D.C. Cir. 2006).................................................................................. 22

*Comm. in Solidarity with People of El Salvador v. Sessions*,
    738 F. Supp. 544 (D.D.C. 1990), *aff'd*, 929 F.2d 742 (D.C. Cir. 1991)............................ 14, 26

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006).................................................................................................... 5

*Dew v. United States*,
    192 F.3d 366 (2d Cir. 1999)...................................................................................... 19

*Dickson v. Direct Energy, LP*,
    69 F.4th 338 (6th Cir. 2023) ................................................................................. 11, 12

*Doe v. OPM*,
    25-cv-234 (RDM), 2025 WL 513268 (D.D.C. Feb. 17, 2025) ........................... 9, 11

*Doe v. Stephens,*
   851 F.2d 1457 (D.C. Cir. 1988) ............................................................................ 22

*Drake v. FAA,*
   291 F.3d 59 (D.C. Cir. 2002) ................................................................................ 24

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.,*
   928 F.3d 95 (D.C. Cir. 2019) .................................................................................. 8

*FDA v. All. for Hippocratic Med.,*
   602 U.S. 367 (2024) .................................................................................. 8, 15, 16

*Fed. Aviation Admin. v. Cooper,*
   566 U.S. 284 (2012) ......................................................................................... 21, 26

*Food & Water Watch, Inc. v. Vilsack,*
   808 F.3d 905 (D.C. Cir. 2015) .......................................................................... 6, 15

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.,*
   460 F.3d 13 (D.C. Cir. 2006) ............................................................................... 16

*Gadelhak v. AT&T Services, Inc.,*
   950 F.3d 458 (7th Cir. 2020) ............................................................................... 11

*Griffith v. Fed. Labor Rels. Auth.,*
   842 F.2d 487 (D.C. Cir. 1988) ............................................................................. 26

*Hecate Energy LLC v. FERC,*
   126 F.4th 660 (D.C. Cir. 2025) .............................................................................. 7

*Henkell v. United States,*
   No. 96-2228, 1998 WL 41565 (E.D. Cal. Jan. 9, 1998) ...................................... 20

*Hill v. U.S. Dep't of the Interior,*
   699 F. Supp. 3d 1 (D.D.C. 2023) ........................................................................ 16

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.,*
   48 F.4th 1236 (11th Cir. 2022) ........................................................................... 18

*In re Dep't of Veterans Affs. Data Theft Litig.,*
   No. 06-0506, 2007 WL 7621261 (D.D.C. Nov. 16, 2007) .................................. 14

*In re OPM Data Sec. Breach Litig.,*
   928 F.3d 42 (D.C. Cir. 2019) ............................................................................... 10

*Indus. Energy Consumers of Am. v. FERC*,
    125 F.4th 1156 (D.C. Cir. 2025)................................................................ 9

*Jeffries v. Volume Servs. Am., Inc.*,
    928 F.3d 1059 (D.C. Cir. 2019)............................................................... 13

*Jenkins v. Howard Univ.*,
    123 F.4th 1343 (D.C. Cir. 2024)................................................................ 5

*Jones v. U.S. Dep't of Hous. & Urban Dev.*,
    No. 11 CV 0846, 2012 WL 1940845 (E.D.N.Y. May 29, 2012)............................. 20

*Jones v. U.S. Secret Serv.*,
    701 F. Supp. 3d 4 (D.D.C. 2023), *appeal filed*, No. 23-5288 (D.C. Cir. Dec. 7, 2023). ......... 16

*Leopold v. Manger*,
    630 F. Supp. 3d 71 (D.D.C. 2022) ............................................................. 5

*Lepre v. Dep't of Labor*,
    275 F.3d 59 (D.C. Cir. 2001) ................................................................. 27

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................ 7, 9

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990)....................................................................... 16, 17

*Lupia v. Medicredit, Inc.*,
    8 F.4th 1184 (10th Cir. 2021) ............................................................... 12

*Marshall v. Honeywell Tech. Sols. Inc.*,
    536 F. Supp. 2d 59 (D.D.C. 2008) ............................................................ 7

*Meijer, Inc. v. Biovail Corp.*,
    533 F.3d 857 ............................................................................... 7

*Micei Int'l v. Dep't of Com.*,
    613 F.3d 1147 (D.C. Cir. 2010) ............................................................... 5

*Murthy v. Missouri*,
    603 U.S. 43 (2024).......................................................................... 7

*Nat'l Ass'n of Home Builders v. EPA*,
    667 F.3d 6 (D.C. Cir. 2011) ............................................................. 14, 15

*Nat'l Taxpayers Union, Inc. v. United States*,
  68 F.3d 1428 (D.C. Cir. 1995) ........................................................................ 14, 15

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) ................................................................................................. 16

*Nyunt v. Chairman, Broad. Bd. of Governors*,
  589 F.3d 445 (D.C. Cir. 2009) ........................................................................ 26, 27

*Oryszak v. Sullivan*,
  576 F.3d 522 (D.C. Cir. 2009) ................................................................................ 24

*Parks v. IRS*,
  618 F.2d 677 (10th Cir. 1980) ................................................................................ 22

*PETA v. U.S. Dep't of Agric.*,
  797 F.3d 1087 (D.C. Cir. 2015) .............................................................................. 15

*Pileggi v. Wash. Newspaper Publ'g Co.*,
  No. 23-cv-345, 2024 WL 324121 (D.D.C. Jan. 28, 2024) .................................... 12

*Pub. Emps. for Env't Resp. v. EPA*,
  926 F. Supp. 2d 48 (D.D.C. 2013) .......................................................................... 26

*Randolph v. ING Life Ins. & Annuity Co.*,
  973 A.2d 702 (D.C. 2009) ....................................................................................... 12

*Rimmer v. Holder*,
  700 F.3d 246 (6th Cir. 2012) .................................................................................. 20

*SAE Prods., Inc. v. FBI*,
  589 F. Supp. 2d 76 (D.D.C. 2008) ..................................................................... 14, 26

*Schroer v. Billington*,
  525 F. Supp. 2d 58 (D.D.C. 2007) .......................................................................... 26

*Sec'y of Labor v. Twentymile Coal Co.*,
  456 F.3d 151 (D.C. Cir. 2006) ................................................................................ 24

*Sierra Club v. EPA*,
  955 F.3d 56 (D.C. Cir. 2020) .................................................................................. 18

*Sierra Club v. Jackson*,
  648 F.3d 848 (D.C. Cir. 2011) ................................................................................ 24

*Six v. IQ Data Int'l, Inc.*,
    129 F.4th 630 (9th Cir. 2025) ........................................................................... 12

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .......................................................................................... 9

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007) ...................................................................... 21

*Thomas v. Principi*,
    394 F.3d 970 (D.C. Cir. 2005) .......................................................................... 5

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ................................................................................. *passim*

*Travelers United, Inc. v. Hyatt Hotels Corp.*,
    No. 23-cv-2776, 2025 WL 27162 (D.D.C. Jan. 3, 2025) ................................ 14

