**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

CENTER FOR TAXPAYER RIGHTS, *et al.*,

*Plaintiffs*,

v.

INTERNAL REVENUE SERVICE, *et al.*,

*Defendants*.

</td><td>

Case No. 1:25-cv-00457-CKK

</td></tr>
</table>

**MEMORANDUM OF LAW AND POINTS OF AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................... 1

BACKGROUND .......................................................................................................................... 2

I.      The United States DOGE Service Executive Order........................................................ 2

II.     This Litigation.............................................................................................................. 2

LEGAL STANDARD .................................................................................................................. 5

ARGUMENT ............................................................................................................................... 7

I.      Plaintiffs Lack Standing................................................................................................ 7

      A.      Plaintiffs Lack Associational Standing. .......................................................... 8

      B.      Plaintiffs Lack Organizational Standing. ....................................................... 14

II.     Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted. ............................ 16

      A.      Plaintiffs Fail to Plead the Exceedingly High Bounds of
              *Ultra Vires* Review (Count I). ..................................................................... 16

      B.      Plaintiffs Cannot Assert Violations of the Internal Revenue Code
              or the Privacy Act on Behalf of Their Members Through the
              APA (Count II). ........................................................................................... 18

CONCLUSION........................................................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*Agbanc Ltd. v. Berry*,
   678 F. Supp. 804 (D. Ariz. 1988) ........................................................................ 20

*Alliance for Retired Americans v. Bessent*,
   770 F. Supp. 3d 79 (D.D.C. 2025) ................................................................. 11, 13

*Al-Zahrani v. Rodriguez*,
   669 F.3d 315 (D.C. Cir. 2012) ............................................................................. 5

*Am. Fed'n of Labor & Congress of Indus. Orgs. v. Dep't of Labor*,
   --- F. Supp. 3d ----, 2025 WL 1129227 (D.D.C. Apr. 16, 2025) ...................... 11, 21

*American Federation of State, County and Municipal Employees v. Social Security Administration*,
   Civ. No. 25-1411, 2025 WL 1249608 (4th Cir. Apr. 30, 2025) ............................ 12

*Am. Federation of Teachers v. Bassett*, ("*ATF*"),
   Civ. No. 25-1282, 2025 WL 1023638 (4th Cir. Apr. 7, 2025) .................... 12, 13, 21

*Am. Legal Found. v. FCC*,
   808 F.2d 84 (D.C. Cir. 1987) .............................................................................. 15

*Am. Nat'l Ins. v. FDIC*,
   642 F.3d 1137 (D.C. Cir. 2011) ............................................................................ 6

*Arabzada v. Donis*,
   725 F. Supp. 3d 1 (D.D.C. 2024) .......................................................................... 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 6

*Ass'n of Flight Attendants–CWA, AFL-CIO v. U.S. Dep't of Transp.*,
   564 F.3d 462 (D.C. Cir. 2009) .............................................................................. 8

*Assocs., Inc. v. Nat'l Insts. of Health*,
   579 F.2d 1155 (9th Cir. 1978) .............................................................................. 21

*Attias v. CareFirst, Inc.*,
   344 F.R.D. 38 (D.D.C. 2023) ............................................................................... 13

*Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
   502 U.S. 32 (1991) .............................................................................................. 17

ii

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)............................................................................................. 6

*Block v. Cmty. Nutrition Inst.,*
  467 U.S. 340 (1984)........................................................................................... 18

*Bowen v. Massachusetts,*
  487 U.S. 879 (1988)........................................................................................... 18

*Chung v. U.S. Dep't of Just.,*
  333 F.3d 273 (D.C. Cir. 2003)........................................................................... 18

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013)............................................................................... 9, 14, 15

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006)............................................................................................. 6

*Dew v. United States,*
  192 F.3d 366 (2d Cir. 1999)............................................................................... 19

*Dickson v. Direct Energy, LP,*
  69 F.4th 338 (6th Cir. 2023) .............................................................................. 12

*Doe v. OPM,*
  No. 25-cv-234 (RDM), 2025 WL 513268 (D.D.C. Feb. 17, 2025) ..................... 9

*Doe v. Stephens,*
  851 F.2d 1457 (D.C. Cir. 1988) ......................................................................... 21

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Commerce,*
  928 F.3d 95 (D.C. Cir. 2019) ............................................................................... 8

*FDA v. All. for Hippocratic Med.,*
  602 U.S. 367 (2024)............................................................................... 9, 15, 16

*Fed. Aviation Admin. v. Cooper,*
  566 U.S. 284 (2012)........................................................................................... 20

*Fed. Express Corp. v. United States Dep't of Com.,*
  39 F.4th 756 (D.C. Cir. 2022) ........................................................................... 17

*Food & Water Watch, Inc. v. Vilsack,*
  808 F.3d 905 (D.C. Cir. 2015) ....................................................................... 6, 15

*Gadelhak v. AT&T Services, Inc.*,
  950 F.3d 458 (7th Cir. 2020) .................................................................... 12

*Hecate Energy LLC v. FERC*,
  126 F.4th 660 (D.C. Cir. 2025) .................................................................... 8

*Henkell v. United States*,
  No. 96-2228, 1998 WL 41565 (E.D. Cal. Jan. 9, 1998) ........................... 19

*In re OPM Data Sec. Breach Litig.*,
  928 F.3d 42 (D.C. Cir. 2019) ..................................................................... 10

*Indus. Energy Consumers of Am. v. FERC*,
  125 F.4th 1156 (D.C. Cir. 2025) .................................................................. 9

*Jafarzadeh v. Duke*,
  270 F. Supp. 3d 296 (D.D.C. 2017) ........................................................... 18

*Jenkins v. Howard Univ.*,
  123 F.4th 1343 (D.C. Cir. 2024) .................................................................. 6

*Jones v. U.S. Dep't of Hous. & Urban Dev.*,
  No. 11 CV 0846, 2012 WL 1940845 (E.D.N.Y. May 29, 2012) ............... 19

