# Exhibit 3

# PROPUBLICA



Ricardo Tomás for ProPublica

Trump Administration

# The IRS Is Building a Vast System to Share Millions of Taxpayers' Data With ICE

ProPublica has obtained the blueprint for the Trump administration's unprecedented plan to turn over IRS records to Homeland Security in order to speed up the agency's mass deportation efforts.

by **William Turton**, **Christopher Bing** and **Avi Asher-Schapiro**

July 15, 2025, 11:45 a.m. EDT

*ProPublica is a nonprofit newsroom that investigates abuses of power. Sign up to receive our biggest stories as soon as they're published.*

The Internal Revenue Service is building a computer program that would give deportation officers unprecedented access to confidential tax data.

ProPublica has obtained a blueprint of the system, which would create an "on demand" process allowing Immigration and Customs Enforcement to obtain the home addresses of people it's seeking to deport.

Last month, in a previously undisclosed dispute, the acting general counsel at the IRS, Andrew De Mello, refused to turn over the addresses of 7.3 million taxpayers sought by ICE. In an email obtained by ProPublica, De Mello said he had identified multiple legal "deficiencies" in the agency's request.

Two days later, on June 27, De Mello was forced out of his job, people familiar with the dispute said. The addresses have not yet been released to ICE. De Mello did not respond to requests for comment, and the administration did not address questions sent by ProPublica about his departure.

The Department of Government Efficiency began pushing the IRS to provide taxpayer data to immigration agents soon after President Donald Trump took office. The tax agency's acting general counsel refused and was replaced by De Mello, who Trump administration officials viewed as more willing to carry out the

president's agenda. Soon after, the Department of Homeland Security, ICE's parent agency, and the IRS negotiated a "memorandum of understanding" that included specific legal guardrails to safeguard taxpayers' private information.

In his email, De Mello said ICE's request for millions of records did not meet those requirements, which include having a written assurance that each taxpayer whose address is being sought was under active criminal investigation.

"There's just no way ICE has 7 million real criminal investigations, that's a fantasy," said a former senior IRS official who had been advising the agency on this issue. The demands from the DHS were "unprecedented," the official added, saying the agency was pressing the IRS to do what amounted to "a big data dump."

In the past, when law enforcement sought IRS data to support its investigations, agencies would give the IRS the full legal name of the target, an address on file and an explanation of why the information was relevant to a criminal inquiry. Such requests rarely involved more than a dozen people at a time, former IRS officials said.

Danny Werfel, IRS commissioner during the Biden administration, said the privacy laws allowing federal investigators to obtain taxpayer data have never "been read to open the door to the sharing of thousands, tens of thousands, or hundreds of thousands of tax records for a broad-based enforcement initiative."

A spokesperson for the White House said the planned use of IRS data was legal and a means of fulfilling Trump's campaign pledge to carry out mass deportations of "illegal criminal aliens."

Taxpayer data is among the most confidential in the federal government and is protected by strict privacy laws, which have historically limited its transfer to law enforcement and other government agencies. Unauthorized disclosure of taxpayer return information is a felony that can carry a penalty of up to five years in prison.

The system that the IRS is now creating would give ICE automated access to home addresses en masse, limiting the ability of IRS officials to consider the legality of transfers. IRS insiders who reviewed a copy of the blueprint said it could result in immigration agents raiding wrong or outdated addresses.

"If this program is implemented in its current form, it's extremely likely that incorrect addresses will be given to DHS and individuals will be wrongly targeted," said an IRS engineer who examined the blueprints and who, like other officials, spoke on condition of anonymity for fear of retribution.

The dispute that ended in De Mello's ouster was the culmination of months of pressure on the IRS to turn over massive amounts of data in ways that would redefine the relationship between the agency and law enforcement and reduce taxpayers' privacy, records and interviews show.

In one meeting in late March between senior IRS and DHS officials, a top ICE official made a suggestion: Why doesn't Homeland Security simply provide the name and state of its targets and have the IRS return the addresses of everyone who matches that criteria?

