UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR TAXPAYER RIGHTS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> INTERNAL REVENUE SERVICE, *et al.*, <br><br> Defendants. | Civil Action No. 25-0457 (CKK) |

ORDER
(September 3, 2025)

It is **ORDERED** that counsel shall come to the motions hearing on September 5, 2025, prepared to address all legal and factual issues presented in the Plaintiffs' [30] Motion for Stay Under 5 U.S.C. § 705 or, in the Alternative, for Preliminary Injunction, and the Defendants' [31] Opposition thereto. Upon consideration of the parties' extensive and helpful briefing, the Court is particularly interested in several specific issues related to the factual record and the scope of the Plaintiffs' proposed remedies. This Order identifies those topics to allow counsel time to gather relevant facts and prepare for the upcoming hearing. Those topics are as follows:

(1) On April 7, 2025, the U.S. Department of the Treasury, on behalf of the Internal Revenue Service ("IRS"), and the Department of Homeland Security ("DHS"), on behalf of the U.S. Immigration and Customs Enforcement ("ICE"), executed a Memorandum of Understanding ("MOU") to "create a framework for the sharing of specific return information between the agencies," including "requests submitted by ICE for return information under 26 U.S.C. § 6103(i)(2)." Decl. of John J. Walker, Dkt. No. 31-1 ¶ 5 ("Walker Decl."); *see* MOU, Dkt. No. 31-1 at 5–19. The MOU explains that "[t]he specifications and details regarding the IRS's and ICE's procedural obligations and requirements concerning the information exchange will be included in a separate

1

implementation agreement entered into between IRS and ICE." *See* MOU § 3, Dkt. No. 31-1 at 7.  **Has the IRS entered into a "separate implementation agreement" with ICE? If so, what is the nature of that agreement?**

(2) On June 27, 2025, the IRS received a request from ICE pursuant to the MOU for the last known address of approximately 1.28 million individuals. Walker Decl. ¶ 6. **What was the IRS's understanding of the process or criteria that ICE used to identify the individuals included in its June 27 request?**

(3) The IRS responded to ICE's June 27 request on August 7, 2025, providing to ICE the last known address for "3.70% of the individuals requested by ICE," which equates to approximately 47,000 individuals. Walker Decl. ¶ 7.

The Court is interested in discussing whether the requests that ICE sent to the IRS regarding the approximately 47,000 individuals for whom the IRS eventually provided a response on August 7 complied with the statutory prerequisites to disclosure under Section 6103(i)(2) of the Internal Revenue Code. This discussion shall include, but will not be limited to, the following topics:

(a) Section 6103(i)(2)(A) of the Internal Revenue Code authorizes the IRS to disclose return information for use in a nontax criminal proceeding or investigation only to "officers and employees of [ICE] who [were] personally and directly engaged in" the relevant nontax criminal preparation, investigation, or grand jury proceeding, "solely for the use of such officers and employees in such preparation, investigation, or grand jury proceeding." 26 U.S.C. § 6103(i)(2)(A). Section 6(C)(6) of the MOU between the IRS and ICE includes a similar limitation, requiring ICE to provide the IRS with "[i]dentity information for the ICE officers and employees personally and directly

engaged in the nontax criminal investigation that may result in criminal charges against the individual under the specifically designated Federal criminal statute ICE has identified." *See* Dkt No. 31-1 at 8.

> **(i) Approximately (within a factor of 10) how many different individuals did ICE identify in the June 27 request as "ICE officers and employees personally and directly engaged in the nontax criminal investigation that may result in criminal charges" against individuals for whom the IRS provided last-known-address information to ICE on August 7?**
>
> **(ii) Did the IRS make its August 7 disclosures directly to the "officers and employees" that ICE identified in its June 27 request?**

(b) Section 6103(i)(2) authorizes the IRS to disclose return information for use in a nontax criminal proceeding or investigation only if the request for information "sets forth . . . the name and address of the taxpayer with respect to whom the requested return information relates."  26 U.S.C. § 6103(i)(2)(B)(i).  Section 6(C)(1) of the MOU likewise requires ICE to provide the IRS with "[t]he name and address of the taxpayer."  Dkt. No. 31-1 at 8.  Meanwhile, Section 5(D) of the MOU provides that the IRS will share with ICE the "last known address for" each individual that the IRS "is able to identify from the information provided by ICE" for whom ICE provides a request that the IRS deems complete and valid.  *Id*.  Taken together, these provisions raise questions about how the IRS is expected to verify the identity of the individuals whose addresses are sought and how the addresses provided by the IRS in its response correspond to the addresses provided by ICE in its original request:

    **(i)  How did the IRS verify the identity of the individuals identified in ICE's request for whom it provided a response on August 7?**

    **(ii)  Did the IRS conduct an independent review of the addresses provided by ICE on June 27?  For example, did the IRS audit the ICE-provided addresses to determine whether they appeared to be residential addresses, as opposed to addresses associated with businesses or other organizations?**

