| | |
|---|---|
| From: | O'Donnell Douglas W [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=2A262DB7C3EF4169B5D60E5C005E882F-⸤PII⸥] |
| Sent: | 2/18/2025 9:17:03 PM |
| To: | Maloy Heather C [heather.c.maloy@irs.gov]; Paul William M [william.m.paul@irscounsel.treas.gov] ⸤PII⸥ @irscounsel.treas.gov] |
| Subject: | RE: As discussed |

I alerted Dan Katz. His response is that we will follow the law and he would like to understand the view of Treasury OGC and IRS CC regarding the question below.

Douglas W. O'Donnell
Deputy Commissioner

---

**From:** Maloy Heather C <Heather.C.Maloy@irs.gov>
**Sent:** Tuesday, February 18, 2025 3:41 PM
**To:** Paul William M <William.M.Paul@IRSCOUNSEL.TREAS.GOV>; ⸤PII⸥ @irscounsel.treas.gov>
**Cc:** O'Donnell Douglas W <Douglas.W.ODonnell@irs.gov>
**Subject:** RE: As discussed

Teams message from Guy Ficco below.

⸤PII⸥ had a further conversation in which we were specifically asked for Tax information. After ⸤PII⸥ told him that we would very likely not be able to share it, ⸤PII⸥ was told that it would be elevated to the National Security Council (which I believe the Treasury Secretary sits on).

---

**From:** Maloy Heather C <Heather.C.Maloy@irs.gov>
**Sent:** Tuesday, February 18, 2025 3:36 PM
**To:** Paul William M <William.M.Paul@IRSCOUNSEL.TREAS.GOV>; ⸤PII⸥ @irscounsel.treas.gov>
**Subject:** Fw: As discussed

---

**From:** Ficco Guy A (CI) <Guy.Ficco@ci.irs.gov>
**Sent:** Tuesday, February 18, 2025 1:18 PM
**To:** Maloy Heather C <Heather.C.Maloy@irs.gov>
**Subject:** As discussed

Heather- About an hour ago my Chief of Staff (⸤PII⸥) got contacted by and ICE Assistant Director (⸤PII⸥) regarding IRS CI assisting in an ICE led effort to locate approximately 700,000 individuals who are all under Final Orders of Removal. This effort is being called a Lead Targeting Cell and is being run out of ICE Headquarters in DC, and will be supported by numerous law enforcement agencies. They are also asking for a Sr Manager from CI to help coordinate CIs role in the joint effort.

When [PII] asked about what systems ICE had access to, he was left with the impression that the ICE was seeking information related to tax filings or Title 26 information.

I believe in this situation, we are not permitted to share Title 26 information and would only be able to if we were jointly working under the purview of a grand jury (in which case we could make investigative disclosures to DOJ). After speaking with CT Counsel, we are going to reach out to P&A for further legal guidance.

Guy



**Guy Ficco**
**Chief, IRS-Criminal Investigation**
[PII] **office**
**cellular**

| From: | O'Donnell Douglas W[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=2A262DB7C3EF4169B5D60E5C0 05E882F-[ PII ] |
|---|---|
| Sent: | Fri 2/21/2025 4:47:28 PM (UTC) |
| To: | Daniel.Katz@treasury.gov[Daniel.Katz@treasury.gov] |
| Cc: | brian.sonfield[brian.sonfield@treasury.gov]; Shelley.Leonard2@treasury.gov[Shelley.Leonard2@treasury.gov] |
| Subject: | FW: ICE Request for Taxpayer Addresses |
| Attachment: | 6103 - statutory excerpts.docx |

Good Morning Dan,

I am reverting to you regarding an inbound request we received from ICE that I verbally related to you; specifically, that IRS provide information to ICE to assist with orders of removal of ~ 700,000 individuals.  IRS Chief Counsel coordinated with Treasury's Office of General Counsel on the effort.

Attached and below represent the legal analysis resulting in the conclusion that we cannot provide information responsive to the request made.

We are available to provide any additional information you may find useful.

Best,

Doug

Douglas W. O'Donnell
Deputy Commissioner

---

**From:** Paul William M <William.M.Paul@IRSCOUNSEL.TREAS.GOV>
**Sent:** Friday, February 21, 2025 11:14 AM
**To:** O'Donnell Douglas W <Douglas.W.ODonnell@irs.gov>
**Subject:** ICE Request for Taxpayer Addresses

Doug,

Below is Chief Counsel's and OGC's analysis of the 6103 issue raised by the ICE request for taxpayer addresses. For reference, I've attached the relevant statutory excerpts from section 6103.

Bill

## Background

CI contacted P&A about a request received from [ PII ], Acting Deputy Assistant Director of the Department of Homeland Security Office of Intelligence, relaying a request

that U.S. Immigration and Customs Enforcement (ICE) seeks access to return information for purposes of carrying out the President's Executive Orders on immigration enforcement. In particular, ICE seeks current address information from tax returns collected by IRS to supplement enforcement packages being prepared for approximately 700,000 individuals subject to orders of removal.

Section 6103 of the Internal Revenue Code (Code) protects the confidentiality of returns and return information and authorizes the disclosure of return information only under the circumstances and subject to the conditions prescribed therein. Unauthorized access or disclosure in violation of section 6103 is punishable by civil and criminal penalties.

Address information collected from returns received by the IRS is return information protected by Code section 6103; accordingly, IRS may not disclose this information to ICE absent a specific authorization in section 6103. No such authorization appears to permit the IRS to provide ICE with the return information it seeks.

Subsection (i) of section 6103 authorizes the disclosure of return information to Federal agencies under certain circumstances and for certain purposes. However, for the reasons explained below, and based on our understanding of the facts, these provisions do not authorize the disclosures requested here.

### Section 6103(i)(1)

Section 6103(i)(1)(A) authorizes disclosure, pursuant to an ex parte order by a Federal district court judge or magistrate, to officers and employees of a Federal agency who are personally and directly engaged in preparation for any judicial or administrative proceeding pertaining to the enforcement of a specifically designated Federal criminal statute (not involving tax administration) to which the United States or such agency is or may be a party, or any investigation which may result in such a proceeding. Section 6103(i)(1)(B) specifies the personnel at the Department of Justice that may authorize an application to a Federal district court for the order referred to in subparagraph (A), and the factual determinations the court must make to grant such an order.

Our current understanding is that ICE's request does not relate to a criminal investigation, because removal proceedings are generally civil in nature. If that is incorrect, then it might be possible (depending on the facts) for ICE to seek permission from the appropriate Department of Justice official to apply to a Federal district court judge or magistrate under section 6103(i)(1)(B) for an order that would authorize disclosure under section 6103(i)(1)(A). However, no disclosure could occur pursuant to 6103(i)(1)(A) until such court order is obtained.

### Section 6103(i)(2)

Section 6103(i)(2) authorizes disclosure of certain information (other than "taxpayer return information") in response to a request from a Federal agency head, for purposes similar to those in section 6103(i)(1), but without the need for a court order. However, the information sought by ICE would likely be "taxpayer return information," in which case it could not be disclosed under section 6103(i)(2) under any circumstances. "Taxpayer return information" is defined in section 6103(b)(3) as return information which is filed with, or furnished to, the Secretary by or on behalf of the taxpayer to whom such return information relates. Thus, if the IRS has a taxpayer's address because the taxpayer included it on a tax return, then that

information would be "taxpayer return information" that is not disclosable under section 6103(i)(2).

Even if the address information sought were the type of information that could be disclosed pursuant to (i)(2), the ICE request would not meet the other prerequisites of (i)(2). First, such disclosure must also be for the purposes of a criminal investigation or proceeding, which we do not understand to be the case here.  Second, the request must contain specific information concerning the identity of the taxpayer, the taxable periods to which the information relates, the statutory authority for the proceeding or investigation, and the specific reason why such disclosure is or may be relevant to the proceeding or investigation.  Of note, section 6103(i)(2)(B)(i) requires the request from an agency head to set forth, among other things, "the name and address of the taxpayer with respect to whom the requested return information relates."  Accordingly, if ICE lacks address information for the individuals at issue, it may be unable to make a valid request under section 6103(i)(2)(B).

In short, based on our current understanding of the facts, section 6103 would not permit IRS to disclose the address information sought by ICE to supplement its removal enforcement packages.

**relevant excerpts from sections 6103(b)(1)-(3) and 6103(i)(1)-(2)**

**6103(b)** Definitions.--For purposes of this section—

>   **(1)** Return.--The term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

>   **(2)** Return information.--The term "return information" means—

>>   **(A)** a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense,
>>   . . .

>   **(3)** Taxpayer return information.--The term "taxpayer return information" means return information as defined in paragraph (2) which is filed with, or furnished to, the Secretary by or on behalf of the taxpayer to whom such return information relates.

. . .

**6103(i)** Disclosure to Federal officers or employees for administration of Federal laws not relating to tax administration.—

**(1)** Disclosure of returns and return information for use in criminal investigations.--

>   **(A)** In general.--Except as provided in paragraph (6), any return or return information with respect to any specified taxable period or periods shall, pursuant to and upon the grant of an ex parte order by a Federal district court judge or magistrate judge under subparagraph (B), be open (but only to the extent necessary as provided in such order) to inspection by, or disclosure to, officers and employees of any Federal agency who are personally and directly engaged in--

>>   **(i)** preparation for any judicial or administrative proceeding pertaining to the enforcement of a specifically designated Federal criminal statute (not involving tax administration) to which the United States or such agency is or may be a party, or pertaining to the case of a missing or exploited child,

    **(ii)** any investigation which   may result in such a proceeding, or

    **(iii)** any Federal grand jury proceeding pertaining to enforcement of such a criminal statute to which the United States or such agency is or may be a party, or to such a case of a missing or exploited child,

solely for the use of such officers and employees in such preparation, investigation, or grand jury proceeding.

**(B)** Application for order.--The Attorney General, the Deputy Attorney General, the Associate Attorney General, any Assistant Attorney General, any United States attorney, any special prosecutor appointed under section 593 of title 28, United States Code, or any attorney in charge of a criminal division organized crime strike force established pursuant to section 510 of title 28, United States Code, may authorize an application to a Federal district court judge or magistrate judge for the order referred to in subparagraph (A). Upon such application, such judge or magistrate judge may grant such order if he determines on the basis of the facts submitted by the applicant that--

    **(i)** there is reasonable cause to believe, based upon information believed to be reliable, that a specific criminal act has been committed,

    **(ii)** there is reasonable cause to believe that the return or return information is or may be relevant to a matter relating to the commission of such act, and

    **(iii)** the return or return information is sought exclusively for use in a Federal criminal investigation or proceeding concerning such act (or any criminal investigation or proceeding, in the case of a matter relating to a missing or exploited child), and the information sought to be disclosed cannot reasonably be obtained, under the circumstances, from another source.

. . .

**(2)** Disclosure of return information other than taxpayer return information for use in criminal investigations.--

**(A)** In general.--Except as provided in paragraph (6), upon receipt by the Secretary of a request which meets the requirements of subparagraph (B) from the head of any Federal agency or the Inspector General thereof, or, in the case of the Department of Justice, the Attorney General, the Deputy Attorney General, the Associate Attorney General, any Assistant Attorney General, the Director of the Federal Bureau of Investigation, the Administrator of the Drug Enforcement Administration, any United States attorney, any special prosecutor appointed under section 593 of title 28, United States Code, or any attorney in charge of a criminal division organized crime strike force established pursuant to section 510

2

of title 28, United States Code, the       Secretary shall disclose return information (other than taxpayer return information) to officers and employees of such agency who are personally and directly engaged in--

> **(i)** preparation for any judicial or administrative proceeding described in paragraph (1)(A)(i),
>
> **(ii)** any investigation which may result in such a proceeding, or
>
> **(iii)** any grand jury proceeding described in paragraph (1)(A)(iii),

solely for the use of such officers and employees in such preparation, investigation, or grand jury proceeding.

**(B)** Requirements.--A request meets the requirements of this subparagraph if the request is in writing and sets forth--

> **(i)** the name and address of the taxpayer with respect to whom the requested return information relates;
>
> **(ii)** the taxable period or periods to which such return information relates;
>
> **(iii)** the statutory authority under which the proceeding or investigation described in subparagraph (A) is being conducted; and
>
> **(iv)** the specific reason or reasons why such disclosure is, or may be, relevant to such proceeding or investigation.

**(C)** Taxpayer identity.--For purposes of this paragraph, a taxpayer's identity shall not be treated as taxpayer return information.

3

| | |
|---|---|
| **From:** | York, John |
| **To:** | Katz, Daniel; Pilkerton, Christopher; Krause, Tom |
| **Subject:** | Fw: DOGE ICE Information Request |
| **Date:** | Saturday, February 22, 2025 5:36:05 PM |

Hi Dan and Chris,

I just got this request in from ICE. Please let me know who we should suggest as an individual directly responsible for this matter and, as the email states, if this request is acceptable.

Respectfully,
John W. York

**From:** Vitello, Caleb <[​ PII ​]@ice.dhs.gov>
**Sent:** Saturday, February 22, 2025 5:06 PM
**To:** Krause, Tom <Thomas.Krause@treasury.gov>; Gavin.Kliger@irs.gov <Gavin.Kliger@irs.gov>; York, John <John.York@treasury.gov>
**Cc:** Moghaddassi.Aram.M@dol.gov <Moghaddassi.Aram.M@dol.gov>; Luke.Farritor@hhs.gov <Luke.Farritor@hhs.gov>
**Subject:** DOGE ICE Information Request

**\*\* Caution:** External email from: [[ PII ]@ice.dhs.gov] Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov **

This email is from a US Government agency.

Hello,

The Department of Homeland Security a list of approximately 700 thousand criminal illegal aliens who have standing deportation orders. For each alien, we have a name, as well as other identifying information such as SSN, alien number, date of birth, and in some cases, address.

For each alien in our list, we would like the IRS to provide all possible information, and the date that information was collected, including but not limited to:
1. Known aliases
2. Known home addresses
3. Known employers' information
4. Known phone numbers
5. Known relatives
6. Known emails
7. Know Bank Name
8. Known IP information
9. SSN or TIN

Please confirm that this is acceptable and provide the name of the Directly Responsible Individual in the IRS or Treasury we can collaborate with to retrieve this data. We would like to have this data within two weeks.

Thank you for your cooperation,

*Caleb Vitello*

Acting Director
U.S. Immigration and Customs Enforcement
500 12th Street SW
Washington, D.C.  20536
PII      |@ice.dhs.gov
PII      |(cell)

NOTICE: This communication may contain privileged or otherwise confidential information. If you are not an intended recipient or believe you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use this information.  Please inform the sender that you received this message in error and delete the message.

| | |
|---|---|
| **From**: | Christopher.Pilkerton@treasury.gov [Christopher.Pilkerton@treasury.gov] |
| **Sent**: | 3/7/2025 8:08:22 PM |
| **To**: | Paul William M [william.m.paul@irscounsel.treas.gov]    PII    @irscounsel.treas.gov]; |
| | Butler Paul T [paul.t.butler@irscounsel.treas.gov];    PII    @irscounsel.treas.gov]; |
| | Morris Audrey M [audrey.m.morris@irscounsel.treas.gov] |
| **Subject**: | FW: Follow Up |
| **Attachments**: | IRS ICE Follow Up Questions (OPLA 3.6.2025).docx |

DRAFT, DELIBERATIVE AND PREDECISIONAL
PRIV AND CONF

FYSA- just received back from DHS for our call today. Thanks

---

**From:** Mazzara, Joseph <    PII    @hq.dhs.gov>
**Sent:** Friday, March 7, 2025 2:02 PM
**To:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>
**Subject:** Fw: Follow Up

** **Caution:** External email from: [    PII    @**hq.dhs.gov**] Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov **

<div style="background-color:green; color:white; text-align:center;">This email is from a US Government agency.</div>

See attached.

Privileged & confidential
DRAFT 3/2/25 1:30pm

Follow-Up Questions Relating to ICE's Address Information Request

Legal Considerations under Section 6103(i)(2) (federal agency request)

1.  Disclosure is authorized only to officers and employees of a Federal agency who are personally and directly engaged in:

> (i) preparation for any judicial or administrative proceeding pertaining to enforcement of a specifically designated nontax Federal criminal statute,

> (ii) An investigation that may result in such a proceeding, or

> (iii) A Federal grand jury proceeding pertaining to such nontax Federal criminal statute.

In addition, section 6103(i)(2) permits disclosure "solely for the use of such officers and employees in such preparation, investigation, or grand jury proceeding."



Privileged & confidential
DRAFT 3/2/25 1:30pm

**DPP**

**DPP**

2. The written request must provide:

    (a) The name and address of the taxpayer;

    (b) The taxable period(s) for which the information is sought;

2

Privileged & confidential
DRAFT 3/2/25 1:30pm

(c) The statutory authority under which the criminal investigation or proceeding is being conducted;

(d) The specific reason or reasons why such disclosure is, or may be, relevant to the investigation or proceeding.



Practical Considerations

As a practical matter, the IRS typically needs at least a name and TIN (SSN, ITIN) to identify a taxpayer with certainty and match information in its systems. If the IRS cannot identify a unique taxpayer as a match, section 6103 does not permit the IRS to disclose any taxpayer information. In addition, in the IRS's experience, the TIN provided to employers by persons not authorized to work in the US often may not match the name of the individual in IRS records, which would result in a "no match" response.

Thus, even if the legal requirements under section 6103(i)(2) are satisfied, practical considerations may preclude the IRS from being able to match addresses with the specific individuals with respect to whom such information is requested. The more information that could be provided to help identify the specific individual, the more likely it would be that the IRS could find a true match.



TD_0000014

Privileged & confidential
DRAFT 3/2/25 1:30pm

# DPP

4

TD_0000015

| | |
|---|---|
| **From:** | ExecSecProcessUnit |
| **To:** | Badgley, Tyler; Pilkerton, Christopher; Miller, Rachel; De Mello, Andrew A.; McMaster, Hunter; Katz, Daniel; Alvi, Cora; Schwab, Samantha |
| **Cc:** | ExecSecStaff; ESCUStaff |
| **Subject:** | Notice of SB Action |
| **Date:** | Monday, April 7, 2025 3:13:38 PM |
| **Attachments:** | DHS-IRS Information Sharing MOU_APPROVED.pdf |

Good afternoon:

Secretary Bessent has approved the following action memo, "DHS-IRS Information Sharing MOU".

Please see the attached final PDF.

Thank you,
Exec Sec

<u>Exec Sec Resources</u>:
- Start a CT Case
- Document Templates (NEW)
- Paper Process Memo

Email:  ExecSecStaff@treasury.gov

**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C.

April 7, 2025

**ACTION MEMORANDUM**

**TO:**            Secretary Bessent

**FROM:**        Tyler Badgley, Deputy General Counsel

**THROUGH:**   Chris Pilkerton, Acting General Counsel

**SUBJECT:**    **DHS-IRS Information Sharing MOU**

This memo requests your approval to sign an information sharing agreement between the Department of Homeland Security (DHS) and the Internal Revenue Service (IRS) concerning aliens under criminal investigation. The attached memorandum of understanding (MOU) lays out the process, types of requests, and handling of the requests by both DHS and IRS. A second MOU will be executed below the Secretary level concerning the operationalization and administration of these requests.

## DECISION DEADLINE

**Date:**        04/07/2025

**Rationale:**    In litigation challenging future information sharing between the IRS and DHS, there is a filing deadline today for Defendants, including Treasury. This signed memorandum will be a part of that filing.

## RECOMMENDATION

That you approve for signature the attached information sharing memorandum of understanding between the Department of Homeland Security and the Internal Revenue Service.

_____ Approve          _____ Disapprove          _____ Let's Discuss

## BACKGROUND

In support of the Administration's broader immigration enforcement efforts, DHS has requested that IRS enter into an information sharing arrangement via a memorandum of understanding (MOU). The purpose of the agreement is to aid in the identification and location of certain aliens under criminal investigation. Ordinarily the IRS is unable to provide taxpayer information or tax return information under Internal Revenue Code § 6103. One exception to § 6103 is to aid another agency in a criminal investigation § 6103(i)(2). In this case, the predominant criminal investigation provision relied upon is for aliens who have overstayed a final deportation order by 90 days and are therefore subject to criminal investigation under 8 U.S.C. § 1253(a)(1).

# Final Document

Digitally signed by Final Document
Date: 2025.04.07 15:10:48 -04'00'

This MOU would allow Immigrations and Customs Enforcement (ICE) to send requests for address information for specifically identified individuals consistent with IRC § 6103(i)(2)(A). IRS will review each request for completeness and validity and return to ICE any requests not meeting the requirements necessary for disclosure pursuant to IRC § 6103(i)(2). For complete and valid requests, IRS will search for the last known address for each individual in each request and provide it where available or indicate no match if not. The MOU also lays out the process by which ICE will continue to comply with limitations on sharing taxpayer or tax return information.

The MOU does not lay out a set number of requests for information we expect to come from ICE, nor does it have a defined end date.

