clarity.

48) Removed former Section 7.4.2 Consolidated Data Center.

49) Removed former Section 7.4.4, Data Warehouse Processing.

50) Removed former Section 7.4.5, Non-Agency-owned Information Systems.

51) Removed former Section 7.4.8 Virtualization of Information Technology Systems.

52) Section 2.F.4, Other Precautions, has been updated to reflect *annual* requirement to validate and maintain most recent copy of NAID certification.

53) Former Section 9.4.5, Interactive Voice Response, has been incorporated into Section 3.3.8, Public-Facing Systems (NIST SP 800-63-3).

54) Former Section, 9.4.7, Media Sanitization is now moved to Section 2.F.3.1, under Destruction and Disposal.

55) Former Sections 9.4.11, Storage Area Networks and 9.4.12, System Component Inventory, 9.4.14, Virtualization Requirements, 9.4.15, VoIP Systems and 9.4.18, Wireless Networks, have been removed, as the base requirements are included in NIST controls.

56) Section 3.3.8, Public-Facing Systems, has been added and includes guidance from NIST SP 800-63-3, Digital Identity Guidelines.

57) Former Section 10.5, FTI Suspension, Termination and Administrative Review language was changed and moved to Section 1.7.2.

58) Control IA-2, Identification and Authentication (Organizational Users), Multifactor authentication is now required for all privileged and non-privileged accounts.

59) Exhibit 6, Contractor 45-Day Notification Procedures, has updated the signature requirement to include the Head of Agency, or their delegate.

60) Exhibit 7 has been updated to include Exhibit 7a, Safeguarding Contract Language for General Services and Exhibit 7b, Safeguarding Contract Language for Technology Services.

61) Exhibits 7a and 7b have been updated to include Data Incident Response language.

62) Exhibit 10, Data Warehouse Security Requirements has been removed. Please see the Safeguards Website for technical guidance.

63) Exhibit 11, Media Sanitization Techniques has been removed. Please see NIST 800-88, Guidelines for Media Sanitization for approved sanitization techniques. Also see MP-6.

64) Glossary and Key Terms has been updated to include the terms Access, Contractor, External Systems, Inadvertent and Incidental Access, Information Spillage, Insider Threat, Mobile Code, Mobile Device, Need-to-Know, Object, Remote Access, Subject, Unauthorized Access and Unauthorized Disclosure.

65) Glossary and Key Terms - The definition for Personally Identifiable Information (PII) has been updated to clarify that for the purposes of Publication 1075 and Safeguarding requirements, PII is FTI.

TD_0000247

66) Agencies must wipe mobile devices after 10 (ten) unsuccessful login attempts. See AC-7, CE-2.

67) Agencies must employ data mining prevention and detection techniques. See AC-23.

68) Added penetration testing requirements. See CA-8.

69) Perform security and privacy compliance checks prior to allowing connections. See CA-9, CE-1.

70) Multi-factor authentication is required to be at Authenticator Assurance Level 2 as defined in NIST SP 800-63. See IA-2, CE-6.

71) Password complexity requirements have been updated. See IA-5.

72) Agencies must provide training specific training for incidents related to breaches. See IR-2, CE-3.

73) Coordination with contractors, data centers, counties, and other agencies is required for incidents involving Federal Tax Information. See IR-4, CE-8.

74) A custodian must be identified when transporting controls outside of controlled areas. See MP-5, CE-3.

75) Major change to PE-6. The requirement moved from annually to monthly for inspection of physical access logs.

76) Perimeter security checks are required daily for exfiltration of information. See PE-3, CE-2.

77) New Control Enhancement for Defense in Depth. See PL-8, CE-1.

78) Agency contractors (including sub-contractors) must remove data within 7 (seven) calendar days of contract termination. See SA-4, CE-12.

79) Control Enhancement to restrict the accessing, processing, storage, and transmission of FTI to the United States and its territories. See SA-9, CE-5.

80) Change from specifying FIPS 140-3 to latest FIPS validated mechanisms. See SC-13.

81) Added visibility of encrypted communications to system monitoring requirements. See SI-4, CE-10.

TD_0000248

## Security and Privacy Control Table

| Control Number | Control Name | Control Enhancements | Privacy-Related | Physical | Information Technology | Physical Security Reference Section |
|---|---|---|---|---|---|---|
| AC-1 | Access Control Policy and Procedures | | | | X | |
| AC-2 | Account Management | X | | | X | |
| AC-3 | Access Enforcement | | | | X | |
| AC-4 | Information Flow Enforcement | | | | X | |
| AC-5 | Separation of Duties | | | | X | |
| AC-6 | Least Privilege | X | | X | X | Need-to-Know |
| AC-7 | Unsuccessful Logon Attempts | X | | | X | |
| AC-8 | System Use Notification | | | X | X | Exhibit 8 |
| AC-11 | Device Lock | X | | | X | |
| AC-12 | Session Termination | | | | X | |
| AC-14 | Permitted Actions Without Identification or Authentication | | | | X | |
| AC-17 | Remote Access | X | | X | X | 2.B.7 |
| AC-18 | Wireless Access | X | | | X | |
| AC-19 | Access Control for Mobile Devices | X | | | X | |
| AC-20 | Use of External Systems | X | | X | X | 2.B.7.1 |
| AC-21 | Information Sharing | | X | X | X | Exhibit 7 |
| AC-22 | Publicly Accessible Content | | | X | X | 3.3.8 |
| AC-23 | Data Mining Protection* | | | | X | |
| AT-1 | Awareness and Training Policy and Procedures | | X | X | X | 2.C.2 |
| AT-2 | Awareness Training | X | X | X | X | 2.D.2.1 |
| AT-3 | Role-Based Training | X | X | X | X | 2.D.2.1 |
| AT-4 | Training Records | | X | X | X | 2.D.2.1 |
| AT-6 | Training Feedback* | | | | X | |
| AU-1 | Audit and Accountability Policy and Procedures | | | X | X | 2.C.2 |
| AU-2 | Audit Events | X | | X | X | 2.C.1 |
| AU-3 | Content of Audit Records | X | | | X | |
| AU-4 | Audit Storage Capacity | | | | X | |
| AU-5 | Response to Audit Processing Failures | | | | X | |
| AU-6 | Audit Review, Analysis and Reporting | X | | X | X | 2.C.1 |
| AU-7 | Audit Reduction and Report Generation | X | | X | X | 2.C.1 |
| AU-8 | Time Stamps | X | | | X | |
| AU-9 | Protection of Audit | X | | | X | |

TD_0000249

| Control Number | Control Name | Control Enhancements | Privacy-Related | Physical | Information Technology | Physical Security Reference Section |
|---|---|---|---|---|---|---|
| AU-11 | Audit Record Retention | | X | | X | |
| AU-12 | Audit Generation | | | X | X | 2.C.1 |
| AU-16 | Cross-Organizational Auditing* | | X | | X | |
| CA-1 | Assessment, Authorization and Monitoring Policy and Procedures | | X | | X | |
| CA-2 | Assessments | X | X | | X | |
| CA-3 | System Interconnections | X | | | X | |
| CA-5 | Plan of Action and Milestones | | X | X | X | 2.D.9 |
| CA-6 | Authorization | | | | X | |
| CA-7 | Continuous Monitoring | X | X | X | X | 2.D.3 |
| CA-8 | Penetration Testing | | | | X | |
| CA-9 | Internal System Connections* | X | | | X | |
| CM-1 | Configuration Management Policy and Procedures | | X | | X | |
| CM-2 | Baseline Configuration | X | | | X | |
| CM-3 | Configuration Change Control | X | | | X | |
| CM-4 | Security and Privacy Impact Analyses | X | X | | X | |
| CM-5 | Access Restrictions for Change | X | | X | X | 2.C.1 |
| CM-6 | Configuration Settings | | | | X | |
| CM-7 | Least Functionality | X | | | X | |
| CM-8 | System Component Inventory | X | | | X | |
| CM-9 | Configuration Management Plan | | | | X | |
| CM-10 | Software Usage Restrictions | | | | X | |
| CM-11 | User-Installed Software | X | | | X | |
| CM-12 | Information Location* | X | X | X | X | 3.2 |
| CM-13 | Data Action Mapping* | | | | X | |
| CM-14 | Signed Components* | | | | X | |
| CP-1 | Contingency Planning Policy and Procedures | | X | | X | |
| CP-2 | Contingency Plan | X | X | | X | |
| CP-3 | Contingency Training | | X | | X | |
| CP-4 | Contingency Plan Testing | X | X | | X | |
| CP-9 | System Backup | X | | X | X | 2.B.6 |
| CP-10 | System Recovery and Reconstitution | X | | | X | |
| IA-1 | Identification and Authentication Policy and Procedures | | X | | X | |
| IA-2 | Identification and Authentication (Organizational Users) | X | | | X | |
| IA-3 | Device Identification and Authentication | | | | X | |

18

| Control Number | Control Name | Control Enhancements | Privacy-Related | Physical | Information Technology | Physical Security Reference Section |
|---|---|---|---|---|---|---|
| IA-4 | Identifier Management | X | X | | X | |
| IA-5 | Authenticator Management | X | | | X | |
| IA-6 | Authenticator Feedback | | | | X | |
| IA-7 | Cryptographic Module Authentication | | | | X | |
| IA-8 | Identification and Authentication (Non-Organizational Users) | X | | | X | |
| IA-9 | Service Identification and Authentication* | | | | X | |
| IA-11 | Re-Authentication* | | | | X | |
| IA-12 | Identity Proofing* | X | | | X | |
| IR-1 | Incident Response Policy and Procedures | | X | X | X | 2.C.2 |
| IR-2 | Incident Response Training | X | X | X | X | 2.D.2.1 |
| IR-3 | Incident Response Testing | X | X | X | X | 1.8.4 |
| IR-4 | Incident Handling | X | X | X | X | 1.8.4 |
| IR-5 | Incident Monitoring | X | X | X | X | 1.8.4 |
| IR-6 | Incident Reporting | X | X | X | X | 1.8.2 |
| IR-7 | Incident Response Assistance | X | X | | X | |
| IR-8 | Incident Response Plan | | X | X | X | 1.8.2 |
| IR-9 | Information Spillage Response | X | | | X | |
| MA-1 | System Maintenance Policy and Procedures | | | | X | |
| MA-2 | Controlled Maintenance | X | | X | X | 2.B.3.2 |
| MA-3 | Maintenance Tools | X | | | X | |
| MA-4 | Nonlocal Maintenance | X | | | X | |
| MA-5 | Maintenance Personnel | X | | X | X | 2.B.3.3 |
| MA-6 | Timely Maintenance* | | | | X | |
| MP-1 | Media Protection Policy and Procedures | | | X | | 2.C.2 |
| MP-2 | Media Access | | | X | | 2.C.11 |
| MP-3 | Media Marking | | | X | | 2.B.6 |
| MP-4 | Media Storage | | | X | | 2.B.6 |
| MP-5 | Media Transport | X | | X | | 2.B.4 |
| MP-6 | Media Sanitization | X | | X | | 2.F.3.1 |
| MP-7 | Media Use* | X | | X | X | 2.B.7.1 |
| PE-1 | Physical and Environmental Policy and Procedures | | | X | | 2.C.2 |
| PE-2 | Physical Access Authorizations | | | X | | 2.B.3.2 |
| PE-3 | Physical Access Control | X | | X | | 2.B.3 |
| PE-4 | Access Control for Transmission | | | X | | 2.B.2 |
| PE-5 | Access Control for Output | | | X | | 2.B.3.3 |

