The policy/procedures must address the development, documentation, and dissemination of audit/accountability security controls.

- **Background Investigation** – See Section 2.C.3 Background Investigation Minimum Requirements
  The policy/procedure requires that employees, contractors, and sub-contractors (if authorized) with access to FTI must have a background investigation completed and favorably adjudicated.

- **Access Control** – See Section 2.B.3.3 Controlling Access to Areas Containing FTI and NIST Control AC-1, Access Control Policy and Procedures.
  The policy/procedures must address the issuance of appropriate authorization credentials, including badges, identification cards or smart cards and include proper use and accountability requirements. The policy/procedures must also include the prohibition of allowing individuals to "piggyback" or "tailgate" into any location containing FTI.

- **Audit and Accountability -** see NIST Control AU-1, Audit and Accountability Policies and Procedures
  The policy/procedures must address purpose, scope, roles, responsibilities, compliance, management commitment and coordination among organizational entities. Agencies must develop, document, and implement remediation actions for violations of the audit and accountability policy.

- **Media Protection** – see NIST Control MP-1, Media Protection Policies and Procedures
  The policy/procedures must cover the protection of media to include access, marking, storage, transport, use and sanitization. See NIST Controls MP-1 through MP 7.

- **Physical and Environmental** – See NIST Control PE-1
  The policy/procedures must include a clean desk policy for the protection of FTI; designate restricted IT areas that house IT assets such as, but not limited to, mainframes, servers, controlled interface equipment, associated peripherals, and communications equipment; and address specific building access systems, as needed.

- **Personnel Security** – See NIST PS-1, Personnel Security Policy and Procedures
  The policy/procedures must address position risk designation, personnel screening, personnel termination, personnel transfer, access agreements and personnel sanctions.

- **Insider Threat Program**– See NIST Control PM-12, Insider Threat Program
  The policy/procedures must address an insider threat program that includes a cross-discipline insider threat incident handling team and designate a senior official as the responsible individual to implement and provide oversight for the program.

- **Privacy Program Plan**[3] – See NIST Control PM-18, Privacy Program Plan
  A privacy program plan is a formal document that provides an overview of an agency's privacy program, including a description of the structure of the privacy program, the resources dedicated to the privacy program, the role of the Senior Agency Official for Privacy and other privacy officials and staff, the strategic goals and objectives of the privacy program and the program management and common controls in place or planned for meeting applicable privacy requirements and managing privacy risks.

---

[3] NIST Privacy Control

TD_0000284

## 2.C.3 Background Investigation Minimum Requirements

Determining the suitability of individuals who require access to U.S. government SBU information, including FTI, is a key factor in ensuring adequate information security. Prior to granting access to FTI and periodically thereafter, the Agency must complete a suitability background investigation that is favorably adjudicated by the Agency and to include, at a minimum, the following requirements:

- Agencies must develop a written policy requiring that employees, contractors, and sub-contractors (if authorized), with access to FTI must complete a background investigation that is favorably adjudicated. The policy will identify the process, steps, timeframes, and favorability standards that the agency has adopted. The agency may adopt the favorability standards set by the Federal Investigative Standards (FIS) or one that is currently used by another state agency, or the Agency may develop its own standards specific to FTI access.

- The written background investigation policy must establish a result criterion for each required element that defines what would result in preventing or removing an employee's, contractor's and sub-contractor's access to FTI.

- Agencies must initiate a background investigation for all employees, contractors, and sub-contractors prior to permitting access to FTI.

- State agencies must ensure a reinvestigation is conducted within five (5) years from the date of the previous background investigation for each employee, contractor, and sub-contractor requiring access to FTI.

- Agencies must make written background investigation policies and procedures as well as a sample of completed employee, contractor, and sub-contractor background investigations available for inspection upon request.

- Background investigations for any individual granted access to FTI must include, at a minimum:

  1. FBI fingerprinting (FD-258) - review of Federal Bureau of Investigation (FBI) fingerprint results conducted to identify possible suitability issues. Contact the appropriate state identification bureau for the correct procedures to follow. A listing of state identification bureaus can be found at: https://www.fbi.gov/about-us/cjis/identity-history-summary-checks/state-identification-bureau-listing.

     This national agency check is the key to evaluating the history of a prospective candidate for access to FTI. It allows the Agency to check the applicant's criminal history in all 50 states, not only current or known past residences.

  2. Check of local law enforcement agencies where the subject has lived, worked, and/or attended school within the last five (5) years and if applicable, of the appropriate agency for any identified arrests.

     The local law enforcement check will assist agencies in identifying trends of misbehavior that may not rise to the criteria for reporting to the FBI database but is a good source of information regarding an applicant.

  3. Citizenship/residency – Validate the subject's eligibility to legally work in the United States (e.g., a United States citizen or foreign citizen with the necessary authorization).

TD_0000285

Employers must complete USCIS Form I-9 to document verification of the identity and employment authorization of each new employee hired after November 16, 1986, to work in the United States. Within three (3) days of completion, any new employee must also be processed through E-Verify to assist with verification of their status and the documents provided with the Form I-9. The E-Verify system is free of charge and can be located at www.uscis.gov/e-verify. This verification process may only be completed on new employees. Any employee with expiring employment eligibility must be documented and monitored for continued compliance.

Federal agencies must conduct a suitability or security background investigation based on the position sensitivity of the individual's assigned position and risk designation associated with the investigative Tier established by the FIS. Granting access to FTI requires, at a minimum, a Tier 2 level investigation.

A FIS Tier 2 standard background investigation meets the suitability investigative requirement for non-sensitive positions designated as moderate risk public trust (requested using Standard Form 85P). Investigations conducted at Tiers 2-5 meet the minimum standard for an employee, contractor, and sub-contractor with access to FTI. Federal agencies may be asked to provide evidence that the required background investigation was conducted for each individual granted access to FTI. FIS standards require reinvestigation, at a minimum, every five (5) years.

State and local agencies that are not required to implement the federal background investigation standards must establish a personnel security program that ensures a background investigation is completed at the appropriate level for any individual who will have access to FTI using the guidance above as the minimum standard, with a reinvestigation conducted within five (5) years from the previous investigation.

## 2.C.3.1 Background Investigation Requirement Implementation

Agencies must establish a written background investigation policy that conforms to the standards of Section 2.C.3. Agencies must also identify all employees, contractors, and sub-contractors who currently have access to FTI and have not completed the required personnel security screening and initiate a background investigation that meets these standards. Agencies must initiate a background investigation for all newly hired employees, contractors, and sub-contractors who will require access to FTI to perform assigned duties. All adjudications must be done by the agency or another state agency delegated to perform, such as an Office of Administration or HR agency.

Federal agencies that completed a Moderate-Risk Background Investigation (MBI) or higher for individuals with access to FTI, prior to the October 2014 implementation date of the FIS Tier 2 standard investigation, have met the minimum standard and no further investigation is needed so long as reinvestigation is timely scheduled. Individuals granted access to FTI based on a National Agency Check with Inquiries (NACI) is not sufficient and a Tier 2 investigation must be initiated for continued access to FTI.

## 2.C.4 Personnel Actions

## 2.C.4.1 Personnel Transfer

When reassignments or transfers of individuals are permanent or of such extended durations certain actions are warranted. Agencies must define actions appropriate for these types of reassignments or transfers, whether permanent or extended. Actions that may be required for personnel transfers or reassignments to other positions within organizations include, for example, returning old and issuing new keys, identification cards and building passes; closing system accounts and establishing new accounts; changing system access authorizations (i.e., privileges); and access to official records to which individuals

had access at previous work locations and in previous system accounts. See NIST Control PS-5, Personnel Transfer.

## 2.C.4.2 Personnel Sanctions

Agencies must document in policy and procedure a formal sanctions process for individuals failing to comply with established information security policies and procedures. Agencies must notify designated agency personnel within 72 hours when a formal employee sanction process is initiated, identifying the individual sanctioned and any required administrative actions. See NIST Control PS-8, Personnel Sanctions.

When the formal sanction is a proposed disciplinary or adverse action involving an unauthorized access or disclosure of FTI, the agency must provide written notification to the taxpayer whose FTI was subject to unauthorized access or disclosure. The required written notification must include the date the unauthorized access or disclosure of FTI occurred and the rights of the taxpayer under IRC § 7431 (see Section 1.8.5, Incident Response Notification to Impacted Individuals).

## 2.C.4.3 Personnel Termination

In personnel termination situations, certain actions are required. Timely execution of termination actions is essential to protect individuals terminated for cause. In certain situations, agencies must consider disabling the system accounts of individuals that are being terminated prior to the individuals being notified.

Exit interviews ensure that terminated individuals understand the security constraints imposed by being former employees and that proper accountability is achieved for system-related property. System-related property includes, for example, hardware authentication tokens, system administration technical manuals, keys, identification cards and building passes. See NIST Control PS-4, Personnel Termination.

## 2.C.5 Commingling of FTI

Commingling of FTI refers to having FTI and non-FTI data stored together, regardless of format. For example, commingling occurs when FTI is included in a sentence of text in a paper notice or letter; a row or column containing FTI in a database table; files stored on electronic media where some contain FTI and some do not; or at a shared data center where some systems contain FTI that require access restrictions, and some do not. Any kind of commingling creates the need for additional controls, since the introduction of FTI requires the entire letter, data table, removable media, etc. be handled and protected as FTI.

It is recommended that FTI be kept physically and logically separate from other information to the maximum extent possible to avoid inadvertent disclosures and need for additional controls. Agencies should attempt to avoid maintaining FTI as part of their case files including any recordation or transcription in case notes or activity logs, whether paper or electronic.

In situations where physical separation is impractical, the file must be clearly labeled to indicate that FTI is included and the file must be safeguarded.

If a new address is received from IRS records and entered into a computer database, the address must be identified as FTI and safeguarded.

If the taxpayer or third party subsequently provides the address independently, the address will not be considered FTI as long as the address is overwritten using individual or third-party knowledge or records as the source of information to replace the IRS source address.