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
    578 U.S. 590 (2016) ........................................................................................ 17

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
    517 U.S. 544 (1996) ........................................................................................ 13

*Vanover v. Hantman*,
    77 F. Supp. 2d 91 (D.D.C. 1999) ...................................................................... 7

*Venetian Casino Resort, LLC v. EEOC*,
    530 F.3d 925 (D.C. Cir. 2008) ........................................................................ 18

*Warth v. Seldin*,
    422 U.S. 490 (1975) .......................................................................................... 7

*Wilson v. Libby*,
    535 F.3d 697 (D.C. Cir. 2008) ........................................................................ 19

*Wolf v. Regardie*,
    553 A.3d 1213 (D.C. 1989) ............................................................................ 13

**Statutes**

5 U.S.C. § 551 ....................................................................................................... 16

5 U.S.C. § 552a .............................................................................................. *passim*

5 U.S.C. § 701 ....................................................................................................... 23

5 U.S.C. § 704 ................................................................................ 16, 17, 19

26 U.S.C. § 6103 ................................................................................... 3, 20

26 U.S.C. § 7431 ...................................................................................... 20

40 U.S.C. § 11303 ..................................................................................... 23

44 U.S.C. § 3551 ................................................................................. 22, 23

44 U.S.C. § 3553 ...................................................................................... 23

44 U.S.C. § 3554 ...................................................................................... 23

Computer Matching and Privacy Protection Act of 1988,
    Pub. L. No. 100-503 ............................................................................ 24

**Rules**

Federal Rule of Civil Procedure 12(b) ...................................................... 5, 6

**Administrative and Executive Materials**

Executive Order 14,158,
    90 Fed. Reg. 8441 (2025) ............................................................... *passim*

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller,
    Federal Practice and Procedure § 1357 (3d ed.) ........................................... 7

## INTRODUCTION

Plaintiffs' complaint seeks to interfere with the day-to-day operations of the Internal Revenue Service ("IRS") by preventing it from granting access to data systems it maintains to specific employees because of Plaintiffs' disagreement with the policy objective those employees are tasked with implementing. Because the complaint fails to set out claims that can be properly adjudicated in this Court and fails to show those claims are legally viable even if the Court had jurisdiction, the Court should dismiss the complaint in full under Federal Rule of Civil Procedure 12(b).

At the outset, Plaintiffs fail to properly allege standing because harms arising from the mere provision of access to government employees are not the kind of injury that Article III contemplates being addressed in litigation, as the majority of a Fourth Circuit panel recently concluded in a similar challenge to access to agency data systems. *See Am. Fed'n of Tchrs. v. Bessent*, No. 25-1282, 2025 WL 1023638 (4th Cir. Apr. 7, 2025) ("*AFT*"). Plaintiffs allege no tangible harm, nor could they, and their vague assertions of intangible harm arising from the mere provision of access have no common-law analogue that would satisfy the Supreme Court's injury-in-fact test for standing.

Turning to the merits, Plaintiffs fail to allege proper claims under the Administrative Procedure Act ("APA"). The complaint fails to allege the necessary "final agency action" for purposes of initiating APA review, for the provision of access is neither the sort of action the APA contemplates challenging, nor does it generate, on its own, the sort of consequences characteristic of a final agency action. Plaintiffs also cannot use the APA to assert claims that would not be legally viable under the Internal Revenue Code or the Privacy Act—statutes that provide precisely defined remedial schemes that do not encompass the sort of broad, programmatic injunctive relief on behalf

of organizations that Plaintiffs seek. And Plaintiffs cannot maintain a claim that Defendants' access

decisions violated the Federal Information Security and Modernization Act of 2014 ("FISMA"),

44 U.S.C. § 3551–58, not least because claims brought under that statute are nonjusticiable.

Finally, Plaintiffs cannot salvage the fundamental flaws in their claims by bringing a freestanding

ultra vires claim, as they do not fit into the narrow review window that theory leaves available to

litigants.

Based on the foregoing, Defendants respectfully request that the Court grant the instant

motion and dismiss Plaintiffs' complaint under either Rule 12(b)(1) for lack of jurisdiction, or Rule

12(b)(6) for failure to state a claim upon which relief can be granted.

## BACKGROUND

### I.    The United States DOGE Service Executive Order

On January 20, 2025, President Trump signed Executive Order 14,158, which redesignated

the previously established United States Digital Service as the U.S. DOGE Service ("USDS") and

charged it with implementing the President's agenda of "improv[ing] the quality and efficiency of

government-wide software, network infrastructure, and information technology (IT) systems." 90

Fed. Reg. 8441, §§ 3(a), 4 ("the EO"). The EO also established a "U.S. DOGE Service Temporary

Organization" pursuant to 5 U.S.C. § 3161, which will terminate on July 4, 2026. *Id.* § 3(b). Both

USDS and the Temporary Organization sit within the Executive Office of the President and are

headed by the USDS Administrator, who reports to the White House Chief of Staff. *Id.*

Agency heads across the Executive Branch are required under the EO to establish within

their respective agencies a DOGE Team of at least four employees, which may include Special

Government Employees. *Id.* § 3(c). Agency heads are instructed to select the DOGE Team

members in consultation with USDS and to ensure that "DOGE Team Leads coordinate their work

2

with USDS and advise their respective Agency Heads on implementing the President's DOGE Agenda." *Id.*

The EO also directs USDS to collaborate with Executive agencies to modernize the technology and software infrastructure of the federal government to increase efficiency and productivity and ensure data integrity. *Id.* § 4. To accomplish these objectives, the EO directs USDS to work with relevant agency heads, and vice versa, to ensure that USDS has access to "unclassified agency records, software systems, and IT systems" to the "extent consistent with law." *Id.* § 4(b). At all times, the EO instructs, USDS must "adhere to rigorous data protection standards." *Id.*

## II.    Plaintiffs' Complaint

Plaintiffs are the Center for Taxpayer Rights (the "Center"), a 501(c)(3) organization focused on taxpayer rights; the Main Street Alliance, a "nationwide network of small businesses with members across the country"; and two labor unions, the National Federation of Federal Employees, IAM AFL-CIO and Communications Workers of America, AFL-CIO. Compl. ¶¶ 25–41. They filed suit against the IRS, the U.S. Department of the Treasury, USDS, and the USDS Temporary Organization on February 17, 2025.  Their Complaint includes five causes of action, all of which challenge access allegedly granted to IRS data systems to what Plaintiffs refer to as "DOGE."