*Leopold v. Manger*,
  630 F. Supp. 3d 71 (D.D.C. 2022) ............................................................... 6

*Lepre v. Dep't of Labor*,
  275 F.3d 59 (D.C. Cir. 2001) ..................................................................... 17

*Lewis v. U.S. Parole Comm'n*,
  743 F. Supp. 3d 181 (D.D.C. 2024) ........................................................... 18

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .............................................................................. 8, 10

*Lupia v. Medicredit, Inc.*,
  8 F.4th 1184 (10th Cir. 2021) .................................................................... 12

*Marshall v. Honeywell Tech. Solutions, Inc.*,
  536 F. Supp. 2d 59 (D.D.C. 2008) ............................................................... 7

*Meijer, Inc. v. Biovail Corp.*,
  533 F.3d 857 (D.C. Cir. 2008) .................................................................... 7

*Micei Int'l v. Dep't of Com.*,
    613 F.3d 1147 (D.C. Cir. 2010) ............................................................................. 5, 6

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ................................................................................................ 8

*Nat'l Ass'n of Home Builders v. EPA*,
    667 F.3d 6 (D.C. Cir. 2011) ................................................................................. 15

*Nat'l Taxpayers Union, Inc. v. United States*,
    68 F.3d 1428 (D.C. Cir. 1995) ............................................................................. 15

*Nuclear Regulatory Commission v. Texas*,
    145 S. Ct. 1762 (2025) ................................................................................... 16, 17

*Parks v. IRS*,
    618 F.2d 677 (10th Cir. 1980) ............................................................................. 21

*Pileggi v. Wash. Newspaper Publ'g Co.*,
    No. 23-cv-345, 2024 WL 324121 (D.D.C. Jan. 28, 2024) .................................... 13

*Railway Clerks v. Ass'n for Benefit of Non-Contract Emps.*,
    380 U.S. 650 (1965) ............................................................................................ 16

*Randolph v. ING Life Ins. & Annuity Co.*,
    973 A.2d 702 (D.C. 2009) .................................................................................. 13

*Rimmer v. Holder*,
    700 F.3d 246 (6th Cir. 2012) ............................................................................... 19

*Schroer v. Billington*,
    525 F. Supp. 2d 58 (D.D.C. 2007) ...................................................................... 16

*Six v. IQ Data Int'l, Inc.*,
    129 F.4th 630 (9th Cir. 2025) ......................................................................... 12, 13

*Social Security Admin. v. Am. Fed'n of State, Cnty. & Mun. Emps.*,
    145 S. Ct. 1626 (Mem.) ...................................................................................... 12

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .............................................................................................. 9

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007) .......................................................................... 20

*Thomas v. Principi,*
    394 F.3d 970 (D.C. Cir. 2005) ................................................................ 6

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ........................................................ 7, 8, 9, 10, 13

*Warth v. Seldin,*
    422 U.S. 490 (1975) .......................................................................... 7

*Wilson v. Libby,*
    535 F.3d 697 (D.C. Cir. 2008) .............................................................. 18

**STATUTES**

5 U.S.C. § 552a ........................................................................ 14, 20

5 U.S.C. § 704 ................................................................................ 18

5 U.S.C. § 3161 .............................................................................. 2

26 U.S.C. § 6103 ..................................................................... 4, 14, 19

26 U.S.C. § 7213A .......................................................................... 4, 19

26 U.S.C. § 7431 .............................................................................. 19

**FEDERAL RULES**

Federal Rule of Civil Procedure 12 ................................................... 1, 6, 7

**OTHER AUTHORITIES**

Executive Order 14,158,
    90 Fed. Reg. 8441 (Jan. 20, 2025) ........................................................ 2

## INTRODUCTION

Plaintiffs' Amended Complaint challenges purported inter-agency data-sharing arrangements put into place, or forthcoming, by the Internal Revenue Service ("IRS"), and alleged software developments to facilitate the sharing of data. But the Amended Complaint fails to set out claims that can be properly adjudicated in this Court and fails to show those claims are legally viable even if the Court had jurisdiction. The Court should therefore dismiss the Amended Complaint in full under Federal Rule of Civil Procedure 12(b).

At the outset, Plaintiffs fail to properly allege standing because harms arising from alleged intra-governmental data sharing are not the kind of injury that Article III contemplates being addressed in litigation. Plaintiffs allege no tangible harm, nor could they, and their vague assertions of intangible harm arising from speculation regarding potential sharing of their members' data have no common-law analogue that would satisfy the Supreme Court's injury-in-fact test for standing.

Turning to the merits, Plaintiffs cannot meet the exceedingly high bar for alleging an *ultra vires* cause of action, as Plaintiffs' claim does not fit into the narrow window of review that theory leaves available to litigants. Plaintiffs do not identify any specific statutory provision that Defendants have allegedly violated, and their *ultra vires* claim is merely a restatement of their Administrative Procedure Act ("APA") claim in other clothes. Plaintiffs' APA claim is also not legally viable, because both the Internal Revenue Code and the Privacy Act set out precisely defined remedial schemes that do not encompass the sort of broad, programmatic injunctive relief on behalf of organizations that Plaintiffs seek. Defendants respectfully request that the Court grant the instant motion and dismiss with prejudice Plaintiffs' complaint under either Rule 12(b)(1) for lack of jurisdiction, or Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

1

## BACKGROUND

### I.    The United States DOGE Service Executive Order

On January 20, 2025, President Trump signed Executive Order 14,158, which redesignated the previously established United States Digital Service as the U.S. DOGE Service ("USDS") and charged it with implementing the President's agenda of "improv[ing] the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems." 90 Fed. Reg. 8441, §§ 3(a), 4 ("the EO"). The EO also established a "U.S. DOGE Service Temporary Organization" pursuant to 5 U.S.C. § 3161, which will terminate on July 4, 2026. *Id.* § 3(b). Both USDS and the Temporary Organization sit within the Executive Office of the President and are headed by the USDS Administrator, who reports to the White House Chief of Staff. *Id.*