The IRS lawyers were stunned. They feared they could face criminal liability if they handed over the addresses of individuals who were not under a criminal investigation. The conversation and news of deeper collaboration with ICE so disturbed career staff that it led to a series of departures in late March and early April across the IRS' legal, IT and privacy offices.

They were "pushing the boundaries of the law," one official said. "Everyone at IRS felt the same way."

# The Blueprint

The technical blueprint obtained by ProPublica shows that engineers at the agency are preparing to give DHS what it wants: a system that enables massive automated data sharing. The goal is to launch the new

system before the end of July, two people familiar with the matter said.

The DHS effort to obtain IRS data comes as top immigration enforcement leaders face escalating White House pressure to deport some 3,000 people per day, according to reports.

One federal agent tasked with assisting ICE on deportations said recent operations have been hamstrung by outdated addresses. Better information could dramatically speed up arrests. "Some of the leads that they were giving us were old," said the agent, who spoke on condition of anonymity because he was not authorized to speak with the press. "They're like from two administrations ago."

In early March, immigrants rights groups sued the IRS hoping to block the plan, arguing that the memorandum of understanding between DHS and the IRS is illegal. But a judge in early May ruled against them, saying the broader agreement complied with Section 6103, the existing law regulating IRS data sharing. That opened the door for engineers to begin building the system.

The judge did not address the technical blueprint, which didn't exist at the time of the ruling. But the case is pending, which means the new system could still come under legal review.

Until now, little was known about the push and pull between the two agencies or the exact technical mechanics behind the arrangement.

The plan has been shrouded in secrecy even within the IRS, with details of its development withheld from regular communications. Several IRS engineers and lawyers have avoided working on the project out of concerns about personal legal risk.

Asked about the new system, a spokesperson for IRS parent agency the Treasury Department said the memorandum of understanding, often called an MOU, "has been litigated and determined to be a lawful application of Section 6103, which provides for information sharing by the IRS in precise circumstances associated with law enforcement requests."

At a time when Trump is making threats to deport not only undocumented immigrants but also U.S. citizens, the scope of information-sharing with the IRS could continue to grow, according to documents reviewed by ProPublica and sources familiar with the matter: DHS has been looking for ways to expand the agreement that could allow Homeland Security officials to seek IRS data on Americans being investigated for various crimes.

Last month, an ICE attorney proposed updating the MOU to authorize new data requests on people "associated with criminal activities which may include United States citizens or lawful permanent residents," according to a document seen by ProPublica. The status of this proposal is unclear. De Mello, at the time, rejected it and called for senior Treasury Department leadership to personally sign off on such a significant change.

The White House described DHS' work with the IRS as a good-faith effort to identify and deport those who are living in the country illegally.

"ProPublica continues to degrade their already terrible reputation by suggesting we should turn a blind eye to criminal illegal aliens present in the United States for the sake of trying to collect tax payments from them," White House spokesperson Abigail Jackson said in a statement after receiving questions about the blueprint from ProPublica.

She pointed to the April MOU as giving the government the authority to create the new system and added, "This isn't a surveillance system. ... It's part of President Trump's promise to carry out the mass deportation of criminal illegal aliens — the promise that the American people elected him on and he is committed to fulfilling."

In a separate statement, a senior DHS official also cited the court's approval of the MOU, saying that it "outlines a process to ensure that sensitive taxpayer information is protected while allowing law enforcement to effectively pursue criminal violations."

## How the System Works

The new system would represent a sea change, allowing law enforcement to request enormous swaths of confidential data in bulk through an automated, computerized process.

The system, according to the blueprint and interviews with IRS engineers, would work like this:

First, DHS would send the IRS a spreadsheet containing the names and previous addresses of the people it's targeting. The request would include the date of a final removal order, a relevant criminal statute ICE is using to investigate the individual, and the tax period for which information is sought. If DHS fails to include any of this information, the system would reject the request.

The system then attempts to match the information provided by the DHS to a specific taxpayer identification number, which is the primary method by which the IRS identifies an individual in its databases.