    **(iii)  What proportion of the responses that the IRS provided to ICE on August 7 included a "last known address" that was materially different from the "address of the taxpayer" that ICE provided to the IRS in its request for address information dated June 27?**

(c)  Section 6103(i)(2) authorizes the IRS to disclose return information for use in a nontax criminal proceeding or investigation only if the request for information "sets forth . . . the statutory authority under which the proceeding or investigation . . . is being conducted."  26 U.S.C. § 6103(i)(2)(B)(iii).  Section 6(C)(3) of the MOU similarly provides that ICE will inform the IRS of "[t]he specifically designated nontax Federal criminal statute (i.e., 8 U.S.C. § 1253(a)(1) or other specifically designated nontax Federal criminal statute) under which an investigation or proceeding regarding the individual is being conducted."  Dkt. No. 31-1 at 8.

    **(i)  What proportion of the responses that the IRS provided to ICE on August 7 involved "an investigation or proceeding" under a "specifically designated nontax Federal criminal statute" other than 8 U.S.C. § 1253?**

4

      **(ii) How did the IRS assess whether an investigation or proceeding "[was] being conducted" with respect to each individual for whom return information was requested at the time that ICE made the requests for disclosure?**

(d) Section 6103(i)(2) authorizes the IRS to disclose return information for use in a nontax criminal proceeding or investigation only if the request for information "sets forth . . . the specific reason or reasons why such disclosure is, or may be, relevant to such proceeding or investigation." 26 U.S.C. § 6103(i)(2)(B)(iv). Section 6(C)(5) of the MOU contains the same requirement. Dkt. No. 31-1 at 5.

      **(i) How did the IRS assess whether the "reason or reasons" that ICE provided were "specific"?**

      **(ii) How did the IRS assess whether disclosure was, or may have been, "relevant" to a pending proceeding or investigation?**

(4) On May 12, 2025, Judge Dabney L. Friedrich denied a motion to preliminarily enjoin information sharing between the IRS and ICE under the MOU. *See Centro de Trabajadores Unidos v. Bessent*, No. 25-cv-0677, 2025 WL 1380420 (D.D.C. May 12, 2025). Although Judge Friedrich held that the plaintiffs before her had standing to seek a preliminary injunction on some of their claims, she determined that they did not establish a likelihood of success on the merits. *Id*. at *4, *7–8. Judge Friedrich held that the plaintiffs were not likely to succeed in showing that the MOU was "not in accordance with law" because the MOU was "consistent with" the statutory requirements of Section 6103(i)(2). *Id*. at *5–7. Furthermore, Judge Friedrich held that the plaintiffs were not likely to succeed on the merits of their claim that the IRS acted arbitrarily and capriciously

because they had not "established that the [MOU] constitute[d] a reviewable change in agency action under the APA." *Id*. at *8. The record before Judge Friedrich appears to have focused on the content of the MOU and the circumstances surrounding its adoption, without the benefit of significant factual development related to actual data sharing practices under the MOU. **How is the factual record now before this Court materially different from the factual record on which Judge Friedrich ruled in *Centro*?**

(5) The Plaintiffs request an order that, among other things, bars the IRS and other Defendants from sharing "any IRS data, to include taxpayer information, return information, and taxpayer identity, including address information . . . pursuant to [Section] 6103(i)(2) of the Internal Revenue Code, in response to requests from [DHS] and its component agencies for the disclosure, verification, or confirmation of taxpayer address information." Pls.' Mot. for Preliminary Injunction, Dkt. No. 30, at 1–2. **If the Court concludes that the Plaintiffs are likely to succeed in showing that some or all of the data sharing from the IRS to ICE on August 7 was reviewable final agency action that was arbitrary and capricious or contrary to law, but that some *future* sharing of IRS data with DHS and its components could be lawful, what would be an appropriate prospective remedy?**

(6) The Plaintiffs also request an order directing the Defendants to "inform ICE" that the Defendants "must destroy, or seek and facilitate the destruction of" address information shared with ICE under Section 6103(i)(2) of the Internal Revenue Code. Pls.' Mot. for Preliminary Injunction, Dkt. No. 30, at 2. However, neither ICE nor DHS is a party to this case. *See generally* Am. Compl., Dkt. No. 20. As the Supreme Court recently emphasized, "a court cannot adjudicate directly upon a person's right without having him either actually or constructively before it." *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2552 (2025) (quoting

*Gregory v. Stetson*, 133 U.S. 579, 586 (1890)). **Under these circumstances, what would be an appropriate prospective remedy for any harm associated with data that the IRS has already shared with ICE?**

The parties are advised that the foregoing list of topics is not exhaustive. In addition to the topics listed herein, counsel must be prepared to address all related issues presented by the Plaintiffs' [30] Motion and the Defendants' [31] Opposition.

**SO ORDERED.**

**Dated:** September 3, 2025

                                                   _____
                                                   COLLEEN KOLLAR-KOTELLY
                                                   United States District Judge