**ATTACHMENT**

1. Memorandum of Understanding between IRS and ICE

TD_0000018

| CLEARANCE SHEET | | | |
|---|---|---|---|
| **Subject:** | **DHS-IRS Information Sharing MOU** | | |
| **Drafted by:** | GCFO | Tyler Badgley | PII |
| **Approved by:** | GCFO | Chris Pilkerton | 04/07/2025 |
| **Cleared by:** | Exec Sec | Rachel Miller | 04/07/2025 |
| | IRS | Andrew De Mello | 04/07/2025 |
| | COS | Hunter McMaster | 04/07/2025 |
| **FYI** | COS | Dan Katz | |

3

Department of the Treasury

**IRS** Internal Revenue Service

UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE

# MEMORANDUM OF UNDERSTANDING

BETWEEN

THE U.S. DEPARTMENT OF THE TREASURY,
INTERNAL REVENUE SERVICE

AND

THE U.S. DEPARTMENT OF HOMELAND SECURITY,
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

FOR THE EXCHANGE OF INFORMATION FOR NONTAX
CRIMINAL ENFORCEMENT

UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE

**MEMORANDUM OF UNDERSTANDING**
**BETWEEN**
**U.S. TREASURY DEPARTMENT on behalf of the INTERNAL REVENUE SERVICE**
**AND**
**U.S. DEPARTMENT OF HOMELAND SECURITY on behalf of the U.S.**
**IMMIGRATION AND CUSTOMS ENFORCEMENT,**

**FOR THE EXCHANGE OF INFORMATION FOR NONTAX CRIMINAL**
**ENFORCEMENT**

## 1. INTRODUCTION:

    a. WHEREAS by Executive Order (EO) No. 14161, <u>Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats</u>, 90 Fed. Reg. 8451 (Jan. 20, 2025), the President directed the Secretary of State, in coordination with the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence, to take immediate steps to identify, exclude, or remove aliens illegally present in the United States; and

    b. WHEREAS the Department of Homeland Security has identified numerous aliens illegally present in the United States whom they have represented are under final orders to remove them from the United States; and

    c. WHEREAS the Department of Homeland Security has represented that each of the above-referenced individuals is under criminal investigation for violations of one or more specifically designated Federal criminal statutes (not involving tax administration), including 8 U.S.C. § 1253(a)(1); and

    d. WHEREAS the parties wish to enter into an agreement setting forth the procedures, processes, and safeguards to be followed upon the receipt of a request for the disclosure of information subject to the confidentiality requirements of Internal Revenue Code (IRC) § 6103;

    e. NOW THEREFORE, this Memorandum of Understanding (MOU) between the U.S. Treasury Department / Internal Revenue Service (IRS), and the U.S. Department of Homeland Security / U.S. Immigration and Customs Enforcement (ICE), sets forth the agreement of the parties with respect to ICE's use of the authority in IRC § 6103(i)(2) for the submission of requests for addresses of persons subject to criminal investigation under 8 U.S.C. § 1253(a)(1) or another specifically designated Federal criminal statute.

## 2. AUTHORITY:

The IRS enters into this MOU pursuant to IRC § 7803(a)(2), delegating to the IRS the authority to administer the Internal Revenue Code, and IRC § 6103(i)(2), authorizing the disclosure of return information other than taxpayer return information for purposes of the enforcement of a specified

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

nontax Federal criminal statute.  ICE enters into this MOU pursuant to 8 U.S.C. § 1253(a)(1), 8 U.S.C. § 1103, and 6 U.S.C. § 112(b)(2).

## 3.  PURPOSE:

(U//LES) The purpose of this MOU is to establish the procedures and requirements for ICE's submission of valid IRC § 6103(i)(2) requests for addresses of persons subject to criminal investigation under 8 U.S.C. § 1253(a)(1) or other specifically designated nontax Federal criminal statutes.  The specifications and details regarding the IRS's and ICE's procedural obligations and requirements concerning the information exchange will be included in a separate implementation agreement entered into between IRS and ICE.

## 4.  CONTACTS:

A.  Contacts for this MOU are the IRS designee(s) and the ICE designee(s). Refer to Exhibit A.

B.  Succession of Authority.  The IRS and ICE anticipate there may be changes to the titles and\or responsibilities of officers and employees designated within this MOU. In the event of such changes, any actions that may be taken under this MOU by said officers or employees, may be taken by any officer(s) or employee(s) the IRS and ICE determine to have succeeded to the relevant portions of said officers' or employees' authorities or responsibilities.  Each party shall be responsible for ensuring the points of contact are current by providing a revised Exhibit A to all parties within 30 days of any change.

## 5.  DUTIES AND RESPONSIBILITIES OF THE IRS:

The IRS will:

A.  Receive requests for address information from ICE.

B.  Review each request for completeness and validity and return to ICE any requests not meeting the requirements necessary for disclosure pursuant to IRC § 6103(i)(2). The IRS will provide explanations and/or reasons the request cannot be processed.

C.  (U//LES) Search for the last known address for each individual in each request.

D.  (U//LES) For each individual the IRS is able to identify from the information provided by ICE, provide the IRS last known address for that individual.  For each individual the IRS cannot identify from the information provided by ICE, indicate "no match" in the response.

E.  Send responses to ICE in the manner set forth herein.

F.  Account for disclosures made under this MOU as required pursuant to IRC § 6103(p)(3)(A).

G. (U//LES) Specifications and details regarding the IRS's procedural obligations and requirements concerning the information exchange will be included in a separate implementation agreement entered into between IRS and ICE.

## 6. DUTIES AND RESPONSIBILITIES OF ICE:

ICE will:

A. (U//LES) Send requests for address information for specifically identified individuals pursuant to the specifications contained in a separate implementation agreement between ICE and IRS.

B. Each request must be made consistent with IRC § 6103(i)(2)(A).

C. (U//LES) Each request will contain the following information with respect to each individual identified in the request:

   1. (U//LES) The name and address of the taxpayer.
   2. (U//LES) The taxable period or periods as to which the return information (address) they are seeking relates.
   3. (U//LES) The specifically designated nontax Federal criminal statute (i.e., 8 U.S.C. § 1253(a)(1) or other specifically designated nontax Federal criminal statute) under which an investigation or proceeding regarding the individual is being conducted.
   4. (U//LES) The date of the final order of removal and the related case number assigned to each such order.
   5. (U//LES) The specific reason or reasons why disclosure is, or may be, relevant to the nontax criminal investigation or proceeding.  Any other information ICE can provide to help the IRS identify each individual, such as SSNs, ITINs, etc.
   6. (U//LES) Identity information for the ICE officers and employees personally and directly engaged in the nontax criminal investigation that may result in criminal charges against the individual under the specifically designated Federal criminal statute ICE has identified.

D. (U//LES) Each request will attest that the requested address information will only be used by officers and employees of ICE solely for the preparation for judicial or administrative proceedings, or investigation that may lead to such proceedings, pertaining to the enforcement of 8 U.S.C. § 1253(a)(1), other specifically designated Federal criminal statute, or any subsequent criminal proceedings.

E. ICE will use and redisclose the address information only as specifically authorized by IRC § 6103(i)(2) as implemented in 26 C.F.R § 301.6103(i)-1.  Specifically, the regulations provide:
   1. (U//LES) Return information disclosed under IRC § 6103(i)(2) shall be open to inspection by or disclosure to ICE officers and employees personally and directly engaged in, and for their necessary use in, proceedings and investigations that may result in such proceedings, pertaining to the enforcement of a specifically designated nontax Federal criminal statute.

   2. (U//LES) Return information disclosed under IRC § 6103(i)(2) may be disclosed by such

3

## UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE

ICE officers and employees to other persons only to the extent necessary to the enforcement of the specifically designated nontax Federal criminal statute, including:

    a. (U//LES) To properly obtain the services of persons having special knowledge or technical skills (such as, but not limited to, handwriting analysis, photographic development, sound recording enhancement, or voice identification);

    b. (U//LES) To properly interview, consult, depose, or interrogate or otherwise obtain relevant information from, the taxpayer to whom such return or return information relates (or such taxpayer's legal representative) or any witness who may be called to give evidence in the proceeding; or

    c. (U//LES) To properly conduct negotiations concerning, or obtain authorization for, disposition of the proceeding, in whole or in part, or stipulations of fact in connection with the proceeding.

3. (U//LES) Among those persons to whom returns and return information may be disclosed by officers and employees of ICE on a need-to-know basis as provided are:

    a. (U//LES) Other ICE officers and employees such as clerical personnel (for example, secretaries, stenographers, docket and file room clerks, and mail room employees) and supervisory personnel;

    b. (U//LES) Officers and employees of another Federal agency (as defined in section 6103(b)(9)) working under the direction and control of such ICE officers and employees; and

    c. (U//LES) Court reporters.

F. (U//LES) ICE will ensure the proper handling, transmission, safeguarding, and security of the address information as contained in Sections 8 and 9 of this MOU.

G. Specifications and details regarding ICE's procedural obligations and requirements concerning the information exchange will be included in a separate implementation agreement entered into between IRS and ICE.

4

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

## 7. DESCRIPTION OF THE RECORDS:

A. Systems of Records Notices

    1. The IRS will

        a. (U//LES) disclose address information from the System(s) of Records described in a separate implementation agreement entered into between the IRS and ICE.

    2. ICE will

        a. (U//LES) disclose the following subject identifier information: CVID; A Number; First, Middle and Last Name; Address Information; Date of Birth; Country of Citizenship; FBI Numbers; and Fingerprint Identification Number (FINS), from the System(s) of Records described in a separate implementation agreement entered into between the IRS and ICE; and

        b. (U//LES) maintain the address information provided by the IRS in the System(s) of Records described in a separate implementation agreement entered into between the IRS and ICE.

## 8. INFORMATION SECURITY:

The IRS and ICE will comply with the requirements of the Federal Information Security Management Act (FISMA), 44 U.S.C. Chapter 35, Subchapter II, as amended by the Federal Information Security Modernization Act of 2014 (Pub. L. No. 113-283); related Office of Management and Budget (OMB) circulars and memoranda, such as Circular A-130, Managing Information as a Strategic Resource (July 28, 2016), and Memorandum M-17-12, Preparing for and Responding to a Breach of Personally Identifiable Information (PII) (Jan. 3, 2017); National Institute of Standards and Technology (NIST) directives; and the Federal Acquisition Regulations, including amendments published after the effective date of this MOU. These laws, directives, and regulations include requirements for safeguarding Federal information systems and Personally Identifiable Information used in Federal agency business processes, as well as related reporting requirements. Both agencies recognize, and will implement, the laws, regulations, NIST standards, and OMB directives, including those published subsequent to the effective date of this MOU.

The FISMA requirements apply to all Federal contractors, organizations, or entities that possess or use Federal information, or that operate, use, or have access to Federal information systems on behalf of an agency. Both agencies are responsible for oversight and compliance of their contractors and agents.

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

A. Incident Reporting

If the IRS or ICE experiences an incident involving the loss or breach of PII provided by IRS under the terms of this MOU, they will follow the incident reporting guidelines issued by OMB. In the event of a reportable incident under OMB guidance involving PII, the agency experiencing the incident is responsible for following its established procedures, including notification to proper organizations (i.e., Cybersecurity & Infrastructure Security Agency (CISA) and the agency's privacy office). Immediately upon discovery of a potential cybersecurity incident involving IRS-provided PII, ICE will contact the IRS Computer Security Incident Response Center (CSIRC) at 240-613-3606.

B. Breach Notification

The IRS and ICE will follow PII data breach notification policies and related procedures as required by OMB Memorandum M-17-12 (Jan. 3, 2017). If the agency that experienced the data breach, after conducting a risk assessment, determines notification to the potentially impacted individuals and an offer of an identity protection/identity monitoring service, and/or other remedies is required, that agency will carry out the remedies without cost to the other agency.

**9. DISCLOSURE, SAFEGUARDS, AND RECORD KEEPING REQUIREMENTS:**

A. ICE will maintain all Federal tax returns and return information sourced from the IRS in accordance with IRC § 6103(p)(4) and comply with the safeguards requirements set forth in Publication 1075, *Tax Information Security Guidelines for Federal, State and Local Agencies*. Publication 1075 is the IRS-published guidance for security guidelines and other safeguards for protecting returns and return information, pursuant to 26 C.F.R. § 301.6103(p)(4).

The IRS safeguarding requirements include:

1. ICE will establish a central point of control for all requests for and receipt of Federal tax returns and return information and maintain a log to account for all subsequent disclosures and products made with/from that information, and movement of the information until destroyed, in accordance with Publication 1075.

2. ICE will establish procedures for secure storage of Federal tax returns and return information consistently maintaining two barriers of protection to prevent unauthorized access to the information, including when in transit, in accordance with Publication 1075.

3. ICE will consistently label Federal tax returns and return information obtained under this MOU to make it clearly identifiable and to restrict access by unauthorized individuals. Any duplication or transcription of Federal tax returns and return information creates new records which must also be properly accounted for and safeguarded. Federal tax returns and return information should not be commingled with other ICE records unless the entire file is safeguarded in the same manner as required for Federal tax returns and return

6

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

information and the Federal tax information (FTI) within is clearly labeled in accordance with Publication 1075.

4. ICE will restrict access to Federal tax returns and return information solely to officers and employees of ICE as described in this MOU for the purposes of carrying out this MOU. Prior to access ICE must evaluate which employees require such access. Authorized individuals may only access Federal tax returns and return information to the extent necessary to perform services related to, and as authorized by, this MOU, in accordance with Publication 1075.

5. Prior to initial access to FTI and annually thereafter, ICE will ensure that employees and officers that will have access to Federal tax returns and return information receive awareness training regarding the confidentiality restrictions applicable to the Federal tax returns and return information and certify acknowledgement in writing that they are informed of the criminal penalties and civil liability provided by IRC §§ 7213, 7213A, and 7431 for any willful disclosure or inspection of Federal tax returns and return information that is not authorized by the IRC, in accordance with Publication 1075.

6. ICE will submit an annual Safeguard Security Report (SSR) to the Office of Safeguards by the submission deadline specified in Publication 1075 to provide an update on safeguarding activities during the reporting period.  The SSR will also provide Head of Agency certification that the SSR addresses all Outstanding Actions identified by the IRS Office of Safeguards from the agency's prior year SSR; accurately and completely reflects ICE's current environment for the receipt, storage, processing, and transmission of FTI; accurately reflects the security controls in place to protect the FTI in accordance with Publication 1075 and of ICE's commitment to assist the Office of Safeguards in the joint effort of protecting the confidentiality of FTI; support the Office of Safeguards on-site review to assess ICE's compliance with Publication 1075 requirements by means of manual and automated compliance and vulnerability assessment testing, including coordination with information technology (IT) divisions to secure pre-approval, if needed, for automated system scanning and to support timely mitigation of identified risk to FTI in ICE's Corrective Action Plan (CAP) for as long as ICE maintains Federal tax returns and return information.  Required reports will be transmitted in electronic format and on the template provided by IRS Office of Safeguards using an IRS-approved encryption method in accordance with Publication 1075.

7. ICE will timely report all data incidents involving FTI to the Office of Safeguards and cooperate with Office of Safeguards investigators, providing data and access as needed to determine the facts and circumstances of the incident.

8. When a data incident results in ICE taking adverse or disciplinary action against an employee based on an unauthorized inspection or disclosure of FTI in violation of ICE's procedures ICE must notify each impacted taxpayer in writing. The notification letter must include the date of the unauthorized inspection or disclosure and the rights of the taxpayer

7

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

under IRC § 7431. ICE must report to IRS Safeguards when taxpayer notification letters are issued, in accordance with Publication 1075.

9. ICE will ensure that Federal tax return and return information is properly destroyed or returned to the IRS when no longer needed based on established ICE record retention schedules in accordance with Publication 1075.

10. ICE will conduct periodic internal inspections of facilities where Federal tax returns and return information is maintained to ensure IRS safeguarding requirements are met and will permit the IRS access to such facilities as needed to review the extent to which ICE is complying with the IRC § 6103(p)(4) requirements of this section.

11. IRC § 6103(p)(9) requires ICE to conduct on-site assessments of each contractor's compliance with safeguarding requirements. ICE must submit findings of the most recent review as part of the annual SSR submission. ICE must certify to the IRS that each contractor is in compliance with safeguarding standards in accordance with Pub 1075. ICE must ensure that contracts with contractors and subcontractors performing work involving returns or return information contain specific language requiring compliance with IRC § 6103(p)(4) and Publication 1075 standards. Contract language must enforce ICE's right to access contractor and subcontractor facilities in order to comply with IRC § 6103(p)(9) to ensure IRS safeguarding requirements are met.

12. Usage of FTI for Artificial Intelligence (AI) purposes must be disclosed to the Office of Safeguards for assessment of compliance with safeguard requirements.

B. Generally, this MOU covers secure electronic transmission of Federal tax returns and return information to ICE, provided ICE computer systems are compliant with National Institute of Standards and Technology (NIST) Special Publication 800-53 standards and guidance for security of data at the moderate impact level. ICE's SSR must fully describe the computer system and security controls implemented for the receipt, processing, storage, and transmission of electronic Federal tax returns and return information. Required security controls for systems that receive, process, store, and transmit electronic Federal tax returns and return information are specified in Publication 1075.

C. Any creation or receipt of Federal tax returns and return information in paper format must also be fully disclosed in ICE's SSR. Required security controls associated with the receipt, processing, and storage of any Federal tax returns and return information received in paper format are specified in Publication 1075.

D. ICE must report suspected unauthorized inspection or disclosure of Federal tax returns and return information within 24 hours of discovery to the IRS Office of Safeguards in accordance with Publication 1075.

E. IRS will conduct periodic safeguard reviews of ICE to assess whether security and confidentiality of Federal tax returns and return information is maintained consistent with the

8

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

safeguarding protocols described in Publication 1075, ICE's SSR, and in accordance with the terms of this MOU. Periodic safeguard reviews will involve the inspection of ICE's facilities where FTI is maintained; the testing of technical controls for computer systems storing, processing, or transmitting FTI; review of ICE's recordkeeping and policies; and interviews of ICE's employees to verify the use of FTI and to assess the adequacy of procedures established to protect FTI.

F.  ICE recognizes and will reflect in its actions and procedures that all Safeguards documents and related communications are IRS official records; that they are property of the IRS; that IRS records are subject to disclosure restrictions under Federal law and IRS rules and regulations and may not be released publicly under state Sunshine or Information Sharing/Open Records provisions and that any requestor seeking access to IRS records should be referred to the Federal Freedom of Information Act (FOIA) statute. If ICE determines that it is appropriate to share Safeguards documents and related communications with another governmental function/branch for the purposes of operational accountability or to further facilitate protection of FTI, the recipient governmental function/branch must be made aware, in unambiguous terms, that Safeguards documents and related communications are property of the IRS; that they constitute IRS official records; that any request for the release of IRS records is subject to disclosure restrictions under Federal law and IRS rules and regulations and that any requestor seeking access to IRS records should be referred to the Federal Freedom of Information Act (FOIA) statute. Federal agencies in receipt of FOIA requests for Safeguards documents must forward them to IRS for reply.

G.  All information received from ICE under this MOU becomes return information as defined in IRC § 6103(b)(2) and will not be further disclosed or disseminated except as authorized by IRC § 6103.

## 10. TRANSMITTAL PROCEDURES:

Transmittal procedures and transmittal security requirements will be included in a separate implementation agreement entered into between IRS and ICE.

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

## 11. LIABILITY:

A.  Each party to this MOU shall be liable for the acts and omissions of its own employees.

B.  The IRS shall not be liable for any injury to another party's personnel or damage to another party's property unless such injury or damage is compensable under the Federal Tort Claims Act (28 U.S.C. § 1346(b)), or pursuant to other Federal statutory authority. Similarly, ICE shall not be liable for any injury to another party's personnel or damage to another party's property unless such injury or damage is compensable under applicable Federal Tort Claims Act (28 U.S.C. § 1346(b)), or pursuant to other Federal statutory authority.

C.  This MOU is not an obligation or commitment of funds, nor a basis for transfer of funds, but rather is a basic statement of the understanding between the parties. Unless otherwise agreed in writing, each party shall bear its own costs in relation to this MOU. Expenditures by each party will be subject to its budgetary processes and to the availability of funds and resources pursuant to applicable laws, regulations, and policies.

## 12. THIRD PARTY RIGHTS:

This MOU does not confer any rights or benefits on any third party.

## 13. PRIVACY:

The IRS and ICE will ensure the integrity and accuracy of personal and financial data. The IRS and ICE will perform their duties in a manner that recognizes and enhances individuals' right of privacy and will ensure their activities are consistent with laws, regulations, and good administrative practices.

## 14. EFFECTIVE DATE:

The effective date of this MOU is the date it has been signed by all parties to the Agreement. The information exchange contained in this agreement will not commence until a separate implementation agreement between the IRS and ICE has been signed and implemented.

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

TD_0000030

## 15.  AMENDMENT OF MOU:

This MOU may be amended by deletion or modification of any provisions, provided that such amendment is in writing and is signed by all parties to the MOU.

## 16. TERMINATION OF MOU:

(U//LES) This MOU will remain in effect as necessary for the IRS to provide address information in response to ICE requests satisfying the requirements contained in this MOU.  This MOU may be terminated upon ninety  (90) days written notice by either the IRS or ICE, which shall describe the rationale for the termination and be publicly posted on the respective party's website 90 days prior to termination.

## 17. LIMITATIONS:

Any provision of this MOU which conflicts with Federal law will be null and void. The provisions of paragraph 11, *Liability*, will continue until all potential liabilities have lapsed.