| Control Number | Control Name | Control Enhancements | Privacy-Related | Physical | Information Technology | Physical Security Reference Section |
|---|---|---|---|---|---|---|
| | Devices | | | | | |
| PE-6 | Monitoring Physical Access | X | | X | | 2.B.3.2 |
| PE-8 | Visitor Access Records | | | X | | 2.B.3.1 |
| PE-16 | Delivery and Removal | | | X | | 2.B.4 |
| PE-17 | Alternate Work Site | | | X | | 2.B.7 |
| PL-1 | Planning Policy and Procedures | | X | | X | |
| PL-2 | Security and Privacy Plans | | X | X | X | 2.E.4 |
| PL-4 | Rules of Behavior | X | X | | X | |
| PL-8 | Security and Privacy Architectures | X | X | | X | |
| PM-1 | Information Security Program Plan* | | | | X | |
| PM-2 | Information Security Program Roles | | | | X | |
| PM-3 | Information Security and Privacy Resources* | | X | | X | |
| PM-4 | Plan of Action and Milestones Process* | | X | X | X | 2.D.9 |
| PM-5 | System Inventory* | X | | | X | |
| PM-7 | Enterprise Architecture* | X | X | | X | |
| PM-9 | Risk Management Strategy* | | X | | X | |
| PM-10 | Authorization Process | | X | | X | |
| PM-12 | Insider Threat Program* | | | X | X | 2.C.2 |
| PM-14 | Testing, Training and Monitoring* | | X | X | X | 2.D.2 |
| PM-18 | Privacy Program Plan* | | X | X | X | 2.C.2 |
| PM-19 | Privacy Program Roles* | | X | X | X | 2.C.2 |
| PM-21 | Accounting of Disclosures* | | X | | X | |
| PM-29 | Risk Management Program Leadership Roles* | | | | X | |
| PS-1 | Personnel Security Policy and Procedures | | | X | | 2.C.2 |
| PS-2 | Position Risk Designation | | | X | | 2.C.2 |
| PS-3 | Personnel Screening | | | X | | 2.C.2 |
| PS-4 | Personnel Termination | | | X | | 2.C.4.3 |
| PS-5 | Personnel Transfer | | | X | | 2.C.4.1 |
| PS-6 | Access Agreements | X | | X | | 2.C.2 |
| PS-7 | External Personnel Security | | | X | | 1.9.3 |
| PS-8 | Personnel Sanctions | | | X | | 2.C.4.2 |
| PS-9 | Position Descriptions* | | | X | | |
| PT-1 | Personally Identifiable Information Processing and Transparency Policy and Procedures* | | X | | | |

TD_0000252

| Control Number | Control Name | Control Enhancements | Privacy-Related | Physical | Information Technology | Physical Security Reference Section |
|---|---|---|---|---|---|---|
| PT-2 | Authority to Process Personally Identifiable Information* | | X | | | |
| RA-1 | Risk Assessment Policy and Procedures | | X | | X | |
| RA-3 | Risk Assessment | X | X | | X | |
| RA-5 | Vulnerability Scanning | X | | | X | |
| RA-7 | Risk Response* | | X | | X | |
| RA-8 | Privacy Impact Assessments* | | X | X | X | 2.E.4.1 |
| SA-1 | System and Services Acquisition Policy and Procedures | | X | | X | |
| SA-2 | Allocation of Resources | | | | X | |
| SA-3 | System Development Life Cycle | X | X | | X | |
| SA-4 | Acquisition Process | X | X | X | X | 2.C.7 |
| SA-5 | Information System Documentation | | | | X | |
| SA-8 | Security Engineering Principles | | X | | X | |
| SA-9 | External System Services | X | X | | X | |
| SA-10 | Developer Configuration Management | X | | | X | |
| SA-11 | Developer Security Testing and Evaluation | X | X | | X | |
| SA-15 | Development Process, Standards and Tools* | X | | | X | |
| SA-22 | Unsupported System Components | | | | X | |
| SC-1 | System and Communications Protection Policy and Procedures | | X | | X | |
| SC-2 | Application Partitioning | X | | | X | |
| SC-4 | Information in Shared System Resources | | | | X | |
| SC-7 | Boundary Protection | X | | | X | |
| SC-8 | Transmission Confidentiality and Integrity | X | | | X | |
| SC-10 | Network Disconnect | | | | X | |
| SC-12 | Cryptographic Key Establishment and Management | X | | | X | |
| SC-13 | Cryptographic Protection | | | | X | |
| SC-15 | Collaborative Computing Devices and Applications | | | | X | |
| SC-17 | Public Key Infrastructure Certificates | | | | X | |
| SC-18 | Mobile Code | X | | | X | |

TD_0000253

| Control Number | Control Name | Control Enhancements | Privacy-Related | Physical | Information Technology | Physical Security Reference Section |
|---|---|---|---|---|---|---|
| SC-20 | Secure Name/Address Resolution Service (Authoritative Source)* | X | | | X | |
| SC-21 | Secure Name/Address Resolution Service (Recursive or Caching Resolver)* | | | | X | |
| SC-22 | Architecture and Provisioning for Name/Address Resolution Service* | | | | X | |
| SC-23 | Session Authenticity | X | | | X | |
| SC-28 | Protection of Information at Rest | X | | | X | |
| SC-35 | External Malicious Code Identification* | | | | X | |
| SC-39 | Process Isolation* | | | | X | |
| SC-45 | System Time Synchronization* | X | | | X | |
| SI-1 | System and Information Integrity Policy and Procedures | | X | | X | |
| SI-2 | Flaw Remediation | X | | | X | |
| SI-3 | Malicious Code Protection | X | | | X | |
| SI-4 | System Monitoring | X | | | X | |
| SI-5 | Security Alerts, Advisories and Directives | | | | X | |
| SI-7 | Software, Firmware and Information Integrity* | X | | | X | |
| SI-8 | Spam Protection | X | | | X | |
| SI-10 | Information Input Validation | | | | X | |
| SI-11 | Error Handling | | | | X | |
| SI-12 | Information Management and Retention* | X | X | | X | |
| SI-16 | Memory Protection | | | | X | |
| SR-1 | Policy and Procedures | | | | X | |
| SR-2 | Supply Chain Risk Management Plan | X | | | X | |
| SR-3 | Supply Chain Controls and Processes | X | | | X | |
| SR-6 | Supplier Assessments and Reviews | | | | X | |
| SR-10 | Inspection of Systems or Components | | | | X | |
| SR-11 | Component Authenticity | X | | | X | |

*New to this revision of Publication 1075

TD_0000254

## INTRODUCTION

### General

To foster a tax system based on voluntary compliance, the public must maintain a high degree of confidence that the personal and financial information furnished to the Internal Revenue Service (IRS) is protected against unauthorized use, inspection, or disclosure.

The IRS must administer the disclosure provisions of the Internal Revenue Code (IRC) according to the spirit and intent of these laws, ever mindful of the public trust. The IRC defines and protects the confidential relationship between the taxpayer and the IRS and makes it a crime to violate this confidence. IRC § 7213 prescribes criminal penalties, making it a felony offense for federal and state employees and others who illegally disclose federal tax returns and return information (FTI). Additionally, IRC § 7213A makes the unauthorized inspection of FTI a misdemeanor, punishable by fines, imprisonment, or both. And finally, IRC § 7431 prescribes civil damages available to the taxpayer upon notification that a criminal indictment or the existence of information that an unauthorized inspection or disclosure has occurred under IRC §§ 7213 or 7213(A).

The concerns of citizens and Congress regarding individual rights to privacy require the IRS to continuously assess disclosure practices and the safeguards used to protect the confidential information entrusted. While the sanctions of the IRC are designed to protect the privacy of taxpayers, the IRS recognizes the importance of cooperating to the fullest extent permitted by law with other federal, state, and local authorities in their administration and enforcement of laws.

Those agencies or agents that legally receive FTI directly from either the IRS or from secondary sources (e.g., Social Security Administration [SSA]), pursuant to IRC § 6103 or by an IRS-approved exchange agreement must have adequate programs in place to protect the data received. Furthermore, as agencies procure contractor or sub-contractor services, it becomes equally important that contractors or sub-contractors protect that information from unauthorized use, access, and disclosure.

IRS Safeguards reports and related communications in possession of federal, state, and local agencies are considered the property of the IRS and may not be disclosed to anyone outside the agency and are subject to disclosure restrictions under federal law and IRS rules and regulations. This includes, but is not limited to, Preliminary Findings Report (PFR); Safeguard Review Report (SRR); Safeguard Security Report (SSR) and Corrective Action Plan (CAP).

Release of any IRS Safeguards document requires the express permission of the Internal Revenue Service. Requests received through Sunshine and/or Information Sharing/Open Records provisions must be referred to the federal Freedom of Information Act (FOIA) statute for processing. State and local agencies receiving such requests must refer the requestor to the instructions to file a FOIA request with the IRS. Federal agencies must follow established procedures that require consultation before citing FOIA exemptions on IRS agency records, or directly refer the FOIA request to IRS for processing.

The intent of this requirement is to address any public request for sensitive information and prevent disclosure of data that would put FTI at risk. The agency may still distribute these reports internally and within other state agencies, or to auditors or oversight panels as required to either take corrective actions or report status without further IRS approval.

Additional guidance may be found at, https://www.irs.gov/uac/IRS-Freedom-of-Information, and questions should be referred to the Safeguards mailbox at Safeguardreports@irs.gov.