TD_0000287

All FTI must be removed prior to releasing files to an individual or agency without authorized access to FTI.

## 2.C.5.1 Commingling of Electronic Media

If FTI is recorded on electronic media (e.g., tapes) with other data, it must be protected as if it were entirely FTI. Such commingling of data on electronic media should be avoided.

When data processing equipment is used to process or store FTI and the information is mixed with agency data, access must be controlled by:

- Restricting computer access only to authorized personnel

- Systemic means, including labeling; for additional information, see NIST Control MP-3, Media Marking

- When technically possible, data files, data sets and shares must be overwritten after each use

> Commingled data at multi-purpose facilities results in security and privacy risks that must be addressed. If the agency shares physical or computer facilities with other agencies, departments or individuals not authorized to have FTI, strict physical and systemic controls must be maintained to prevent unauthorized disclosure of this information.

## 2.C.6 Access to FTI via State Tax Files or Through Other Agencies

Some state disclosure statutes and administrative procedures permit access to state tax files by other agencies, organizations or employees not involved in tax matters. As a general rule, IRC § 6103(d) does not permit access to FTI by such employees, agencies, or other organizations. The IRC clearly provides that FTI will be furnished to state tax agencies only for tax administration purposes and made available only to designated state tax personnel and legal representatives or to the state audit agency for an audit of the tax agency. Questions about whether particular state employees are entitled to access FTI must be forwarded to the Disclosure Manager at the IRS Office that serves your location[4].

Generally, the IRC does not permit state tax agencies to furnish FTI to other state agencies or to political subdivisions, such as cities or counties. State tax agencies may not furnish FTI to any other state or local agency, even where agreements have been made, informally or formally, for the reciprocal exchange of state tax information unless formally approved by the IRS. Also, non-government organizations, such as universities or public interest organizations performing research, cannot have access to FTI.

Although state tax agencies are specifically addressed previously in this section, the restrictions on data access and non-disclosure to another agency or third party applies to all agencies authorized to receive FTI. Generally, statutes that authorize disclosure of FTI do not authorize further disclosures by the recipient agency. Unless IRC § 6103 provides for further disclosures by the agency, the agency cannot make such disclosures or otherwise grant access to FTI to either employees of another component of the agency not involved with administering the program for which the FTI was specifically received or to another state agency for any purpose.

Agencies and subdivisions within an agency may be authorized to obtain the same FTI for different purposes, such as a state tax agency administering tax programs (IRC § 6103(d)) and a component

---

[4] Refer to https://www.irs.gov/privacy-disclosure/irs-freedom-of-information for contact information.

TD_0000288

human services agency administering benefit eligibility verification programs (IRC § 6103(l)(7)) or child support enforcement programs (IRC § 6103(l)(6)).

## 2.C.7 Offshore Operations

FTI cannot be accessed by agency employees, agents, representatives, contractors, or sub-contractors located outside of the legal jurisdictional boundary of the United States (outside of the United States, its territories, embassies, or military installations). FTI must not be received, processed, stored, accessed, or transmitted to (IT) systems located offshore nor may FTI be sent offshore for disposal. Systems containing FTI must be located, operated and maintained by personnel physically located within the United States (this prohibits foreign remote maintenance, foreign call centers, help desks and the like) and should follow Publication 1075 requirements including the Background Investigation Requirements in Section 2.C.3.

Some agencies may have a need for their employees to travel internationally for business purposes. As such, agencies must develop procedures to follow during foreign travel. When agency employees travel abroad, they must not:

- Bring IT equipment containing stored FTI (e.g., laptop computers, tablets, phones, removable media); or

- Access agency systems that receive, process, store, protect and/or transmit FTI.

During international travel, batteries of agency-managed or Bring Your Own Device (BYOD) mobile devices and laptops must be removed from battery-powered mobile devices and stored separate from the device when left unattended. SIM cards must be removed and stored separate from devices that employ them when entering non-U.S. customs. Once agency employees return from abroad, it is important for agencies to ensure the continued security of networks where FTI resides. Agencies must sanitize all devices taken abroad prior to allowing them to connect to their trusted network. Additionally, agencies must disable wireless connectivity options until devices have been sanitized and may wish to provide additional security training for employees travelling abroad.

## 2.C.8 Controls Over Processing

The agency must establish adequate controls to prevent disclosing FTI to other state agencies, tax or non-tax, or to political subdivisions, such as cities or counties, for any purpose, including tax administration, absent explicit written IRS authority granted under IRC § 6103(p)(2)(B).

Processing of FTI in an electronic media format including removable media, microfilms, photo impressions or the conversion to other formats (including tape reformatting or duplication, reproduction or conversion to digital images or hard copy printout) will be performed as indicated in the environments listed in 2.C.8.1 and 2.C.8.2.

### 2.C.8.1 Agency-owned and Operated Facility

Processing under this method will take place in a manner that will protect the confidentiality of the information on the electronic media. All safeguards outlined in this publication also must be followed and will be subject to IRS safeguard reviews.

### 2.C.8.2 Agency, Contractor or Sub-Contractor Shared Facilities

Recipients of FTI are permitted to use a shared facility but only in a manner that does not allow access to FTI by employees, agents, representatives, or contractors of other agencies using the shared facility.

TD_0000289

> For purposes of applying sections 6103(l), (m) and (n), the term "agent" includes contractors and sub-contractors.

Access restrictions pursuant to the IRC authority by which the FTI is received continue to apply; for example, human services agencies administering benefit eligibility programs may not allow contractors or sub-contractors, including consolidated data center contractors, access to any FTI.

The agency must include, as appropriate, the requirements specified in Exhibit 7, Safeguarding Contract Language.

The agency, as well as its contractor, sub-contractor and shared sites that receive, process, store, access, protect and/or transmit FTI, are subject to Safeguard reviews.

> These requirements also apply to releasing electronic media to a private contractor, sub-contractor or other agency office, even if the purpose is merely to erase the old media for reuse.

## 2.C.9 Service Level Agreements (SLA)

Agencies using support functions, including, but not limited to, consolidated data centers, shared print facilities, and disaster recovery sites, must implement appropriate controls to ensure the protection of FTI. This includes a service level agreement (SLA) between the agency authorized to receive FTI and support functions. The SLA must cover the following:

- The agency with authority to receive FTI is responsible for ensuring the protection of all FTI received. The state support function shares responsibility for safeguarding FTI.

- The Exhibit 7 language must be included in the SLA between the recipient agency and support functions and in all contracts involving contractors or sub-contractors hired by the state support function.

- The SLA provides written notification to the state support function's management that they are bound by the provisions of Publication 1075, relative to protecting all FTI within their possession or control.

- The SLA shall detail the IRS's right to inspect state support function facilities and operations receiving, processing, storing, accessing, protecting and/or transmitting FTI under this agreement to assess compliance with requirements defined in IRS Publication 1075. The SLA shall specify that IRS's right of inspection includes the use of manual and/or automated scanning tools to perform compliance and vulnerability assessments of information technology (IT) assets that access, store, process or transmit FTI.

- The SLA shall detail the state support function's responsibilities to address corrective action recommendations to resolve findings of noncompliance identified by IRS inspections.

- The agency will conduct an internal inspection of the state support function every 18 months, as described in Section 2.D.3, Internal Inspections. Multiple agencies sharing a state support function such as a consolidated data center may partner together to conduct a single, comprehensive internal inspection. However, care must be taken to ensure agency representatives do not gain unauthorized access to other agencies' FTI during the internal inspection.

- The employees from the state support function with access to or use of FTI, including system administrators and programmers, must:

TD_0000290

1.  Meet the background check requirements defined in <u>Background Investigation Minimum Requirements</u> and

2.  Receive disclosure awareness training and sign a confidentiality statement, prior to initial access to or use of FTI, as well as annually thereafter. These provisions also extend to any contractors or sub-contractors hired by the state support function that have authorized access to or use of FTI.

- The specific data breach incident reporting procedures for all state support function employees, contractors and sub-contractors must be covered. The required disclosure awareness training must include a review of these procedures.

- Responsibilities must be identified for coordination of the 45-day notification of the use of contractors or sub-contractors with access to FTI.

- Require a formal sanction process for individuals covered by the SLA for failing to comply with established FTI security policies and procedures. Notification of designated agency personnel is required within 72 hours when the formal sanction is a proposed disciplinary or adverse action involving an unauthorized access or disclosure of FTI and must include the date the unauthorized access or disclosure of FTI occurred.

> Generally, consolidated data centers are operated either by a separate state agency (e.g., Department of Information Services) or by a private contractor or sub-contractor. If an agency is considering transitioning to either a state-owned or private vendor consolidated data center, the Office of Safeguards strongly suggests the agency submit a request for discussions with Safeguards as early as possible in the decision making or implementation planning process. The purpose of these discussions is to ensure the agency remains compliant with safeguarding requirements during the transition to the consolidated data center.

## 2.C.10 Review Availability of Contractor and Sub-Contractor Facilities

As part of the agency review process, all affiliated contractors and sub-contractors who receive, transmit, process and store FTI on behalf of the agency are subject to review and testing.

The agency must include <u>Exhibit 7, Safeguarding Contract Language</u> for all contracts.

> These requirements also apply to releasing electronic media to a private contractor, sub-contractor or other agency office, even if the purpose is merely to erase the old media for reuse.

## 2.C.11 Restricting Access – Other Disclosures

### 2.C.11.1 Child Support Agencies—IRC §§ 6103(l)(6), (l)(8) and (l)(10)

In general, no officer or employee of any state or local child support enforcement agency can make further disclosures of FTI.

However, limited information may be disclosed to agents, contractors or sub-contractors of the agency for the purpose of, and to the extent necessary in, establishing and collecting child support obligations from and locating individuals owing such obligations.