Counts I through III are all brought under the APA. In Count I, Plaintiffs allege that Defendants acted contrary to the Internal Revenue Code requirements at 26 U.S.C. § 6103 and 26 U.S.C. § 7213A, and arbitrarily and capriciously, by "unlawfully permitt[ing] DOGE Defendants to access and inspect return information," which Plaintiffs contend "does not comport with historical or existing IRS practice or policies." *Id*. ¶¶ 134–39. In Count II, Plaintiffs claim that

3

Defendants "fail[ed] to maintain and comply with [] security protections" required by FISMA. *Id.* ¶¶ 140–43. Count III alleges a violation of the Privacy Act's restrictions on the disclosure of personal records contained in systems of records and asserts that the IRS has "wrongfully used such data for computer matching without an adequate written agreement in violation of" 5 U.S.C. § 552a(o). Compl. ¶¶ 144–47. Count IV is a standalone (*i.e.*, non-APA) Privacy Act claim for damages. *Id.* ¶¶ 148–50. And, finally, in Count V, leveled at USDS and the USDS Temporary Organization, alleges those entities have "engaged . . . in *ultra vires* actions" in "directing and controlling the use and administration of Defendant IRS' systems[.]" Compl. ¶¶ 151–55.

Plaintiffs allege purported injuries arising from the ability of DOGE team members to access IRS systems. *Id.* ¶¶ 121–33. First, the Center alleges that IRS's access decisions will "harm the Center's ability to encourage trust in the taxpayer process," and the Center contends it will need to "dedicate more resources to facilitat[e] trust in the taxpayer system and to reach low-income or other vulnerable taxpayers." *Id.* ¶¶ 122–24. The Main Street Alliance, for its part, claims some unspecified harm on behalf of its small business members. *Id.* ¶ 127–29 ("Supporting small businesses as they seek to succeed financially is a key part of MSA's mission, and its members' interests will be harmed if DOGE has wide-ranging access to its members' sensitive financial information contained in IRS tax return information databases[.]"). The two labor organization Plaintiffs—the National Federation of Federal Employees and the Communications Workers of America—similarly allege harm to their members "by DOGE's broad access to its members' sensitive financial information" but do not specify what harm will result. *Id.* ¶¶ 130–33.

Based on these allegations, Plaintiffs seek a broad declaratory judgment that "DOGE Defendants' access to, inspection, or disclosure of personal or other protected information" is unlawful. *Id.*, Requested Relief ¶¶ 2–3. Plaintiffs seek an injunction preventing any "access,

inspection, and disclosure of return information and other personal information in the IRS system to members of DOGE," *id.*, Requested Relief ¶ 1, and requiring IRS to "revoke access" by "DOGE Defendants" and "disgorge or delete all unlawfully obtained, disclosed, or accessed return information and other personally identifiable information from systems or devices on which they were not present on January 19, 2025," *id.*, Requested Relief ¶¶ 5, 8. Plaintiffs seek further injunctive relief requiring removal of any software DOGE Defendants have installed and requiring Defendants to follow preexisting laws regarding disclosure of information and security protections. *Id.*, Requested Relief ¶¶ 3, 9–10.

## LEGAL STANDARD

Federal courts are courts of "limited subject-matter jurisdiction" and have the power "to decide only those cases over which Congress grants jurisdiction." *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012) (citing *Micei Int'l v. Dep't of Com.*, 613 F.3d 1147, 1151 (D.C. Cir. 2010)). "Absent subject-matter jurisdiction over a case, the court must dismiss it." *Leopold v. Manger*, 630 F. Supp. 3d 71, 76 (D.D.C. 2022).

To survive a Rule 12(b)(1) motion, the party asserting subject matter jurisdiction bears "the burden of establishing it." *Jenkins v. Howard Univ.*, 123 F.4th 1343, 1347 (D.C. Cir. 2024) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). In considering assertions of subject matter jurisdiction, courts "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). At the same time, however, courts "need not accept inferences drawn by a plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept a plaintiff's legal

conclusions." *Arabzada v. Donis*, 725 F. Supp. 3d 1, 9 (D.D.C. 2024) (citing *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)).

Defendants also move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for Plaintiffs' failure to state a claim upon which relief can be granted. To withstand a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under *Iqbal* and *Twombly*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Plausibility" represents something less than "probability," but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation omitted). If the well-pleaded facts of a complaint do not suggest more than the mere possibility of a violation, the complaint has failed to show that the plaintiff is entitled to relief and cannot survive application of Rule 12(b)(6). *See id.* Likewise, a complaint cannot substitute conclusions of law and other conclusory assertions for well-pleaded allegations of fact and hope to withstand a motion to dismiss. Conclusions of law are not to be accepted as true. *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), courts may consider not only the well-pleaded allegations of the complaint, but also materials "incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary

judgment." *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 867 n.* (D.C. Cir. 2008) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed.)); *see also Marshall v. Honeywell Tech. Sols. Inc.*, 536 F. Supp. 2d 59, 65–66 (D.D.C. 2008) (document referred to in complaint and central to plaintiff's claim may be considered under Fed. R. Civ. P. 12(b)(6)) (citing *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999)).

## ARGUMENT

### I.    Plaintiffs Lack Standing.

Standing is a necessary component of Article III's case-or-controversy requirement and demands that plaintiffs have "a personal stake in the outcome of the controversy'[so] as to warrant his invocation of federal-court jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (citation omitted). In cases seeking to enjoin government action, standing also serves important separation-of-powers concerns, as ensuring federal court jurisdiction prevents courts from exercising "general legal oversight of the other branches of Government." *Murthy v. Missouri*, 603 U.S. 43, 76 (2024) (cleaned up); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021).

At its "irreducible constitutional minimum," the doctrine requires a plaintiff, as the party invoking the Court's jurisdiction, to establish three elements: (1) a concrete and particularized injury-in-fact, either actual or imminent, (2) a causal connection between the injury and defendants' challenged conduct, and (3) a likelihood that the injury suffered will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The party invoking federal court jurisdiction "bears the burden of establishing each of those elements." *Hecate Energy LLC v. FERC*, 126 F.4th 660, 665 (D.C. Cir. 2025).

Plaintiffs in this case are two advocacy organizations and two labor unions. As such, to proceed in this litigation they must demonstrate that they possess either associational standing to bring claims on behalf of their members, or organizational standing to sue in their own right.

### A.    Plaintiffs Lack Associational Standing.

To demonstrate associational standing, Plaintiffs must establish that "(1) at least one of [its] members has standing to sue in her or his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires the participation of an individual member in the lawsuit." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Com.*, 928 F.3d 95, 101 (D.C. Cir. 2019) (citations omitted); *see also Ass'n of Flight Attendants—CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 464 (D.C. Cir. 2009). Plaintiffs fail to establish such standing. They have not demonstrated that their members have standing to bring litigation to challenge the provision of access to government personnel. Even if they could, they cannot demonstrate that their standalone Privacy Act claim in Count IV could proceed without the participation of those members.

### 1.    Plaintiffs Have Not Pled That Any of Their Members Have Article III Standing.

To establish associational standing (and, indeed, any form of Article III standing), Plaintiffs must show that their individual members have suffered injury-in-fact—"actual or imminent, not speculative" harm, "meaning that the injury must have already occurred or be likely to occur soon." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). For injury to be imminent, it must be "certainly impending"; mere "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (alteration in original) (citation omitted). In other words, injury cannot be established through "[a] 'highly attenuated chain of possibilities' predicated on 'guesswork as to how independent decisionmakers will exercise their judgment.'"