Agency heads across the Executive Branch are required under the EO to establish within their respective agencies a DOGE Team of at least four employees, which may include Special Government Employees. *Id.* § 3(c). Agency heads are instructed to select the DOGE Team members in consultation with USDS and to ensure that "DOGE Team Leads coordinate their work with USDS and advise their respective Agency Heads on implementing the President's DOGE Agenda." *Id.*

The EO also directs USDS to collaborate with Executive agencies to modernize the technology and software infrastructure of the federal government to increase efficiency and productivity and ensure data integrity. *Id.* § 4. To accomplish these objectives, the EO directs USDS to work with relevant agency heads, and vice versa, to ensure that USDS has access to "unclassified agency records, software systems, and IT systems" to the "extent consistent with law." *Id.* § 4(b). At all times, the EO instructs, USDS must "adhere to rigorous data protection standards." *Id.*

## II.    This Litigation

Plaintiffs are the Center for Taxpayer Rights (the "Center"), a 501(c)(3) organization focused on taxpayer rights; the Main Street Alliance, a "nationwide network of small businesses with members across the country"; and two labor unions, the National Federation of Federal Employees, IAM AFL-CIO and Communications Workers of America, AFL-CIO. Am. Compl. ¶¶ 35–53. They filed suit against the IRS, the U.S. Department of the Treasury, USDS, and the USDS Temporary Organization on February 17, 2025. Their initial Complaint asserted five causes of action, all of which challenged access allegedly granted to IRS data systems to what Plaintiffs refer to as "DOGE." *See generally* Compl., ECF No. 1. Defendants moved to dismiss the initial Complaint on April 25. *See* Defs.' Mot. to Dismiss Pls.' Compl., ECF No. 18.

Plaintiffs filed an Amended Complaint on May 16 that added USDS, the USDS Temporary Organization, Amy Gleason, Elon Musk, Steve Davis, the Treasury DOGE Team, OPM, and GSA as Defendants. Whereas Plaintiffs' initial Complaint focused on the legality of allowing Treasury DOGE Team members access to IRS data systems, the Amended Complaint changes course. Plaintiffs now challenge what they claim is a "dramatic shift in IRS policy toward consolidation and inter-agency sharing of taxpayer data[.]" Am. Compl. ¶ 9. Plaintiffs assert that, to facilitate this alleged data-sharing, Defendants have "create[ed] a 'mega' application programming interface ('API') that will facilitate unprecedented cross-agency sharing of sensitive taxpayer data, and they have executed at least one agreement to share data with another agency—DHS[.]" *Id.* ¶ 14.

The Amended Complaint contains two counts. In Count I, Plaintiffs assert an *ultra vires* claim, contending that "[n]o law or other authority authorizes or permits DOGE defendants to access or administer [IRS] systems, nor to fundamentally shift long-standing U.S. policy to segregate highly sensitive taxpayer return information and restrict its use[.]" *Id.* ¶ 221. Count I

further alleges that "[n]o law or other authority authorizes or permits DOGE defendants to create a single, unified database or inter-agency network consolidating information about citizens and residents from across the federal government." *Id.* ¶ 222. Count II challenges the same alleged conduct through the APA. *Id.* ¶¶ 224–29. Plaintiffs contend that Defendants acted contrary to the Internal Revenue Code requirements at 26 U.S.C. § 6103 and. § 7213A, and arbitrarily and capriciously by "disclosing highly sensitive, legally protected taxpayer data to at least one other agency—with imminent plans to expand the scope of this data sharing to other agencies[,]" *id.* ¶ 225, and by "consolidat[ing] taxpayer data contained across multiple databases and systems into a single point of access," *id.* ¶ 226.

Plaintiffs allege purported injuries arising from the alleged inter-agency data-sharing and system access changes at IRS. *Id.* ¶¶ 189–215. First, the Center alleges that IRS's "shift in IRS data management and sharing practices" will "harm the Center's ability to encourage trust in the taxpayer process[,]" and the Center contends it will need to "dedicate more resources to facilitating trust in the taxpayer system and to reach low-income or other vulnerable taxpayers[.]" *Id.* ¶¶ 190–92. The Main Street Alliance and the two labor organizations, NFFE and CWA, for their part, claim harm on behalf of their members, asserting that Defendants actions "depriv[e] them of privacy protections guaranteed by federal law, invad[e] their privacy, and breach[] the confidence of private information they provided to the IRS." *Id.* ¶¶ 201, 208, 214. Those entities also allege that the alleged data-management changes harm their members by "increase[ing] the risk of its improper disclosure" of their personal information. *Id.* ¶¶ 202, 209, 215.

Based on these allegations, Plaintiffs seek broad relief. They ask the Court to enjoin the allegedly "wrongful provision of access, inspection, and disclosure of return information and other personal information in the IRS system to members of DOGE or other federal agencies or

employees without lawful means of access, inspection or disclosure[,]" and to enjoin "Defendants from using the recently created mega API, or any other similar platform, to share IRS return information or other sensitive data outside of IRS, and within IRS to employees without a need for and tax administration purpose for the access[.]" *Id.*, Requested Relief ¶¶ 1–2. Plaintiffs seek further injunctive relief "[p]rohibit[ing] DOGE Defendants from collecting, accessing, disclosing, or retaining return information or other personal information in IRS systems." *Id.*, Requested Relief ¶ 9. In addition, Plaintiffs ask the Court to "[d]eclare unlawful and halt" DOGE Defendants' "access to, inspection, or disclosure of personal or other protected information"; "use of IRS systems for purposes in excess of System of Records Notices (SORNs) and Privacy Impact Assessments (PIAs)"; and "direction, control, or use of IRS systems." *Id.*, Requested Relief ¶¶ 3–5. Plaintiffs also seek a declaration that Defendants' allegedly "unlawful . . . policy and actions to share IRS taxpayer data broadly with other federal agencies through the recently created mega API and through template agreements that do not conform to the specific, lawful reasons for inter-agency sharing of taxpayer data." *Id.*, Requested Relief ¶ 6. And, finally, Plaintiffs seek an order requiring Treasury and IRS to establish and maintain security protections that prevent the unauthorized access of return information or other personal information.