If the system makes a match, it accesses the individual's associated tax file and pulls the address listed during the most recent tax period. Then the system would produce a new spreadsheet enriched with taxpayer data that contains DHS' targets' last known addresses. The spreadsheet would include a record of names rejected for lack of required information and names for which it could not make a match.

Tax and privacy experts say they worry about how such a powerful yet crude platform could make dangerous mistakes. Because the search starts with a name instead of a taxpayer identification number, it risks returning the address of an innocent person with the same name as or a similar address to that of one of ICE's targets. The proposed system assumes the data provided by DHS is accurate and that each targeted individual is the subject of a valid criminal investigation. In effect, the IRS has no way to independently check the bases of these requests, experts told ProPublica.

In addition, the blueprint does not limit the amount of data that can be transferred or how often DHS can request it. The system could easily be expanded to acquire all the information the IRS holds on taxpayers, said technical experts and IRS engineers who reviewed the documents. By shifting a single parameter, the program could return more information than just a target's address, said an engineer familiar with the plan, including employer and familial relationships.

Engineers based at IRS offices in Lanham, Maryland, and Dallas are developing the blueprint.

## "Gone Back on Its Word"

For decades, the American government has encouraged everyone who makes an income in the U.S. to pay taxes — regardless of immigration status — with an implicit promise that their information would be protected. Now that same data may be used to locate and deport noncitizens.

"For years, the IRS has told immigrants that it only cares that they pay their taxes," said Nandan Joshi, an attorney with the Public Citizen Litigation Group, which is seeking to block the data-sharing agreement in federal court. "By agreeing to share taxpayer data with ICE on a mass basis, the IRS has gone back on its word."

The push to share IRS data with DHS emerged while Elon Musk's DOGE reshaped the engineering staff of the IRS. Sam Corcos, a Silicon Valley startup founder with no government experience, pushed out more than 50 IRS engineers and restructured the agency's engineering priorities while he was the senior DOGE official at the agency. He later became chief information officer at Treasury. He has also led a separate IRS effort to create a master database using products from Silicon Valley giant Palantir Technologies, enabling the government to link and search large swaths of data.

Corcos didn't respond to a request for comment. The White House said DOGE is not part of the DHS-IRS pact.

Sen. Ron Wyden, the ranking Democrat on the Senate Committee on Finance, which oversees the IRS, told ProPublica the system being built was ripe for abuse. It "would allow an outside agency unprecedented access to IRS records for reasons that have nothing to do with tax administration, opening the door to endless fishing expeditions," he said.

The Treasury Inspector General for Tax Administration, the department's internal watchdog, is already probing efforts by Trump and DOGE to obtain private taxpayer data and other sensitive information, ProPublica reported in April.

The Trump administration continues to add government agencies to its deportation drive.

DOGE and DHS are also working to build a national citizenship database, NPR reported last month. The database links information from the Social Security Administration and the DHS, ostensibly for the purpose of allowing state and local election officials to verify U.S. citizenship.

And in May, a senior Treasury Department official directed 250 IRS criminal investigative agents to help deportation operations, a significant shift for two agencies that historically have had separate missions.

McKenzie Funk contributed reporting, and Kirsten Berg and Alex Mierjeski contributed research.

---

**William Turton**
I am an investigative reporter focusing on the Department of Government Efficiency.
MORE STORIES   NEED TO GET IN TOUCH?

---

**Christopher Bing** 
I cover the rapid intersection between technology and national security.
MORE STORIES   NEED TO GET IN TOUCH?

> If you have a tip that warrants public scrutiny, heard an intriguing rumor or simply have advice about what I should be looking out for, I'd love to hear from you. I have significant experience unraveling complex and sensitive stories.

---

**Avi Asher-Schapiro** 
I cover the Trump administration and Big Tech in Washington, D.C.
MORE STORIES   NEED TO GET IN TOUCH?

> If you have tips about Big Tech and the Trump administration, please get in touch.

---

# What We're Watching

During Donald Trump's second presidency, ProPublica will focus on the areas most in need of scrutiny. Here are some of the issues our reporters will be watching — and how to get in touch with them securely.