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

TD_0000031

**APPROVALS**:

U.S. DEPARTMENT OF TREASURY on behalf of the
INTERNAL REVENUE SERVICE

_____
Secretary Scott Bessent

Date: April 07, 2025

U.S. DEPARTMENT OF HOMELAND SECURITY on behalf of the
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

_____

Secretary Kristi Noem

Date: April ____, 2025

12
**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

**EXHIBIT A – POINTS OF CONTACT**

**INTERNAL REVENUE SERVICE:**

    Name:
    Title:
    Phone:
    Email:

    Name:
    Title:
    Phone:
    Email:

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT:**

    Name:
    Title:
    Phone:
    Email:

    Name:
    Title:
    Phone:
    Email:

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

TD_0000033





Department of the Treasury

**IRS** Internal Revenue Service

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

# MEMORANDUM OF UNDERSTANDING

## BETWEEN

## THE U.S. DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE

## AND

## THE U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

## FOR THE EXCHANGE OF INFORMATION FOR NONTAX CRIMINAL ENFORCEMENT

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

TD_0000034

**MEMORANDUM OF UNDERSTANDING**
**BETWEEN**
**U.S. TREASURY DEPARTMENT on behalf of the INTERNAL REVENUE SERVICE**
**AND**
**U.S. DEPARTMENT OF HOMELAND SECURITY on behalf of the U.S.**
**IMMIGRATION AND CUSTOMS ENFORCEMENT,**

**FOR THE EXCHANGE OF INFORMATION FOR NONTAX CRIMINAL**
**ENFORCEMENT**

## 1.  INTRODUCTION:

a.  WHEREAS by Executive Order (EO) No. 14161, <u>Protecting the United States from</u> <u>Foreign Terrorists and Other National Security and Public Safety Threats</u>, 90 Fed. Reg. 8451 (Jan. 20, 2025), the President directed the Secretary of State, in coordination with the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence, to take immediate steps to identify, exclude, or remove aliens illegally present in the United States; and

b.  WHEREAS the Department of Homeland Security has identified numerous aliens illegally present in the United States whom they have represented are under final orders to remove them from the United States; and

c.  WHEREAS the Department of Homeland Security has represented that each of the above-referenced individuals is under criminal investigation for violations of one or more specifically designated Federal criminal statutes (not involving tax administration), including 8 U.S.C. § 1253(a)(1); and

d.  WHEREAS the parties wish to enter into an agreement setting forth the procedures, processes, and safeguards to be followed upon the receipt of a request for the disclosure of information subject to the confidentiality requirements of Internal Revenue Code (IRC) § 6103;

e.  NOW THEREFORE, this Memorandum of Understanding (MOU) between the U.S. Treasury Department / Internal Revenue Service (IRS), and the U.S. Department of Homeland Security / U.S. Immigration and Customs Enforcement (ICE), sets forth the agreement of the parties with respect to ICE's use of the authority in IRC § 6103(i)(2) for the submission of requests for addresses of persons subject to criminal investigation under 8 U.S.C. § 1253(a)(1) or another specifically designated Federal criminal statute.

## 2.  AUTHORITY:

The IRS enters into this MOU pursuant to IRC § 7803(a)(2), delegating to the IRS the authority to administer the Internal Revenue Code, and IRC § 6103(i)(2), authorizing the disclosure of return information other than taxpayer return information for purposes of the enforcement of a specified

nontax Federal criminal statute. ICE enters into this MOU pursuant to 8 U.S.C. § 1253(a)(1), 8 U.S.C. § 1103, and 6 U.S.C. § 112(b)(2).

## 3. PURPOSE:

(U//LES) The purpose of this MOU is to establish the procedures and requirements for ICE's submission of valid IRC § 6103(i)(2) requests for addresses of persons subject to criminal investigation under 8 U.S.C. § 1253(a)(1) or other specifically designated nontax Federal criminal statutes. The specifications and details regarding the IRS's and ICE's procedural obligations and requirements concerning the information exchange will be included in a separate implementation agreement entered into between IRS and ICE.

## 4. CONTACTS:

A. Contacts for this MOU are the IRS designee(s) and the ICE designee(s). Refer to Exhibit A.

B. Succession of Authority. The IRS and ICE anticipate there may be changes to the titles and\or responsibilities of officers and employees designated within this MOU. In the event of such changes, any actions that may be taken under this MOU by said officers or employees, may be taken by any officer(s) or employee(s) the IRS and ICE determine to have succeeded to the relevant portions of said officers' or employees' authorities or responsibilities. Each party shall be responsible for ensuring the points of contact are current by providing a revised Exhibit A to all parties within 30 days of any change.

## 5. DUTIES AND RESPONSIBILITIES OF THE IRS:

The IRS will:

A. Receive requests for address information from ICE.

B. Review each request for completeness and validity and return to ICE any requests not meeting the requirements necessary for disclosure pursuant to IRC § 6103(i)(2). The IRS will provide explanations and/or reasons the request cannot be processed.

C. (U//LES) Search for the last known address for each individual in each request.

D. (U//LES) For each individual the IRS is able to identify from the information provided by ICE, provide the IRS last known address for that individual. For each individual the IRS cannot identify from the information provided by ICE, indicate "no match" in the response.

E. Send responses to ICE in the manner set forth herein.

F. Account for disclosures made under this MOU as required pursuant to IRC § 6103(p)(3)(A).

G. (U//LES) Specifications and details regarding the IRS's procedural obligations and requirements concerning the information exchange will be included in a separate implementation agreement entered into between IRS and ICE.

## 6. DUTIES AND RESPONSIBILITIES OF ICE:

ICE will:

A. (U//LES) Send requests for address information for specifically identified individuals pursuant to the specifications contained in a separate implementation agreement between ICE and IRS.

B. Each request must be made consistent with IRC § 6103(i)(2)(A).

C. (U//LES) Each request will contain the following information with respect to each individual identified in the request:

1. (U//LES) The name and address of the taxpayer.
2. (U//LES) The taxable period or periods as to which the return information (address) they are seeking relates.
3. (U//LES) The specifically designated nontax Federal criminal statute (i.e., 8 U.S.C. § 1253(a)(1) or other specifically designated nontax Federal criminal statute) under which an investigation or proceeding regarding the individual is being conducted.
4. (U//LES) The date of the final order of removal and the related case number assigned to each such order.
5. (U//LES) The specific reason or reasons why disclosure is, or may be, relevant to the nontax criminal investigation or proceeding. Any other information ICE can provide to help the IRS identify each individual, such as SSNs, ITINs, etc.
6. (U//LES) Identity information for the ICE officers and employees personally and directly engaged in the nontax criminal investigation that may result in criminal charges against the individual under the specifically designated Federal criminal statute ICE has identified.

D. (U//LES) Each request will attest that the requested address information will only be used by officers and employees of ICE solely for the preparation for judicial or administrative proceedings, or investigation that may lead to such proceedings, pertaining to the enforcement of 8 U.S.C. § 1253(a)(1), other specifically designated Federal criminal statute, or any subsequent criminal proceedings.

E. ICE will use and redisclose the address information only as specifically authorized by IRC § 6103(i)(2) as implemented in 26 C.F.R § 301.6103(i)-1. Specifically, the regulations provide:
1. (U//LES) Return information disclosed under IRC § 6103(i)(2) shall be open to inspection by or disclosure to ICE officers and employees personally and directly engaged in, and for their necessary use in, proceedings and investigations that may result in such proceedings, pertaining to the enforcement of a specifically designated nontax Federal criminal statute.

2. (U//LES) Return information disclosed under IRC § 6103(i)(2) may be disclosed by such

3

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

ICE officers and employees to other persons only to the extent necessary to the enforcement of the specifically designated nontax Federal criminal statute, including:

    a. (U//LES) To properly obtain the services of persons having special knowledge or technical skills (such as, but not limited to, handwriting analysis, photographic development, sound recording enhancement, or voice identification);

    b. (U//LES) To properly interview, consult, depose, or interrogate or otherwise obtain relevant information from, the taxpayer to whom such return or return information relates (or such taxpayer's legal representative) or any witness who may be called to give evidence in the proceeding; or

    c. (U//LES) To properly conduct negotiations concerning, or obtain authorization for, disposition of the proceeding, in whole or in part, or stipulations of fact in connection with the proceeding.

3. (U//LES) Among those persons to whom returns and return information may be disclosed by officers and employees of ICE on a need-to-know basis as provided are:

    a. (U//LES) Other ICE officers and employees such as clerical personnel (for example, secretaries, stenographers, docket and file room clerks, and mail room employees) and supervisory personnel;

    b. (U//LES) Officers and employees of another Federal agency (as defined in section 6103(b)(9)) working under the direction and control of such ICE officers and employees; and

    c. (U//LES) Court reporters.

F. (U//LES) ICE will ensure the proper handling, transmission, safeguarding, and security of the address information as contained in Sections 8 and 9 of this MOU.

G. Specifications and details regarding ICE's procedural obligations and requirements concerning the information exchange will be included in a separate implementation agreement entered into between IRS and ICE.

4

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

**7. DESCRIPTION OF THE RECORDS:**

A. Systems of Records Notices

    1. The IRS will
        a. (U//LES) disclose address information from the System(s) of Records described in a separate implementation agreement entered into between the IRS and ICE.

    2. ICE will
        a. (U//LES) disclose the following subject identifier information: CVID; A Number; First, Middle and Last Name; Address Information; Date of Birth; Country of Citizenship; FBI Numbers; and Fingerprint Identification Number (FINS), from the System(s) of Records described in a separate implementation agreement entered into between the IRS and ICE; and

        b. (U//LES) maintain the address information provided by the IRS in the System(s) of Records described in a separate implementation agreement entered into between the IRS and ICE.

**8. INFORMATION SECURITY:**

The IRS and ICE will comply with the requirements of the Federal Information Security Management Act (FISMA), 44 U.S.C. Chapter 35, Subchapter II, as amended by the Federal Information Security Modernization Act of 2014 (Pub. L. No. 113-283); related Office of Management and Budget (OMB) circulars and memoranda, such as Circular A-130, Managing Information as a Strategic Resource (July 28, 2016), and Memorandum M-17-12, Preparing for and Responding to a Breach of Personally Identifiable Information (PII) (Jan. 3, 2017); National Institute of Standards and Technology (NIST) directives; and the Federal Acquisition Regulations, including amendments published after the effective date of this MOU. These laws, directives, and regulations include requirements for safeguarding Federal information systems and Personally Identifiable Information used in Federal agency business processes, as well as related reporting requirements. Both agencies recognize, and will implement, the laws, regulations, NIST standards, and OMB directives, including those published subsequent to the effective date of this MOU.

The FISMA requirements apply to all Federal contractors, organizations, or entities that possess or use Federal information, or that operate, use, or have access to Federal information systems on behalf of an agency. Both agencies are responsible for oversight and compliance of their contractors and agents.

TD_0000039

A. Incident Reporting

If the IRS or ICE experiences an incident involving the loss or breach of PII provided by IRS under the terms of this MOU, they will follow the incident reporting guidelines issued by OMB. In the event of a reportable incident under OMB guidance involving PII, the agency experiencing the incident is responsible for following its established procedures, including notification to proper organizations (i.e., Cybersecurity & Infrastructure Security Agency (CISA) and the agency's privacy office). Immediately upon discovery of a potential cybersecurity incident involving IRS-provided PII, ICE will contact the IRS Computer Security Incident Response Center (CSIRC) at 240-613-3606.

B. Breach Notification

The IRS and ICE will follow PII data breach notification policies and related procedures as required by OMB Memorandum M-17-12 (Jan. 3, 2017). If the agency that experienced the data breach, after conducting a risk assessment, determines notification to the potentially impacted individuals and an offer of an identity protection/identity monitoring service, and/or other remedies is required, that agency will carry out the remedies without cost to the other agency.

## 9.  DISCLOSURE, SAFEGUARDS, AND RECORD KEEPING REQUIREMENTS:

A.  ICE will maintain all Federal tax returns and return information sourced from the IRS in accordance with IRC § 6103(p)(4) and comply with the safeguards requirements set forth in Publication 1075, *Tax Information Security Guidelines for Federal, State and Local Agencies*. Publication 1075 is the IRS-published guidance for security guidelines and other safeguards for protecting returns and return information, pursuant to 26 C.F.R. § 301.6103(p)(4).

The IRS safeguarding requirements include:

1. ICE will establish a central point of control for all requests for and receipt of Federal tax returns and return information and maintain a log to account for all subsequent disclosures and products made with/from that information, and movement of the information until destroyed, in accordance with Publication 1075.

2. ICE will establish procedures for secure storage of Federal tax returns and return information consistently maintaining two barriers of protection to prevent unauthorized access to the information, including when in transit, in accordance with Publication 1075.

3. ICE will consistently label Federal tax returns and return information obtained under this MOU to make it clearly identifiable and to restrict access by unauthorized individuals. Any duplication or transcription of Federal tax returns and return information creates new records which must also be properly accounted for and safeguarded. Federal tax returns and return information should not be commingled with other ICE records unless the entire file is safeguarded in the same manner as required for Federal tax returns and return

6
**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

information and the Federal tax information (FTI) within is clearly labeled in accordance with Publication 1075.

4. ICE will restrict access to Federal tax returns and return information solely to officers and employees of ICE as described in this MOU for the purposes of carrying out this MOU. Prior to access ICE must evaluate which employees require such access. Authorized individuals may only access Federal tax returns and return information to the extent necessary to perform services related to, and as authorized by, this MOU, in accordance with Publication 1075.

5. Prior to initial access to FTI and annually thereafter, ICE will ensure that employees and officers that will have access to Federal tax returns and return information receive awareness training regarding the confidentiality restrictions applicable to the Federal tax returns and return information and certify acknowledgement in writing that they are informed of the criminal penalties and civil liability provided by IRC §§ 7213, 7213A, and 7431 for any willful disclosure or inspection of Federal tax returns and return information that is not authorized by the IRC, in accordance with Publication 1075.

6. ICE will submit an annual Safeguard Security Report (SSR) to the Office of Safeguards by the submission deadline specified in Publication 1075 to provide an update on safeguarding activities during the reporting period. The SSR will also provide Head of Agency certification that the SSR addresses all Outstanding Actions identified by the IRS Office of Safeguards from the agency's prior year SSR; accurately and completely reflects ICE's current environment for the receipt, storage, processing, and transmission of FTI; accurately reflects the security controls in place to protect the FTI in accordance with Publication 1075 and of ICE's commitment to assist the Office of Safeguards in the joint effort of protecting the confidentiality of FTI; support the Office of Safeguards on-site review to assess ICE's compliance with Publication 1075 requirements by means of manual and automated compliance and vulnerability assessment testing, including coordination with information technology (IT) divisions to secure pre-approval, if needed, for automated system scanning and to support timely mitigation of identified risk to FTI in ICE's Corrective Action Plan (CAP) for as long as ICE maintains Federal tax returns and return information. Required reports will be transmitted in electronic format and on the template provided by IRS Office of Safeguards using an IRS-approved encryption method in accordance with Publication 1075.

7. ICE will timely report all data incidents involving FTI to the Office of Safeguards and cooperate with Office of Safeguards investigators, providing data and access as needed to determine the facts and circumstances of the incident.

8. When a data incident results in ICE taking adverse or disciplinary action against an employee based on an unauthorized inspection or disclosure of FTI in violation of ICE's procedures ICE must notify each impacted taxpayer in writing. The notification letter must include the date of the unauthorized inspection or disclosure and the rights of the taxpayer

7

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

under IRC § 7431. ICE must report to IRS Safeguards when taxpayer notification letters are issued, in accordance with Publication 1075.

9. ICE will ensure that Federal tax return and return information is properly destroyed or returned to the IRS when no longer needed based on established ICE record retention schedules in accordance with Publication 1075.

10. ICE will conduct periodic internal inspections of facilities where Federal tax returns and return information is maintained to ensure IRS safeguarding requirements are met and will permit the IRS access to such facilities as needed to review the extent to which ICE is complying with the IRC § 6103(p)(4) requirements of this section.

11. IRC § 6103(p)(9) requires ICE to conduct on-site assessments of each contractor's compliance with safeguarding requirements. ICE must submit findings of the most recent review as part of the annual SSR submission. ICE must certify to the IRS that each contractor is in compliance with safeguarding standards in accordance with Pub 1075. ICE must ensure that contracts with contractors and subcontractors performing work involving returns or return information contain specific language requiring compliance with IRC § 6103(p)(4) and Publication 1075 standards. Contract language must enforce ICE's right to access contractor and subcontractor facilities in order to comply with IRC § 6103(p)(9) to ensure IRS safeguarding requirements are met.

12. Usage of FTI for Artificial Intelligence (AI) purposes must be disclosed to the Office of Safeguards for assessment of compliance with safeguard requirements.

B. Generally, this MOU covers secure electronic transmission of Federal tax returns and return information to ICE, provided ICE computer systems are compliant with National Institute of Standards and Technology (NIST) Special Publication 800-53 standards and guidance for security of data at the moderate impact level. ICE's SSR must fully describe the computer system and security controls implemented for the receipt, processing, storage, and transmission of electronic Federal tax returns and return information. Required security controls for systems that receive, process, store, and transmit electronic Federal tax returns and return information are specified in Publication 1075.

C. Any creation or receipt of Federal tax returns and return information in paper format must also be fully disclosed in ICE's SSR. Required security controls associated with the receipt, processing, and storage of any Federal tax returns and return information received in paper format are specified in Publication 1075.

D. ICE must report suspected unauthorized inspection or disclosure of Federal tax returns and return information within 24 hours of discovery to the IRS Office of Safeguards in accordance with Publication 1075.

E. IRS will conduct periodic safeguard reviews of ICE to assess whether security and confidentiality of Federal tax returns and return information is maintained consistent with the

8
**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

safeguarding protocols described in Publication 1075, ICE's SSR, and in accordance with the terms of this MOU. Periodic safeguard reviews will involve the inspection of ICE's facilities where FTI is maintained; the testing of technical controls for computer systems storing, processing, or transmitting FTI; review of ICE's recordkeeping and policies; and interviews of ICE's employees to verify the use of FTI and to assess the adequacy of procedures established to protect FTI.

F.  ICE recognizes and will reflect in its actions and procedures that all Safeguards documents and related communications are IRS official records; that they are property of the IRS; that IRS records are subject to disclosure restrictions under Federal law and IRS rules and regulations and may not be released publicly under state Sunshine or Information Sharing/Open Records provisions and that any requestor seeking access to IRS records should be referred to the Federal Freedom of Information Act (FOIA) statute. If ICE determines that it is appropriate to share Safeguards documents and related communications with another governmental function/branch for the purposes of operational accountability or to further facilitate protection of FTI, the recipient governmental function/branch must be made aware, in unambiguous terms, that Safeguards documents and related communications are property of the IRS; that they constitute IRS official records; that any request for the release of IRS records is subject to disclosure restrictions under Federal law and IRS rules and regulations and that any requestor seeking access to IRS records should be referred to the Federal Freedom of Information Act (FOIA) statute. Federal agencies in receipt of FOIA requests for Safeguards documents must forward them to IRS for reply.

G.  All information received from ICE under this MOU becomes return information as defined in IRC § 6103(b)(2) and will not be further disclosed or disseminated except as authorized by IRC § 6103.

## 10.  TRANSMITTAL PROCEDURES:

Transmittal procedures and transmittal security requirements will be included in a separate implementation agreement entered into between IRS and ICE.

9

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

**11. LIABILITY:**

A.  Each party to this MOU shall be liable for the acts and omissions of its own employees.

B.  The IRS shall not be liable for any injury to another party's personnel or damage to another party's property unless such injury or damage is compensable under the Federal Tort Claims Act (28 U.S.C. § 1346(b)), or pursuant to other Federal statutory authority. Similarly, ICE shall not be liable for any injury to another party's personnel or damage to another party's property unless such injury or damage is compensable under applicable Federal Tort Claims Act (28 U.S.C. § 1346(b)), or pursuant to other Federal statutory authority.

C.  This MOU is not an obligation or commitment of funds, nor a basis for transfer of funds, but rather is a basic statement of the understanding between the parties. Unless otherwise agreed in writing, each party shall bear its own costs in relation to this MOU. Expenditures by each party will be subject to its budgetary processes and to the availability of funds and resources pursuant to applicable laws, regulations, and policies.

**12. THIRD PARTY RIGHTS:**

This MOU does not confer any rights or benefits on any third party.

**13. PRIVACY:**

The IRS and ICE will ensure the integrity and accuracy of personal and financial data. The IRS and ICE will perform their duties in a manner that recognizes and enhances individuals' right of privacy and will ensure their activities are consistent with laws, regulations, and good administrative practices.

**14. EFFECTIVE DATE:**

The effective date of this MOU is the date it has been signed by all parties to the Agreement. The information exchange contained in this agreement will not commence until a separate implementation agreement between the IRS and ICE has been signed and implemented.

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

**15.  AMENDMENT OF MOU:**

This MOU may be amended by deletion or modification of any provisions, provided that such amendment is in writing and is signed by all parties to the MOU.

**16. TERMINATION OF MOU:**

(U//LES) This MOU will remain in effect as necessary for the IRS to provide address information in response to ICE requests satisfying the requirements contained in this MOU.  This MOU may be terminated upon ninety  (90) days written notice by either the IRS or ICE, which shall describe the rationale for the termination and be publicly posted on the respective party's website 90 days prior to termination.

**17. LIMITATIONS:**

Any provision of this MOU which conflicts with Federal law will be null and void. The provisions of paragraph 11, *Liability*, will continue until all potential liabilities have lapsed.