TD_0000255

## Overview of Publication 1075

This publication provides guidance to ensure the policies, practices, controls, and safeguards employed by recipient agencies, agents, contractors, or sub-contractors adequately protect the confidentiality of FTI.

Enterprise security policies address the purpose, scope, roles, responsibilities, management commitment, coordination among organizational entities and compliance to implement all applicable security controls. This document contains the managerial, operational, and technical security controls that must be implemented as a condition of receipt of FTI.

The guidelines outlined herein apply to all FTI, no matter the amount or the media in which it is recorded. FTI must be afforded the same levels of protection regardless of it residing on paper or electronic form. Systematic, procedural, or manual security policies must minimize circumvention.

A mutual interest exists in our responsibility to ensure that FTI is disclosed only to persons authorized and used only as authorized by statute or regulation. The IRS is confident of your diligence in this area and believes that this publication will be a helpful resource.

Conforming to these guidelines meets the safeguard requirements of IRC § 6103(p)(4) and makes our joint efforts beneficial.

Requirements throughout this document apply to all organizational segments of an agency receiving FTI. It is the agency's responsibility to ensure all functions within the agency, including consolidated data centers, contractors, and sub-contractors (where allowed by federal statute) with access to FTI, understand and implement the requirements in this publication.

This publication provides the preliminary steps to consider before submitting a request to receive FTI, requirements for proper protection, expectations from the IRS and considerations that may be helpful in establishing a program to protect FTI. The exhibits in this publication are provided for additional guidance.

IRS Safeguards is responsible for all interpretations of safeguarding requirements. Publication 1075 requirements may be supplemented or modified between editions of Publication 1075 via guidance issued by Safeguards and posted on the Safeguards website.

## SAFEGUARD RESOURCES

### Safeguards Website

Safeguards maintains Publication 1075, templates, guidance and frequently asked questions online at http://www.irs.gov/uac/Safeguards-Program. Agencies are highly encouraged to regularly visit the website for updates.

The website contains many resources to assist agencies with meeting Publication 1075 requirements. Examples of the website's features include:

- Safeguard alerts and technical assistance documents

- Recommendations on how to comply with Publication 1075 requirements

- Reporting requirement templates (e.g., SSR) and guidance

- Instructions for reporting unauthorized accesses, disclosures, or data breaches

- Internal inspections report templates and instructions

TD_0000256

- IRS disclosure awareness videos and resources

- Review Preparation Questionnaire (RPQ)

- Cybersecurity requirements documented in Safeguard Computer Security Evaluation Matrix (SCSEM) templates organized by technology or topic

- Nessus audit files

## Safeguards Mailbox

The Safeguards Mailbox is an acceptable alternative for communicating information or questions to the Office of Safeguards relative to safeguarding requirements and Publication 1075. The Mailbox is located at SafeguardReports@irs.gov. The Office of Safeguards requires that all reports, when sent to the Office of Safeguards via email, be transmitted using IRS-approved encryption methods as described in Section 2.E.3 Encryption Requirements.  Below are items that are appropriate for submission to the Mailbox:

- Safeguards Reports and Extension Requests

- 45-Day Notifications

- Publication 1075 Technical Inquiries

- Re-Disclosure Agreements

- Data Incident Reporting

- Ad hoc Points of Contact changes

## KEY DEFINITIONS

This section establishes a baseline of key terms used throughout this publication. For additional definitions of terms and phrases, refer to Glossary and Key Terms.

## Federal Tax Information

Safeguarding FTI is critically important to continuously protect taxpayer confidentiality as required by IRC § 6103. FTI consists of federal tax returns and return information (and information derived from it) that is in the agency's possession or control that is covered by the confidentiality protections of the IRC and subject to the IRC § 6103(p)(4) safeguarding requirements including IRS oversight. FTI is categorized as Sensitive But Unclassified (SBU) information and may contain personally identifiable information (PII).

FTI includes return or return information received directly from the IRS or obtained through an authorized secondary source such as Social Security Administration (SSA), Federal Office of Child Support Enforcement (OCSE), Bureau of the Fiscal Service (BFS) or Centers for Medicare and Medicaid Services (CMS) or another entity acting on behalf of the IRS pursuant to an IRC § 6103(p)(2)(B) Agreement.

FTI includes any information created by the recipient that is derived from federal return or return information received from the IRS or obtained through a secondary source.

FTI may not be masked to change the character of information to circumvent IRC § 6103 confidentiality requirements.

TD_0000257

## Return and Return Information

IRC § 6103(b)(1) defines a return as any tax or information return, estimated tax declaration or refund claim (including amendments, supplements, supporting schedules, attachments or lists) required by or permitted under the IRC and filed with the IRS by, on behalf of, or with respect to any person or entity. Examples of returns include forms filed on paper or electronically, such as Forms 1040, 941, 1120 and other informational forms, such as 1099 or W -2.[1] Forms include supporting schedules, attachments or lists that are supplemental to or part of such a return.

Return information, in general, is any information collected or generated by the IRS regarding any person's liability or possible liability under the IRC. IRC § 6103(b)(2)(A) defines return information very broadly. It includes but is not limited to:

- Information that IRS obtained from any source or developed through any means that relates to the potential liability of any person under the IRC for any tax, penalty, interest, fine, forfeiture or other imposition or offense

- Information extracted from a return, including names of dependents or the location of business

- The taxpayer's name, address, and identification number

- Information collected by the IRS about any person's tax affairs, even if identifiers, such as name, address and identification number are deleted

- Status of whether a return was filed, under examination or subject to other investigation or processing, including collection activities

- Information contained on transcripts of accounts

## Personally Identifiable Information (PII)

FTI may include Personally Identifiable Information (PII). FTI may include the following PII elements:

- Name of a person with respect to whom a return is filed

- Taxpayer mailing address

- Taxpayer identification number

- Email addresses

- Telephone numbers

- Social Security Numbers

- Bank account numbers

- Date and place of birth

- Mother's maiden name

---

[1] Refer to IRS.gov for a complete catalog of IRS forms

TD_0000258

- Biometric data (e.g., height, weight, eye color, fingerprints)

- Any combination of the above

For the purposes of Publication 1075 and Safeguarding requirements, PII is FTI when provided by the IRS or a secondary source (i.e., SSA, BFS).

## Information Received from Taxpayers or Third Parties

Copies of tax returns or return information provided to the agency directly by the taxpayer or their representative (e.g. W-2's, Form 1040, etc.) or obtained from public information files (e.g. federal tax lien on file with the county clerk, Offers in Compromise available for public inspection, court records, etc.) is not protected FTI that is subject to the safeguarding requirements of IRC § 6103(p)(4). If the agency independently verifies FTI provided by the IRS or a secondary source (i.e., SSA, BFS) with the taxpayer or a third-party source (linked to the taxpayer), the verified information is no longer FTI as long as the IRS source information is replaced or overwritten with the newly provided information.

## Access

Access means when an individual: (1) enters a restricted or locked area, room, container, or system containing federal tax information; or (2) obtains, acquires, receives, examines, uses, or gains knowledge of federal tax information, by physical, electronic, or any other methods.

Users (e.g., system administrators, database administrators) have access to FTI if they have the ability to modify or bypass security controls protecting FTI (to include decryption keys).

## Cloud Computing

Cloud computing is a model for enabling ubiquitous, convenient, on-demand network access to a shared pool of configurable, computing resources (e.g., networks, servers, storage, applications and services) that can be rapidly provisioned and released with minimal management effort or service provider interaction.

## Inadvertent Access

Access to FTI without authority that is non-willful and unanticipated or accidental.

## Inadvertent Disclosure

Accidental exposure of information to a person not authorized access.

## Incidental Access

Access to FTI without a need-to-know that may occur in extraordinary circumstances (i.e., system failure, data incident response, disaster response).

## Unauthorized Access

Unauthorized access occurs when a person gains logical or physical access to FTI without authority under IRC § 6103 and without a need-to-know (which would include but is not limited to agency employees with no need to know and/or janitors and security guards when there is no second barrier securing the federal tax information as well as developers/administrators of electronic systems/applications receiving, processing, storing or transmitting federal tax information).

TD_0000259

Access to FTI is permitted only to individuals who require the FTI to perform their official duties and as authorized under the IRC. FTI must never be indiscriminately disseminated, even within the recipient agency, body, or commission. Agencies must evaluate the need for FTI before the data is requested or disseminated. Inadvertent access is access to FTI without authority and is non-willful. Willful access to FTI by a person without authorization or need-to-know may be prosecuted under IRC § 7213A.

## Unauthorized Disclosure

Unauthorized disclosure occurs when a person with access to FTI discloses it to another person without authority under IRC § 6103.

An unauthorized disclosure has occurred when FTI is knowingly or due to gross negligence provided to an individual who does not have the statutory right to have access to it under the IRC. Even without willfulness or gross negligence FTI is not to be disclosed to entities or individuals who are not authorized by IRC § 6103 to have it. Inadvertent disclosure is disclosure of FTI without authority and is non-willful. Willful disclosure of FTI to a person without authorization or need-to-know may be prosecuted under IRC § 7213.

## Need-to-Know

Need-to-know is established when individuals require FTI to perform their official duties and are authorized under the IRC.

Limiting access to individuals on a need-to-know basis reduces opportunities to "browse" or improperly view FTI. Restricting access to designated personnel minimizes improper access or disclosure. FTI disclosures must be limited to what is essential to accomplish official duties.

## Adverse Action

An adverse action includes a suspension of 15 days or more, a reduction in pay, or termination of employment.

## Disciplinary Action

A disciplinary action includes an admonishment, written reprimand, or suspension of 14 days or less.

## Personnel Sanction

A disciplinary or adverse action for individuals failing to comply with established information security policies and procedures constitutes a personnel sanction.

TD_0000260

# 1.0 FEDERAL TAX INFORMATION, REVIEWS and OTHER REQUIREMENTS

## 1.1 General

IRC § 6103 is a confidentiality statute and generally prohibits the disclosure of FTI (see Exhibit 1, IRC § 6103(a) and (b), for general rules and definitions). Exceptions to the general rule authorize disclosure of FTI to certain federal, state, and local agencies. Generally, these disclosures are made by the IRS in response to written requests signed by the head of the requesting agency or an authorized delegate. FTI so disclosed may be used by the receiving agency solely for the purpose described in the exception authorizing the disclosure. The statutes providing authorization to disclose FTI contain specific conditions that may require different procedures in maintaining and using the information. These conditions are outlined under specific sections in this publication.