The information that may be disclosed for this purpose to an agent, contractor, or a sub-contractor is limited to:

- The address

- Social Security Number of an individual with respect to whom child support obligations are sought to be established or enforced

- The amount of any reduction under IRC § 6402(c) in any overpayment otherwise payable to such individual

Tax refund offset payment information may not be disclosed by any federal, state or local child support enforcement agency employee, representative, agent, contractor, or sub-contractor into any court proceeding. To satisfy the re-disclosure prohibition, submit only payment date and payment amount for all payment sources (not just tax refund offset payments) into court proceedings.

Additional information regarding the use of FTI for child support enforcement purposes can be found at: https://www.irs.gov/privacy-disclosure/use-of-federal-tax-information-fti-for-child-support-enforcement-purposes-matrix

> Forms 1099 and W-2 information are not authorized by statute to be disclosed to contractors or sub-contractors under the child support enforcement program (IRC § 6103(l)(6)).

## 2.C.11.2 Human Services Agencies—IRC § 6103(l)(7)

No officer or employee of any federal, state, or local agency administering certain programs under the Social Security Act, the Food Stamp Act of 1977, or Title 38, United States Code, or certain housing assistance programs is permitted to make further disclosures of FTI for any purpose. Human services agencies may not contract for services that involve the disclosure of FTI to contractors or sub-contractors.

## 2.C.11.3 Deficit Reduction Agencies—IRC § 6103(l)(10)

Agencies receiving FTI from Bureau of Fiscal Service (BFS) related to tax refund offsets are prohibited from making further disclosures of the FTI received unless authorized.

## 2.C.11.4 Centers for Medicare and Medicaid Services—IRC § 6103(l)(12)(C)

The Administrator of the Centers for Medicare and Medicaid Services (CMS) is authorized under IRC § 6103(l)(12)(C) to disclose FTI it receives from SSA to its agents for the purpose of, and to the extent necessary in, determining the extent that any Medicare beneficiary is covered under any group health plan. A contractual relationship must exist between CMS and the agent. The agent, however, is not authorized to make further disclosures of FTI for any purpose.

## 2.C.11.5 Disclosures under IRC § 6103(l)(20)

Disclosures to officers, employees, contractors, and sub-contractors of SSA and other specified agencies are authorized to receive specific tax information for the purpose of carrying out the Medicare Part B premium subsidy adjustment and Part D Base Beneficiary Premium Increase. These disclosures and any redisclosures authorized by this provision are subject to safeguards requirements.

## 2.C.11.6 Disclosures under IRC § 6103(l)(21)

Disclosures to officers, employees, contractors, and sub-contractors of the U.S. Department of Health and Human Services (HHS) are at the request of a taxpayer seeking financial assistance for health insurance affordability programs. HHS may release FTI to an Exchange established under the Affordable Care Act or a state agency administering eligibility determinations for Medicaid or Children's Health Insurance Programs for the purpose of establishing eligibility for participation in the Exchange, verifying the appropriate amount of any credits and determining eligibility for participation in the state program. These

TD_0000292

disclosures are subject to safeguards requirements. Any agent contractor, or sub-contractor is also subject to IRS safeguard requirements and review.

IRC § 6103(l)(21)(C) may allow HHS Office of Inspector General to have access to FTI maintained in the eligibility records of an Exchange or state entity administering these programs, under certain limited circumstances. This authority does not extend to independent state audit agencies that may not have access to FTI in eligibility records unless a contractual relationship is established that conforms to the disclosure requirements of IRC § 6103.

## 2.C.11.7 Disclosures under IRC § 6103(i)

Federal law enforcement agencies receiving FTI pursuant to court orders or by specific request under section 6103(i) for purposes of investigation and prosecution of non-tax federal crimes, or to apprise of or investigate terrorist incidents, are subject to safeguards requirements and review.

The Department of Justice (DOJ) must report in its SSR the number of FTI records provided and to which federal law enforcement agency the data was shared for the calendar year processing period.

## 2.C.11.8 Disclosures under IRC § 6103(m)(2)

Disclosures to agents of a federal agency under IRC § 6103(m)(2) are authorized for the purposes of locating individuals in collecting or compromising a federal claim against the taxpayer in accordance with Sections 3711, 3717 and 3718 of Title 31. If the FTI is shared with agents, contractors, or sub-contractors, the agency and agents, contractors, or sub-contractors are all subject to IRS safeguarding requirements and reviews.

## 2.D Other Safeguards - IRC § 6103(p)(4)(D)

### 2.D.1 General

IRC § 6103(p)(4)(D) requires that agencies receiving FTI provide other safeguard measures, as appropriate, to ensure the confidentiality of the FTI. Agencies are required to provide a training program for their employees, contractors, or sub-contractors.

### 2.D.2 Training Requirements

Education and awareness are necessary to provide employees, contractors, sub-contractors, and other persons with the information to protect FTI. There are multiple components to a successful training program. In this section, training requirements are consolidated to ensure agencies understand the requirements to comply with this publication.

Disclosure awareness training is described in detail within Section 2.D.2.1, Disclosure Awareness Training. Additional training requirements are located in various sections of the document and identified in the following table.

**Table 2 – Training Requirements**

| Training Component | Applicability | Section |
|---|---|---|
| Disclosure Awareness Training | • Specific to protection of FTI and prevention of unauthorized disclosure | **2.D.2.1** |
| Security and Privacy Awareness Training | • Provides basic security and privacy awareness training to information system users | **AT-2** |
| Role-Based Training | • Provides individualized training to personnel based on assigned security roles and responsibilities | **AT-3** |
| Contingency Training | • Provides individualized training to personnel based on assigned roles and responsibilities as they relate to recovery of backup copies of FTI | **CP-3** |
| Incident Response Training | • Provides individuals with agency-specific procedures to handle incidents<br>• Provides individuals with IRS-specific requirements pertaining to incidents involving FTI | **IR-2 and 1.8** |
| Insider Threat Awareness Training | • Provides individuals with agency-specific procedures to increase insider threat awareness | **PM-12** |

## 2.D.2.1 Disclosure Awareness Training

Prior to granting an authorized agency employee, state support employee, contractor, or sub-contractor access to FTI, or to systems containing FTI, each employee, contractor, or sub-contractor must certify their understanding of the agency's security and privacy policy and procedures for safeguarding FTI through the agency's disclosure awareness training.  The use of FTI in any training environment, including Disclosure Awareness training or material, is prohibited.

Disclosure awareness training (including role-based training) must provide personnel who have access to FTI with initial and annual training on:

• Organizational authority for receiving FTI

• Authorized uses of FTI

• Disclosure of FTI with external parties only when authorized

TD_0000294

- Consequences of unauthorized access, use or disclosure of FTI

Employees, contractors, and sub-contractors must be advised of the penalty provisions of IRC §§ 7431, 7213, and 7213A (see Exhibit 4, Sanctions for Unauthorized Disclosure, and Exhibit 5, Civil Damages for Unauthorized Disclosure).

The training provided before the initial certification and annually thereafter must also cover the incident response policy and procedure for reporting unauthorized disclosures and data breaches (see Section 1.8, Reporting Improper Inspections or Disclosures).

During this training, agencies must make employees, contractors, or sub-contractors aware that disclosure restrictions and penalties apply even after employment or contract with the agency has ended.

For the initial certification, and each annual recertification thereafter, the employee, contractor or sub-contractor must sign, either with ink or electronic signature, a confidentiality statement certifying their understanding of penalty provisions and the security requirements. It must also contain a statement that the employee understands they must report possible improper inspection or disclosure of FTI, including breaches and security incidents to both TIGTA and Safeguards within 24 hours.

> Example:  I understand the penalty provisions of IRC §§ 7431, 7213 and 7213A.

> Example:  I understand upon discovering a possible improper inspection or disclosure of FTI, including breaches and security incidents, I must follow the proper incident reporting requirements to ensure the Office of Safeguards and the Treasury Inspector General for Tax Administration are notified of a possible issue involving FTI.

The initial certification and recertification must be documented and placed in the agency's files for review and retained for at least five (5) years.

The agency must include practical exercises in awareness training that simulate security and privacy incidents. Practical exercises may include, for example, social engineering attempts to collect information, gain unauthorized access, or simulate the adverse impact of opening malicious email attachments or invoking, via spear phishing attacks, malicious web links. Privacy-related practical exercises may include, for example, practice modules with quizzes on handling FTI and affected individuals in various scenarios. See NIST Control AT- 2 (CE1).

The agency must include role-based security and privacy training, including insider threat awareness, to personnel with access to FTI. Role-based training for security and privacy may include, for example, security and privacy training for software developers that includes simulated cyber-attacks exploiting common software vulnerabilities, or spear/whale phishing attacks targeted at senior leaders/executives. Role-based training on handling FTI helps prevent unauthorized collections or uses of FTI. See NIST Control AT-3 (CE3 and CE5)

At least once per quarter, agencies must distribute security and privacy awareness reminders/updates to all users. This is in addition to annual awareness training. Security and privacy awareness updates can be disseminated to appropriate personnel by using a variety of methods, such as, but not limited to:

- Email and other electronic messages to inform users

- Discussion at group and managerial meetings

- Security bulletin boards throughout the secure work areas

TD_0000295

- Security articles in employee newsletters

- Pertinent articles that appear in the technical or popular press to share with members of the management staff

- Posters to display with short, simple educational messages (e.g., instructions on reporting unauthorized access "UNAX" violations)

- Additional formal and informal training

## 2.D.2.2 Disclosure Awareness Training Products

The following resources are available from the IRS to assist your agency in meeting the federal safeguard requirements for disclosure awareness and the protection of FTI. Technical information is available to you on the Office of Safeguards website at https://www.irs.gov/uac/safeguards-program.

Some of the following products can be ordered from the IRS Distribution Center by calling 800-TAX-FORM (829-3676). Be sure to identify yourself as a (state) government employee and please provide the publication number and quantity. Please note that all Notice 129 quantities are ordered by pad or roll count (100 pieces per, so 10 rolls = 1,000 labels). All products will be delivered to the agency address you provide and to the attention of the person you specify. Please do not call the tax help number (800-829-4933) but, if you experience an ordering problem, obtain the employee's name and ID number and send an email to SafeguardReports@irs.gov mailbox so the Office of Safeguards can assist you.