*Indus. Energy Consumers of Am. v. FERC*, 125 F.4th 1156, 1163 (D.C. Cir. 2025) (quoting *Clapper*, 568 U.S. at 410).

An injury-in-fact must have a "close relationship" to a "harm traditionally recognized as providing a basis for a lawsuit in American courts[.]" *TransUnion*, 594 U.S. at 417, 424 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–41 (2016)). While Congress "may elevate harms that exist in the real world before Congress recognized them to actionable legal status," at the same time, Congress "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* at 426 (citations and quotations omitted). Congress may create "a statutory prohibition or obligation and a cause of action," but it may not override Article III's injury requirement. *Id.; see also Doe v. OPM*, 25-cv-234 (RDM), 2025 WL 513268, at *5 (D.D.C. Feb. 17, 2025) ("[N]ot every statutory violation results in the type of concrete injury-in-fact sufficient to support Article III standing.").

That need for an independent Article III injury is particularly important when considering intangible forms of injury, like the ones Plaintiffs appear to assert in this case. Long before *TransUnion*, courts cautioned about according standing to those raising "only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at 573–74. *TransUnion* recognizes that "[v]arious intangible harms can . . . be concrete," but limits cognizable intangible injuries to those "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," including when the plaintiff alleges harm related to the handling of her personal information. *TransUnion*, 594 U.S. at 424 (surveying common-law privacy torts and looking to "whether plaintiffs have identified a close historical or common-law analogue for their

asserted injury").

Plaintiffs assert harm to their members' interests through alleged "wide-ranging access to its members' sensitive financial information," *see* Compl. ¶¶ 128–29, 131, 133, without any indication of how such access constitutes an injury-in-fact. Mere access to information—without more—is not enough for Article III. Of course, *uses* of confidential information that result in concrete injury can give rise to standing. In the *TransUnion* decision, individuals who had a credit report that classified them as a terrorist disseminated to a third-party business were deemed to have Article III standing to press claims because they "suffered a harm with a 'close relationship' to the harm associated with the tort of defamation." 594 U.S. at 432–33. Another example would be an actual data breach, where bad actors outside of government obtain unauthorized access to personal information. *See, e.g.*, *In re OPM Data Sec. Breach Litig.*, 928 F.3d 42, 55 (D.C. Cir. 2019) (per curiam). But Plaintiffs' challenge does not concern actual or imminent actions by Defendants that could be analogized to any of the situations noted above. They have not alleged that Defendants have released confidential information to injure or defame them, or intruded on the personal privacy of any particular individual, or that Defendants have any intent to do so. Nor have Plaintiffs alleged that "DOGE" has ever actually accessed any of their members' data.

Attempting to create standing out of an intangible injury, litigants in similar challenges to the granting of access to agency DOGE teams have asserted that their alleged injury is akin to the tort of intrusion upon seclusion and is therefore an injury-in-fact. *See, e.g.*, Reply in Supp. of Pls.' Mot. for Prelim. Inj. at 7–10, *All. for Retired Americans v. Bessent*, No. 25-cv-00313 (CKK) (D.D.C. Feb. 18, 2025), ECF No. 28; Mem. in Supp. of Pls.' Mot. for Prelim Inj. at 7–10, *Am. Fed'n of State, Cnty. and Mun. Emps v. SSA*, No. 25-cv-00596-ELH (D. Md. Apr. 4, 2025), ECF No. 111-1. And, indeed, in deciding the plaintiffs' motion for preliminary injunction in *Alliance*

10

*for Retired Americans v. Bessent*, --- F. Supp. 3d ----, 2025 WL 740401 (D.D.C. Mar. 7, 2025), this Court found standing based on an analogy to that common-law tort. *See id.* at *15–17; *see also Am. Fed'n of Labor & Congress of Indus. Orgs. v. Dep't of Labor*, --- F. Supp. 3d ----, 2025 WL 1129227, at *6–8 (D.D.C. Apr. 16, 2025) *("Am. Fed'n of Labor")* (concluding the alleged harm is analogous to the tort of intrusion upon seclusion). Defendants respectfully disagree.

The tort of intrusion upon seclusion is a poor fit for challenges to agency access decisions, as a majority of a three-judge panel of the Fourth Circuit recently concluded in granting the government's motion to stay the preliminary injunction as to Treasury and other agencies in *American Federation of Teachers*, another challenge to DOGE Teams' access to agency record systems. *See AFT*, 2025 WL 1023638, at *5–6.[1] As Judge Agee explained in his concurring opinion, joined by Judge Richardson, "[a]t its core, the harm contemplated by the common-law tort of intrusion upon seclusion includes an intrusion into an individual's private space." *Id.* at *2. As Judge Agee correctly noted, other circuit decisions have "also concluded that the harm visited upon an individual by [the] intrusion upon seclusion must include some [] interjection into the private sphere." *Id.* Indeed, in *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458 (7th Cir. 2020) (Barrett, J.)—which the Supreme Court cited in *TransUnion*—the court addressed the receipt of unwanted text messages sent to the plaintiffs' personal cell phones—*i.e.*, actual intrusion into the peace and tranquility of the plaintiffs' use of their personal property. *Gadelhak*, 950 F.3d at 462. The same is true of *Dickson v. Direct Energy, LP*, 69 F.4th 338 (6th Cir. 2023), where the court found that "invasion-of-privacy-like harm[] flow[s] from unwanted telephonic communications" in part because such communications "interject[] [the caller] into [the recipient's] private sphere."

---

[1] At the request of Judge King, the full Fourth Circuit considered the panel's decision for initial rehearing *en banc* and voted 8-7 to deny the request.

*Id.* at 346. Also in *Lupia v. Medicredit, Inc.*, 8 F.4th 1184 (10th Cir. 2021), the court found standing based on unwanted telephone communications because they were an "unwanted intrusion into [the] plaintiff's peace and quiet." *Id.* at 1192. And in *Six v. IQ Data Int'l, Inc.*, 129 F.4th 630 (9th Cir. 2025), the court explained that other decisions have "found that the harm caused by *unwanted communications* bears a close relationship to intrusion upon seclusion." *Id.* at 634 (emphasis added).[2]

Here, there is no such intrusion into Plaintiffs' members' private space, and therefore the tort of intrusion upon seclusion does not apply. Plaintiffs do not dispute that IRS legally obtained their members' personal information, or that IRS legally retains that information in data systems that are maintained by the agency. Nor can Plaintiffs reasonably dispute that their members' personal information, located in government systems, can and is regularly accessed by agency employees and others for purposes that include system maintenance and modernization. And, in practice, Plaintiffs' members would have no reason to know that a particular employee has accessed their information in the normal course of that employees' duties. *See TransUnion*, 594