## LEGAL STANDARD

Federal courts are courts of "limited subject-matter jurisdiction" and have the power "to decide only those cases over which Congress grants jurisdiction." *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012) (citing *Micei Int'l v. Dep't of Com.*, 613 F.3d 1147, 1151 (D.C. Cir. 2010)). "Absent subject-matter jurisdiction over a case, the court must dismiss it." *Leopold v. Manger*, 630 F. Supp. 3d 71, 76 (D.D.C. 2022).

To survive a Rule 12(b)(1) motion, the party asserting subject matter jurisdiction bears "the burden of establishing it." *Jenkins v. Howard Univ.*, 123 F.4th 1343, 1347 (D.C. Cir. 2024) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). In considering assertions of subject matter jurisdiction, courts "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). At the same time, however, courts "need not accept inferences drawn by a plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept a plaintiff's legal conclusions." *Arabzada v. Donis*, 725 F. Supp. 3d 1, 9 (D.D.C. 2024) (citing *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)).

Defendants also move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for Plaintiffs' failure to state a claim upon which relief can be granted. To withstand a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under *Iqbal* and *Twombly*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Plausibility" represents something less than "probability," but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation omitted). If the well-pleaded facts of a complaint do not suggest more than the mere possibility of a violation, the

complaint has failed to show that the plaintiff is entitled to relief and cannot survive application of Rule 12(b)(6). *See id.* Likewise, a complaint cannot substitute conclusions of law and other conclusory assertions for well-pleaded allegations of fact and hope to withstand a motion to dismiss. Conclusions of law are not to be accepted as true. *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), courts may consider not only the well-pleaded allegations of the complaint, but also materials "incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment." *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 867 n.* (D.C. Cir. 2008) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed.)); *see also Marshall v. Honeywell Tech. Sols. Inc.*, 536 F. Supp. 2d 59, 65–66 (D.D.C. 2008) (document referred to in complaint and central to plaintiff's claim may be considered under Fed. R. Civ. P. 12(b)(6)) (citing *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999)).

## ARGUMENT

## I.    Plaintiffs Lack Standing.

Standing is a necessary component of Article III's case-or-controversy requirement and demands that plaintiffs have "a personal stake in the outcome of the controversy' [so] as to warrant his invocation of federal-court jurisdiction[.]" *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (citation omitted). In cases seeking to enjoin government action, standing also serves important separation-of-powers concerns, as ensuring federal court jurisdiction prevents courts from exercising "general legal oversight of the other branches of Government." *Murthy v. Missouri*, 603 U.S. 43, 76 (2024) (cleaned up); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021).

At its "irreducible constitutional minimum," the doctrine requires a plaintiff, as the party invoking the Court's jurisdiction, to establish three elements: (1) a concrete and particularized injury-in-fact, either actual or imminent, (2) a causal connection between the injury and defendants' challenged conduct, and (3) a likelihood that the injury suffered will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The party invoking federal court jurisdiction "bears the burden of establishing each of those elements." *Hecate Energy LLC v. FERC*, 126 F.4th 660, 665 (D.C. Cir. 2025).

Plaintiffs in this case are two advocacy organizations and two labor unions. As such, to proceed in this litigation they must demonstrate that they possess either associational standing to bring claims on behalf of their members or organizational standing to sue in their own right.

## A.    Plaintiffs Lack Associational Standing.

To demonstrate associational standing, Plaintiffs must establish that "(1) at least one of [its] members has standing to sue in her or his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires the participation of an individual member in the lawsuit." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Com.*, 928 F.3d 95, 101 (D.C. Cir. 2019) (citations omitted); *see also Ass'n of Flight Attendants—CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 464 (D.C. Cir. 2009). Plaintiffs fail to establish such standing. They have not demonstrated that their members have standing to bring litigation to challenge alleged inter-agency data sharing policies or software tools developed within federal agencies that could allegedly facilitate such data sharing.

As to the first prong required to establish associational standing (and, indeed, any form of Article III standing), Plaintiffs must show that their individual members have suffered injury-in-fact—"actual or imminent, not speculative" harm, "meaning that the injury must have already

occurred or be likely to occur soon." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (citation omitted). For injury to be imminent, it must be "certainly impending"; mere "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (alteration in original) (citation omitted). In other words, injury cannot be established through "[a] 'highly attenuated chain of possibilities' predicated on 'guesswork as to how independent decisionmakers will exercise their judgment.'" *Indus. Energy Consumers of Am. v. FERC*, 125 F.4th 1156, 1163 (D.C. Cir. 2025) (quoting *Clapper*, 568 U.S. at 410).

An injury-in-fact must have a "close relationship" to a "harm traditionally recognized as providing a basis for a lawsuit in American courts[.]" *TransUnion*, 594 U.S. at 417, 424 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–41 (2016)). While Congress "may elevate harms that exist in the real world before Congress recognized them to actionable legal status," at the same time, Congress "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* at 426 (citations and quotations omitted). Congress may create "a statutory prohibition or obligation and a cause of action[,]" but it may not override Article III's injury requirement. *Id.*; *see also Doe v. OPM*, 25-cv-234 (RDM), 2025 WL 513268, at *5 (D.D.C. Feb. 17, 2025) ("[N]ot every statutory violation results in the type of concrete injury-in-fact sufficient to support Article III standing.").

That need for an independent Article III injury is particularly important when considering intangible forms of injury, like the ones Plaintiffs appear to assert in this case. Long before *TransUnion*, courts cautioned about according standing to those raising "only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large[.]" *Lujan*, 504 U.S. at 573–74. *TransUnion* recognizes

that "[v]arious intangible harms can . . . be concrete," but limits cognizable intangible injuries to those "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," including when the plaintiff alleges harm related to the handling of her personal information. *TransUnion*, 594 U.S. at 424 (surveying common-law privacy torts and looking to "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury").