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

TD_0000045

**APPROVALS**:

U.S. DEPARTMENT OF TREASURY on behalf of the
INTERNAL REVENUE SERVICE

_____
Secretary Scott Bessent

Date: April 07, 2025

U.S. DEPARTMENT OF HOMELAND SECURITY on behalf of the
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

_____
Secretary Kristi Noem

Date: April ___, 2025

**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

TD_0000046

**APPROVALS**:

U.S. DEPARTMENT OF TREASURY on behalf of the
INTERNAL REVENUE SERVICE

_____
Secretary Scott Bessent

Date: April ___, 2025

U.S. DEPARTMENT OF HOMELAND SECURITY on behalf of the
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

_____
Secretary Kristi Noem

Date: April 7, 2025

12
**UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE**

**EXHIBIT A – POINTS OF CONTACT**

**INTERNAL REVENUE SERVICE:**

Name: ███████████
Title: ███████████████
Phone: █████████
Email: ██████████

Name: ██████████
Title: ██████████████
Phone: █████████
Email: ████████████

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT:**

Name:
Title:
Phone:
Email:

Name:
Title:
Phone:
Email:

13

| | |
|---|---|
| **From:** | Walters Kathleen E [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=D8BEE781F465493581F4BB950107AD94-[ PII ]] |
| **Sent:** | 4/3/2025 1:29:30 PM |
| **To:** | [ PII ]@irs.gov] |
| **Subject:** | RE: Counsel contacts |

Yes, it is a technical meeting to work out the details of implementation so that we can finalize the implementation agreement – so they need their technical folks and we'll have ours (RAAS, IT, us).

**From** [ PII ]@irs.gov>
**Sent:** Thursday, April 3, 2025 9:28 AM
**To:** Walters Kathleen E <Kathleen.E.Walters@irs.gov>
**Subject:** RE: Counsel contacts

They just asked if this is a technical meeting and if they should invite their technical staffers….what do you think?

**From:** Walters Kathleen E <Kathleen.E.Walters@irs.gov>
**Sent:** Thursday, April 3, 2025 8:27 AM
**To:** [ PII ]@irs.gov>
**Subject:** RE: Counsel contacts

Just put it on the calendar. This is a priority of both of our Secretaries, so unless they have something more pressing, they'll make it work.

Thanks!

**From:** [ PII ]@irs.gov>
**Sent:** Thursday, April 3, 2025 9:16 AM
**To:** Walters Kathleen E <Kathleen.E.Walters@irs.gov>
**Subject:** RE: Counsel contacts

On it, thanks! I emailed them asking if 1pm EST worked for them…

**From:** Walters Kathleen E <Kathleen.E.Walters@irs.gov>
**Sent:** Thursday, April 3, 2025 8:02 AM
**To** [ PII ]@irs.gov>
**Subject:** FW: Counsel contacts

Here are the two individuals to be included for the meeting. Subject: Implementation MOU Discussion

Thank you!

**From** [ PII ]@IRSCOUNSEL.TREAS.GOV>
**Sent:** Wednesday, April 2, 2025 8:37 PM
**To:** Walters Kathleen E <Kathleen.E.Walters@irs.gov>
**Cc:** Loiacono, Adam V [ PII ]@ice.dhs.gov>; [ PII ]@hsi.dhs.gov>; [ PII ]
[ PII ]@IRSCOUNSEL.TREAS.GOV>
**Subject:** RE: Counsel contacts

Hi Kathleen,

I'm looping in my contacts at DHS, Kathleen.  Their names of Adam Loiacono and [PII] and they are cc'd to this email.

Adam/[PII] – I've looped in my colleague Ms. Kathleen Walters at the IRS – she is our Chief Privacy Officer and will coordinate the right parties at the IRS so that we can meet and coordinate to implement our sharing agreement between our two agencies.

Many thanks,

[PII]

[PII]
Senior Technician Reviewer
Internal Revenue Service
Office of Chief Counsel (Procedure & Administration)
1111 Constitution Ave., NW
Washington, D.C.  20224

[PII]

| | |
|---|---|
| From: | [PII] /O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=A7FEB64DBAEF47F7807EA11FEF5E7283-[PII] |
| Sent: | 4/3/2025 1:34:42 PM |
| To: | [PII]e@irs.gov]; Loiacono, Adam V [[PII]@ice.dhs.gov]; [PII] [PII]@hsi.dhs.gov]; Walters Kathleen E [kathleen.e.walters@irs.gov]; Grimes Phyllis T [phyllis.t.grimes@irs.gov]; [PII]@irscounsel.treas.gov]; [PII] [PII]@irscounsel.treas.gov]; Rashidi Reza [reza.rashidi@irs.gov]; Pandya Kaschit [kaschit.pandya@irs.gov]; Musselman Bryan L [bryan.musselman@irs.gov]; Egaas Todd O [todd.o.egaas@irs.gov]; [PII]@irs.gov]; [PII]@irs.gov] |
| CC: | [PII]l@hsi.dhs.gov]; [PII]@hsi.dhs.gov]; De Mello Andrew A [andrew.arthur.demello@irscounsel.treas.gov] |
| Subject: | Implementation MOU Discussion |
| Location: | Microsoft Teams Meeting |
| Start: | 4/3/2025 4:30:00 PM |
| End: | 4/3/2025 5:30:00 PM |
| Show Time As: | Busy |
| | |
| Required Attendees: | [PII] Loiacono, Adam V; [PII] Walters Kathleen E; Grimes Phyllis T; [PII] [PII] Rashidi Reza; Pandya Kaschit; Musselman Bryan L; Egaas Todd O; [PII] |
| Optional Attendees: | [PII] [PII] De Mello Andrew A |

Hi everyone – please forward as needed, thank you.

---

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: ███████████████

Passcode ████████

---

### Dial in by phone

████████████████████████ United States, Georgetown

Find a local number

Phone conference ID: ████████████

For organizers: Meeting options | Reset dial-in PIN

Meeting hosts (organizers, co-organizers) hold responsibility for controlling the meeting environment, such as removing unauthorized parties, muting audio or video when appropriate to protect privacy, giving notice and getting consent for recording, promoting others as presenters or co-organizers to help moderate the meeting and chat, and setting meeting options. Please refer to IRM 10.5.1.6.18.2 for more information.

---

UNCLASSIFIED//FOR
OFFICIAL USE ONLY

# Implementing Agreement

# for the

# Memorandum of Understanding for the

# Exchange of Information for Nontax Criminal

# Enforcement

# between

# the U.S Department of Homeland Security,

# U.S. Immigration and Customs Enforcement

# and

# the U.S Department of the Treasury,

# Internal Revenue Service

UNCLASSIFIED//FOR OFFICIAL USE ONLY

**I.**  Purpose

This Agreement provides implementing procedures for the Memorandum of Understanding between the U.S. Department of the Treasury, Internal Revenue Service (IRS) and the U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE) for the Exchange of Information for Nontax Criminal Enforcement. (MOU), dated April 7, 2025.  ICE will send, and IRS will receive, requests for information for specifically identified individuals via transmittal procedures contained in Section II of this Agreement.

**II.**  Procedures

01.  Disclosures by ICE to the IRS will be in accordance with IRC § 6103(i)(2) and all other applicable law, regulation, and policy.  Information may be securely transmitted via Kiteworks or as otherwise agreed upon.

02.  IRS will search the Integrated Data Retrieval System (IDRS) for the information requested.

03.  Disclosures by the IRS to ICE: Information may be securely transmitted via Kiteworks or as otherwise agreed upon.

**III.**  Description of the Records

01.    The IRS will

a.    disclose requested information from the following System(s) of Records:

1.    Treasury/IRS 22.060 Automated Non-Master File, 80 FR 54064 (Sept. 8, 2015)
2.    Treasury/IRS 34.037 IRS Audit Trail and Security Records System, 80 FR 54064 (Sept. 8, 2015)
3.    Treasury/IRS 24.030 Customer Account Data Engine Individual Master File, 80 FR 54064 (Sept. 8, 2015)
4.    Treasury/IRS 24.046 Customer Account Data Engine Business Master File, 80 FR 54064 (Sept. 8, 2015)
5.    Treasury/IRS 22.061 Individual Return Master File, 80 FR 54064 (Sept. 8, 2015)
6.    Treasury/IRS 42.008 Audit Information Management System, 80 FR 54064 (Sept. 8, 2015)

b.    treat the incoming data from ICE as transient data and destroy the data when no longer needed for business use, in accordance with General Record Schedule 5.2, item 010.

02.    ICE will

a.  disclose the following subject identifier information: CVID; A Number; First, Middle and Last Name; Date of Birth; Address Information; Country of Citizenship; FBI

2 UNCLASSIFIED//FOR OFFICIAL USE ONLY

Numbers; and Fingerprint Identification Number (FINS), from the following System(s) of Records:

1. Alien File, Index, and National File Tracking, 82 F.R. 43556 (Sep. 18, 2017).
2. External Investigations, 85 F.R. 74362 (Nov. 20, 2020).
3. Criminal Arrest Records and Immigration Enforcement Records (CARIER), 89 F.R. 55638 (Jul. 5, 2024).

b.  maintain the information provided by IRS in the following Systems of Records:

1. Alien File, Index, and National File Tracking, 82 F.R. 43556, (Sep. 18, 2017).
2. External Investigations, 85 F.R. 74362 (Nov. 20, 2020).
3. Criminal Arrest Records and Immigration Enforcement Records (CARIER), 89 F.R. 55638 (Jul. 5, 2024)

c.  ICE will ensure that Federal tax return and return information is properly destroyed or returned to the IRS when no longer needed based on established ICE record retention schedules in accordance with IRS Publication 1075, *Tax Information Security Guidelines for Federal, State and Local Agencies*.

The information in these systems of records notices may be updated during the effective period of this MOU as required by the Privacy Act.

**IV.**  Reproduction Costs

It is mutually agreed that the parties signing this Agreement will not charge one another for costs incurred in production or reproduction of information provided under this Agreement.

Nothing in this MOU is intended or shall be construed to require the obligation, appropriation, or expenditure of funds from the U.S. Treasury in violation of the Anti-Deficiency Act, 31 U.S.C. §§ 1341-1519.

**V.**  Approval Signatures

TODD M LYONS
Digitally signed by TODD M LYONS
DN: cn=TODD M LYONS, o=U.S. Government, ou=People, email=Todd.M.Lyons@ice.dhs.gov, c=US
Date: 2025-04-18T16:50:24-0400

_____          _____
Signature                                                     Date

Todd Lyons
Director (Acting)
Immigration and Customs Enforcement
500 12th St SW
Washington, DC 20536

Dottie A.
Romo

Digitally signed by
Dottie A. Romo
Date: 2025.04.18
13:52:42 -04'00'

_____          _____
Signature                                Date

Dottie Romo
Chief Operating Officer (Acting)
Internal Revenue Service
1111 Constitution Ave NW
Washington DC 20224

4

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CENTRO DE TRABAJADORES UNIDOS,
*et al.*,

        *Plaintiffs*,

  v.

SCOTT BESSENT, *et al.*,

        *Defendants.*

No. 25-cv-0677 (DLF)

## <u>MEMORANDUM OPINION & ORDER</u>

Plaintiffs Centro de Trabajadores Unidos, Immigrant Solidarity DuPage, Somos Un Pueblo Unido, and Inclusive Action for the City bring this action seeking declaratory and injunctive relief to prevent the Internal Revenue Service (IRS) from sharing personal tax information with the Department of Homeland Security (DHS) for immigration enforcement purposes.  Before the Court is the plaintiffs' Motion for Preliminary Injunction, Dkt. 28.  For the reasons that follow, the Court will deny the motion.

## I.  BACKGROUND

The Internal Revenue Code requires taxes to be paid on all income earned in the United States, regardless of the earner's status in the country.  Am. Compl. ¶ 39, Dkt. 17.  United States citizens file taxes using a Social Security Number.  *Id.* ¶ 40.  Noncitizens generally cannot obtain SSNs, so they typically register with the IRS to obtain an Individual Taxpayer Identification Number (ITIN).  *Id.* ¶ 41.  To do so, registrants must provide their full name, address, and other identifying information.  *Id.*  Under the tax code, those records are kept confidential and may not be shared outside the IRS, unless a particular statutory exception applies.  26 U.S.C. § 6103(a).

As relevant here, one such exception, § 6103(i)(2), allows the head of any federal agency to request tax return information to aid in investigating or preparing for a judicial or administrative proceeding to enforce designated criminal statutes.  *Id.* § 6103(i)(2); Am. Compl. ¶ 48.  The agency head must first submit the request in writing and must specifically identify the name and address of the taxpayer, the relevant taxable periods, the statutory basis for the enforcement proceeding, and the need for the disclosure.  26 U.S.C. § 6103(i)(2)(B).

The plaintiffs allege that DHS is seeking access to taxpayer information to identify, locate and remove illegal immigrants, in violation of § 6103.  Am. Compl. ¶ 35.  In support, the plaintiffs point to newspaper articles reporting that DHS requested that the IRS provide identifying records for at least 700,000 illegal immigrants.  *Id.* ¶ 36.  As alleged, that request was denied.  *Id.* ¶ 37.  But according to certain media outlets and other unnamed IRS sources, the acting IRS commissioner is "negotiating an agreement" with DHS and is "reportedly close to terms."  *Id.* Under the terms of this agreement, as alleged, the IRS would unlawfully provide address information so that DHS can locate illegal immigrants for civil enforcement proceedings.  Am. Compl. ¶ 55.

On April 7, 2025, the defendant agencies entered into a Memorandum of Understanding, Dkt. 38-1, which sets forth a process for exchanging information under 26 U.S.C. § 6103(i)(2). As the Memorandum provides, its purpose is to establish procedures enabling "requests for addresses of persons subject to *criminal* investigation."  *Id.* § 3 (emphasis added).  Consistent with § 6103(i)(2), the head of DHS must first submit a written request to the IRS that satisfies the statutory requirements necessary for disclosure, and only then can the IRS provide DHS with certain tax return information.  Memorandum § 5(B) (requiring the IRS to "[r]eview each request

2

for completeness and validity and return to ICE any requests not meeting the requirements necessary for disclosure pursuant to IRC § 6103(i)(2)").

The plaintiffs are four nonprofit organizations representing the interests of immigrants. Centro de Trabajadores Unidos (Centro) and Immigrant Solidarity DuPage (Immigrant Solidarity) are located in Illinois and work to "build immigrant and worker power" and "advance the dignity of workers." *Id.* ¶¶ 10, 11. Somos Un Pueblo Unidos (Somos) is a Santa Fe, New Mexico nonprofit working to provide "education and legal support" to communities in New Mexico, including immigrant communities. *Id.* ¶ 12. Inclusive Action for the City (IAC) provides low-interest loans to entrepreneurs, including immigrants with ITINs. *Id.* ¶ 13. The plaintiffs seek to enjoin the IRS from disclosing tax information to DHS pursuant to the agencies' agreement. Pls.' Mot. at 2.

## II.    LEGAL STANDARDS

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). To prevail, a party seeking preliminary injunctive relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (citations and internal quotation marks omitted). Where a federal agency is the defendant, the last two factors merge. *See Am. Immigr. Council v. DHS*, 470 F. Supp. 3d 32, 36 (D.D.C. 2020).

## III.   ANALYSIS

The Court's analysis begins and ends with the likelihood of success on the merits. To succeed on the merits, "[a] plaintiff must show a likelihood of success encompass[ing] not only

3

substantive theories but also establishment of jurisdiction," including standing to sue. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (quoting *Mills v. D.C.*, 571 F.3d 1304, 1308 (D.C. Cir. 2009)). "In the context of a preliminary injunction motion, [courts] require the plaintiff to show a substantial likelihood of standing under the heightened standard for evaluating a motion for summary judgment." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity,* 878 F.3d 371, 377 (D.C. Cir. 2017) (cleaned up). The plaintiff "bear[s] the burdens of production and persuasion." *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 281 (D.D.C. 2005) (citing *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)). A plaintiff's "inability to establish a substantial likelihood of standing requires denial of the motion for preliminary injunction." *Food & Water Watch*, 808 F.3d at 913.

A. **Standing**

To establish standing, a plaintiff must show: (1) an "injury in fact"; (2) a "causal connection between the injury" and the challenged action; and (3) a likelihood that the "injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted). When an organization seeks to bring suit on behalf of its members—that is, to assert associational standing—it must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wa. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). An organization's members have standing to sue in their own right when they can demonstrate that they would suffer an "injury in fact" that is "(a) concrete and particularized" and "(b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560–61 (cleaned up).

4

Claims for declaratory or injunctive relief carry "a significantly more rigorous burden to establish standing." *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (internal quotation marks omitted).  That is because when "plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011).  Instead, a plaintiff must show an "ongoing injury" or "immediate threat of injury." *Id.*

Three of the plaintiff organizations—Centro, Immigrant Solidarity, and Somos—assert associational standing on behalf of their members.  Rough Hr'g Tr. at 7.  Because "a plaintiff must demonstrate standing for each claim he seeks to press," *Davis v. FEC*, 554 U.S. 724, 734 (2008), the plaintiffs must establish that each alleged injury is imminent.  The plaintiffs allege that their members will be injured by (1) the IRS sharing address information with DHS, in violation of 26 U.S.C. § 6103; (2) DHS using the information for civil enforcement purposes; and (3) the IRS disrupting settled reliance interests without due consideration.  Pls.' Mot. at 15, 17; Rough Hr'g Tr. at 10.  To assess whether the plaintiffs have standing, the Court will assume that the IRS's decision to share address information violates § 6103.  *Tanner-Brown v. Haaland*, 105 F.4th 437, 444–45 (D.C. Cir. 2024) (assuming for the standing analysis the legal merits of plaintiffs' alleged injury).  For the reasons that follow, all three plaintiffs have associational standing to challenge whether the IRS acted arbitrarily and capriciously by entering into an information sharing agreement with DHS, as reflected in the Memorandum, and Somos has standing to challenge the lawfulness of the agreement.

1.      IRS Disclosure of Information

Unlike at the Temporary Restraining Order stage, Somos has established an imminent and particularized risk of injury based on its claim that the IRS is poised to share information with

5

DHS, in violation of 26 U.S.C. § 6103. The Court now has the benefit of the Memorandum which explicitly authorizes the sharing of certain tax return information for criminal immigration enforcement purposes. Memorandum § 1. Somos, an organization that represents the interests of immigrants, has submitted a declaration attesting that its members have provided information to the IRS and are currently subject to final removal orders, *see, e.g.*, Diaz Decl. ¶ 9, Ex. G, Dkt. 28-8.[1] This evidence establishes that the IRS and DHS intend to share taxpayer information and that this information is likely be used against Somos' members. This is a cognizable injury that is both traceable to the IRS's interpretation of § 6103 and redressable by a court decision prohibiting the IRS from interpreting the statute in the manner that is contemplated by the IRS's agreement with DHS. And it is not necessary that Somos' members participate in this lawsuit. *Hunt*, 432 U.S. at 343. Accordingly, Somos has established associational standing to challenge the information-sharing agreement, and the Court will reach the merits of its claim that the agreement is unlawful under § 6103.

> 2.      DHS Use of Information for Civil Immigration Enforcement Proceedings

The plaintiffs next claim that IRS disclosures will be used to "facilitate the *civil* enforcement of immigration laws," in violation of § 6103. Pls.' Mot. at 14 (emphasis added); Am. Compl. ¶¶ 63, 65. The Court agrees that requesting and receiving information for civil enforcement purposes would constitute a cognizable injury, but none of the organizations have established that such an injury is imminent. As the plaintiffs acknowledge, the Memorandum only allows sharing information for *criminal* investigations and "the terms on the page [of the

---

[1] By contrast, Centro and Immigrant Solidarity submitted declarations from members stating that they had provided information to the IRS, but not that they were subject to final removal orders. *See* Doe Decl. ¶ 5, Ex. I, Dkt. 28-10; Doe Decl. ¶¶ 3–6, Ex. J, Dkt. 28-11; Doe Decl. ¶ 5, Ex. H, Dkt. 28-9. Thus, they have not established that any member is likely to be imminently subject to the information-sharing agreement.

6

Memorandum] do appear to comply with the requirements" of § 6103(i)(2). Rough Hr'g Tr. at 12. Even so, they argue that it is not "plausible" that DHS has the resources to conduct individualized criminal investigations on the large numbers of immigrants it seeks to remove from the United States. *Id.* at 15. For support, they rely on a newspaper article that reports that DHS is seeking location information for 700,000 or alternatively seven million, illegal immigrants, Pls.' Mot. at 15; Reply at 5, Dkt. 32. Plaintiffs also point to Executive Order No. 14161, which directs agencies to take "immediate steps to identify, exclude, or remove aliens illegally present in the United States." Memorandum, §1(a) (citing 90 Fed. Reg. 8451 (Jan. 20, 2025)).

On this limited record, the Court cannot assume that DHS intends to use the shared information to facilitate civil rather than criminal proceedings. *Waite v. Macy*, 246 U.S. 606, 609 (1918). The language of the Memorandum is clear: It authorizes the sharing of information related to individuals who are "under criminal investigation for violations of one or more specifically designed Federal criminal statutes," Memorandum § 1(c), and it affirms that its specific purpose is to assist DHS in criminal investigations and proceedings, *id.* § 3. The government's representations at the hearing confirm this explicit understanding. Counsel for the government unequivocally assured the Court that if the IRS received a request from DHS for information to support a civil proceeding, the IRS would deny that request. *See, e.g.,* Rough Hr'g Tr. at 58. Counsel also confirmed that, should DHS decide to abort the criminal investigation and exclusively pursue deportation, DHS would not be allowed to rely on the information from the IRS and would have to return it. *Id.* at 61. At this stage, the plaintiffs have not established that it is likely that IRS disclosures will be used to "facilitate the civil enforcement of immigration laws," Pls' Mot. at 14, in violation of § 6103, and thus, they lack standing to raise this claim.