As a condition of receiving FTI, the receiving agency must show, to the satisfaction of the IRS, the ability to protect the confidentiality of that information. Certain safeguards must be implemented to prevent unauthorized access and use. Besides written requests, the IRS may require formal agreements that specify, among other things, how the information will be protected. An agency must ensure its safeguards will be ready for immediate implementation upon receipt of FTI. Copies of the initial and subsequent requests for data and any formal agreement must be retained by the agency a minimum of five (5) years as a part of its recordkeeping system.

Agencies must always maintain the latest SSR on file. The initial request for FTI must be followed by submitting a SSR to Safeguards at least 90 days before the scheduled or requested receipt of FTI (see Section 2.E, Reporting Requirements—6103(p)(4)(E)). The SSR must include processing and safeguard procedures for all FTI received and distinguish between agency programs and functional organizations using FTI. Multiple organizations, divisions or programs within a federal agency using FTI must be consolidated into a single report for that agency at the direction of Safeguards.

Agencies entering into an agreement to disclose FTI to agents, contractors, or sub-contractors requires advance notice to IRS Safeguards (see Section 2.E.6 Notification Reporting Requirements and Section 1.9.4, Disclosing FTI to Contractors or Sub-Contractors.)

> Agencies must exercise care in outlining their safeguard program. Reports that lack clarity or sufficient information will be returned to the submitting agency for additional documentation.

## 1.2 Authorized Use of FTI

Any agency that receives FTI for an authorized use may not use that information in any manner or for any purpose not consistent with that authorized use. If an agency needs FTI for a different authorized use under a different provision of IRC § 6103, a separate request must be sent to IRS Disclosure.

> An unauthorized secondary use of FTI is specifically prohibited and may result in discontinuation of disclosures to the agency and imposition of civil or criminal penalties on the responsible officials.

The Office of Safeguards validates that an agency's "need and use" of FTI conforms with the governing provisions allowing the disclosure of FTI. The agency's SSR must describe the purpose(s) for which FTI is collected, used, maintained and shared.

TD_0000261

## 1.3 Secure Data Transfer

The IRS established a Secure Data Transfer (SDT) program to provide encrypted electronic transmission of FTI between the IRS and trading partners. For support with establishing an IRS SDT account, please submit an SDT Customer Support Request. Complete information on establishing an SDT account is available in the SDT Handbook. The SDT Handbook is available from a local IRS governmental liaison or a request to the Safeguards mailbox.

Only the following types of documents will be accepted via SDT:

- Control File (.txt)

- Adobe (.pdf)

- Word Document (.doc or .docx)

- Excel Document (.xls or.xlsx)

- Zipped File (.zip)

Contact the SafeguardReports@irs.gov mailbox for specific details on how to submit information via SDT.

## 1.4 State Tax Agency Limitations

FTI may be obtained per IRC § 6103(d) by state tax agencies only to the extent the information is needed for and is reasonably expected to be used for state tax administration. An agency's records must include some account of the result of its use of FTI (e.g., disposition of closed cases and summary of revenues generated) or include reasons why the information was not used. If any agency continually receives FTI that it is unable to use for any reason, it must contact the IRS official liaison and discuss the need to stop the receipt of this FTI.

State tax agencies using FTI to conduct statistical analysis, tax modeling or revenue projections must notify the IRS by submitting a signed Need and Use Justification Statement for Use of Federal Tax Information form and follow the established guidelines (available through the assigned Governmental Liaison).

Annually, the agency must provide updated information in the SSR regarding its modeling activities that include FTI. In the SSR, the agency must describe:

- Any use of FTI that is in addition to what was described in the original Need and Use Justification Form

- Any new, previously unreported internal tax administration compilations that include FTI

- Changes to the listing of authorized employees (Attachment B to the Need and Use Justification Form)

If the agency intends to use a contractor or sub-contractor for conducting statistical analysis, tax modeling or revenue projections, it must submit a 45-day notification (see Section 1.9.4, Disclosing FTI to Contractors or Sub-Contractors) prior to contractor or sub-contractor access to the FTI. The agency's SSR must detail the use of FTI for this purpose. In addition, the agency must submit a separate statement detailing the methodology used and data to be used by the contractor or sub-contractor. The Office of Safeguards and Statistics of Income functions will review the information provided to confirm that

TD_0000262

adequate safeguarding protocols are in place and that the modeling methodology to be used to remove taxpayer identifying information is appropriate.

## 1.5 Coordinating Safeguards within an Agency

Because of the diverse purposes that authorized disclosures may be made to an agency and the division of responsibilities among different components of an agency, FTI may be received and used by several quasi-independent units within the agency's organizational structure. Where there is such a dispersal of FTI, the agency must centralize safeguarding responsibilities to the greatest extent practical and establish and maintain uniform safeguard standards consistent with IRS guidelines. The official(s) assigned these responsibilities must hold a position high enough in the agency's organizational structure to ensure compliance with the agency safeguard standards and procedures.

The selected official(s), or point(s) of contact (POC(s)) must also be responsible for ensuring that internal inspections are conducted, submission of required safeguard reports to the IRS, properly reporting any data breach incidents, disclosure awareness training and for any necessary liaison with the IRS.

## 1.6 Safeguard Reviews

A safeguard review is an on-site, remote, or a combination of both (hybrid) evaluation of the use of FTI and the measures employed by the receiving agency and its agents (where authorized) to protect the data.

- **On-site reviews**: Disclosure Enforcement Specialists (DES), Cybersecurity Reviewers (CSR), and Management Officials will conduct an on-site evaluation of the security and privacy controls implemented by the agency and all supporting parties. Assessment techniques include, but are not limited to visual inspections, observations, interviews, document exchange, and automated scanning.

- **Remote reviews**: Disclosure Enforcement Specialists, Cybersecurity Reviewers, and Management Officials will conduct a remote evaluation of the security and privacy controls implemented by the agency and all supporting parties using secured collaborative technologies (e.g., screen-sharing capabilities, teleconferences, video enabled software, etc.). Assessment techniques include, but are not limited to visual inspections, observations, interviews, document exchange, and automated scanning.

This review includes all FTI received whether from the IRS or a secondary source such as SSA, Bureau of the Fiscal Service or another agency (see Federal Tax Information). Safeguard reviews are conducted to determine the adequacy of safeguards as opposed to evaluating an agency's programs. Several factors will be considered when determining the need for a review, the type of review, and the frequency of which a review will be conducted.

## 1.6.1 Before the Review

The IRS initiates the review by communication with an agency point of contact (POC) as reported by the agency in the SSR. The preliminary discussion will be followed by a formal engagement letter to the agency head, which provides official notification of the planned safeguard review.

This engagement letter outlines what the review will encompass. Additional requests for specific information will be provided to the agency POC. These requests may include a list of records to be reviewed (e.g., training manuals, flowcharts, policies, awareness program documentation and organizational charts relating to the processing of FTI). Prior to the review, the agency POC will receive information regarding the manner in which the review will be conducted (e.g., on-site and/or remote), the

scope and purpose of the review, a list of the specific areas to be reviewed and agency personnel to be interviewed.

A Preliminary Security Evaluation (PSE) call will be held to determine the scope of the review (see NIST Control PM-5 CE-1, Inventory of PII). The electronic flow of FTI will be discussed to provide the review team with a thorough understanding of the location and use of FTI throughout the agency's infrastructure. During the call primary POCs will be introduced, the scope of the review will be defined, assessment logistics will be discussed, and any questions will be answered. Participants should include agency IT staff knowledgeable about the location and flow of FTI throughout the agency as well as staff or contractors from other locations such as consolidated data centers. Additionally, mini-PSE calls for contractors, sub-contractors, off-site locations, etc. may be needed to obtain additional information in determining the review scope. Requests for additional information and clarification to include automated scanning procedures will be discussed after the PSE call(s) and a proposed scope will be provided.

## 1.6.2 During the Review

The review process validates the accuracy of the SSR and conformance with the current version of Publication 1075 requirements and National Institute of Standards and Technology (NIST) Special Publication 800-53. At the opening conference, review procedures will be communicated, followed by a data flow discussion, and confirming the flow of FTI (see NIST Control PM-5 CE-1, Inventory of PII). Observing actual operations is a required step in the review process. Sites to be reviewed will be based on the flow of the FTI, which may include, but are not limited to, field offices, consolidated data centers, off-site storage facilities, disaster recovery sites, contractor and sub-contractor sites.

Review methods may include but are not limited to:

- Spot check agency records for FTI

- Employee interviews

- Facility tours

- Document review

- Automated/manual testing (See Safeguards website for tools used for automated testing)

- Remote assessment tools

Agencies must facilitate execution of the review methods utilized by Safeguards staff. Agency management approval must be obtained prior to review, if agency policies and procedures contradict any of these methods.

The agency POC will be advised the of critical issues and findings as the review progresses. A briefing will be held with the POC to go over the Preliminary Findings Report (PFR) before the closing conference.

The closing conference is held upon completion of the agency's review, where the PFR is issued to provide the agency an overview of the findings identified during the review.

## 1.6.3 After the Review

An SRR and CAP will be issued within 45 days of the closing conference to document the review findings. Requests for corrections to the SRR must be emailed to the SafeguardReports@irs.gov mailbox. The Office of Safeguards will respond with an acknowledgement and a determination.

TD_0000264

Each finding will be identified with a criticality level that identifies potential risk to loss, breach or disclosure of FTI.

**Safeguards Finding Criticality Definitions**

| Impact Level | Definition |
|---|---|
| Limited | The potential impact is *Limited* if the vulnerability could be expected to have a *low or minimal adverse* effect on the ability to maintain the confidentiality and integrity of FTI. |
| Moderate | The potential impact is *Moderate* if the vulnerability could be expected to have a *demonstratable* adverse effect on the ability to maintain the confidentiality and integrity of FTI. |
| Significant | The potential impact is *Significant* if the vulnerability could be expected to have *severe* and/or *imminent* adverse effect on the ability to maintain the confidentiality and integrity of FTI. |
| Critical | The potential impact is *Critical* if the vulnerability has an *immediate* adverse effect on the confidentiality and integrity of FTI. |

All findings must be addressed in a timely fashion. The Office of Safeguards will identify deadlines for resolution based upon the risk associated with each finding. Outstanding issues must be resolved and addressed in the next reporting cycle of the CAP.

If the Agency has any critical findings, the agency must submit a mitigation plan to Safeguards within 7 days from the closing conference date. Safeguards will report the critical findings along with your agency plan to the Treasury Inspector General for Tax Administration (TIGTA).