**Protecting FTI, Pocket Guide for Government Employees** (Provides basic disclosure concepts and warns of civil and criminal sanctions for misuse of FTI)
Available through Distribution Center: Publication 4761

**UNAX is Serious** 11" x 17" Poster
Available through Distribution Center:  Document 12800

**Stop UNAX In Its Tracks** Tri-fold handout
Available through Distribution Center:  Document 12612

**Publication 1075, Tax Information Security and Privacy Guidelines for Federal, State and Local Agencies** (Key publication explains the federal safeguard requirements)
Available online: http://www.irs.gov/pub/irs-pdf/p1075.pdf

**Safeguards Disclosure Awareness Videos** (Explains key safeguard concepts for protecting the confidentiality of FTI)[5]
Available online through Safeguards website: https://www.irs.gov/uac/irs-disclosure-awareness-videos

## 2.D.3 Internal Inspections and On-Site Reviews

Another measure IRS requires for the safeguarding of FTI is internal inspections by the recipient agency. The purpose is to ensure that the security and privacy policies and procedures established by the agency to protect FTI are functioning, maintained, and enforced. The agency must submit copies of these inspection reports (see Internal Inspection Template on the Office of Safeguards website) to the IRS with the SSR (see Section 2.E.4, Safeguard Security Report). To provide an objective assessment, the inspection should be conducted by agency personnel outside the FTI using function being inspected.

---

[5] The use of the Safeguards Disclosure Awareness Video does not completely satisfy the training requirements of NIST 800-53 Revision 5.

TD_0000296

To provide reasonable assurance that FTI is adequately safeguarded, the inspection must address the safeguard requirements the IRC and IRS impose. The agency must monitor and audit privacy controls and internal privacy policy to ensure effective implementation.

In a situation where it is unwieldy or otherwise not feasible for agency leadership to personally conduct the inspection, it is permissible for off-site locations with access to FTI to self-certify the internal inspection. If possible, the agency should make an initial visit to the off-site location prior to disclosing FTI and conduct an initial inspection. The agency must ensure the self-certified inspection is signed by an agency employee, received timely, reviewed thoroughly, have in-depth discussions with the person conducting the self-certification and submit the self-certified inspections with the agency SSR.

Contractors and sub-contractors may not conduct self-certification internal inspections.

Agencies must establish a review cycle as follows:

- Field offices receiving FTI at least every three (3) years

- Headquarters office facilities housing FTI and the agency computer facility at least every 18 months

- All contractors and sub-contractors with access to FTI, including a consolidated data center or off-site storage facility: at least every 18 months

The agency must complete a documented schedule (internal inspection plan), detailing the timing of all internal inspections in the current year and next two years (three-year cycle). The plan must be included as part of the SSR, as described in Section 2.E.4.

Inspection reports, including a record of corrective actions, must be retained by the agency for a minimum of five years from the date the inspection was completed. IRS personnel may review these reports during a safeguard review. A summary of the agency's findings and the actions taken to correct any deficiencies must be included with the SSR submitted to the IRS.

Required items to review during internal inspections include recordkeeping, secure storage, limited access, disposal, and cybersecurity.

## 2.D.4 Recordkeeping

Each agency and function within that agency shall maintain a log of all requests for FTI, including receipt and disposal of returns or return information. This includes any medium containing FTI, such as computer tapes, cartridges, CDs, or data received electronically.

## 2.D.5 Secure Storage

FTI (including tapes, cartridges, or other removable media) must be stored in a secure location, safe from unauthorized access.

## 2.D.6 Limited Access

Access to returns and return information (including tapes, cartridges, or other removable media) must be limited to only those employees, officers, contractors, and sub-contractors who are authorized access by law or regulation and whose official duties require such access.

The physical and systemic barriers to unauthorized access must be reviewed and reported. An assessment of facility security features must be included in the report.

TD_0000297

### 2.D.7 Disposal

Upon completion of use, agencies must ensure that the FTI is destroyed or returned to the IRS or the SSA according to the guidelines contained in Section 2.F, Disposing of FTI - IRC § 6103(p)(4)(F).

### 2.D.8 Computer Systems Security

The agency's review of the adequacy of its cybersecurity provisions must provide reasonable assurance that access to FTI is limited to personnel who have a need-to-know. This need-to-know must be enforced electronically as well as physically (see Internal Inspection Template on the Office of Safeguards website and Section 4.1, Access Control, and other portions of Section 3.0, Cyber security Requirements, as applicable).

> The review of the computer facility must include the evaluation of cybersecurity and physical security controls.

### 2.D.9 Plan of Action and Milestones (POA&M)

The agency must implement a process for ensuring that corrective actions are developed and monitored. The process must include the findings identified during the internal inspections and the remediation plans and dates to resolve these findings.

> Although similar, the IRS CAP covers findings identified by the Office of Safeguards during the safeguard review and would not include or track agency findings from the internal inspection process.

### 2.E Reporting Requirements – IRC § 6103(p)(4)(E)

#### 2.E.1 General

> IRC § 6103(p)(4)(E) requires agencies receiving FTI to report on procedures established and used for ensuring the confidentiality of FTI that is received, processed, stored, accessed, protected, and/or transmitted to or from the agency. The major reporting requirements include the SSR, CAP and 45-day notification.

#### 2.E.2 Report Submission Instructions

Correspondence, reports, and attachments must be sent electronically to the Office of Safeguards using one of the following two methods:

- SDT, if the agency participates in the SDT program.

- Email to Safeguards mailbox at SafeguardReports@irs.gov. Email transmissions must be sent by an IRS-approved encrypted method as outlined in Section 2.E.3, Encryption Requirements.

Agencies must follow the requirements below when submitting correspondence, reports, and attachments to the Office of Safeguards:

- Submissions must include a signed certification letter from the Head of Agency or a designee. In the event the agency submits a report signed by a designee, there must be a delegation of authority signed by the Head of Agency (HOA).

- All correspondence requiring HOA signature must be in the form of a handwritten (aka. Wet) signature or a digital certificate signature. The HOA can delegate individuals to sign these

TD_0000298

documents on their behalf. To do so, the HOA must provide a delegation of authority for individual they will assign as their designee. The delegation of authority must be kept current by the agency and retained for at least three years and will be reviewed by IRS personnel during Safeguard reviews.

- Submissions must be made using official templates provided by the Office of Safeguards.

- Reports referencing file attachments must clearly identify the filename and section contained within the attachment being referenced.

- Attachments must be named clearly and identify the associated section in the SSR, CAP or 45-day notification.

- Attachment filenames must follow a standardized naming convention, either by a logical order (e.g., CAPATT1, CAPATT2) or by finding number (e.g., D.1, H.1.3, H.13.4).

- Attachments must not be embedded into the SSR, CAP or 45-day notification.

## 2.E.3 Encryption Requirements

The Office of Safeguards requires that all reports, when sent to the Office of Safeguards via email, be transmitted using IRS-approved encryption methods to protect sensitive information. Agencies are requested to adhere to the following guidelines to use encryption:

- Compress files in .zip or .zipx formats

- Encrypt the compressed file using Advanced Encryption Standard

- Use a minimum of 128-bit encryption key string

- Ensure a strong password or passphrase is generated to encrypt the file

- Communicate the password or passphrase with the Office of Safeguards through a separate email or via a telephone call to your IRS contact person. Do not provide the password or passphrase in the same email containing the encrypted attachment.

Refer to your specific file compression software user guide for instructions on how to compress and encrypt files. Known compatible products with IRS include but are not limited to WinZip and Secure Zip.

Please remember, while the attachment is encrypted, the subject line and content of the email message will not be encrypted, so it is important that any sensitive information be contained in the attachment (encrypted document).

## 2.E.4 Safeguards Security Reports (SSR)

The SSR is the primary method for agencies to report to the IRS Office of Safeguards processes, procedures, and security and privacy controls in place to protect FTI in compliance with IRC § 6103(p)(4). Agencies have an annual requirement to submit SSRs after their initial receipt of FTI. There are enhanced requirements for agencies that are applying to receive FTI for the first time and for existing agencies requesting new FTI data streams.

TD_0000299

## 2.E.4.1 Initial SSR Submission Instructions – New Agency Responsibilities

Agencies executing data exchange agreements involving access to FTI will be subject to safeguarding requirements and must provide evidence that adequate safeguard protections and controls are in place before IRS will authorize the release of FTI. The agency must submit an initial SSR for approval at least 90 days prior to the agency's planned FTI receipt date.

In order to obtain initial IRS approval to receive FTI, an agency must have an approved SSR. To facilitate IRS approval, the agency is expected to:

- Designate an agency Safeguards POC, see Section 1.5 Coordinating Safeguards Within an Agency

- Make program officials, contractors, and/or sub-contractors available to discuss access and use of FTI, as needed

The agency is required to submit evidentiary documentation for the controls shown in Table 3 in conjunction with the first submission of the agency's SSR.