---

[2] In its memorandum opinion denying Plaintiffs' motion for preliminary injunction in *Alliance for Retired Americans*, the Court also cited *Attias v. CareFirst, Inc.*, 344 F.R.D. 38 (D.D.C. 2023), and *Pileggi v. Wash. Newspaper Publ'g Co.*, No. 23-cv-345, 2024 WL 324121 (D.D.C. Jan. 28, 2024), for the point that *TransUnion* recognizes that privacy harm arising from an intrusion upon seclusion is an intangible injury sufficiently concrete to satisfy Article III. ARA, 2025 WL 740701, at *15 n.5. *Attias*, however, did not involve any allegations of intrusion upon seclusion, and the court mentioned the tort only in passing. 344 F.R.D. at 46 n.2. In *Pileggi*, the allegations involved the disclosure of information about the plaintiffs' video watching history on her personal device. 2024 WL 324121, at *1–3. Finally, in *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702 (D.C. 2009), which this Court also cited, the plaintiffs' breach of privacy action was dismissed because there was no allegation that "the data involved [ ] were disclosed to *and viewed* by someone unauthorized to do so." *Id.* at 711 (emphasis added). The same is true here; Plaintiffs have not alleged that any member of the DOGE Team has accessed the specific data of any of Plaintiffs' members. *See generally* Compl.; *see also AFT*, 2025 WL 1023638, at *5 (Richardson, J., concurring) (describing the harm related to intrusion upon seclusion as "knowledge that a third party is engaged in *targeted* snooping" (emphasis added)).

U.S. at 438 (emphasizing that certain plaintiffs had not suffered an injury sufficient to support standing where they did not "even *kn[o]w*" their files contained inaccurate information).

For these reasons, access to IRS data systems is not like access to a private bank account, as the Court concluded at the preliminary injunction stage in *Alliance for Retired Americans*. *See* 2025 WL 740401, at *16 (citing *Wolf v. Regardie*, 553 A.3d 1213, 1217–18 (D.C. 1989)). The accessing of Plaintiffs' information by DOGE team members in no sense creates the kind of highly objectionable invasion of personal privacy that forms the core of the common law tort of intrusion upon seclusion.

Nor are the access decisions Plaintiffs challenge akin to the common-law tort of "breach of confidence," as Judge Bates recently suggested when addressing similar claims in *American Federation of Labor*. *See* 2025 WL 1129227, at *9. That tort "'lies whe[n] a person offers private information to a third party in confidence and the third party reveals that information to another.'" *Id.* (quoting *Jeffries v. Volume Servs. Am., Inc.*, 928 F.3d 1059, 1064 (D.C. Cir. 2019)). As the EO establishes, agencies are to create their DOGE teams "*within* their respective Agencies." 90 Fed. Reg. 8441, § 3(c) (emphasis added). Thus, to the extent that Plaintiffs complain of access provisioned to members of the DOGE team, any reliance on the tort of breach of confidence necessarily fails, as the information is not being shared with "another" but simply with agency employees.

2.    The Participation of Plaintiffs' Members in This Lawsuit Is Necessary as to Their Privacy Act Claim.

The member-participation requirement for associational standing "guard[s] against the hazard of litigating a case to the damages stage only to find the plaintiff lacking detailed records or the evidence necessary to show the harm with sufficient specificity." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 556 (1996); *see also Travelers United,*

*Inc. v. Hyatt Hotels Corp.*, No. 23-cv-2776, 2025 WL 27162, at *12 (D.D.C. Jan. 3, 2025). "The question" in these circumstances "is whether monetary relief can be awarded without 'individualized proof.'" *Travelers United*, 2025 WL 27162, at *12 (quoting *Air Transp. Ass'n of Am. v. Reno*, 80 F.3d 477, 484 (D.C. Cir. 1996)). The answer to that question is clearly "no" as to Count IV of the Complaint, which raises a direct Privacy Act claim.

Here, the Privacy Act establishes two constraints: (1) it is limited to "individual[s]" and not organizations and (2) it provides only for damages, not injunctive relief. 5 U.S.C. § 552a(g)(4). Courts have consistently found that organizational plaintiffs cannot maintain associational standing on behalf of their members in Privacy Act claims. *See Comm. in Solidarity with People of El Salvador ("CISPES") v. Sessions*, 738 F. Supp. 544, 547 (D.D.C. 1990), *aff'd*, 929 F.2d 742 (D.C. Cir. 1991) ("[T]he Privacy Act does not confer standing upon organizations on their own or purporting to sue on behalf of their members"); *see also SAE Prods., Inc. v. FBI*, 589 F. Supp. 2d 76, 83 (D.D.C. 2008); *Am. Fed'n of Gov't Emps. v. Hawley*, 543 F. Supp. 2d 44, 49–50 (D.D.C. 2008); *In re Dep't of Veterans Affs. Data Theft Litig.*, No. 06-0506, 2007 WL 7621261, at *3 (D.D.C. Nov. 16, 2007). Likewise, this Court should conclude that Plaintiffs lack standing to bring any claims directly under the Privacy Act on their members' behalf.

### B.    Plaintiffs Lack Organizational Standing.

Like an individual, an organization asserting standing on its own behalf must demonstrate that it has suffered a "concrete and demonstrable injury to [its] activities—with [a] consequent drain on [its] resources—constitut[ing] . . . more than simply a setback to the organization's abstract social interests." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 11 (D.C. Cir. 2011) (alteration in original) (quoting *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995)). "'[T]he organization must allege that discrete programmatic concerns are being

directly and adversely affected' by the challenged action." *Nat'l Taxpayers*, 68 F.3d at 1433 (quoting *Am. Legal Found. v. FCC*, 808 F.2d 84, 92 (D.C. Cir. 1987)). "An organization's ability to provide services has been perceptibly impaired when the defendant's conduct causes an 'inhibition of [the organization's] daily operations.'" *Food & Water Watch*, 808 F.3d at 919 (quoting *PETAs v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1094 (D.C. Cir. 2015)). Further, plaintiff organizations cannot "manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 402; *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024).

The Center is the only plaintiff that articulates any alleged harm to itself as an organization. *See* Compl. ¶¶ 121–33. It claims that the IRS's access decision "will harm the Center's ability to encourage trust in the taxpayer process," in part because "undocumented immigrants have often been fearful of filing taxes," and the "Center encourages them to do so, relying on the protections that numerous statutes and IRS policies afford to taxpayer information." *Id.* ¶ 122. But "encourag[ing] trust in the taxpayer process" is the very definition of an injury to abstract social interest that is insufficient for the purposes of Article III. *See Nat'l Ass'n of Home Builders*, 667 F.3d at 11. And beyond speculation regarding how its interests might conceivably be affected in that respect, *see* Compl. ¶¶ 122–26, the Center offers nothing to suggest its mission has or will be concretely harmed. The Center also gestures toward "needing to dedicate more resources to facilitat[e] trust in the taxpayer system and to reach low-income or other vulnerable taxpayers and away from other mission-critical activities." Compl. ¶ 124. It provides no detail regarding any actual expenditure, however, and any hypothetical need to divert resources is based only on further speculation—*i.e.*, that the individuals they serve will be less trustful of the tax system because of

the challenged access decisions. That is insufficient for standing under Supreme Court precedent. *See All. for Hippocratic Med.*, 602 U.S. at 394.