Plaintiffs assert harm to their members' interests through "DOGE's" alleged "wide-ranging access to and/or control over its members' sensitive financial information[.]" *See* Am. Compl. ¶ 202; *see also id.* ¶¶ 209, 215. Mere access to or control over information—without more—is not enough for Article III. Of course, *uses* of confidential information that result in concrete injury can give rise to standing. In the *TransUnion* decision, individuals who had a credit report that classified them as a terrorist disseminated to a third-party business were deemed to have Article III standing to press claims because they "suffered a harm with a 'close relationship' to the harm associated with the tort of defamation." 594 U.S. at 432–33. Another example would be an actual data breach, where bad actors outside of government obtain unauthorized access to personal information. *See, e.g.*, *In re OPM Data Sec. Breach Litig.*, 928 F.3d 42, 55 (D.C. Cir. 2019) (per curiam). But Plaintiffs' challenge does not concern actual or imminent actions by Defendants that could be analogized to any of the situations noted above. They have not alleged that Defendants have released confidential information to injure or defame them, or intruded on the personal privacy of any particular individual, or that Defendants have any intent to do so. Nor have Plaintiffs alleged that "DOGE" has ever actually accessed or transferred any of their members' data.

Although Plaintiffs' Amended Complaint differs somewhat from its initial pleadings—focusing on purported data-sharing arrangements among agencies, rather than access to agency

records by DOGE Team members—the failure to show concrete, imminent injury to any of Plaintiffs' members is the same. There is no common law analogue recognizing injury in fact that serves as a basis for standing. In an attempt to create standing out of an intangible injury, litigants challenging the granting of access to agency records to agency DOGE teams have asserted that their alleged injury is akin to the tort of intrusion upon seclusion and is therefore an injury-in-fact. *See, e.g.*, Reply in Supp. of Pls.' Mot. for Prelim. Inj. at 7–10, *All. for Retired Americans v. Bessent*, No. 25-cv-00313 (CKK) (D.D.C. Feb. 18, 2025), ECF No. 28; Mem. in Supp. of Pls.' Mot. for Prelim Inj. at 7–10, *Am. Fed'n of State, Cnty. and Mun. Emps v. SSA*, No. 25-cv-00596-ELH (D. Md. Apr. 4, 2025), ECF No. 111-1. And, indeed, in deciding the plaintiffs' motion for preliminary injunction in *Alliance for Retired Americans v. Bessent*, 770 F. Supp. 3d 79 (2025), this Court found standing based on an analogy to that common-law tort. *See id.* at 99–104; *see also Am. Fed'n of Labor & Congress of Indus. Orgs. v. Dep't of Labor*, --- F. Supp. 3d ----, 2025 WL 1129227, at *6–8 (D.D.C. Apr. 16, 2025) *("Am. Fed'n of Labor")* (concluding the alleged harm was analogous to the tort of intrusion upon seclusion). Defendants respectfully disagree.

The tort of intrusion upon seclusion is a poor fit for challenges to intra-government data access, as a majority of a three-judge panel of the Fourth Circuit concluded in granting the government's motion to stay the preliminary injunction as to Treasury and other agencies in *American Federation of Teachers*, which challenged DOGE Teams' access to agency record systems. *See Am. Fed'n of Teachers v. Bessent ("AFT")*, No. 25-1282, 2025 WL 1023638, at *5–6 (4th Cir. Apr. 7, 2025).[1] As Judge Agee explained in his concurring opinion, joined by Judge

---

[1] At the request of Judge King, the full Fourth Circuit considered the panel's decision for initial rehearing *en banc* and voted 8-7 to deny the request. Defendants recognize that the *en banc* Fourth Circuit came to a different conclusion in *American Federation of State, County and Municipal Employees v. Social Security Administration*, denying the government's motion to stay

Richardson, "[a]t its core, the harm contemplated by the common-law tort of intrusion upon seclusion includes an intrusion into an individual's private space." *Id.* at *2. As Judge Agee correctly noted, other circuit decisions have "also concluded that the harm visited upon an individual by [the] intrusion upon seclusion must include some [] interjection into the private sphere." *Id.* Indeed, in *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458 (7th Cir. 2020) (Barrett, J.)—which the Supreme Court cited in *TransUnion*—the court addressed the receipt of unwanted text messages sent to the plaintiffs' personal cell phones—*i.e.*, actual intrusion into the peace and tranquility of the plaintiffs' use of their personal property. *Gadelhak*, 950 F.3d at 462. The same is true of *Dickson v. Direct Energy, LP*, 69 F.4th 338 (6th Cir. 2023), where the court found that "invasion-of-privacy-like harm[] flow[s] from unwanted telephonic communications" in part because such communications "interject[] [the caller] into [the recipient's] private sphere." *Id.* at 346. Also, in *Lupia v. Medicredit, Inc.*, 8 F.4th 1184 (10th Cir. 2021), the court found standing based on unwanted telephone communications because they were an "unwanted intrusion into [the] plaintiff's peace and quiet." *Id.* at 1192. And in *Six v. IQ Data Int'l, Inc.*, 129 F.4th 630 (9th Cir. 2025), the court explained that other decisions have "found that the harm caused by *unwanted*

---

the district court's preliminary injunction, based on concerns about the nature of the data in Social Security Administration ("SSA") systems. No. 25-1411, 2025 WL 1249608, *2 (4th Cir. Apr. 30, 2025) (King, J., concurring) (noting that the challenged access includes "access to family court records and school records of children" (quotation omitted)). Those concerns do not apply to IRS data. But in any event, on June 6, 2025, the Supreme Court stayed the district court's preliminary injunction in that case. *See Social Security Admin. v. Am. Fed'n of State, Cnty. & Mun. Emps.*, 145 S. Ct. 1626 (Mem.) (2025). The Supreme Court concluded that consideration of the relevant factors "warrants granting [a] stay," and that "SSA may proceed to afford members of the SSA DOGE Team access to the agency records in question in order for those members to do their work." *Id.*