7

### 3. Arbitrary and Capricious IRS Action

The plaintiffs do, however, have standing to pursue their claim that the IRS acted arbitrarily and capriciously in reversing its position on the sharing of tax information with DHS. The plaintiffs offer declarations that their members relied on the IRS's past assurances that tax information would not be shared for immigration enforcement purposes. *See, e.g.*, Doe Decl. ¶ 6, Ex. H; Doe Decl ¶ 6, Ex. I. These individuals now fear that they will be harmed for relying on those assurances and for filing their taxes as obligated. Ex. H ¶ 6; Ex. I ¶ 6–7. And if the IRS reverses course without properly considering their reliance interests, as they allege, the plaintiffs' members will suffer injury. This injury is both traceable to the IRS's change in position and redressable by a court order requiring the IRS to consider the plaintiff members' reliance interest before implementing the Memorandum. The Court therefore will proceed to the merits on the claim that the defendants acted arbitrarily and capriciously by changing their policy to permit information sharing between the IRS and DHS.

\*     \*     \*

In sum, Centro, Immigrant Solidarity, and Somos have established standing to challenge the agencies' agreement to share information as arbitrary and capricious, and Somos alone has established standing to challenge the agreement as in excess of the IRS's statutory authority. The Court need not determine at this early stage whether IAC also has organizational standing to bring these claims. For the reasons stated above, all of the plaintiffs, including IAC, lack standing to pursue their claim that the agencies will share information for *civil* enforcement purposes, in violation of § 6103.

8

### B.    Merits

Turning to the merits, the plaintiffs argue that the information sharing agreement between the IRS and DHS violates the Administrative Procedures Act in two ways—it is "not in accordance with law" and was entered into "arbitrarily" and "capriciously." 5 U.S.C. § 706(2)(A).[2]  According to the plaintiffs, § 6103(i)(2) does not allow the IRS to disclose *only* address information to DHS, as the Memorandum provides.  Pls.' Mot. at 14; Pls.' Supp. Mem. at 3, Dkt. 48.  The plaintiffs further argue that the Memorandum is arbitrary and capricious because it constitutes a change in policy and the agency failed to adequately consider the reliance interests of immigrant taxpayers or provide a reasoned explanation.  Pls.' Mot. at 17–18.

The Court disagrees.  Section 6103 mandates that the IRS disclose address information to DHS, if DHS complies with the statutory provision.  Thus, the plaintiffs cannot show a likelihood of success on the merits.

### 1.    *Accordance with Law*

The Court begins, as it must, with the statutory text.  Under § 6103(i)(2), the IRS can share limited tax return information with other agencies if the information may assist in criminal enforcement proceedings or any "investigation which may result in such a proceeding." 26 U.S.C. § 6103(i)(2)(A).  To obtain information, the head of the federal agency conducting an investigation must first submit a written request to the Secretary of the Treasury identifying

> "(i) the name and address of the taxpayer with respect to whom the requested return information relates; (ii) the taxable period or periods to which such return information relates; (iii) the statutory authority under which the proceeding or investigation … is being

---

[2] The plaintiffs also raise non-statutory *ultra vires* claims.  The Court need not address those claims because "if the plaintiff's claims would fail review under the APA," then those claims necessarily "could not succeed under" ultra vires review, which has an even "narrow[er] scope[.]" *Trudeau v. FTC*, 456 F.3d 178, 190 (D.C. Cir. 2006).

TD_0000064

conducted; and (iv) the specific reason or reasons why such disclosure is, or may be, relevant to such proceeding or investigation."

*Id.* § 6103(i)(2)(B)(i)–(iv). If the request meets those requirements, the IRS must comply with it. *See* § 6103(i)(2)(A) (providing that the Secretary "shall disclose" the requested information).

Not all tax return information, however, can be disclosed under the statute. Section 6103(i)(2) exempts "taxpayer return information" from disclosure under this provision. *Id.* § 6103(i)(2)(A). And a related provision defines taxpayer return information as return information filed "by or on behalf of the taxpayer to whom such return information relates." *Id.* § 6103(b)(3). In other words, the IRS can disclose information it obtains itself (such as through audits), but not information it obtains exclusively from the taxpayer (such as a tax return filed by the taxpayer). Despite this broad prohibition on the disclosure of taxpayer return information, § 6103(i)(2)(C) allows one exception: "For purposes of this paragraph, a taxpayer's identity shall not be treated as taxpayer return information." *Id.* § 6103(i)(2)(C). A taxpayer's identity is further defined as the taxpayer's name, address, taxpayer identifying number, or some combination thereof. *Id.* § 6103(b)(6). To summarize, the IRS must disclose limited taxpayer identity information (e.g., the taxpayer's name and address) to assist another agency in criminal investigations and proceedings, if the agency has satisfied the statutory prerequisites in its written request.

The challenged Memorandum outlines the procedures that DHS and the IRS must follow when the agencies share information under 26 U.S.C. § 6103(i)(2)(B). *See* Memorandum §§ 5–6. The Memorandum explicitly states that the IRS must first determine whether DHS's request meets the statutory requirements necessary for disclosure, and it can provide information only if it falls within an exception. *Id.* § 5(B) (requiring the IRS to "[r]eview each request for completeness and validity and return to ICE any requests not meeting the requirements necessary for disclosure pursuant to IRC § 6103(i)(2)"). The Memorandum also explains that its purpose is to establish

10

procedures enabling "requests for addresses of persons subject to *criminal* investigation."  *Id.* § 3 (emphasis added).

The plaintiffs concede that the statute requires the IRS to share certain return information with DHS for the purposes of enforcing identified criminal statutes, if DHS submits a proper request.  Rough Tr. at 11; *see* 26 U.S.C. § 6103(i).  Nonetheless, they contend that § 6103(i)(2) does not allow the IRS to provide *only* address information in response to a DHS request.  Pls.' Mot. at 14; Rough Hr'g Tr. at 10.  According to the plaintiffs, the provision authorizes the IRS to disclose a taxpayer's address only where other information relevant to a criminal investigation is sought.  Pls.' Suppl. Mem. at 2.

The plaintiffs' reading of § 6103(i)(2) does not comport with the text of the statute.  By its plain language, the statute mandates that the IRS share a taxpayer's name and address with another agency, as long as its request for information is complete and valid and "meets the requirements of [§ 6103(i)(2)(B)]."  26 U.S.C. § 6103(i)(2)(A).  The Court cannot read additional restrictions into the statute's clear text.

Resisting this conclusion, the plaintiffs rely on two internal IRS publications that purportedly prohibit the IRS from releasing address information under this provision.  *See* I.R.M. 11.3.28.5(4) (July 23, 2018) ("Requests for addresses only cannot be honored because IRC 6103(i)(2) requires that the requester provide an address.")[3]; IRS Publication No. 4639, *Disclosure & Privacy Law Reference Guide* at 5-4 (Oct. 2012 ed.) ("Requests under section 6103(i)(2) seeking only taxpayers' addresses do not comply with the section.").  The meaning of this language is

---

[3] Presently, the Internal Revenue Manual discusses address-only requests in a different subsection of the manual and uses different language than that cited by the plaintiffs.  *See* I.R.M. 11.3.28.4(5) (Apr. 17, 2025) ("Requests for addresses only are invalid because IRC 6103(i)(2) requires that the requester provide an address").

11

unclear.  *See* Gov't's Reply at 7, Dkt. 49 (noting that the quoted statement from the Internal Revenue Manual "may well anticipate another agency's request that does not include the taxpayer's address as required by Section 6103(i)(2)(B)(i)" and the quoted statement from Publication 4639 "may presume the requester did not provide the address as the statute requires"). But even accepting the plaintiffs' interpretation of these internal IRS manuals, they cannot supplant the plain meaning of the statute.  For one, the manuals do not have the force of law. *Marks v. Commissioner*, 947 F.2d 983, 986 n.1 (D.C. Cir 1989); IRS Publication No. 4639, at iii ("This guide was prepared for reference purposes only; it may not be used or cited as authority for setting or sustaining a legal position.").  For another, the Court is not obligated to defer to the IRS's interpretation of the statute.  *See Loper Bright Enters. v. Raimundo*, 603 U.S. 369, 400 (2024). The Court instead must independently interpret the statute's plain meaning.  *Id.*  As explained above, the plain language of § 6103(i)(2) allows DHS to request address information as long as DHS first provides the taxpayer's name, address, and other requisite information in its written request.

The plaintiffs further argue that § 6103(i)(2) cannot be used to locate individuals because another provision of the statute, § 6103(i)(5) (the "fugitive" provision), provides the only mechanism for using tax records to locate individuals. Pls.' Mot. at 14.  Although a statute's text should be interpreted in the context of the whole statute, *see* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012); Pls.' Motion at 14, § 6103(i)(5) serves an entirely different purpose than § 6103(i)(2).  It permits the Department of Justice to obtain vastly more information from the IRS—a taxpayer's tax return or taxpayer return information—as opposed to just a taxpayer's name and address.  But to obtain such extensive tax return information, the Department of Justice must first obtain a court order and a federal arrest

12

warrant for the fugitive.  *Id.* § 6103(i)(5)(B).  That the fugitive provision authorizes the IRS to release more extensive tax return information to the Department of Justice (assuming it meets the more onerous prerequisites in § 6103(i)(5)(B)) does not preclude the IRS from releasing a taxpayer's name and address to an agency (assuming it satisfies the much less demanding procedure set forth in § 6103(i)(2)).  These two statutory provisions establish separate information sharing mechanisms for different but potentially overlapping purposes.

The plaintiffs also invoke historical context—including earlier versions of the statute, legislative history, and other internal Treasury memoranda, to support their narrow interpretation of § 6103(i)(2).  *See generally* Pls.' Suppl. Mem. at 1–7.  But as explained, supra at 12, internal memoranda cannot override the plain meaning of the statute.  And "when a statute's language is plain on its face, courts do not ordinarily resort to legislative history." *Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 818 (D.C. Cir. 2008) (internal quotation marks omitted).  For the reasons stated, the text of § 6103(i)(2) is clear—the provision plainly exempts taxpayer address information from the general prohibition on sharing taxpayer return information and requires that information to be disclosed upon a valid written request.  As long as the agency has a name and an address for a taxpayer, it can request address and name information from the IRS to assist the requesting agency in a criminal investigation or proceeding, and the IRS must comply.

Although the plaintiffs do not argue that the government's interpretation of § 6103(i)(2) is absurd, *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1068 (D.C. Cir. 1998) (quoting *Holy Trinity Church v. United States*, 143 U.S. 457, 459–60 (1892)), they question its reasonableness.  Rough Hr'g Tr. at 22–24.  As they argued at the hearing, there would be no reason for an agency to request a taxpayer's address information from the IRS if the agency already had it.  *Id.*   But as the government explained, there are a number of reasons why such information could be helpful to

13

DHS.  For instance, if DHS is investigating an immigrant for remaining 90 days past a final removal order, a recent address could confirm that the immigrant did in fact overstay the order.  *See* Rough Hr'g Tr. at 59; *see also* 8 U.S.C. § 1253(a)(1).  An address could also confirm that an individual re-entered the U.S.  *Id.* at 54, 60.  And if a final removal order was issued in absentia, DHS might send a notice letter to ensure that the immigrants was aware of the order.  *See* 8 U.S.C. § 1253(a)(1).

Putting aside the reasonableness of the agency's current interpretation of the statute, the Court's duty is to exercise independent judgment in determining its meaning.  *See Loper Bright*, 603 U.S. at 400.  Under the statute, the IRS must comply with an agency's request for information so long as the agency has complied with the statutory prerequisites.  Thus, even in the absence of the information sharing memorandum between the IRS and DHS, the IRS would be statutorily required to release requested information if DHS met the requirements of § 6103(i)(2).  Because the information sharing agreement is consistent with § 6103(i)(2), the plaintiffs cannot establish success on the merits of their APA challenge.

2. *Arbitrary or Capricious*

The plaintiffs further claim that IRS acted arbitrarily and capriciously by changing its position on whether it can lawfully provide address information to DHS without considering the immigrant taxpayers' reliance interests.  Am. Compl. ¶ 69.  In support, the plaintiffs again rely on IRS guidance publications, IRM 11.3.28.5 and IRS Publication No. 4639, and similar public assurances in which the IRS stated that it lacked "authorization under this provision to share tax data with ICE."  Pls.' Mot. at 13 (citing Maria Sacchetti, *Undocumented and Paying Taxes, They Seek a Foothold in the American Dream*, Wash. Post. (Mar. 11, 2017), https://perma.cc/QU33-EYWM).

14

As noted, however, the IRS guidance documents can be read another way. *See supra* 11-12. On the government's reading, these internal memoranda do not categorically bar the IRS from sharing information with another agency so long as the agency first provides a taxpayer's name and address and satisfies the other statutory requirements, 26 U.S.C. § 6103(i)(2); Rough Hr'g Tr. at 47–48. The IRS's public statements similarly affirm that taxpayer information must be kept confidential and can only be disclosed under particular statutory conditions.[4] Under this interpretation, the IRS has not reversed course.

But even assuming that the IRS has changed its position, this type of policy change is not actionable under the APA because the cited IRS manuals do not create binding rules. *See* 5 U.S.C. § 553(b)(A); *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 93 (D.C. Cir. 1997). They are instead nonbinding policy statements that set out a procedure for information requests. *Id*. This is especially true here because § 6103(i)(2) does not give the IRS the discretion to turn down a lawful request for information. As the Court has found, § 6103(i)(2) allows DHS to obtain address information from the IRS, as long it first provides the IRS with the taxpayer's name and an address and satisfies the other statutory criteria. In such circumstances, the agency "*shall* disclose return information," 26 U.S.C. § 6103(i)(2)(A) (emphasis added), i.e., name and address information, *id*. § 6103(i)(2)(C), to the agency. Any substantive change under the challenged Memorandum thus stems not from the IRS's change in position but from the Administration's decision to use certain statutorily authorized tools to further criminal investigations. Because the plaintiffs have not established that the Memorandum constitutes a reviewable change in agency action under the

---

[4] The plaintiffs rely on a newspaper article quoting a statement from the IRS, Sacchetti, *Undocumented and Paying Taxes, They Seek a Foothold in the American Dream*, Wash. Post. (Mar. 11, 2017), but neither party has been able to locate or provide the underlying IRS report that the article references, *see* Rough Tr. at 46.

15

APA, they have not shown a substantial likelihood of success on their claim that the IRS acted arbitrarily and capriciously by reaching an agreement with DHS.

<p align="center">*     *     *</p>

At its core, this case presents a narrow legal issue: Does the Memorandum of Understanding between the IRS and DHS violate the Internal Revenue Code?  It does not.  The plain language of 26 U.S.C. § 6103(i)(2) mandates disclosure under the specific circumstances and preconditions outlined in the Memorandum.  For this reason, the plaintiffs have failed to show they are likely to succeed on their claims.  Accordingly, it is

**ORDERED** that the plaintiffs' Motion for Preliminary Injunction, Dkt. 28, is **DENIED**.

DABNEY L. FRIEDRICH
United States District Judge

May 12, 2025

<p align="center">16</p>

From:       **PII** /O=EXCHANGELABS/OU=EXCHANGE  ADMINISTRATIVE  GROUP
            (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=796EAC855C444A99A4D5137445238112 **PII**
Sent:       6/5/2025 3:27:15 PM
To:         **PII**                      E@hsi.dhs.gov]; Pandya Kaschit [kaschit.pandya@irs.gov]  **PII**
            **PII**        @hsi.dhs.gov]
CC:         De Mello Andrew  A [andrew.arthur.demello@irscounsel.treas.gov];  **PII**
            **PII**           @irscounsel.treas.gov];                      @hsi.dhs.gov];          **PII**
            **PII**        @hsi.dhs.gov];              **PII**           @associates.ice.dhs.gov];          **PII**
            **PII**              @associates.ice.dhs.gov]; Capece Louis P [louis.capece@irs.gov]  **PII**
            **PII**         @irs.gov]
Subject:    RE: [EXT] IRS - ICE data exchange
Attachments: SLFT Adhoc - User Guide for SFTP Connection Setup v1.0.pdf

Hi  **PII**

We successfully created the account  **LE** .gov/#/ and invited  **PII**
**PII** They should have received the invite by now.

Attached is the step-by-step guide to help you set the SFTP access. They will need the generate the public private key
pair for each individual and send me the public key. You may also use the web browser to upload and download the files
using this link  **LE** .gov/#/.

Kind regards,

**PII**

Chief, Division Management Office (DMO)
Infrastructure Services Division, Enterprise Operations
1111 Constitution Ave., NW, Washington, D.C. 20224  **PII**
**PII**

---

From:       **PII**
Sent: Thursday, June 5, 2025 10:58 AM
To:  **PII**          @irs.gov>; Pandya Kaschit <Kaschit.Pandya@irs.gov>  **PII**
**PII**       @hsi.dhs.gov>
Cc: De Mello Andrew A <Andrew.Arthur.DeMello@irscounsel.treas.gov>;      **PII**
**PII**       @irscounsel.treas.gov>;          **PII**          @hsi.dhs.gov>;        **PII**
**PII**       @hsi.dhs.gov>;          **PII**          @associates.ice.dhs.gov>;          **PII**
**PII**       @associates.ice.dhs.gov>; Capece Louis P <Louis.Capece@irs.gov>
Subject: RE: [EXT] IRS - ICE data exchange

Hi  **PII**

I tried to call you on your cell and office number.  I know we just spoke and my apologies  for having to ask this so
quickly, but do you have a timeframe for getting us access to kiteworks?  We need to get this file transferred ASAP.

**PII**

Special  Assistant  to the Deputy  Assistant  Director
Cyber  and Operational  Technology
U.S. Department  of Homeland  Security
Homeland  Security  Investigations  (HSI)

**PII**

**From:** [PII] @irs.gov>
**Sent:** Thursday, June 5, 2025 9:17 AM
**To:** [PII] @hsi.dhs.gov>; Pandya Kaschit <Kaschit.Pandya@irs.gov>; [PII]
[PII] @hsi.dhs.gov>
**Cc:** De Mello Andrew A <Andrew.Arthur.DeMello@irscounsel.treas.gov>; [PII]
[PII] @irscounsel.treas.gov>; [PII] @hsi.dhs.gov>; [PII]
[PII] @hsi.dhs.gov>; [PII] @associates.ice.dhs.gov>; [PII]
[PII] @associates.ice.dhs.gov>; Capece Louis P <Louis.Capece@irs.gov>
**Subject:** RE: [EXT] IRS - ICE data exchange

> **CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please use the Cofense Report Phishing button to report. If the button is not present, click here and follow instructions.

Just sent the invite for 9:30am ET so we can get more information.

Kind regards,

[PII]

Chief, Division Management Office (DMO)
Infrastructure Services Division, Enterprise Operations
1111 Constitution Ave., NW, Washington, D.C. 20224 [PII]
[PII]

---

**From:** [PII] @hsi.dhs.gov>
**Sent:** Thursday, June 5, 2025 9:01 AM
**To:** Pandya Kaschit <Kaschit.Pandya@irs.gov>; [PII] @hsi.dhs.gov>; [PII]
[PII] @irs.gov>
**Cc:** De Mello Andrew A <Andrew.Arthur.DeMello@irscounsel.treas.gov>; [PII]
[PII] @irscounsel.treas.gov>; [PII] @hsi.dhs.gov>; [PII]
[PII] @associates.ice.dhs.gov>; [PII]
[PII] @associates.ice.dhs.gov>; Capece Louis P <Louis.Capece@irs.gov>
**Subject:** RE: [EXT] IRS - ICE data exchange

Thank you, Kaschit.

[PII] our team is standing by, if you can jump on a call, we are ready.

[PII]
Special Assistant to the Deputy Assistant Director
Cyber and Operational Technology
U.S. Department of Homeland Security
Homeland Security Investigations (HSI)
[PII]

---

**From:** Pandya Kaschit <Kaschit.Pandya@irs.gov>
**Sent:** Thursday, June 5, 2025 8:59 AM
**To:** [PII] @hsi.dhs.gov>
**Cc:** De Mello Andrew A <Andrew.Arthur.DeMello@irscounsel.treas.gov>; [PII]
[PII] @irscounsel.treas.gov>; [PII] @hsi.dhs.gov>; [PII]
[PII] @hsi.dhs.gov>; [PII] @hsi.dhs.gov>; [PII]
[PII] @associates.ice.dhs.gov>; [PII] @associates.ice.dhs.gov>; [PII]

[PII] @irs.gov>; Capece Louis P <Louis.Capece@irs.gov>

**Subject:** RE: [EXT] IRS - ICE data exchange

**CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please use the Cofense Report Phishing button to report. If the button is not present, click here and follow instructions.

Hi [PII] I'm adding [PII] to this reply. His team manages the Kiteworks environment.

[PII] please ensure this is worked quickly. Thank you.

Sincerely,

Kaschit Pandya
Chief Information Officer / Chief Technology Officer
[PII] **(C)**

For appointments, please reach out to [PII] **@irs.gov)**

**From:** [PII] @hsi.dhs.gov>
**Sent:** Thursday, June 5, 2025 8:56 AM
**To:** [PII] a@hsi.dhs.gov>; Pandya Kaschit <Kaschit.Pandya@irs.gov>
**Cc:** De Mello Andrew A <Andrew.Arthur.DeMello@irscounsel.treas.gov>; [PII]
[PII] @irscounsel.treas.gov>; [PII] [PII] @hsi.dhs.gov>; [PII]
[PII] @hsi.dhs.gov>; [PII] [PII] @hsi.dhs.gov>; [PII]
[PII] @associates.ice.dhs.gov>; [PII] [PII] @associates.ice.dhs.gov>
**Subject:** RE: [EXT] IRS - ICE data exchange

Good morning Kaschit,

Please, let me know when you or someone from your office has time to meet this morning. We need to discuss details for Kiteworks as well as possible alternative solutions to expedite being able to share data with you. Thank you!