The CAP must be updated and submitted semi-annually using the last CAP issued by the Office of Safeguards (see Section 2.E.5, Corrective Action Plan) until all review findings are accepted as closed.

If an agency has a CAP due within 60 days of the review, that CAP is not required because the remaining open findings will be handled as part of the upcoming on-site or remote Safeguard Review

Each CAP submission must include an explanation and/or evidence of actions already taken or planned to resolve all outstanding findings. The agency must submit an actual or planned implementation date for each outstanding finding.

## 1.7 Termination of FTI

### 1.7.1 Agency Request

#### 1.7.1.1 Termination Documentation

When an agency no longer requires FTI, notify Safeguards at SafeguardReports@irs.gov by providing the following:

1. Copies of notifications to all agencies from which FTI is received, that FTI will no longer be requested, and

2. Letter from the Head of Agency certifying that all residual FTI has been destroyed. (See Section 2.F Disposal of FTI – IRC § 6103(p)(4)(F))

TD_0000265

Once documentation is reviewed, the Office of Safeguards will send an acknowledgement of the agency's termination, instructions on Safeguard reporting and on-site review obligations. Instructions for reinstatement will be included in the acknowledgement letter.

### 1.7.1.2 Archiving FTI Procedure

This section is for agencies terminating receipt of FTI but required by statute to retain FTI for designated periods. If residual FTI is required to be retained by statute for a designated period (e.g., 5 or 10 years), then agencies must:

- Ensure that a currently authorized agency, contractors, or sub-contractor retain FTI in accordance with Publication 1075 security standards

- Provide copies of notifications as shown in Section 1.7.1.1, Termination Documentation

- Submit an annual SSR each year while the agency has possession or oversight of the data

- Continue to be subject to periodic Safeguard Reviews

- Submit a letter from Head of Agency certifying that all residual FTI has been destroyed when the retention period has ended

## 1.7.2 FTI Suspension, Termination and Administrative Review

The IRS may terminate or suspend disclosure of return and return information to any authorized recipient under 6103(p)(4), if the IRS determines that:

1. The authorized recipient (or agency) has allowed an unauthorized inspection or disclosure of FTI and has not taken adequate corrective action to prevent the recurrence of an unauthorized inspection or disclosure; or

2. The authorized recipient does not satisfactorily maintain the safeguards prescribed by Section 6103(p)(4) and Publication 1075 and has made no adequate plan to improve its system to maintain the safeguards satisfactorily.

Prior to terminating FTI, the IRS will notify the authorized recipient in writing and may suspend further disclosures if it is deemed that federal tax administration would be seriously impaired.

Agencies in receipt of the termination or suspension letter may appeal the determination as outlined in Exhibit 3, USC Title 26, CFR § 301.6103(p)(7)-1.

## 1.8 Reporting Improper Inspections or Disclosures

## 1.8.1 Terms

### 1.8.1.1 Data Incident

A data incident is an occurrence that (1) actually or imminently jeopardizes, without lawful authority, the integrity, confidentiality or availability of information or an information system; or (2) constitutes a violation or imminent threat of violation of law, security policies, security procedures or acceptable use policies. Incidental and inadvertent accesses are considered data incidents.

An incident involving the loss or theft of an IRS asset containing FTI, or the loss or theft of a physical document that includes FTI, or the inadvertent disclosure of FTI, is known as a data breach. See the Data Breach definition below. Often, an occurrence may be first identified as an incident, but later identified as

TD_0000266

a data breach once it is determined that the incident involves FTI. This is often the case with a lost or stolen laptop or electronic storage device.

## 1.8.1.2 Data Breach

A data breach is a type of incident involving a loss, theft, or inadvertent disclosure of FTI. A data breach is defined as the loss of control, compromise, unauthorized disclosure, unauthorized acquisition, or any similar occurrence where:

- a person other than an authorized user accesses or potentially accesses FTI or,

- an authorized user accesses or potentially accesses FTI for an unauthorized purpose.

A data breach is not limited to an occurrence where a person other than an authorized user potentially accesses FTI by means of a network intrusion, a targeted attack that exploits website vulnerabilities, or an attack executed through an email message or attachment. A data breach may also include the loss or theft of physical documents that include FTI and portable electronic storage media that store FTI, the inadvertent disclosure of FTI on a public website or an oral disclosure of FTI to a person who is not authorized to receive that information. It may also include an authorized user accessing FTI for an unauthorized purpose.

Some common examples of a data breach include:

- A laptop or portable storage device storing FTI is lost or stolen.

- An email containing FTI is inadvertently sent to the wrong person.

- A box of documents with FTI is lost or stolen during shipping.

- An unauthorized third party overhears agency employees discussing FTI.

- A user with authorized access to FTI sells it for personal gain or disseminates it.

- An IT system that maintains FTI is accessed by a malicious actor.

- FTI is posted inadvertently on a public website.

## 1.8.2 General

A written policy must be established and distributed that covers incident management. The policy must clearly state the actions that will be taken for the improper inspection or disclosure of FTI. Upon discovering a possible improper inspection or disclosure of FTI, including breaches and incidents, by a federal employee, a state employee or any other person, the individual making the observation or receiving information must contact the local Treasury Inspector General for Tax Administration (TIGTA) Field Division office, to the Special Agent-in-Charge, immediately, but no later than 24 hours after identification of a possible issue involving FTI. See NIST IR-6, Incident Reporting and IR-8, Incident Response Plan.

Local TIGTA Field Division Office contact information can be found on the TIGTA website at https://www.treasury.gov/tigta/oi_office.shtml.

If unable to contact the local TIGTA Field Division, contact the Hotline Number.

**Hotline Number:**     800-366-4484 during normal working hours for immediate assistance.

TD_0000267

Note: After regular business hours, call 800-589-3718. This number reaches an answering service which answers all calls from all locations in the United States 24 hours a day 7 days a week. The answering service will contact the on-call TIGTA agent.

**TIGTA Homepage:**      https://www.treasury.gov/tigta

**Mailing Address:**      Treasury Inspector General for Tax Administration
Ben Franklin Station
P.O. Box 589
Washington, DC 20044-0589

For intrusions, manipulations or compromises of computer networks, as well as external cyber-based actions that interfere with the IRS's ability to conduct electronic tax administration, or any breach that involves unauthorized disclosure within an IT environment, contact TIGTA Electronic Crimes & Intelligence Division at cybercrimes@tigta.treas.gov .

Information spillage refers to instances where FTI is inadvertently placed on systems that are not authorized to handle FTI or are not part of the agency's intended FTI workflow. Upon discovery, corrective action is required to remove the FTI from the unintended system and ensure there were no unauthorized accesses or disclosures. If no FTI is involved, then there is no need to report the spill to the Office of Safeguards or TIGTA. If the agency cannot show FTI was not involved within that 24-hour period, then the spill will need to be reported to the Office of Safeguards and TIGTA.

## 1.8.3 Office of Safeguards Notification Process

Concurrent to notifying TIGTA, the agency must notify the Office of Safeguards by email to Safeguards mailbox, safeguardreports@irs.gov. To notify the Office of Safeguards, the agency must document the specifics of the incident or breach known at that time into a data incident report, including but not limited to:

- Name of agency and agency POC for resolving data incident with contact information

- Date and time the incident/breach occurred

- Date and time the incident/breach was discovered

- How the incident/breach was discovered

- Description of the incident/breach and the data involved, including specific data elements, if known

- Potential number of FTI records involved; if unknown, provide a range if possible

- Address where the incident/breach occurred

- IT involved (e.g., laptop, server, mainframe)

- Does the incident involve an unauthorized access or disclosure by an agency employee? (Y/N)

TD_0000268

- If a criminal indictment is not pursued, will a disciplinary or adverse action be proposed against the agency employee involved in this unauthorized access or disclosure? (Y/N)

Reports must be sent electronically and encrypted via IRS-approved encryption techniques as outlined in Section 2.E.3, Encryption Requirements. Use the term "*data incident report*" in the subject line of the email. *Do not include any FTI in the data incident report.*

Even if all information is not available, immediate notification is the most important factor, not the completeness of the data incident report. Additional information must be provided to the Office of Safeguards as soon as it is available.

The agency will cooperate with TIGTA and Office of Safeguards investigators, providing data and access as needed to determine the facts and circumstances of the incident.

## 1.8.4 Incident Response Procedures

In the event of an unauthorized disclosure or data breach, the agency must contact TIGTA and the IRS immediately. Both TIGTA and the IRS must be contacted within 24 hours of the discovery of the disclosure or breach. The agency must not wait to conduct an internal investigation to determine if FTI was involved. Any internal investigation conducted by the agency should not delay the timely reporting of the disclosure or breach.

Incident response policies and procedures required in NIST Control IR-1, Incident Response Policy and Procedure, must be used when responding to an identified unauthorized disclosure or data breach incident.

The Office of Safeguards will coordinate with the agency regarding appropriate follow-up actions required to be taken by the agency to ensure continued protection of FTI. Once the incident has been addressed, the agency will conduct a post-incident review to ensure the incident response policies and procedures provide adequate guidance. Any identified deficiencies in the incident response policies and procedures must be resolved as soon as reasonably possible. Additional training on any changes to the incident response policies and procedures must be provided to all employees, including contractors, sub-contractors and consolidated data center employees, immediately. See NIST Control IR-4, Incident Handling for additional information.

The agency must test the incident response capability annually using tabletop exercises to determine the incident response effectiveness and document the results. See NIST Control IR-3, Incident Response Testing.

The agency must track and document system security and privacy incidents. See NIST Control IR-5, Incident Monitoring.

## 1.8.5 Incident Response Notification to Impacted Individuals

The agency must provide written notification to a taxpayer whose FTI was subject to unauthorized access or disclosure when a disciplinary or adverse action is proposed against the agency employee responsible. The required written notification to the taxpayer must include the date of the unauthorized inspection or disclosure and the rights of the taxpayer under IRC § 7431.

The agency must confirm to the Office of Safeguards when the required written notification to the taxpayer is completed. In addition, the agency must inform the Office of Safeguards of any pending media releases, including sharing a draft of the release, prior to distribution.

TD_0000269

## 1.9 Disclosure to Other Persons

### 1.9.1 General

Disclosure of FTI is prohibited unless authorized by statute. Agencies with access to FTI are not allowed to make further disclosures of that information to their agents, contractor, or sub-contractor unless authorized by statute. See NIST Control AC-21, Information Sharing.