TD_0000300

| 800-53 Control | Control Name | Evidentiary Documents (Artifacts) for Review |
|---|---|---|
| | **Table 3 – SSR Evidentiary Documentation** | |
| Section 2.C.5 | Commingling and Labeling | • Screenshots of database schemas that will show electronic FTI labeling<br>• Sample output (report/notice) that will show how FTI is labeled |
| AC-6 | Least Privilege | • FTI data flow diagram (physical and logical) that will include all devices and inputs/outputs<br>• Access Control Policy and Procedures |
| AC-17 | Remote Access | • Screenshot of authentication screens |
| AC-20 | Use of External Systems | • Access Control Policy and Procedures that will show the prohibition of using non-agency owned devices to access FTI and the FTI network |
| AU-2 | Audit Events | • Audit and accountability policy and procedures for FTI information systems (e.g., network infrastructure, operating systems, databases, and applications with FTI)<br>• Log Monitoring Policy (recordkeeping) |
| AU-3 | Content of Audit Records | • Sample audit logs for all technologies/components associated with FTI |
| AT-4 | Training Records | • Training material (for users and system security personnel)<br>• Sample certification statement |
| CA-2 | Assessments | • Independent Security Assessment Report (SAR) or other report reflecting the results of security testing, highlighting findings deemed "critical" or "high" |
| CA-5 | Plan of Action and Milestones | • POA&M report that will show the completed risk mitigation activities and planned mitigation activities for identified weaknesses |
| CA-6 | Authorization | • Documentation appointing the system Authorization Official<br>• Signed Authority to Operate (ATO) for new systems (or DRAFT if ATO not yet granted) |

69

| Table 3 – SSR Evidentiary Documentation | | |
|---|---|---|
| **800-53 Control** | **Control Name** | **Evidentiary Documents (Artifacts) for Review** |
| CM-8 | System Component Inventory | • Complete listing of FTI inventory (includes networking devices, boundary protection devices and information system components) identifying: platform, operating system, and applicable software (e.g., DBMS, application development environments, web servers)<br>• *Note*: The agency must provide sufficient version detail for each system component such that the Office of Safeguards can determine whether the system component is subject to receiving ongoing security support from the vendor |
| IA-2 | Identification and Authentication (Organizational Users) | • Screenshots that will show the configuration of multifactor authentication solution(s) in place for all remote network access to systems containing FTI<br>• Description of Authenticator Assurance Level implementation for public-facing systems displaying FTI |
| IA-5 | Authenticator Management | • Password and Authenticator Management Policy and Procedures<br>• Screenshots of local security policy for password management |
| IA-12 | Identity Proofing | • Description of Identity Assurance Level (IAL) implementation for public-facing systems displaying FTI |
| IR-6 | Incident Reporting | • Incident Response Plan and Procedures |
| MP-6 | Media Sanitization | • Media Sanitization Policy and Procedures<br>• Destruction log template |
| PE-3 | Physical Access Control | • Physical Access Policy and Procedures<br>• Alternative Worksite Policy and Procedures |
| PE-8 | Visitor Access Records | • Sample visitor access log |
| PM-5 | Inventory of Personally Identifiable Information | • Diagrams depicting the logical flow of FTI within the agency's network to include specific boundary protection, infrastructure devices and endpoints where FTI will be stored |
| PS-8 | Personnel Sanctions | • Personnel Sanctions Policy and Procedures |
| RA-5 | Vulnerability Scanning | • Vulnerability scanning Policy and Procedures |

TD_0000302

| Table 3 – SSR Evidentiary Documentation | | |
|---|---|---|
| **800-53 Control** | **Control Name** | **Evidentiary Documents (Artifacts) for Review** |
| SA-9 | External Information System Services | • System and Services Acquisition Policy and/or Access Control Policy<br>• Contracts with service providers containing Publication 1075 Exhibit 7 language |
| SC-4 | Information in Shared System Resources | • System and Communication Policy and Procedures |
| SC-7 | Boundary Protection | • Network architecture and design documents to include internet-facing network security components that will protect the FTI network |
| SC-8 | Transmission Confidentiality and Integrity | • System and Communication Policy and Procedures<br>• Network design diagram and documentation showing all FTI transmission protocols and encryption mechanisms identified |
| SI-2 | Flaw Remediation | • Patch Management Policy and Procedure |
| SI-3 | Malicious Code Protection | • Malicious Code Protection Policy and Procedure |

If the agency does not submit all required evidentiary documentation as described above, the IRS reserves the right to conduct a safeguard review to assess the effectiveness of the controls established in order to approve the SSR prior to initial release of FTI. Subsequently, Safeguards will conduct a risk-based assessment to determine when to schedule an agency's first safeguard review after initial receipt of FTI.

Refer to the Office of Safeguards website for additional guidance and instructions for completing the document.

## 2.E.4.2 Agencies Requesting New FTI Data Streams

Agencies currently receiving FTI with an approved SSR and seeking additional FTI data streams (i.e., FTI to be received under newly assigned program authority or expanded statutory authority under IRC § 6103), must submit the following documentation along with the request to receive the new data stream(s):

• Approved SSR for the most recent reporting period

• Current CAP with approved mitigation strategies for critical and significant findings

• Documentation of security testing for the system(s) where the new data stream will be processed. Any findings deemed "critical" must be mitigated

• A signed Authority to Operate (ATO) for the system(s) that will be receiving, processing, storing, accessing, protecting and/or transmitting the new FTI data stream that is not covered in the agency's SSR already on file

TD_0000303

After the agency receives its new data stream, the subsequent SSR submission must reference the receipt of the new data stream and must describe all systems that receive, process, store, access, protect and/or transmit FTI. This SSR submission must also describe all security and privacy control implementations for the FTI environment(s).

## 2.E.4.3 Annual SSR Update Submission Instructions

The agency must update and submit the SSR annually. The purpose of the SSR is for agencies to document the implementation of security and privacy controls that impact the protection of FTI. Agencies must document significant changes to the environment, as applicable. Examples of changes include, but are not limited to:

- New data exchange agreements

- New computer equipment, systems or applications (hardware or software) (e.g., moving FTI systems to a FedRAMP authorized cloud environment, re-engineering legacy case management systems)

- New facilities including, office moves, new contractor or sub-contractor locations (e.g., print vendor, call center)

- Organizational changes, such as moving IT operations to a consolidated data center from an embedded IT operation

- Development of new business processes or procedures for handling FTI

The following information must be updated in each SSR submission to reflect routine updates or changes to the implementation of security and privacy controls and/or the agency's safeguarding program:

- Changes to information or procedures previously reported

- Current annual period safeguard activities (e.g., performing internal inspections, performing ongoing security and privacy control testing, providing security and privacy awareness training to employees)

- Planned actions affecting safeguard procedures (e.g., system upgrades, development of new policy framework, use of a new audit log monitoring solution)

- Agency use of contractors or sub-contractors (non-agency employees)

The annual SSR update must be submitted on the prior year's SSR analysis that was returned to the agency. This will allow for a version control of the document, assurance that the agency addressed all outstanding items previously noted and reduces the need for recreating the entire document.

## 2.E.4.4 SSR Submission Dates

The SSR must be submitted annually with all applicable attachments. Each submission of the SSR must include a description of updates or changes that have occurred during the reporting period.

Submission due dates are defined below:

| Table 4 - SSR Submission Dates | | |
|---|---|---|
| | **Reporting Period** | **SSR Due** |
| **Federal Agencies** | | |
| All Federal Agencies | January 1 through December 31 | January 31 |
| **All State Agencies and Territories** | | |
| AK, AL, AR, AS, AZ, CA | February 1 through January 31 | February 28 |
| CO, CT, DC, DE, FL, GA, MP* | March 1 through February 28 | March 31 |
| GU, HI, IA, ID, IL, IN, KS | April 1 through March 31 | April 30 |
| KY, LA, MA, MD, ME, MI, | May 1 through April 30 | May 31 |
| MN, MO, MS, MT, NE | June 1 through May 31 | June 30 |
| NC, NH, NJ, NM, NV, NY | July 1 through June 30 | July 31 |
| ND, OH, OK, OR | August 1 through July 31 | August 31 |
| PA, PR, RI, SC, SD, TN | September 1 through August 31 | September 30 |
| TX, UT, VA, VI, VT, WA | October 1 through September 30 | October 31 |
| WI, WV, WY | November 1 through October 31 | November 30 |

*The Postal abbreviation for Commonwealth of the Northern Mariana Islands was updated to MP.

Educational institutions receiving IRS addresses to locate debtors under IRC § 6103(m)(4)(B) must send compliance reports to the Department of Education as the federal oversight agency for this program.

When extenuating circumstances exist, agencies may request an SSR extension, in 30-day increments, with a maximum of 60 days. Extension requests must be submitted not later than 30 days prior to the scheduled SSR due date. Request for extensions will not be considered after the scheduled SSR due date. A request for a second extension must be accompanied by a draft SSR.

Extension requests must be sent to the Office of Safeguards via SDT or sent via email to SafeguardReports@irs.gov, with the subject "SSR Extension Request". The body of the email must address the reasons for the request. All extension requests will be evaluated on a case by case basis. Safeguards will provide an email response, approving or disapproving the request, within five (5) business days after receipt of the request.

## 2.E.5 Corrective Action Plan

The Corrective Action Plan (CAP) is a report containing the findings, the recommended corrective actions, and targeted implementation dates for each weakness identified during an on-site, remote, or hybrid review. The CAP and SRR documents are the same in content, however, the CAP document has functionality to allow agencies to report their progress on corrective actions. The IRS will provide each agency an SRR along with a CAP upon completion of an on-site, remote or hybrid review. The agency

TD_0000305

must complete the CAP by providing an updated status to each unresolved finding, including the projected or actual date to close the finding, as well as provide status updates to any remaining planned actions.

All findings must be addressed in a timely fashion or an out of cycle CAP review may be done to further address an agency's open critical and significant findings.

Safeguards will initiate communication with the agency's POC, and a formal engagement letter will be sent. At that time, the agency will be required to update their CAP and provide documentation for closure consideration of the remaining critical and significant findings. The out of cycle CAP review process will include:

- A preliminary discussion held prior to the review of the findings.

- During the review, the agency's CAP responses and supporting documentation will be addressed. Requests for additional information and clarification, including automated scanning reports, will be made by Safeguards.

- A closing conference will be held upon the completion of the agency's CAP review and a Preliminary Assessment Report (PAR) will be issued to provide the agency an overview of the findings addressed during the review.

The agency may be required to submit a mitigation plan if any critical findings remain open and escalation of the p7 process maybe initiated per Exhibit 3, USC Title 26, CFR § 301.6103(p)(7)-1.

The agency will receive an updated CAP to resolve outstanding issues in the next reporting cycle.