## II.    Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted.

### A.    Plaintiffs Fail to Establish Reviewable Final Agency Action (Counts I–III)

Only "final agency action" is reviewable under the APA. 5 U.S.C. § 704. That requirement has two distinct parts. *See Hill v. U.S. Dep't of the Interior*, 699 F. Supp. 3d 1, 18 (D.D.C. 2023). First, the thing being challenged must be "agency action" recognized by the APA, which defines the term to include a specific "rule, order, license, sanction, relief, or the equivalent[.]" 5 U.S.C. § 551(13). Such an action must be a "discrete" act, as plaintiffs are prohibited from leveling a "broad programmatic attack," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004), against programs for which they are seeking "wholesale improvement . . . by court decree, rather than in the offices of the Department or the halls of Congress," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). As the *Lujan* Court explained, the APA is not intended to permit "general judicial review of [an agency's] day-to-day operations." *Id.* at 899; *see also Jones v. U.S. Secret Serv.*, 701 F. Supp. 3d 4, 17 (D.D.C. 2023) (quoting *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 (D.C. Cir. 2006)) ("the term [agency action] is not so all-encompassing as to authorize us to exercise judicial review over everything done by an administrative agency."), *appeal filed*, No. 23-5288 (D.C. Cir. Dec. 7, 2023).

Second, agency action must be "final." The Supreme Court has laid out a two part test for finality, including that (1) "the action must mark the consummation of the agency's decisionmaking process," rather than being "of a merely tentative or interlocutory nature[;]" and (2) "the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow[.]" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). The APA

expressly excludes "preliminary, procedural, or intermediate agency action[s] or ruling[s]." 5 U.S.C. § 704.

The challenged access decisions here simply do not qualify as final agency action. At most, the supposed "agency action" Plaintiffs identify is a loosely defined series of personnel decisions related to granting individual employees access to agency systems. Decisions related to vetting, training, and assessing employees' need for access to systems or information—about which Plaintiffs may raise—are precisely the type of day-to-day operational decisions and conduct that the Supreme Court in *Lujan* advised do not fall within the APA's ambit. *See Lujan*, 497 U.S. at 899; *AFT*, 2025 WL 1023638, at *5 (Richardson, J., concurring).

Moreover, concluding that the decisions at issue in this case are "agency action" would have untenable consequences. Agencies make thousands of personnel decisions every day of the type Plaintiffs challenge here, whether creating an e-mail account for an employee, staffing an employee on a particular matter, or ensuring that an employee has the relevant training and credentials to access systems or participate in programs. A court could not review such decisions without bringing within the scope of the APA virtually every aspect of an agency's relationship with its employees.

In addition, even if it qualifies as agency action, granting certain employees access to agency databases is not "final" agency action, because it is not an action through which "rights or obligations have been determined," or from which "legal consequences will flow." *Bennett*, 520 U.S. at 177–78. Plaintiffs' complaint fails to demonstrate how providing an employee with system access necessary to his or her job duties creates any rights, obligations, or legal consequences for Plaintiffs or their members. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016). There is no final agency action where the challenged act "impose[d] no obligations, prohibitions

or restrictions on regulated entities," and "d[id] not subject them to new penalties or enforcement risks." *Sierra Club v. EPA*, 955 F.3d 56, 63 (D.C. Cir. 2020). Neither Plaintiffs nor their members are regulated by internal agency decisions to allow new employees access to the agency's own systems, nor have they identified any direct legal consequences that arise from those decisions.

The fact that such decisions could potentially lead to indirect, practical consequences for Plaintiffs' members does not change the analysis. Adverse effects "accompany many forms of indisputably non-final government action." *Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 645 (6th Cir. 2004). For example, "[i]nitiating an enforcement proceeding against a company . . . may have a devastating effect on the company's business, but that does not make the agency's action final." *Id.* What matters is that the alleged data access decisions here have no "direct and appreciable legal consequences" for Plaintiffs. *See California Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 640 (D.C. Cir. 2019). That is fatal to Plaintiffs' APA claim.

The D.C. Circuit has recognized that unauthorized disclosures to third parties outside the government can have direct and immediate consequences for litigants. *See Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925 (D.C. Cir. 2008). But review of data contained in internal agency systems by agency employees or transfer of data within the government does not threaten the same immediate harms. Indeed, courts recognize that, without third-party disclosure, claims founded on internal disclosure of data do not even state a cognizable injury for standing purposes. *See Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1240, 1245–50 (11th Cir. 2022) (en banc) (collecting cases).[3]

---

[3] Defendants recognize that, in *American Federation of Labor*, the court rejected a similar argument, concluding that the plaintiffs in that case had alleged final agency action. 2025 WL 1129227 at *12–13. The government respectfully disagrees with that decision. But, even so, that conclusion was based on the specific allegations in that case—*i.e.*, that the plaintiffs had

**B.     Plaintiffs Cannot Assert Violations of the Internal Revenue Code or the Privacy Act on Behalf of Their Members Through the APA (Counts I and III).**

Plaintiffs' central contention is that the IRS decision to grant the DOGE team access to agency information systems runs contrary to the APA because it violates the Internal Revenue Code and the Privacy Act. But Plaintiffs cannot use the APA to circumvent either the Internal Revenue Code's or the Privacy Act's carefully drawn limitations on the types of relief they can seek. For this reason, their APA claims fail.

The APA provides a vehicle for review only in circumstances where "there is no other adequate remedy." 5 U.S.C. § 704; *see also Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (Section 704 "also makes it clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action"). That is not the case here. The Privacy Act provides a "comprehensive remedial scheme" for injuries arising out of the inappropriate dissemination of private information about individuals. *Wilson v. Libby*, 535 F.3d 697, 703 (D.C. Cir. 2008) (citing *Chung v. U.S. Dep't of Just.*, 333 F.3d 273, 274 (D.C. Cir. 2003)).

This rule holds true where a statutory review scheme only provides for review of issues by certain parties; other parties are presumptively precluded from obtaining review of those issues under the APA. *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984) ("[W]hen a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded."); *see also Dew v. United States*, 192 F.3d 366, 372 (2d Cir. 1999). It is also true even where the plaintiff may not succeed on the merits of her claim under the alternative

---

challenged alleged "across-the board policies (the so-called 'DOGE Access Policies')." *Id.* at *12. Here, there is no similar allegation in the Complaint of an "across-the-board" policy implemented by the IRS. *See, e.g.*, Compl. ¶¶ 135–39 (basing APA claim on IRS's "permi[ssion] . . . to access and inspect return information").

statutory review procedure; the existence of that procedure alone suffices. *See Rimmer v. Holder*, 700 F.3d 246, 261–62 (6th Cir. 2012); *Jones v. U.S. Dep't of Hous. & Urban Dev.*, No. 11 CV 0846, 2012 WL 1940845, at *6 (E.D.N.Y. May 29, 2012) (reasoning that an alternative was adequate "whether or not relief is ultimately granted").