*communications* bears a close relationship to intrusion upon seclusion." *Id.* at 634 (emphasis added).[2]

Here, though Plaintiffs' claim their members are harmed by DOGE's "access to and/or control over" their members' data, Am. Compl. ¶¶ 202, 209, 215, there is no intrusion into Plaintiffs' members' private space, and therefore the tort of intrusion upon seclusion does not apply. Plaintiffs do not dispute that IRS legally obtained their members' personal information, or that IRS legally retains that information in data systems that are maintained by the agency. Nor can Plaintiffs reasonably dispute that their members' personal information, located in government systems, can and is regularly shared within the government as allowed by law. *See* 26 U.S.C. §§ 6103(h)-(m), (o); 5 U.S.C. § 552a(b)(3), (7). And, in practice, Plaintiffs' members often have no reason to know that inter-agency data sharing was occurring. *See TransUnion*, 594 U.S. at 438 (emphasizing that certain plaintiffs had not suffered an injury sufficient to support standing where they did not "even *kn[o]w*" their files contained inaccurate information).

---

[2] In its memorandum opinion denying Plaintiffs' motion for preliminary injunction in *Alliance for Retired Americans*, the Court also cited *Attias v. CareFirst, Inc.*, 344 F.R.D. 38 (D.D.C. 2023), and *Pileggi v. Wash. Newspaper Publ'g Co.*, No. 23-cv-345, 2024 WL 324121 (D.D.C. Jan. 28, 2024), for the point that *TransUnion* recognizes that privacy harm arising from an intrusion upon seclusion is an intangible injury sufficiently concrete to satisfy Article III. *See Alliance for Retired Americans*, 770 F. Supp. 3d at 102 n.5. *Attias*, however, did not involve any allegations of intrusion upon seclusion, and the court mentioned the tort only in passing. 344 F.R.D. at 46 n.2. In *Pileggi*, the allegations involved the disclosure of information about the plaintiffs' video watching history on her personal device. 2024 WL 324121, at *1–3. Finally, in *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702 (D.C. 2009), which this Court also cited, the plaintiffs' breach of privacy action was dismissed because there was no allegation that "the data involved [ ] were disclosed to *and viewed* by someone unauthorized to do so." *Id.* at 711 (emphasis added). The same is true here; Plaintiffs have not alleged that any Defendant has accessed or transferred the specific data of any of Plaintiffs' members. *See generally* Compl.; *see also AFT*, 2025 WL 1023638, at *5 (Richardson, J., concurring) (describing the harm related to intrusion upon seclusion as "knowledge that a third party is engaged in *targeted* snooping" (emphasis added)).

Plaintiffs also appear to assert a theory of injury based on "Defendants' management" of their members' personal information "in a manner that increases the risk of its improper disclosure." Am. Compl. ¶¶ 202, 209, 215. But the Supreme Court has "repeatedly reiterated" that "allegations of possible future injury are not sufficient, and that a "threatened injury must be certainly impending to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Plaintiffs' claim that Defendants' data-management practices, or any system developments that could (if accurate) allow for increased data-transfer, may increase the risk of improper disclosure is the very definition of speculative injury and cannot serve as a basis for standing.

Nor is the alleged data-sharing Plaintiffs challenge akin to the common-law tort of "breach of confidence," as Plaintiffs appear to suggest. *See* Am. Compl. ¶¶ 201, 208, 214. As noted above, inter-agency data sharing is routine, and Plaintiffs' members have no reasonable basis to expect that such data sharing will not occur. Indeed, both the Internal Revenue Code and the Privacy Act allow for data sharing with agencies subject to certain limitations. *See, e.g.*, 26 U.S.C. §§ 6103(h)–(m), (o); 5 U.S.C. § 552a(b)(3), (7). And while Plaintiffs speculate that the alleged inter-agency sharing is for an improper purpose, the alleged data sharing agreements or other steps taken to "facilitate" data sharing—like development of a "mega API"—cause no tangible harm to Plaintiffs' members, even assuming Plaintiffs' allegations are true. *See, e.g.*, Am. Compl. ¶¶ 14, 107. Plaintiffs provide no reason whatsoever to believe that their members' specific data has been transferred, and it is pure conjecture, insufficient to establish standing, to assume there has been any breach of Plaintiffs' members' confidence.

### B.    Plaintiffs Lack Organizational Standing.

Like an individual, an organization asserting standing on its own behalf must demonstrate that it has suffered a "concrete and demonstrable injury to [its] activities—with [a] consequent

drain on [its] resources—constitut[ing] . . . more than simply a setback to the organization's abstract social interests." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 11 (D.C. Cir. 2011) (alteration in original) (quoting *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995)). "'[T]he organization must allege that discrete programmatic concerns are being directly and adversely affected' by the challenged action." *Nat'l Taxpayers*, 68 F.3d at 1433 (quoting *Am. Legal Found. v. FCC*, 808 F.2d 84, 92 (D.C. Cir. 1987)). "An organization's ability to provide services has been perceptibly impaired when the defendant's conduct causes an 'inhibition of [the organization's] daily operations.'" *Food & Water Watch*, 808 F.3d at 919 (quoting *PETAs v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1094 (D.C. Cir. 2015)). Further, plaintiff organizations cannot "manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 402; *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024).