Respectfully,

[PII]
Criminal Analyst / Program Manager
Homeland Security Investigations (HSI) – Innovation Lab
[PII]

**From:** [PII]
**Date:** Wednesday, Jun 5, 2025 at 5:25 PM
**To:** [PII] @hsi.dhs.gov>, Pandya Kaschit <Kaschit.Pandya@irs.gov>, [PII]
**Cc:** De Mello Andrew A <Andrew.Arthur.DeMello@irscounsel.treas.gov>, [PII]
[PII] @irscounsel.treas.gov>, [PII] @hsi.dhs.gov>, [PII]
[PII] @hsi.dhs.gov>, [PII] @hsi.dhs.gov>, [PII]
[PII] @associates.ice.dhs.gov>, [PII] @associates.ice.dhs.gov>
**Subject:** RE: [EXT] IRS - ICE data exchange

Feel free to reach out to us directly for account creations/provisioning/testing. Where are standing by to get everything set up tonight.

Respectfully,



**PII**

Criminal Analyst / Program Manager
Homeland Security Investigations (HSI) – Innovation Lab

**PII**

---

**From:** PII @hsi.dhs.gov>
**Date:** Wednesday, Jun 04, 2025 at 4:29 PM
**To:** Pandya Kaschit <Kaschit.Pandya@irs.gov>
**Cc:** De Mello, Andrew A <Andrew.Arthur.DeMello@irscounsel.treas.gov>, PII
PII @irscounsel.treas.gov>, PII @hsi.dhs.gov>,
PII @hsi.dhs.gov>, PII @hsi.dhs.gov>, PII
PII @associates.ice.dhs.gov>, PII
PII @associates.ice.dhs.gov>
**Subject:** RE: [EXT] IRS - ICE data exchange

Pandya,

That's going to be me and my two tech leads below.

**PII**

Respectfully,



**PII**

CRIMINAL ANALYST / PROGRAM MANAGER
HOMELAND SECURITY INVESTIGATIONS (HSI) – INNOVATION LAB

**PII**

**WARNING:** THIS COMMUNICATION IS COVERED BY FEDERAL AND STATE LAW GOVERNING ELECTRONIC COMMUNICATIONS AND MAY CONTAIN CONFIDENTIAL, LEGALLY PRIVILEGED INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, USE OR COPYING OF THIS MESSAGE OR ANY ATTACHMENTS IS PROHIBITED. IF YOU RECEIVED THIS MESSAGE IN ERROR, PLEASE REPLY IMMEDIATELY TO THE SENDER AND DELETE THIS MESSAGE.

**From:** Pandya Kaschit <Kaschit.Pandya@irs.gov>
**Sent:** Wednesday, June 4, 2025 3:24 PM
**To:** PII @hsi.dhs.gov>
**Cc:** De Mello Andrew A <Andrew.Arthur.DeMello@irscounsel.treas.gov>, PII
PII @irscounsel.treas.gov>
**Subject:** RE: [EXT] IRS - ICE data exchange

**CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please use the Cofense Report Phishing button to report. If the button is not present, click here and follow instructions.

Hi [PII] I'm hearing we have an urgent need to transfer data today. I'm happy to assist but will need a POC on your side for us to work with. Are you aware of this and if so, can you provide us a POC?

Thank you.

Sincerely,

Kaschit Pandya
Chief Information Officer / Chief Technology Officer
[PII] (C)

For appointments, please reach out to [PII] @irs.gov)

---

**From:** [PII] @hsi.dhs.gov>
**Sent:** Wednesday, June 4, 2025 2:56 PM
**To:** Pandya Kaschit <Kaschit.Pandya@irs.gov>; [PII] @irs.gov>
**Cc:** [PII] @hsi.dhs.gov>; [PII] @hsi.dhs.gov>; [PII] @hsi.dhs.gov>; [PII] @hsi.dhs.gov>; [PII] @associates.ice.dhs.gov>; [PII] @associates.ice.dhs.gov>; [PII] @ice.dhs.gov>; Capece Louis P <Louis.Capece@irs.gov>
**Subject:** RE: [EXT] IRS - ICE data exchange

Thank you so much for the quick response. Any time after 11 tomorrow or between 11 to 2 on Friday works for us on the HSI side.

Respectfully,

[PII]
CRIMINAL ANALYST / PROGRAM MANAGER
HOMELAND SECURITY INVESTIGATIONS (HSI) – INNOVATION LAB
[PII]

**WARNING:** THIS COMMUNICATION IS COVERED BY FEDERAL AND STATE LAW GOVERNING ELECTRONIC COMMUNICATIONS AND MAY CONTAIN CONFIDENTIAL, LEGALLY PRIVILEGED INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, USE OR COPYING OF THIS MESSAGE OR ANY ATTACHMENTS IS PROHIBITED. IF YOU RECEIVED THIS MESSAGE IN ERROR, PLEASE REPLY IMMEDIATELY TO THE SENDER AND DELETE THIS MESSAGE.

---

**From:** Pandya Kaschit <Kaschit.Pandya@irs.gov>
**Sent:** Wednesday, June 4, 2025 2:27 PM
**To:** [PII] @hsi.dhs.gov>; [PII] @irs.gov>
**Cc:** [PII] @hsi.dhs.gov>; [PII] @hsi.dhs.gov>; [PII] @hsi.dhs.gov>; [PII] @hsi.dhs.gov>; [PII] @associates.ice.dhs.gov>; [PII] @associates.ice.dhs.gov>; [PII] @ice.dhs.gov>; Capece Louis P <Louis.Capece@irs.gov>
**Subject:** RE: [EXT] IRS - ICE data exchange

**CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please use the Cofense Report Phishing button to report. If the button is not present, click here and follow instructions.

Thanks for reaching out PII

PII – can you find some time for us? Please add Lou as well to that call. Thank you.

+Lou for awareness

Sincerely,

Kaschit Pandya
Chief Information Officer / Chief Technology Officer
PII

For appointments, please reach out to PII @irs.gov)

---

**From:** PII @hsi.dhs.gov>
**Sent:** Wednesday, June 4, 2025 12:47 PM
**To:** Pandya Kaschit <Kaschit.Pandya@irs.gov>; PII @irs.gov>
**Cc:** PII @hsi.dhs.gov>; PII @hsi.dhs.gov>; PII @hsi.dhs.gov>; PII @hsi.dhs.gov>; PII @associates.ice.dhs.gov>; PII @associates.ice.dhs.gov>; PII @associates.ice.dhs.gov>; PII @ice.dhs.gov>
**Subject:** [EXT] IRS - ICE data exchange

Good afternoon CIO Pandya,

I am the Program Manager over HSI's Advance Data Science and Engineering Team. My apologies for reaching out directly. I figured it would be easier to go directly to you to expedite this coordination between our agencies.

Essentially, from our previous conversations it was agreed upon to use Kiteworks (per IRS's request) to facilitate this data exchange. We can still move forward with that option, however we do still need access to Kiteworks. We also have our own SFTP that could be used as an alternative.

As soon as possible, can we schedule a meeting between that teams involved to iron out some of the technical details and flush out the schemas?

Thank you in advance!


Respectfully,



PII
CRIMINAL ANALYST / PROGRAM MANAGER
HOMELAND SECURITY INVESTIGATIONS (HSI) – INNOVATION LAB
PII

**WARNING:** THIS COMMUNICATION IS COVERED BY FEDERAL AND STATE LAW GOVERNING ELECTRONIC COMMUNICATIONS AND MAY CONTAIN CONFIDENTIAL, LEGALLY PRIVILEGED INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT

ANY DISSEMINATION, DISTRIBUTION, USE OR COPYING OF THIS MESSAGE OR ANY ATTACHMENTS IS PROHIBITED. IF YOU RECEIVED THIS MESSAGE IN ERROR, PLEASE REPLY IMMEDIATELY TO THE SENDER AND DELETE THIS MESSAGE.

TD_0000078



# IRS SLFT

# Secure Large File Transfer

Kiteworks

## Adhoc user SFTP Connection Setup

v1.0

By FMTS

TD_0000079

# Introduction

This user guide provides instructions on generating Secure File Transfer Protocol (SFTP) Public and Private keys for establishing an SFTP connection with IRS Secure Large File Transfer (SLFT). Kiteworks supports SFTP keys in OpenSSH format. If your SFTP client does not support the OpenSSH format, you can convert the public key to the OpenSSH format using the steps outlined below.

If you intend to generate the SFTP keys using your own SFTP client, ensure that the public key added to your SLFT account is in the openSSH format. We recommend a key length of 2048 or higher for the Rivest Shamir Adleman (RSA) algorithm type, and 256 or higher for Elliptic Curve Digital Signature Algorithm (ECDSA).

Please ensure that the client you use adheres to the cipher usage specified below.

| Cipher | Key Exchange Algorithms |
|--------|-------------------------|
| aes256-ctr | ecdh-sha2-nistp256 |
| aes192-ctr | ecdh-sha2-nistp384 |
| aes128-ctr | ecdh-sha2-nistp521 |
| | diffie-hellman-group-exchange-sha256 |

If you generate the SFTP keys on the client installed on your system and provide public key to SLFT Administrator to be added to your account, make sure the public key is in OpenSSH format.

# 1.    Provide the SFTP public key generated from your SFTP client.

You can provide the SSH public key to the SLFT Administrator to be added to your account. Make sure the SSH keys generated by your SFTP client are in OpenSSH format. If they are not in the OpenSSH you can convert them using the ssh-keygen on both Windows and LINUX Operating System's (See section 2 below for the command to convert the keys). Refer to the details mentioned at the beginning of this document about the key requirements.

After you create the SSH key pair, email your IRS contact requesting to import your public key to your SLFT account. The public key will be used for authentication when you logon to the SLFT system. No live data will be transferred without the use of a proper SSH public key.

- You can send email to your IRS contact following these four steps.

  o **Step 1**: Compose an e-mail



| **To:** <Your IRS POC> |
| **Cc:** _____ LE _____ @irs.gov |
| **Subject line:** SLFT Adhoc – Add adhoc user's Pub Key to SLFT account |

  o **Step 2**: Paste the following into the body of the email:

SLFT Adhoc account; please import attached public key to account: <Your email based SLFT account>.

Agency/Organization:

  o **Step 3**: Attach your SSH Public Key as a text file to the email.

  o **Step 4**: Send the e-mail.



## 2.   Convert SSH2 Public Key to OpenSSH format.

If you open your public key file and you see the words BEGIN SSH2 PUBLIC KEY, this is an SSH2 formatted public key, and the key needs to be converted to OpenSSH.

Use the below command to convert the public key.

```
LE              .pub > openssh.pub
```

# RE: Update

| | |
|---|---|
| **From:** | "McMaster, Hunter" <george.mcmaster@treasury.gov> |
| **To:** | "BARROW, CLARK" <......PII......@hq.dhs.gov> |
| **Date:** | Sat, 07 Jun 2025 09:46:00 -0400 |

Thanks for the quick response. I'm spoken with the relevant teams, and they are reviewing. Will come back with what we can.

This is the bad news… At first blush, I should alert you of the immediate hurdle. 6103 is straightforward that for the IRS to disclose taxpayer information in support of a criminal investigation, address and taxable period are required. See below. Like I said, we're reviewing, but we must be careful that any response fully complies with taxpayer privacy law. One more note, I think we will need the date of the final order of removal and the related case number assigned to each such order.

Let us take a look at the requests and we can discuss next steps.

### 6103

**(2) Disclosure of return information other than taxpayer return information for use in criminal investigations**

**(A) In general** Except as provided in paragraph (6), upon receipt by the Secretary of a request which meets the requirements of subparagraph (B) from the head of any Federal agency or the Inspector General thereof, or, in the case of the Department of Justice, the Attorney General, the Deputy Attorney General, the Associate Attorney General, any Assistant Attorney General, the Director of the Federal Bureau of Investigation, the Administrator of the Drug Enforcement Administration, any United States attorney, any special prosecutor appointed under section 593 of title 28, United States Code, or any attorney in charge of a criminal division organized crime strike force established pursuant to section 510 of title 28, United States Code, the Secretary shall disclose return information (other than taxpayer return information) to officers and employees of such agency who are personally and directly engaged in—

**(i)** preparation for any judicial or administrative proceeding described in paragraph (1)(A)(i),

**(ii)** any investigation which may result in such a proceeding, or

**(iii)** any grand jury proceeding described in paragraph (1)(A)(iii), solely for the use of such officers and employees in such preparation, investigation, or grand jury proceeding.

**(B)Requirements** A request meets the requirements of this subparagraph if the request is in writing and sets forth—

**(i)** the name and address of the taxpayer with respect to whom the requested return information relates;

**(ii)** the taxable period or periods to which such return information relates;

**(iii)** the statutory authority under which the proceeding or investigation described in subparagraph (A) is being conducted; and

**(iv)** the specific reason or reasons why such disclosure is, or may be, relevant to such proceeding or investigation.

G. Hunter McMaster II

D: [PII]

M:

Contents in my emails are considered draft or pre-decisional unless otherwise noted.

---

**From:** BARROW, CLARK <......PII......@hq.dhs.gov>
**Sent:** Friday, June 6, 2025 1:53 PM

**To:** McMaster, Hunter <George.McMaster@treasury.gov>
**Subject:** RE: Update

** **Caution:** External email from: [_____PII_____@hq.dhs.gov] Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov **

This email is from a US Government agency.

Please see the below additional information, which has also been updated to the 10K request from yesterday and is now available for review by IRS in their file sharing platform:

1. The name and address of the individual.

a. There is a name associated with each line of data but there may not always be an address available due to not being located in any other database that this data has been enriched with.

- The taxable period or periods to which the requested information (i.e., address) relates.

a. We did not indicate which taxable period this data relates to as we do not specifically know the tax filing status of any of these individuals since they are illegal aliens.  The request is to enrich the data with relevant address data so the most recent address that IRS can identify associated with any of the individuals would be the primary goal.

3. The specific nontax Federal criminal statute (i.e., 8 U.S.C. § 1253(a)(1) or other specifically designated nontax Federal criminal statute) under which an investigation or proceeding is being conducted.

a. 8 USC 1325 – Improper entry by alien, added as an additional row on the lines of data.

4. The date of the final order of removal and the related case number assigned to each order.

a. Added to the data field where applicable.

5. The specific reason(s) why disclosure is or may be relevant to the investigation/proceeding and any other information ICE can provide to help the IRS identify each individual, such as SSNs, ITINs, etc.

a. Reasons are indicated as applicable (i.e. *ALIEN MOST SEVERE CHARGE – HOMICIDE, FTO = FOREIGN TERRORIST ORGANIZATION, ETC.)* and additional identifying numbers added where available.

6. Identity information for the ICE officers and employees personally and directly engaged in the investigation.

a. AD Jesse Williams, [ PII ]@ice.dhs.gov

**From:** BARROW, CLARK <[_____PII_____]@hq.dhs.gov>
**Sent:** Friday, June 6, 2025 8:59 AM
**To:** George.McMaster@treasury.gov
**Subject:** Re: Update

Checking

**From:** George.McMaster@treasury.gov <George.McMaster@treasury.gov>
**Sent:** Friday, June 6, 2025 8:56:22 AM

To: BARROW, CLARK < ⸤ LE ⸥ @hq.dhs.gov>
Subject: RE: Update

Thank you. Each requests includes the below? This would be in line with the agreement.

1. The name and address of the individual.
2. The taxable period or periods to which the requested information (i.e., address) relates.
3. The specific nontax Federal criminal statute (i.e., 8 U.S.C. § 1253(a)(1) or other specifically designated nontax Federal criminal statute) under which an investigation or proceeding is being conducted.
4. The date of the final order of removal and the related case number assigned to each order.
5. The specific reason(s) why disclosure is or may be relevant to the investigation/proceeding and any other information ICE can provide to help the IRS identify each individual, such as SSNs, ITINs, etc.
6. Identity information for the ICE officers and employees personally and directly engaged in the investigation.

I don't ask to be a pain, but its important for 6103 taxpayer privacy considerations so I just want to be careful. Thanks!

G. Hunter McMaster II

M ⸤ PII ⸥

Contents in my emails are considered draft or pre-decisional unless otherwise noted.

---

**From:** BARROW, CLARK < ⸤ PII ⸥ @hq.dhs.gov>
**Sent:** Thursday, June 5, 2025 8:33 PM
**To:** McMaster, Hunter <George.McMaster@treasury.gov>
**Subject:** Re: Update

** Caution: External email from: [ ⸤ PII ⸥ @hq.dhs.gov] Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov **

This email is from a US Government agency.

The priority list of 10K has been provided to IRS through kiteworks.

---

**From:** George.McMaster@treasury.gov <George.McMaster@treasury.gov>
**Sent:** Thursday, June 5, 2025 2:54:58 PM
**To:** BARROW, CLARK < ⸤ PII ⸥ @hq.dhs.gov>
**Subject:** RE: Update

Call me pls

G. Hunter McMaster II

M: [ PII ]

Contents in my emails are considered draft or pre-decisional unless otherwise noted.

---

**From:** BARROW, CLARK <[_____PII_____]@hq.dhs.gov>
**Sent:** Thursday, June 5, 2025 1:23 PM
**To:** McMaster, Hunter <George.McMaster@treasury.gov>
**Subject:** RE: Update

** **Caution:** External email from: [_____PII_____]@hq.dhs.gov] Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov **

| This email is from a US Government agency. |
| --- |

ICE has successfully provided IRS with the full alien population, which contains 7,615,279 records, via the Kiteworks exchange. At this point, IRS has all relevant data from ICE that requires enrichment. Once IRS completes the enrichment, ICE will receive the data and make it available for targeting and analytical solutions. Can you check this on your side and give us an ETA for a response from IRS?

---

**From:** George.McMaster@treasury.gov <George.McMaster@treasury.gov>
**Sent:** Thursday, June 5, 2025 10:52 AM
**To:** BARROW, CLARK <[_____PII_____]@hq.dhs.gov>
**Subject:** RE: Update

Thank you

G. Hunter McMaster II

M: [ PII ]

Contents in my emails are considered draft or pre-decisional unless otherwise noted.

---

**From:** BARROW, CLARK <[_____PII_____]@hq.dhs.gov>
**Sent:** Thursday, June 5, 2025 10:51 AM
**To:** McMaster, Hunter <George.McMaster@treasury.gov>
**Subject:** RE: Update

** **Caution:** External email from: [_____PII_____]@hq.dhs.gov] Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov **

| This email is from a US Government agency. |
| --- |

Hunter,

I understand from ICE (HSI) that they met with the IRS technical team this morning.  As a result of the meeting, HSI identified to the IRS all the appropriate points of contact within HSI that need access to kiteworks.  IRS is currently provisioning access for HSI and as soon as access is granted, HSI will transfer the file containing the alien population to IRS for enrichment.  I asked ICE to give me an ETA for the expected access.

**From:** George.McMaster@treasury.gov <George.McMaster@treasury.gov>
**Sent:** Wednesday, June 4, 2025 5:43 PM
**To:** BARROW, CLARK <[____PII____]@hq.dhs.gov>
**Subject:** Re: Update

Wonderful

G. Hunter McMaster II
D:
M: **PII**

**From:** BARROW, CLARK <[____PII____]@hq.dhs.gov>
**Sent:** Wednesday, June 4, 2025 5:42:01 PM
**To:** McMaster, Hunter <George.McMaster@treasury.gov>
**Subject:** Re: Update

** Caution: External email from: [____PII____@hq.dhs.gov] Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov **

This email is from a US Government agency.

I understand ICE has responded to the IRS email and I am pushing them to set up a Kiteworks account.

**From:** George.McMaster@treasury.gov <George.McMaster@treasury.gov>
**Sent:** Wednesday, June 4, 2025 4:43:59 PM
**To:** BARROW, CLARK <[____PII____]@hq.dhs.gov>
**Subject:** RE: Update

Kaschit Pandya (IRS, Action Chief Technology Officer & CIO) reached out to [        **PII**        ]

From what I am told, [ **PII** ] requested a meeting for tomorrow, but the message was relayed to Kaschit to get this done as quickly as possible, which from my understand, means sending a link to set up the connection.

Something could very easily have been lost in translation, so apologies if any of that is incorrect.

G. Hunter McMaster II

M: [ **PII** ]

Contents in my emails are considered draft or pre-decisional unless otherwise noted.

---

**From:** BARROW, CLARK <[____PII____]@hq.dhs.gov>
**Sent:** Wednesday, June 4, 2025 4:38 PM
**To:** McMaster, Hunter <George.McMaster@treasury.gov>
**Subject:** Re: Update

** **Caution:** External email from: [____PII____]hq.dhs.gov] Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov **

| This email is from a US Government agency. |
|---|

To avoid mislabeling recipients, can you tell me who the IRS reached out to at DHS regarding the appropriate contact? I'll make sure you get a response.

---

**From:** BARROW, CLARK <[____PII____]hq.dhs.gov>
**Sent:** Wednesday, June 4, 2025 4:34 PM
**To:** George.McMaster@treasury.gov <George.McMaster@treasury.gov>
**Subject:** Re: Update

Thanks Hunter. Apologies again for you getting tagged as a recipient but I appreciate you moving this. I'll ping ICE on Kiteworks. Will follow up.