Agencies must use specific language in their contractual agreements that clearly state the requirements necessary to protect the confidentiality of FTI and avoid ambivalence or ambiguity (see the model language of Exhibit 7). For additional requirements on contracts, see Exhibit 6, Contractor 45-Day Notification Procedures.

> Absent specific language in the IRC or where the IRC is silent in authorizing an agency to make further disclosures, the IRS's position is that further disclosures are unauthorized.

### 1.9.2 Authorized Disclosure Precautions

When disclosure of FTI is authorized, the agency must take certain precautions prior to redisclosure to a contractor or sub-contractor, namely:

- Has the IRS been given sufficient notice prior to releasing FTI to a contractor or sub-contractor?

- Has the agency been given reasonable assurance through a visitation or received a report certifying that all security standards (physical and IT systems) have been addressed?

- Does the contract authorizing the disclosure of FTI have the appropriate safeguard language? See the model language of Exhibit 7, Safeguarding Contract Language.

Agencies must fully report to the IRS in their SSRs all disclosures of FTI to contractors and sub-contractors. Any additional disclosures to contractors and sub-contractors must be reported using the Notification process and reported on the next annual SSR.

An agency may not contract for the disclosure of FTI that is not authorized by IRC § 6103. Only contracts for services that require access to FTI to perform their duties under the contract are required to comply with these standards.

### 1.9.3 External Personnel Security

An external provider refers to organizations other than the agency operating or acquiring the system. External providers include, for example, contractors or sub-contractors and other organizations providing system development, information technology services, outsourced applications, testing/assessment services and network and security management. Agencies must include personnel security requirements in contracts. External providers may have personnel working at agency facilities with credentials, badges or system privileges. Notifications of external personnel changes ensure appropriate termination of privileges and credentials. See NIST Control PS-7, External Personnel Security.

### 1.9.4 Disclosing FTI to Contractors or Sub-Contractors

The agency must notify the Office of Safeguards prior to re-disclosing FTI to contractors or sub-contractors. The agency must notify and obtain written approval from the Office of Safeguards prior to re-disclosing FTI to sub-contractors (when the agency's contractor uses or desires to re-disclose FTI to another contractor). See Section 2.E, Reporting Requirements - 6103(p)(4)(E) and Section 2.E.6, Notification Reporting Requirements, for additional information.

TD_0000270

In addition to the notification, the agency must:

- Establish privacy roles and responsibilities for contractors or sub-contractors and service providers to safeguard the confidentiality and integrity of FTI.

- Include privacy requirements in contracts and other acquisition-related documents.

- Share FTI externally only for the purposes statutorily authorized.

- Where appropriate, enter into a contract, an SLA, memoranda of understanding, memoranda of agreement, letters of intent, computer matching agreement or similar agreement, with third parties that specifically describe the FTI covered and specifically enumerate the purposes for which the FTI may be used.

- Monitor, audit and train its staff on the authorized uses and sharing of FTI with third parties and on the consequences of unauthorized use or sharing of FTI.

- Require agency notification of contractor or sub-contractor personnel changes to ensure appropriate termination of privileges and credentials. See NIST Control PS-7, External Personnel Security.

- Evaluate any proposed new instances of sharing FTI with third parties to assess whether they are authorized.

- Require contractor or sub-contractor employ a formal sanction process for contractor employees and, when permitted by statute, sub-contractor employees failing to comply with established information security policies and procedures for FTI. Notification of designated agency personnel is required within 72 hours.

If the agency requires the use of a contractor to conduct tax modeling, revenue estimation or other statistical activities, 45-day notification requirements apply (see Section 1.9.4, Disclosing FTI to Contractors).

The Taxpayer First Act § 2004, which added IRC § 6103(p)(9), formalizes in statute the following agency requirements effective December 31, 2022:

- Agencies must require that contractors, sub-contractors, or other agents have requirements in effect to provide safeguards required under IRC § 6103(p)(4) to protect FTI.

- The Taxpayer First Act also codifies agency responsibilities to conduct **on-site** reviews of contractors, sub-contractors, and other agents and provide the findings of these reviews to Safeguards as part of the report required under IRC § 6103(p)(4)(E).

- Agencies will provide the Office of Safeguards with an annual certification that each contractor, sub-contractor, or other agent is in compliance with the above requirements. This certification will be included as part of the report required under IRC § 6103(p)(4)(E).

- Agency requirements for this new legislation will be issued prior to implementation in the form of an Interim Guidance memorandum.

### 1.9.5 Re-Disclosure Agreements

When required regulatory prerequisite steps are satisfied and where appropriate, under the authority of IRC § 6103(p)(2)(B), the IRS may execute an agreement with an agency that authorizes the re-disclosure of FTI to another entity. These agreements are negotiated and approved by IRS Disclosure with concurrence of the Office of Safeguards.

Agreements must include language to enforce the requirements for:

- Incident reporting related to FTI

- Implementing personnel sanctions for failure to comply with established information security policy and procedures related to FTI

- Confirmation to the agency any proposals of disciplinary and adverse action concerning unauthorized accesses and disclosures involving FTI

- Notification of individuals whose FTI was subject to unauthorized access or disclosure including the date the unauthorized access or disclosure of FTI occurred.

Federal agencies authorized by statute to enter into re-disclosure agreements are required to provide a list of all executed agreements annually in the SSR. When requested by the Office of Safeguards, agencies must provide a copy of all re-disclosure agreements within 30 days. An electronic copy must be sent to the Office of Safeguards via SDT. If SDT is not available, the agreements may be emailed to the SafeguardReports@irs.gov mailbox.

## 1.10 Return Information in Statistical Reports

### 1.10.1 General

IRC § 6103 authorizes the disclosure of FTI to specific federal agencies for use in statistical reports, tax administration purposes and certain other purposes specified in IRC § 6103(j). Statistical reports may only be released in a form that cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer.

Agencies authorized to produce statistical reports must adhere to the following guidelines or an equivalent alternative that has been approved by the IRS:

- Access to FTI must be restricted to authorized personnel.

- No statistical tabulation may be released outside the agency with cells containing data from fewer than three returns. The exception to this rule is for corporation returns where no tabulation with cells containing data for fewer than five returns may be released.

- Statistical tabulations prepared at the state level may not be released for cells containing data for fewer than 10 returns. Data for geographic areas below the state level such as county may not be released with cells containing data from fewer than 20 returns. In addition, for tabular data at the ZIP Code level, additional procedures must be employed. Individual ZIP Code areas with fewer than 100 returns cannot be shown. Additionally, any cell in the ZIP Code table based on fewer than 20 returns cannot be shown. Finally, individual returns that represent a large percentage of the total of a particular cell must be excluded from the data.

- Tabulations that would pertain to specifically identified taxpayers or that would tend to identify a particular taxpayer, either directly or indirectly, may not be released.

TD_0000272

## 1.10.2 Making a Request under IRC § 6103(j)

Federal agencies seeking statistical information from the IRS must make their requests under IRC § 6103(j). The requests must be addressed to:

> Director, Statistics of Income Division
> Internal Revenue Service, OS:P:S
> 1111 Constitution Avenue, NW
> Washington, D.C. 20224

## 1.10.3 State Tax Agency Statistical Analysis

State tax agencies must provide written notification and obtain IRS approval prior to performing tax modeling, revenue estimation or other statistical activities involving FTI. The agency must demonstrate that the activity is required for tax administration purposes. The agency must adhere to the following process to submit a request:

1.  Contact the local IRS disclosure manager[2] and complete a Need and Use Justification for Federal Tax Information Form.

2.  The completed and signed form must be returned to the IRS disclosure manager for review and approval. The Office of Safeguards will be notified by the IRS disclosure manager of the request and approval.

3.  Changes to the terms of the statistical analysis activities documented in the form must be submitted to the IRS Office of Safeguards as part of the annual SSR (see Section 1.4, State Tax Agency Limitations and Section 2.E.4, Safeguard Security Report).

4.  Updates to the form must be made as requested by the IRS disclosure manager.

> If the agency requires the use of a contractor to conduct tax modeling, revenue estimation or other statistical activities, 45-day notification requirements apply (see Section 1.9.4, Disclosing FTI to Contractors).

---

[2] Refer to https://www.irs.gov/privacy-disclosure/irs-freedom-of-information for contact information.

TD_0000273

## 2.0 PHYSICAL SECURITY REQUIREMENTS

### 2.A Recordkeeping Requirement – IRC § 6103(p)(4)(A)

#### 2.A.1 General

Federal, state and local agencies, bodies, commissions and agents authorized under IRC § 6103 to receive FTI are required by IRC § 6103(p)(4)(A) to establish a permanent system of standardized records of requests made by or to them for disclosure of FTI. For additional guidance, see Exhibit 2, USC Title 26, IRC § 6103(p)(4).

This recordkeeping must include internal requests among agency employees as well as requests outside of the agency. These records are required to track the movement of FTI. The records are to be maintained for a minimum of five (5) years. The Safeguards website contains guidance, job aids, helpful tools and frequently asked questions to assist agencies in meeting safeguard requirements; see http://www.irs.gov/uac/Safeguards-Program.

#### 2.A.2 Logs of FTI (Electronic and Non-Electronic Receipts)

The agency must establish a tracking system to identify and track the location of electronic and non-electronic FTI from receipt until it is destroyed. The FTI log may include the following tracking elements:

- Taxpayer Identifier*

- Tax year(s)

- Type of information (e.g., revenue agent reports, Form 1040, work papers)

- The reason for the request

- Date requested

- Date received

- Exact location of the FTI

- Who has had access to the data

- If disposed of, the date and method of disposition


*To the extent possible, do not include FTI in the log. If FTI is used, the log must be secured in accordance with all other safeguarding requirements.

If the authority to make further disclosures is present (e.g., agents/contractors/sub-contractors), information disclosed outside the agency must be recorded on a separate list or log. The log must:

- Reflect to whom the disclosure was made

- What was disclosed

- Why it was disclosed

- When it was disclosed

TD_0000274

Agencies transmitting FTI from one mainframe computer to another, as in the case of the SSA sending FTI to state human services agencies, need only identify the bulk records transmitted. This identification will contain the approximate number of taxpayer records, the date of the transmissions, the best possible description of the records and the name of the individual making/receiving the transmission.