## 2.E.5.1 CAP Submission Instructions

The agency must update and submit the CAP semi-annually to document all corrective actions, taken or planned, in response to the findings enumerated in the SRR. To complete the CAP document, agencies must:

- Use the version sent by the Office of Safeguards with the SRR and must not alter the format

- Provide a written narrative in response to each finding

- Provide a planned implementation date or actual completion date in MM/DD/YYYY format for each finding response

- Provide evidentiary documentation to validate the closure of any findings identified as Critical or Significant

- Provide a signed certification from the Chief Information Security Officer (CISO) or Head of Agency to document and close findings that are no longer applicable to the agency's handling of FTI. Often, this occurs when agencies decommission systems that once transmitted FTI, replace applications or systems with newer technologies, or perform major upgrades to versions of systems that continue to receive, process, store, access, protect and/or transmit FTI.

TD_0000306

## 2.E.5.2 CAP Submission Dates

CAP Submission due dates are defined below.

| Table 5 – CAP Submission Dates | | |
|---|---|---|
| | **CAP with SSR** | **CAP (only)** |
| **Federal Agencies** | | |
| All Federal Agencies | January 31 | July 31 |
| **State Agencies and Territories** | | |
| AK, AL, AR, AS, AZ, CA | February 28 | August 31 |
| CO, CT, DC, DE, FL, GA, MP* | March 31 | September 30 |
| GU, HI, IA, ID, IL, IN, KS | April 30 | October 31 |
| KY, LA, MA, MD, ME, MI | May 31 | November 30 |
| MN, MO, MS, MT, NE | June 30 | December 31 |
| NC, NH, NJ, NM, NV, NY | July 31 | January 31 |
| ND, OH, OK, OR | August 31 | February 28 |
| PA, PR, RI, SC, SD, TN | September 30 | March 31 |
| TX, UT, VA, VI, VT, WA | October 31 | April 30 |
| WI, WV, WY | November 30 | May 31 |

*The Postal abbreviation for Commonwealth of the Northern Mariana Islands was updated to MP.

If the SRR was issued within 60 days from the upcoming CAP due date in the preceding chart, the agency's first CAP will be due on the subsequent reporting date to allow the agency adequate time to document all corrective actions proposed and taken. Agency CAP submissions provided to the Office of Safeguards within 60 days of an upcoming review will be responded to as part of the review process.

When extenuating circumstances exist, agencies may request an extension for no more than 30 days. Extension requests must be submitted not later than 30 days prior to the scheduled CAP due date. Request for extensions will not be considered after the scheduled CAP due date. Extension requests must be sent to the Office of Safeguards via SDT or sent via email to SafeguardReports@irs.gov, with the subject "CAP Extension Request". The body of the email must address the reasons for the request. All extension requests will be evaluated on a case by case basis. Safeguards will provide an email response approving or disapproving the request within five (5) business days after receipt of the request.

TD_0000307

## 2.E.6 Notification Reporting Requirements

IRC § 6103 limits the usage of FTI to only those purposes explicitly stated. Due to the security and privacy implications, higher risk of unauthorized disclosure and potential for unauthorized use of FTI based on specific activities conducted, the Office of Safeguards requires advanced notification of at least 45 days prior to implementing certain operations or technology capabilities that require additional uses of the FTI.

In addition to the initial receipt of FTI (see Section 1.1), the following circumstances or technology implementations require the agency to submit notification to the Office of Safeguards via the SafeguardReports@irs.gov, mailbox, a minimum of 45 days ahead of the planned implementation:

### Table 6 – Notification Reporting

| Prior to… | Requirement |
|---|---|
| Implementing Cloud Computing | Submit Notification |
| Disclosure to a Contractor | Submit Notification |
| Re-disclosure by Contractor to Sub-Contractor | Submit Notification and receive approval |
| Using FTI in Tax Modeling for Tax Administration | Submit Notification and receive approval |
| Using FTI in Pre-Production Environment | Submit Notification and receive approval |

See additional details pertaining to each notification topic in the following sections. Contact the Office of Safeguards mailbox with any questions pertaining to notification requirements.

### 2.E.6.1 Cloud Computing

Receiving, processing, storing, accessing, protecting, and/or transmitting FTI in a cloud environment requires prior notification to the Office of Safeguards.

The intent of the notification is to require agencies to:

- Document the physical locations where FTI will be processed to ensure FTI remains onshore

- Document the cloud service provider's FedRAMP authorization such that Safeguards does not have the responsibility to assess the physical security of cloud service provider facilities

- Explain how encryption will be used to prevent unauthorized disclosures to cloud service provider employees

- Document all agency-managed security and privacy controls

If the agency cannot demonstrate it prevents the cloud service provider from having logical access to the data, the agency must submit a notification for disclosure to a contractor or sub-contractor.

Refer to Section 3.3.1, Cloud Computing and the Safeguards website for more information related to cloud computing requirements.

TD_0000308

## 2.E.6.2 Contractor or Sub-Contractor Access

Redisclosure of FTI to contractors or sub-contractors by authorized agencies requires notification to IRS at least 45 days prior to the planned re-disclosure. Contractors or sub-contractors consist of but are not limited to cloud computing providers, consolidated data centers, off-site storage facilities, shred companies, IT support or tax modeling/revenue forecasting providers.

The contractor notification requirement also applies in the circumstance where the contractor hires additional sub-contractor services. Approval is required if the (prime) contractor hires additional sub-contractor services in accordance with Exhibit 6, Contractor 45-Day Notification Procedures.

> Notification is also required for contractors or sub-contractors to perform statistical analysis, tax modeling or revenue projections (see Section 1.4, State Tax Agency Limitations).

## 2.E.6.3 Tax Modeling

The agency must notify the Office of Safeguards if planning to include FTI in statistical analysis, tax modeling or revenue projections.

The Office of Safeguards will forward the notification to the IRS Statistics of Income and Disclosure for approval of the modeling methodology (see Section 1.4, State Tax Agency Limitations).

Tax modeling approvals are valid up to three years. If the agency needs to continue the use of FTI in tax modeling past the approved timeframe, a new request must be submitted to the Office of Safeguards.

## 2.E.6.4 Live Data Testing

Agencies must submit a Data Testing Request (DTR) form to request approval to use live FTI in a testing environment. The intent of the notification is to ensure agencies do not process FTI in environments that do not have the same security and privacy controls as the production environment. Safeguards must review the security posture of the development or test environment as described in the agency's notification document submission to determine whether the agency has reduced the risk to an acceptable level.

The IRS defines live data as primarily unmodified, non-sanitized data extracted from taxpayer files that identifies specific individual or corporate taxpayers and includes taxpayer information or tax return information. State taxing agencies must ensure their Need and Use Justification statements include the use of FTI in a test environment.

Testing request approvals are valid up to three years from the date of the approval. If testing FTI data is no longer required before the approval expires, FTI must be removed from the test environment. If the agency needs to continue the use of FTI in pre-production testing activities past the approved timeframe, a new request for live data must be submitted to the Office of Safeguards.

Please see the Office of Safeguards website for additional information.

## 2.F Disposing of FTI – IRC § 6103(p)(4)(F)

### 2.F.1 General

Users of FTI are required by IRC § 6103(p)(4)(F) to take certain actions after using FTI to protect its confidentiality (see Exhibit 2, USC Title 26, IRC § 6103(p)(4) and Exhibit 5, Civil Damages for Unauthorized Disclosure). Agency officials and employees will either return the information (including any copies made) to the office from which it was originally obtained or destroy the FTI. Agencies will include a

TD_0000309

description of the procedures implemented in their annual SSR. See <u>Section 2.E, Reporting Requirements - 6103(p)(4)(E)</u> for additional reporting requirements.

## 2.F.2 Returning IRS Information to the Source

Agencies electing to return IRS information must use a receipt process and ensure that the confidentiality is protected at all times during transport (see <u>Section 2.B.4, FTI in Transit)</u>.

## 2.F.3 Destruction and Disposal

FTI furnished to the user and any paper material generated from it, such as copies, photo impressions, computer printouts, notes and work papers, must be destroyed by burning or shredding. If a method other than burning or shredding is used, that method must make the FTI unreadable or unusable.

The following guidelines must be observed when destroying paper FTI:

| Table 7 - FTI Destruction Methods | |
|---|---|
| **Burning** | The material must be burned in an incinerator that produces enough heat to burn the entire bundle, or the bundle must be separated to ensure that all pages are incinerated. |
| **Shredding** | To make reconstruction more difficult:<br><br>• Destroy paper using crosscut shredders that produce particles that are 1 mm x 5 mm (0.04 in. x 0.2 in.) in size (or smaller) or pulverize/disintegrate paper materials using disintegrator devices equipped with a 3/32 in. (2.4 mm) security screen.<br><br>If shredding deviates from the above specification, FTI must be safeguarded until it reaches the stage where it is rendered unreadable through additional means, such as burning or pulping. |

FTI furnished or stored in electronic format must be destroyed in the following manner:

- Electronic media (e.g., hard drives, tapes, CDs and flash media) must be destroyed according to guidance in <u>NIST Control MP-6, Media Sanitization</u>. Electronic media containing FTI must not be made available for reuse by other offices or released for destruction without first being subjected to electromagnetic erasing. If reuse is not intended, the tape must be destroyed by burning or shredding in accordance with applicable standards (see <u>Section 2.F.3.1, Media Sanitation).</u>

- Destroy microforms (microfilm, microfiche, or other reduced image photo negatives) by burning.

Whenever physical media leaves the physical or systemic control of the agency for maintenance, exchange or other servicing, any FTI on it must be destroyed by sanitizing according to guidance <u>in NIST Control MP-6, Media Sanitization</u> and <u>Section 2.F.3.1, Media Sanitization</u>. FTI must be purged from the media prior to allowing release.

TD_0000310

When using either method for destruction, every third piece of physical electronic media must be checked to ensure appropriate destruction of FTI.

> Hand tearing, recycling, or burying information in a landfill are unacceptable methods of disposal.

## 2.F.3.1 Media Sanitization

The type of sanitization performed depends on whether or not the media will be reused by the agency or leaving agency control.