The Internal Revenue Code creates a comprehensive remedial scheme for violations of 26 U.S.C. § 6103, and it would be inappropriate to allow Plaintiffs to use the APA to create an end-run around those remedies. Congress created a waiver of sovereign immunity for violations of § 6103 by authorizing only civil damages against the United States in 26 U.S.C. § 7431. Specifically, § 7431 authorizes a right of action against the United States if "any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information . . . in violation of . . . section 6103." 26 U.S.C. § 7431(a)(1). Damages are authorized in the sum of "the greater of" (a) $1,000 for each unauthorized disclosure of a return or return information, or (b) the actual damages sustained by the plaintiff plus punitive damages for willful disclosures or disclosures that result from gross negligence. *Id.* § 7431(c). Civil damages under § 7431 is the sole remedy that Congress provided for a violation of § 6103, and it does not authorize injunctive relief. *See generally id.*; *see also Henkell v. United States*, No. 96-2228, 1998 WL 41565, at *5 (E.D. Cal. Jan. 9, 1998) (explaining that § 7431 does not authorize injunctive relief).[4]

Given the civil damages available to individuals whose return information is disclosed in violation of § 6103—which is part of the complex statutory scheme Congress created in the Internal Revenue Code— there is another adequate remedy available, and Plaintiffs are not entitled

---

[4] In addition, however, Congress has imposed criminal penalties for willful violations of § 6103, which are punishable as a felony and by dismissal from Federal service.

to injunctive relief through the APA. *Cf. Agbanc Ltd. v. Berry*, 678 F. Supp. 804, 807 (D. Ariz. 1988) (concluding that § 7431 provides an adequate remedy at law that precludes equity jurisdiction).

Similarly, as to the Privacy Act, Section 552a(g) establishes the narrow causes of action for which an "individual may bring a civil action against the agency." *See* 5 U.S.C. § 552a(g)(1). These causes of actions are:

> (1) when an agency "makes a determination . . . not to amend an individual's record in accordance with his request," ("Amendment Action"), *id.* § 552a(g)(1)(A);
>
> (2) when an agency refuses to comply with an individual's request for access to her records, ("Access Action"), *id.* § 552a(g)(1)(B);
>
> (3) when the agency fails to maintain an individual's records "with such accuracy, relevance, timeliness, and completeness" as is necessary for a government action and "consequently a determination is made which is adverse to the individual" ("Benefits Action"), *id.* § 552a(g)(1)(C); or
>
> (4) where the government "fails to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual," ("Other Action") *id.* § 552a(g)(1)(D).

Plaintiffs appear to plead an "Other Action." But the Privacy Act only provides for monetary damages for Other Actions, and then only for individuals, and even further, only for individuals who have suffered actual, pecuniary damages. *See* 5 U.S.C. § 552a(g)(4); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007); *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 296, 299 (2012). Prospective relief, such as that sought by Plaintiffs, is reserved for Amendment or Access Actions. 5 U.S.C. § 552a(g)(2)–(3). The Privacy Act does not permit organizations to sue for injunctive relief over a decision to provide access to particular government employees.

Plaintiffs cannot circumvent the Privacy Act's carefully drawn constraints by raising purported Privacy Act violations through the APA. Denying Plaintiffs' attempt to obtain broader

relief than that provided by the Privacy Act is consistent with the bedrock principle that "where [a] statute provides for certain special types of equitable relief but not others, it is not proper to imply a broad right to injunctive relief." *Parks v. IRS*, 618 F.2d 677, 684 (10th Cir. 1980) (citing *Cell. Assocs., Inc. v. Nat'l Insts. of Health*, 579 F.2d 1155, 1161–62 (9th Cir. 1978)). Accordingly, the Court should dismiss Plaintiffs' APA claims to the extent they are premised on allegations that Defendants' actions violate the Privacy Act. *Cf. AFT*, 2025 WL 1023638, at *6 (Richardson, J., concurring) (stating that, on "first principles without binding authority," "determining whether Congress intended damages to be the exclusive remedy for Privacy Act violations is not a trivial question"). *But see Am. Fed'n of Labor*, 2025 WL 1129227 at *13–14 (concluding the plaintiffs' Privacy Act claim could proceed despite the government's "formidable" other alternative remedies argument); *Doe v. Stephens,* 851 F.2d 1457, 1463 (D.C. Cir. 1988) (concluding declaratory relief available under the APA).

### C.    Plaintiffs Cannot Prevail on Their FISMA Claim (Count II).

The D.C. Circuit has examined the statutory structure of FISMA and suggested in extensive dicta that the choices an agency makes in carrying out its FISMA obligations are not subject to judicial review. *See Cobell v. Kempthorne*, 455 F.3d 301, 314 (D.C. Cir. 2006) ("Notably absent from FISMA is a role for the judicial branch. We are far from certain that courts would ever be able to review the choices an agency makes in carrying out its FISMA obligations."). A close reading of the statute confirms the correctness of the D.C. Circuit's observations.

Congress passed FISMA to "provide a comprehensive framework for ensuring the effectiveness of information security controls over information resources that support Federal operations and assets." 44 U.S.C. § 3551(1). But Congress specifically "recognize[d] that the selection of specific technical hardware and software information security solutions should be left

to individual agencies from among commercially developed products." 44 U.S.C.A. § 3551(6). Accordingly, while FISMA imposes general obligations on agencies to develop and implement information security protections, it offers no specific prescriptions for the tools or methods required—which is unsurprising, considering the rapidly evolving nature of both technology and cyber threats. Instead, Congress vested agencies with broad discretion to adopt "security protections commensurate with the risk and magnitude of the harm" resulting from cyber threats. 44 U.S.C. § 3554(a)(1)(A).

FISMA gives agencies latitude to develop security policies and procedures that are "appropriate" and "cost-effectively reduce information security risks to an acceptable level." *Id.* § 3554(b)(2)(B). To achieve its goals, FISMA assigns exclusive responsibility for overseeing the management and security of information systems of civilian agencies to the Director of the Office of Management and Budget ("OMB"). FISMA mandates that the OMB Director "shall oversee agency information security policies and practices, including . . . overseeing agency compliance with the requirements of this subchapter [of FISMA.]" *Id.* § 3553(a)(5). FISMA specifically authorizes the OMB Director "to enforce accountability for compliance," *id.*, through various mechanisms, including by "tak[ing] any action that the Director considers appropriate, including an action involving the budgetary process or appropriations management process." 40 U.S.C. § 11303(b)(5)(A). Additionally, the Director must review each agency's security programs at least annually and approve or disapprove them. 44 U.S.C. § 3553(a)(5). Finally, he must report to Congress annually on the "effectiveness of information security policies and practices during the preceding year." *Id.* § 3553(c).