The Center is the only plaintiff that articulates any alleged harm to itself as an organization. *See* Am. Compl. ¶¶ 189–215. It claims that the IRS's purported access decision "will harm the Center's ability to encourage trust in the taxpayer process," in part because "undocumented immigrants have often been fearful of filing taxes," and the "Center encourages them to do so, relying on the protections that numerous statutes and IRS policies afford to taxpayer information." *Id.* ¶ 190. But "encourag[ing] trust in the taxpayer process" is the very definition of an injury to abstract social interest that is insufficient for the purposes of Article III. *See Nat'l Ass'n of Home Builders*, 667 F.3d at 11. And beyond speculation regarding how its interests might conceivably be affected in that respect, *see* Am. Compl. ¶¶ 189–96, the Center offers nothing to suggest its mission has or will be concretely harmed. The Center also gestures toward "needing to dedicate more resources to facilitat[e] trust in the taxpayer system and to reach low-income or other

vulnerable taxpayers and away from other mission-critical activities." *Id.* ¶ 192. It provides no detail regarding any actual expenditure, however, and any hypothetical need to divert resources is based only on further speculation—*i.e.*, that the individuals they serve will be less trustful of the tax system because of the challenged access decisions. That is insufficient for standing under Supreme Court precedent. *See All. for Hippocratic Med.*, 602 U.S. at 394.

## II. Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted.

### A. Plaintiffs Fail to Plead the Exceedingly High Bounds of *Ultra Vires* Review (Count I).

Count I of Plaintiffs' Amended Complaint is that the so-called "DOGE Defendants" are engaged in *ultra vires* actions. *See* Am. Compl. ¶¶ 216–23. But *ultra vires* review is "a doctrine of last resort." *Schroer v. Billington*, 525 F. Supp. 2d 58, 65 (D.D.C. 2007). As the Supreme Court explained recently in *Nuclear Regulatory Commission v. Texas*, *ultra vires* review is the equivalent of "a Hail Mary pass—and in court as in football, the attempt rarely succeeds." 145 S. Ct. 1762, 1776 (2025). More specifically, *ultra vires* review is a type of nonstatutory review and is available where "an agency has taken action entirely 'in excess of its delegated powers and contrary to a *specific prohibition*' in a statute." *Id.* (quoting *Railway Clerks v. Ass'n for Benefit of Non-Contract Emps.*, 380 U.S. 650, 660 (1965)). Additionally *ultra vires* review is "unavailable if . . . a statutory review scheme provides aggrieved persons 'with meaningful and adequate opportunity for judicial review,' or if a statutory review scheme forecloses all other forms of judicial review." *Id.*

Plaintiffs' *ultra vires* claim cannot meet these stringent requirements and should be dismissed. They assert that the "DOGE Defendants" have "effected a shift in IRS data management and sharing practices to facilitate large-scale interagency transfers" of taxpayer information, and that the DOGE Defendants are "gathering data from or facilitating transfers of data between agencies across the U.S. government[.]" Am. Compl. ¶¶ 218–19. But they fail to plead a specific

statutory bound that Defendants have allegedly exceeded. *See Fed. Express Corp. v. United States Dep't of Com.*, 39 F.4th 756, 765 (D.C. Cir. 2022) ("[*U*]ltra vires claimants must demonstrate that the agency has plainly and openly crossed a congressionally drawn line in the sand.").  Although Plaintiffs assert, in Count II, that the Treasury-IRS Defendants' purported  actions violate the Internal Revenue Code and the Privacy Act through the APA, Count I is not rooted in any alleged statutory prohibition.  *See* Am. Compl. ¶¶ 216–23 (alleging that "[n]o law or other authority authorizes or permits DOGE defendants[']" alleged conduct, without identifying any specific prohibition).

Indeed, Plaintiffs' *ultra vires* claim is simply a variant of their APA claim that also challenges the alleged expansion of inter-agency data sharing. *See Compare* Am. Compl. ¶¶ 216–23, *with id.* ¶¶ 224–29. Both the Supreme Court and D.C. Circuit, however, have made clear that an *ultra vires* claim is unavailable where an alternative remedial forum exists in which a plaintiff may pursue the challenge. *See Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991) (non-statutory review is available only when a party would be "wholly deprive[d] . . . of a meaningful and adequate means of vindicating its statutory rights"); *Lepre v. Dep't of Labor*, 275 F.3d 59, 72 (D.C. Cir. 2001) (a "critical" requirement for ultra vires review is "the lack of any alternative means of judicial review for the plaintiffs"); *see also Nuclear Regul. Comm'n*, 145 S. Ct. at 1776. As explained below, Congress has established specific remedial schemes for individuals to seek redress if their personal information is unlawfully disclosed. *See* Part II.B. The availability of that relief precludes *ultra vires* review. And further, to the extent the Court were to conclude that Plaintiffs can maintain their APA claim against Treasury and the IRS, *but see infra*, that cause of action provides an alternative meaningful and adequate opportunity for judicial review. *See Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 201 (D.D.C. 2024) ("[I]f a plaintiff

advances both a well-pleaded APA claim and a duplicative ultra vires claim, the ultra vires claim

must be dismissed."); *Jafarzadeh v. Duke*, 270 F. Supp. 3d 296, 311 (D.D.C. 2017) (similar).

### B.    Plaintiffs Cannot Assert Violations of the Internal Revenue Code or the Privacy Act on Behalf of Their Members Through the APA (Count II).

Plaintiffs' central contention as to Count II is that the alleged IRS decision to expand inter-

agency information sharing and to create a "mega API" runs contrary to the APA because it

violates the Internal Revenue Code and the Privacy Act. But Plaintiffs cannot use the APA to

circumvent either the Internal Revenue Code's or the Privacy Act's carefully drawn limitations on

the types of relief they can seek. For this reason, their APA claims fail.

The APA provides a vehicle for review only in circumstances where "there is no other

adequate remedy." 5 U.S.C. § 704; *see also Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)

(Section 704 "also makes it clear that Congress did not intend the general grant of review in the

APA to duplicate existing procedures for review of agency action"). That is not the case here. The

Internal Revenue Code provides a comprehensive remedy for the unauthorized disclosure of tax

return information. 26 U.S.C. §§ 6103, 7431. And the Privacy Act provides a "comprehensive

remedial scheme" for injuries arising out of the inappropriate dissemination of private information

about individuals. *Wilson v. Libby*, 535 F.3d 697, 703 (D.C. Cir. 2008) (citing *Chung v. U.S. Dep't

of Just.*, 333 F.3d 273, 274 (D.C. Cir. 2003)).