---

**From:** George.McMaster@treasury.gov <George.McMaster@treasury.gov>
**Sent:** Wednesday, June 4, 2025 4:28 PM
**To:** BARROW, CLARK <[____PII____]@hq.dhs.gov>
**Cc:** George.McMaster@treasury.gov <George.McMaster@treasury.gov>
**Subject:** Update

| This email is from an external US Government agency. |
|---|

This is my understanding of where things stand, happy to be corrected:

As of today, there haven't been any information requests. The point that was raised in a previous meeting with the WH that a request was sent to me a couple of weeks ago was incorrect.

The outstanding hurdle is a systems access issue. Previously, it was decided that DHS and IRS would use Kiteworks to facilitate the data sharing. I am not an expert, but the short story is that Kiteworks is a third party encrypted data sharing program, which would protect sensitive information going back and forth, an important aspect of this program. In the MOUs, it was agreed to use this program for bulk requests.

IRS was notified today that HSI and ERO still need access to the platform. My understanding is that personnel on the HSI/ERO side need to get proper credentials for this program. I coordinated with the head of IT at IRS who can help however necessary.

Next steps, IRS needs to send a Kiteworks link to the appropriate point of contact at DHS to establish the link between DHS systems and IRS systems. A couple of hours ago, IRS requested confirmation from DHS on who the appropriate contact is but has not heard back.

# Telcon w DHSA

| | |
|---|---|
| **Where:** | Telcon & EEOB 367 (for those on campus) |
| **When:** | Tue Jun 24 15:30:00 2025 -04:00 |
| **Until:** | Tue Jun 24 16:00:00 2025 -04:00 |
| **Organisers** | "Santos, Dina M. EOP/NSC" < PII @nsc.eop.gov> |
| **Required Attendees:** | "Santos, Dina M. EOP/NSC" < PII @nsc.eop.gov> |
| | "Fitzhugh, Peter EOP/NSC" < PII @nsc.eop.gov> |
| | " PII T. EOP/WHO" < PII @who.eop.gov> |
| | "Gordon, Derek W" < PII @hsi.dhs.gov> |
| | "Wall, Charles" < PII @ice.dhs.gov> |
| | "McMaster, Hunter" <george.mcmaster@treasury.gov> |

** **Caution:** External email from: [ PII @nsc.eop.gov] Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov **

> This email is from a US Government agency.

Please dial the WHSR ▮▮▮▮▮ and ask to **connect to** ▮▮▮▮▮ **3:30pm call**.

## RE: Telcon w DHSA (follow-up from yesterday)

**From:**  "McMaster, Hunter" <george.mcmaster@treasury.gov>
**To:**  "Fitzhugh, Peter EOP/NSC" < [ PII ] @nsc.eop.gov>, " [ PII ] EOP/WHO"
< [ PII ] @who.eop.gov>, "Gordon, Derek W" < [ PII ] @hsi.dhs.gov>, "Wall, Charles"
< [ PII ] @ice.dhs.gov>, "Armstrong, Anthony J. EOP/NSC" < [ PII ] @nsc.eop.gov>, "Cash, Steven
P. EOP/NSC" < [ PII ] h@nsc.eop.gov>, "Centorino, Scott G. EOP/WHO" < [ PII ] @who.eop.gov>,
"Adolphsen, Sam G. EOP/WHO" < [ PII ] @who.eop.gov>
**Bcc:**  "McMaster, Hunter" <george.mcmaster@treasury.gov>
**Date:**  Wed, 25 Jun 2025 14:39:24 -0400

Hi all – In preparation for the call, I want to share where we are from my perspective. For good order, I don't have visibility as I am not as IRS, but I am speaking with the team there.

They received the bulk request last night. From the first look, I am told the requests are missing a few fields, but they are continuing to dig through the data. On a technical point, it sounds like their visibility isn't immediate upon DHS sending the request because the files must be decrypted, and format then must be changed to be readable. I raise that just to point out that the below points could change as decryption takes place.

Anyways, this is what I am told. The current request is missing these fields:
1. Request from Agency Head
2. Attestation/Certification for Criminal Statute
3. Reason for the Request
4. Officer Information

# DPP

**I was told 10 minutes ago that IRS received a new bulk file around 2pm which might have this information added. Unfortunately, the team is decrypting it right now, so I don't have much visibility into it.**

Hunter

G. Hunter McMaster II
M: [ PII ]
Contents in my emails are considered draft or pre-decisional unless otherwise noted.

-----Original Appointment-----
**From:** Santos, Dina M. EOP/NSC < [ PII ] @nsc.eop.gov>
**Sent:** Wednesday, June 25, 2025 1:05 PM
**To:** Santos, Dina M. EOP/NSC; Fitzhugh, Peter EOP/NSC; [ PII ] T. EOP/WHO; 'Gordon, Derek W'; 'Wall, Charles';
McMaster, Hunter; Armstrong, Anthony J. EOP/NSC; Cash, Steven P. EOP/NSC; Centorino, Scott G. EOP/WHO; Adolphsen, Sam
G. EOP/WHO
**Subject:** Telcon w DHSA (follow-up from yesterday)
**When:** Wednesday, June 25, 2025 4:30 PM-5:30 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** Telcon & EEOB 367 (for those on campus)

** **Caution:** External email from: [ [ PII ] @nsc.eop.gov] Pay attention to suspicious links and attachments. Send
suspicious email to suspect@treasury.gov **

This email is from a US Government agency.

Please dial the WHSR ███████████ and ask to **connect to** ███████████ **3:30pm call**.

TD_0000092

# DHS Update

**From:**  De Mello Andrew A <andrew.arthur.demello@irscounsel.treas.gov>
**To:**  "Pilkerton, Christopher" <christopher.pilkerton@treasury.gov>, "Badgley, Tyler" <tyler.badgley@treasury.gov>, "McMaster, Hunter" <george.mcmaster@treasury.gov>
**Date:**  Wed, 25 Jun 2025 16:39:40 -0400

Hunter,

This is an update.  This email follows up my written communication to you on Monday evening in which I provided you a list of deficiencies contained in the data file which was not processible by the IRS pursuant to the MOU signed by the Department of Homeland Security and the Department of Treasury on April 7, 2025.  Specifically I highlighted the following deficiencies in my Monday evening communication:

1. A written request from the head of Federal agency when submitting each request. This required item of information is set forth in Section 6(B) of the MOU, which states that each request must be made consistent with IRC § 6103(i)(2)(A).  This section of the IRC requires a written request from the head of a Federal agency.  The information submitted by ICE did not contain any written request;
2. The specific reason or reasons why disclosure is, or may be, relevant to the nontax criminal investigation or proceeding.  This item of information is set forth in Section 6(C)(5) of the MOU and is derived from section 6103(i)(2)(B)(iv) of the IRC.  The information submitted by ICE did not contain this item;
3. Identity information for the ICE officers and employees personally and directly engaged in the nontax criminal investigation that may result in criminal charges against the individual under the specifically designated Federal criminal statute ICE has identified.  This item of information is set forth in section 6(C)(6) of the MOU and is derived from section 6103(i)(2)(A) of the IRC.  The information submitted by ICE did not contain this item; and
4. Attestation for each request – stating the requested address information will only be used by officers and employees of ICE solely for the preparation for judicial or administrative proceedings, or investigation that may lead to such proceedings, pertaining to the enforcement of 8 U.S.C Section 1253(a)(1), other specifically designated Federal criminal statute, or any subsequent criminal proceedings.  This item of information is set forth in section 6(D) of the MOU and is derived from section 6103(i)(2)(A) of the IRC.  The information submitted by ICE did not contain this item.

We recently reviewed the new data transmission sent to the Internal Revenue Service (IRS) from the United States Immigration and Customs Enforcement (ICE) on June 24, 2025 which contained approximately 7.3 million records.  Unfortunately, the above listed deficiencies remained and unfortunately, the IRS is again unable to process this data file in accordance with the MOU.



Thanks,
Andrew

# Telcon w DHSA (follow-up from yesterday)

| | |
|---|---|
| **Where:** | Telcon & EEOB 367 (for those on campus) |
| **When:** | Wed Jun 25 16:45:00 2025 -04:00 |
| **Until:** | Wed Jun 25 17:45:00 2025 -04:00 |
| **Organisers** | "Santos, Dina M. EOP/NSC" < [PII] s@nsc.eop.gov> |
| **Required Attendees:** | "Santos, Dina M. EOP/NSC" < [PII] s@nsc.eop.gov> |
| | "Fitzhugh, Peter EOP/NSC" < [PII] @nsc.eop.gov> |
| | [PII] EOP/WHO" < [PII] @who.eop.gov> |
| | "Gordon, Derek W" < [PII] @hsi.dhs.gov> |
| | "Wall, Charles" < [PII] @ice.dhs.gov> |
| | "McMaster, Hunter" <george.mcmaster@treasury.gov> |
| | "Armstrong, Anthony J. EOP/NSC" < [PII] @nsc.eop.gov> |
| | "Cash, Steven P. EOP/NSC" < [PII] @nsc.eop.gov> |
| | "Centorino, Scott G. EOP/WHO" < [PII] @who.eop.gov> |
| | "Adolphsen, Sam G. EOP/WHO" < [PII] @who.eop.gov> |
| | "Emrich, Matthew EOP/NSC" < [PII] @nsc.eop.gov> |
| **Optional Attendees:** | "DeLay, Joshua EOP/NSC" < [PII] @nsc.eop.gov> |

**\*\* Caution:** External email from: [ [PII] @nsc.eop.gov] Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov \*\*

This email is from a US Government agency.

Update: Treasury asked for 15min delay…..thank you for your patience.

Please dial the WHSR [redacted] and ask to **connect to** [redacted] **4:45pm call.**

| | |
|---|---|
| **From:** | De Mello Andrew A [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=49582B7B674C427A9A62455EFCDA887D-___PII___ |
| **Sent:** | 6/26/2025 6:59:25 PM |
| **To:** | De Mello Andrew A [andrew.arthur.demello@irscounsel.treas.gov];Goldman Richard G [richard.g.goldman@irscounsel.treas.gov]; Butler Paul T [paul.t.butler@irscounsel.treas.gov];____PII____ ___PII___ irscounsel.treas.gov];tyler.badgley@treasury.gov;christopher.pilkerton@treasury.gov; george.mcmaster@treasury.gov |

| | |
|---|---|
| **Subject:** | Discussion |
| **Location:** | Microsoft Teams Meeting |
| | |
| **Start:** | 6/26/2025 8:00:00 PM |
| **End:** | 6/26/2025 8:30:00 PM |
| **Show Time As:** | Tentative |
| | |
| **Required** | Goldman Richard G; Butler Paul T; ___PII___ ;tyler.badgley@treasury.gov; |
| **Attendees:** | christopher.pilkerton@treasury.gov;george.mcmaster@treasury.gov |

Continuation of discussion from 6/25. Please advise if this time does not work.

Thanks,
Andrew

_____

# Microsoft Teams Need help?

## Join the meeting now

Meeting ID: ██████████████████
Passcode: ███████████

_____

### Dial in by phone

███████████████████████ United States, Washington

Find a local number

Phone conference ID: ██████████████

For organizers: Meeting options | Reset dial-in PIN

Meeting hosts (organizers, co-organizers) hold responsibility for controlling the meeting environment, such as removing unauthorized parties, muting audio or video when appropriate to protect privacy, giving notice and getting consent for recording, promoting others as presenters or co-organizers to help moderate the meeting and chat, and setting meeting options. Please refer to IRM 10.5.1.6.18.2 for more information.

_____

# Telcon w DHSA (follow-up from Tuesday & Wednesday)

| | |
|---|---|
| **Where:** | Telcon & optional in-person for WH Campus |
| **When:** | Fri Jun 27 14:30:00 2025 -04:00 |
| **Until:** | Fri Jun 27 15:30:00 2025 -04:00 |
| **Organisers** | "Santos, Dina M. EOP/NSC" < PII @nsc.eop.gov> |
| **Required Attendees:** | "Santos, Dina M. EOP/NSC" < PII @nsc.eop.gov> |
| | "Fitzhugh, Peter EOP/NSC" < PII @nsc.eop.gov> |
| | " PII EOP/WHO" < PII @who.eop.gov> |
| | "Gordon, Derek W" < PII @hsi.dhs.gov> |
| | "Wall, Charles" < PII @ice.dhs.gov> |
| | "McMaster, Hunter" <george.mcmaster@treasury.gov> |
| | "Armstrong, Anthony J. EOP/NSC" < PII @nsc.eop.gov> |
| | "Cash, Steven P. EOP/NSC" < PII @nsc.eop.gov> |
| | "Centorino, Scott G. EOP/WHO" < PII @who.eop.gov> |
| | "Adolphsen, Sam G. EOP/WHO" < PII @who.eop.gov> |
| | "Emrich, Matthew EOP/NSC" < PII @nsc.eop.gov> |
| | "Badgley, Tyler" <tyler.badgley@treasury.gov> |
| | "Pilkerton, Christopher" <christopher.pilkerton@treasury.gov> |
| **Optional Attendees:** | "Fitzgerald, Richard S" < PII @hsi.dhs.gov> |
| | "Walker, William S" < PII r@hsi.dhs.gov> |
| | "DeLay, Joshua EOP/NSC" < PII @nsc.eop.gov> |

** **Caution:** External email from: PII @nsc.eop.gov] Pay attention to suspicious links and attachments. Send suspicious email to suspect@treasury.gov **

This email is from a US Government agency.

Please dial the WHSR ███████ and ask to **connect to █████████ 2:30pm call.**



| CIVID | ANumber | LName | FName | MName | DOB | COC | COB | FBI | SSN | FINS | SEX_CODE | PRIORITY_DSC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |
| | | | | | | | | | | | | To verify presence within the United States of America |

**PII/6103**

TD_0000098

| CIVID | ANumber | LName | FName | MName | DOB | COC | COB | FBI | SSN | FINS | SEX_CODE | PRIORITY_DSC |
|-------|---------|-------|-------|-------|-----|-----|-----|-----|-----|------|----------|--------------|
| | | | | | | PII/6103 | | | | | | To verify presence within the United States of America |

TD_0000099



| EARM_CASE_ID | FINAL_ORDER_DATE | EARM_ADDRESS | CASE_CREATE_DATE | FINAL_ORDER_Y_N | CRIMINAL STATUTE | TAXABLE PERIOD | ICE-POC | |
|---|---|---|---|---|---|---|---|---|
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. §§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |

PII/6103

PII



| EARM_CASE_ID | FINAL_ORDER_DATE | EARM_ADDRESS | CASE_CREATE_DATE | FINAL_ORDER_Y_N | CRIMINAL STATUTE | TAXABLE PERIOD | ICE-POC | |
|---|---|---|---|---|---|---|---|---|
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |
| | | | | Y | 8 U.S.C. Â§ 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams; | @ice.dhs.gov |

PII/6103

PII

PII

| EARM_CASE_ID | FINAL_ORDER_DATE | EARM_ADDRESS | CASE_CREATE_DATE | FINAL_ORDER_Y_N | CRIMINAL STATUTE | TAXABLE PERIOD | ICE-POC | | |
|---|---|---|---|---|---|---|---|---|---|
| | | PII/6103 | | Y | 8 U.S.C. §ß 1253(a)(1) | JAN_2022_PRESENT | Jesse Williams, | PII | @ice.dhs.gov |

| From: | Morris Audrey M [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=5435A48E757B47DB9FAA0073CDE6DB1B‑ PII ] |
|---|---|
| Sent: | 7/1/2025 6:15:54 PM |
| To: | Pandya Kaschit [kaschit.pandya@irs.gov] |
| CC: | Butler Paul T [paul.t.butler@irscounsel.treas.gov]; Goldman Richard G [richard.g.goldman@irscounsel.treas.gov]; _____ PII _____@irscounsel.treas.gov]; _____ PII _____ PII @irscounsel.treas.gov] |
| Subject: | FW: Letter from ICE |
| Attachments: | AD1 Memo to IRS Commission Request for Information - OD Edits.pdf |
| Importance: | High |

Hi Kaschit,

   I've met with our 6103 experts, and we agree that the attached letter to Commissioner Long satisfies the written request provisions in the MOU and meets the requirements of the statute. Accordingly, the IRS can begin processing the request received from DHS on 06/25/2025 that was specifically referenced in the letter (i.e., the one named "EARM_Full_Delta_Schema_v2.zip" and containing 1.2 million requests) and sharing information back to ICE.

   However, the information being shared with ICE should be limited to that which is provided for in the MOU:

- For records where there is no match, we should be sharing only the fact that there is "NO MATCH"
- For records that produce a match, we should be sharing only the last known address for that record.

   Finally, it's my understanding that Treasury/DHS/ICE want results as soon as possible. I will leave it up to you to fill them in on a realistic timeline for delivery.

   Let me know if you have any questions.

Thanks,
Audrey

Audrey Morris
Deputy Chief Counsel (Operations)

---

**From:** Pandya Kaschit <Kaschit.Pandya@irs.gov>
**Sent:** Tuesday, July 1, 2025 10:34 AM
**To:** Morris Audrey M <Audrey.M.Morris@IRSCOUNSEL.TREAS.GOV>
**Subject:** RE: Letter from ICE

Here you go.

Sincerely,

Kaschit Pandya
Chief Information Officer / Chief Technology Officer
[ PII ]

For appointments, please reach out to [ PII @irs.gov)

**From:** Morris Audrey M <Audrey.M.Morris@IRSCOUNSEL.TREAS.GOV>
**Sent:** Tuesday, July 1, 2025 11:33 AM
**To:** Pandya Kaschit <Kaschit.Pandya@irs.gov>
**Subject:** RE: Letter from ICE

Can you send me the original attachment please

**From:** Pandya Kaschit <Kaschit.Pandya@irs.gov>
**Sent:** Tuesday, July 1, 2025 10:07 AM
**To:** Morris Audrey M <Audrey.M.Morris@IRSCOUNSEL.TREAS.GOV>
**Subject:** FW: Letter from ICE

Hi Audrey – see below for the full thread but a quick summary

- we have been receiving files from DHS for us to test/populate
- we were told by Andrew to not send anything back until he gave us the green light
- yesterday [PII] also said to hold off until we hear from him
- received a call from George who asked me to get the green light from you

Please let me know if you have any questions. Once we have the go-ahead from you, we can work on sending the file(s) back. Thank you.

Sincerely,

Kaschit Pandya
Chief Information Officer / Chief Technology Officer
[PII]

For appointments, please reach out to [PII] @irs.gov)

**From:** George.McMaster@treasury.gov <George.McMaster@treasury.gov>
**Sent:** Tuesday, July 1, 2025 11:02 AM
**To:** Pandya Kaschit <Kaschit.Pandya@irs.gov>; Tyler.Badgley@treasury.gov; [PII]
[PII] IRSCOUNSEL.TREAS.GOV>
**Cc:** Christopher.Pilkerton@treasury.gov; [PII] @treasury.gov
**Subject:** RE: Letter from ICE

Thanks for the call.

As discussed, in [PII] absence, please touch base with Audrey for the greenlight. This needs to happen in the next couple of hours.

G. Hunter McMaster II
M: [PII]
Contents in my emails are considered draft or pre-decisional unless otherwise noted.

**From:** McMaster, Hunter <George.McMaster@treasury.gov>
**Sent:** Tuesday, July 1, 2025 10:57 AM
**To:** Pandya, Kaschit (IRS) <Kaschit.Pandya@irs.gov>; Badgley, Tyler <Tyler.Badgley@treasury.gov>; [PII]
[PII] @IRSCOUNSEL.TREAS.GOV>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>; [PII]

[PII] @treasury.gov>
**Subject:** RE: Letter from ICE

I have called you, as has Chris.

Call me back ASAP **M** [PII]

Contents in my emails are considered draft or pre-decisional unless otherwise noted.

**From:** Pandya Kaschit <Kaschit.Pandya@irs.gov>
**Sent:** Tuesday, July 1, 2025 10:49 AM
**To:** McMaster, Hunter <George.McMaster@treasury.gov>; Badgley, Tyler <Tyler.Badgley@treasury.gov>; [PII]
[PII] @IRSCOUNSEL.TREAS.GOV>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>; [PII]
< [PII] @treasury.gov>
**Subject:** RE: Letter from ICE

I'm free between now and 11:30. Any chance that works?

Sincerely,

Kaschit Pandya
Chief Information Officer / Chief Technology Officer
[PII]

For appointments, please reach out to [PII] @irs.gov)

**From:** George.McMaster@treasury.gov <George.McMaster@treasury.gov>
**Sent:** Tuesday, July 1, 2025 10:44 AM
**To:** Pandya Kaschit <Kaschit.Pandya@irs.gov>; Tyler.Badgley@treasury.gov; [PII]
[PII] @IRSCOUNSEL.TREAS.GOV>
**Cc:** Christopher.Pilkerton@treasury.gov; [PII] @treasury.gov
**Subject:** RE: Letter from ICE

We need to do a call ASAP.

11:30am or 12pm work?