## Figure 1 – Sample FTI Logs

| FTI Log | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Date Requested | Date Received | Taxpayer Identifier | Tax Year(s) | Type of Information | Reason for Request | Exact Location | Who has access? | Disposition Date | Disposition Method |

| FTI Bulk Transfer Log | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Date Received | Control Number/File Name | Content (do not include FTI) | Recipient/Title Location | Number of Records | Movement Date | Recipient/Title Location | Disposition Date | Disposition Method |

## 2.A.3 Converted Media

Conversion of FTI from paper to electronic media (scanning) or from electronic media to paper (print screens or printed reports) also requires tracking from creation to destruction of the converted FTI. All converted FTI must be tracked on logs containing the fields detailed in Section 2.A.2, Logs of FTI, (Electronic and Non-Electronic Receipts) depending upon the current form of the FTI, electronic or non-electronic.

## 2.A.4 Recordkeeping of Disclosures to State Auditors

When disclosures are made by a state tax agency to state auditors, recordkeeping requirements pertain only in instances where the auditors use FTI for further scrutiny and inclusion in their work papers. In instances where auditors read large volumes of records containing FTI, whether in paper or electronic format, the state tax agency need only identify bulk records examined. This identification will contain the approximate number of taxpayer records, the date of inspection, a description of the records and the name of the individual(s) making the inspection. Recordkeeping log samples are provided in Section 2.A.2, Logs of FTI, (Electronic and Non-Electronic Receipts).

Disclosure of FTI to auditors external to child support enforcement, human services or labor benefit agencies is not authorized by statute. FTI in case files must be removed prior to access by the auditors.

## 2.B Secure Storage – IRC § 6103(p)(4)(B)

### 2.B.1 General

Security may be provided for a document, an item, or an area in several ways. These include but are not limited to locked containers of various types, vaults, locked rooms, locked rooms that have reinforced perimeters, locked buildings, guards, electronic security systems, fences, identification systems and control measures.

TD_0000275

How the required security is provided depends on the facility, the function of the activity, how the activity is organized and what equipment is available. Proper planning and organization will enhance the security while balancing the costs.

The IRS has categorized federal tax information as moderate risk. The minimum protection standards (MPS) must be used as an aid in determining the method of safeguarding FTI. These controls are intended to protect FTI in paper and electronic form.

## 2.B.2 Minimum Protection Standards

MPS establishes a uniform method of physically protecting data and systems as well as non-electronic forms of FTI. This method contains minimum standards that will be applied on a case-by-case basis. Because local factors may require additional security measures, management must analyze local circumstances to determine location, container, and other physical security needs at individual facilities. MPS have been designed to provide management with a basic framework of minimum-security requirements.

The objective of these standards is to prevent unauthorized access to FTI. MPS thus requires two barriers. Example barriers under the concept of MPS are outlined in the following table. Each topic represents one barrier and must be used as a starting point to identify two barriers of MPS to protect FTI.

## Table 1 – Minimum Protection Standards

| Secured Perimeter | The perimeter is enclosed by slab-to-slab walls constructed of durable materials and supplemented by periodic inspection. Any lesser-type partition must be supplemented by electronic intrusion detection and fire detection systems. All doors entering the space must be locked in accordance with Locking Systems for Secured Areas. In the case of a fence/gate, the fence must have intrusion detection devices or be continually guarded, and the gate must be either guarded or locked with intrusion alarms. |
|---|---|
| Security Room | A security room is a room that has been constructed to resist forced entry. The entire room must be enclosed by slab-to-slab walls constructed of approved materials (e.g., masonry brick, concrete) and supplemented by periodic inspection and entrance must be limited to specifically authorized personnel. Door hinge pins must be non-removable or installed on the inside of the room. |
| Badged Employee | During business hours, if authorized personnel serve as the second barrier between FTI and unauthorized individuals, the authorized personnel must wear picture identification badges or credentials. The badge must be clearly displayed and worn above the waist. |
| Security Container | A security container is a storage device (e.g., turtle case, safe/vault, locked IT cabinet) with a resistance to forced penetration, and a security lock with controlled access to keys or combinations. |

The MPS or "two-barrier" rule applies to FTI, beginning at the FTI itself and extending outward to individuals without a need-to-know. MPS provides the capability to deter, delay or detect surreptitious entry. Protected information must be containerized in areas where unauthorized employees may have access after-hours.

TD_0000276

As an example, an agency often desires or requires that security personnel, custodial service workers, or landlords for non-government-owned facilities have access to locked buildings and rooms. This may be permitted if there is a second barrier to prevent access to FTI. A security guard, custodial services worker or landlord may have access to a locked building or a locked room if FTI is in a locked security container. If FTI is in a locked room but not in a locked security container, the guard, janitor, or landlord may have a key to the building but not the room.

Additional controls have been integrated into this document that map to NIST Special Publication (SP) 800-53 Revision 5. These are identified in Section 4.0, NIST 800-53 Security and Privacy Controls. Per NIST guidelines, policies and procedures must be developed, documented and disseminated, as necessary, to facilitate implementing physical and environmental protection controls.

Multifunction Devices (MFDs) or High-Volume Printers must be locked with a mechanism to prevent physical access to the hard disk or meet MPS.

For additional guidance, see NIST Control PE-3, Physical Access Control.

## 2.B.3 Restricted Area Access

Care must be taken to deny unauthorized access to areas containing FTI during duty and non-duty hours. This can be accomplished by creating restricted areas, security rooms or locked rooms. Additionally, FTI in any form (computer printout, photocopies, tapes, notes) must be protected during non-duty hours. This can be done through a combination of methods, including secured or locked perimeter, secured area or containerization.

A restricted area is an area where entry is limited to authorized personnel (individuals assigned to the area). All restricted areas must either meet secured area criteria or provisions must be made to store FTI in appropriate containers during non-duty hours. Using restricted areas is an effective method for eliminating unnecessary traffic through critical areas, thereby reducing the opportunity for unauthorized access, disclosure, or theft of FTI. All the following procedures must be implemented to qualify as a restricted area.

Restricted areas will be prominently posted and separated from non-restricted areas by physical barriers that control access. The number of entrances must be kept to a minimum and must have controlled access (e.g., electronic access control, key access, door monitor) to prevent unauthorized entry. The main entrance must be controlled by locating the desk of a responsible employee at the entrance to ensure that only authorized personnel with an official need may enter.

### 2.B.3.1 Visitor Access Logs

A visitor access log must be maintained at a designated entrance to a restricted area and all visitors (persons not assigned to the area) entering the area shall be directed to the designated entrance.

Prior to accessing areas that contain FTI, a visitor must sign a visitor access log. The security personnel must validate the person's identity by examining government-issued identification (e.g., state driver's license or passport). The security personnel must compare the name and signature entered in the access log with the name and signature of the government-issued identification. When leaving the area, the security personnel or escort must enter the visitor's time of departure.

The visitor access log must require the visitor to provide the following information:

- Name and organization of the visitor

- Signature of the visitor

- Form of identification

- Date of access

- Time of entry and departure

- Purpose of visit

- Name and organization of person visited

Each restricted area access log must be closed out at the end of each month and reviewed by management. Visitor access logs must be retained for five (5) years, see Exhibit 9, Table 9.

## Figure 2 – Visitor Access Log

| Visitor Access Log | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date | Name & Org of Visitor | Form of Visitor ID | Purpose of Visit | Name & Org of Person Visited | Time of Entry | Time of Departure | Signature of Visitor |

## 2.B.3.2 Authorized Access List

To facilitate the entry of employees/vendor/contractor/non-agency personnel who have a frequent and continuing need to enter a restricted area, but who are not assigned to the area, an Authorized Access List (AAL) can be maintained so long as MPS are enforced. See Section 2.B.2, Minimum Protection Standards.

The AAL must contain the following:

- Name of employee/vendor/contractor/non-agency personnel

- Agency or department name

- Name and phone number of the agency POC authorizing access

- Address of agency/vendor/contractor

- Purpose and level of access

AAL must be reviewed monthly or upon occurrence or potential indication of an event such as a possible security breach or personnel change.

If there is any doubt of the identity of the individual, the security monitor must verify the identity of the individual against the AAL prior to allowing entry into the restricted area.

For additional guidance, see NIST Control PE-2, Physical Access Authorizations. Also, see NIST Control PE-16, Delivery and Removal, for guidance on controlling information system components entering and exiting the restricted area.

46

## 2.B.3.3 Controlling Access to Areas Containing FTI

Management or a designee must maintain an authorized list of all personnel who have access to information system areas, where these systems contain FTI. This does not apply to those areas within the facility officially designated as publicly accessible.

The agency must maintain a policy addressing issuance of appropriate authorization credentials, including badges, identification cards or smart cards. This policy must include proper use and accountability requirements.

In addition, a list must be maintained that identifies those individuals who have authorized access to any systems where FTI is housed. Access authorizations and records maintained in electronic form are acceptable.

Each agency must control physical access to the information system devices that display FTI information or where FTI is processed to prevent unauthorized individuals from observing the display output. For additional information, see NIST Control PE-5, Access Control for Output Devices.

The agency or designee must monitor physical access to the information system where FTI is stored to detect and respond to physical security incidents. For additional information, see NIST Control PE-6, Monitoring Physical Access.

For all areas that process FTI, the agency must position information system components within the facility to minimize the opportunity for unauthorized access.

When cleaning and facility maintenance personnel work in restricted areas containing unsecured FTI, those activities must be performed in the presence of an authorized employee.

The agency must establish a process for maintenance personnel authorization and maintain a list of authorized maintenance organizations or personnel. The agency must verify that non-escorted personnel performing maintenance on the system possess the required access authorizations and if not, then the agency must designate organizational personnel with required access authorizations and technical competence to supervise the maintenance activities. See NIST MA-5, Maintenance Personnel.

Allowing an individual to "piggyback" or "tailgate" into restricted locations must be prohibited and documented in agency policy. The agency must ensure that all individuals entering an area containing FTI do not bypass access controls or allow unauthorized entry of other individuals. Unauthorized access must be challenged by authorized individuals (e.g., those with access to FTI). Security personnel must be notified of piggyback/tailgate attempts.

## 2.B.3.4 Control and Safeguarding Keys and Combinations

All containers, rooms, buildings, and facilities containing FTI must be locked when not in actual use.

Access to a locked area, room or container can be controlled only when the key or combination is controlled. Compromising a combination or losing a key negates the security provided by that lock. Combinations to locks must be changed annually or when an employee who knows the combination retires, terminates employment or transfers to another position.

Combinations must be given only to those who have a need to have access to the area, room or container and must never be written on a sticky-note, calendar pad or any other item (even though it is carried on one's person or hidden from view). An envelope containing the combination must be secured using the same security measures for the envelope as the locked material.