If the media will be reused by the agency for the same purpose of storing FTI and will not be leaving organization control, then clearing is a sufficient method of sanitization. If the media will be reused and repurposed for a non-FTI function or will be leaving organization control (i.e., media being exchanged for warranty, cost rebate or other purposes and where the specific media will not be returned to the agency), then purging must be selected as the sanitization method. If the media will not be reused at all, then destruction is the method for media sanitization. The requirements are applicable for media used in "pre-production" or "test" environments. The technique for clearing, purging, and destroying media depends on the type of media being sanitized.

The following media sanitization requirements are required:

- Every third piece of media must be tested after sanitization has been completed.

- Media sanitization must be witnessed or verified by an agency employee.

- Media sanitization requirements are the same, regardless of where the information system media is located. However, the party responsible for each step of the sanitization process may differ.

See also MP-6. Media Sanitization. Additional media sanitization requirements are available on the Office of Safeguards website.

## 2.F.4 Other Precautions

FTI must never be disclosed to an agency's agents, contractors, or sub-contractors during disposal without legal authorization and destruction must be witnessed by an agency employee.

The Department of Justice, state tax agencies, and SSA may be exempted from the requirement of having agency personnel witness destruction by a contractor or sub-contractor.

If a contractor or sub-contractor is used:

- The contract must contain safeguard language in Exhibit 7a and 7b, Safeguarding Contract Language as appropriate to the contract to ensure the protection of FTI.

- Destruction of FTI must be certified by the contractor or sub-contractor when not witnessed by an agency employee.

- It is recommended that the agency periodically observe the process to ensure compliance with security of FTI until it reaches a non-disclosable state and that an approved destruction method is utilized.

If the agency has legal authority to disclose FTI to a disposal contractor or sub-contractor and chooses one that is National Association for Information Destruction (NAID) certified, the agency will not be

TD_0000311

required to complete an internal inspection every 18 months of that facility. However, the agency must annually validate and maintain the most recent copy of the NAID certification.

TD_0000312

## 3.0 CYBERSECURITY REQUIREMENTS

### 3.1 General

This section details the information technology (IT) security and privacy requirements agencies must meet to adequately protect FTI under their administrative control. While the Office of Safeguards has the responsibility to ensure the protection of FTI, it is the responsibility of the agency to implement effective security and privacy controls into its own IT infrastructure.

Section 4.0, NIST 800-53 Security and Privacy Controls, contains a catalog of technical and nontechnical security and privacy control requirements that must be implemented to protect electronic FTI. These requirements apply to the equipment, facilities and people that collect, process, store, display and disseminate information. This includes computers, hardware, software, and communications, as well as policies and procedures for their use. Selected controls are defined using guidelines specified in the latest version of NIST SP 800-53, Security and Privacy Controls for Information Systems and Organizations, and in IRS directives.

### 3.2 Assessment Process

The Office of Safeguards will assess agency compliance with the security and privacy requirements identified in this publication as part of the annual reporting and review processes. The IT assessment will include a review of the agency's FTI inventory. All IT systems and supporting components receiving, accessing, storing, processing, protecting, or transmitting FTI must be included in the agency's FTI inventory. This includes, for example: end user and administrator workstations, host operating system(s), contractor systems or laptops, web servers, database management systems, hypervisors, storage arrays and cloud environments. The FTI inventory must also include networking components used to protect or transmit FTI and access an FTI environment. This includes, for example: border/perimeter firewall, virtual private network (VPN), core routers, wireless networks, voice over IP systems and site to site endpoints established with external networks when FTI is shared and/or accessed outside of the LAN.

The scope of assessments includes any technology used to receive, process, store, access, protect and/or transmit FTI that is owned and managed by 1) the agency, 2) a state's consolidated IT organization, 3) the agency's contractors and sub-contractors (e.g., print vendors, collections agencies, application development contractors, network engineers at a state consolidated IT office, etc.) and 4) the agency's constituent counties included in an assessment.

Requirements are assessed using manual and automated assessment procedures as they relate to NIST SP 800-53 security and privacy controls as outlined in this publication. To ensure a standardized cybersecurity review process, Cybersecurity Reviewers will conduct assessments using Safeguards Computer Security Evaluation Matrices (SCSEM) to evaluate agency policies, procedures and IT systems that receive, process, store, access, protect and/or transmit FTI. The following techniques will be used to collect evidence required to complete SCSEM assessments:

TD_0000313

## Table 8 – Assessment Methodologies

| Testing Technique | Description |
|---|---|
| Automated Compliance Assessment Testing | Cybersecurity Reviewers will use compliance assessment software tools to validate the adequate protection of FTI on agency and contractor-owned equipment. These automated tools will be launched from either IRS-issued laptop computers or when applicable, agency software instances compatible with IRS testing software. Automated testing must be performed using IRS Safeguards-specific audit profiles that are available on the Office of Safeguards website. |
| Manual Security and Privacy Control Testing | Cybersecurity Reviewer manual test methods will include interviews and examination of documentation and onscreen configuration settings. |

Please see Section 1.6.2, During the Review for information on the review process.

## 3.3 Technology-Specific Requirements

### 3.3.1 Cloud Computing

To use a cloud computing model to receive, process, store, access, protect and/or transmit FTI, the agency must comply with all requirements in this publication. The following mandatory requirements are in effect for using cloud services to receive, process, store, access, protect and/or transmit FTI:

    a. FedRAMP Authorization: FTI may only be introduced to cloud environments that have been provided an authorization by the Joint Advisory Board (JAB) or a Federal Agency.

    b. Onshore Access: Agencies must leverage vendors and services where (i) all FTI physically resides in systems located within the United States; and (ii) all accesses, and support of the systems and services are performed from the United States, its possessions and territories.

    c. Physical Description: Agencies and their cloud providers must provide a complete listing of all data center addresses where FTI will be received, processed, stored, accessed, protected and/or transmitted in their 45-Day notification form.

    d. Data Encryption in Transit: FTI must be encrypted in transit within the cloud environment. All mechanisms used to encrypt FTI must be FIPS 140 certified and operate utilizing the latest FIPS 140 compliant module(s). This requirement must be included in the SLA.

    e. Data Encryption at Rest: FTI must be encrypted while at rest in the cloud using the latest FIPS 140 certified encryption mechanism. This requirement must be included in the SLA.

        Supplemental Guidance: If the agency is able to encrypt data in transit and at rest using the latest FIPS 140 certified solutions and maintain sole ownership of encryption keys, preventing logical access from the cloud service providers, Safeguards will consider this a logical barrier and will allow data types with restrictions (e.g., IRC § 6103 (l)(7) data) to move to a cloud environment. Using FIPS 140 certified encryption at rest exempts third-party contractors from some protection requirements such as training and background investigation requirements.

    f. 45-Day Notification: The agency must notify the IRS Office of Safeguards at least 45 days prior to transmitting FTI into a cloud environment, per Section 2.E.6, Notification Reporting Requirements.

TD_0000314

g.  Service Level Agreements and Contracts: The agency must establish security and privacy controls, based on IRS Publication 1075, for how FTI is received, processed, stored, accessed, protected and/or transmitted inside the cloud environment. Agencies must provide the requirements through a legally binding contract or SLA with their third-party cloud provider.

h.  Data Isolation: Software and/or services that receive, transmit, process or store FTI must be isolated within the cloud environment so that other cloud customers sharing physical or virtual space cannot access other customer data or applications.

i.  Risk Assessment: The agency must conduct an annual assessment of the security and privacy controls in place on all information systems used for receiving, processing, storing, accessing, protecting and/or transmitting FTI.

j.  Persistence of Data in Relieved Assets: Storage devices where FTI has resided must be securely sanitized and/or destroyed using methods acceptable by NIST. This requirement must be included in the SLA.

k.  Multifactor Authentication: Agencies must implement sufficient multifactor authentication when their cloud solutions are available from the internet (i.e., there is access to the cloud solution from outside of the agency's trusted network). If the cloud can only be accessed from an agency's internal network, multifactor authentication must be implemented by agency solution(s) when establishing a remote connection.

l.  Security Control Implementation: Customer defined security and privacy controls must be identified, documented and implemented, and must comply with Publication 1075 requirements.

Supplemental Guidance: If the agency or system has the ability to automatically provision or deprovision resources based on need, then it is considered a cloud environment. The service and deployment model used in a cloud computing environment will determine the responsibility for security and privacy controls implementation between the agency and the cloud provider for the protection of FTI that is stored or processed in the cloud environment. The Office of Safeguards tailors its assessment of an agency's cloud solution based on the cloud vendor's FedRAMP authorization boundary. For systems where cloud service providers maintain complete control over and have documented the security and privacy controls of those systems in its FedRAMP authorization framework, the Office of Safeguards will assess those controls using the Cloud SCSEM. For agency-managed systems that reside logically in the cloud environment, but remain outside of the FedRAMP authorization boundary, the Office of Safeguards will leverage its SCSEMs to assess the security posture of those systems. All testing will be performed using the methods described in Section 3.2, Table 8, Assessment Methodologies.

Additional cloud computing guidance is available on the Office of Safeguards website.

To determine if your agency is utilizing a cloud please use the following Cloud Decision Tree

Note:  https://www.irs.gov/pub/irs-utl/cloud-decision-tree.pdf

## 3.3.2 Email Communications

If the agency determines FTI is not permitted to be included in email, a written policy must be established and distributed to:

a.  Prohibit FTI in email transmissions; and

b.  Clearly state the actions that will be taken if FTI is inadvertently sent in email.

TD_0000315

If the agency determines FTI is permitted to be included in email, a written policy must be established and distributed to:

    a.   Prohibit FTI in email transmissions outside of the agency's internal network;

    b.   Ensure transmissions are sent only to authorized recipients; and

    c.   Require adequate labeling (e.g., email subject contains "FTI") and protection.