The APA explicitly excludes from judicial review those agency actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). "Because the APA does not apply to agency

action committed to agency discretion by law, a plaintiff who challenges such an action cannot state a claim under the APA." *Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009). To determine whether a matter has been committed to agency discretion, the D.C. Circuit considers "the language and structure of the statute that supplies the applicable legal standards for reviewing that action" and "the nature of the administrative action at issue." *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011) (citing *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006)); *see also Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002). On the whole, FISMA reflects Congress's judgment that agencies are best suited to determine what measures they should take to ensure compliance, and decisions by agencies as to its implementation are not subject to APA review. Accordingly, Plaintiffs' FISMA claim should be dismissed. *Cf. Am. Fed'n of Labor*, 2025 WL 1129227, at *18–19 (declining to decide whether FISMA is committed to agency discretion but dismissing the plaintiffs' APA claims to the extent they rely on alleged violations of FISMA given the existence of security protocols).

### D. Plaintiffs Have Not Sufficiently Pleaded the Existence of a Privacy Act "Matching Program" (Counts III and IV).

Count III of the Complaint in part contends that the IRS has "wrongfully used" Privacy Act covered data "for computer matching without an adequate written agreement in violation of the Privacy Act, 5 U.S.C. § 552a(o)." Compl. ¶ 145. *See also id.* ¶ 149 in Count IV. The Court should dismiss that aspect of Counts III and IV as insufficiently pleaded.

The Computer Matching and Privacy Protection Act of 1988, Pub. L. No. 100-503, supplemented the Privacy Act by imposing additional procedural requirements when systems of records are used in "matching programs." *See* 5 U.S.C. § 552a(o)-(q). A "matching program" is defined in the Privacy Act as "any computerized comparison of (i) two or more automated systems of records" for the purpose of "establishing or verifying the eligibility of . . . applicants for . . .

payments under Federal benefit programs [or recouping delinquent debts]," or (ii) "two or more automated Federal personnel or payroll systems of records." *Id.* § 552a(a)(8)(A). The term "matching program" does not include:

> (i)    matches performed to produce aggregate statistical data without any personal identifiers; [or]

> (ii)   matches performed to support any research or statistical project, the specific data of which may not be used to make decisions concerning the rights, benefits, or privileges of specific individuals.

*Id.* § 552a(a)(8)(B)(i)–(ii).

Plaintiffs' Complaint conclusory and generally claims that "computer matching" has occurred without alleging facts about a "matching program" that would satisfy the statutory definition of that term. Indeed, that term appears nowhere in the Complaint. Plaintiffs vaguely allege that "DOGE staffers *appear* to be working across multiple agencies concurrently, *potentially* collecting sensitive information from multiple databases across agencies and providing *opportunities* to combine and cross-reference data . . . ." Compl. ¶ 75 (emphasis added). That falls far short of alleging that any computerized comparison of two or more automated systems of records, for the purpose of establishing or verifying the eligibility of applicants for payments under federal benefit programs, or of two or more Federal personnel or payroll systems of records— subject to the statute's exceptions—has occurred at the IRS, as is required to state a "matching program" claim.

Plaintiffs' bare allegations and legal conclusions are insufficient to "'state a claim to relief that is plausible on its face.'" *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, the Court should dismiss Counts III and VI to the extent they are based on a Privacy Act "matching program."

E.    **Plaintiffs' Freestanding Privacy Act Claim Should Be Dismissed (Count IV).**

Count IV of the Complaint is a freestanding Privacy Act claim arising under § 552a(g). Compl. ¶¶ 148–50. That claim should be dismissed. First, only "the *individual*" has the right to "bring a civil action against the agency" under the Privacy Act. 5 U.S.C. § 552a(g)(1). "[C]orporations and other organizations do not generally have any Privacy Act rights," even when they purport to sue on behalf of their own members. *SAE Prods.*, 589 F. Supp. 2d at 83; *see also Am. Fed'n of Labor*, 2025 WL 1129227 at *21 (dismissing a similar freestanding Privacy Act claim in another DOGE data-access case); *Pub. Emps. for Env't Resp. v. EPA*, 926 F. Supp. 2d 48, 55 (D.D.C. 2013) (explaining that the Privacy Act "extends no rights to organizations or corporations"); *CISPES*, 738 F. Supp. at 547 ("[T]he Privacy Act does not confer standing upon organizations on their own or purporting to sue on behalf of their members."). Second, assuming a proper plaintiff, such actions are only available if a plaintiff can establish (1) "actual damages" and (2) that the agency acted in an "intentional or willful" manner, neither of which Plaintiffs allege in their Complaint. *See* 5 U.S.C. § 552a(g)(4). Plaintiffs have failed to allege any actual damages, and therefore Plaintiffs' standalone Privacy Act claims fail. *See Cooper*, 566 U.S. at 295–96, 299 (explaining that "[a]ctual damages" under the Privacy Act "are limited to actual pecuniary loss, which must be specially pleaded and proved"). Count IV should be dismissed.

F.    **Plaintiffs Fail to Plead the Exceedingly High Bounds of Ultra Vires Review (Count V).**

Ultra vires review is a "doctrine of last resort," *Schroer v. Billington*, 525 F. Supp. 2d 58, 65 (D.D.C. 2007), and the equivalent of "a Hail Mary pass—and in court as in football, the attempt rarely succeeds," *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009). More specifically, ultra vires review of agency action is only available when an agency's error is "patently a misconstruction of [statute;]" "when the agency has disregarded a specific and

unambiguous statutory directive[;]" or "when the agency has violated some specific command of a statute." *Griffith v. Fed. Labor Rels. Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988) (internal citations and quotations omitted). "Garden-variety errors of law or fact are not enough." *Id.*

Both the Supreme Court and D.C. Circuit have made clear that an ultra vires claim is unavailable where an alternative remedial forum exists in which a plaintiff may pursue the challenge. *See Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991) (non-statutory review is available only when a party would be "wholly deprive[d] . . . of a meaningful and adequate means of vindicating its statutory rights"); *Lepre v. Dep't of Labor*, 275 F.3d 59, 72 (D.C. Cir. 2001) (a "critical" requirement for ultra vires review is "the lack of any alternative means of judicial review for the plaintiffs"); *see also Nyunt*, 589 F.3d at 449.

Under this standard, Plaintiffs' free-standing excess of statutory authority claim fails. First, Plaintiffs' claims merely repackage their claims under the Internal Revenue Code and the Privacy Act brought through the APA. *See* Compl. ¶¶ 58–59. For the reasons explained above, Congress established a specific scheme for evaluating these claims. Because alternative forms of review were contemplated by Congress, ultra vires review is precluded.

Moreover, Plaintiffs have failed to plead a specific statutory bound that Defendants have allegedly exceeded. As discussed, the EO calls for the establishment of DOGE teams "within" agencies. 90 Fed. Reg. 8441, § 3(c). Plaintiffs have pointed to no statutory authority that prohibits access by DOGE team members, and providing agency employees with access to agency data does not fall within ultra vires review.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims should be dismissed.

Dated: April 25, 2025                                    Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
Senior Trial Counsel
Federal Programs Branch
Civil Division, Department of Justice
1100 L Street NW
Washington, DC 20005
Telephone: (202) 305-0878
Bradley.Humphreys@usdoj.gov

*Counsel for Defendants*

28