This rule holds true where a statutory review scheme only provides for review of issues by

certain parties; other parties are presumptively precluded from obtaining review of those issues

under the APA. *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984) ("[W]hen a statute

provides a detailed mechanism for judicial consideration of particular issues at the behest of

particular persons, judicial review of those issues at the behest of other persons may be found to

be impliedly precluded."); *see also Dew v. United States*, 192 F.3d 366, 372 (2d Cir. 1999). It is

also true even where the plaintiff may not succeed on the merits of her claim under the alternative statutory review procedure; the existence of that procedure alone suffices. *See Rimmer v. Holder*, 700 F.3d 246, 261–62 (6th Cir. 2012); *Jones v. U.S. Dep't of Hous. & Urban Dev.*, No. 11 CV 0846, 2012 WL 1940845, at *6 (E.D.N.Y. May 29, 2012) (reasoning that an alternative was adequate "whether or not relief is ultimately granted").

The Internal Revenue Code creates a comprehensive remedial scheme for violations of 26 U.S.C. § 6103, and it would be inappropriate to allow Plaintiffs to use the APA to create an end-run around those remedies. Congress created a waiver of sovereign immunity for violations of § 6103 by authorizing only civil damages against the United States in 26 U.S.C. § 7431. Specifically, § 7431 authorizes a right of action against the United States if "any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information . . . in violation of . . . section 6103." 26 U.S.C. § 7431(a)(1). Damages are authorized in the sum of "the greater of" (a) $1,000 for each unauthorized disclosure of a return or return information, or (b) the actual damages sustained by the plaintiff plus punitive damages for willful disclosures or disclosures that result from gross negligence. *Id.* § 7431(c). Civil damages under § 7431 is the sole remedy that Congress provided for a violation of § 6103, and it does not authorize injunctive relief. *See generally id.*; *see also Henkell v. United States*, No. 96-2228, 1998 WL 41565, at *5 (E.D. Cal. Jan. 9, 1998) (explaining that § 7431 does not authorize injunctive relief).[3]

Given the civil damages available to individuals whose return information is disclosed in violation of § 6103—which is part of the complex statutory scheme Congress created in the

---

[3] In addition, however, Congress has imposed criminal penalties for willful violations of § 6103, which are by a fine or imprisonment, or both, and by dismissal from Federal service. *See* 26 U.S.C. §§ 7213, 7213A.

Internal Revenue Code—there is another adequate remedy available, and Plaintiffs are not entitled to injunctive relief through the APA. *Cf. Agbanc Ltd. v. Berry*, 678 F. Supp. 804, 807 (D. Ariz. 1988) (concluding that § 7431 provides an adequate remedy at law that precludes equity jurisdiction).

Similarly, as to the Privacy Act, Section 552a(g) establishes the narrow causes of action for which an "individual may bring a civil action against the agency." *See* 5 U.S.C. § 552a(g)(1). These causes of actions are:

> (1) when an agency "makes a determination . . . not to amend an individual's record in accordance with his request," ("Amendment Action"), *id.* § 552a(g)(1)(A);
>
> (2) when an agency refuses to comply with an individual's request for access to her records, ("Access Action"), *id.* § 552a(g)(1)(B);
>
> (3) when the agency fails to maintain an individual's records "with such accuracy, relevance, timeliness, and completeness" as is necessary for a government action and "consequently a determination is made which is adverse to the individual" ("Benefits Action"), *id.* § 552a(g)(1)(C); or
>
> (4) where the government "fails to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual," ("Other Action") *id.* § 552a(g)(1)(D).

Plaintiffs appear to plead an "Other Action." But the Privacy Act only provides for monetary damages for Other Actions, and then only for individuals, and even further, only for individuals who have suffered actual, pecuniary damages. *See* 5 U.S.C. § 552a(g)(4); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007); *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 296, 299 (2012). Prospective relief, such as that sought by Plaintiffs, is reserved for Amendment or Access Actions. 5 U.S.C. § 552a(g)(2)–(3). The Privacy Act does not permit organizations to sue for injunctive relief over a decision to provide access to particular government employees.

Plaintiffs cannot circumvent the Privacy Act's carefully drawn constraints by raising purported Privacy Act violations through the APA. Denying Plaintiffs' attempt to obtain broader relief than that provided by the Privacy Act is consistent with the bedrock principle that "where [a] statute provides for certain special types of equitable relief but not others, it is not proper to imply a broad right to injunctive relief." *Parks v. IRS*, 618 F.2d 677, 684 (10th Cir. 1980) (citing *Cell. Assocs., Inc. v. Nat'l Insts. of Health*, 579 F.2d 1155, 1161–62 (9th Cir. 1978)). Accordingly, the Court should dismiss Plaintiffs' APA claims to the extent they are premised on allegations that Defendants' actions violate the Privacy Act. *Cf. AFT*, 2025 WL 1023638, at *6 (Richardson, J., concurring) (stating that, on "first principles without binding authority," "determining whether Congress intended damages to be the exclusive remedy for Privacy Act violations is not a trivial question"). *But see Am. Fed'n of Labor*, 2025 WL 1129227 at *13–14 (concluding the plaintiffs' Privacy Act claim could proceed despite the government's "formidable" other alternative remedies argument); *Doe v. Stephens,* 851 F.2d 1457, 1463 (D.C. Cir. 1988) (concluding declaratory relief available under the APA).

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims should be dismissed with prejudice.

Dated: July 10, 2025                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
Senior Trial Counsel
Federal Programs Branch
Civil Division, Department of Justice

21

1100 L Street NW
Washington, DC 20005
Telephone: (202) 305-0878
Bradley.Humphreys@usdoj.gov

*Counsel for Defendants*