G. Hunter McMaster II
M [PII]
Contents in my emails are considered draft or pre-decisional unless otherwise noted.

**From:** Pandya Kaschit <Kaschit.Pandya@irs.gov>
**Sent:** Tuesday, July 1, 2025 10:39 AM
**To:** McMaster, Hunter <George.McMaster@treasury.gov>; Badgley, Tyler <Tyler.Badgley@treasury.gov>; [PII]
[PII] @IRSCOUNSEL.TREAS.GOV>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>; [PII]
< [PII] @treasury.gov>
**Subject:** RE: Letter from ICE

We have not shared anything back with ICE per the direction from Andrew (De Mello) and [PII]

Sincerely,

Kaschit Pandya
Chief Information Officer / Chief Technology Officer
[PII]

For appointments, please reach out to [PII] @irs.gov)

---

**From:** George.McMaster@treasury.gov <George.McMaster@treasury.gov>
**Sent:** Tuesday, July 1, 2025 10:34 AM
**To:** Tyler.Badgley@treasury.gov [PII] @IRSCOUNSEL.TREAS.GOV>; Pandya Kaschit <Kaschit.Pandya@irs.gov>
**Cc:** Christopher.Pilkerton@treasury.gov; [PII] @treasury.gov
**Subject:** RE: Letter from ICE

Kaschit – Can you please confirm whether information sharing is taking place? We need an update within the next hour.

Feel free to call me M: [PII]


Contents in my emails are considered draft or pre-decisional unless otherwise noted.

---

**From:** Badgley, Tyler <Tyler.Badgley@treasury.gov>
**Sent:** Tuesday, July 1, 2025 9:59 AM
**To:** [PII] @IRSCOUNSEL.TREAS.GOV>; Pandya, Kaschit (IRS) <Kaschit.Pandya@irs.gov>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>; McMaster, Hunter <George.McMaster@treasury.gov>
**Subject:** RE: Letter from ICE

It looks like [PII] is out this week. Kaschit, do you have some time to connect this afternoon? I'm free from 2-3 and 4-4:30.

Tyler

---

**From:** Badgley, Tyler
**Sent:** Monday, June 30, 2025 9:35 AM
**To:** [PII] @IRSCOUNSEL.TREAS.GOV>; Pandya, Kaschit (IRS) <Kaschit.Pandya@irs.gov>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>; McMaster, Hunter <George.McMaster@treasury.gov>
**Subject:** RE: Letter from ICE

Thanks, [PII] Can someone let us know when we expect to send back the first data?

Tyler

---

**From:** [PII] @IRSCOUNSEL.TREAS.GOV>
**Sent:** Friday, June 27, 2025 5:27 PM
**To:** Badgley, Tyler <Tyler.Badgley@treasury.gov>; Pandya, Kaschit (IRS) <Kaschit.Pandya@irs.gov>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>; McMaster, Hunter <George.McMaster@treasury.gov>
**Subject:** RE: Letter from ICE

Thanks, Tyler. We are working on processing ICE's requests.

[PII]

Senior Technician Reviewer
Internal Revenue Service
Office of Chief Counsel (Procedure & Administration)
1111 Constitution Ave., NW
Washington, D.C. 20224



**From:** Tyler.Badgley@treasury.gov <Tyler.Badgley@treasury.gov>
**Sent:** Friday, June 27, 2025 3:32 PM
**To:** Pandya Kaschit <Kaschit.Pandya@irs.gov> [ PII ] @IRSCOUNSEL.TREAS.GOV>
**Cc:** Christopher.Pilkerton@treasury.gov; George.McMaster@treasury.gov
**Subject:** Letter from ICE

Kaschit and PII

Please see the attached letter from Todd Lyons, the Acting Director of ICE, providing the required additional information needed to begin processing the request for information sharing pursuant to the MOU. We understand that this letter coupled with the data file comply with the requirements of the MOU and statute, and so IRS should begin processing and sharing information back to ICE. Please let me know if that is not the case for any reason.

Thank you,

Tyler

**Tyler S. Badgley**
Deputy General Counsel
U.S. Department of the Treasury
Tyler.Badgley@Treasury.gov | PII

| From: | Pandya Kaschit [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=ECE3A5115C7449F9A2856A92A5B2E6D7 PII |
|---|---|
| Sent: | 7/1/2025 9:11:39 PM |
| To: | Long William H II [william.h.longii@irs.gov]; Elleson Benjamin D [benjamin.d.elleson@irs.gov] |
| Subject: | FW: Letter from ICE |
| Attachments: | AD1 Memo to IRS Commission Request for Information - OD Edits.pdf |

Here's what I sent to Treasury earlier this afternoon.

Sincerely,

Kaschit Pandya
Chief Information Officer / Chief Technology Officer
PII

For appointments, please reach out to PII (@irs.gov)

---

**From:** Pandya Kaschit
**Sent:** Tuesday, July 1, 2025 3:37 PM
**To:** George.McMaster@treasury.gov; Tyler.Badgley@treasury.gov
**Cc:** Christopher.Pilkerton@treasury.gov; PII @treasury.gov; PII
PII IRSCOUNSEL.TREAS.GOV>; Morris Audrey M <Audrey.M.Morris@IRSCOUNSEL.TREAS.GOV>;
PII @irscounsel.treas.gov>; Butler Paul T <Paul.T.Butler@IRSCOUNSEL.TREAS.GOV>;
PII @irscounsel.treas.gov>; Walker John J <John.J.Walker@irs.gov>
**Subject:** RE: Letter from ICE

Hunter/Tyler,

I want to provide an update based on a few conversations the IRS team has had today.

- Counsel met with 6103 experts and agreed the attached letter satisfies the written provisions in the MOU and meets the requirements of the statute
- IT will execute a sample run (100 records) using the file we received from DHS on 6/25 ("EARM_Full_Delta_Schema_v2.zip" and containing 1.2 million requests); we anticipate it will require approximately 1.5 days at which point we'll turn the file over to PGLD for quality control
- Once PGLD completes their quality control (and assuming everything looks as it should), Counsel will approve IT to send the file to DHS
- We're hopeful to we'll be able to send the output of the sample to DHS by Thursday (7/3) evening, barring any issues in running the file or during quality control
- The information shared will be limited to that which is provided for in the MOU
  - For records where there is no match, we should be sharing only the fact that there is "NO MATCH"
  - For records that produce a match, we should be sharing only the last known address for that record

Please let me know if you have any questions. Thank you.

Sincerely,

Kaschit Pandya
Chief Information Officer / Chief Technology Officer
PII

For appointments, please reach out to PII (@irs.gov)

**From:** George.McMaster@treasury.gov <George.McMaster@treasury.gov>
**Sent:** Tuesday, July 1, 2025 11:02 AM
**To:** Pandya Kaschit <Kaschit.Pandya@irs.gov>; Tyler.Badgley@treasury.gov <[PII]>; [PII]@IRSCOUNSEL.TREAS.GOV>
**Cc:** Christopher.Pilkerton@treasury.gov; [PII]@treasury.gov
**Subject:** RE: Letter from ICE

Thanks for the call.

As discussed, in [PII] absence, please touch base with Audrey for the greenlight.  This needs to happen in the next couple of hours.


G. Hunter McMaster II
M[PII]
Contents in my emails are considered draft or pre-decisional unless otherwise noted.

**From:** McMaster, Hunter <George.McMaster@treasury.gov>
**Sent:** Tuesday, July 1, 2025 10:57 AM
**To:** Pandya, Kaschit (IRS) <Kaschit.Pandya@irs.gov>; Badgley, Tyler <Tyler.Badgley@treasury.gov>; [PII] <[PII]@IRSCOUNSEL.TREAS.GOV>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>; [PII] <[PII]@treasury.gov>
**Subject:** RE: Letter from ICE

I have called you, as has Chris.

Call me back ASAP **M:** [PII]


Contents in my emails are considered draft or pre-decisional unless otherwise noted.

**From:** Pandya Kaschit <Kaschit.Pandya@irs.gov>
**Sent:** Tuesday, July 1, 2025 10:49 AM
**To:** McMaster, Hunter <George.McMaster@treasury.gov>; Badgley, Tyler <Tyler.Badgley@treasury.gov>; [PII] [PII]@IRSCOUNSEL.TREAS.GOV>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>; [PII] <[PII]@treasury.gov>
**Subject:** RE: Letter from ICE

I'm free between now and 11:30.  Any chance that works?

Sincerely,

Kaschit Pandya
Chief Information Officer / Chief Technology Officer
[PII]

For appointments, please reach out to [PII]@irs.gov)

**From:** George.McMaster@treasury.gov <George.McMaster@treasury.gov>
**Sent:** Tuesday, July 1, 2025 10:44 AM
**To:** Pandya Kaschit <Kaschit.Pandya@irs.gov>; Tyler.Badgley@treasury.gov; [PII] [PII]@IRSCOUNSEL.TREAS.GOV>

Cc: Christopher.Pilkerton@treasury.gov; [PII] @treasury.gov
**Subject:** RE: Letter from ICE

We need to do a call ASAP.

11:30am or 12pm work?


G. Hunter McMaster II
M [PII]
Contents in my emails are considered draft or pre-decisional unless otherwise noted.

---

**From:** Pandya Kaschit <Kaschit.Pandya@irs.gov>
**Sent:** Tuesday, July 1, 2025 10:39 AM
**To:** McMaster, Hunter <George.McMaster@treasury.gov>; Badgley, Tyler <Tyler.Badgley@treasury.gov>; [PII]
[PII] @IRSCOUNSEL.TREAS.GOV>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>; [PII]
[PII] @treasury.gov>
**Subject:** RE: Letter from ICE

We have not shared anything back with ICE per the direction from Andrew (De Mello) and [PII]

Sincerely,

Kaschit Pandya
Chief Information Officer / Chief Technology Officer
[PII] (C)

For appointments, please reach out to [PII] @irs.gov)

---

**From:** George.McMaster@treasury.gov <George.McMaster@treasury.gov>
**Sent:** Tuesday, July 1, 2025 10:34 AM
**To:** Tyler.Badgley@treasury.gov [PII] @IRSCOUNSEL.TREAS.GOV>; Pandya Kaschit
<Kaschit.Pandya@irs.gov>
**Cc:** Christopher.Pilkerton@treasury.gov [PII] @treasury.gov
**Subject:** RE: Letter from ICE

Kaschit – Can you please confirm whether information sharing is taking place? We need an update within the next hour.

Feel free to call me M [PII]


Contents in my emails are considered draft or pre-decisional unless otherwise noted.

---

**From:** Badgley, Tyler <Tyler.Badgley@treasury.gov>
**Sent:** Tuesday, July 1, 2025 9:59 AM
**To** [PII] @IRSCOUNSEL.TREAS.GOV>; Pandya, Kaschit (IRS)
<Kaschit.Pandya@irs.gov>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>; McMaster, Hunter <George.McMaster@treasury.gov>
**Subject:** RE: Letter from ICE

It looks like [PII] out this week. Kaschit, do you have some time to connect this afternoon? I'm free from 2-3 and 4-4:30.

Tyler

**From:** Badgley, Tyler
**Sent:** Monday, June 30, 2025 9:35 AM
**To:** [ PII ] @IRSCOUNSEL.TREAS.GOV>; Pandya, Kaschit (IRS) <Kaschit.Pandya@irs.gov>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>; McMaster, Hunter <George.McMaster@treasury.gov>
**Subject:** RE: Letter from ICE

Thanks, [ PII ] Can someone let us know when we expect to send back the first data?

Tyler

**From:** [ PII ] @IRSCOUNSEL.TREAS.GOV>
**Sent:** Friday, June 27, 2025 5:27 PM
**To:** Badgley, Tyler <Tyler.Badgley@treasury.gov>; Pandya, Kaschit (IRS) <Kaschit.Pandya@irs.gov>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>; McMaster, Hunter <George.McMaster@treasury.gov>
**Subject:** RE: Letter from ICE

Thanks, Tyler. We are working on processing ICE's requests.

[ PII ]
Senior Technician Reviewer
Internal Revenue Service
Office of Chief Counsel (Procedure & Administration)
1111 Constitution Ave., NW
Washington, D.C. 20224

[ PII ]

**From:** Tyler.Badgley@treasury.gov <Tyler.Badgley@treasury.gov>
**Sent:** Friday, June 27, 2025 3:32 PM
**To:** Pandya Kaschit <Kaschit.Pandya@irs.gov>; [ PII ] @IRSCOUNSEL.TREAS.GOV>
**Cc:** Christopher.Pilkerton@treasury.gov; George.McMaster@treasury.gov
**Subject:** Letter from ICE

Kaschit and [ PII ]

Please see the attached letter from Todd Lyons, the Acting Director of ICE, providing the required additional information needed to begin processing the request for information sharing pursuant to the MOU. We understand that this letter coupled with the data file comply with the requirements of the MOU and statute, and so IRS should begin processing and sharing information back to ICE. Please let me know if that is not the case for any reason.

Thank you,

Tyler

**Tyler S. Badgley**
Deputy General Counsel
U.S. Department of the Treasury
Tyler.Badgley@Treasury.gov | [ PII ]

*Office of the Director*

**U.S. Department of Homeland Security**
500 12th Street, NW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

June 27, 2025

Dear Commissioner Long,

In accordance with the Memorandum of Understanding (MOU) signed between the U.S. Department of the Treasury, Internal Revenue Service (IRS) and the U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE) for the Exchange of Information for Nontax Criminal Enforcement, signed on or about April 7, 2025, this letter serves as ICE's written request for the last known address of the individuals listed in the information request sent to the IRS by ICE via Kiteworks, the IRS' preferred file sharing platform, on June 25, 2025 (the "Information Request").

The Information Request was electronically submitted to the IRS by ICE and contained a data file titled EARM_Full_Delta_Schema_v2.zip (the "Data File"). As set forth in Section 6 of the MOU and as required by IRC § 6103(i)(2)(A) & (B), each line of the Data File is hereby modified to include the following information:

- the designated nontax Federal criminal statute is 8 U.S.C. § 1253(a)(1)); and

- the reason for this request is to permit the U.S. Department of Homeland Security to conduct its mission in furtherance of its statutory mandate, and in preparation for judicial or administrative proceedings, or investigation that may lead to such proceedings, pertaining to the enforcement of 8 U.S.C. § 1253(a)(1), other specifically designated Federal criminal statute, or any subsequent criminal proceedings; and

- the reason why each requested disclosure is, or may be, relevant to such proceeding or investigation is that the requested information may contain address information which is potentially at issue with respect to investigating or proving a violation under 8 U.S.C. § 1253(a)(1); and

- the point of contact field in the Data File is the identity of the officer(s) and/or employe(es) who are personally and directly engaged in the criminal proceeding or criminal investigation; and

- ICE attests that the information will only be used by officers and employees of ICE solely for the preparation for judicial or administrative proceedings, or investigation that may lead to such proceedings, pertaining to the enforcement of 8 U.S.C. § 1253(a)(1),

**FOR OFFICIAL USE ONLY**

other specifically designated Federal criminal statute, or any subsequent criminal proceedings.

Thank you for your immediate attention to this matter.

Sincerely,

Todd M. Lyons
Acting Director

**FOR OFFICIAL USE ONLY**

| From: | ⬚ PII ⬚ [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=6950FB44A6A442ABA8E7AB7982608BFF ⬚ PII ⬚ |
|---|---|
| Sent: | 7/2/2025 2:25:29 PM |
| To: | Romo Dottie A [dottie.a.romo@irs.gov] |
| Subject: | RE: Letter from ICE |

Done… do you need it now?

---

**From:** Romo Dottie A <Dottie.A.Romo@irs.gov>
**Sent:** Wednesday, July 2, 2025 10:24 AM
**To:** ⬚ PII ⬚ @irs.gov>
**Subject:** Fw: Letter from ICE

Please print out this email for the CIR.

---

**From:** Romo Dottie A
**Sent:** Tuesday, July 1, 2025 5:19:27 PM
**To:** Elleson Benjamin D <Benjamin.D.Elleson@irs.gov>
**Subject:** FW: Letter from ICE



**Dottie Romo**
Chief Operating Officer (Acting)
Department of the Treasury | Internal Revenue Service
1111 Constitution Ave NW, Washington DC 20224
Dottie.A.Romo@irs.gov

Executive Assistant, ⬚ PII ⬚
⬚ PII ⬚
Program Manager, ⬚ PII ⬚
⬚ PII ⬚
Deputy COO (Acting): ⬚ PII ⬚
⬚ PII ⬚

---

**From:** Walker John J <John.J.Walker@irs.gov>
**Sent:** Tuesday, July 1, 2025 4:30 PM
**To:** Romo Dottie A <Dottie.A.Romo@irs.gov> ⬚ PII ⬚ @irs.gov>
**Subject:** FW: Letter from ICE

*FYI only.* As you know, we have been working with IT and Counsel on validating the DHS request, requirements, etc. They have met the requirement, and IT will be pulling a sample of 100 from the request of 1.2 million. PGLD will do a 100% quality check on the sample and the goal is to provide the output to DHS by COB Thursday (Treasury appears to have been pushing for a full run but IT cannot do it and we still have to ensure the output is correct).

Kaschit will be looking for IT and PGLD approval before transmitting.

Moving forward, we may request RAAS assistance for QC assistance on the larger request of 1.2 million.

Let me know if you have any questions, need more information, or want to talk.

Thanks
Jack

---

**From:** Pandya Kaschit <Kaschit.Pandya@irs.gov>
**Sent:** Tuesday, July 1, 2025 3:37 PM
**To:** George.McMaster@treasury.gov; Tyler.Badgley@treasury.gov
**Cc:** Christopher.Pilkerton@treasury.gov; [PII] @treasury.gov; [PII] @IRSCOUNSEL.TREAS.GOV>; Morris Audrey M <Audrey.M.Morris@IRSCOUNSEL.TREAS.GOV>; [PII] @irscounsel.treas.gov>; Butler Paul T <Paul.T.Butler@IRSCOUNSEL.TREAS.GOV>; [PII] @irscounsel.treas.gov>; Walker John J <John.J.Walker@irs.gov>
**Subject:** RE: Letter from ICE

Hunter/Tyler,

I want to provide an update based on a few conversations the IRS team has had today.

- Counsel met with 6103 experts and agreed the attached letter satisfies the written provisions in the MOU and meets the requirements of the statute
- IT will execute a sample run (100 records) using the file we received from DHS on 6/25 ("EARM_Full_Delta_Schema_v2.zip" and containing 1.2 million requests); we anticipate it will require approximately 1.5 days at which point we'll turn the file over to PGLD for quality control
- Once PGLD completes their quality control (and assuming everything looks as it should), Counsel will approve IT to send the file to DHS
- We're hopeful to we'll be able to send the output of the sample to DHS by Thursday (7/3) evening, barring any issues in running the file or during quality control
- The information shared will be limited to that which is provided for in the MOU
  - For records where there is no match, we should be sharing only the fact that there is "NO MATCH"
  - For records that produce a match, we should be sharing only the last known address for that record

Please let me know if you have any questions. Thank you.

Sincerely,

Kaschit Pandya
Chief Information Officer / Chief Technology Officer
[PII] (C)

For appointments, please reach out to [PII] @irs.gov)

---

**From:** George.McMaster@treasury.gov <George.McMaster@treasury.gov>
**Sent:** Tuesday, July 1, 2025 11:02 AM
**To:** Pandya Kaschit <Kaschit.Pandya@irs.gov>; Tyler.Badgley@treasury.gov; [PII] [PII] @IRSCOUNSEL.TREAS.GOV>
**Cc:** Christopher.Pilkerton@treasury.gov; [PII] @treasury.gov
**Subject:** RE: Letter from ICE

Thanks for the call.

As discussed, in [PII] 's absence, please touch base with Audrey for the greenlight. This needs to happen in the next couple of hours.

G. Hunter McMaster II
M: [ PII ]
Contents in my emails are considered draft or pre-decisional unless otherwise noted.

---

**From:** McMaster, Hunter <George.McMaster@treasury.gov>
**Sent:** Tuesday, July 1, 2025 10:57 AM
**To:** Pandya, Kaschit (IRS) <Kaschit.Pandya@irs.gov>; Badgley, Tyler <Tyler.Badgley@treasury.gov>; [ PII ]
[ PII ] @IRSCOUNSEL.TREAS.GOV>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>; [ PII ]
[ PII ] @treasury.gov>
**Subject:** RE: Letter from ICE

I have called you, as has Chris.

Call me back ASAP **M:** [ PII ]


Contents in my emails are considered draft or pre-decisional unless otherwise noted.

---

**From:** Pandya Kaschit <Kaschit.Pandya@irs.gov>
**Sent:** Tuesday, July 1, 2025 10:49 AM
**To:** McMaster, Hunter <George.McMaster@treasury.gov>; Badgley, Tyler <Tyler.Badgley@treasury.gov>; [ PII ]
[ PII ] @IRSCOUNSEL.TREAS.GOV>
**Cc:** Pilkerton, Christopher <Christopher.Pilkerton@treasury.gov>; [ PII ]
[ PII ] @treasury.gov>
**Subject:** RE: Letter from ICE

I'm free between now and 11:30. Any chance that works?

Sincerely,

Kaschit Pandya
Chief Information Officer / Chief Technology Officer
[ PII ]

For appointments, please reach out to [ PII ] @irs.gov)

---

**From:** George.McMaster@treasury.gov <George.McMaster@treasury.gov>
**Sent:** Tuesday, July 1, 2025 10:44 AM
**To:** Pandya Kaschit <Kaschit.Pandya@irs.gov>; Tyler.Badgley@treasury.gov>; [ PII ]
[ PII ] @IRSCOUNSEL.TREAS.GOV>
**Cc:** Christopher.Pilkerton@treasury.gov>; [ PII ] @treasury.gov
**Subject:** RE: Letter from ICE

We need to do a call ASAP.

11:30am or 12pm work?


G. Hunter McMaster II
M: [ PII ]
Contents in my emails are considered draft or pre-decisional unless otherwise noted.