Access control measures (keys, proximity cards, combinations) must be issued only to individuals having a need to access an area, room, or container. Inventory records must be maintained and must account for the total number of keys, proximity cards, combinations, etc. that are available and issued. The inventory must account for master keys and key duplicates. An annual reconciliation must be done on all key records.

The number of keys or persons with knowledge of the combination to a secured area must be kept to a minimum. Keys and combinations will be given only to those individuals who have a frequent need to access the area.

## 2.B.3.5 Locking Systems for Secured Areas

Access control systems (e.g., badge readers, smart cards, and biometrics) that provide the capability to audit access control attempts must maintain access control logs with successful and failed access attempts to secure areas containing FTI or systems that process FTI. Agency personnel must review access control logs on a monthly basis. The access control log must contain the following elements:

- Owner of the access control device requesting access

- Success/failure of the request

- Date and time of the request

## 2.B.4 FTI in Transit

Handling FTI must be such that the FTI does not become misplaced or available to unauthorized personnel.

Any time FTI is transported from one location to another, care must be taken to provide appropriate safeguards. When FTI is hand-carried by an individual in connection with a trip or in the course of daily activities, it must be kept with that individual and protected from unauthorized disclosures.

All shipments of paper or electronic FTI (including compact disk [CD], digital video disk [DVD], thumb drives, hard drives, tapes and microform) must be documented on a transmittal form and monitored to ensure that each shipment is properly and timely received and acknowledged. All FTI transported through the mail or courier/messenger service must be double-sealed; that is, one envelope within another envelope. The inner envelope must be marked confidential with some indication that only the designated official or delegate is authorized to open it. The outermost envelope must not be labeled as FTI or provide any indication that the contents contain FTI, since that may actually increase risk to the contents.

## 2.B.4.1 Security During Office Moves

When it is necessary for an office to move to another location, plans must be made to protect and account for all FTI properly. FTI must be in locked cabinets or sealed packing cartons while in transit. Using sealed boxes serves the same purpose as double-sealing and prevents anyone from viewing the contents. FTI must remain in the custody of an agency employee and accountability must be maintained to ensure that cabinets or cartons do not become misplaced or lost during the move.

## 2.B.5 Physical Security of Computers, Electronic and Removable Media

Computers and electronic media (including telephones using Voice Over Internet Protocol [VOIP]) that receive, process, store, access, protect and/or transmit FTI must be in a secure area with restricted access. In situations when requirements of a secure area with restricted access cannot be maintained, such as home work sites, remote terminals or other office work sites, the equipment must receive the highest level of protection practical, including full disk encryption. All computers and mobile devices that

TD_0000280

contain FTI and reside at an alternate work site must employ encryption mechanisms to ensure that FTI may not be accessed if the computer is lost or stolen.

Basic security requirements must be met, such as keeping FTI locked up when not in use. When removable media contains FTI, it must be labeled as FTI.

All computers, electronic media and removable media containing FTI must be kept in a secured area under the immediate protection and control of an authorized employee or locked up. When not in use, the media must be promptly returned to a proper storage area/container.

Inventory records of computers, electronic and removable media must be maintained and reviewed semi-annually for control and accountability. Section 2.A, Recordkeeping Requirement, contains additional information. For additional guidance on log retention requirements, see Exhibit 9, Record Retention Schedules.

For physical security protections of transmission medium (e.g., cabling), see NIST Control PE-4, Access Control for Transmission.

## 2.B.6 Media Off-Site Storage Requirements

Media containing FTI that is sent to an off-site storage facility must be properly secured, labeled, and always protected from access by unauthorized individuals. The media may not be stored on open shelving, unless the shelving is in a restricted area (see Section 2.B.3, Restricted Area Access) accessible only to individuals with authorized access to FTI.  The agency must ensure that contractor-operated off-site storage facilities maintaining FTI on open shelving comply with all safeguarding requirements (e.g., visitor access logs, internal inspections, contractor access restrictions, and employee training) and the contract must include Exhibit 7 safeguarding language. These facilities are subject to IRS safeguard reviews.

Agencies that do not have the statutory authority to contract for services that involve the disclosure of FTI (e.g. state Human Services and certain workforce agencies not receiving data under 6103(d)), may not allow the release of media containing FTI to a contractor-operated off-site storage facility unless the following conditions are met:

- The media is encrypted and labeled as containing "federal tax information"

- The media is locked in a turtle case or security container

- The agency retains the key to the turtle case

## 2.B.7 Alternate Work Site

If the confidentiality of FTI can be adequately protected, telework sites such as employee's homes or other non-traditional work sites can be used. FTI remains subject to the same safeguard requirements and the highest level of attainable security. All the requirements of Section 2.B.5, Physical Security of Computers, Electronic and Removable Media, apply to alternate work sites.

## 2.B.7.1 Equipment

The agency must retain ownership and control for all hardware, software and end-point equipment connecting to public communication networks, where these are present at alternate work sites. The use of virtual desktop infrastructure with non-agency-owned devices (including personally owned devices) is an acceptable alternative, where all requirements in Section 3.3.7 Virtual Desktop Infrastructure are met.

TD_0000281

Employees must have a specific room or area in a room that has the appropriate space and facilities for the type of work done. Employees also must have a way to communicate with their managers or other members of the agency if security problems arise.

The agency must ensure employees have access to locking file cabinets or desk drawers so that documents, disks, and tax returns may be properly secured when not in use. If agency furniture is not furnished to the employee, the agency must ensure that an adequate means of storage exists at the alternate work site. The agency must provide "locking hardware" to secure automated data processing equipment to large objects, such as desks or tables. Smaller, agency-owned equipment must be locked in a filing cabinet or desk drawer when not in use.

## 2.B.7.2 Storing Data

FTI may be stored on hard disks only if agency-approved security access control devices (hardware/software) have been installed, are receiving regularly scheduled maintenance including upgrades and are being used. Access controls must include password security, an audit trail, encryption, virus detection and data overwriting capabilities.

## 2.B.7.3 Other Safeguards

Only agency-approved security access control devices and agency-approved software will be used. Use of illegal and/or non-approved software is prohibited. Electronic media that is to be reused must follow media sanitization requirements.

The agency must maintain a policy for the security of alternative work sites. The agency must coordinate with the managing host system(s) and any networks and maintain documentation on the test. Before implementation, the agency must certify that the security controls are adequate for security needs. Additionally, the agency must develop and disseminate rules and procedures to ensure that employees do not leave computers unprotected at any time. These rules must address brief absences while employees are away from the computer.

The agency must provide specialized training in security, disclosure awareness and ethics for all participating employees and managers. This training must cover situations that could occur as the result of an interruption of work by family, friends, or other sources.

## 2.C Restricting Access – IRC § 6103(p)(4)(C)

## 2.C.1 General

Agencies are required by IRC § 6103(p)(4)(C) to restrict access to FTI to only persons whose duties or responsibilities require access (see Exhibit 2, USC Title 26, IRC § 6103(p)(4) and Exhibit 4, Sanctions for Unauthorized Disclosure). To assist with this requirement, FTI must be clearly labeled and handled in such a manner that it does not become misplaced or available to unauthorized personnel. Additionally, warning banners advising of safeguarding requirements must be used for computer screens (see Section 4.14 Program Management (PM) and Exhibit 8, Warning Banner Examples).

Auditing controls, with the capability to generate records, to detect browsing within all systems that receive, process, store, access, protect and/or transmit FTI (i.e., TDS, case management systems, etc.) must be implemented. See NIST Sections AU-6 Audit Review, Analysis and Reporting, AU-7, Audit Reduction and Report Generation and AU-12, Audit Generation, for additional requirements.

To understand the key terms of access, unauthorized disclosure, unauthorized access and need-to-know, see section on Key Definitions.

## 2.C.2 Policies and Procedures

Agencies must maintain the following policies and procedures relating to the safeguarding of FTI. For policies and procedures to be current, they need to have been updated or revalidated within the last three (3) years.

- **Alternate Work Site** – See Section 2.B.7 Alternate Work Sites
  If permitted, a policy/procedure must address the security of FTI at alternate work sites. A policy is required even if alternate work sites are prohibited.

- **Email** – See Section 3.3.2 Email Communications
  A policy/procedure must address the proper protection of FTI when transmitted by email, or if emailing of FTI is not allowed, a policy must state that it is prohibited.

- **Facsimile** - See Section 3.3.3 Facsimile and Facsimile Devices
  A policy/procedure must address the proper protection of FTI when transmitted by facsimile, or if facsimile transmission of FTI is not allowed, a policy must state that it is prohibited.

- **Employee Badge** – See Section 2.B.2 and Table 1 Minimum Protection Standards
  The policy/procedures must address when employees serve as secondary barriers for safeguarding FTI, picture identification badges or credentials must be visible and worn above the waist.

- **FTI Disposal/Destruction** – See Sections 2.A.2 FTI Logs, (Electronic and Non-Electronic Receipts), 2.F.3 Destruction and Disposal, 2.F.4 Other Precautions and 2.F.3.1 Media Sanitization
  The policy/procedures must address the proper safeguarding of FTI including the tracking and the schedule/method of disposal or destruction.

- **Incident Response** – See NIST Control IR-1 and Sections 1.8.4 Incident Response Procedures
  The policy/procedures must include the proper response to identified unauthorized disclosure or data breach incidents.

- **Internal Inspections** – See Sections 2.D.3 Internal Inspections and 2.D.9 Plan of Action and Milestones
  The policy/procedures must include a documented schedule to ensure that all internal inspections are conducted timely. Additionally, a POA&M must be developed and monitored, including tracking the corrective actions identified during the internal inspections and identified actions planned to resolve the findings.

- **Restricting Use of Personally Owned Computers** – See Section 2.B.7.1 Equipment
  The policy/procedures must include only agency-owned computers, media and software used to process, access and store FTI.

- **Disclosure Awareness, Security and Privacy, Role-Based and Contingency Training** – See Sections 2.D.2 Training Requirements, 2.D.2.1 Disclosure Awareness Training, NIST Controls AT-2 Awareness Training, AT-3 Role-Based Training and CP-3 Contingency Training
  These policies/procedures must contain a signed certification by the employee or contractor stating they understand the security policy and procedures for safeguarding FTI, prior to access to FTI.

- **Transcript Delivery System (TDS) Audit Log Review (if applicable)** – See Section 4.1, Access Control

TD_0000283