Additionally, the agency must ensure FTI is properly protected and secured when being transmitted via email. At a minimum:

    a.   Mail servers and clients must be securely configured. Underlying operating systems of on-premises mail servers must be hardened and included in the agency's FTI inventory. A 45-day cloud notification must be submitted for cloud-hosted mail solutions.

    b.   The network infrastructure must be securely configured to block unauthorized traffic, limit security vulnerabilities, and provide an additional security layer to an agency's mail servers and clients.

    c.   Audit logging must be implemented to track all sent and received emails containing FTI.

    d.   Email transmissions containing FTI must be encrypted using the latest FIPS 140 validated mechanism.

    e.   Malware protection must be implemented at one or more points within the email delivery process to protect against viruses, worms and other forms of malware.

### 3.3.3 Facsimile and Facsimile Devices

If the agency determines FTI is not permitted to be included in fax communications, a written policy must be established and distributed to:

    a.   Prohibit FTI in fax communications; and

    b.   Clearly state the actions that will be taken if FTI is inadvertently faxed.

If the agency determines FTI is permitted to be included in fax communications, a written policy must be established and distributed to ensure fax communications are transmitted to an authorized recipient and must adhere to the following requirements:

    a.   Have a trusted staff member at both the sending and receiving fax machines

    b.   Accurately maintain broadcast lists and other preset numbers of frequent recipients of FTI

    c.   Place fax machines in a secured area

    d.   Include a cover sheet on fax transmissions that explicitly provides guidance to the recipient, that includes:

        1.   A notification of the sensitivity of the data and the need for protection

        2.   A notice to unintended recipients to telephone the sender via collect call, if necessary, to report the disclosure and confirm destruction of the information

TD_0000316

Additionally, the agency must ensure facsimile devices used to transmit FTI are properly protected and secured. At a minimum:

a.   When applicable, encrypt information or be connected to a secure network

b.   Securely configure multifunction devices (MFD) used to receive or transmit fax communications

If digital fax servers are used, they should be hardened like other servers containing FTI.

### 3.3.4 Mobile Devices

To use FTI in a mobile device environment, the agency must implement a centralized mobile device management (MDM) solution to authenticate and manage the configuration of agency-owned and personally owned mobile devices prior to allowing access to the internal network. Further guidance of the configuration of mobile device solutions can be found on the Office of Safeguards website.

See also AC-19: Access Control for Mobile Devices.

### 3.3.5 Multifunction Devices (MFDs) and High-Volume Printers (HVPs)

If the agency determines FTI is not permitted to be printed, a written policy must be established and distributed to:

a.   Prohibit FTI from being printed

b.   Clearly state the actions that will be taken if FTI is inadvertently printed

If the agency determines FTI is permitted to be printed, a written policy must be established and distributed to:

a.   Prohibit printing FTI to printers outside of the agency's internal network

b.   Ensure printed FTI is sent only to authorized printers (e.g., multifunction devices, standalone printers, high-volume printers)

c.   Require adequate labeling and protection of all printed FTI

Additionally, the agency must ensure MFDs and HVPs are configured securely and included in the agency's FTI inventory.

### 3.3.6 Network Boundary and Infrastructure

Agencies must implement boundary protection devices throughout their system architecture, including routers, firewalls, switches, and intrusion detection systems to protect FTI and FTI systems. The agency's managed interfaces employing boundary protection must deny network traffic by default and allow network traffic by exception (e.g., deny all, permit by exception). Inbound services shall be prohibited unless a valid business case can establish their necessity. All remote access must be routed and monitored through a managed solution and accomplished using multifactor authentication per the requirements of NIST Control IA-2, Identification and Authentication (Organizational Users). FTI end users and privileged administrators may access the FTI environment over a secured wireless local area network (WLAN) infrastructure that complies with the Institute of Electrical and Electronic Engineers (IEEE) 802.11i wireless security standard and uses WPA2-certified equipment and software.

All networking devices responsible for protecting the FTI environment or used to access the FTI environment must be included in the agency's FTI inventory.

Additional network protection requirements are available on the <u>Office of Safeguards website</u>.

### 3.3.7 Virtual Desktop Infrastructure

A virtual desktop infrastructure (VDI) provides users access to enterprise resources, including a virtual desktop from locations both internal to and external to the agency's networks. In a VDI environment, a user can access FTI by connecting to a virtual workstation via a vendor-specific agent, connection client, or through an Internet browser from practically any mobile device with Internet access. Using VDI environments is the only manner in which agencies may authorize their users to leverage personally owned devices to access and/or manage information systems that receive, process, store, access, protect and/or transmit FTI.

See <u>AC-20, Use of External Systems</u> and the IRS <u>Office of Safeguards website</u> for more information.

### 3.3.8 Public-Facing Systems

FTI is considered nonpublic information and may never be posted or shared on an unauthenticated publicly accessible system (e.g., public website). Agencies may have business needs to provide FTI to its individual constituents, customers, clients and/or stakeholders using interactive applications. Examples of such systems include tax applications meant to provide account information to taxpayers or practitioners, state-based marketplace systems, child support online portals, etc. Publicly facing systems are typically internet-based applications but may also include interactive voice response technology.

Should an agency choose to provide FTI through a publicly facing system, it must implement the following requirements:

a.  The system architecture is configured as a multi-tier architecture with physically and/or logically separate systems that provide layered security of the FTI. Access to FTI in a back-end database must be brokered through multiple layers such that a public user cannot query the database directly.

b.  Each individual technology (e.g., application server, web server software, firewall) within the system architecture that receives, processes, stores, accesses, protects and/or transmits FTI is hardened in accordance with the requirements in this publication, the appropriate SCSEM and is subject to the agency's security testing capability.

c.  Access to FTI via the system must only occur when following strong identity proofing and authentication processes consistent with the latest guidance in NIST SP 800-63-3, *Digital Identity Guidelines* and the other documents in the 800-63 suite: NIST SP 800-63A, *Enrollment and Identity Proofing*, NIST SP 800-63B, *Authentication and Lifecycle Management and* NIST SP800-63C, *Federation and Assurances*. Consistent with choosing a moderate-level baseline for security controls, the Office of Safeguards has determined that public-facing systems must implement Identity Assurance Level (IAL) 2 to confirm the identity at the point an account is established and then must use Authentication Assurance Level (AAL) 2 to confirm the veracity of the account's use upon each user login. Agencies may use Federation Assurance Level (FAL) 2 should they leverage federated identities.

**IAL2**: There is evidence that supports the real-world existence of the claimed identity and the evidence verifies that the applicant is appropriately associated with this real-world identity. Either remote or physical identity proofing may be used depending on the evidence provided during the identity proofing step.

**AAL2**: There is a high confidence that the claimant controls authenticator(s) bound to the subscriber's account. Proof of possession and control of two distinct authentication factors is

TD_0000318

required through secure authentication protocols. Approved cryptographic techniques are required.

**FAL2**: There is a need to use federated identities to leverage sufficient encryption such that the agency is 1) the only party capable of decrypting the assertion from the third-party identity provider and 2) the identity provider cryptographically signs the assertion.

TD_0000319

## 4.0 NIST 800-53 SECURITY AND PRIVACY CONTROLS

Section 4.0, NIST SP 800-53 Control Requirements, provides the security and privacy control requirements that relate to protecting FTI. Selected controls are based on the moderate security baseline defined by NIST and have been tailored based on the integration of privacy control requirements and those controls required to protect the confidentiality of FTI.

Where applicable, the Office of Safeguards has included NIST control enhancements, IRS and Treasury defined requirements to protect the confidentiality of FTI. NIST control enhancements are identified with a CE designation. IRS and Treasury defined requirements are identified as *IRS-Defined*.

## 4.1 ACCESS CONTROL

### AC-1 Access Control Policy and Procedures

a. Develop, document, and disseminate to **designated agency personnel**:

   1. An agency or organization-level access control policy that:

      (a) Addresses purpose, scope, roles, responsibilities, management commitment, coordination among organizational entities and compliance; and

      (b) Is consistent with applicable laws, Executive Orders, directives, regulations, policies, standards, and guidelines; and

   2. Procedures to facilitate the implementation of the access control policy and associated access controls;

b. Designate an **agency official** to manage the access control policy and procedures

c. Review and update the current access control

   1. Policy **every three (3) years (or if there is a significant change)**; and

   2. Procedures **every three (3) years (or if there is a significant change)**.

### AC-2 Account Management

a. Define and document the types of accounts allowed and specifically prohibited for use within the system;

b. Assign account managers;

c. Require conditions for group and role membership;

d. Specify:

   1. Authorized users of the system;

   2. Group and role membership; and

   3. Access authorizations (i.e., privileges) and other attributes (as required) for each account.

TD_0000320

e.  Require approvals by **the system owner or designated representative** for requests to create accounts;

f.  Create, enable, modify, disable and remove accounts in accordance with **agency account management procedures prerequisites;**

g.  Monitor the use of accounts;

h.  Notify account managers and designated agency official within:

    1.  24 hours when accounts are no longer required;

    2.  24 hours when users are terminated or transferred; and

    3.  24 hours when system usage or need-to-know changes for an individual;

i.  Authorize access to the system based on:

    1.  A valid access authorization;

    2.  Intended system usage; and

    3.  Under the authority to re-disclosed FTI under the provisions of IRC § 6103;

j.  Review accounts for compliance with account management requirements **annually for user account and semi-annually for privileged accounts;**

k.  Establish and implement a process for changing shared or group account authenticators (if deployed) when individuals are removed from the group; and

l.  Align account management processes with personnel termination and transfer processes.

Control Enhancements:

*(CE-1) Automated System Account Management:* Support the management of system accounts using automated mechanisms.

<u>Supplemental Guidance</u>: Automated mechanisms can include internal system functions and email, telephonic, and text messaging notifications.

*(CE-2): Removal of Temporary and Emergency Accounts:* Automatically **disable and remove** temporary and emergency accounts after **two (2) business** days.

*(CE-3): Disable Accounts:* Disable accounts within 120 days when the accounts:

a.  Have expired;

b.  Are no longer associated to a user or individual;

c.  Are in violation of organizational policy; or

d.  Have been inactive for 120 days for non-privileged accounts and 60 days for privileged accounts