This publication is available free of charge from: https://doi.org/10.6028/NIST.SP.800-53r5

TABLE C-20:  SUPPLY CHAIN RISK MANAGEMENT FAMILY

| CONTROL NUMBER | CONTROL NAME<br>CONTROL ENHANCEMENT NAME | IMPLEMENTED BY | ASSURANCE |
|---|---|---|---|
| SR-1 | **Policy and Procedures** | O | √ |
| SR-2 | **Supply Chain Risk Management Plan** | O | √ |
| SR-2(1) | ESTABLISH SCRM TEAM | O | √ |
| SR-3 | **Supply Chain Controls and Processes** | O/S | √ |
| SR-3(1) | DIVERSE SUPPLY BASE | O | √ |
| SR-3(2) | LIMITATION OF HARM | O | √ |
| SR-3(3) | SUB-TIER FLOW DOWN | O | √ |
| SR-4 | **Provenance** | O | √ |
| SR-4(1) | IDENTITY | O | √ |
| SR-4(2) | TRACK AND TRACE | O | √ |
| SR-4(3) | VALIDATE AS GENUINE AND NOT ALTERED | O | √ |
| SR-4(4) | SUPPLY CHAIN INTEGRITY — PEDIGREE | O | √ |
| SR-5 | **Acquisition Strategies, Tools, and Methods** | O | √ |
| SR-5(1) | ADEQUATE SUPPLY | O | √ |
| SR-5(2) | ASSESSMENTS PRIOR TO SELECTION, ACCEPTANCE, MODIFICATION, OR UPDATE | O | √ |
| SR-6 | **Supplier Assessments and Reviews** | O | √ |
| SR-6(1) | TESTING AND ANALYSIS | O | √ |
| SR-7 | **Supply Chain Operations Security** | O | √ |
| SR-8 | **Notification Agreements** | O | √ |
| SR-9 | **Tamper Resistance and Detection** | O | √ |
| SR-9(1) | MULTIPLE STAGES OF SYSTEM DEVELOPMENT LIFE CYCLE | O | √ |
| SR-10 | **Inspection of Systems or Components** | O | √ |
| SR-11 | **Component Authenticity** | O | √ |
| SR-11(1) | ANTI-COUNTERFEIT TRAINING | O | √ |
| SR-11(2) | CONFIGURATION CONTROL FOR COMPONENT SERVICE AND REPAIR | O | √ |
| SR-11(3) | ANTI-COUNTERFEIT SCANNING | O | √ |
| SR-12 | **Component Disposal** | O | √ |



EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

THE DIRECTOR

January 3, 2017

M-17-12

MEMORANDUM FOR HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES

FROM:        Shaun Donovan
             Director

SUBJECT:     Preparing for and Responding to a Breach of Personally Identifiable Information

## I.    Introduction

This Memorandum sets forth the policy for Federal agencies to prepare for and respond to a breach of personally identifiable information (PII). It includes a framework for assessing and mitigating the risk of harm to individuals potentially affected by a breach, as well as guidance on whether and how to provide notification and services to those individuals. This Memorandum is intended to promote consistency in the way agencies prepare for and respond to a breach by requiring common standards and processes. While promoting consistency, this Memorandum also provides agencies with the flexibility to tailor their response to a breach based upon the specific facts and circumstances of each breach and the analysis of the risk of harm to potentially affected individuals.

This Memorandum reflects certain changes to laws, policies, and best practices that have emerged since the Office of Management and Budget (OMB) first required agencies to develop plans to respond to a breach. In particular, this Memorandum updates existing OMB breach notification policies and guidelines in accordance with the Federal Information Security Modernization Act of 2014 (FISMA)[1] and implements recommendations included in OMB Memorandum M-16-04.[2]

The primary audience for this Memorandum is the agency's Senior Agency Official for Privacy (SAOP) as well as other senior agency officials, managers, and staff who help evaluate the risk of harm to individuals potentially affected by a breach. In addition, sections of this Memorandum are relevant for an agency's Chief Information Officer (CIO), Senior Agency Information Security Officer[3] (e.g., Chief Information Security Officer (CISO)), and other information technology (IT) and cybersecurity staff who participate in breach response activities. This Memorandum does not provide a comprehensive account of all the statutory and policy

---

[1] Federal Information Security Modernization Act of 2014, Pub. L. 113-283, 128 Stat. 3073 (Dec. 18, 2014) (primarily codified at 44 U.S.C. chapter 35, subchapter II).
[2] OMB Memorandum M-16-04, *Cybersecurity Strategy and Implementation Plan (CSIP) for Federal Civilian Government* (Oct. 30, 2015), *available at* https://www.whitehouse.gov/sites/default/files/omb/memoranda/2016/m-16-04.pdf.
[3] *See* 44 U.S.C. § 3554(a)(3).

requirements associated with preparing for and responding to an incident or a breach. Moreover, this Memorandum does not set policy related to information security, protecting against malicious cyber activities, technical methods and controls to detect incidents, or activities related to the management of cyber incidents more generally such as threat mitigation, threat response, collecting evidence from computing resources, containment strategies, identifying adversaries, and maintaining operational continuity or intelligence activities. Agencies shall consult law, regulation, and policy, including OMB guidance, National Institute of Standards and Technology (NIST) standards and guidelines, and Department of Homeland Security (DHS) binding operational directives to understand all applicable requirements for responding to a breach. At a minimum, agencies should consider the government-wide incident and breach response resources included as Appendix IV to this Memorandum when responding to an incident or a breach.

The policies set forth in this Memorandum are the minimum requirements that agencies shall follow when responding to a breach. Agencies may impose stricter standards consistent with their missions, authorities, circumstances, and identified risks.

This Memorandum rescinds and replaces the following previously issued OMB memoranda:

- OMB M-07-16, *Safeguarding Against and Responding to the Breach of Personally Identifiable Information* (May 22, 2007);
- *Recommendations for Identity Theft Related Data Breach Notification* (Sept. 20, 2006);
- OMB M-06-19, *Reporting Incidents Involving Personally Identifiable Information and Incorporating the Cost for Security in Agency Information Technology Investments* (July 12, 2006); and
- OMB M-06-15, *Safeguarding Personally Identifiable Information* (May 22, 2006).

**Table of Contents**

I.      Introduction .................................................................................................................1

II.     The Evolving Threat and Risk Landscape.................................................................5

III.    Scope ..........................................................................................................................8

   A.    Agency Federal Information and Information Systems ..........................................8

   B.    Personally Identifiable Information.......................................................................8

   C.    Definition of a Breach ..........................................................................................9

IV.     Training and Awareness Campaigns .......................................................................10

V.      Preparing for a Breach.............................................................................................10

   A.    Privacy Act Routine Uses Required to Respond to a Breach..............................10

   B.    Contracts and Contractor Requirements for Breach Response ...........................11

   C.    Grants and Grantee Requirements for Breach Response.....................................13

   D.    Identifying Logistical and Technical Support to Respond to a Breach...............13

VI.     Reporting a Suspected or Confirmed Breach ..........................................................14

VII.    Breach Response Plan .............................................................................................15

   A.    Breach Response Team ........................................................................................16

   B.    Identifying Applicable Privacy Compliance Documentation..............................18

   C.    Information Sharing to Respond to a Breach ......................................................18

   D.    Reporting Requirements ......................................................................................19

      1.    Reporting to US-CERT...................................................................................19

      2.    Reporting to Law Enforcement, the Inspector General, and General Counsel..............19

      3.    Reporting to Congress....................................................................................20

   E.    Assessing the Risk of Harm to Individuals Potentially Affected by a Breach .................20

      1.    Risk of Harm to Individuals...........................................................................20

      2.    Factors for Assessing the Risk of Harm to Potentially Affected Individuals .................21

         a.    Nature and Sensitivity of PII .....................................................................21

         b.    Likelihood of Access and Use of PII.........................................................23

         c.    Type of Breach ...........................................................................................26

   F.    Mitigating the Risk of Harm to Individuals Potentially Affected by a Breach .................27

      1.    Countermeasures.............................................................................................28

      2.    Guidance .........................................................................................................28

      3.    Services ...........................................................................................................28

3

G.    Notifying Individuals Potentially Affected by a Breach ...................................................29

    1.    Source of the Notification...................................................................................30

    2.    Timeliness of the Notification ...........................................................................31

    3.    Contents of the Notification...............................................................................31

    4.    Method of Notification ......................................................................................32

    5.    Special Considerations ......................................................................................33

VIII.    Tracking and Documenting the Response to a Breach.......................................34

IX.    Lessons Learned ...........................................................................................................35

X.    Tabletop Exercises and Annual Plan Reviews ............................................................35

    A.    Tabletop Exercises .......................................................................................35

    B.    Annual Breach Response Plan Reviews..........................................................35

XI.    Annual FISMA Reports ...............................................................................................36

XII.    Implementation............................................................................................................36

Appendix I: Model Breach Reporting Template ....................................................................38

Appendix II: Examples of Guidance an Agency May Offer ....................................................42

Appendix III: Examples of Services an Agency May Provide.................................................44

Appendix IV: Government-wide Incident and Breach Response Resources ...............................45

Glossary ...............................................................................................................................47

4

## II.     The Evolving Threat and Risk Landscape

In today's information-driven economy, Federal agencies create, collect, use, process, store, maintain, disseminate, disclose, and dispose of unprecedented volumes of PII. Agencies increasingly depend on their ability to interact with the public through myriad digital services, leverage cutting-edge technologies to more efficiently collect and process information, and employ big data analytics to make informed decisions.[4] Beyond collecting greater volumes of PII, advancements in technology enable agencies to generate and maintain increasingly diverse and sensitive datasets about individuals. The PII may range from common data elements such as names, addresses, dates of birth, and places of employment, to identity documents, Social Security numbers (SSNs) or other government-issued identifiers, precise location information, medical history, and biometrics.

The Federal Government is expected to protect the information entrusted to it by the American people and one of the most important and pressing challenges for Federal agencies is protecting their IT systems, networks, and information from sophisticated and persistent cyber threats.[5] Today, Federal information and information systems are increasingly the targets of sophisticated attacks by actors who want to sell or trade stolen PII on criminal exchanges or use the information for other malicious purposes. Between Fiscal Years (FYs) 2013 and 2015, there was a 27 percent increase in the number of incidents reported by Federal agencies to the DHS United States Computer Emergency Readiness Team (US-CERT). These incidents have the potential to place sensitive information at risk and to pose serious threats to individuals and Federal operations and assets.[6]

Over the past decade, discussions about the risk of harm to individuals resulting from a breach have generally focused on financial- or credit-related identity theft such as using a stolen credit card number, opening a new bank account, or applying for credit in another person's name. Today, however, malicious actors use stolen PII, modern technology, and forged identity documents to:

- seek employment;[7]

---

[4] EXEC. OFFICE OF THE PRESIDENT, BIG DATA: SEIZING OPPORTUNITIES, PRESERVING VALUES (2014), *available at* https://www.whitehouse.gov/sites/default/files/docs/big_data_privacy_report_may_1_2014.pdf.
[5] *Strengthening the Federal Cybersecurity Workforce,* WHITE HOUSE, *available at* https://www.whitehouse.gov/blog/2016/07/12/strengthening-federal-cybersecurity-workforce (accessed Dec. 28, 2016).
[6] OFFICE OF MGMT. & BUDGET, ANNUAL REPORT TO CONGRESS: FEDERAL INFORMATION SECURITY MODERNIZATION ACT (2016), *available at* https://www.whitehouse.gov/sites/default/files/omb/assets/egov_docs/final_fy_2015_fisma_report_to_congress_03_18_2016.pdf.
[7] *See Document Fraud in Employment Authorization: How an E-Verify Requirement Can Help: Hearing Before the Subcomm. on Immigration Policy and Enforcement of the H. Comm. on the Judiciary,* 112th Cong. (2012) (statement of Waldemar Rodriguez, Deputy Assistant Director, Transnational Crime and Public Safety Division), *available at* https://www.ice.gov/doclib/news/library/speeches/12041&rodriguez.pdf ("Fraudulent documents are often used to obtain genuine government issued documents for employment purposes.").

TD_0001024

- travel across international borders;[8]
- obtain prescription drugs;[9]
- receive medical treatment;[10]
- claim benefits;[11]
- file false tax returns;[12] and
- aid in other criminal activities.[13]

Additionally, identity theft — the harm most often associated with a breach — remains a significant problem in the United States. Identity theft represented 16 percent (490,220) of the over 3 million complaints received by the Federal Trade Commission (FTC) in 2015.[14] In 2014, the Department of Justice reported that 17.6 million individuals, or 7 percent of all U.S. residents age 16 or older, were victims of one or more occurrences of identity theft.[15] Moreover, new types of identity theft are emerging, such as synthetic identity theft, which occurs when a malicious actor constructs a new identity using a composite of multiple individuals' legitimate information along with fabricated information.[16]

---

[8] *See Passport and Visa Fraud: A Quick Course*, U.S. DEP'T OF STATE, *available at* http://www.state.gov/m/ds/investigat/c10714.htm (accessed Sept. 15, 2016) ("In Fiscal Year 2012, DS investigated over 3,900 new cases of passport and visa fraud, and made more than 440 arrests.").

[9] *Medical Identity Theft*, FED. TRADE COMM'N, *available at* https://www.consumer.ftc.gov/articles/0171-medical-identity-theft (accessed Sept. 15, 2016) ("A thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care.").

[10] THE DEP'T OF HEALTH & HUMAN SERVIC. & THE DEP'T OF J. HEALTH CARE FRAUD & ABUSE CONTROL PROGRAM ANN. REP. FOR FISCAL YEAR 2014 (2015), *available at* https://oig.hhs.gov/publications/docs/hcfac/FY2014-hcfac.pdf (reporting a defendant used the victim's stolen identity to obtain health care benefits, Social Security disability benefits, and medical services including a liver transplant).

[11] *See* FED. TRADE COMM'N, THE PRESIDENT'S IDENTITY THEFT TASK FORCE, COMBATTING IDENTITY THEFT: A STRATEGIC PLAN (2007), [hereinafter IDENTITY THEFT TASK FORCE], *available at* https://www.ftc.gov/sites/default/files/documents/reports/combating-identity-theft-strategic-plan/strategicplan.pdf ("In addition, identity thieves sometimes use stolen personal information to obtain government, medical, or other benefits to which the criminal is not entitled.").

[12] U.S. GOV'T ACCOUNTABILITY OFFICE, GAO-16-508, IDENTITY THEFT AND TAX FRAUD: IRS NEEDS TO UPDATE ITS RISK ASSESSMENT FOR THE TAXPAYER PROTECTION PROGRAM (2016), *available at* http://www.gao.gov/assets/680/677406.pdf, ("Identity theft (IDT) refund fraud is an evolving and costly problem that causes hardship for legitimate taxpayers who are victims of the crime and demands an increasing amount of the Internal Revenue Service's (IRS) resources.").

[13] *IDENTITY THEFT: Governments Have Acted to Protect Personally Identifiable Information, but Vulnerabilities Remain: Testimony Before the Subcomm. on Info. Policy, Census and National Archives, H. R. Comm. on Oversight and Gov't Reform*, 111th Cong. (2009) (statement of Daniel Bertoni, Director, Education, Workforce, and Income Security Issues), *available at* http://www.gao.gov/assets/130/122769.pdf ("[I]dentity theft is not a 'stand alone' crime, but rather a component of one or more complex crimes, such as computer fraud, credit card fraud, or mail fraud.").

[14] FED. TRADE COMM'N, CONSUMER SENTINEL NETWORK DATA BOOK 2-3 (2015), *available at* https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-january-december-2015/160229csn-2015databook.pdf.

[15] U.S. DEPT. OF JUSTICE, VICTIMS OF IDENTITY THEFT (2014), *available at* http://www.bjs.gov/content/pub/pdf/vit14.pdf.

[16] FED. TRADE COMM'N, GUIDE FOR ASSISTING IDENTITY THEFT VICTIMS (2013), *available at* https://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf ("In some cases the thief does not steal the victim's entire identity, but rather uses only the victim's Social Security number, in combination with another person's name and birth date, to create a new, fictitious identity. As a result, the victim may experience

TD_0001025

As the ways in which criminals can exploit PII have evolved, so too have the ensuing types of harm to potentially affected individuals. Identity theft can result in embarrassment,[17] inconvenience, reputational harm,[18] emotional harm,[19] financial loss, unfairness, and, in rare cases, risk to personal safety. Individuals can be arrested and charged for crimes they did not commit,[20] professionals such as pharmacists and doctors can suffer irreparable reputational harm, and individuals can have benefits suspended or terminated.

The unprecedented volume of PII maintained by the Federal Government today, coupled with the rapidly evolving threat and risk landscape, necessitate that agencies take an aggressive approach to protecting Federal information resources. As a result, the Federal Government has invested significant resources and efforts to ensure that protecting information resources remains a top priority.[21] These efforts have included strengthening government-wide processes for developing, implementing, and institutionalizing best practices;[22] leveraging cutting-edge technologies;[23] and proposing a significant budget to start the overhaul of antiquated IT systems.[24]

At the same time that the Federal Government is investing in protecting Federal information resources, it is critically important that Federal agencies remain vigilant and prepare for and understand how to respond to a breach in today's threat landscape. An agency's

---

problems when the new identity tracks back to the victim's credit or tax records. Because this type of fraud may not be reflected on a consumer's credit report, it may not be discovered by the victim for many years.").

[17] National Institute of Standards and Technology, *Guidelines for Managing the Security of Mobile Devices in the Enterprise*, Special Publication 800-122 (Apr. 2010), *available at* http://csrc.nist.gov/publications/nistpubs/800-122/sp800-122.pdf ("Unauthorized access, use, or disclosure of PII can seriously harm both individuals, by contributing to identity theft, blackmail, or embarrassment.").

[18] *Identity Theft*, U.S. DEPT. OF JUSTICE, *available at* https://www.justice.gov/criminal-fraud/identity-theft/identity-theft-and-identity-fraud (accessed Sept. 15, 2016) ("In many cases, a victim's losses may include not only out-of-pocket financial losses, but substantial additional financial costs associated with trying to restore his reputation in the community.").

[19] *See* IDENTITY THEFT TASK FORCE, *supra* note 11 ("Beyond tangible forms of harm, statistics cannot adequately convey the emotional toll that identity theft often exacts on its victims, who frequently report feelings of violation, anger, anxiety, betrayal of trust, and even self-blame or hopelessness.").

[20] *Id.* ("In addition to losing time and money, some identity theft victims suffer the indignity of being mistaken for the criminal who stole their identities, and have been wrongfully arrested. In one case, a victim's driver's license was stolen, and the information from the license was used to open a fraudulent bank account and to write more than $10,000 in bad checks. The victim herself was arrested when local authorities thought she was the criminal. In addition to the resulting feelings of trauma, this type of harm is a particularly difficult one for an identity theft victim to resolve.").

[21] *See* OMB Memorandum M-16-04, *Cybersecurity Strategy and Implementation Plan (CSIP) for the Federal Civilian Government* (Oct. 30, 2015), *available at* https://www.whitehouse.gov/sites/default/files/omb/memoranda/2016/m-16-04.pdf.

[22] *See id.*

[23] *Laying the Foundation for a More Secure, Modern Government*, WHITE HOUSE, *available at* https://www.whitehouse.gov/blog/2016/10/26/laying-foundation-more-secure-modern-government (accessed Oct. 27, 2016).

[24] *See id.* (stating that the proposed IT Modernization Fund is intended to kick-start an overhaul of antiquated Federal Government IT systems and transition to new, more secure, efficient, and modern systems).

TD_0001026

effective detection and expeditious response to a breach is important to reduce the risk of harm to potentially affected individuals and to keep the public's trust in the ability of the Federal Government to safeguard PII.

## III.    Scope

### A.    Agency Federal Information and Information Systems

This Memorandum applies to Federal information and information systems[25] of an agency, as defined in FISMA.[26]  This Memorandum does not apply to national security systems.[27] However, agencies operating national security systems are encouraged to apply this Memorandum to those systems.

### B.    Personally Identifiable Information

The term PII refers to information that can be used to distinguish or trace an individual's identity, either alone or when combined with other information that is linked or linkable to a specific individual. Because there are many different types of information that can be used to distinguish or trace an individual's identity, the term PII is necessarily broad.  To determine whether information is PII, the agency shall perform an assessment of the specific risk that an individual can be identified using the information with other information that is linked or linkable to the individual.  In performing this assessment, it is important to recognize that information that is not PII can become PII whenever additional information becomes available — in any medium or from any source — that would make it possible to identify an individual.[28]

---

[25] OMB Circular No. A-130, *Managing Information as a Strategic Resource* (July 28, 2016), *available at* https://www.whitehouse.gov/sites/default/files/omb/assets/OMB/circulars/a130/a130revised.pdf.
[26] When an agency acts as a service provider, the ultimate responsibility for compliance with applicable requirements is not shifted (to the service provider). Agencies shall describe the responsibilities of service providers in relevant agreements with the service providers. OMB Circular No. A-130*, Managing Information as a Strategic Resource* (July 28, 2016), *available at* https://www.whitehouse.gov/sites/default/files/omb/assets/OMB/circulars/a130/a130revised.pdf; FISMA, 44 U.S.C. § 3554, provides the following:
"Federal agency responsibilities.
    (a) IN GENERAL.—The head of each agency shall—
        (1) be responsible for—
            (A) providing information security protections commensurate with the risk and magnitude of the harm resulting from unauthorized access, use, disclosure, disruption, modification, or destruction of—
                (i) information collected or maintained by or on behalf of the agency; and
                (ii) information systems used or operated by an agency or by a contractor of an agency or other organization on behalf of an agency; [. . .]."
[27] *See* 44 U.S.C. § 3552.
[28] *See* OMB Circular No. A-130, *Managing Information as a Strategic Resource* (July 28, 2016), *available at* https://www.whitehouse.gov/sites/default/files/omb/assets/OMB/circulars/a130/a130revised.pdf.

## C. Definition of a Breach

The guidance set forth in this Memorandum applies to a breach, which is a type of incident.[29]

---

**Definition of an Incident:**

*An occurrence that (1) actually or imminently jeopardizes, without lawful authority, the integrity, confidentiality, or availability of information or an information system; or (2) constitutes a violation or imminent threat of violation of law, security policies, security procedures, or acceptable use policies.*

---

**Definition of a Breach:**

*The loss of control, compromise, unauthorized disclosure, unauthorized acquisition, or any similar occurrence where (1) a person other than an authorized user accesses or potentially accesses personally identifiable information or (2) an authorized user accesses or potentially accesses personally identifiable information for an other than authorized purpose.*

---

A breach is not limited to an occurrence where a person other than an authorized user potentially accesses PII by means of a network intrusion, a targeted attack that exploits website vulnerabilities, or an attack executed through an email message or attachment. A breach may also include the loss or theft of physical documents that include PII and portable electronic storage media that store PII, the inadvertent disclosure of PII on a public website, or an oral disclosure of PII to a person who is not authorized to receive that information. It may also include an authorized user accessing PII for an other than authorized purpose. Often, an occurrence may be first identified as an incident, but later identified as a breach once it is determined that the incident involves PII, as is often the case with a lost or stolen laptop or electronic storage device.

Some common examples of a breach include:

- A laptop or portable storage device storing PII is lost or stolen;

- An email containing PII is inadvertently sent to the wrong person;

- A box of documents with PII is lost or stolen during shipping;

---

[29] *See* 44 U.S.C. § 3552(b)(2).

TD_0001028

- An unauthorized third party overhears agency employees discussing PII about an individual seeking employment or Federal benefits;

- A user with authorized access to PII sells it for personal gain or disseminates it to embarrass an individual;

- An IT system that maintains PII is accessed by a malicious actor; or

- PII that should not be widely disseminated is posted inadvertently on a public website.

## IV.     Training and Awareness Campaigns

Each agency shall develop training for all individuals with access to the agency's Federal information and information systems on how to identify and respond to a breach, including the internal process at the agency for reporting a breach.[30]  Such training is required prior to any individual accessing Federal information or information systems and should also be included in the agency's annual privacy and security awareness training.  This includes individuals with temporary access to Federal information or information systems, such as detailees, contractors, grantees, volunteers, and interns.  The training should emphasize the individual's obligation to report to the agency not only a confirmed breach, but also a suspected breach, involving information in any medium or form, including paper, oral, and electronic.

Agencies should not limit training on how to identify, report, and respond to a suspected or confirmed breach to annual security and privacy training.  Rather, agencies should consider annual security and privacy training as the baseline and consider specialized training for specific groups, such as supervisors and employees who have access to or responsibility for High Value Assets.[31]  Additionally, agencies should consider promoting awareness throughout the year, such as by sending periodic reminders through email and conducting awareness campaigns.

## V.     Preparing for a Breach

### A.  Privacy Act Routine Uses Required to Respond to a Breach

The SAOP has agency-wide responsibility and accountability for the agency's privacy program and is responsible for overseeing, coordinating, and facilitating the agency's privacy compliance efforts, including those related to the Privacy Act of 1974.[32]  The SAOP shall ensure that all agency Privacy Act system of records notices (SORNs) include routine uses for the disclosure of information necessary to respond to a breach either of the agency's PII or, as

---

[30] *See* 44 U.S.C. § 3554(b).
[31] *See* OMB Memorandum M-17-09, *Management of Federal High Value Assets* (Dec. 9, 2016), *available at* https://www.whitehouse.gov/sites/default/files/omb/memoranda/2017/m-17-09.pdf.
[32] *See* OMB Memorandum M-16-24, *Role and Designation of Senior Agency Officials for Privacy* (Sept. 15, 2016), *available at* https://www.whitehouse.gov/sites/default/files/omb/memoranda/2016/m_16_24_0.pdf.

10

appropriate, to assist another agency in its response to a breach.[33]  The SAOP should include the following routine use in each of the agency's SORNs to facilitate the agency's response to a breach of its own records:

> *To appropriate agencies, entities, and persons when (1) [the agency] suspects or has confirmed that there has been a breach of the system of records; (2) [the agency] has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, [the agency] (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with [the agency's] efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.*

Additionally, agencies may have records in their systems of records that could assist another agency in its efforts to respond to a breach.  For example, this may include information that would assist the other agency in locating or contacting individuals potentially affected by a breach, or information that is related to the other agency's programs or information.  To ensure that agencies are able to disclose records in their systems of records that may reasonably be needed by another agency in responding to a breach, the SAOP shall incorporate the following routine use into each of the agency's SORNs:

> *To another Federal agency or Federal entity, when [the agency] determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.*

### B.  Contracts and Contractor Requirements for Breach Response

Agencies shall ensure that contract terms necessary for the agency to respond to a breach are included in contracts when a contractor collects or maintains Federal information on behalf of the agency or uses or operates an information system on behalf of the agency.[34]  To the extent that a cooperative agreement[35] or other such instrument requires another organization or entity to perform such functions on behalf of the agency, the agency must similarly ensure that such cooperative agreements and instruments include the following terms.

---

[33] 5 U.S.C. § 552a(b)(3).  The publication of appropriate routine uses is required under the Privacy Act and thus would be necessary in order to disclose information for the purpose of executing an agency's obligations to effectively manage and report a breach under FISMA. Disclosures pursuant to a routine use are permissive, not mandatory. *See* Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948 (July 9, 1975), *available at* http://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation_guidelines.pdf.
[34] *See* 44 U.S.C. § 3553(a)(1)(A).
[35] *See* 31 U.S.C. § 6305.

11

Thus, at a minimum, contracts should include terms that:

- Require the contractor to cooperate with and exchange information with agency officials, as determined necessary by the agency, in order to effectively report and manage a suspected or confirmed breach.

- Require contractors and subcontractors (at any tier) to properly encrypt PII in accordance with OMB Circular A-130[36] and other applicable policies and to comply with any agency-specific policies for protecting PII;

- Require regular training for contractors and subcontractors (at any tier) on how to identify and report a breach;

- Require contractors and subcontractors (at any tier) to report a suspected or confirmed breach in any medium or form, including paper, oral, and electronic, as soon as possible and without unreasonable delay, consistent with the agency's incident management policy and US-CERT notification guidelines;

- Require contractors and subcontractors (at any tier) to maintain capabilities to determine what Federal information was or could have been accessed and by whom, construct a timeline of user activity, determine methods and techniques used to access Federal information, and identify the initial attack vector;

- Allow for an inspection, investigation, forensic analysis, and any other action necessary to ensure compliance with this Memorandum, the agency's breach response plan, and to assist with responding to a breach;

- Identify roles and responsibilities, in accordance with this Memorandum and the agency's breach response plan; and,

- Explain that a report of a breach shall not, by itself, be interpreted as evidence that the contractor or its subcontractor (at any tier) failed to provide adequate safeguards for PII.

The Chief Acquisition Officer (CAO), in coordination with the SAOP, should ensure that contract provisions to assist with the response to a breach are uniform and consistently included in agency contracts. Lack of uniformity in agency contracts is likely to complicate an agency's response to a breach and may create unnecessary implementation challenges that could have been avoided. In addition, the SAOP and CIO shall ensure that the agency's breach response plan and system security authorization documentation clearly define the roles and responsibilities of contractors that operate Federal information systems that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII on behalf of the agency. Any such roles and

---

[36] OMB Circular No. A-130, *Managing Information as a Strategic Resource* (July 28, 2016), *available at* https://www.whitehouse.gov/sites/default/files/omb/assets/OMB/circulars/a130/a130revised.pdf.

TD_0001031

responsibilities should be further defined in the contract so as to ensure contractor compliance with agency requirements.

An agency may also require the contractor to notify any individuals potentially affected by a breach, as explained in this Memorandum. In those instances, the agency may require the contractor to take countermeasures to mitigate the risk of harm to potentially affected individuals or to protect PII on behalf of the agency, including operating call centers and providing resources for potentially affected individuals.

The agency shall ensure that any required countermeasures are consistent with OMB Memorandum M-16-14, which, except under limited circumstances, requires the use of General Services Administration's (GSA) identity protection services (IPS) blanket purchase agreements (BPAs).[37] GSA has awarded government-wide Federal Supply Schedule BPAs for identity monitoring, credit monitoring, and other related services. These BPAs, the requirements for which were developed jointly with officials from the Office of Personnel Management, the Department of Defense, and other agencies, give Federal agencies access to a vetted pool of well-qualified contractors capable of providing the comprehensive services needed to mitigate the risk of harm to individuals potentially affected by a breach, as well as other personnel security matters.

The head of the agency is ultimately responsible for deciding whether to provide notification on behalf of the agency, offer guidance, and provide services to individuals potentially affected by a breach. When a contractor provides notification on behalf of an agency, such activities shall be in accordance with OMB guidance and the agency's breach response plan and shall be coordinated with and subject to prior written approval by the head of the agency.

### C. Grants and Grantee Requirements for Breach Response

When a grant recipient uses or operates a Federal information system or creates, collects, uses, processes, stores, maintains, disseminates, discloses, or disposes of PII within the scope of a Federal award, the agency shall ensure that the grant recipient has procedures in place to respond to a breach and include terms and conditions requiring the recipient to notify the Federal awarding agency in the event of a breach. The procedures should promote cooperation and the free exchange of information with Federal awarding agency officials, as needed, to properly escalate, refer, and respond to a breach.

### D. Identifying Logistical and Technical Support to Respond to a Breach

Logistical and technical support are often essential to effectively and efficiently respond to a breach. For example, logistical support may be required to prepare and deliver notification and to staff call centers, and technical support is often required to confirm which PII in a given IT system or on a particular device was exposed, accessed, or removed. When a breach

---

[37] OMB Memorandum M-16-14, *Category Management Policy 16-2: Providing Comprehensive Identity Protection Services, Identity Monitoring, and Data Breach Response* (July 1, 2016), *available at* https://www.whitehouse.gov/sites/default/files/omb/memoranda/2016/m-16-14.pdf.

potentially affects a large number of individuals or implicates multiple IT systems, this can be a resource-intensive and challenging undertaking and can require hundreds of hours to complete.

When identifying logistical support to respond to a breach, the SAOP should identify the logistical capabilities that exist within the agency and which offices are responsible for maintaining those capabilities. The SAOP should understand the ability of the agency to support any resource-intensive activities that may be necessary to provide notification, offer guidance, and provide services to individuals potentially affected by a breach, such as call center services, updating websites, and providing translation services.

When identifying technical support to respond to a breach, the CIO shall identify technical remediation and forensic analysis capabilities that exist within the agency and which offices are responsible for maintaining those capabilities. Depending on the size, missions, and structure of each agency, the CIO may find the necessary expertise and technical support within the agency. As a part of this process, however, the CIO may identify gaps in the agency's technical capabilities and therefore should communicate with the CAO and other agency officials on the need to enter into contracts or to explore other options for ensuring that certain functions are immediately available during a time-sensitive response. Additionally, while the SAOP might not lead the technical team, the SAOP should understand the ability of the agency to gather, analyze, and preserve the evidence necessary to support an investigation and identify and assess the risk of harm to potentially affected individuals.

The CIO, in coordination with the SAOP, should also consider whether other Federal agencies can support the agency in the event of a breach. Agencies may request technical assistance from US-CERT. In addition, GSA may have BPAs and other guidance for agencies to procure technical services to assist with responding to a breach.[38]

## VI.    Reporting a Suspected or Confirmed Breach

Each agency shall require all individuals with access to the agency's Federal information and information systems to report a suspected or confirmed breach to the agency as soon as possible and without unreasonable delay, consistent with the agency's incident management policy and procedures, NIST standards and guidelines, as well as US-CERT notification guidelines.[39] This includes a breach in any medium or form, including paper, oral, and electronic.

Individuals with access to the agency's Federal information and information systems shall not wait for confirmation that a breach has in fact occurred before reporting to the agency, as such a delay may undermine the agency's ability to apply preventative and remedial measures to protect the PII or reduce the risk of harm to potentially affected individuals. In addition, any delay may reduce the likelihood that the agency can recover a lost or stolen device or physical document. For example, if an agency employee loses a mobile device that contains PII, the

---

[38] GSA Highly Adaptive Cybersecurity Services (HACS) Special Item Number (SIN) includes 132-45B: Incident Response services help organizations impacted by a cybersecurity compromise determine the extent of the incident, remove the adversary from their IT systems, and restore their networks to a more secure state.
[39] *See* 44 U.S.C § 3556(b)(7).

14

employee shall report the loss of the device even if the employee believes he or she may be able to locate the device in the future. This is critical because the agency may have the ability to wipe information remotely from the device, thereby reducing or eliminating the risk that the PII may be accessed without authorization or used for malicious purposes. In other cases, the immediate involvement of law enforcement may lead to the retrieval of lost or stolen equipment and PII.

Individuals with access to the agency's Federal information and information systems shall also be able to report a suspected or confirmed breach quickly and easily while in the office, teleworking, or from any remote location, including during domestic and international travel. In order to make it easy for individuals to report a suspected or confirmed breach quickly, agencies should consider establishing a memorable email address and/or toll free telephone number dedicated to incident response (*e.g.*, breach@[agency].gov).

Agencies shall establish rules of behavior, including consequences for violating such rules, for employees, contractors, and others who have access to Federal information or information systems.[40] Agencies shall include in the rules of behavior the consequences for failing to comply with the reporting requirements in this Memorandum. In addition, agencies shall ensure that employees and contractors have read and agreed to abide by the rules of behavior for the Federal information and information systems for which they require access prior to being granted access.

The SAOP should also provide guidance to individuals on the limited circumstances under which the requirement to report a suspected or confirmed breach to the agency is not triggered. In such circumstances, the risk of harm to the potentially affected individuals must be negligible and the failure to report the occurrences must not violate law or regulation. The SAOP shall also conduct an assessment of the risk of harm for any such circumstances prior to issuing any guidance or training (see Section VII.E. of this Memorandum). The agency shall document any such circumstances that the agency finds do not require reporting a suspected or confirmed breach in the agency's incident management policy.

## VII.    Breach Response Plan

In order to effectively and efficiently respond to a breach, the SAOP shall develop and implement a breach response plan. A breach response plan is critically important to ensuring that an agency is prepared to respond to a breach. A breach response plan is a formal document that includes the agency's policies and procedures for reporting, investigating, and managing a breach, and it should be specifically tailored to the agency and address the agency's missions, size, structure, and functions. An agency's breach response plan shall be part of an agency's formal incident response plan.[41]

At a minimum, a breach response plan shall include the following elements:

---

[40] *See* 5 U.S.C. § 552a(e)(9); *see also* 44 U.S.C. § 3554(b)(4).
[41] *See* National Institute of Standards and Technology, *Computer Security Incident Handling Guide*, Special Publication 800-61 Rev. 2, (Aug. 2012), *available at* http://nvlpubs.nist.gov/nistpubs/SpecialPublications/NIST.SP.800-61r2.pdf.

- ***Breach Response Team***, including the specific agency officials who comprise the breach response team, as well as their respective roles and responsibilities when responding to a breach.

- ***Identifying Applicable Privacy Compliance Documentation***, including the responsibility to identify any applicable Privacy Act SORNs, privacy impact assessments (PIAs), and privacy notices that may apply to the potentially compromised information.

- ***Information Sharing to Respond to a Breach***, including the potential information sharing within the agency, between agencies, or with a non-Federal entity that may arise following a breach to reconcile or eliminate duplicate records, to identify potentially affected individuals, or to obtain contact information to notify potentially affected individuals.

- ***Reporting Requirements***, including the specific agency officials responsible for reporting a breach to US-CERT, law enforcement and oversight entities, and Congress, when appropriate.

- ***Assessing the Risk of Harm to Individuals Potentially Affected by a Breach***, including the factors the agency shall consider when assessing the risk of harm to potentially affected individuals.

- ***Mitigating the Risk of Harm to Individuals Potentially Affected by a Breach***, including whether the agency should provide guidance to potentially affected individuals, purchase identity theft services for potentially affected individuals, and offer methods for acquiring such services.

- ***Notifying Individuals Potentially Affected by a Breach***, including if, when, and how to provide notification to potentially affected individuals and other relevant entities.

With SAOP approval, a sub-agency or component may develop and implement a sub-agency- or component-specific breach response plan. In those instances, the plan shall be approved by the SAOP and be consistent with the requirements of the agency's breach response plan, OMB guidance, and applicable law. The SAOP shall ensure that sub-agency or component breach response plans are reviewed no less than annually, updated if necessary, and that the date of the review is properly documented in the plan. Sub-agency and component plans shall clearly detail the relationship between the sub-agency or component plan and the agency-level breach response plan.

## A. Breach Response Team

An agency's breach response team is the group of agency officials designated by the head of the agency that may be convened to respond to a breach. Once convened, the SAOP is responsible for leading the breach response team. The criteria for convening the breach response team shall be documented in the agency's breach response plan. The criteria for when to

16

convene the breach response team may be different for each agency according to its individual missions, specific authorities, circumstances, and risks.

When the SAOP is made aware of a report of a suspected or confirmed breach (See section VIII of this Memorandum), the SAOP shall first determine whether the agency's response can be conducted at the staff level or whether the agency must convene the breach response team. If the response can be conducted at the staff level, the agency may choose not to convene the breach response team. At a minimum, the breach response team shall always be convened when a breach constitutes a major incident, as defined in OMB guidance (see Section VII.D.3. of this Memorandum).

When designating agency officials to serve on the agency's breach response team, the head of the agency shall consider the skills and expertise that may be required to effectively and efficiently respond to a breach. The breach response team is responsible for advising the head of the agency on effectively and efficiently responding to a breach.

At a minimum, the agency's breach response team shall include:

- The SAOP;
- The CIO or the CIO's designee;
- The Senior Agency Information Security Officer;[42]
- Legal counsel;
- Legislative affairs official; and
- Communications official.

In order to effectively and efficiently respond to a breach, the breach response team may need to consult with the following personnel:

- Budget and procurement personnel who can provide expertise when a breach involves contractors or an acquisition, or who may help procure services such as computer forensics, cybersecurity experts, services, or call center support;

- Human resources personnel who may assist when employee misconduct results in a breach or when an employee is suspected of intentionally causing a breach or violating agency policy;

- Law enforcement personnel who may assist when a breach involves the violation or suspected violation of law or when a breach is the subject of a law enforcement investigation;

- Physical security personnel who may investigate a breach involving unauthorized physical access to a facility or when additional information regarding physical access to a facility is required; and,

---

[42] *See* 44 U.S.C. § 3554(a)(3).

- Other agency personnel who may be necessary according to specific agency missions, authorities, circumstances, and identified risks.

## B. Identifying Applicable Privacy Compliance Documentation

When responding to a breach, the SAOP shall identify all the applicable privacy compliance documentation. The compliance documentation will help identify what information was potentially compromised, the population of individuals potentially affected, as well as the purpose for which the information had originally been collected, the permitted uses and disclosures of the information, and other information that may be useful when developing the agency's response.

When reviewing privacy compliance documentation in response to a breach, the agency's breach response plan shall, at a minimum, require the SAOP to consider the following:

- Which SORNs, PIAs, and privacy notices apply to the potentially compromised information?

- If PII maintained as part of a system of records needs to be disclosed as part of the breach response, is the disclosure permissible under the Privacy Act and how will the agency account for the disclosure?

- If additional PII is necessary to contact or verify the identity of individuals potentially affected by the breach, does that information require new or revised SORNs or PIAs?

- Are the relevant SORNs, PIAs, and privacy notices accurate and up-to-date?

## C. Information Sharing to Respond to a Breach

When responding to a breach, agencies often need additional information to reconcile or eliminate duplicate records, identify potentially affected individuals, or obtain contact information in order to provide notification. Accordingly, the agency may need to combine information maintained in different information systems within the agency, share information between agencies, or share information with a non-Federal entity.

When contemplating the potential information sharing that may be required in response to a breach, the agency's breach response plan shall, at a minimum, require the SAOP to consider the following:

- Would the information sharing be consistent with existing or require new data use agreements, information exchange agreements, or memoranda of understanding?

- How will PII be transmitted and protected when in transmission, for how long will it be retained, and may it be shared with third parties?

TD_0001037

### D. Reporting Requirements

#### 1. Reporting to US-CERT

OMB Memorandum M-16-03 requires each Federal agency to designate a principal security operation center (SOC) to be accountable for all incident response activities for the respective agency.[43]  The agency's breach response plan shall identify the agency's principal SOC.  The SAOP shall ensure that employees and contractors staffing the agency's principal SOC are properly trained to identify a breach.

The principal SOC shall notify US-CERT of a breach consistent with the agency's incident management policy and US-CERT notification guidelines.[44]  In addition, agencies shall assess whether a breach constitutes a major incident, as defined by OMB guidance, and report that designation to US-CERT as soon as the agency has a reasonable basis to conclude that such a breach has occurred.[45]  US-CERT may help the agency assess the circumstances that contributed to the breach and take corrective actions on technical remediation within its scope.  However, it is ultimately the agency's responsibility to respond to the breach, including full logistical and technical remediation and forensic analysis.

#### 2. Reporting to Law Enforcement, the Inspector General, and General Counsel

An agency's breach response plan shall identify the agency officials responsible for notifying and consulting with law enforcement and Offices of Inspectors General and General Counsel on behalf of the agency.[46]  When responding to a breach, the SAOP shall coordinate with the identified agency officials to ensure that law enforcement and Offices of Inspectors General and General Counsel receive timely notification when notification is appropriate.  The SAOP shall also consider and advise appropriate officials on whether the specific circumstances and type of PII potentially compromised by a breach require the involvement of other oversight entities.

When a breach warrants a report to law enforcement, the agency shall ensure that the report occurs promptly, even if the breach is unconfirmed or the circumstances are still unclear.  Prompt referral to law enforcement can prevent PII from being further compromised and in some cases can reduce the risk of harm to potentially affected individuals.

---

[43] OMB Memorandum M-16-03, *Fiscal Year 2015-2016 Guidance on Federal Information Security and Privacy Management Requirements* (Oct. 30, 2015), *available at* https://www.whitehouse.gov/sites/default/files/omb/memoranda/2016/m-16-03.pdf.
[44] *US-CERT Federal Incident Notification Guidelines*, UNITED STATES COMPUTER EMERGENCY READINESS TEAM, available at https://www.us-cert.gov/sites/default/files/publications/Federal_Incident_Notification_Guidelines.pdf (accessed Nov. 18, 2016).
[45] *See* OMB Memorandum M-17-05, *Fiscal Year 2016 – 2017 Guidance on Federal Information Security and Privacy Management Requirements* (Nov. 4, 2016), *available at* https://www.whitehouse.gov/sites/default/files/omb/memoranda/2017/m-17-05.pdf.
[46] 44 U.S.C. § 3554(b)(7)(c).

TD_0001038

### 3. Reporting to Congress

Agencies shall notify the appropriate Congressional Committees pursuant to FISMA[47] no later than seven days after the date on which there is a reasonable basis to conclude that a breach that constitutes a "major incident" has occurred.[48]  In addition, agencies shall also supplement their initial seven day notification to Congress with a report no later than 30 days after the agency discovers the breach.[49]  This notification shall be consistent with FISMA and OMB guidance on reporting a breach to Congress.[50]  The breach response plan shall identify the agency officials responsible for notifying Congress.

Certain information and information systems may be subject to other reporting requirements.  The SAOP shall ensure that appropriate subject matter experts who can identify those requirements are part of the breach response team.

### E. Assessing the Risk of Harm to Individuals Potentially Affected by a Breach

In order to properly escalate and tailor breach response activities, the SAOP, in coordination with the breach response team when applicable, shall conduct and document an assessment of the risk of harm to individuals potentially affected by a breach.  Agencies shall include in their respective breach response plans the requirement to conduct and document an assessment of the risk of harm to potentially affected individuals, including the factors the agency shall consider when assessing the risk.

### 1. Risk of Harm to Individuals

When assessing the risk of harm to individuals potentially affected by a breach, the SAOP shall consider the potential harms that could result from the loss or compromise of PII.  Such harms may include the effect of a breach of confidentiality or fiduciary responsibility, the potential for blackmail, the disclosure of private facts, mental pain and emotional distress, financial harm, the disclosure of contact information for victims of abuse, the potential for secondary uses of the information which could result in fear or uncertainty, or the unwarranted exposure leading to humiliation or loss of self-esteem.

---

[47] The committees are the Committee on Oversight and Government Reform, Committee on Homeland Security, and the Committee on Science, Space, and Technology, of the House of Representatives; the Committee on Homeland Security and Governmental Affairs and the Committee on Commerce, Science, and Transportation of the Senate; the appropriate authorization and appropriations committees of Congress; the Committee on the Judiciary of the Senate; and the Committee on the Judiciary of the House of Representatives. *See* 44 U.S.C. § 3553, note ("Breaches"); 44 U.S.C. § 3554 (b)(7)(C)(III)(aa)-(bb).
[48] 44 U.S.C. § 3554 (b)(7)(C)(III)(aa)-(bb).
[49] 44 U.S.C. § 3553, note ("Breaches").
[50] Detailed guidance on meeting FISMA's Congressional reporting requirements for a breach is provided in OMB Memorandum M-17-05, *Fiscal Year 2016 – 2017 Guidance on Federal Information Security and Privacy Management Requirements* (Nov. 4, 2016), *available at* https://www.whitehouse.gov/sites/default/files/omb/memoranda/2017/m-17-05.pdf.  OMB updates this guidance annually and the most current guidance can be located at https://www.whitehouse.gov/omb/memoranda_default.

TD_0001039

Additionally, the Privacy Act requires agencies to protect against any anticipated threats or hazards to the security or integrity of records which could result in "substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained."[51]

Agencies must consider any and all risks relevant to the breach, which may include risks to the agency, agency information systems, agency programs and operations, the Federal Government, or national security. Those additional risks may properly influence an agency's overall response to a breach and the steps the agency should take to notify individuals.

## 2. Factors for Assessing the Risk of Harm to Potentially Affected Individuals

At a minimum, the SAOP shall consider the following factors when assessing the risk of harm to individuals potentially affected by a breach:

- ***Nature and sensitivity of the PII potentially compromised by the Breach***, including the potential harms that an individual could experience from the compromise of that type of PII;

- ***Likelihood of Access and Use of PII***, including whether the PII was properly encrypted or rendered partially or completely inaccessible by other means; and

- ***Type of Breach***, including the circumstances of the breach, as well as the actors involved and their intent.

### a. Nature and Sensitivity of PII

At a minimum, the SAOP shall consider the following when assessing the nature and sensitivity of PII potentially compromised by a breach:

- o ***Data Elements***, including an analysis of the sensitivity of each individual data element as well as the sensitivity of all the data elements together;

- o ***Context***, including the purpose for which the PII was collected, maintained, and used;

- o ***Private Information***, including the extent to which the PII, in a given context, may reveal particularly private information about an individual;

- o ***Vulnerable Populations***, including the extent to which the PII identifies or disproportionately impacts a particularly vulnerable population; and

- o ***Permanence***, including the continued relevance and utility of the PII over time and whether it is easily replaced or substituted.

---

[51] *See* 5 U.S.C. § 522a(e)(10).

### i.  Data Elements

When assessing the nature and sensitivity of PII potentially compromised by a breach, the SAOP shall evaluate the sensitivity of each individual data element.  Certain data elements are particularly sensitive and may alone present an increased risk of harm to the individual.  These data elements include, but are not limited to, SSNs, passport numbers, driver's license numbers, state identification numbers, bank account numbers, passwords, and biometric identifiers.

In addition to evaluating the sensitivity of each data element, the SAOP shall also evaluate the sensitivity of all the data elements together.  Sometimes multiple pieces of information, none of which are particularly sensitive in isolation and would not present a risk of harm to the individual, may present an increased risk of harm to the individual when combined.  For example, date of birth, place of birth, address, and gender may not be particularly sensitive alone, but when combined would pose a greater risk of harm to the individual.

When assessing the nature and sensitivity of potentially compromised PII, the SAOP should not limit the scope of the evaluation to the sensitivity of the information involved in the breach.  The SAOP should also consider information that may have been potentially compromised in a previous breach, as well as any other available information that when combined with the information may result in an increased risk of harm to the individuals.

### ii.  Context

When assessing the nature and sensitivity of PII potentially compromised by a breach, the SAOP shall consider the context.  The context includes the purpose for which the PII was collected, maintained, and used.  This assessment is critical because the same information in different contexts can reveal additional information about the impacted individuals.  For example, a list of personnel and their associated office phone numbers may not be particularly sensitive.  However, the same list of personnel and their associated office phone numbers on a list of personnel who hold sensitive positions within a law enforcement agency is sensitive information.  Similarly, the same list of names and associated phone numbers on a list of individuals along with information about a medical condition is also sensitive.

### iii.  Private Information

When assessing the nature and sensitivity of PII potentially compromised by a breach, the SAOP shall evaluate the extent to which the PII constitutes information that an individual would generally keep private.  Such "private information" may not present a risk of identity theft or other criminal conduct, but may pose a risk of harm such as embarrassment, blackmail, or emotional distress.  Examples of private information include: derogatory personnel or criminal information, personal debt and finances, medical conditions, treatment for mental health, pregnancy related information including pregnancy termination, sexual history or sexual orientation, adoption or surrogacy information, and immigration status.  Passwords are another example of private information that if involved in a breach may present a risk of harm.

### iv. Vulnerable Populations

When assessing the nature and sensitivity of PII potentially compromised by a breach, the SAOP shall consider whether the potentially affected individuals are from a particularly vulnerable population that may be at greater risk of harm than the general population. Potentially vulnerable populations include, but are not limited to: children; active duty military; government officials in sensitive positions; senior citizens; individuals with disabilities; confidential informants; witnesses; certain populations of immigrants; non-English speakers; and victims of certain crimes such as identity theft, child abuse, trafficking, domestic violence, or stalking. This is not a comprehensive list and other populations may also be considered vulnerable.

### v. Permanence

When assessing the nature and sensitivity of PII potentially compromised by a breach, the SAOP shall consider the permanence of the PII. This includes an assessment of the relevancy and utility of the information over time and whether the information will permanently identify an individual. Some information loses its relevancy or utility as it ages, while other information is likely to apply to an individual throughout his or her life. For example, an individual's health insurance ID number can be replaced. However, information about an individual's health, such as family health history or chronic illness, may remain relevant for an individual's entire life, as well as the lives of his or her family members.

Special consideration is warranted when a breach involves biometric information including fingerprints, hand geometry, retina or iris scans, and DNA or other genetic information. When considering the nature and sensitivity of biometric information, an agency should factor in the known current uses of the information and consider that, with future advancements in science and technology, biometric information could have many additional uses not yet contemplated.

### b. Likelihood of Access and Use of PII

The agency shall consider the following when assessing the likelihood of access and use of PII potentially compromised by a breach:

- o **Security Safeguards**, including whether the PII was properly encrypted or rendered partially or completely inaccessible by other means;

- o **Format and Media**, including whether the format of the PII may make it difficult and resource-intensive to use;

- o **Duration of Exposure**, including how long the PII was exposed; and

TD_0001042

    o   ***Evidence of Misuse***, including any evidence confirming that the PII is being misused or that it was never accessed.

### i. Security Safeguards

When assessing the likelihood of access and use of PII potentially compromised by a breach, the CIO shall evaluate the implementation and effectiveness of security safeguards protecting the information. Security safeguards may significantly reduce the risk of harm to potentially affected individuals, even when the PII is particularly sensitive. The CIO shall consider each of the employed security safeguards on a case-by-case basis and take into account whether the type, value, or sensitivity of the information might motivate a malicious actor to put time and resources towards overcoming those safeguards.

---

**Encryption:**

*When evaluating the likelihood of access and use of encrypted PII potentially compromised by a breach, the CIO, in coordination with the SAOP and CISO, shall confirm:*
- *whether encryption was in effect;*
- *the degree of encryption;*
- *at which level the encryption was applied; and,*
- *whether decryption keys were controlled, managed, and used.*

*There are many ways to encrypt information and different technologies provide varying degrees of protection. Encryption can be applied at the:*
- *device-level;*
- *file-level; and,*
- *to information at rest or in transmission.*

*The protection provided by encryption may be undermined if keys, credentials, or authenticators used to access encrypted information are compromised.*

*Federal agencies are required to use a NIST-validated encryption method.[52] The SAOP shall consult with the agency's CISO and other technical experts, as appropriate, to ascertain whether information was properly encrypted. For additional information, refer to National Institute of Standards and Technology Federal Information Processing Standards Publication 140, Security Requirements for Cryptographic Modules at: http://csrc.nist.gov/publications.*

---

[52] OMB Circular A-130 requires agencies to encrypt all FIPS 199 moderate-impact and high-impact information at rest and in transit, unless encrypting such information is technically infeasible or would demonstrably affect the ability of agencies to carry out their respective missions, functions, or operations; and the risk of not encrypting is accepted by the authorizing official and approved by the agency CIO, in consultation with the SAOP (as appropriate).

The PII potentially compromised by a breach also may be rendered partially or completely inaccessible by security safeguards other than encryption. This may include redaction, data masking, and remote wiping[53] of a connected device. Physical security safeguards such as a locked case securing documents or devices may also reduce the likelihood of access and use of PII. For example, PII in a briefcase left temporarily unattended is less likely to have been accessed and used if the briefcase was securely locked.

### ii. Format and Media

When assessing the likelihood of access and use of PII potentially compromised by a breach, the SAOP, in coordination with the CIO, shall evaluate whether the format or media of the PII may make its use difficult and resource-intensive. The format of the PII or the media on which it is maintained may make the PII more susceptible to a crime of opportunity. For example, a spreadsheet on a portable USB flash drive does not require any special skill or knowledge to access and an unauthorized user could quickly search for specific data fields such as a nine-digit SSN. Conversely, a magnetic tape cartridge used for backing up servers that is one of a set of 30 and contains a large volume of unstructured PII would require special expertise and equipment to access and use the information.

The SAOP shall also consider the type, value, or sensitivity of the PII. If the PII is particularly valuable, it may increase the likelihood of access and use regardless of its format or media. This is because the value of the information may outweigh the difficulty and resources needed to access the information.

### iii. Duration of Exposure

When assessing the likelihood of access and use of PII potentially compromised by a breach, the SAOP shall consider the amount of time that the PII was exposed. PII that was exposed for an extended period of time is more likely to have been accessed or used by unauthorized users. For example, a briefcase containing PII left in a hotel lobby for an hour before being recovered is less likely to have been accessed by an unauthorized user than if it had been left for three days prior to being recovered. Similarly, PII inadvertently published to a public Internet page for an hour before being removed is less likely to have been accessed by an unauthorized user than if it had been available on the public Internet page for a week.

### iv. Evidence of Misuse

When assessing the likelihood of access and use of PII potentially compromised by a breach, the SAOP shall determine whether there is evidence of misuse. In some situations, an agency may be able to determine with a high degree of certainty that PII has been or is being misused. Evidence may indicate that identity theft has already occurred as a result of a specific breach or that the PII is appearing in unauthorized external contexts. For example, law

---

[53] *See* National Institute of Standards and Technology, *Guidelines for Managing the Security of Mobile Devices in the Enterprise*, Special Publication 800-124 Rev. 1 (June 2013), *available at* http://nvlpubs.nist.gov/nistpubs/SpecialPublications/NIST.SP.800-124r1.pdf.

enforcement may confirm that PII is appearing on a website dedicated to the sale of stolen PII and may determine that there is strong evidence of misuse. Conversely, agencies may determine with reasonable certainty that the PII will not be misused. For example, a forensic analysis of a recovered device may reveal that the PII was not accessed.

### c. Type of Breach

The SAOP shall consider the following when determining the type of breach:

- o *Intent*, including whether the PII was compromised intentionally, unintentionally, or whether the intent is unknown; and,

- o *Recipient*, including whether the PII was disclosed to a known or unknown recipient, and the trustworthiness of a known recipient.

### i.    Intent

When assessing the risk of harm to individuals potentially affected by a breach, the SAOP shall consider whether the breach was intentional, unintentional, or whether the intent is unknown. If a breach was intentional, the SAOP should determine whether the information was the target, or whether the target was the device itself, like a mobile phone or laptop, and whether the compromise of the information was incidental. Examples of an intentional breach include the theft of a device storing PII from a car or office, the unauthorized intrusion into a Government network that maintains PII, or an employee looking up a celebrity's file in an agency database out of curiosity. While the risk of harm to individuals may often be lower when the information was not the target, the potential for a significant risk of harm to individuals may still exist.

The risk of harm to individuals may be lower when a breach is unintentional, either by user error or sometimes by failure to comply with agency policy. However, that is not always the case, and breach response officials must conduct a case-by-case assessment to determine the risk of harm. Examples of an unintentional breach include an employee accidentally emailing another individual's PII to the wrong email address or a contractor storing personnel files in a shared folder that the contractor thought was access-controlled but that actually was not.

In many circumstances, the SAOP may be unable to determine whether a breach was intentional or unintentional. In these instances, the SAOP shall consider the possibility that the breach was intentional. For example, if an employee realizes her mobile device is missing, it may be that it was stolen intentionally or that she dropped it accidentally. Similarly, a shipment of files containing PII that never arrives at its destination may have been unintentionally lost or may have been targeted by a malicious actor and intercepted.

In circumstances where an agency has notified law enforcement of a breach (see Section VII.D. of this Memorandum), the SAOP shall consider any relevant information provided to the agency by law enforcement that may help inform whether the breach was intentional or unintentional.

TD_0001045

### ii.   Recipient

In some cases, the agency may know who received the compromised PII. This information, when available, may help the SAOP assess the likely risk of harm to individuals. For example, a breach is often reported by a recipient who receives information he or she should not have. This may be an indication of a low risk of harm to individuals, particularly when the recipient is another employee within the agency's IT network. One common type of low-risk breach is when an employee sends an individual's PII via email to another employee at the same agency who does not need to know that PII for his or her duties. In many such cases it may be reasonable to conclude that there is a negligible risk of harm. Even where PII is inadvertently sent to an individual outside an agency, the risk of harm may be minimal if it is confirmed that, for example, the individual is known to the agency, acknowledged receipt of the PII, did not forward or otherwise use the PII and the PII was properly, completely, and permanently deleted by the recipient. This is a breach that must be reported within the agency and appropriately responded to, but the risk of harm is low enough that the response often does not necessitate that the agency notify or provide services to the individual whose PII was compromised.

Conversely, if analysis reveals that the PII is under control of a group or person who is either untrustworthy or known to exploit compromised information, the risk of harm to the individual is considerably higher. In many cases an agency will not have any information indicating that compromised or lost PII was ever received or acquired by anyone. In such circumstances, the SAOP shall rely upon the other factors set forth in this section.

## F. Mitigating the Risk of Harm to Individuals Potentially Affected by a Breach

Once the SAOP assesses the risk of harm to individuals potentially affected by a breach, the SAOP, in coordination with the breach response team when applicable, shall consider how best to mitigate the identified risks. The SAOP, in coordination with the breach response team when applicable, is responsible for advising the head of the agency on whether to take countermeasures, offer guidance, or provide services to individuals potentially affected by a breach. Because each breach is fact-specific, the decision of whether or not to offer guidance or provide services to individuals will depend on the circumstances of the breach. When deciding whether or not to offer guidance or provide services to potentially affected individuals, agencies shall consider the assessed risk of harm conducted in accordance with Section VII.E. of this Memorandum. The assessed risk of harm to individuals shall inform the agency's decision of whether or not to offer guidance or provide services. The head of the agency is ultimately responsible for making final decisions regarding whether to offer guidance or provide services to individuals potentially affected by a breach.

The SAOP shall determine and document the actions that the agency will take to mitigate the risk of harm. These actions can include:

- *Countermeasures*, such as expiring potentially compromised passwords or placing an alert in a database containing potentially compromised PII;

TD_0001046

- ***Guidance,*** such as how individuals may obtain a free credit report and whether they should consider closing certain accounts; and,

- ***Services,*** such as identity and/or credit monitoring.

## 1. Countermeasures

When determining how to mitigate the risk of harm to individuals potentially affected by a breach, the agency shall consider what countermeasures it can take. Countermeasures may not always prevent harm to potentially affected individuals but may limit or reduce the risk of harm. For example, if credit card information is potentially compromised, the agency may proactively notify appropriate banks so they can monitor the associated accounts or reissue the lines of credit using new accounts. If the information is only useful in a specific context, there may be context-specific countermeasures that can be taken to limit the risk of harm. For example, if information related to disability beneficiaries is potentially compromised, the agency may consider monitoring beneficiary databases for unusual activity that may signal fraudulent activity, such as a sudden request for a change of address. Similarly, if individuals' passwords are potentially compromised in a breach, the agency should require those users to change their passwords.

## 2. Guidance

When determining how to mitigate the risk of harm to individuals potentially affected by a breach, the SAOP shall consider what guidance to provide to those individuals about how they may mitigate their own risk of harm. There are several steps individuals can take to mitigate their own risk of harm resulting from a breach. These steps include setting up fraud alerts or credit freezes, changing or closing accounts, and taking advantage of services made available by the FTC. The guidance will necessarily depend on the potentially compromised information. Agencies should use the information available at www.IdentityTheft.gov/databreach as the baseline when drafting guidance. The FTC provides specific guidance for when a breach involves SSNs, payment card information, bank accounts, driver's licenses, children's information, and account credentials. Additionally, the agency may advise individuals to change passwords and encourage the use of multi-factor authentication for account access. When choosing guidance to mitigate the risk of harm, the SAOP should consider the guidance options included in Appendix II of this Memorandum.

## 3. Services

When determining how to mitigate the risk of harm to individuals potentially affected by a breach, the SAOP shall determine if there are services the agency can provide. Many of the services currently available in today's marketplace only mitigate risks of financial identity theft, and even the most comprehensive services are unable to mitigate the potential harms resulting from the evolving threat and risk landscape (see Section II of this Memorandum). When selecting services, the SAOP shall identify those services that best mitigate the specific risk of harm resulting from the particular breach. If the SAOP determines that no service currently available mitigates a specific risk of harm, the agency may choose not to provide services to potentially affected individuals. Choosing not to provide services is a decision separate from the

28

decision to provide notification and there may be circumstances where potentially affected individuals are notified but not provided services. This Memorandum does not set a specific threshold for providing services to individuals.

When choosing identity monitoring, credit monitoring, and other related services to mitigate the risk of harm to individuals potentially affected by a breach, the SAOP shall take advantage of GSA BPAs in accordance with OMB Memorandum M-16-14.[54] In addition, the SAOP should consider the services included in Appendix III of this memorandum as well as additional services available in the future.

### G. Notifying Individuals Potentially Affected by a Breach

The SAOP, in coordination with the breach response team when applicable, is responsible for advising the head of the agency on whether and when to notify individuals potentially affected by a breach. Because each breach is fact-specific, the decision of whether or not to notify individuals will depend on the circumstances of the breach. When deciding whether or not to notify individuals potentially affected by a breach, agencies shall consider the assessed risk of harm conducted in accordance with Section VII.E. of this Memorandum. The assessed risk of harm to individuals shall inform the agency's decision of whether or not to notify individuals. The head of the agency is ultimately responsible for making a final decision regarding whether to provide notification.

The agency's decision to offer guidance, take countermeasures, or provide services to individuals potentially affected by a breach may necessarily require the agency to notify those individuals both of the breach and of those steps taken to mitigate any identified risks. For example, if an agency decides to provide identity and credit monitoring to individuals potentially affected by a particular breach, the agency would need to notify those individuals so that they can use the service. However, agencies may also choose to notify individuals even when the agency is not providing a specific service. For example, an agency may notify individuals that their passwords were potentially compromised by a breach and offer guidance but no services.

Agencies should balance the need for transparency with concerns about over-notifying individuals. Notification may not always be helpful to the potentially affected individuals, and agencies should exercise care to evaluate the benefit of providing notice to individuals or notifying the public (see Section VII.G.4. of this Memorandum).

Certain Federal information systems may be subject to other breach notification requirements, such as those subject to the Health Insurance Portability and Accountability Act.[55] The SAOP shall ensure that appropriate subject matter experts who can identify those requirements are part of the breach response team. In circumstances where multiple notification requirements apply to a breach, agencies should provide a single notice to potentially affected

---

[54] *See id.* For details on the Identity Protection Services BPA, including task order instructions, offered services, authorized users, order dollar value limitations, the inclusion of agency specific terms, and ordering periods, visit www.gsa.gov/ipsbpa.
[55] 45 C.F.R. §§ 164.400-414.

TD_0001048

individuals that complies with the guidance in this Memorandum as well as any other notification requirements.

When the head of the agency determines that it is necessary to notify individuals potentially affected by a breach, the SAOP, in coordination with the breach response team when applicable, shall consider the following:

- ***Source of the Notification***, including whom from the agency shall notify individuals potentially affected by a breach;

- ***Timeliness of the Notification***, including the requirement to provide notification as expeditiously as practicable, without unreasonable delay;

- ***Contents of the Notification***, including whether to draft different notifications for different populations potentially affected by a breach;

- ***Method of Notification***, including the best method for providing notification depending on the circumstances of a breach; and,

- ***Special Considerations***, including tailoring the notification for vulnerable populations, whether to provide notification to individuals other than those whose PII was potentially compromised, and how to notify individuals who are visually or hearing impaired.

## 1. Source of the Notification

When notification is necessary, helpful, or otherwise required, the head of the agency or a senior-level individual he or she may designate in writing, shall be the source of the notification to potentially affected individuals. When a breach involves a well-known component or bureau of an agency, such as the Food and Drug Administration or the Transportation Security Administration, the component or bureau head should issue the notification. Notification from this level demonstrates that the breach has the attention of the head of the agency.

In instances where a small number of individuals potentially are affected by a breach, and when the SAOP determines that there is a low risk of harm to the potentially affected individuals, the SAOP may issue the notification.

When PII created, collected, used, processed, stored, maintained, disseminated, disclosed, or disposed of by a contractor, or by a subcontractor (at any tier), on behalf of an agency is involved in a breach, the agency may require the contractor to notify any potentially affected individuals (see Section V.B. of this Memorandum).

30

## 2.  Timeliness of the Notification

Agencies shall notify individuals potentially affected by a breach as expeditiously as practicable and without unreasonable delay.[56]  As a practical matter, agencies should avoid providing multiple notifications for a single breach and should balance the timeliness of the notification with the need to gather and confirm information about a breach and assess the risk of harm to potentially affected individuals.  If a technical issue contributed to the breach, the head of the agency may also consider whether the issue has been corrected or resolved prior to providing notification.

The Attorney General, the head of an element of the Intelligence Community, or the Secretary of DHS may delay notifying individuals potentially affected by a breach if the notification would disrupt a law enforcement investigation, endanger national security, or hamper security remediation actions.[57]  Any instruction to delay notification shall be sent to the head of the agency.

## 3.  Contents of the Notification

Agencies shall provide individuals potentially affected by a breach with notification that is concise and uses plain language.  Agencies should avoid using generic or repetitive language and should tailor the notification to the specific breach.  In some instances, it may be necessary for the agency to draft different notifications for different populations affected by the same breach.

At a minimum, notifications shall include the following:

- A brief description of what happened, including the date(s) of the breach and of its discovery;

- To the extent possible, a description of the types of PII compromised by the breach (*e.g.*, full name, SSN, date of birth, home address, account number, and disability code);

- A statement of whether the information was encrypted or protected by other means, when it is determined that disclosing such information would be beneficial to potentially affected individuals and would not compromise the security of the information system;

---

[56] 44 U.S.C. § 3553, note ("Breaches").

[57] 44 U.S.C. § 3553, note ("National Security; Law Enforcement; Remediation.—The Attorney General, the head of an element of the intelligence community (as such term is defined under section 3(4) of the National Security Act of 1947 (50 U.S.C. § 3003(4)), or the Secretary of Homeland Security may delay the notice to affected individuals…if the notice would disrupt a law enforcement investigation, endanger national security, or hamper security remediation actions.").

TD_0001050

- Guidance to potentially affected individuals on how they can mitigate their own risk of harm, countermeasures the agency is taking, and services the agency is providing to potentially affected individuals, if any;

- Steps the agency is taking, if any, to investigate the breach, to mitigate losses, and to protect against a future breach; and,

- Whom potentially affected individuals should contact at the agency for more information, including a telephone number (preferably toll-free), email address, and postal address.

Agencies may want to provide additional details in a Frequently Asked Questions (FAQ) format on the agency website or via an enclosure. The FAQs on an agency website may be beneficial because they can be easily updated, contain links to more information, provide more tailored information than the formal notification, and can be easily translated into multiple languages. For a breach that potentially affects a large number of individuals, or as otherwise appropriate, agencies should establish toll-free call centers staffed by trained personnel to handle inquiries from the potentially affected individuals. If agencies have knowledge that the potentially affected individuals are not English speaking, or require translation services, notification should also be provided in the appropriate languages to the extent feasible. Agencies may seek additional guidance on how to draft a notification from the FTC, which is a leader in providing clear and understandable notifications to consumers, as well as from communication experts.

### 4. Method of Notification

The SAOP shall select the method for providing notification. The best method for providing notification will potentially depend on the number of individuals affected, the available contact information for the potentially affected individuals, and the urgency with which the individuals need to receive the notification.

- **First-Class Mail**: First-class mail notification to the last known mailing address of the individual in agency records should be the primary means by which notification is provided. Where the agency has reason to believe the address is no longer current, the agency should take reasonable steps to update the address by consulting with other agencies such as the U.S. Postal Service. The notification should be sent separately from any other mailing so that it is conspicuous to the recipient. If the agency that experienced the breach uses another agency to facilitate mailing, care should be taken to ensure that the agency that suffered the loss is identified as the sender, and not the facilitating agency. The front of the envelope should be labeled to alert the recipient to the importance of its contents and should be marked with the name of the agency as the sender to reduce the likelihood the recipient thinks it is advertising mail. Agencies should anticipate mail returned as undeliverable and should have procedures in place for how to provide a secondary notification.

32

- **Telephone**: Telephone notification may be appropriate in those cases where urgency may dictate immediate and personalized notification or when a small number of individuals are affected. Telephone notification, however, should be contemporaneous with written notification by first-class mail.

- **Email**: Email notification, especially to or from a non-government email address, is not recommended due to the high risk of malicious email attacks that are often launched when attackers hear about a breach. Emails often do not reach individuals because they are automatically routed to spam or junk mail folders. Individuals who receive notifications via email are often uncertain of the legitimacy of the email and will not open the notification. While email is not recommended as the primary form of notification, in limited circumstances it may appropriate. For example, if the individuals potentially affected by a breach are internal to the agency, it may be appropriate for an agency to use an official email address to notify a small number of employees, contractors, detailees, or interns via their official email addresses. A ".gov" or ".mil" email may be used to notify an individual on his or her ".gov" or ".mil" email that his or her PII was potentially compromised by a breach.

- **Substitute Notification**: Agencies may provide substitute notification if the agency does not have sufficient contact information to provide notification, and also as supplemental notification for any breach to keep potentially affected individuals informed. This type of notice may also be beneficial if the agency needs to provide an immediate or preliminary notification in the wake of a high-profile breach when notification is particularly time-sensitive. A substitute notification should consist of a conspicuous posting of the notification on the home page of the agency's website and/or notification to major print and broadcast media, including major media in areas where the potentially affected individuals reside. Notification to media should include a toll-free phone number and/or an email address that an individual can use to learn whether or not his or her personal information is affected by the breach. In instances where there is an ongoing investigation and the facts and circumstances of a breach are evolving, agencies should consider whether it is appropriate to establish an ongoing communication method for interested individuals to automatically receive updates. Depending on the individuals potentially affected and the specific circumstance of a breach, it may be necessary for agencies to provide notifications in more than one language.

## 5. Special Considerations

When a breach potentially affects a vulnerable population, the agency may need to provide a different type of notification to that population, or provide a notification when it would not otherwise be necessary.

There may be instances when an agency provides notification to individuals other than those whose PII was potentially compromised. For example, when the individual whose information was potentially compromised is a child, the agency may provide notification to the

33

child's legal guardian(s). Special care may be required to determine the appropriate recipient in these cases.

Agencies should give special consideration to providing notice to individuals who are visually or hearing impaired consistent with Section 508 of the Rehabilitation Act of 1973, as amended.[58] Accommodations may include establishing a Telecommunications Device for the Deaf (TDD) or posting a large-type notice on the agency website.

## VIII.   Tracking and Documenting the Response to a Breach

The agency's principal SOC shall develop and maintain a formal process to track and document each breach reported to the agency. The process shall ensure that the SAOP is made aware in a timely manner of each report of a suspected or confirmed breach. The SAOP is responsible for keeping the principal SOC informed of the status of an ongoing response and for determining when the response to a breach has concluded. When the SAOP determines that the agency's response to a breach has concluded, the SAOP shall report that status to the principal SOC along with the outcome of the response.

As a part of the agency's formal process for internally tracking and documenting a response to a breach, each agency shall create a standard internal reporting template that reflects its missions and functions. Appendix I of this Memorandum provides a model breach reporting template that includes examples of data elements and information types that can be used to distinguish or trace an individual's identity, either alone or when combined with other information that is linked or linkable to a specific individual. In creating a standard internal reporting template, the agency should include as many of the data elements and information types as are relevant to its missions and functions.

The process for internally tracking each reported breach shall allow the agency to track and monitor the following:

- The total number of breaches reported over a given period of time;

- The status for each reported breach, including whether the agency's response to a breach is ongoing or has concluded;

- The number of individuals potentially affected by each reported breach;

- The types of information potentially compromised by each reported breach (see Appendix I of this Memorandum);

- Whether the agency, after assessing the risk of harm, provided notification to the individuals potentially affected by a breach;

---

[58] 29 U.S.C. § 794(d). For additional information about accessibility aids, refer to www.section508.gov.

- Whether the agency, after considering how best to mitigate the identified risks, provided services to the individuals potentially affected by a breach; and,

- Whether a breach was reported to US-CERT and/or Congress.

## IX.    Lessons Learned

At the end of each quarter of the fiscal year, the agency's principal SOC shall provide a report to the SAOP detailing the status of each breach reported to the principal SOC during the fiscal year. The SAOP shall review the report and validate that the report accurately reflects the status of each reported breach.

When an agency reports a breach to Congress, the SAOP shall convene the agency's breach response team to formally review the agency's response to the breach and identify any lessons learned. The agency shall use lessons learned to implement specific, preventative actions. Agencies shall document any changes to its breach response plan, policies, training, or other documentation resulting from lessons learned. If there are specific challenges preventing agencies from instituting remedial measures, agencies shall also document those challenges.

## X.    Tabletop Exercises and Annual Plan Reviews

### A.    Tabletop Exercises

The SAOP shall periodically, but not less than annually, convene the agency's breach response team to hold a tabletop exercise. The purpose of the tabletop exercise is to test the breach response plan and to help ensure that members of the team are familiar with the plan and understand their specific roles. Testing breach response plans is an essential part of risk management and breach response preparation. Tabletop exercises should be used to practice a coordinated response to a breach, to further refine and validate the breach response plan, and to identify potential weaknesses in an agency's response capabilities.

### B.    Annual Breach Response Plan Reviews

At the end of each fiscal year, the SAOP shall review the reports from the principal SOC, described in Section VIII of this Memorandum, detailing the status of each breach reported during the fiscal year and consider whether the agency should undertake any of the following actions:

- Update its breach response plan;
- Develop and implement new policies to protect the agency's PII holdings;
- Revise existing policies to protect the agency's PII holdings;
- Reinforce or improve training and awareness;
- Modify information sharing arrangements; and,
- Develop or revise documentation such as SORNs, PIAs, or privacy policies.

35

As part of the review, the SAOP shall review the agency's breach response plan to confirm that the plan is current, accurate, and reflects any changes in law, guidance, standards, agency policy, procedures, staffing, and/or technology. The SAOP is responsible for documenting the date of the most recent review and submitting the updated version of the plan to OMB when requested as part of annual FISMA reporting.

## XI.    Annual FISMA Reports

FISMA requires agencies to submit an annual report on the adequacy and effectiveness of information security policies, procedures, and practices, to include a description of major information security incidents and major incidents that involved a breach.[59] In addition to those reporting requirements, agencies are required to include in their annual report descriptions of the agency's implementation of the requirements in this Memorandum.[60] At a minimum, agencies shall:

- Confirm that the agency satisfied all requirements in this Memorandum for training and awareness with respect to breach reporting, or if not, explain why the agency did not satisfy those requirements in the Memorandum and what steps the agency will take to satisfy those requirements in the next reporting period;

- Submit the number of breaches reported within the agency during the reporting period, the number of breaches reported by the principal SOC to US-CERT, the number of breaches reported by the agency to Congress, as well as the number of potentially affected individuals;

- Submit the agency's breach response plan and certify that the plan has been reviewed and updated over the past 12 months, as appropriate;

- Submit the names and titles of the individuals on the agency's breach response team and identify those individuals who were removed from the team or added to the team over the past 12 months; and,

- Confirm that the members of the breach response team participated in at least one tabletop exercise during the reporting period or, if not, explain why and what steps the agency will take to ensure that the breach response team participates in a tabletop exercise during the next reporting period.

## XII.    Implementation

Within 180 days of the issuance of this Memorandum, the SAOP of each agency shall update the agency's breach response plan and provide it to OMB at privacy-oira@omb.eop.gov.[61]

---

[59] 44 U.S.C. § 3554(c)(1)(A).
[60] 44 U.S.C. § 3554(c).
[61] Following the initial submission, in accordance with FISMA and Section XI of this Memorandum, agencies shall submit their breach response plans as part of their annual report to OMB (see 44 U.S.C. § 3554).

36

The Federal Acquisition Regulatory (FAR) Council, in coordination with OMB, shall work promptly to create appropriate contract clauses and regulatory coverage to address contractor requirements for breach response in the FAR, consistent with the requirements outlined in this Memorandum. In developing regulatory amendments, the FAR Council shall consult with the Federal Privacy Council and the Federal CIO Council, as appropriate.

DHS, in coordination with OMB and the National Security Council, will update the US-CERT Incident Notification Guidelines and associated reporting forms following publication of this Memorandum to provide agencies detailed and standardized procedures for reporting a breach.

If agencies have specific questions about this Memorandum, they may contact OMB at privacy-oira@omb.eop.gov. This Memorandum does not create any right or benefit, substantive or procedural, enforceable at law or in equity against the United States, or any of its departments, agencies, entities, officers, employees, or agents, or any other person.

TD_0001056

**Appendix I: Model Breach Reporting Template**

     As a part of the agency's formal process for tracking and documenting a response to a breach (see Section VIII of this Memorandum), each agency is required to create a standard reporting template that reflects its missions and functions. This appendix provides a model internal breach reporting template that identifies examples of types of information that an agency should consider collecting when a suspected or confirmed breach is reported to the agency. In creating a reporting template, the agency should identify the types of information created, collected, used, processed, stored, maintained, disseminated, disclosed, or disposed of by the agency. This appendix includes examples of data elements and information types that can be used to distinguish or trace an individual's identity, either alone or when combined with other information that is linked or linkable to a specific individual. In creating a standard internal reporting template, the agency should include as many of these data elements and information types as are relevant to its missions and functions. When responding to a breach, the SAOP shall perform an assessment of the specific risk that an individual can be identified using the potentially compromised information.

| Breach Reported by: | | | | | |
|---|---|---|---|---|---|
| **Name:** | <<First>> | <<Last>> | **Supervisor:** | <<First>> | <<Last>> |
| **Email:** | << Official Email >> | | **Email:** | << Official Email >> | |
| **Phone:** | << Official Phone >> | | **Phone:** | << Official Phone >> | |
| **Agency/Sub-agency/Component:** | | | << Agency/Sub-agency/Component >> | | |

| Summary of the Breach: | |
|---|---|
| Do not include PII or classified information. Summarize the facts or circumstances of the theft, loss, or compromise of PII as currently known, including:<br>  a.  A description of the parties involved in the breach;<br>  b.  The physical or electronic storage location of the information at risk;<br>  c.  If steps were immediately taken to contain the breach;<br>  d.  Whether the breach is an isolated occurrence or a systematic problem;<br>  e.  Who conducted the investigations of the breach, if applicable; and<br>  f.  Any other pertinent information. | |
| **Date and Time of the Breach:** | < XX/XX/XXXX, Approximate Time >> |
| **Location of Breach:** | << Street Address >> |

| Type of Breach: | | | | |
|---|---|---|---|---|
| **Lost Information or Equipment** | Y/N | **Unauthorized Disclosure** (e.g., email sent to incorrect address, oral or written disclosure to unauthorized person, disclosing documents publicly with sensitive information not redacted) | Y/N | |
| **Stolen Information or Equipment** | Y/N | **Unauthorized Access** (e.g., an unauthorized employee or contractor accesses information or an information system) | Y/N | |
| **Unauthorized Equipment** (e.g., using an unauthorized personal device, server, or email account to store PII) | Y/N | **Unauthorized Use** (e.g., employee with agency-authorized access to database or file accesses and uses information for personal purposes rather than for official purposes) | Y/N | |

TD_0001057

| Storage Medium: | | | |
|---|---|---|---|
| Laptop or Tablet | Y/N | Smartphone | Y/N |
| Desktop | Y/N | Paper files | Y/N |
| External Storage Device | Y/N | External Storage Device (e.g., CD, DVD, USB Drive, etc.) | Y/N |
| IT System (Intranet/Shared Drive) | Y/N | Oral Disclosure | Y/N |
| Email: | << Provide email address and note the agency, cloud server, personal, private >> | | |
| Other: | << Provide a detailed description of the medium >> | | |

| Reported to US-CERT, Law Enforcement, or Congress | | | |
|---|---|---|---|
| Reported to US-CERT | Y/N | If yes, complete the following: | |
| Reported to Law Enforcement | Y/N | | |
| Reported to Congress | Y/N | | |
| Name: | << Reporting Official >> | | |
| Title: | << Reporting Official's Title>> | | |
| Email: | << Official Email >> | | |
| Phone: | << Official Phone >> | | |
| Agency/Component | <Agency/Component> | Agency: | << Law Enforcement Agency >> |
| Date and Time of the Report: | << XX/XX/XXXX, Approximate Time >> | | |

| Number of Individuals and Safeguards | |
|---|---|
| Number of individuals potentially affected by the breach? | << ##### >> |
| Was the information unstructured? (e.g., open fields on a form or survey) | Y/N |
| Was the information encrypted (see Section VII.E.2. of this Memorandum) | << ##### >> |
| Does a duplicate set of the potentially compromised information exist? | Y/N |

| Additional Information | |
|---|---|
| Internal breach (e.g., within the agency's network), external, both, or unknown? | << >> |
| What counter measures, if any, were enabled when the breach occurred? | |
| << List all that apply; include whether NIST certified (e.g., hard drive encryption on laptop, encryption of electronic files, password on smartphone) >> | |
| What steps, if any, have already been taken to mitigate potential harm? | |
| << e.g., calling or sending separate email(s) to recipient(s) of an unauthorized email to request deletion of original email, contacting web publishing to remove unredacted documents from public website, etc.>> | |
| Do you have knowledge that any information involved in the breach was intentionally stolen or misused? | Y/N |
| << If yes, describe the basis for your knowledge and how the information may have been misused (e.g., evidence of identity theft, hacking, adverse publicity, etc.) >> | |

TD_0001058

## Data Elements and Information Types

### Identifying Numbers

| | |
|---|---|
| Social Security number | Truncated or Partial Social Security number |
| Driver's License Number | License Plate Number |
| DEA Registration Number | File/Case ID Number |
| Patient ID Number | Health Plan Beneficiary Number |
| Student ID Number | Federal Student Aid Number |
| Passport number | Alien Registration Number |
| DOD ID Number | DOD Benefits Number |
| Employee Identification Number | Professional License Number |
| Taxpayer Identification Number | Business Taxpayer Identification Number (sole proprietor) |
| Credit/Debit Card Number | Business Credit Card Number (sole proprietor) |
| Vehicle Identification Number | Business Vehicle Identification Number (sole proprietor) |
| Personal Bank Account Number | Business Bank Account Number (sole proprietor) |
| Personal Device Identifiers or Serial Numbers | Business device identifiers or serial numbers (sole proprietor) |
| Personal Mobile Number | Business Mobile Number (sole proprietor) |

### Biographical Information

| | | |
|---|---|---|
| Name (including nicknames) | Gender | Race |
| Date of Birth (Day, Month, Year) | Ethnicity | Nationality |
| Country of Birth | City or County of Birth | Marital Status |
| Citizenship | Immigration Status | Religion/Religious Preference |
| Home Address | Zip Code | Home Phone or Fax Number |
| Spouse Information | Sexual Orientation | Children Information |
| Group/Organization Membership | Military Service Information | Mother's Maiden Name |
| Business Mailing Address (sole proprietor) | Business Phone or Fax Number (sole proprietor) | Global Positioning System (GPS)/Location Data |
| Personal e-mail address | Business e-mail address | Employment Information |
| Personal Financial Information (including loan information) | Business Financial Information (including loan information) | Alias (e.g., username or screenname) |
| Education Information | Resume or curriculum vitae | Professional/personal references |

### Biometrics/Distinguishing Features/Characteristics

| | | |
|---|---|---|
| Fingerprints | Palm prints | Vascular scans |
| Retina/Iris Scans | Dental Profile | Scars, marks, tattoos |
| Hair Color | Eye Color | Height |
| Video recording | Photos | Voice/Audio Recording |
| DNA Sample or Profile | Signatures | Weight |

### Medical/Emergency Information (select all that apply)

| | | |
|---|---|---|
| Medical/Health Information | Mental Health Information | Disability Information |
| Workers' Compensation Information | Patient ID Number | Emergency Contact Information |

TD_0001059

| Device Information | | |
|---|---|---|
| Device settings or preferences (e.g., security level, sharing options, ringtones) | Cell tower records (e.g., logs, user location, time, etc.) | Network communications data |

| Specific Information/File Types | | |
|---|---|---|
| Taxpayer Information/Tax Return Information | Law Enforcement Information | Security Clearance/Background Check Information |

| Specific Information/File Types (Cont.) | | |
|---|---|---|
| Civil/Criminal History Information/Police Record | Academic and Professional Background Information | Health Information |
| Case files | Personnel Files | Credit History Information |

41

**Appendix II: Examples of Guidance an Agency May Offer**

*Active Duty Alert*: Service members who deploy can place an active duty alert on their credit reports to help minimize the risk of identity theft. These types of alerts on a credit report mean businesses have to take extra steps before granting credit to an individual. Active duty alerts last for one year, and can be renewed by the service member to match the period of their deployment.

*Credit Freeze*: A credit freeze restricts access to an individual's credit report. When offering this type of guidance, an agency should be aware that because access to a credit report is usually required by creditors, a credit freeze can prevent creditors from approving a new account.

*Credit Freezes for Children*: Guardians are sometimes able to place a freeze on a child's credit, even if the child does not yet have a credit history. Several states mandate that all credit bureaus provide this option. Outside those states, the option may still be available depending on the credit bureau. In these instances, guardians may have to provide additional information about themselves as well as the child in order to show the relationship.

*Closing or Changing Accounts*: Individuals should immediately dispute any unauthorized charges to existing accounts, including closing or changing account numbers so that unauthorized activity does not continue. This will not prevent new unauthorized accounts of which individuals may be unaware.

*Obtaining a Free Credit Report*: Individuals can obtain a free credit report yearly from each of the three national credit bureaus (Equifax, Experian, and TransUnion) from annualcreditreport.com or by calling the credit reporting agencies' toll-free numbers. Individuals should review their credit reports for any accounts they do not recognize.

*Cyber Hygiene*: Agencies should also consider providing individuals with resources on good cyber hygiene (e.g., setting up multi-factor authentication, using complex passwords). Resources include: DHS's Stop.Think.Connect. Campaign at: https://www.dhs.gov/stopthinkconnect or https://www.ftc.gov/onguardonline; US-CERT's tips on protecting privacy at: https://www.us-cert.gov/ncas/tips/ST04-013; and US-CERT's tips on preventing online identity theft at: https://www.us-cert.gov/ncas/tips/ST05-019.

*Deceased Alerts*: Deceased individuals can be at heightened risk for identity fraud that may impact the deceased individual's estate.[62] This creates liability for a surviving spouse if, for example, his or her name is on joint accounts. To prevent this, death certificates can be sent to the IRS as well as the major credit bureaus, with a request to place a "deceased alert" on the account to prevent new activity.

*Fraud Alert*: A fraud alert tells creditors that they must take reasonable steps to verify the identity of the individual who is applying for credit. A fraud alert also allows individuals to

---

[62] *See, e.g., Examples of Identity Theft Investigations - Fiscal Year 2016*, INTERNAL REVENUE SERV., *available at* https://www.irs.gov/uac/examples-of-identity-theft-investigations-fiscal-year-2016 (accessed Oct. 25, 2016) (citing that two Florida residents were convicted of wire fraud conspiracy and aggravated identity theft for filing 32 fraudulent federal income tax returns, 21 of which were joint returns that included PII of deceased individuals).

42

order one free copy of the individual's credit report from each of the three national credit bureaus. To place this alert, individuals can contact one of the three national credit bureaus, who must then notify the others. The initial fraud alert stays on the credit report for 90 days and can be renewed.

***FTC.gov/idtheft***: The FTC's website provides free identity theft resources for individuals as well as community leaders, businesses, advocates, and law enforcement to share in their communities. The website includes resources on proactive steps individuals can take to monitor and protect their information and educate themselves on the different types of identity theft and the resources available to protect against and recover from identity theft.

***IdentityTheft.gov***: This is the Federal Government's one-stop resource for identity theft victims. Individuals can use the website to report identity theft and get a personalized recovery plan that walks them through each step, updates the plan as needed, and pre-fills letters and forms. It also advises individuals on steps they can take to prevent identity theft when they receive notice that their PII has been compromised. The website is managed by the FTC and is integrated with the FTC's complaint system, which makes the complaint information available to law enforcement across the country through Consumer Sentinel, a secure online database available to law enforcement.

***Tax Fraud***: Agencies may consider recommending that individuals file an IRS Identity Theft Affidavit (Form 14039) to prevent an identity thief from using compromised PII to falsely claim the individual's tax refund.

43

**Appendix III: Examples of Services an Agency May Provide**

*Credit Monitoring*: Many companies, including credit reporting agencies, offer this service as a subscription for a defined period of time. The service includes monitoring an individual's credit report, and notifying the potentially affected individual, usually via email, when new activity is reported to their credit report. Credit monitoring notifies individuals that compromised information may have been used to open a new credit account using their information. It does not monitor other non-credit-based risks for misuse of compromised information.

*Identity Monitoring*: These services monitor the use of an individual's overall identity beyond information contained in a credit report. This monitoring generally tracks whether the individual's information has been exposed online, in addition to monitoring other databases, which may include information related to change of address, court records, payday loans, health, criminal, and other identifying information beyond just financial credit information. These more comprehensive services mitigate risks of the non-credit identity thefts outlined above. Each company provides different monitoring services, so agencies should ensure that monitoring options are appropriate given the compromised information. The effectiveness of the monitoring will depend on factors such as the databases monitored, the amount and accuracy of the information in the databases, and how often the company checks the databases.

*Full-Service Identity Counseling and Remediation Services*: These are additional services that provide trained counselors or case managers to help individuals recover from identity theft. The services may include assisting individuals with preventing pre-screened offers of credit, helping consumers dispute charges and removing fraudulent information, and providing legal assistance. Generally, individuals authorize companies offering these services to act on their behalf.

*Identity Theft Insurance*: Insurance reimburses individuals for certain losses resulting from identity theft. Generally, this insurance covers only out-of-pocket expenses directly associated with recovery from the identity theft. Typically, these are limited to things like postage, copying and notary costs. Some policies cover lost wages or legal fees. Generally, these policies do not provide reimbursement for any funds that are stolen as a result of the identity theft. Agencies should understand what they are purchasing and communicate clearly within any guidance provided the details of what the insurance covers as well as any limitations and exclusions to the potentially affected individuals.

44

**Appendix IV: Government-wide Incident and Breach Response Resources**

**Federal Laws**

Federal Information Security Modernization Act (FISMA) of 2014
Pub. L. 113-283, 128 Stat. 3073 (Dec. 18, 2014) (primarily codified at 44 U.S.C. chapter 35, subchapter II).

**Executive Orders, Memoranda, and Directives**

**Resources Related To Breach**

OMB Memorandum M-17-09, Management of Federal High Value Assets (Dec. 9, 2016).
*Tip: This Memorandum requires agencies to routinely test incident response procedures for all HVAs as part of agencies implementation and validation of security controls.*

OMB Memorandum M-17-05, Fiscal Year 2016-2017 Guidance on Federal Information Security and Privacy Management Requirements (Nov. 4 2016).
*Tip: See Section II for the definition of "Major Incident," guidance on when a breach constitutes a Major Incident, reporting a Major Incident to US-CERT and OMB, and associated Congressional reporting requirements.*
*Note: OMB updates this guidance annually and the most current guidance can be located at https://www.whitehouse.gov/omb/memoranda_default.*

PPD-41, Annex for Presidential Policy Directive – United States Cyber Incident Coordination (July 2016)
*Tip: See Section III, Federal Government Response to Incidents Affecting Federal Networks for guidance on when a Breach meets the definition of a "significant cyber incident" and shall be managed in accordance with this directive.*

OMB Circular A-130, Managing Information as a Strategic Resource (July 28, 2016)
*Tip: See Appendix II, Section 5(h) for a summary of incident handling responsibilities for managing PII.*

OMB Memorandum M-16-14, Category Management Policy 16-2: Providing Comprehensive Identity Protection Services, Identity Monitoring, and Data Breach Response (July 1, 2016)
*Tip: This Memorandum requires, with limited exceptions, that agencies use the government-wide blanket purchase agreement for Identity Monitoring Data Breach Response and Protection Services awarded by the General Services Administration.*

OMB Memorandum M-15-01, Fiscal Year 2014-2015 Guidance on Improving Federal Information Security and Privacy Management Practices (Oct. 3, 2014)
*Tip: See Section III: FY 2014 FISMA Reporting and Privacy Management Guidance for the requirement that agencies report to US-CERT cyber-related (electronic) incidents with confirmed loss of confidentiality, integrity, or availability within one hour.*

TD_0001064

**Agencies or Sub-Components with Specific Government-wide Guidance**

**Department of Commerce/ National Institute of Standards and Technology (NIST)**

NIST Special Publication 800-61 (Revision 2), Computer Security Incident Handling Guide (Aug. 2012)

NIST Special Publication 800-34 (Revision 1), Contingency Planning Guide for Federal Information Systems and Organizations (Apr. 2013)
*Tip: See control MP-6(8) for information on remote purging/wiping of lost or stolen mobile devices. See several controls throughout the document for information on properly encrypting information on various media and contexts.*

NIST Special Publication 800-122, Guide to Protecting the Confidentiality of PII (Apr. 2010)

**Department of Homeland Security (DHS)/ United States Computer Emergency Readiness Team (US-CERT)**

US-CERT Federal Incident Notification Guidelines

National Cybersecurity and Communications Integration Center (NCCIC) Cyber Incident Scoring System

**General Services Administration (GSA)**

Identity Protection Services (IPS) Multiple Award Blanket Purchase Agreement (BPA)

TD_0001065

## Glossary

'**Breach**' the loss of control, compromise, unauthorized disclosure, unauthorized acquisition, or any similar occurrence where (1) a person other than an authorized user accesses or potentially accesses personally identifiable information or (2) an authorized user accesses personally identifiable information for an other than authorized purpose.

'**Breach Response Plan**' is the agency's formal document that includes the policies and procedures that shall be followed with respect to reporting, investigating, and managing a Breach.

'**Breach Response Team**' is the group of agency officials designated by the head of the agency that the agency may convene to respond to a breach. Once convened, the SAOP is responsible for leading the breach response team's response to a breach.

'**Federal Information**' means information created, collected, processed, maintained, disseminated, disclosed, or disposed of by or for the Federal Government, in any medium or form.[63]

'**Federal Information System**' means an information system used or operated by an agency, by a contractor of an agency, or by another organization on behalf of an agency.[64]

'**Incident**' means an occurrence that (1) actually or imminently jeopardizes, without lawful authority, the integrity, confidentiality, or availability of information or an information system; or (2) constitutes a violation or imminent threat of violation of law, security policies, security procedures, or acceptable use policies.[65]

'**Personally Identifiable Information**' means information that can be used to distinguish or trace an individual's identity, either alone or when combined with other information that is linked or linkable to a specific individual.[66]

'**Senior Agency Official for Privacy**' means the senior official, designated by the head of each agency, who has agency-wide responsibility for privacy, including implementation of privacy protections, compliance with Federal laws, regulations, and policies relating to privacy; management of privacy risks at the agency; and a central policy-making role in the agency's development and evaluation of legislative, regulatory, and other policy proposals.[67]

---

[63] OMB Circular No. A-130, *Managing Information as a Strategic Resource* (July 28, 2016), *available at* https://www.whitehouse.gov/sites/default/files/omb/assets/OMB/circulars/a130/a130revised.pdf.
[64] *Id.*
[65] 44 U.S.C. § 3552.
[66] OMB Circular No. A-130, *Managing Information as a Strategic Resource* (July 28, 2016), *available at* https://www.whitehouse.gov/sites/default/files/omb/assets/OMB/circulars/a130/a130revised.pdf.
[67] *Id.*

47

required to be closed pursuant to 5 U.S.C. 552b(c)(1)(A) & (B) The second agenda item, a discussion of potential NSTAC study topics, will address areas of critical cybersecurity vulnerabilities and priorities for Government. Government officials will share data with NSTAC members on initiatives, assessments, and future security requirements across public and private sector networks. The information will include specific vulnerabilities within cyberspace that affect the United States' information and communication technology infrastructures and proposed mitigation strategies. Disclosure of this information to the public would provide criminals with an incentive to focus on these vulnerabilities to increase attacks on the Nation's critical infrastructure and communications networks. As disclosure of this portion of the meeting is likely to significantly frustrate implementation of proposed DHS actions, it is required to be closed pursuant to 5 U.S.C. 552b(c)(9)(B).

**Helen Jackson,**

*Designated Federal Officer for the NSTAC.*

[FR Doc. 2017–19793 Filed 9–15–17; 8:45 am]

**BILLING CODE 9110–9P–P**

---

**DEPARTMENT OF HOMELAND SECURITY**

**Office of the Secretary**

**Notice of Availability for Memorandum on Rescission of Deferred Action for Childhood Arrivals**

**AGENCY:** Office of the Secretary, Department of Homeland Security.

**ACTION:** Notice of availability.

**SUMMARY:** In a memorandum dated September 5, 2017, the Acting Secretary of the Department of Homeland Security (DHS) rescinded the June 15, 2012 DHS memorandum entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children." The September 5, 2017 memorandum is available on the DHS Web site at the following location: *https://www.dhs.gov/news/2017/09/05/memorandum-rescission-daca.*

**SUPPLEMENTARY INFORMATION:** On June 15, 2012, then Secretary of Homeland Security Janet Napolitano issued a memorandum entitled "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children." The 2012 memorandum established the policy known as Deferred Action for Childhood Arrivals (DACA).

On September 5, 2017, Acting Secretary of Homeland Security Elaine

Duke issued a memorandum entitled "Rescission of the June 15, 2012 Memorandum Entitled 'Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children.' " The September 5, 2017 memorandum rescinded the June 15, 2012 memorandum and directed DHS personnel to take all appropriate actions to execute a wind-down of the DACA program consistent with the parameters established in the memorandum. The September 5, 2017 memorandum is available on the DHS Web site at the following location: *https://www.dhs.gov/news/2017/09/05/memorandum-rescission-daca.*

Dated: September 11, 2017.

**Elaine C. Duke,**

*Acting Secretary of Homeland Security.*

[FR Doc. 2017–19794 Filed 9–15–17; 8:45 am]

**BILLING CODE 9111–97–P**

---

**DEPARTMENT OF HOMELAND SECURITY**

**[Docket No. DHS–2017–0038]**

**Privacy Act of 1974; System of Records**

**AGENCY:** Department of Homeland Security, Privacy Office.

**ACTION:** Notice of Modified Privacy Act System of Records.

**SUMMARY:** In accordance with the Privacy Act of 1974, the Department of Homeland Security (DHS) proposes to modify a current DHS system of records titled, "Department of Homeland Security/U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement, U.S. Customs and Border Protection—001 Alien File, Index, and National File Tracking System of Records." This system of records contains information regarding transactions involving an individual as he or she passes through the U.S. immigration process, some of which may also be covered by separate Systems of Records Notices. DHS primarily maintains information relating to the adjudication of benefits, investigation of immigration violations, and enforcement actions in Alien Files (A-Files). Alien Files became the official file for all immigration records created or consolidated since April 1, 1944. Before A-Files, many individuals had more than one file with the agency. To streamline immigration recordkeeping, legacy Immigration and Naturalization Service issued each individual an Alien Number, allowing the agency to create a single file for each individual containing that individual's official

immigration record. DHS also uses other immigration files to support administrative, fiscal, and legal needs.

**DATES:** Submit comments on or before October 18, 2017. This modified system will be effective upon publication. New or modified routine uses will become effective October 18, 2017.

**ADDRESSES:** You may submit comments, identified by docket number DHS–2017–0038 by one of the following methods:

• *Federal e-Rulemaking Portal: http://www.regulations.gov.* Follow the instructions for submitting comments.

• *Fax:* 202–343–4010.

• *Mail:* Jonathan R. Cantor, Acting Chief Privacy Officer, Privacy Office, Department of Homeland Security, Washington, DC 20528–0655.

**FOR FURTHER INFORMATION CONTACT:** For general questions, please contact: Donald K. Hawkins, (202) 272–8000, Privacy Officer, U.S. Citizenship and Immigration Services, 20 Massachusetts Avenue NW., Washington, DC 20529. For privacy questions, please contact: Jonathan R. Cantor, (202) 343–1717, Acting Chief Privacy Officer, Privacy Office, Department of Homeland Security, Washington, DC 20528–0655.

**SUPPLEMENTARY INFORMATION:** As DHS moves to conducting more immigration actions in an electronic environment and U.S. Citizenship and Immigration Services (USCIS) adjudicates more immigration benefits and requests for action in its USCIS Electronic Immigration System, DHS no longer considers the paper A-File as the sole repository and official record of information related to an individual's official immigration record. An individual's immigration history may be in the following materials and formats: (1) A paper A-File; (2) an electronic record in the Enterprise Document Management System or USCIS Electronic Immigration System; or (3) a combination of paper and electronic records and supporting documentation.

The Department of Homeland Security, therefore, is updating the "Department of Homeland Security/U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement, U.S. Customs and Border Protection–001 Alien File, Index, and National File Tracking System of Records notice to: (1) Redefine which records constitute the official record of an individual's immigration history to include the following materials and formats: (a) The paper A-File, (b) an electronic record in the Enterprise Document Management System or U.S. Citizenship and Immigration Services Electronic Immigration System, or (c) a

**Federal Register**/Vol. 82, No. 179/Monday, September 18, 2017/Notices    **43557**

combination of paper and electronic records and supporting documentation; (2) clarify that data originating from this system of records may be stored in a classified paper A-File or classified electronic network; (3) provide updated system locations; (4) update category of individuals covered by this System of Records Notice, to include individuals acting as legal guardians or designated representatives in immigration proceedings involving an individual who is physically or developmentally disabled or severely mentally impaired (when authorized); Civil Surgeons who conduct and certify medical examinations for immigration benefits; law enforcement officers who certify a benefit requestors cooperation in the investigation or prosecution of a criminal activity; and interpreters; (5) expand the categories of records to include the following: country of nationality; country of residence; the USCIS Online Account Number; social media handles, aliases, associated identifiable information, and search results; and the Department of Justice (DOJ), Executive Office for Immigration Review and Board of Immigration Appeals proceedings information; (6) add and describe the purpose for the USCIS Electronic Immigration System, Electronic Document Management System, and Microfilm Digitization Application System; (7) expand the data elements used to retrieve records; (8) update the parameters for retention and disposal of A–Files; (9) add the Microfilm Digitization Application System retention schedule; (10) update system manager to Associate Director, Immigration Records and Identity Services; (11) update record source categories to include publicly available information obtained from the internet, public records, public institutions, interviewees, commercial data providers, and information obtained and disclosed pursuant to information sharing agreements; and (12) update routine use E to comply with new policy contained in Office of Management and Budget Circular A–108. Additionally, this notice includes non-substantive changes to simplify the formatting and text of the previously published notice. The exemptions for the existing system of records notice will continue to be applicable for this updated system of records notice. This modified system of records notice will be included in the DHS's inventory of record systems.

## I. Background

In accordance with the Privacy Act of 1974, 5 U.S.C. 552a, the DHS U.S. Citizenship and Immigration Services

(USCIS), U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP) proposes to update and reissue a current DHS system of records titled, ''DHS/USCIS–ICE–CBP–001 Alien File, Index, and National File Tracking System of Records.''

DHS implements U.S. immigration law and policy through USCIS' processing and adjudication of applications and petitions submitted for citizenship, asylum, and other immigration benefits. USCIS also supports national security by preventing individuals from fraudulently obtaining immigration benefits and by denying applications from individuals who pose national security or public safety threats. DHS implements U.S. immigration policy and law through ICE's law enforcement activities and CBP's inspection and border security processes.

Legacy immigration and naturalization agencies previously collected and maintained information concerning all immigration and inspection interactions. Before Alien Files (A-Files), many individuals had more than one file with the agency requiring legacy personnel to search multiple records systems and indexes for all records pertaining to one individual. The former Immigration and Naturalization Services (INS) introduced A-Files and issued each individual an Alien Number (A–Number) allowing INS to create one file for each individual containing the entire agency's records for the subject. Legacy immigration case file records that were not consolidated into the A-File are still maintained since these records hold historical value and are shared with government agencies and members of the public who request this information for mission-related and genealogy purposes.

The Alien File, Index, and National File Tracking System of Records is the official record system that contains information regarding the transactions of an individual as he or she passes through the U.S. immigration process. Currently, A-Files may be maintained in two formats: Paper A-Files or electronic A-Files within the Enterprise Document Management System (EDMS). The official record will now take three possible forms: (1) Records contained within the paper A-File; (2) records contained within the electronic record from EDMS or USCIS Electronic Immigration System (USCIS ELIS); or (3) a combination of paper and electronic records and supporting documentation. The A-File serves as the official record of an individual's immigration history.

It is used in immigration proceedings before U.S. Department of Justice (DOJ) immigration judges and the Board of Immigration Appeals (BIA), and is the official record used in Federal court litigation and other official agency business transactions. USCIS is the custodian of the A-File and the documents contained within it that are derived from various systems belonging to USCIS, ICE, and CBP. All three components create, contribute information to, and use A-Files, hence this joint System of Records Notice (SORN).

A notice detailing this system of records was last published in the **Federal Register** on November 21, 2013, as the DHS/USCIS/ICE/CBP001 Alien File, Index, and National File Tracking System of Records, 78 FR 69864. DHS is updating the DHS/USCIS/ICE/CBP–001 Alien File, Index, and National File Tracking System of Records to include the following substantive changes: (1) Redefine which records constitute the official record of an individual's immigration history to include the following materials and formats: (a) The paper A-File, (b) the electronic A-File, or (c) a combination of paper and electronic records and supporting documentation; (2) clarify that data originating from this system of records may be stored in a classified paper A-File or classified electronic network; (3) provide updated system locations; (4) update category of individuals covered by this SORN to include individual acting as legal guardians or designated representatives in immigration proceedings involving individuals who are physically or developmentally disabled or severely mentally impaired (when authorized); Civil Surgeons who conduct and certify medical examinations for immigration benefits; and law enforcement officers who certify a benefit requestors cooperation in the investigation or prosecution of a criminal activity; and interpreters; (5) expand the categories of records to include country of nationality; country of residence; the USCIS Online Account Number; social media handles, aliases, associated identifiable information, and search results; and information regarding the DOJ Executive Office for Immigration Review (EOIR) and BIA proceedings; (6) add and describe the purpose of the USCIS ELIS, EDMS, and Microfilm Digitization Application System (MiDAS); (7) expand data elements used to retrieve records; (8) update the parameters for retention and disposal of paper A-Files and electronic A-Files; (9) include the MiDAS retention schedule; (10) change system

manager to Associate Director, Immigration Records and Identity Services (IRIS); (11) update record source categories to include publicly available information obtained from the internet, public records, public institutions, interviews, commercial data providers, and information shared obtained through information sharing agreements; and (12) update routine use E to comply with Office of Management and Budget Circular A–108.

Consistent with DHS's information sharing mission, information stored in the DHS/USCIS/ICE/CBP–001 Alien File, Index, and National File Tracking System of Records may be shared with other DHS components that have a need to know the information to carry out their national security, law enforcement, immigration, intelligence, or other homeland security functions. In addition, information contained within the DHS/USCIS/ICE/CBP–001 Alien File, Index, and National File Tracking System of Records may be shared with appropriate Federal, State, local, tribal, territorial, foreign, or international government agencies consistent with the routine uses set forth in this system of records notice. The exemptions for the existing system of records notice will continue to be applicable for this system of records notice. Additionally, this modified system will be included in DHS's inventory of record systems.

## II. Privacy Act

The Privacy Act embodies fair information practice principles in a statutory framework governing the means by which Federal Government agencies collect, maintain, use, and disseminate individuals' records. The Privacy Act applies to information that is maintained in a "system of records." A "system of records" is a group of any records under the control of an agency from which information is retrieved by the name of an individual or by some identifying number, symbol, or other identifying particular assigned to the individual. In the Privacy Act, an individual is defined to encompass U.S. citizens and lawful permanent residents. Additionally, and similarly, the Judicial Redress Act (JRA) provides a statutory right to covered persons to make requests for access and amendment to covered records, as defined by the JRA, along with judicial review for denials of such requests. In addition, the JRA prohibits disclosures of covered records, except as otherwise permitted by the Privacy Act.

Below is the description of the DHS/USCIS/ICE/CBP–001 Alien File, Index, and National File Tracking System of Records. In accordance with 5 U.S.C.

552a(r), DHS has provided a report of this system of records to the Office of Management and Budget and to Congress.

### SYSTEM NAME AND NUMBER:

Department of Homeland Security (DHS) U.S. Citizenship and Immigration Services (USCIS), U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP)– 001 Alien File, Index, and National File Tracking System of Records.

### SECURITY CLASSIFICATION:

Unclassified, sensitive, for official use only, and classified. The data may be retained in classified paper A-File or on classified networks. The nature and character of the underlying classification of these records will not change unless it is combined with classified information.

### SYSTEM LOCATION:

Records are maintained in (1) paper A-Files; (2) electronic A-Files in EDMS and USCIS ELIS; (3) Central Index System (CIS); (4) MiDAS; and (5) National File Tracking System (NFTS). Other applications, as Enterprise Citizenship and Immigrations Services Centralized Operational Repository (eCISCOR) and the Person Centric Query Service (PCQS), may retrieve information from the aforementioned applications.

*Paper A-Files:* Paper A-Files are primarily located at the National Records Center in Lee's Summit, Missouri and component field offices. Paper A-Files may also be located at Headquarters, Regional, District, and other USCIS File Control Offices (FCO) throughout the United States and foreign countries as detailed on the agency's Web site, *http://www.uscis.gov.* A-Files may also be located at ICE and CBP offices and facilities.

*EDMS:* EDMS contains electronic A-Files.

*USCIS ELIS:* USCIS ELIS contains electronic A-Files. USCIS ELIS is an online, electronic account and case management system that stores information submitted or integrated into the system for the processing of specific applications, petitions, or requests. Submissions may originate in an electronic format or be converted to an electronic format from paper and include forms, supporting documentation associated with each submission notices of agency action (*e.g.*, appointment notices, requests for evidence or originals, notices of intent to deny, or withdrawal notice and other final agency decisions) on a specific application, petition, or request,

whether filed directly online or received by USCIS in a paper format and subsequently scanned for integration into the USCIS ELIS. USCIS ELIS also stores the USCIS Online Account Number and biographic information about the individual filing a request for an immigration decision or agency action that can be used to retrieve information about other immigration requests that may have been filed by the individual.

*CIS:* CIS serves as a DHS-wide index of key information for A-Files (whether paper or electronic). CIS contains information on individuals who interact with DHS. The system contains biographic information on those individuals which can be used to retrieve additional information from other systems. However, A-Files are not contained in CIS.

*MiDAS:* MiDAS contains digitized copies of immigration-related records that were created between 1893 and 1975.

*NFTS:* NFTS has the location information for all A-File records (whether paper or electronic). NFTS allows DHS to track and log the movement of paper A-Files in a centralized database, and provide timely and accurate access to the immigration case file location. This system facilitates USCIS' ability to efficiently manage and streamline access to immigration files under its control.

The databases maintaining the above information are located within the DHS data center in the Washington, DC metropolitan area as well as throughout the country. Access to these electronic systems is possible at USCIS sites at Headquarters and in the field offices throughout the United States, at appropriate facilities under the jurisdiction of DHS, and other locations at which officers of DHS component agencies may be posted or operate to facilitate DHS's homeland security mission.

### SYSTEM MANAGER(S):

Associate Director, Immigration Records and Identity Services, U.S. Citizenship and Immigration Services, Department of Homeland Security, 20 Massachusetts Avenue NW., Washington, DC 20529.

### AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

Authority for maintaining this system is in Sections 103 and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103 and 1360), and the regulations issued pursuant thereto; and Section 451 of the Homeland Security Act of 2002 (Pub. L. 107–296), codified at 6 U.S.C. 271.

**PURPOSE(S) OF THE SYSTEM:**

The purpose of this system of records is to facilitate administration of benefits and enforcement of provisions under the INA and related immigration statutes. A-Files (whether paper or electronic), immigration case files, CIS, MiDAS, and NFTS are used primarily by DHS employees for immigration processing and adjudication, protection of national security, and administering and enforcing immigration and nationality laws and related regulations and policy. These records also assist DHS with detecting violations of immigration and nationality laws; supporting the referral of such violations for prosecution or other appropriate enforcement action; supporting law enforcement efforts and inspection processes at the U.S. borders; as well as to carry out DHS enforcement, immigration, intelligence, and or other homeland security functions.

The purpose of the A-File is to document and maintain the official record of an individual's immigration applications, petitions, and requests, as well as enforcement transactions as he or she passes through the U.S. immigration process. The official records in the A-Files consist of paper and electronic records of the individual's transactions through the immigration process including records of immigration benefit requests and requests for agency action filed with USCIS, but does not include all case processing and decisional data.

The purpose of the EDMS is to store the A-File electronically and to share the A-File more efficiently within DHS and with external agencies.

The purpose of USCIS ELIS is to maintain the A-File of certain paper- and electronically-filed benefit request forms with USCIS, in addition its electronic case processing, adjudication, and management functions. The associated information and data for cases maintained in USCIS ELIS for case processing, adjudication, and management functions are covered under other USCIS SORNs.

The purpose of CIS is to maintain a repository of electronic data that summarizes the history of an immigrant or non-immigrant in the adjudication process. In addition, CIS maintains information about individuals of interest to the U.S. Government for investigative purposes. Information contained within CIS is used for immigration benefit determination and for immigration law enforcement operations by USCIS, ICE, and CBP.

The purpose of MiDAS is to maintain a repository of historical immigration case files for use by government agencies for mission-related purposes such as assisting in the determination to grant or deny a government benefit or to conduct law enforcement or other investigations. Furthermore, USCIS makes records of deceased subjects available to members of the public who request them for genealogy and other historical research purposes.

The purpose of NFTS is to account for the specific location of immigration files, and to track the request and transfer of immigration files.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

• Lawful permanent residents;
• Naturalized U.S. citizens;
• Individuals when petitioning for benefits under the INA, as amended, on behalf of another individual;
• Individuals acting as legal guardians or designated representatives in immigration proceedings involving an individual who has a physical or developmental disability or mental impairment (as authorized under the INA);
• Individuals who receive benefits under the INA;
• Individuals who are subject to the enforcement provisions of the INA;
• Individuals who are subject to the INA and:
  o Are under investigation by DHS for possible national security threats or threats to the public safety,
  o were investigated by DHS in the past,
  ○ are suspected of violating immigration-related criminal or immigration-related civil provisions of treaties, statutes, regulations, Executive Orders, and Presidential Proclamations administered by DHS, or
  ○ are witnesses and informants having knowledge of such violations;
• Relatives and associates of any of the individuals listed above who are subject to the INA;
• Individuals who have renounced their U.S. citizenship;
• Civil Surgeons who are required to conduct and certify medical examinations for immigration benefits; and law enforcement officers who certify a benefit requestor's cooperation in the investigation or prosecution of a criminal activity;
• Preparers assisting an individual seeking an immigration benefit or agency action under the INA;
• Interpreters assisting an individual seeking an immigration benefit or agency action under the INA;
• Attorneys or representatives recognized by USCIS or accredited by the BIA; or
• Law enforcement officers who certify a benefit requestor's cooperation in the investigation or prosecution of a criminal activity.

**Note:** Individuals may fall within one or more of these categories.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

A. A-Files contain official record material about each individual for whom DHS has created a record under the INA such as: Naturalization certificates; various documents and attachments (*e.g.*, birth and marriage certificates); applications, petitions, and requests for immigration determinations or agency action under the immigration and nationality laws; reports of arrests and investigations; statements; other reports; records of proceedings before or filings made with the U.S. immigration courts and any administrative or federal district court or court of appeal; correspondence; and memoranda. Specific data elements may include:
• A-Numbers;
• Receipt file number(s);
• Full name and any aliases used;
• Physical and mailing addresses (to include U.S. and foreign);
• Phone numbers and email addresses;
• Social Security number (SSN);
• Date of birth;
• Place of birth (city, state, and country);
• Country of citizenship;
• Country of nationality;
• Country of residence;
• Gender;
• Physical characteristics (height, weight, race, eye and hair color, photographs, fingerprints);
• Government-issued identification information (*i.e.*, passport, driver's license):
  ○ Document type;
  ○ Issuing organization;
  ○ Document number; and
  ○ Expiration date;
• Military membership and/or status;
• Arrival/Departure information (record number, expiration date, class of admission, etc.);
• Federal Bureau of Investigation (FBI) Identification Number/Universal Control Number;
• Fingerprint Identification Number;
• Immigration enforcement history, including, but not limited to, arrests and charges, immigration proceedings and appeals, and dispositions including removals or voluntary departures;
• Immigration status;
• Family history;
• Travel history;
• Education history;
• Employment history;
• Criminal history;
• Professional accreditation information;

- Medical information;
- Information regarding the status of Department of Justice (DOJ), Executive Office of Immigration Review (EOIR) and (BIA) proceedings, if applicable;
- Specific benefit eligibility information as required by the benefit being sought;
- Social media handles and aliases, associated identifiable information, and search results; and
- Cassette/audio tapes, audio-visual/videotapes, CDs, DVDs, or transcripts of immigration interviews.

B. CIS contains information on those individuals who during their interactions with DHS have been assigned an A-Number. The system contains biographic information on those individuals, allowing DHS employees to quickly review the individual's immigration status. The information in the system can then be used to retrieve additional information on the individual from other systems. The information in the system can be used to request the paper A-File from the USCIS FCO that has custody of the A-File. Specific data elements may include:

- A-Number(s);
- Full name and any aliases used;
- SSN;
- Date of birth;
- Place of birth (city, state, and country);
- Country of citizenship;
- Country of nationality;
- Gender;
- Government issued identification information (*i.e.,* passport, driver's license):
- Document type;
- Issuing organization;
- Document number;
- Expiration date;
- Arrival/Departure information (record number, expiration date, class of admission, etc.);
- Immigration status;
- Father and Mother's first name;
- FBI Identification/Identification Universal Control Number;
- Fingerprint Identification Number;
- Immigration enforcement history, including arrests and charges, immigration proceedings and appeals, and dispositions including removals or voluntary departures; and
- NFTS file location and status information.

C. EDMS contains official record material about each individual for whom DHS has created a record pursuant to the INA and the same information as contained in the as a paper A-File except for material that cannot be scanned from the paper A-File (*e.g.,* cassette/audio tapes, audio-visual/video tapes, CDs, or DVDs).

D. USCIS ELIS contains official record information and material used to determine an outcome on an immigration application, petition, or request or request agency action, such as supporting documentation, and notices of agency action on the specific immigration request. USCIS ELIS also stores the USCIS Online Account Number biographic information about the individual seeking an immigration benefit or requesting agency action that can be used to retrieve information about other requests filed by the individual, and the electronic copy of the naturalization or certificate of citizenship. Specific data elements may include, but are not limited to:

- Full Name;
- Aliases;
- Physical and mailing addresses;
- A-Number;
- USCIS Online Account Number;
- SSN;
- Date of birth and/or death;
- Country of citizenship;
- Country of nationality;
- Country of residence;
- Place of birth;
- Gender;
- Marital status;
- Military membership or status;
- Phone and fax numbers (including mobile phone numbers);
- Email address;
- Immigration status;
- Biometric information (*e.g.,* fingerprints, photographs, signature) and other information used to conduct background and security checks;
- Physical description (*e.g.,* height, weight, eye color, hair color, race, ethnicity, identifying marks like tattoos or birthmarks);
- Government issued identification information (*i.e.,* passport, driver's license):
  ○ Document type;
  ○ Issuing organization;
  ○ Document number; and
  ○ Expiration date;
- Immigration benefit type and/or agency action requested (*e.g.,* deferred action);
- Supporting documentation as necessary (*e.g.* birth, marriage, and divorce certificates; licenses; academic diplomas and transcripts; appeals, requests for rehearing, and motions to reopen or reconsideration; explanatory statements; and unsolicited information submitted voluntarily by the individual seeking an immigration benefit or requesting agency action or family members in support of the request);
- Notices and communications, including:
  ○ Requests for evidence;
  ○ Notices of intent to deny, fine, or terminate; and

  ○ Proofs of benefit (*e.g.,* Employment Authorization Card, Permanent Resident Card);
- Signature;
- Fee payment information (*e.g.,* credit card number, *Pay.gov* Payment Tracking Number);
- Audio-visual recordings, including interviews and naturalization ceremonies;
- Travel history;
- Education history;
- Work history;
- Records regarding organization membership or affiliation;
- Family relationships (*e.g.,* parent, spouse, sibling, child, other dependents);
- Information regarding the status of DOJ, EOIR and BIA proceedings, if applicable;
- Case processing information such as the date an immigration request was filed or received by USCIS; status of such a request; location of record; other control number when applicable; and fee receipt data;
- Representative information, including;
  ○ Name;
  ○ Law Firm/recognized organization;
  ○ Physical and mailing addresses;
  ○ Phone and fax numbers;
  ○ Email address;
  ○ Attorney Bar Card Number or equivalent;
  ○ Bar membership;
  ○ BIA representative accreditation authorization and expiration dates;
  ○ Law practice restriction(s) explanation; and
  ○ Signature.
- Preparer and Interpreter information, including;
  ○ Full Name;
  ○ Business or Organization name;
  ○ Physical and mailing addresses;
  ○ Phone and fax numbers;
  ○ Email address; and
  ○ Signature.

E. NFTS contains the location of the A-File whether paper or electronic. Specific data elements include:
- A-Number;
- Receipt File Number;
- Primary immigration file tracking number (*e.g.,* A-Number, Receipt File Number, Certificate Number (C-Number), and Temporary Number (T-Number));
- Location of the paper A-File and Receipt File within the USCIS FCO, as well as the history of who has maintained the paper A-File, including the component, section, and employee; and
- Name of the USCIS FCO that has jurisdiction over a case maintained in USCIS ELIS and any transfer of jurisdiction to another USCIS office.

**Federal Register** / Vol. 82, No. 179 / Monday, September 18, 2017 / Notices    **43561**

F. MiDAS is an online interactive application system that provides an automated means for searching an index to legacy immigrant records opened or indexed prior to 1975. The MiDAS Search Engine includes the Flexoline Index, documenting the issuance of A–Numbers to individuals between August 1940 and 1948, as well as a card index to physical A-Files opened between April 1, 1944 and 1975. MiDAS index data may be used to create or update a CIS record of an A-Number issued or A-File opened prior to 1975. Specific A-File index data elements may include, but are not limited to:

- A-Number;
- C-Number;
- Full name;
- Date of birth; and
- Place of birth (city, state, and country).

**RECORD SOURCE CATEGORIES:**

Basic information contained in DHS records is supplied by individuals on Department of State (DOS) and DHS applications and forms. Other information comes from publicly available information obtained from the Internet, public records, public institutions, interviewees, commercial data aggregators, inquiries or complaints from members of the general public and members of Congress, referrals of inquiries or complaints directed to the President or Secretary of Homeland Security, information shared through information sharing agreements, reports of investigations, sworn statements, correspondence, official reports, memoranda, and written referrals from other entities, including federal, state, and local governments, various courts and regulatory agencies, foreign government agencies, and international organizations.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND PURPOSES OF SUCH USES:**

Information in this system of records contains information relating to persons who have pending or approved benefit requests for special protected classes and should not be disclosed pursuant to a routine use unless disclosure is otherwise permissible under the confidentiality statutes, regulations, or policies applicable to that information. For example, information relating to persons who have pending or approved benefit requests for protection under the Violence Against Women Act, Seasonal Agricultural Worker or Legalization claims, the Temporary Protected Status of an individual, and information relating to nonimmigrant visas protected under special confidentiality provisions

should not be disclosed pursuant to a routine use unless disclosure is otherwise permissible under the confidentiality statutes, regulations, or policies applicable to that information. These confidentiality provisions do not prevent DHS from disclosing information to the DOJ and Offices of the United States Attorney as part of an ongoing criminal or civil investigation.

In addition to those disclosures generally permitted under 5 U.S.C. 552a(b) of the Privacy Act, all or a portion of the records or information contained in this system may be disclosed outside DHS as a routine use pursuant to 5 U.S.C. 552a(b)(3) as follows:

A. To DOJ, including Offices of the U.S. Attorneys, or other federal agency conducting litigation or in proceedings before any court, adjudicative, or administrative body, when it is relevant or necessary to the litigation and one of the following is a party to the litigation or has an interest in such litigation:

1. DHS or any component thereof;
2. Any employee or former employee of DHS in his/her official capacity;
3. Any employee or former employee of DHS in his/her individual capacity when DOJ or DHS has agreed to represent the employee; or
4. The United States or any agency thereof.

B. To a congressional office from the record of an individual in response to an inquiry from that congressional office made at the request of the individual to whom the record pertains.

C. To the National Archives and Records Administration (NARA) or General Services Administration pursuant to records management inspections being conducted under the authority of 44 U.S.C. 2904 and 2906.

D. To an agency or organization for the purpose of performing audit or oversight operations as authorized by law, but only such information as is necessary and relevant to such audit or oversight function.

E. To appropriate agencies, entities, and persons when:

1. DHS determines that information from this system of records is reasonably necessary and otherwise compatible with the purpose of collection to assist another federal recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach; or

2. DHS suspects or has confirmed that there has been a breach of this system of records; and (a) DHS has determined that as a result of the suspected or confirmed breach, there is a risk of harm to individuals, harm to DHS (including its information systems, programs, and operations), the Federal Government, or national security; and (b) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with DHS's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

F. To contractors and their agents, grantees, experts, consultants, and others performing or working on a contract, service, grant, cooperative agreement, or other assignment for DHS, when necessary to accomplish an agency function related to this system of records. Individuals provided information under this routine use are subject to the same Privacy Act requirements and limitations on disclosure as are applicable to DHS officers and employees.

G. To an appropriate Federal, State, tribal, local, international, or foreign law enforcement agency or other appropriate authority charged with investigating or prosecuting a violation or enforcing or implementing a law, rule, regulation, or order, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure.

H. To appropriate Federal, State, tribal, local, or foreign governmental agencies or multilateral governmental organizations responsible for investigating or prosecuting the violations of, or for enforcing or implementing, a statute, rule, regulation, order, or license, when DHS believes the information would assist in enforcing applicable civil or criminal laws.

I. To third parties during the course of a law enforcement investigation to the extent necessary to obtain information pertinent to the investigation.

J. To an organization or person in either the public or private sector, either foreign or domestic, when there is a reason to believe that the recipient is or could become the target of a particular terrorist activity or conspiracy, or when the information is relevant to the protection of life, property, or other vital interests of a person.

K. To clerks and judges of courts exercising naturalization jurisdiction for

the purpose of granting naturalization and administering naturalization oaths, and to enable such courts to determine eligibility for naturalization or grounds for revocation of naturalization.

L. To courts, magistrates, administrative tribunals, opposing counsel, parties, and witnesses, in the course of immigration, civil, or criminal proceedings before a court or adjudicative body when it is necessary or relevant to the litigation or proceeding and the following is a party to the proceeding or has an interest in the proceeding:

1. DHS or any component thereof; or

2. Any employee of DHS in his or her official capacity; or

3. Any employee of DHS in his or her individual capacity when the DOJ or DHS has agreed to represent the employee; or

4. The United States or any agency thereof.

M. To an attorney or representative (as defined in 8 CFR 1.2) who is acting on behalf of an individual covered by this system of records in connection with any proceeding before USCIS, ICE, or CBP or the DOJ EOIR, as required by law or as deemed necessary in the discretion of the Department.

N. To DOJ (including Offices of the United States Attorneys) or other federal agency conducting litigation or in proceedings before any court, adjudicative, or administrative body, when necessary to assist in the development of such agency's legal and/or policy position.

O. To DOS in the processing of petitions or applications for benefits under the INA, and all other immigration and nationality laws including treaties and reciprocal agreements; or when DOS requires information to consider and/or provide an informed response to a request for information from a foreign, international, or intergovernmental agency, authority, or organization about an alien or an enforcement operation with transnational implications.

P. To appropriate Federal, State, local, tribal, territorial, or foreign governments, as well as to other individuals and organizations during the course of an investigation by DHS or the processing of a matter under DHS's jurisdiction, or during a proceeding within the purview of the immigration and nationality laws, when DHS deems that such disclosure is necessary to carry out its functions and statutory mandates.

Q. To an appropriate Federal, State, local, tribal, territorial, or foreign government agency or organization, or international organization, lawfully engaged in collecting law enforcement intelligence, whether civil or criminal, or charged with investigating, prosecuting, enforcing, or implementing civil or criminal laws, related rules, regulations, or orders, to enable these entities to carry out their law enforcement responsibilities, including the collection of law enforcement intelligence and the disclosure is appropriate to the proper performance of the official duties of the person receiving the information.

R. To an appropriate Federal, State, local, tribal, territorial, foreign, or international agency, if the information is relevant to a requesting agency's decision concerning the hiring or retention of an individual, or issuance of a security clearance, license, contract, grant, or other benefit, or if the information is relevant to a DHS decision concerning the hiring or retention of an employee, the issuance of a security clearance, the reporting of an investigation of an employee, the letting of a contract, or the issuance of a license, grant, or other benefit.

S. To an appropriate Federal, State, local, tribal, territorial, foreign, or international agency, if DHS determines: (1) The information is relevant and necessary to that agency's decision concerning the hiring or retention of an individual, or issuance of a security clearance, license, contract, grant, or other benefit; and (2) failure to disclose the information is likely to create a substantial risk to government facilities, equipment, or personnel; sensitive information; critical infrastructure; or public safety.

T. To appropriate Federal, State, local, tribal, or foreign governmental agencies or multilateral governmental organizations for the purpose of protecting the vital interests of a data subject or other persons, including to assist such agencies or organizations in preventing exposure to, or transmission of a communicable or quarantinable disease or to combat other significant public health threats; appropriate notice will be provided of any identified health threat or risk.

U. To an individual's current employer to the extent necessary to determine employment eligibility or to a prospective employer or government agency to verify whether an individual is eligible for a government-issued credential that is a condition of employment.

V. To a former employee of DHS, in accordance with applicable regulations, for purposes of: Responding to an official inquiry by a federal, state, or local government entity or professional licensing authority; or facilitating communications with a former employee that may be necessary for personnel-related or other official purposes when DHS requires information or consultation assistance from the former employee regarding a matter within that person's former area of responsibility.

W. To the Office of Management and Budget (OMB) in connection with the review of private relief legislation as set forth in OMB Circular No. A–19 at any stage of the legislative coordination and clearance process as set forth in the Circular.

X. To the U.S. Senate Committee on the Judiciary or the U.S. House of Representatives Committee on the Judiciary when necessary to inform members of Congress about an alien who is being considered for private immigration relief.

Y. To a Federal, State, tribal, or local government agency and/or to domestic courts to assist such agencies in collecting the repayment of loans, or fraudulently or erroneously secured benefits, grants, or other debts owed to them or to the U.S. Government, or to obtain information that may assist DHS in collecting debts owed to the U.S. Government.

Z. To an individual or entity seeking to post or arrange, or who has already posted or arranged, an immigration bond for an alien, to aid the individual or entity in (1) identifying the location of the alien; (2) posting the bond; (3) obtaining payments related to the bond; or (4) conducting other administrative or financial management activities related to the bond.

AA. To a coroner for purposes of affirmatively identifying a deceased individual (whether or not such individual is deceased as a result of a crime).

BB. Consistent with the requirements of the INA, to the Department of Health and Human Services (HHS), the Centers for Disease Control and Prevention (CDC), or to any state or local health authorities, to:

1. Provide proper medical oversight of DHS-designated Civil Surgeons who perform medical examinations of both arriving aliens and of those requesting status as lawful permanent residents; and

2. Ensure that all health issues potentially affecting public health and safety in the United States are being or have been, adequately addressed.

CC. To a Federal, State, local, tribal, or territorial government agency seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law.

DD. To the Social Security Administration (SSA) for the purpose of issuing a SSN and card to an alien who has made a request for a SSN as part of the immigration process and in accordance with any related agreements in effect between the SSA, DHS, and DOS entered into pursuant to 20 CFR 422.103(b)(3), 422.103(c)(3), and 422.106(a), or other relevant laws and regulations.

EE. To Federal and foreign government intelligence or counterterrorism agencies or components when DHS becomes aware of an indication of a threat or potential threat to national or international security, or when such use is to conduct national intelligence and security investigations or assist in anti-terrorism efforts.

FF. To third parties to facilitate placement or release of an individual (*e.g.*, at a group home, homeless shelter) who has been or is about to be released from DHS custody, but only such information that is relevant and necessary to arrange housing or continuing medical care for the individual.

GG. To an appropriate domestic government agency or other appropriate authority for the purpose of providing information about an individual who has been or is about to be released from DHS custody who, due to a condition such as mental illness, may pose a health or safety risk to himself/herself or to the community. DHS will only disclose information about the individual that is relevant to the health or safety risk they may pose and/or the means to mitigate that risk (*e.g.*, the individual's need to remain on certain medication for a serious mental health condition).

HH. To foreign governments for the purpose of coordinating and conducting the removal of individuals to other nations under the INA; and to international, foreign, and intergovernmental agencies, authorities, and organizations in accordance with law and formal or informal international arrangements.

II. To a Federal, State, local, territorial, tribal, international, or foreign criminal, civil, or regulatory law enforcement authority when the information is necessary for collaboration, coordination, and de-confliction of investigative matters, prosecutions, and/or other law enforcement actions to avoid duplicative or disruptive efforts and to ensure the safety of law enforcement officers who may be working on related law enforcement matters.

JJ. To the DOJ Federal Bureau of Prisons and other Federal, State, local, territorial, tribal, and foreign law enforcement or custodial agencies for the purpose of placing an immigration detainer on an individual in that agency's custody, or to facilitate the transfer of custody of an individual from DHS to the other agency. This will include the transfer of information about unaccompanied minor children to HHS to facilitate the custodial transfer of such children from DHS to HHS.

KK. To Federal, State, local, tribal, territorial, or foreign governmental or quasi-governmental agencies or courts to confirm the location, custodial status, removal, or voluntary departure of an alien from the United States, in order to facilitate the recipients' exercise of responsibilities pertaining to the custody, care, or legal rights (including issuance of a U.S. passport) of the removed individual's minor children, or the adjudication or collection of child support payments or other debts owed by the removed individual.

LL. To a Federal, State, tribal, territorial, local, international, or foreign government agency or multilateral governmental organization for the purpose of consulting with that agency or entity: (1) To assist in making a determination regarding redress for an individual in connection with the operations of a DHS component or program; (2) for the purpose of verifying the identity of an individual seeking redress in connection with the operations of a DHS component or program; or (3) for the purpose of verifying the accuracy of information submitted by an individual who has requested such redress on behalf of another individual.

MM. To family members, guardians, committees, friends, or other agents identified by law or regulation to receive notification, decisions, and other papers as provided in 8 CFR 103.8 from DHS or EOIR following verification of a familial or agency relationship with an alien when DHS is aware of indicia of incompetency or when an immigration judge determines an alien is mentally incompetent.

NN. To the news media and the public, with the approval of the Chief Privacy Officer in consultation with counsel, when there exists a legitimate public interest in the disclosure of the information or when disclosure is necessary to preserve confidence in the integrity of DHS or is necessary to demonstrate the accountability of DHS's officers, employees, or individuals covered by the system, except to the extent the Chief Privacy Officer determines that release of the specific

information in the context of a particular case would constitute a clearly unwarranted invasion of personal privacy.

OO. To domestic governmental agencies seeking to determine the immigration status of persons who have applied to purchase/obtain a firearm in the United States, pursuant to checks conducted on such persons under the Brady Handgun Violence Prevention Act or other applicable laws.

**POLICIES AND PRACTICES FOR STORAGE OF RECORDS:**

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door. The records may be stored on magnetic disc, tape, and digital media.

**POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:**

DHS/USCIS retrieves records by searching in CIS using the following data alone or in any combination:
- A-Number;
- Full name;
- Alias;
- Sounds-like name with or without date of birth;
- Certificate of Citizenship or Naturalization Certificate number;
- Driver's License number;
- FBI Identification/Universal Control Number;
- Fingerprint Identification Number;
- I–94 admission number;
- Passport number;
- SSN; or
- Travel Document number.

DHS/USCIS retrieves records by searching electronic A–Files in EDMS by any of the following fields alone or in any combination:
- A-Number;
- Last name;
- First name;
- Middle name;
- Aliases;
- Date of birth;
- Country of birth;
- Gender; and
- Through a full text-based search of records contained in the electronic A–File (based on optical character recognition of the scanned images).

DHS/USCIS retrieves records by searching in USCIS ELIS using the following data alone or in any combination:
- Full Name;
- Aliases;
- A-Number;
- USCIS Online Account Number;
- Date of birth;
- Immigration benefit type and/or agency action requested (*e.g.*, deferred action);

- Fee receipt data;
- Date benefit request was filed;
- Date benefit request was received;
- Representative name;
- Preparer name; and
- Interpreter name.

DHS/USCIS retrieves the location of A-Files, whether paper or electronic, by searching in NFTS using the following data:

- A-Number;
- USCIS Online Account Number; or
- Receipt File Number.

DHS/USCIS retrieves genealogy records and requests in MiDAS by searching the following data alone or in any combination:

- Requestor's first name;
- Requestor's last name;
- Requestor's Case and/or Control Number;
- Record subject's A–Number or immigration case file number;
- Record subject's first name;
- Record subject's last name; and
- Record subject's alias.

**POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:**

The official A-File record may take three possible forms: (1) Records contained within the paper A-File; (2) records contained within the electronic record from EDMS or USCIS ELIS; or (3) a combination of paper and electronic records and supporting documentation. A-File records are maintained in accordance with N1–566–08–11. DHS/USCIS transfers A-Files to the custody of NARA 100 years after the individual's date of birth.

CIS records are maintained in accordance with N1–566–10–01. CIS is an internal DHS-mission critical system that contains records that serve as a finding aid to agency case files. Records in CIS are permanently retained because they are the index of the A-File, summarize the history of an immigrant in the adjudication process, and identify the A-File location(s).

NFTS records are maintained in accordance with N1–566–06–01. NFTS records are temporary and deleted when they are no longer needed for agency business. NFTS records associated with an A-File will be retained on a permanent basis even after the A-File has been retired to NARA to retain accurate recordkeeping. Other immigration case files with a shorter retention period will have the associated NFTS record destroyed or deleted once the file has been destroyed.

MiDAS information (data and electronic images) pertaining to correspondence with the public and government requestor is retained and disposed every six years in accordance with the NARA General Records Schedules 4.2 and 14. The immigration case files contained in MiDAS are retained permanently. Records are transferred to NARA after 100 years after the last completed action.

Records replicated on the unclassified and classified networks for analysis and vetting will follow the same retention schedule.

**ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:**

DHS/USCIS safeguards records in this system according to applicable rules and policies, including all applicable DHS automated systems security and access policies. USCIS has imposed strict controls to minimize the risk of compromising the information that is being stored. Access to the computer system containing the records in this system is limited to those individuals who have a need to know the information for the performance of their official duties and who have appropriate clearances or permissions.

**RECORD ACCESS PROCEDURES:**

The Secretary of Homeland Security has exempted this system from the notification, access, and amendment procedures of the Privacy Act, and those of the Judicial Redress Act (JRA) if applicable, because it is a law enforcement system. However, DHS/USCIS will consider individual requests to determine whether or not information may be released. Thus, individuals seeking access to and notification of any record contained in this system of records, or seeking to contest its content, may submit a request in writing to the Chief Privacy Officer and USCIS Freedom of Information Act (FOIA) Officer, whose contact information can be found at *http://www.dhs.gov/foia* under "Contacts Information." If an individual believes that more than one component maintains Privacy Act records concerning him or her, the individual may submit the request to the Chief Privacy Officer and Chief Freedom of Information Act Officer, Department of Homeland Security, Washington, DC 20528–0655. Even if neither the Privacy Act nor the Judicial Redress Act provide a right of access, certain records about you may be available under the FOIA.

When seeking records about yourself from this system of records or any other Departmental system of records, your request must conform with the Privacy Act regulations set forth in 6 CFR part 5. You must first verify your identity, meaning that you must provide your full name, current address, and date and place of birth. You must sign your request, and your signature must either be notarized or submitted under 28 U.S.C. 1746, a law that permits statements to be made under penalty of perjury as a substitute for notarization. While no specific form is required, you may obtain forms for this purpose from the Chief Privacy Officer and Chief Freedom of Information Act Officer, *http://www.dhs.gov/foia* or 1–866–431–0486. In addition, you should:

- Explain why you believe the Department would have information on you;
- Identify which component(s) of the Department you believe may have the information about you;
- Specify when you believe the records would have been created; and
- Provide any other information that will help the FOIA staff determine which DHS component agency may have responsive records.

If your request is seeking records pertaining to another living individual, you must include a statement from that individual certifying his/her agreement for you to access his/her records.

Without the above information, the component(s) may not be able to conduct an effective search, and your request may be denied due to lack of specificity or lack of compliance with applicable regulations.

**CONTESTING RECORD PROCEDURES:**

For records covered by the Privacy Act or covered JRA records, see "access procedures" above.

**NOTIFICATION PROCEDURES:**

See "Record Access procedure."

**EXEMPTIONS PROMULGATED FOR THE SYSTEM:**

The Secretary of Homeland Security has exempted this system from the following provisions of the Privacy Act pursuant to 5 U.S.C. 552a(j)(2): 5 U.S.C. 552a(c)(3), (c)(4), (d), (e)(1), (e)(2), (e)(3), (e)(4)(G), (e)(4)(H), (e)(4)(I), (e)(5), (e)(8), (e)(12), (f), (g)(1), and (h). Additionally, the Secretary of Homeland Security has exempted this system from the following provisions of the Privacy Act pursuant to 5 U.S.C. 552a(k)(1) and (k)(2): 5 U.S.C. 552a(c)(3), (d), (e)(1), (e)(4)(G), (e)(4)(H), (e)(4)(I), and (f).

When this system receives a record from another system exempted in that source system under 5 U.S.C. 552a(j)(2), DHS will claim the same exemptions for those records that are claimed for the original primary systems of records from which they originated and claims any additional exemptions set forth here.

**HISTORY:**

DHS/USCIS/ICE/CBP–001 Alien File, Index, and National File Tracking

**Federal Register** / Vol. 82, No. 179 / Monday, September 18, 2017 / Notices     **43565**

System of Records, 78 FR 69864 (Nov. 21, 2013); Alien File, Index, and National File Tracking SORN, 76 FR 34233l (Jun. 13, 2011); Alien File (A-File) and Central Index System (CIS) Systems of Records 78 FR 1755 (Jan. 16, 2007).

**Jonathan R. Cantor,**

*Acting Chief Privacy Officer, Department of Homeland Security.*

[FR Doc. 2017–19365 Filed 9–15–17; 8:45 am]

**BILLING CODE 9111–97–P**

---

## DEPARTMENT OF HOMELAND SECURITY

### U.S. Immigration and Customs Enforcement

**[OMB Control Number 1653–0038]**

### Agency Information Collection Activities: Student and Exchange Visitor Information System (SEVIS); Extension, Without Change, of a Currently Approved Collection

**AGENCY:** U.S. Immigration and Customs Enforcement, Department of Homeland Security.

**NOTICE:** 60-day notice.

**SUMMARY:** The Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE) will be submitting the following information collection request to the Office of Management and Budget (OMB) for review and clearance in accordance with the Paperwork Reduction Act of 1995. The information collection is published in the **Federal Register** to obtain comments from the public and affected agencies.

**DATES:** Comments are encouraged and will be accepted for sixty days until November 17, 2017.

**ADDRESSES:** Written comments and suggestions regarding items contained in this notice and especially with regard to the estimated public burden and associated response time should be directed the Department of Homeland Security (DHS), PRA Clearance Officer, U.S. Immigrations and Customs Enforcement, 801 I Street NW., Mailstop 5800, Washington, DC 20536–5800.

**SUPPLEMENTARY INFORMATION:** Written comments and suggestions from the public and affected agencies concerning the proposed collection of information should address one or more of the following four points:

(1) Evaluate whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility;

(2) Evaluate the accuracy of the agencies estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used;

(3) Enhance the quality, utility, and clarity of the information to be collected; and

(4) Minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, *e.g.,* permitting electronic submission of responses.

### Overview of This Information Collection

(1) *Type of Information Collection:* Extension, without change, of a currently approved information collection.

(2) *Title of the Form/Collection:* Student and Exchange Visitor Information System (SEVIS).

(3) *Agency form number, if any, and the applicable component of the Department of Homeland Security sponsoring the collection:* Forms I–17 and I–20; U.S. Immigration and Customs Enforcement.

(4) *Affected public who will be asked or required to respond, as well as a brief abstract:* Primary Non-profit institutions and individuals or households. SEVIS is an Internet-based data-entry, collection and reporting system. It collects information on SEVP-certified schools via the Form I–17, ''Petition for Approval of School for Attendance by Nonimmigrant Student,'' and collects information on the F and M nonimmigrant students that the SEVP-certified schools admit into their programs of study via the Forms I–20s: ''Certificate of Eligibility for Nonimmigrant (F–1) Student Status— For Academic and Language Students'' and ''Certificate of Eligibility for Nonimmigrant (M–1) Student Status— For Vocational Students''

(5) *An estimate of the total number of respondents and the amount of time estimated for an average respondent to respond:*

| Number of respondents | Form name/Form No. | Average burden per response (in hours) |
|---|---|---|
| 280,000 .......... | Certificate of Eligibility for Nonimmigrant (F–1) Student Status—For Academic and Language Students/ICE Form I–20 (Students). | 0.5 |
| 90,000 ............. | Certificate of Eligibility for Nonimmigrant (M–1) Student Status—For Academic and Language Students/ICE Form I–20 (Spouse/Dependents). | 0.5 |
| 280,000 .......... | Optional Practical Training 12 Month Request/No Form ................................................................................ | 0.083 |
| 12,000 ............. | Optional Practical Training 17 Month Extension Request/No Form ............................................................... | 0.083 |
| 5,525 .............. | Maintenance of SEVP Certification/ICE Form I–17 ........................................................................................ | 4 |

(6) *An estimate of the total public burden (in hours) associated with the collection:* 1,027,884 annual burden hours.

Dated: September 12, 2017.

**Scott Elmore,**

*PRA Clearance Officer, Office of the Chief Information Officer, U.S. Immigration and Customs Enforcement, Department of Homeland Security.*

[FR Doc. 2017–19713 Filed 9–15–17; 8:45 am]

**BILLING CODE 9111–28–P**

## DEPARTMENT OF THE TREASURY

### Internal Revenue Service

### Privacy Act of 1974, as Amended; System of Records Notice

**AGENCY:** Internal Revenue Service, Treasury

**ACTION:** Notice of systems of records.

**SUMMARY:** In accordance with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a, the Internal Revenue Service, Treasury, is publishing its inventory of Privacy Act systems of records.

**SUPPLEMENTARY INFORMATION:** Pursuant to the Privacy Act of 1974 (5 U.S.C. 552a) and the Office of Management and Budget (OMB) Circular No. A–130, the Internal Revenue Service (IRS) has completed a review of its Privacy Act systems of records notices to identify minor changes that will more accurately describe these records.

The changes throughout the document are editorial in nature and consist principally of changes to system manager titles, clarifications to the individuals or records covered, and updates to addresses.

Eleven systems of records have been amended and published to the IRS' inventory of Privacy Act notices since August 10, 2012.

The following three systems of records maintained by the IRS Division Commissioner, Wage and Investment (W&I) were amended on December 11, 2014, beginning at 79 FR 73702:

IRS 22.062—Electronic Filing Records;
IRS 24.030—Customer Account Data Engine Individual Master File; and
IRS 24.046—Customer Account Data Engine Business Master File.

The following two systems of records maintained by the IRS Director, Facilities Management and Security Services, were amended on February 11, 2015, beginning at 80 FR 7685, and March 11, 2013, beginning at 78 FR 15407, respectively:

IRS 34.013—Identification Media Files System for Employees and Others Issued IRS Identification; and
IRS 34.037—Audit Trail and Security Records.

The following system of records maintained by the IRS Director, Office of Professional Responsibility (OPR) was amended on September 14, 2012, beginning at 77 FR 56913:

IRS 37.007—Practitioner Disciplinary Records.

This publication also incorporates the changes to systems of records maintained by the IRS Chief, Criminal Investigation, as published on March 7, 2014, beginning at 79 FR 13089:

IRS 46.002—Criminal Investigation Management Information System (CIMIS) and Case Files;
IRS 46.003—Confidential Informants;
IRS 46.005—Electronic Surveillance Files;
IRS 46.015—Relocated Witnesses; and
IRS 46.050—Automated Information Analysis System.

Several existing systems of records notices included only one of a matched pair of routine uses which are standard for the IRS. The matched pair of routine uses provides for disclosure, (1) by IRS to the Department of Justice (DOJ) when IRS determines the records are relevant to DOJ's ability to provide legal assistance to the IRS, or are relevant to litigation which DOJ is handling; and (2) by IRS or DOJ before a court, tribunal, or other adjudicative body when IRS or DOJ determines the information is relevant or necessary for purposes of the proceeding. Both routine uses are included in many notices and adding the missing routine use of the pair merely clarifies that records in these systems of records may be disclosed in the same manner as similar records in other notices. Adding the first routine use clarifies that IRS can disclose records to DOJ when IRS determines the records are relevant and useful to DOJ's ability to properly perform duties on behalf of the IRS. Adding the second routine use clarifies that either the IRS or DOJ may disclose records in a proceeding before a court, tribunal, or other adjudicative body when those records are relevant and necessary to the proceeding. The following systems of records have been updated to reflect a matched pair of routine uses:

IRS 00.008—Recorded Quality Review Records;
IRS 21.001—Tax Administration Advisory Services Resources Records;
IRS 22.062—Electronic Filing Records;
IRS 34.009—Safety Program Files;
IRS 34.012—Emergency Preparedness Cadre Assignments and Alerting Roster Files;
IRS 34.013—Identification Media Files System for Employees and Others Issued IRS Identification;
IRS 34.014—Motor Vehicle Registration and Entry Pass Files;
IRS 34.016—Security Clearance Files;
IRS 34.021—Personnel Security Investigations;
IRS 48.001—Disclosure Records;
IRS 48.008—Defunct Special Service Staff Files Being Retained Because of Congressional Directive; and
IRS 60.000—Employee Protection System Records.

Additionally, IRS 36.003, General Personnel and Payroll, was updated to provide a non-exclusive list of the categories of records included under the broad category of general personnel and payroll records. The categories of records were updated to better define personnel and payroll records (*e.g.*, office/building security records, disciplinary action records, travel/ moving expense records, insurance/ beneficiary records, personal addresses, personal telephone numbers, personal email addresses, emergency contact information, and payroll deduction records). Providing a listing of some of these records helps define the broad reach of this system of records, while still demonstrating that all records are generally within the category of personnel materials.

Routine uses for two systems of records were updated to reflect that returns and return information may be disclosed only as authorized in Internal Revenue Code (IRC) 6103. Updates were made to:

IRS 36.003—General Personnel and Payroll; and
IRS 35.001—Reasonable Accommodation Requests.

Records retention information has been updated to reflect that Records Control Schedules 8 through 37 are now found in Document 12990, and Schedules 38 through 64 are now found in Document 12829.

Finally, system of records 22.012 will be withdrawn as of January 1, 2017, unless the IRS receives information supporting continuing maintenance of these records; the tax credit expired as of January 1, 2014, and the records are scheduled for destruction three years after the end of their usage.

The following systems are withdrawn:

### Treasury/IRS

26.055, Private Collection Agency (PCA) Quality Review Records

This system is withdrawn because the use of private collection agencies was discontinued in 2009, and these records are no longer maintained.

46.009, Centralized Evaluation and Processing of Information Items (CEPIIs), Evaluation and Processing of Information (EOI)

The system is withdrawn because it duplicated records described by other systems included in the amended revisions of IRS Criminal Investigation systems.

### Systems Covered by This Notice

This notice covers all systems of records maintained by the IRS as of September 8, 2015. The system notices

**Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices **54065**

are reprinted in their entirety following the Table of Contents.

**Helen Goff Foster,**

*Deputy Assistant Secretary for Privacy, Transparency, and Records.*

**Table of Contents**

**Internal Revenue Service**

IRS 00.001—Correspondence Files and Correspondence Control Files
IRS 00.002—Correspondence Files: Inquiries about Enforcement Activities
IRS 00.003—Taxpayer Advocate Service and Customer Feedback and Survey Records
IRS 00.007—Employee Complaint and Allegation Referral Records
IRS 00.008—Recorded Quality Review Records
IRS 00.009—Taxpayer Assistance Center Recorded Quality Review Records
IRS 00.333—Third Party Contact Records
IRS 00.334—Third Party Contact Reprisal Records
IRS 10.001—Biographical Files, Communications and Liaison
IRS 10.004—Stakeholder Relationship Management and Subject Files
IRS 10.555—Volunteer Records
IRS 21.001—Tax Administration Advisory Services Resources Records
IRS 22.003—Annual Listing of Undelivered Refund Checks
IRS 22.011—File of Erroneous Refunds
IRS 22.012—Health Coverage Tax Credit (HCTC) Program Records
IRS 22.026—Form 1042S Index by Name of Recipient
IRS 22.027—Foreign Information System
IRS 22.028—Disclosure Authorizations for U.S. Residency Certification Letters
IRS 22.032—Individual Microfilm Retention Register
IRS 22.054—Subsidiary Accounting Files
IRS 22.060—Automated Non-Master File
IRS 22.061—Information Return Master File
IRS 22.062—Electronic Filing Records
IRS 24.030—Customer Account Data Engine Individual Master File
IRS 24.046—Customer Account Data Engine Business Master File
IRS 24.047—Audit Underreporter Case Files
IRS 26.001—Acquired Property Records
IRS 26.006—Form 2209, Courtesy Investigations
IRS 26.009—Lien Files
IRS 26.012—Offer in Compromise Files
IRS 26.013—Trust Fund Recovery Cases/One Hundred Percent Penalty Cases
IRS 26.014—Record 21, Record of Seizure and Sale of Real Property
IRS 26.019—Taxpayer Delinquent Accounts Files
IRS 26.020—Taxpayer Delinquency Investigation Files
IRS 26.021—Transferee Files
IRS 30.003—Requests for Printed Tax Materials Including Lists
IRS 30.004—Security Violations
IRS 34.003—Assignment and Accountability of Personal Property Files
IRS 34.009—Safety Program Files
IRS 34.012—Emergency Preparedness Cadre Assignments and Alerting Roster Files

IRS 34.013—Identification Media Files System for Employees and Others Issued IRS Identification
IRS 34.014—Motor Vehicle Registration and Entry Pass Files
IRS 34.016—Security Clearance Files
IRS 34.021—Personnel Security Investigations
IRS 34.022—Automated Background Investigations System (ABIS)
IRS 34.037—Audit Trail and Security Records System
IRS 35.001—Reasonable Accommodation Request Records
IRS 36.001—Appeals, Grievances and Complaints Records
IRS 36.003—General Personnel and Payroll Records
IRS 37.006—Correspondence, Miscellaneous Records and Information Management Records
IRS 37.007—Practitioner Disciplinary Records
IRS 37.009—Enrolled Agent and Enrolled Retirement Plan Agent Records
IRS 37.111—Preparer Tax Identification Number Records
IRS 42.001—Examination Administrative Files
IRS 42.002—Excise Compliance Programs
IRS 42.005—Whistleblower Office Records
IRS 42.008—Audit Information Management System
IRS 42.017—International Enforcement Program Information Files
IRS 42.021—Compliance Programs and Projects Files
IRS 42.027—Data on Taxpayers' Filing on Foreign Holdings
IRS 42.031—Anti-Money Laundering/Bank Secrecy Act (BSA) and Form 8300
IRS 42.888—Qualifying Therapeutic Discovery Project Records
IRS 44.001—Appeals Case Files
IRS 44.003—Appeals Centralized Data
IRS 44.004—Art Case Files
IRS 44.005—Expert Witness and Fee Appraiser Files
IRS 46.002—Criminal Investigation Management Information System and Case Files
IRS 46.003—Confidential Informants
IRS 46.005—Electronic Surveillance and Monitoring Records
IRS 46.015—Relocated Witnesses
IRS 46.050—Automated Information Analysis System
IRS 48.001—Disclosure Records
IRS 48.008—Defunct Special Service Staff Files Being Retained Because of Congressional Directive
IRS 49.001—Collateral and Information Requests System
IRS 49.002—Tax Treaty Information Management System
IRS 50.001—Tax Exempt & Government Entities (TE/GE) Correspondence Control Records
IRS 50.003—Tax Exempt & Government Entities (TE/GE) Reports of Significant Matters
IRS 50.222—Tax Exempt/Government Entities (TE/GE) Case Management Records
IRS 60.000—Employee Protection System Records
IRS 70.001—Individual Income Tax Returns, Statistics of Income

IRS 90.001—Chief Counsel Management Information System Records
IRS 90.002—Chief Counsel Litigation and Advice (Civil) Records
IRS 90.003—Chief Counsel Litigation and Advice (Criminal) Records
IRS 90.004—Chief Counsel Legal Processing Division Records
IRS 90.005—Chief Counsel Library Records
IRS 90.006—Chief Counsel Human Resources and Administrative Records

## Internal Revenue Service (IRS)

**Treasury/IRS 00.001**

SYSTEM NAME:

Correspondence Files and Correspondence Control Files—Treasury/IRS.

SYSTEM LOCATION:

National Office, field and campus offices. (See the IRS Appendix below for address.)

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Initiators of correspondence; persons upon whose behalf the correspondence is initiated (including customers and employees who are asked to complete surveys); and subjects of correspondence.

CATEGORIES OF RECORDS IN THE SYSTEM:

Correspondence received and sent with respect to matters under the jurisdiction of the IRS. Correspondence includes letters, telegrams, memoranda of telephone calls, email, and other forms of communication. Correspondence may be included in other systems of records described by specific notices.

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

5 U.S.C. 301 and 26 U.S.C. 7801.

PURPOSE:

To track correspondence including responses from voluntary surveys.

ROUTINE USES OF RECORDS MAINTAINED BY THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USES:

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her

**54066**    **Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices

individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a Federal, state, local, or tribal agency, or other public authority that has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(4) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of, a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to foreign governments in accordance with international agreements.

(6) Disclose information to the news media as described in IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(7) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(8) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(9) To appropriate agencies, entities, and persons when: (a) The IRS suspects

or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By name.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

System Manager may be any IRS supervisor. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

See "Record Access Procedures" above.

**RECORD SOURCE CATEGORIES:**

Initiators of correspondence and information secured internally from other systems of records in order to prepare responses.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS  00.002**

**SYSTEM NAME:**

Correspondence Files: Inquiries about Enforcement Activities—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Initiators of correspondence; persons upon whose behalf the correspondence was initiated; and subjects of the correspondence. Includes individuals for whom tax liabilities exist, individuals who have made a complaint or inquiry, or individuals for whom a third party is interceding relative to an internal revenue tax matter.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Taxpayer name, address, and, if applicable, Taxpayer Identification Number (TIN) (e.g., Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS); chronological investigative history; other information relative to the conduct of the case; and/ or the taxpayer's compliance history. Correspondence may include letters, telegrams, memoranda of telephone calls, email, and other forms of communication.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To track correspondence concerning enforcement matters.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS

**Federal Register**/Vol. 80, No. 173/Tuesday, September 8, 2015/Notices

employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a Federal, state, local, or tribal agency, or other public authority, which has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(4) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of, a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving agency.

(5) Disclose information to foreign governments in accordance with international agreements.

(6) Disclose information to the news media as described in the IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(7) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(8) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(9) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By name.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioners, SB/SE, TE/GE, and W&I, and Chief, Criminal Investigation. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated exempt from sections (c)(3); (d)(1)–(4); (e)(1); (e)(4)(G)–(I); and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36).

**Treasury/IRS 00.003**

**SYSTEM NAME:**

Taxpayer Advocate Service and Customer Feedback and Survey Records—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals who provide feedback (both complaints and compliments) about IRS employees, including customer responses to surveys from IRS business units and IRS employees about whom complaints and compliments are received by the Taxpayer Advocate Service.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Quality review and tracking information, customer feedback, and reports on current and former IRS employees and the resolution of that feedback.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301; 26 U.S.C. 7801; and Sec. 1211 of Pub. L. 104–168, Taxpayer Bill of Rights (TBOR) 2.

**PURPOSE:**

To improve quality of service by tracking customer feedback (including complaints and compliments), and to analyze trends and to take corrective action on systemic problems.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise

there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name, Taxpayer Identification Number (TIN) (*e.g.*, Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS), and administrative case control number.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Taxpayer Advocate Service National Office and field offices or Head of the Office where the records are maintained. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

See "Record Access Procedures" above.

**RECORD SOURCE CATEGORIES:**

Customer feedback and information from IRS employees.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS  00.007**

**SYSTEM NAME:**

Employee Complaint and Allegation Referral Records—Treasury/IRS.

**SYSTEM LOCATION:**

Operations Support: Human Capital Office (Workforce Relations: Employee Conduct and Compliance Office). (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Current or former IRS employees or contractors of the IRS who are the subject of complaints received by the IRS, including complaints received by the Treasury Inspector General for Tax Administration (TIGTA) that are forwarded to the IRS; and individuals who submit these complaints.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Documents containing the complaint, allegation or other information regarding current and former IRS employees and contractors; documents reflecting investigations or other inquiries into the complaint, allegation or other information; and documents reflecting management's actions taken in response to a complaint, allegation or other information.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301; 26 U.S.C. 7801; Sections 3701 and 7803 of Public Law 105–206, IRS Restructuring and Reform Act of 1998 (RRA1998); and Section 1211 of Public Law 104–168, Taxpayer Bill of Rights 2 (TBOR2).

**PURPOSE:**

To provide a timely and appropriate response to complaints and allegations concerning current and former IRS employees and contractors; and to advise complainants of the status, and results, of investigations or inquiries into those complaints or allegations.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a Federal, state, local, or tribal agency, or other public authority, which has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(4) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(6) Disclose information to professional organizations or associations with which individuals covered by this system of records may be affiliated, such as state bar disciplinary authorities, to meet their responsibilities in connection with the administration and maintenance of standards of conduct and discipline.

**Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices    **54069**

(7) Disclose information to complainants or victims to provide such persons with information and explanations concerning the progress and/or results of the investigation or case arising from the matters of which they complained and/or of which they were a victim. Information concerning the progress of the investigation or case is limited strictly to whether the investigation/case is opened or closed. Information about any disciplinary action is provided only after the subject of the action has exhausted all reasonable appeal rights.

(8) Disclose information to a contractor, including an expert witness or a consultant hired by the IRS, to the extent necessary for the performance of a contract.

(9) Disclose information to complainants or victims to provide such persons with information and explanations concerning the progress and/or results of the investigation or case arising from the matters of which they complained and/or of which they were a victim. Information concerning the progress of the investigation or case is limited strictly to whether the case is open or closed. Information about any disciplinary action is provided only after the subject of the action has exhausted all reasonable appeal rights.

(10) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By name of individual who submitted the complaint, allegation or other information; or by name of the individual who is the subject of the complaint, allegation or other information.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Chief Human Capital Officer (Operations Support, National Office). (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records. Other records are exempt from contest as stated in ''Record Access Procedures'' above.

**RECORD SOURCE CATEGORIES:**

This system of records is exempt from the Privacy Act provision which requires that record source categories be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated exempt from sections (c)(3), (d), (e)(1), (e)(4)(G)–(I), and (f) of the Privacy Act pursuant to U.S.C. 552a(k)(2). (See 31 CFR 1.36).

**Treasury/IRS  00.008**

**SYSTEM NAME:**

Recorded Quality Review Records—Treasury/IRS.

**SYSTEM LOCATION:**

Wage & Investment (W&I) call sites. A list of these sites is available on-line at: *http://www.irs.gov/help/article/0,,id=96730,00.html.* See the IRS Appendix below for other W&I addresses.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Employees who respond to taxpayer assistance calls.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Quality review and employee performance feedback program records.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To administer quality review programs at call sites. Information maintained includes questions and other statements from taxpayers or their representatives on recordings. The primary focus of the system is to improve service of, and retrieve information by, the employee and not to focus on the taxpayer.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice, or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by the proceeding, and the IRS determines that the records are relevant and useful.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a contractor, including an expert witness or a consultant hired by the IRS, to the extent necessary for the performance of a contract.

(4) To appropriate agencies, entities, and persons when: (a) The IRS suspects

or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By IRS employee/assistor's name or identification number (*e.g.*, SEID, badge number). Recorded calls or screens are not retrieved by taxpayer name or Taxpayer Identification Number (TIN) (*e.g.*, Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS).

**SAFEGUARDS:**

Access controls are not less than those provided for by IRM 10.8, Information Technology (IT) Security and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990). Audio recordings and screen capture images are kept long enough for the review and discussion process to take place, generally not more than 45 days.

**SYSTEM MANAGER AND ADDRESS:**

Director, Customer Account Services, W&I. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in ''Record Access Procedures'' below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its

content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Records in this system are provided by IRS employees identifying themselves when they provide information to assist a taxpayer.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 00.009**

**SYSTEM NAME:**

Taxpayer Assistance Center (TAC) Recorded Quality Review Records—Treasury/IRS.

**SYSTEM LOCATION:**

W&I Taxpayer Assistance Centers. A list of these sites is available on-line at: *http://www.irs.gov/localcontacts.* See the IRS Appendix below for other W&I addresses.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Employees who respond to in-person taxpayer assistance contacts.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Audio recordings of conversations with taxpayers, captured computer screen images of taxpayer records reviewed during the conversation, and associated records required to administer quality review and employee performance feedback programs.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To evaluate and improve employee performance and the quality of service at TAC sites.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any

proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of, a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(4) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(5) Disclose information to a contractor, including an expert witness or a consultant hired by the IRS, to the extent necessary for the performance of a contract.

(6) Disclose information to an arbitrator, mediator, or other neutral, in the context of alternative dispute resolution, to the extent relevant and necessary for resolution of the matters presented, including asserted privileges. Information may also be disclosed to the parties in the alternative dispute resolution proceeding.

(7) Disclose information to the Office of Personnel Management, Merit Systems Protection Board, the Office of Special Counsel, or the Equal Employment Opportunity Commission when the records are relevant and

necessary to resolving personnel, discrimination, or labor management matters within the jurisdiction of these offices.

(8) Disclose information to the Federal Labor Relations Authority, including the Office of the General Counsel of that authority, the Federal Service Impasses Board, or the Federal Mediation and Conciliation Service, when the records are relevant and necessary to resolving any labor management matter within the jurisdiction of these offices.

(9) Disclose information to the Office of Government Ethics when the records are relevant and necessary to resolving any conflict of interest, conduct, financial statement reporting, or other ethics matter within the jurisdiction of that office.

(10) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By name of the employee to whom they apply.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990). Audio recordings and screen capture images are kept long enough for the review and discussion process to take place, generally not more than 45 days.

The agency may keep audio recordings and captured computer screen images for a longer period under certain circumstances, including, but not limited to, resolution of matters pertaining to poor employee performance, security (threat, altercation, etc.), or conduct-related issues.

**SYSTEM MANAGER AND ADDRESS:**

Director, Customer Account Services, W&I. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Records in this system are provided by taxpayers, employees, and IRS taxpayer account records.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS  00.333**

**SYSTEM NAME:**

Third Party Contact Records—Treasury/IRS.

**SYSTEM LOCATION:**

Field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals on whom Federal tax assessments have been made; individuals believed to be delinquent in filing Federal tax returns or in paying Federal taxes, penalties or interest; individuals who are or have been considered for examination for tax determination purposes, *i.e.,* income, estate and gift, excise or employment tax liability.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records of third party contacts including the taxpayer's name;

Taxpayer Identification Number (TIN) (*e.g.,* Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS); the third party contact's name; date of contact; and IRS employee's identification number (*e.g.,* SEID, badge number).

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301; 26 U.S.C. 7602(c); and 7801.

**PURPOSE:**

To comply with 26 U.S.C. 7602(c), records document third party contacts with respect to the determination or collection of the tax liability of the taxpayer. Third party contact data is provided periodically to taxpayers and upon the taxpayer's written request.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer's name or TIN.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security and IRM 10.2, Physical Security Program.

**54072**    **Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Director, Collection, Small Business/Self-Employed Division (SB/SE). (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Tax records of the individual; public information sources; third parties including individuals, city and state governments, other Federal agencies, taxpayer's employer, employees and/or clients, licensing and professional organizations, and foreign governments under tax treaties.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS  00.334**

**SYSTEM NAME:**

Third Party Contact Reprisal Records—Treasury/IRS.

**SYSTEM LOCATION:**

Field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals on whom Federal tax assessments have been made; individuals believed to be delinquent in filing Federal tax returns or in paying Federal taxes, penalties or interest; individuals who are or have been considered for examination for tax determination purposes; *i.e.*, income, estate and gift, excise or employment tax liability.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records of third party contacts as described in 26 U.S.C. 7602(c), where reprisal determinations have been made, including the taxpayer name, Taxpayer Identification Number (TIN) (*e.g.*, Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS); date of contact; fact of reprisal determination; and IRS employee's identification number (*e.g.*, SEID, badge number).

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301; 26 U.S.C. 7602(c); and 7801.

**PURPOSE:**

To track the number of reprisal determinations made pursuant to 26 U.S.C. 7602(c)(3)(B).

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By name and/or TIN.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Director, Collection, SB/SE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

This system of records is exempt from the Privacy Act provision which requires that record source categories be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated exempt from sections (c)(3); (d)(1)–(4); (e)(1); (e)(4)(G)–(I); and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36).

**Treasury/IRS  10.001**

**SYSTEM NAME:**

Biographical Files, Communications and Liaison—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

IRS employees.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records are biographical data and photographs of key IRS employees.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the media and the public.

**Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices    **54073**

(2) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**
Paper records and electronic media.

**RETRIEVABILITY:**
By key employee's name.

**SAFEGUARDS:**
Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**
Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**
Chief, Communications & Liaison. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**
Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**
Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**
See "Record Access Procedures" above.

**RECORD SOURCE CATEGORIES:**
By employees.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**
None.

**Treasury/IRS 10.004**

**SYSTEM NAME:**
Stakeholder Relationship Management and Subject Files— Treasury/IRS.

**SYSTEM LOCATION:**
National Office, field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**
Individuals who have stakeholder relationships with the IRS, including individuals who attend IRS forums and educational outreach meetings.

**CATEGORIES OF RECORDS IN THE SYSTEM:**
Records include stakeholder relationship information, correspondence, newspaper clippings, email and other forms of communication.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**
5 U.S.C. 301.

**PURPOSE OF THE SYSTEM:**
To track stakeholder relationships and inform individuals about tax administration.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**
Records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.
(1) Disclose information to the media and the public.
(2) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**
Paper records and electronic media.

**RETRIEVABILITY:**
By name or administrative case control number.

**SAFEGUARDS:**
Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**
Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**
Chief, Communications & Liaison. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**
Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**
Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**
See "Record Access Procedures" above.

**RECORD SOURCE CATEGORIES:**
Information from news media, and correspondence within the IRS and from IRS stakeholders.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**
None.

**Treasury/IRS 10.555**

**SYSTEM NAME:**
Volunteer Records—Treasury/IRS.

**SYSTEM LOCATION:**
W&I National Office, field and campus offices. See IRS the IRS Appendix below for addresses.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**
Individuals who promote and participate in IRS volunteer programs;

and individuals who have an interest in promoting tax outreach and return preparation, including tax professionals and practitioners.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Volunteer names; contact information; Electronic Filing Identification Numbers (EFINs); and information to be used in program administration; and information pertaining to reviews of each site and other information about volunteer operations.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To manage IRS volunteer programs, including determining assignments of IRS resources to various volunteer programs and making recommendations for training or other quality improvement measures.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) the IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) the IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the Department of Justice (DOJ) has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a contractor, including an expert witness

or a consultant, hired by the IRS to the extent necessary for the performance of a contract.

(4) Disclose information to the news media as described in the IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(5) Provide information to volunteers who coordinate activities and staffing at taxpayer assistance sites.

(6) To appropriate agencies, entities, and persons when: (a) the IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By the name of the volunteer. Records pertaining to electronic filing capabilities may also be retrieved by the electronic filing identification number (EFIN).

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioner, W&I. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix

B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

Individuals seeking to contest content of a record in this system of records may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B.

**RECORD SOURCE CATEGORIES:**

Treasury employees; Federal, state, or local agencies that sponsor free financial services in coordination with IRS; taxpayers who visit these sites; and volunteer individuals and organizations that provide free tax preparation and tax-related services to these taxpayers.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 21.001**

**SYSTEM NAME:**

Tax Administration Advisory Services Resources Records—Treasury/IRS.

**SYSTEM LOCATION:**

Office of Tax Administration Advisory Services (TAAS), LB&I (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Past and potential tax administration advisors who have served or indicated an interest in serving on advisory assignments, and selected officials engaged in tax administration and related fields for matters pertaining to international issues.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Applicant roster database, locator cards or lists with names, addresses, telephone numbers, and organizational affiliations of officials engaged in tax administration; work assignment or application folders of past and potential tax administration advisors, which contain employment history, information, medical abstracts, security clearances, and passport information; bio-data sketches on IRS employees and others engaged in tax administration and related fields.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices    **54075**

**PURPOSE:**

To identify employees who have expressed an interest in overseas assignments, and to identify historical and current activities pertaining to international issues.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof: (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a part to, has an interest in, or is likely to be affected by, the proceeding, and the IRS or the DOJ determines that the information is relevant and necessary. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) To appropriate agencies, entities, and persons when: (a) the IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is

reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By employee name.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioner, (LB&I). (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be address to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURESS:**

See "Record Access Procedures" above.

**RECORD SOURCE CATEGORIES:**

Individuals, organizations with which they are associated, or other knowledgeable tax administration experts.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 22.003**

**SYSTEM NAME:**

Annual Listing of Undelivered Refund Checks—Treasury/IRS.

**SYSTEM LOCATION:**

Field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Taxpayers whose refund checks have been returned as undeliverable since the last Annual Listing of Undelivered Refund Checks was produced.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Taxpayer name, address, Taxpayer Identification Number (TIN) (e.g., Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS), and records containing tax module information (tax period, amount of credit balance and Document Locator Number (DLN)).

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To keep track of refund checks returned as undeliverable.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name or TIN.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information

Technology (IT) Security and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioners, W&I and SB/SE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Tax returns and other filings made by the individual and agency entries made in the administration of the individual's tax account.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 22.011**

**SYSTEM NAME:**

File of Erroneous Refunds—Treasury/IRS.

**SYSTEM LOCATION:**

Campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Taxpayers issued erroneous refunds.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Case reference taxpayer name, Taxpayer Identification Number (TIN) (e.g., Social Security Number (SSN), Employer Identification Number (EIN), or other similar number assigned by IRS), administrative control number, date of erroneous refund, statute expiration date, status of case, location, correspondence and research material.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To maintain records necessary to resolve erroneous refunds.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name and TIN.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioners, W&I and SB/SE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Tax returns and other filings made by the individual and agency entries made in the administration of the individual's tax account.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 22.012**

**SYSTEM NAME:**

Health Coverage Tax Credit (HCTC) Program Records—Treasury/IRS.

**SYSTEM LOCATION:**

W&I National Office and HCTC contractor location offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals who apply for and are eligible for the credit.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records required to administer the HCTC program.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, 26 U.S.C. 35, 7527, and 7801.

**PURPOSE:**

To administer the health care tax credit (HCTC) provisions.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise

there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name, Taxpayer Identification Number (TIN) (*e.g.*, Social Security Number (SSN), Employer Identification Number (EIN), or other similar number assigned by the IRS), or health care insurance policy number.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER(S) AND ADDRESS:**

Division Commissioner, W&I. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below. The IRS may assert 5 U.S.C. 552a(d)(5) as appropriate.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Individuals eligible under HCTC program; IRS taxpayer account information; Health Coverage providers; Department of Labor; Pension Benefit Guaranty Corporation; state workforce agencies, and the Department of Health and Human Services.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS  22.026**

**SYSTEM NAME:**

Form 1042S Index by Name of Recipient—Treasury/IRS.

**SYSTEM LOCATION:**

Campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

U.S. citizens living abroad subject to federal tax withholding.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records include taxpayer's name, address, country of residence and Taxpayer Identification Number (TIN) (*e.g.*, Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS), and name of withholding agent.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To administer the back-up withholding laws and regulations.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is

reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name and TIN.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioner, (LB&I) (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below. The IRS may assert 5 U.S.C. 552a(d)(5) as appropriate.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Tax returns and other filings made by the individual and agency entries made in the administration of the individual's tax account.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS  22.027**

**SYSTEM NAME:**

Foreign Information System (FIS)—Treasury/IRS.

**SYSTEM LOCATION:**

Large Business and International (LB&I) National Office, field, and

**54078**    **Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices

campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individual taxpayers who file Form 5471, Information Return with Respect to a Foreign Corporation and Form 5472, Information Return of a Foreign Owned Corporation.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Taxpayer name, address, Taxpayer Identification Number (TIN) (e.g., Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS), foreign corporation identification, information relating to stock, U.S. shareholders, Earnings and Profits, Balance Sheet, and other available accounting information relating to a specific taxable period.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To administer laws and regulations relative to foreign owned corporations.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

Documents are stored and retrieved by Document Locator Number (DLN).

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioner, (LB&I). (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Tax returns and other filings made by the individual and agency entries made in the administration of the individual's tax account.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 22.028**

**SYSTEM NAME:**

Disclosure Authorizations for U.S. Residency Certification Letters— Treasury/IRS.

**SYSTEM LOCATION:**

Philadelphia Campus. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals and third parties who are subjects of correspondence and who initiate correspondence requesting U.S. Residency Certification.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records relating to the individual requesting certification, including identifying information of the individual requesting certification, and records relating to the identity of third party designees authorized to receive tax information specific to the U.S. Residency Certification request.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To certify filing and payment of U.S. income tax returns and taxes to allow a reduction in foreign taxes due in accordance with various treaty provisions for U.S. citizens living abroad and U.S. domestic corporations conducting business in foreign countries.

**ROUTINE USES: OF THE RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name and Taxpayer Identification Number (TIN) (e.g., Social Security Number (SSN), Employee Identification Number (EIN) or similar number assigned by the IRS), and name of designee.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices

54079

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioner, (LB&I). (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Individuals seeking certification, or persons acting on their behalf.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 22.032**

**SYSTEM NAME:**

Individual Microfilm Retention Register—Treasury/IRS.

**SYSTEM LOCATION:**

Computing centers and through terminals at field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals who file, or may be required to file, individual income tax returns (e.g., Form 1040, 1040A, or 1040EZ).

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Selected data elements that have been archived from the Individual Master File (IMF).

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To archive individual tax account information after a certain period of inactivity on the master file in order not to overburden the computer system required for active accounts.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By individual taxpayer name Taxpayer Identification Number (TIN) (e.g., Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS), tax period, name, and type of tax.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Directors, Computing Centers. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Tax returns and other filings made by the individual and agency entries made in the administration of the individual's tax account.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 22.054**

**SYSTEM NAME:**

Subsidiary Accounting Files— Treasury/IRS.

**SYSTEM LOCATION:**

Campuses. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Taxpayers affected by one or more of the transactions reflected in the categories of records listed below.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Documents containing name, address, Taxpayer Identification Number (TIN) (e.g., Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS), and accounting information relevant to various transactions related to unapplied credits and payments, property held by the IRS, erroneous payments, accounts transferred, funds collected for other agencies, abatements and/or assessments of tax, uncollectible accounts, and Offers-in-Compromise.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To administer the accounting files relevant to the types of transactions described in "CATEGORIES OF RECORDS IN THE SYSTEM:" above.

**54080**    **Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name and TIN, or document locator number (DLN).

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioners, W&I and SB/SE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in ''Record Access Procedures'' below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Tax returns and other filings made by the individual and agency entries made in the administration of the individual's tax account.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS  22.060**

**SYSTEM NAME:**

Automated Non-Master File (ANMF)—Treasury/IRS.

**SYSTEM LOCATION:**

Computing Centers and through terminals at field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Taxpayers whose accounts are not compatible with the normal master file processes.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Taxpayer name, address, Taxpayer Identification Number (TIN) (*e.g.*, Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS) and information that cannot be input into the Master File, including child support payment information from the states.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To track taxpayer account information that is not input to the Master File.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name and TIN, or document locator number (DLN).

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioners, W&I and SB/SE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in ''Record Access Procedures'' below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Tax returns and other filings made by the individual and agency entries made in the administration of the individual's account.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 22.061**

**SYSTEM NAME:**

Information Return Master File (IRMF)—Treasury/IRS.

**SYSTEM LOCATION:**

Computing Centers and through terminals at field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individual payors and payees of various types of income for which information reporting is required (*e.g.*, wages, dividends, interest, etc.).

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Information returns.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To administer tax accounts related to the filing of information returns.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By payor and payee name and Taxpayer Identification Number (TIN) (*e.g.*, Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS).

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioner, W&I. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated exempt from sections (c)(3); (d)(1)–(4); (e)(1); (e)(4)(G), (H), (I); and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36).

**Treasury/IRS 22.062**

**SYSTEM NAME:**

Electronic Filing Records—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Electronic return providers (electronic return preparers, electronic return collectors, electronic return originators, electronic filing transmitters, individual filing software developers) who have applied to participate, are participating, or have been rejected, expelled or suspended from participation, in the electronic filing program (including Volunteer Income Tax Assistance (VITA) volunteers). Individuals who attend, or have indicated interest in attending, seminars and marketing programs to encourage electronic filing and improve electronic filing programs (including individuals who provide opinions or suggestions to improve electronic filing programs), or who otherwise indicate interest in participating in electronic filing programs.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records pertaining to individual electronic filing providers, including applications to participate in electronic filing, credit reports, reports of misconduct, law enforcement records, Device ID, and other information from investigations into suitability for participation. Records pertaining to the marketing of electronic filing, including surveys and opinions about improving electronic filing programs.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, 26 U.S.C. 6011, 6012, and 7803.

**PURPOSE:**

To administer and market electronic filing programs.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice, or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by the proceeding,

and the IRS determines that the records are relevant and useful.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a Federal, state, local, or tribal agency, or other public authority, which has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(4) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of, a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(6) Disclose information to the news media as described in the IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(7) Disclose information to a contractor, including an expert witness or a consultant, hired by the IRS, to the extent necessary for the performance of a contract.

(8) Disclose information to state taxing authorities to promote joint and state electronic filing, including marketing such programs and enforcing the legal and administrative requirements of such programs.

(9) Disclose to the public the names and addresses of electronic return originators, electronic return preparers, electronic transmitters, and individual filing software developers,

who have been suspended, removed, or otherwise disciplined. The Service may also disclose the effective date and duration of the suspension, removal, or other disciplinary action.

(10) To appropriate agencies, entities, and persons who: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and magnetic media.

**RETRIEVABILITY:**

By electronic filing provider name or Taxpayer Identification Number (TIN) (*e.g.,* Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS), or document control number (DCN).

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Director, Return Preparer Office. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its

content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records. See "Record Access Procedures" above for records that are not tax records.

**RECORD SOURCE CATEGORIES:**

(1) Electronic filing providers; (2) informants and third party witnesses; (3) city and state governments; (4) IRS and other Federal agencies; (5) professional organizations; (6) business entities; and (7) participants in marketing efforts or who have otherwise indicated interest in electronic filing programs.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 24.030**

**SYSTEM NAME:**

Customer Account Data Engine (CADE) Individual Master File (IMF)— Treasury/IRS.

**SYSTEM LOCATION:**

Computing Centers and through terminals at field and campus offices. (See the IRS Appendix below for address.).

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals who file Federal Individual Income Tax Returns; individuals who file other information filings; and individuals operating under powers of attorney.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Tax records for each applicable tax period or year, representative authorization information (including Centralized Authorization Files (CAF)), Device ID and a code identifying taxpayers who threatened or assaulted IRS employees. An indicator will be added to any taxpayer's account if a state reports to IRS that the taxpayer owes past due child and/or spousal support payments.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To maintain records of tax returns, return transactions, and authorized taxpayer representatives.

**Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices **54083**

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name and Taxpayer Identification Number (TIN) (*e.g.*, Social Security Number (SSN), Employer Identification Number (EIN), or other similar number assigned by the IRS), or document locator number (DLN), or Device ID

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioner, W&I. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix

B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Tax returns and other filings made by the individual or taxpayer representative and agency entries made in the administration of the individual's tax account.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 24.046**

**SYSTEM NAME:**

Customer Account Data Engine Business Master File—Treasury/IRS.

**SYSTEM LOCATION:**

Computing Centers and through terminals at field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals who file business tax and information returns; individuals who file other information filings; and individuals operating under powers of attorney for these businesses.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Tax records for each applicable tax year or period, including employment tax returns, partnership returns, excise tax returns, retirement and employee plan returns, wagering returns, estate tax returns; information returns; representative authorization information; and Device ID

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To maintain records of business tax returns, return transactions, and authorized taxpayer representatives.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other

records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By electronic filing provider name or Taxpayer Identification Number (TIN) (*e.g.*, Social Security Number (SSN), Employer Identification Number (EIN), or other similar number assigned by the IRS), document control number (DCN), or Device ID

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioner, SB/SE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of

records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Tax returns and other filings made by the individual and agency entries made in the administration of the individual's tax account.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

## Treasury/IRS 24.047

**SYSTEM NAME:**

Audit Underreporter Case Files—Treasury/IRS.

**SYSTEM LOCATION:**

Campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Recipients of income (payees) with a discrepancy between the income tax returns they file and information returns filed by payors with respect to them.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Payee and payor name, address, Taxpayer Identification Number (TIN) (*e.g.,* Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS), and income records containing the types and amounts of income received/reported.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To reconcile discrepancies between tax returns and information returns filed.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the

system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

Payee's and payor's names and TINs.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioners, W&I and SB/SE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Information returns filed by payors and income tax returns filed by taxpayers.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated exempt from sections (c)(3); (d)(1)–(4);

(e)(1); (e)(4)(G)–(I); (e)(5); (e)(8); and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36).

## Treasury/IRS 26.001

**SYSTEM NAME:**

Acquired Property Records—Treasury/IRS.

**SYSTEM LOCATION:**

Field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals with delinquent tax accounts whose property has been acquired by the government by purchase or right of redemption.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Taxpayer name, address, Taxpayer Identification Number (TIN) (*e.g.,* Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS), and revenue officer reports.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To track property acquired under 26 U.S.C. 6334.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name and TIN.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER(S) AND ADDRESS:**

Division Commissioner, SB/SE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated exempt from sections (c)(3); (d)(1)–(4); (e)(1); (e)(4)(G)–(I); and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36.)

**Treasury/IRS 26.006**

**SYSTEM NAME:**

Form 2209, Courtesy Investigations—Treasury/IRS.

**SYSTEM LOCATION:**

Field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals on whom a delinquency or other investigation is located in one IRS office, but the individual is now living or has assets located in the jurisdiction of another IRS office.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Taxpayer name, address, Taxpayer Identification Number (TIN) (e.g., Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS), asset ownership information, chronological investigative history, and, where applicable, Form SSA–7010 cases (request for preferential investigation on an earning discrepancy case).

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To track the assignment of, and progress of, these investigations.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name and TIN.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioner, SB/SE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated exempt from sections (c)(3); (d)(1)–(4); (e)(1); (e)(4)(G)–(I); and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36.)

**Treasury/IRS 26.009**

**SYSTEM NAME:**

Lien Files—Treasury/IRS.

**SYSTEM LOCATION:**

Field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals on whom Notices of Federal Tax Liens have been filed.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Open and closed Federal tax liens, including Certificates of Discharge of Property from Federal Tax Lien; Certificates of Subordination; Certificates of Non-Attachment; Exercise of Government's Right of Redemption of Seized Property; and Releases of Government's Right of Redemption.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, 26 U.S.C. 6323 and 7801.

**PURPOSE:**

To identify those individuals on whom a Notice of Federal Tax Lien,

discharge, or subordination on lien attachment has been filed.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name and Taxpayer Identification Number (TIN) (*e.g.*, Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS).

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioner, SB/SE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing

at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Tax returns and other filings made by the individual and agency entries made in the administration of the individual's tax account.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 26.012**

**SYSTEM NAME:**

Offer in Compromise (OIC) Files—Treasury/IRS.

**SYSTEM LOCATION:**

Field, campus and computing center offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals who have submitted an offer to compromise a tax liability.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Taxpayer name, address, Taxpayer Identification Number (TIN) (*e.g.*, Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS), assignment information; and records, reports and work papers relating to the assignment, investigation, review and adjudication of the offer.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To process offers to compromise a tax liability.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name and TIN.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER(S) AND ADDRESS:**

Division Commissioner, SB/SE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

TD_0001099

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system is exempt from 5 U.S.C. 552a(c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I) and (f) of the Privacy Act pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36.)

## Treasury/IRS 26.013

**SYSTEM NAME:**

Trust Fund Recovery Cases/One Hundred Percent Penalty Cases—Treasury/IRS.

**SYSTEM LOCATION:**

Field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals against whom Federal tax assessments have been made or are being considered as a result of their being deemed responsible for payment of unpaid corporation withholding taxes and social security contributions.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Taxpayer name, address, Taxpayer Identification Number (TIN) (*e.g.*, Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS), information about basis of assessment, including class of tax, period, dollar figures, waivers extending the period for asserting the penalty (if any), and correspondence.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To administer and enforce Trust Fund Recovery Penalty cases under 26 U.S.C. 6672.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or

integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name and TIN; cross-referenced to business name from which the penalty arises.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER(S) AND ADDRESS:**

Division Commissioner, SB/SE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system is exempt from 5 U.S.C. 552a(c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I) and (f) of the Privacy Act pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36.)

## Treasury/IRS 26.014

**SYSTEM NAME:**

Record 21, Record of Seizure and Sale of Real Property—Treasury/IRS.

**SYSTEM LOCATION:**

Field offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals against whom tax assessments have been made and whose real property was seized and sold to satisfy their tax liability. Names and addresses of purchasers of this real property.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Taxpayer name, address, Taxpayer Identification Number (TIN) (*e.g.*, Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS), information about basis of assessment, including class of tax, period, dollar amounts, and property description.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To administer sales of real property.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Paper records and electronic records.

RETRIEVABILITY:

By taxpayer name, TIN, and seizure number.

SAFEGUARDS:

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

RETENTION AND DISPOSAL:

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

SYSTEM MANAGER AND ADDRESS:

Division Commissioner, SB/SE. (See the IRS Appendix below for address.)

NOTIFICATION PROCEDURE:

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

RECORD ACCESS PROCEDURES:

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

CONTESTING RECORD PROCEDURES:

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

RECORD SOURCE CATEGORIES:

Property records and information supplied by third parties pertaining to property records.

EXEMPTIONS CLAIMED FOR THE SYSTEM:

None.

## Treasury/IRS 26.019

SYSTEM NAME:

Taxpayer Delinquent Account (TDA) Files—Treasury/IRS.

SYSTEM LOCATION:

Field and campus offices. (See the IRS Appendix below for address.)

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Individuals on whom Federal tax assessments have been made and persons who owe child support obligations.

CATEGORIES OF RECORDS IN THE SYSTEM:

Investigatory records generated or received in the collection of Federal taxes and all other related sub-files related to the processing of the tax case. This system also includes other management information related to a case and used for tax administration purposes including the Debtor Master File, and records that have a code identifying taxpayers that threatened or assaulted IRS employees.

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

5 U.S.C. 301 and 26 U.S.C. 7801.

PURPOSE:

To provide inventory control of delinquent accounts.

ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Paper records and electronic media.

RETRIEVABILITY:

By taxpayer name and Taxpayer Identification Number (TIN) (e.g., Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS), or name of person who owes child support obligations.

SAFEGUARDS:

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

RETENTION AND DISPOSAL:

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

SYSTEM MANAGER AND ADDRESS:

Field and campus offices. (See the IRS Appendix below for address.)

NOTIFICATION PROCEDURE:

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

RECORD ACCESS PROCEDURES:

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

CONTESTING RECORD PROCEDURES:

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

RECORD SOURCE CATEGORIES:

This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

EXEMPTIONS CLAIMED FOR THE SYSTEM:

This system has been designated exempt from sections (c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I), and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36.)

## Treasury/IRS 26.020

SYSTEM NAME:

Taxpayer Delinquency Investigation (TDI) Files—Treasury/IRS.

SYSTEM LOCATION:

Field and campus offices. (See the IRS Appendix below for address.)

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Individuals who are, or may be, delinquent in filing Federal tax returns.

CATEGORIES OF RECORDS IN THE SYSTEM:

Taxpayer name, Taxpayer Identification Number (TIN) (e.g., Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS); information from previously filed returns, information about the potential delinquent return(s), including class of tax, chronological investigative history;

**Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices **54089**

and a code identifying taxpayers that threatened or assaulted IRS employees.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**
5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**
To track information on taxpayers who may be delinquent in Federal tax payments or obligations.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**
Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**
Paper records and electronic media.

**RETRIEVABILITY:**
By taxpayer name and TIN.

**SAFEGUARDS:**
Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**
Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**
Division Commissioner, SB/SE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**
This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**
This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**
26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**
This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**
This system has been designated exempt from sections (c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I), and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36.)

**Treasury/IRS 26.021**

**SYSTEM NAME:**
Transferee Files—Treasury/IRS.

**SYSTEM LOCATION:**
Field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**
Individuals on whom tax assessments have been made but who have, or may have, transferred their assets in order to place them beyond the reach of the government.

**CATEGORIES OF RECORDS IN THE SYSTEM:**
Taxpayer name, address, Taxpayer Identification Number (TIN) (e.g., Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS), assessment, including class of tax, period, dollar amounts and information about the transferee.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**
5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**
To provide inventory control on taxpayers believed to have transferred assets that may not be available to satisfy their delinquent tax accounts.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**
Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**
Paper records and electronic media.

**RETRIEVABILITY:**
By taxpayer name and TIN.

**SAFEGUARDS:**
Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**
Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**
Division Commissioner, SB/SE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**
This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**
This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**
26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records. Other records are exempt from contest as stated in RECORD ACCESS PROCEDURES, above.

**RECORD SOURCE CATEGORIES:**

This system of records contains investigatory material compiled for Law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated exempt from sections (c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I), and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36).

**Treasury/IRS  30.003**

**SYSTEM NAME:**

Requests for Printed Tax Materials Including Lists—Treasury/IRS.

**SYSTEM LOCATION:**

Field and campus offices. See the IRS Appendix below for addresses.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals that request various IRS printed and electronic materials.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Name and address of individuals wanting to receive tax forms, newsletters, publications or educational products.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301.

**PURPOSE:**

The purpose of this system is to administer tracking and responses to requests for printed tax materials.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to mailing or distribution services contractors for the purpose of executing mail outs, order fulfillment, or subscription fulfillment.

(2) Disclose information to mailing or distribution services contractors for the purpose of maintaining mailing lists.

(3) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

Alphabetically by name or numerically by zip code.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Chief, Agency Wide Shared Services (Publishing Services). (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

See "Record Access Procedures" above.

**RECORD SOURCE CATEGORIES:**

The information is supplied by the individual making the request and agency entries made in fulfilling the request.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS  30.004**

**SYSTEM NAME:**

Security Violations—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals who violate physical security regulations.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Name of violator, circumstances of violation (*e.g.*, date, time, actions of violator, etc.), supervisory action taken, and other information pertaining to the violation.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301.

**PURPOSE:**

The purpose of this system is to administer programs to track and take appropriate action for security violations.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding, and the IRS or the DOJ determines that the information is relevant and necessary. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) To appropriate agencies, entities, and persons when: (a) The IRS suspects

**Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices    **54091**

or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By name.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER(S) AND ADDRESS:**

Chief, Agency Wide Shared Services (Property, Security, and Records). (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

See "Record Access Procedures" above.

**RECORD SOURCE CATEGORIES:**

Contract guard force and security inspections.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS  34.003**

**SYSTEM NAME:**

Assignment and Accountability of Personal Property Files—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field, computing center, and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals receiving government property for use and repair.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Descriptions of property, receipts, reasons for removal, and property passes.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301.

**PURPOSE:**

To maintain an inventory control over government property assigned to IRS employees for their use and to account for government property requiring repair.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(4) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(5) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By employee name.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Chief, Agency Wide Shared Services (Space and Property). (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

See "Record Access Procedures" above.

**RECORD SOURCE CATEGORIES:**

Individuals who receive government property; request property passes; or who request repairs on equipment.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 34.009**

**SYSTEM NAME:**

Safety Program Files—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field, computing center, and campus offices. (See the IRS Appendix below for address.)

**PURPOSE:**

To administer safety programs.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Employees and other individuals involved in IRS motor vehicle accidents, accidents, or injuries, on IRS property, or who have brought tort or personal property claims against the Service; individuals issued IRS driver's licenses.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Individual driving records and license applications, motor vehicle accident reports, lost time and no-lost time personal injury reports, tort and personal property claims case files, informal and formal investigative report files. Injury information is contained in the Safety and Health Information System (SHIMS), which is part of the records of Treasury .011—Treasury Safety Incident Management

Information System (70 **Federal Register** 44177–44197 (August 1, 2005)).

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and Executive Order 12196.

**PURPOSE:**

To administer the agency's health and safety program.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof: (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a part to, has an interest in, or is likely to be affected by, the proceeding, and the IRS or the DOJ determines that the information is relevant and necessary. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of, a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(4) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(5) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(6) Provide information to the Department of Labor in connection with investigations of accidents occurring in the work place.

(7) Provide information to other federal agencies for the purpose of effecting inter-agency salary offset or interagency administrative offset.

(8) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By employee or other individual's name.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Chief, Agency Wide Shared Services. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record

**Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices    **54093**

pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records. Individuals seeking access to any non-tax record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**RECORD SOURCE CATEGORIES:**

IRS employees, and other claimants and third party witnesses.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 34.012**

**SYSTEM NAME:**

Emergency Preparedness Cadre Assignments and Alerting Rosters Files—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field, computing center, and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Employees who have been identified as emergency preparedness points of contact.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Cadre assignments: Personal information on employees; *e.g.,* name, address, phone number, family data, security clearance, relocation assignment, etc. Alerting rosters: Current listing of individuals by name and title, stating their addresses (work, home, and email), and phone numbers.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301.

**PURPOSE:**

To identify emergency preparedness team members and their

responsibilities; and to provide a means of contacting cadre members in the event of any emergency.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof: (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a part to, has an interest in, or is likely to be affected by, the proceeding, and the IRS or the DOJ determines that the information is relevant and necessary. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By employee name.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12820 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Director, Facilities Management and Security Services. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

See "Record Access Procedures" above.

**RECORD SOURCE CATEGORIES:**

Cadre members.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 34.013**

**SYSTEM NAME:**

Identification Media Files System for Employees and Others Issued IRS Identification—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field, computing center, and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Employees and contractors having one or more items of identification.

Federal and non-federal personnel working in or visiting IRS facilities.

CATEGORIES OF RECORDS IN THE SYSTEM:

Name, home address, and other personal information and reports on loss, theft, or destruction of pocket commissions, enforcement badges and other forms of identification.

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

5 U.S.C. 301.

PURPOSE:

To track the issuance and loss of identification media used to authenticate IRS employees and to plan for efficient allocation and utilization of space based upon records showing use of IRS facilities.

ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

Records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof: (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a part to, has an interest in, or is likely to be affected by, the proceeding, and the IRS or the DOJ determines that the information is relevant and necessary. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

STORAGE:

Paper records and electronic media.

RETRIEVABILITY:

By employee, contractor, or visitor's name and identification media serial number.

SAFEGUARDS:

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

RETENTION AND DISPOSAL:

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

SYSTEM MANAGER AND ADDRESS:

Director, Facilities Management and Security Services. See IRS Appendix below for address.

NOTIFICATION PROCEDURE:

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in ''Record Access Procedures'' below.

RECORD ACCESS PROCEDURES:

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

CONTESTING RECORD PROCEDURES:

See ''Record Access Procedures'' above.

RECORD SOURCE CATEGORIES:

Document 882, New Identification Badge Request; Form 11646, Proximity Card Badge Application; Form 12598, Lost Badge Record; Form 4589, Lost or Forgotten Badge Record; Form 9516, Visitor Badge.

EXEMPTIONS CLAIMED FOR THE SYSTEM:

None.

**Treasury/IRS 34.014**

SYSTEM NAME:

Motor Vehicle Registration and Entry Pass Files—Treasury/IRS.

SYSTEM LOCATION:

National Office, field, computing center, and campus offices. (See the IRS Appendix below for address.)

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Individuals who are issued parking permits because they require continued access to IRS facilities; and parking area violators.

CATEGORIES OF RECORDS IN THE SYSTEM:

Name of employee, registered owner of vehicle, office branch, telephone number, description of car, license number, employee's signature, name and expiration date of insurance, decal number; parking violations.

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

5 U.S.C. 301.

PURPOSE:

To track individuals to whom parking permits are issued and to whom parking violations are issued.

ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

Records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof: (b) any IRS

**Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices

employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a part to, has an interest in, or is likely to be affected by, the proceeding, and the IRS or the DOJ determines that the information is relevant and necessary. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING,AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By employee or other individual's name.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Director, Facilities Management and Security Services. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below. The IRS may assert 5 U.S.C. 552a (d)(5) as appropriate.

**CONTESTING RECORD PROCEDURES:**

See "Record Access Procedures" above.

**RECORD SOURCE CATEGORIES:**

Parking permits: Employees and other individuals to whom they are issued. Parking violations: Security guard personnel who issue the tickets.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 34.016**

**SYSTEM NAME:**

Security Clearance Files—Treasury/ IRS.

**SYSTEM LOCATION:**

Personnel Security Office. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Employees and contractors who require security clearance, or have their security clearance canceled or transferred; individuals who have violated IRS security regulations regarding classified national security information.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Name, employing office, date of security clearance, level of clearance, reason for the need for the national security clearance, and any changes in such clearance. Security violations records contain name of violator, circumstance of violation and supervisory action taken.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and Executive Order 11222.

**PURPOSE:**

To administer the national security clearance program.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof: (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a part to, has an interest in, or is likely to be affected by, the proceeding, and the IRS or the DOJ determines that the information is relevant and necessary. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to agencies and on a need-to-know basis to determine the current status of an individual's security clearance.

(4) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By name or Social Security Number of the employee.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Director, Personnel Security (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

See "Record Access Procedures" above.

**RECORD SOURCE CATEGORIES:**

Security Clearance Records: Employee, employee's personnel records, employee's supervisor. Security Violation Records: guard reports, security inspections, supervisor's reports, etc.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 34.021**

**SYSTEM NAME:**

Personnel Security Investigations—Treasury/IRS.

**SYSTEM LOCATION:**

Personnel Security Office. See IRS Appendix below for address.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Current, former and prospective employees of IRS, and private contractors at IRS and lock box facilities.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records pertaining to background investigations including application information, references, military service, work and academic history, financial and tax information, reports of findings and contacts with third party witnesses.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, 26 U.S.C. 7801, Executive Orders 10450 and 11222.

**PURPOSE:**

To carry out personnel security investigations as to a person's character, reputation and loyalty to the United States, so as to determine that person's suitability for employment, retention in employment, or the issuance of security clearances.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice, or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by the proceeding, and the IRS determines that the records are relevant and useful.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a Federal, state, local, or tribal agency, or other public authority, which has requested information relevant or necessary to

hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(4) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of, a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to the news media as described in the IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(6) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(7) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By employee's name or Social Security Number or administrative case control number.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**Federal Register**/Vol. 80, No. 173/Tuesday, September 8, 2015/Notices **54097**

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Director, Personnel Security. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(5).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(5).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records. Other records are exempt from contest as stated in "Record Access Procedures" above.

**RECORD SOURCE CATEGORIES:**

Subjects of investigation (through employment application forms and interviews, or financial information); third parties including Federal, state and local government agencies (police, court and vital statistics records), credit reporting agencies, schools and others; and tax returns and examination results.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated exempt from sections (c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I), and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(k)(5). (See 31 CFR 1.36).

**Treasury/IRS 34.022**

**SYSTEM NAME:**

Automated Background Investigations System (ABIS)—Treasury/IRS.

**SYSTEM LOCATION:**

Personnel Security Office. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Current and former employees of IRS, contractors for IRS/Treasury and Lockbox employees.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records pertaining to background investigations, including: (1) ABIS records contain Personnel Security employee name, office, start of employment, series/grade, title, separation date; (2) ABIS tracking records contain investigative status

information from point of initiation through conclusion; (3) ABIS timekeeping records contain assigned cases and distribution of time; (4) ABIS records contain background investigations; and (5) levels of clearance, date of clearance and any change in status of clearance.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, 26 U.S.C. 7801, and Executive Order 11222.

**PURPOSE:**

To track and administer background investigation records and to analyze trends in suitability matters.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a Federal, state, local, or tribal agency, or other public authority, which has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(4) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of, a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(6) Disclose information to the news media as described in the IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(7) Disclose information to professional organizations or associations with which individuals covered by this system of records may be affiliated, such as state bar disciplinary authorities, to meet their responsibilities in connection with the administration and maintenance of standards of conduct and discipline.

(8) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING,AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By name of individual to whom it applies, Social Security Number, alias, or date of birth.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Director, Personnel Security. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(5).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(5).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records. Other records are exempt from contest as stated in ''Record Access Procedures'' above.

**RECORD SOURCE CATEGORIES:**

Personnel Security employees, Subjects of investigation (through employment application forms and interviews, or financial information); third parties including Federal, state and local government agencies (police, court and vital statistics records), credit reporting agencies, schools and others; and tax returns and examination results.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated exempt from sections (c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I), and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(k)(5). (See 31 CFR 1.36).

**Treasury/IRS  34.037**

**SYSTEM NAME:**

Audit Trail and Security Records—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field, computing center, and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals who have accessed, by any means, information contained within IRS electronic or paper records or who have otherwise used any IRS computing equipment/resources, including access to Internet sites; individuals whose information is accessed using IRS computing equipment/resources; and IRS employees and contractors who use IRS equipment to end electronic communications.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records concerning the use of IRS computing equipment or other resources by employees, contractors, or other individuals to access IRS information; records concerning individuals whose information was accessed using IRS computing equipment/resources; records identifying what information accessed; records concerned the use of IRS computer equipment and other resources to send electronic communications; and records concerning the investigation of such incidents.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, 26 U.S.C. 7801, and 18 U.S.C. 1030(a)(2)(B).

**PURPOSE:**

To identify and track any unauthorized accesses to sensitive but unclassified information and potential breaches or unauthorized disclosures of such information or inappropriate use of government computers to access Internet sites for any purpose forbidden by IRS policy (e.g., gambling, playing computer games, or engaging in illegal activity), or to detect electronic communications sent using IRS systems in violation of IRS security policy.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of, a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(4) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(5) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(6) Disclose information to a contractor, including an expert witness or a consultant, hired by the IRS, to the extent necessary for the performance of a contract.

(7) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By name, Social Security Number (SSN), or the standard employee identification number (SEID) of employee, contractor, or other individual who has been granted access to IRS information, or to IRS equipment and resources, and by incident number. Also by name, SSN or Taxpayer Identification Number (TIN) of entities whose records were accessed.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Director, Facilities Management and Security Services. See IRS Appendix below for address.

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records. Other records are exempt from contest as stated in ''Record Access Procedures'' above.

**RECORD SOURCE CATEGORIES:**

This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated exempt from sections (c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I) and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36).

**Treasury/IRS  35.001**

**SYSTEM NAME:**

Reasonable Accommodation Request Records—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field, computing center, and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Prospective, current and former employees with disabilities who request reasonable accommodation.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records that are used to determine qualification for reasonable accommodation (RA), including medical documentation.

**AUTHORITY:**

5 U.S.C. 301; Title VII of the Civil Rights Act of 1964, as amended; Civil Rights Act of 1991; The Rehabilitation Act of 1973, 29 U.S.C. 701 et seq., as amended; The Americans with Disabilities Act of 1990, 42 U.S.C. 12101 et seq. (ADA); Executive Order 13164, Requiring Federal Agencies to Establish Procedures to Facilitate the Provision of Reasonable Accommodation (July 26, 2000).

**PURPOSE:**

To track and administer reasonable accommodation requests.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a Federal, state, local, or tribal agency, or other public authority, which has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(4) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of, a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to the news media as described in the IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(6) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(7) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(8) Disclose information to a contractor, including an expert witness or a consultant, hired by the IRS, to the extent necessary for the performance of a contract.

(9) Disclose information to an arbitrator, mediator, or other neutral, in the context of alternative dispute resolution, to the extent relevant and necessary for resolution of the matters presented, including asserted privileges. Information may also be disclosed to the parties in the alternative dispute resolution proceeding.

(10) Disclose information to the Merit Systems Protection Board and the Office

of Special Counsel in personnel, discrimination, and labor management matters when relevant and necessary to their duties.

(11) Disclose information to foreign governments in accordance with international agreements.

(12) Disclose information to the Office of Personnel Management and/or to the Equal Employment Opportunity Commission in personnel, discrimination, and labor management matters when relevant and necessary to their duties.

(13) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

Name of employee or applicant for employment who requests reasonable accommodation, and administrative case control number.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Chief, Office of Equal Employment and Diversity. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

See "Record Access Procedures" above.

**RECORD SOURCE CATEGORIES:**

Individual requesting accommodation; individual's manager, individual's medical practitioner; agency medical representative.

**EXEMPTIONS:**

None.

**Treasury/IRS  36.001**

**SYSTEM NAME:**

Appeals, Grievances and Complaints Records—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field, computer center, and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Applicants for Federal employment, current and former Federal employees (including annuitants) who submit appeals, grievances, or complaints for resolution.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

This system of records contains information or documents relating to a decision or determination made by the IRS or other organization (*e.g.,* Office of Personnel Management, Equal Employment Opportunity Commission, Merit Systems Protection Board) affecting the employment status of an individual. The records consist of the initial appeal or complaint, letters or notices to the individual, record of hearings when conducted, materials placed into the record to support the decision or determination, affidavits or statements, testimonies of witnesses, investigative reports, instructions to an agency about action to be taken to comply with decisions, and related correspondence, opinions and recommendations. Automated Labor and Employee Relations Tracking System (ALERTS) records are included to provide administrative tracking for personnel administration.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 1302, 3301, 3302, 4308, 5115, 5338, 5351, 5388, 7105, 7151, 7154, 7301, 7512, 7701 and 8347, Executive Orders 9830, 10577, 10987, 11222, 11478 and 11491; and Pub. L. 92–261 (EEO Act of 1972), and Pub. L. 93–259.

**PURPOSE:**

To track, and process, employment-related appeals, grievances and complaints.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be only made as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a Federal, state, local, or tribal agency, or other public authority, which has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(4) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public

TD_0001113

**Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices    **54101**

authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of, a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(6) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(7) Disclose information to a contractor, including an expert witness or a consultant, hired by the IRS, to the extent necessary for the performance of a contract.

(8) Disclose information to a Member of Congress regarding the status of an appeal, complaint or grievance.

(9) Disclose information to other agencies to the extent provided by law or regulation and as necessary to report apparent violations of law to appropriate law enforcement agencies.

(10) Disclose information to the Office of Personnel Management, Merit Systems Protection Board or Equal Employment Opportunity Commission for the purpose of properly administering Federal Personnel Systems in accordance with applicable laws, Executive Orders and regulations.

(11) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By name of the individual and administrative case control number.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Chief, Office of Equal Employment and Diversity and Human Capital Officer. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

See "Record Access Procedures" above.

**RECORD SOURCE CATEGORIES:**

Individuals who file complaints or grievances, IRS and/or other authorized Federal officials, affidavits or statements from employees, testimony of witnesses, official documents relating to the appeal, grievance, or complaints, and third party correspondence.

**EXEMPTIONS:**

None.

**Treasury/IRS 36.003**

**SYSTEM NAME:**

General Personnel and Payroll Records—Treasury/IRS.

**SYSTEM LOCATION:**

Current employee personnel records: National Office, field, computing center and campus offices. Current employee payroll records: Transactional Processing Center (TPC), U.S. Department of Agriculture, National Finance Center. Former employee personnel records: The National Archives and Records Administration, National Personnel Records Center.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Prospective, current and former employees.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

This system consists of a wide variety of records relating to personnel actions and determinations made about an individual while employed in the Federal service, including information required by the Office of Personnel Management (OPM) and maintained in the Official Personnel File (OPF) or Employee Personnel File (EPF). Information is also maintained electronically in Automated Labor and Employee Relations Tracking System (ALERTS) and Totally Automated Personnel System (TAPS). Listing of employee pseudonyms and Forms 3081 is also included. This system also includes personnel and payroll records (*e.g.*, office/building security records, disciplinary action records, travel/moving expense records, insurance/beneficiary records, personal addresses, personal telephone numbers, personal email addresses, emergency contact information, payroll deduction records).

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, 1302, 2951, 4118, 4308, 4506 and Executive Orders 9397 and 10561.

**PURPOSE:**

To administer personnel and payroll programs.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the

employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a Federal, state, local, or tribal agency, or other public authority, which has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(4) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving agency.

(5) Disclose information to the news media as described in the IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(6) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(7) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(8) Disclose information to a contractor, including an expert witness or a consultant, hired by the IRS, to the extent necessary for the performance of a contract.

(9) Disclose information to a prospective employer of an IRS employee or former IRS employee.

(10) Disclose information to hospitals and similar institutions or organizations involved in voluntary blood donation activities.

(11) Disclose information to educational institutions for recruitment and cooperative education purposes.

(12) Disclose information to financial institutions for payroll purposes.

(13) Disclose information about particular Treasury employees to requesting Federal agencies or non-Federal entities under approved computer matching efforts, limited to only those data elements considered relevant to making a determination of eligibility under particular benefit programs administered by those agencies or entities or by the Department of the Treasury or any constituent unit of the Department, to improve program integrity, and to collect debts and other monies owed under those programs.

(14) Disclose information to respond to state and local authorities for support garnishment interrogatories.

(15) Disclose information to private creditors for the purpose of garnishment of wages of an employee if a debt has been reduced to a judgment.

(16) Disclose records to the Office of Personnel Management, Merit Systems Protection Board, Equal Employment Opportunity Commission, and General Accounting Office for the purpose of properly administering Federal Personnel systems or other agencies' systems in accordance with applicable laws, Executive Orders, and applicable regulations;

(17) Disclose information to a Federal, state, or local agency so that the agency may adjudicate an individual's eligibility for a benefit, such as a state unemployment compensation board, housing administration agency and Social Security Administration;

(18) Disclose information to another agency such as the Department of Labor or Social Security Administration and state and local taxing authorities as required by law for payroll purposes;

(19) Disclose information to Federal agencies to effect inter-agency salary offset; to effect inter-agency administrative offset to the consumer reporting agency for obtaining commercial credit reports; and to a debt collection agency for debt collection services;

(20) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been

compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**DISCLOSURE TO CONSUMER REPORTING AGENCIES:**

Disclosures pursuant to 5 U.S.C. 552a(b)(12). Disclosures of debt information concerning a claim against an individual may be made from this system to consumer reporting agencies as defined in the Fair Credit Reporting Act (15 U.S.C. 1681a(f)) or the Federal Claims Collection Act of 1966 (31 U.S.C. 3701(a)(3)).

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

Name, Social Security Number (SSN) or other employee identifier, such as standard employee identification number (SEID) or badge number.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER(S) AND ADDRESS:**

Chief, Human Capital Office. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its

TD_0001115

content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

See ''Record Access Procedures'' above.

**RECORD SOURCE CATEGORIES:**

Personnel and payroll records come from the individual to whom they apply or from agency officials.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None

**Treasury/IRS 37.006**

**SYSTEM NAME:**

Correspondence, Miscellaneous Records, and Information Management Records—Treasury/IRS.

**SYSTEM LOCATION:**

Office of Professional Responsibility (OPR), Internal Revenue Service (IRS), Washington, DC; Detroit Computing Center, Detroit, Michigan; Martinsburg, West Virginia; and Memphis, Tennessee.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals who correspond with OPR, individuals on whose behalf correspondence is initiated, and individuals who are the subject of correspondence; individuals who file, pursuant to 31 CFR part 10, program sponsor agreements for continuing professional education for enrolled agents or enrolled retirement plan agents; individuals who request, pursuant to 31 CFR part 10, authorization to make a special appearance before the IRS to represent another person in a particular matter; former Government employees who, pursuant to 31 CFR part 10, submit statements that their current firm has isolated them from representations that would create a post-employment conflict of interest; individuals who appeal from determinations that they are ineligible to engage in limited practice before the IRS under 31 CFR part 10; and individuals who serve as point of contact for organizations (including organizations that apply for recognition as a sponsor of continuing professional education for enrolled agents or enrolled retirement plan agents and tax clinics that request OPR to issue authorizations for special appearances to tax clinic personnel to practice before the IRS).

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Correspondence (including, but not limited to, letters, faxes, telegrams, and emails) sent and received; mailing lists of, and responses to, quality and improvement surveys of individuals; program sponsor agreements for continuing professional education; requests for authorization to make a special appearance before the IRS; statements of isolation from representations that would create a post-employment conflict of interest; appeals from determinations of ineligibility to engage in limited practice; records pertaining to consideration of these matters; and workload management records.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, 26 U.S.C. 7801 and 7803, and 31 U.S.C. 330.

**PURPOSE(S):**

To permit OPR to manage correspondence, to track responses from quality and improvement surveys, to manage workloads, and to collect and maintain other administrative records that are necessary for OPR to perform its functions under the regulations governing practice before the IRS, which are set out at 31 CFR part 10 and are published in pamphlet form as Treasury Department Circular No. 230, and its functions under other grants of authority.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems the purpose of the disclosure to be compatible with the purpose for which the IRS collected the records and no privilege is asserted:

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding; and the IRS determines that the information is relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or

any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding; and the IRS or the DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a Federal, state, local, tribal, or foreign agency, or other public authority, which has requested information relevant or necessary to hiring or retaining an employee or to issuing, or continuing, a contract, security clearance, license, grant, or other benefit.

(4) Disclose information to a Federal, state, local, tribal, or foreign agency or other public authority responsible for implementing or enforcing, or for investigating or prosecuting, the violation of a statute, rule, regulation, order, or license when a record on its face, or in conjunction with other records, indicates a violation or potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to a contractor to the extent necessary to perform the contract.

(6) Disclose information to appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the IRS' efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By individual's name. Non-unique names will be distinguished by addresses.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are retained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER(S) AND ADDRESS:**

Director, Office of Professional Responsibility, SE:OPR, 1111 Constitution Avenue NW., Washington, DC 20224.

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, Appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, Appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

See "Record Access Procedures" above.

**RECORD SOURCE CATEGORIES:**

Individuals, other correspondents, and Treasury Department records.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 37.007**

**SYSTEM NAME:**

Practitioner Disciplinary Records—Treasury/IRS.

**SYSTEM LOCATION:**

Office of Professional Responsibility (OPR), Internal Revenue Service (IRS), Washington, DC; Martinsburg, West Virginia; and Memphis, Tennessee.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Subjects and potential subjects of disciplinary proceedings relating to attorneys, certified public accountants, enrolled agents, enrolled actuaries, enrolled retirement plan agents, appraisers, registered tax return preparers, and any individual who for compensation prepares or assists with the preparation of all or substantially all of a tax return, claim for refund, or other document pertaining to any taxpayer's liability for submission to the IRS; subjects or potential subjects of actions to deny eligibility to engage in limited practice before the IRS or actions to withdraw eligibility to practice before the IRS in any other capacity; individuals who have received disciplinary sanctions or whose eligibility to practice before the IRS has been denied or withdrawn; and individuals who have submitted to OPR information concerning potential violations of 31 CFR part 10.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Information sent to, or collected by, OPR concerning potential violations of 31 CFR part 10, including disciplinary decisions and orders (and related records) of Federal or state courts, agencies, bodies, and other licensing authorities; records pertaining to OPR's investigation and evaluation of such information; records of disciplinary proceedings brought by OPR before administrative law judges, including records of appeals from decisions in such proceedings; petitions for reinstatement to practice before the IRS (and related records); Federal court orders enjoining individuals from representing taxpayers before the IRS; and press releases concerning such injunctions.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, 26 U.S.C. 7801 and 7803, and 31 U.S.C. 330.

**PURPOSE(S):**

To enforce and administer the regulations governing practice before the IRS, which are set out at 31 CFR part 10 and are published in pamphlet form as Treasury Department Circular No. 230; to make available to the general public information about disciplinary proceedings and disciplinary sanctions; to assist public, quasi-public, or private professional authorities, agencies, organizations, and associations and other law enforcement and regulatory authorities in the performance of their duties in connection with the administration and maintenance of standards of integrity, conduct, and discipline; and to assist state tax agencies in their efforts to ensure compliance with ethical rules and standards of conduct by individuals authorized to practice or individuals who seek permission to practice before the agency.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems the purpose of the disclosure to be compatible with the purpose for which the IRS collected the records and no privilege is asserted:

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding; and the IRS determines that the information is relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding; and the IRS or the DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a Federal, state, local, tribal, or foreign agency, or other public authority, which has requested information relevant or necessary to hiring or retaining an employee or to issuing, or continuing, a contract, security clearance, license, grant, or other benefit.

(4) Disclose information to a Federal, state, local, tribal, or foreign agency or other public authority responsible for implementing or enforcing, or for investigating or prosecuting, the violation of a statute, rule, regulation, order, or license when a record on its face, or in conjunction with other records, indicates a violation or potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement,

investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to a contractor to the extent necessary to perform the contract.

(6) Disclose information to third parties during the course of an investigation to the extent deemed necessary by the IRS to obtain information pertinent to the investigation.

(7) Subject to the protective measures in 31 CFR part 10, make available for public inspection or otherwise disclose to the general public reports and decisions of the Secretary of the Treasury, or his delegate, in disciplinary proceedings, including any reports and decisions of the administrative law judge.

(8) Make available for public inspection or otherwise disclose to the general public, after the final agency decision has been issued or after OPR has taken final action: (a) The name, mailing address, professional designation (attorney, certified public accountant, enrolled agent, enrolled actuary, enrolled retirement plan agent, or appraiser), type of disciplinary sanction, effective dates, and information about the conduct that gave rise to the sanction pertaining to individuals who have been censured, individuals who have been suspended or disbarred from practice before the IRS, individuals who have resigned as an enrolled agent or an enrolled retirement plan agent in lieu of a disciplinary proceeding being instituted or continued, individuals upon whom a monetary penalty has been imposed, and individual appraisers who have been disqualified; and (b) the name, mailing address, representative capacity (family member; general partner; full-time employee or officer of a corporation, association, or organized group; full-time employee of a trust, receivership, guardianship, or estate; officer or regular employee of a government unit; an individual representing a taxpayer outside the United States; or unenrolled return preparer), the fact of the denial of eligibility for limited practice, effective dates, and information about the conduct that gave rise to the denial pertaining to individuals who have been denied eligibility to engage in limited practice before the IRS pursuant to 31 CFR part 10.

(9) Make available for public inspection or otherwise disclose to the general public: The name, mailing address, professional designation or representative capacity, the fact of being enjoined from representing taxpayers before the IRS, the scope of the

injunction, effective dates, and information about the conduct that gave rise to the injunction pertaining to individuals who have been enjoined by any Federal court from representing taxpayers before the IRS.

(10) Disclose information to a public, quasi-public, or private professional authority, agency, organization, or association, which individuals covered by this system of records may be licensed by, subject to the jurisdiction of, a member of, or affiliated with, including but not limited to state bars and certified public accountancy boards, to assist such authorities, agencies, organizations, or associations in meeting their responsibilities in connection with the administration and maintenance of standards of integrity, conduct, and discipline.

(11) Disclose upon written request to a member of the public who has submitted to OPR written information concerning potential violations of the regulations governing practice before the IRS: (a) That OPR is currently investigating or evaluating the information; (b) that OPR has determined that no action will be taken, because jurisdiction is lacking, because a disciplinary proceeding would be time-barred, or because the information does not constitute actionable violations of the regulations; (c) that OPR has determined that the reported conduct does not warrant a censure, suspension, or disbarment; and (d) if applicable, the name of the authority, agency, organization, or association or Department of the Treasury or IRS office to which OPR has referred the information.

(12) Disclose to the Office of Personnel Management the identity and status of disciplinary cases in order for the Office of Personnel Management to process requests for assignment of administrative law judges employed by other Federal agencies to conduct disciplinary proceedings.

(13) Disclose information to a state tax agency for tax administration purposes, including the agency's efforts to ensure compliance with ethical rules and standards of conduct by individuals authorized to practice or individuals who seek permission to practice before the agency.

(14) Disclose information to appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or

property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the IRS' efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By individual's name, Social Security Number (SSN) (where available), or complaint number pertaining to a disciplinary proceeding. Non-unique names will be distinguished by addresses.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are retained in accordance IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER(S) AND ADDRESS:**

Director, Office of Professional Responsibility, SE: OPR, 1111 Constitution Avenue NW., Washington, DC 20224.

**NOTIFICATION PROCEDURE:**

This system of records may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records. Other records are exempt from contest as stated in "Records Access Procedures" above.

**RECORD SOURCE CATEGORIES:**

Individuals covered by this system of records; witnesses; Federal or state

courts, agencies, or bodies; professional authorities, agencies, organizations, or associations; state tax agencies; Treasury Department records; and public records.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

Pursuant to section (k)(2) of the Privacy Act, 5 U.S.C. 552a(k)(2), the records contained within this system are exempt from the following sections of the Act: (c)(3), (d), (e)(1), (e)(4)(G), (e)(4)(H), (e)(4)(I), and (f). (See 31 CFR 1.36.)

**Treasury/IRS 37.009**

**SYSTEM NAME:**

Enrolled Agent and Enrolled Retirement Plan Agent Records —Treasury/IRS.

**SYSTEM LOCATION:**

Return Preparer Office (RPO), Internal Revenue Service (IRS), Washington, DC; Detroit Computing Center, Detroit, Michigan; Martinsburg, West Virginia, and Memphis, Tennessee.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals currently or formerly enrolled to practice before the IRS; applicants for enrollment to practice before the IRS, including those who have appealed denial of applications for enrollment; and candidates for enrollment examinations.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Applications for enrollment to practice before the IRS; records pertaining to RPO's investigation and evaluation of eligibility for enrollment; appeals from denials of applications for enrollment (and related records); records relating to enrollment examinations, including candidate applications, answer sheets, and examination scores; applications for renewal of enrollment, including information on continuing professional education; and administrative records pertaining to enrollment status, including current status, dates of enrollment, dates of renewal, and dates of resignation or termination.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, 26 U.S.C. 7801 and 7803, and 31 U.S.C. 330.

**PURPOSE(S):**

To administer the enrollment program under the regulations governing practice before the IRS, which are set out at 31 CFR part 10 and are published in pamphlet form as Treasury Department Circular No. 230; to make available to the general public sufficient information to assist taxpayers in locating enrolled individuals and in accurately verifying

individuals' enrollment status; to assist public, quasi-public, or private professional authorities, agencies, organizations, and associations and other law enforcement and regulatory authorities in the performance of their duties in connection with the administration and maintenance of standards of integrity, conduct, and discipline; and to assist state tax agencies in their efforts to ensure compliance with ethical rules and standards of conduct by individuals authorized to practice or individuals who seek permission to practice before the agency.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems the purpose of the disclosure to be compatible with the purpose for which the IRS collected the records and no privilege is asserted:

(1) Disclose information to the Department of Justice (DOJ when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding; and the IRS determines that the information is relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding; and the IRS or the DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a Federal, state, local, tribal, or foreign agency, or other public authority, which has requested information relevant or necessary to hiring or retaining an employee or to issuing, or continuing, a

contract, security clearance, license, grant, or other benefit.

(4) Disclose information to a Federal, state, local, tribal, or foreign agency or other public authority responsible for implementing or enforcing, or for investigating or prosecuting, the violation of a statute, rule, regulation, order, or license when a record on its face, or in conjunction with other records, indicates a violation or potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to a contractor to the extent necessary to perform the contract.

(6) Disclose information to third parties during the course of an investigation to the extent deemed necessary by the IRS to obtain information pertinent to the investigation.

(7) Make available for public inspection or otherwise disclose to the general public the name, enrollment number, and enrollment status (active, inactive, inactive retired, terminated for failure to meet the requirements for renewal of enrollment, or resigned for reasons other than in lieu of a disciplinary proceeding being instituted or continued, including effective dates), as well as the mailing address, company or firm name, telephone number, fax number, email address, and Web site address, pertaining to individuals who are, or were, enrolled to practice before the IRS.

(8) Disclose information to a public, quasi-public, or private professional authority, agency, organization, or association, which individuals covered by this system of records may be licensed by, subject to the jurisdiction of, a member of, or affiliated with, including but not limited to state bars and certified public accountancy boards, to assist such authorities, agencies, organizations, or associations in meeting their responsibilities in connection with the administration and maintenance of standards of integrity, conduct, and discipline.

(9) Disclose information to a state tax agency for tax administration purposes, including the agency's efforts to ensure compliance with ethical rules and standards of conduct by individuals authorized to practice or individuals who seek permission to practice before the agency.

(10) Disclose information to appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the

system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the IRS' efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By individual's name (including other names used), Social Security Number (SSN) (where available), enrollment examination candidate number, enrollment application control number, enrollment number, or street address. Non-unique names will be distinguished by addresses.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are retained in accordance with IRM 1.15, Records Management (also see Documents 12820 and 12990).

**SYSTEM MANAGER(S) AND ADDRESS:**

Director, Return Preparer Office. See IRS Appendix below for address.

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records. Other records are exempt from contest as stated in ''Record Access Procedures'' above.

**RECORD SOURCE CATEGORIES:**

Individuals covered by this system of records; witnesses; Federal or state courts, agencies, or bodies; professional authorities, agencies, organizations, or associations; state tax agencies; Treasury Department records; and public records.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

Pursuant to section (k)(2) of the Privacy Act, 5 U.S.C. 552a(k)(2), the records contained within this system are exempt from the following sections of the Act: (c)(3), (d), (e)(1), (e)(4)(G), (e)(4)(H), (e)(4)(I), and (f). (See 31 CFR 1.36.)

**Treasury/IRS 37.111**

**SYSTEM NAME:**

Preparer Tax Identification Number (PTIN) Records—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, Field Offices, Campuses, and Computing Centers. (See IRS Appendix below for addresses.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Applicants for a PTIN; registered paid tax return preparers (individuals issued a PTIN); individuals whose application or registration is rejected, revoked, or suspended. Individual providers of continuing education for paid tax return preparers, including applicants for IRS approval, approved providers, and former providers. Individual contractors who assist the IRS in reviewing continuing education provider applications. Individuals who communicate with the IRS regarding the paid tax return preparer registration program or about any specific paid tax return preparer or continuing education provider.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Administrative records pertaining to paid tax return preparers, including records pertaining to applications for registration, renewal of registration, revocations, suspensions, and appeals; records pertaining to IRS investigation and evaluation of eligibility for registration; records relating to proof of identity for applicants who do not have Social Security Numbers; records related to competency testing, including applications, answer sheets, and test scores; records related to background, fingerprint, and tax compliance checks; records on continuing education requirements to become a registered paid tax return preparer; and information related to testing and education exemptions due to supervised status and types of returns prepared. Records pertaining to individual

providers of continuing education for paid tax return preparers, including applications for IRS approval of courses or programs, grants and denials of such applications, and records of participation in offered courses and programs. Records pertaining to individual contractors who assist IRS in reviewing continuing education provider applications. Records pertaining to received communications.

Note: Disciplinary records pertaining to registered paid tax return preparers are maintained in Treasury/IRS 37.007, Practitioner Disciplinary Records.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301; 26 U.S.C. 7801 and 7803; 31 U.S.C. 330.

**PURPOSE(S):**

To administer records pertaining to the issuance of PTINs to registered paid tax return preparers.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM INCLUDING CATEGORIES OF USERS AND PURPOSES OF SUCH USES:**

Returns and return information may be disclosed only as authorized by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to

the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the proceeding.

(3) Disclose information to an arbitrator, mediator, or other neutral, in the context of alternative dispute resolution, to the extent relevant and necessary for resolution of the matters presented, including asserted privileges. Information may also be disclosed to the parties in the alternative dispute resolution proceeding.

(4) Disclose to a Federal, state, local, or tribal agency, or other public authority, which has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(5) Disclose pertinent information to an appropriate Federal, state, local, or tribal agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(6) Disclose information to foreign governments in accordance with international agreements.

(7) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(8) Make available for public inspection or otherwise disclose to the general public, after the final agency decision has been issued or after OPR has taken final action: (a) The name, mailing address, professional designation (attorney, certified public accountant, enrolled agent, enrolled actuary, enrolled retirement plan agent appraiser, registered tax return preparer, or any individual who for compensation prepares or assists with the preparation of all or substantially all of a tax return, claim for refund, or other document pertaining to any taxpayer's liability for submission to the IRS), type of disciplinary sanction, effective dates, and information about the conduct that gave rise to the sanction pertaining to individuals who have been censured, individuals who have been suspended or disbarred from practice before the IRS, individuals who have resigned as an enrolled agent, an enrolled retirement plan agent, or a registered tax return preparer in lieu of a disciplinary

proceeding being instituted or continued, individuals upon whom a monetary penalty has been imposed, and individual appraisers who have been disqualified; and (b) the name, mailing address, representative capacity (family member; general partner; full-time employee of officer of a corporation, association, or organized group; full-time employee of a trust, receivership, guardianship, ore state; officer or regular employee of a government unit; an individual representing a taxpayer outside the United States; or unenrolled return preparer), the fact of the denial of eligibility for limited practice, effective dates, and information about the conduct that gave rise to the denial pertaining to individuals who have been denied edibility to engage in limited practice before the IRS pursuant to 31 CFR part 10.

(9) To the extent consistent with the American Bar Association's Model Rules of Professional Conduct, Rule 4.2, disclose to a person the fact that his chosen legal representative may not be authorized to represent him before the IRS.

(10) Disclose information to a contractor, including an expert witness or a consultant, hired by the IRS, to the extent necessary for the performance of a contract.

(11) Disclose information to a supervised tax return preparer sufficient to identify the supervising tax return preparer, and information to a supervising tax return preparer sufficient to identify the tax return preparers who have named that individual as their supervisor.

(12) Disclose information to a contractor's financial institution to the extent necessary for the processing of PTIN application and registration fee payments.

(13) Disclose information to a former employee of the IRS to the extent necessary for personnel-related or other official purposes when the IRS requires information and/or consultation assistance from the former employee regarding a matter within that person's former area of responsibility.

(14) Disclose information to the public sufficient to identify individuals who have registered with the IRS as a paid tax return preparer and been issued a PTIN, and to advise the public when such an individual is removed from the program.

(15) Disclose information to the public sufficient to identify individual providers of continuing education for paid tax return preparers, including contact information.

(16) Disclose information to appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper and electronic media.

**RETRIEVABILITY:**

Records pertaining to paid tax return preparers may be retrieved by the preparer's PTIN, name, Taxpayer Identification Number (Social Security Number or Employer Identification Number), or application number. Records pertaining to individual continuing education providers may be retrieved by provider name, Taxpayer Identification Number, application number, or course or program number. Records pertaining to contractors may be retrieved by contractor name or Taxpayer Identification Number, or by contract number. Records pertaining to communications with individuals regarding the paid tax return preparer registration program may be retrieved by the name of the individual or the name or other identifying information of a paid tax return preparer or a continuing education provider identified in the communication. Records may also be retrieved by IRS employee identification number for the employee assigned to the case, project, or determination.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Record retention will be established in accordance with the National Archives and Records Administration Regulations Part 1228, Subpart B— Scheduling Records.

**SYSTEM MANAGER(S) AND ADDRESS:**

Director, Return Preparer Office. See IRS Appendix below for address.

**NOTIFICATION PROCEDURE:**

Individuals seeking notification and access to any record contained in this system of records, or seeking to contest its content, may inquire in writing in accordance with instructions appearing at 31 CFR, Part 1, Appendix B. Inquiries should be addressed as in "Record Access Procedures" below. This system of records contains records that are exempt from the notification, access and contest requirements pursuant to 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

See "Notification Procedure" above.

**CONTESTING RECORDS PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records. With respect to records other than tax records, see "Notification Procedure" above.

**RECORDS SOURCE CATEGORIES:**

Applicants and registered paid tax return preparers; Treasury and other Federal agency records; state and municipal government agencies; contractors; continuing education providers; witnesses; professional organizations; publicly available records such as real estate records and news media.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

Some of the records in this system are exempt from sections (c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I), and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36)

**Treasury/IRS 42.001**

**SYSTEM NAME:**

Examination Administrative Files—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field, computing center, and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Taxpayers who are being considered for examination, or who are, or were, examined to determine an income, estate and gift, excise, or employment tax liability.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Investigatory materials required in making a tax determination or other verification in the administration of tax laws and all other sub-files related to the processing of the tax case. This

system also includes other management information related to a case and used for tax administration purposes, including classification and scheduling records.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To document the examinations of tax returns or other determinations as to a taxpayer's tax liability; to document determinations whether or not to examine a taxpayer; and to analyze trends in taxpayer compliance.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USES AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer's name, Taxpayer Identification Number (TIN) (e.g., Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS), and document locator number (DLN).

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management.

**SYSTEM MANAGER(S) AND ADDRESS:**

Division Commissioners, W&I, SB/SE., TE/GE, and LB&I. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Taxpayers' returns, books and records; informants and other third party witnesses; city and state governments; other Federal agencies; examinations of other taxpayers; and taxpayers' representatives.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system is exempt from 5 U.S.C. 552a(c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I) and (f) of the Privacy Act pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36).

**Treasury/IRS 42.002**

**SYSTEM NAME:**

Excise Compliance Programs—Treasury/IRS.

**SYSTEM LOCATION:**

SB/SE (Excise Program) area and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

These records include information about individuals engaged in any taxable activity related to excise taxes; the filing, preparing, or transmitting of Federal excise taxes; or witnesses or other parties with knowledge of such taxable activity.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

These records include information about individuals who are the subject of excise tax compliance programs administered by the IRS, including records pertaining to witnesses or other parties with knowledge of such taxable activity.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

These records are used to administer the Federal Excise Compliance Program.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USE:**

Disclosure of return and return information may be made only as provided by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

Records are retrievable by taxpayer name and Taxpayer Identification Number (TIN) (*e.g.*, Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by IRS), or document locator number (DLN).

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER(S) AND ADDRESS:**

Division Commissioner SB/SE (Excise Program), (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records. Other records are exempt from contest as stated in "Record Access Procedures" above.

**RECORD SOURCE CATEGORIES:**

Filed IRS Forms 720, 720–TO/CS, 637, 2290, 8849; Customs Form 7501, Entry Summary; dyed diesel fuel inspections; individuals engaged in any activity related to excise taxes, or the filing, preparing, or transmitting of excise taxes; witnesses or other parties with knowledge of such activity.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

Records maintained in this system have been designated as exempt from 5 U.S.C. 552a(c)(3), (d)(1), (2), (3), and (4), (e)(1), (e)(4)(G), (H), and (I), and (f) of the Privacy Act pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36).

**TREASURY/IRS 42.005**

**SYSTEM NAME:**

Whistleblower Office Records—Treasury/IRS.

**SYSTEM LOCATION:**

Whistleblower Office, Washington, DC, and Ogden Campus, Ogden, Utah.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

These records include information about individuals who submit allegations of possible tax noncompliance and claims for award to the Whistleblower Office ("claimants"), claimants' representatives, and the taxpayers and third parties about whom the information is received, which is pertinent to a claim for award.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

These records include claimant identity information, allegation information received, claims or award (including supporting information or documentation), information pertaining to any civil or criminal investigation initiated, or expanded, as a result of the allegations received by the Whistleblower Office, any other

information pertinent to the Whistleblower Office's determination as to the amount, if any, of any award for which the claimant may be eligible under 26 U.S.C. 7623, including information pertaining to appeals of award determinations to the Tax Court (including the results of such appeals).

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

26 U.S.C. 7623 and 7801, and 5 U.S.C. 301.

**PURPOSE(S):**

The records in this system will be used to administer the claimant award program under 26 U.S.C. 7623.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM INCLUDING CATEGORIES OF USERS AND PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103.

To the extent authorized by 26 U.S.C. 6103, disclosure may also be made to appropriate agencies, entities, and persons when: (1) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (2) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

Data is retrieved by the name or Taxpayer Identification Number (TIN) of the claimant(s), of the taxpayer(s) who are the subject(s) of the allegation(s), or of third parties identified in the records; the name or Centralized Authorization File (CAF) number of the claimant's representative; or an award claim number assigned by the Whistleblower Office.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information

TD_0001123

Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER(S) AND ADDRESS:**

Director, Whistleblower Office, SE: WO, 1111 Constitution Avenue NW., Washington, DC 20224.

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORDS PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORDS SOURCE CATEGORIES:**

Claimants and their representatives; Department of the Treasury employees and records; newspapers, court records, and other publicly available information.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated as exempt from sections (c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I), and (f) of the Privacy Act pursuant to 5 U.S.C. 552a(k)(2). See 31 CFR 1.36.

**Treasury/IRS 42.008**

**SYSTEM NAME:**

Audit Information Management System (AIMS)—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field, and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Taxpayers whose tax returns are under the jurisdiction of examiners in W&I, SB/SE., TE/GE and LB&I

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Name, address, and Taxpayer Identification Number (TIN) (*e.g.,* Social Security Number (SSN), Employer Identification Number (EIN), or other similar number assigned by the IRS) of taxpayers; information from the Master Files (IRS 24.030 and 24.046) and a code identifying taxpayers that threatened or assaulted IRS employees.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To maintain information about returns in inventory and closed returns.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name and TIN.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 1220).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioners, W&I, SB/SE., TE/GE and LB&I. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the

system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Tax returns and examination files.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system is exempt from 5 U.S.C. 552a(c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I) and (f) of the Privacy Act pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36).

**Treasury/IRS 42.017**

**SYSTEM NAME:**

International Enforcement Program Information Files—Treasury/IRS.

**SYSTEM LOCATION:**

Division Commissioner, LB&I (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Any individual having foreign business or financial activities.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Listing of individual taxpayers, Taxpayer Identification Number (TIN) (*e.g.,* Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by IRS), summary of income expenses, financial information as to foreign operations or financial transactions, acquisition of foreign stock, controlling interest of a foreign corporation, organization or reorganization of foreign corporation examination results, information concerning potential tax liability, records pertaining to Advanced Pricing Agreements and mutual agreements.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To monitor the International Enforcement Program.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Disclosure of tax convention information may be made only as provided by 26 U.S.C. 6105. All other records may be used as

described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name and Taxpayer Identification Number (TIN).

**SYSTEM MANAGER(S) AND ADDRESS:**

Division Commissioner, LB&I. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Tax convention and treaty partners; individual's tax returns; examinations of other taxpayers; and public sources of information.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system is exempt from 5 U.S.C. 552a(c)(3), (d)(1)–(4),(e)(1), (e)(4)(G)–(I) and (f) of the Privacy Act pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36).

**Treasury/IRS  42.021**

**SYSTEM NAME:**

Compliance Programs and Projects Files—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field, and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals who may be involved in tax evasion schemes or noncompliance schemes, including but not limited to withholding noncompliance or other areas of noncompliance grouped by industry, occupation, or financial transactions; individuals who may be selling or promoting abusive tax schemes or abusive tax avoidance transactions; individuals who may be in noncompliance with tax laws concerning tax exempt organizations, return preparers, corporate kickbacks, or questionable Forms W–4, tax evasion schemes involving identity theft, among others.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records pertaining to individuals in compliance projects and programs, and records used to consider individuals for selection in these compliance projects and programs.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To track information relating to special programs and projects to identify non-compliance schemes and to select individuals involved in such schemes for enforcement actions.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name and Taxpayer Identification Number (TIN) (e.g., Social Security Number (SSN), Employer Identification Number (EIN), or other similar number assigned by the IRS), or document locator number (DLN).

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioners, W&I, SB/SE. TE/GE, and LB&I. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system is exempt from 5 U.S.C. 552a(c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I)

and (f) of the Privacy Act pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36).

## Treasury/IRS 42.027

### SYSTEM NAME:

Data on Taxpayers' Filings on Foreign Holdings—Treasury/IRS.

### SYSTEM LOCATION:

Division Commissioner, LB&I. (See the IRS Appendix below for address.)

### CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Individuals who file Form 5471, Information Return with respect to a Foreign Corporation.

### CATEGORIES OF RECORDS IN THE SYSTEM:

Names of individuals who file Form 5471.

### AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

5 U.S.C. 301 and 26 U.S.C. 7801.

### PURPOSE:

To monitor individuals who file Form 5471, Controlled Foreign Corporation.

### ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

### POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:

### STORAGE:

Paper records and electronic media.

### RETRIEVABILITY:

By taxpayer name and Taxpayer Identification Number (TIN) (e.g., Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS).

### SAFEGUARDS:

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

### RETENTION AND DISPOSAL:

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

### SYSTEM MANAGER AND ADDRESS:

Division Commissioner, LB&I. (See the IRS Appendix below for address.)

### NOTIFICATION PROCEDURE:

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

### RECORD ACCESS PROCEDURES:

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

### CONTESTING RECORD PROCEDURES:

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

### RECORD SOURCE CATEGORIES:

Form 5471.

### EXEMPTIONS CLAIMED FOR THE SYSTEM:

None.

## Treasury/IRS 42.031

### SYSTEM NAME:

Anti-Money Laundering/Bank Secrecy Act (BSA) and Form 8300 Records—Treasury/IRS.

### SYSTEM LOCATION:

Computing Center and field offices. (See the IRS Appendix below for address.)

### CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Individuals subject to the reporting and recordkeeping requirements of the BSA, including:

(1) Individuals whose businesses provide any of the financial services which subject them to the reporting, recordkeeping or registration requirements of the laws commonly known as the Bank Secrecy Act (BSA), or the related reporting and recordkeeping requirements of 26 U.S.C. 6050I.

(2) Individuals acting as employees, owners or customers of such institutions or involved, directly or indirectly, in any transaction with such institutions. Examples of institutions that offer financial services are: Currency dealers, check cashiers, money order or traveler's check issuers, sellers, or redeemers, casinos, card clubs, and other money transmitters.

(3) Individuals who are required to file reports or maintain records required under the Bank Secrecy Act, such as the Report of Foreign Bank and Financial Accounts and related records.

(4) Persons who may be witnesses or may otherwise provide information concerning these individuals.

### CATEGORIES OF RECORDS IN THE SYSTEM:

Records relate to the administration of the IRS anti-money laundering program including the registration, reporting and recordkeeping requirements of the BSA and 26 U.S.C. 6050I. They may also relate to individuals who, based upon certain tolerances, exhibit patterns of financial transactions suggesting noncompliance with the registration, reporting and recordkeeping requirements of the BSA and 26 U.S.C. 6050I. Records may also relate to individuals who are required to file reports or maintain records required under the Bank Secrecy Act, such as the Report of Foreign Bank and Financial Accounts and related records. Records may also relate to IRS administrative actions, such as notification, educational or other outreach efforts, examination results, and civil or criminal referrals.

### AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

5 U.S.C. 301, 31 U.S.C. 5311–5332, 26 U.S.C. 6050I, and 7801.

### PURPOSE:

To administer 26 U.S.C. 6050I and the Bank Secrecy Act.

### ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USE:

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the

**54114**    **Federal Register**/Vol. 80, No. 173/Tuesday, September 8, 2015/Notices

purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a Federal, state, local, or tribal agency, or other public authority, which has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(4) Disclose information to appropriate Federal, state, local or foreign agencies responsible for investigating or prosecuting the violations of or for enforcing or implementing a statute, rule, regulation, order, or license, where the Service becomes aware of an indication of a potential violation of civil or criminal law or regulation, or the use is required in the conduct of intelligence or counter-intelligence activities, including analysis, to protect against international terrorism.

(5) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(6) Disclose information to the news media as described in the IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(7) Disclose information to any agency, including any State financial institutions supervisory agency, United States intelligence agency or self-regulatory organization registered with the Securities and Exchange Commission or the Commodity Futures Trading Commission, upon written request of the head of the agency or organization. The records shall be available for a purpose that is consistent with title 31, as required by 31 U.S.C. 5319.

(8) Disclose information to representatives of the National Archives and Records Administration (NARA) who are conducting records management inspections under authority of 44 U.S.C. 2904 and 2906.

(9) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THIS SYSTEM:**

**STORAGE:**
Paper records and electronic media.

**RETRIEVABILITY:**
Name and Taxpayer Identification Number (TIN) (*e.g.,* Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS).

**SAFEGUARDS:**
Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**
Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER(S) AND ADDRESS:**
Division Commissioner, SB/SE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**
This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**
This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**
26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records. Other records are exempt from contest as stated in "Record Access Procedures" above.

**SOURCE CATEGORIES:**
The system contains material for which sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**
This system is exempt from 5 U.S.C. 552a(c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I) and (f) of the Privacy Act pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36).

### Treasury/IRS 42.888

**SYSTEM NAME:**
Qualifying Therapeutic Discovery Project Records—Treasury/IRS.

**SYSTEM LOCATION:**
IRS Campus, Ogden, UT.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**
Individuals who file an Application for a Qualifying Therapeutic Discovery Project credit (or grant in lieu of credit) in their individual capacity or on behalf of their sole proprietorship.

**CATEGORIES OF RECORDS IN THE SYSTEM:**
These records include information pertaining to the IRS's administration of the Qualifying Therapeutic Discovery Project Program. Records include, but are not limited to the application, including Form 8942 and the Project Information Memorandum, representative authorization information, and a unique administrative control identifier associated with each application for certification. The records may contain taxpayer names, Taxpayer Identification Numbers (TIN), and (Social Security Numbers (SSN).

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**
5 U.S.C. 301 and 26 U.S.C. 48D and 7801. Section 9023(a) of The Patient Protection and Affordable Care Act (Pub. L. 111–148) as amended by the Health Care and Education

Reconciliation Act of 2010 (Pub. L. 111-152) [Affordable Care Act].

**PURPOSE:**

To administer, in consultation with the Department of Health & Human Services, a qualifying therapeutic discovery project program to consider and award certifications for qualified investments eligible for the credit (or, at the taxpayer's election, the grant) to qualifying therapeutic discovery project sponsors.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM INCLUDING CATEGORIES OF USERS AND PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) To disclose certain information to the public regarding the amount of the grant, the identity of the person to whom the grant was made, and a description of the project with respect to which the grant was made in accordance with the intent of Congress to publicize the projects that show significant potential to produce new and cost-saving therapies, support good jobs, and increase U.S. competitiveness.

(2) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(3) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(4) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(6) Disclose information to a contractor, including an expert witness or a consultant hired by the IRS, to the extent necessary for the performance of a contract.

(7) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

(8) Disclose information to professional organizations or associations with which individuals covered by this system of records may be affiliated, such as state bar disciplinary authorities, to meet their responsibilities in connection with the administration and maintenance of standards of conduct and discipline.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name and Taxpayer Identification Number (TIN) (Social Security Number (SSN), Employer Identification Number (EIN), or similar number assigned by the IRS).

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER(S) AND ADDRESS:**

Division Commissioner, SB/SE., 5000 Ellin Road, New Carrollton, MD 20706.

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below. The IRS may assert 5 U.S.C. 552a(d)(5) as appropriate.

**CONTESTING RECORDS PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records. For all other records, see "Records Access Procedures" above.

**RECORDS SOURCE CATEGORIES:**

Records in this system are provided by the applicants, the Department of Health and Human Services, and the IRS taxpayer account records.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 44.001**

**SYSTEM NAME:**

Appeals Case Files—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, campus, and field offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Taxpayers who seek administrative review of IRS proposed adjustments and collection actions with which they disagree. Persons who seek administrative review of initial Freedom

of Information Act (FOIA) determinations.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Investigatory materials required in making a tax determination or other verification in the administration of tax laws and all other sub-files related to the processing of the tax case, including history notes and work papers required in an administrative review of an assessment or other initial tax determination, collection action, or FOIA determination. This system also includes other management information related to a case.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, 5 U.S.C. 552, and 26 U.S.C. 7801.

**PURPOSE:**

To document the actions taken during Appeals' administrative review of IRS proposed adjustments, collection actions, or Freedom of Information Act (FOIA) initial determinations.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By individual's name.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER(S) AND ADDRESS:**

Chief, Appeals. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records. Other records are exempt from contest as stated in ''Record Access Procedures'' above.

**RECORD SOURCE CATEGORIES:**

This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system is exempt from 5 U.S.C. 552a(c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I) and (f) of the Privacy Act pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36).

**Treasury/IRS 44.003**

**SYSTEM NAME:**

Appeals Centralized Data (ACD)—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field, and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Taxpayers who seek administrative review of IRS proposed adjustments and collection actions with which they disagree. Individuals who seek administrative review of initial Freedom of Information Act (FOIA) determinations.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Information from 24.030, 24.046, 42.001, and 44.001 systems, related internal management information, including the taxpayer's DIF Score, and a code identifying taxpayers that threatened or assaulted IRS employees. Information pertaining to FOIA cases under administrative appeal.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, 5 U.S.C. 552, and 26 U.S.C. 7801.

**PURPOSE:**

To track information about cases in inventory and closed cases.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By name and Taxpayer Identification Number (TIN) (*e.g.*, Social Security Number (SSN), Employer Identification Number (EIN), or other similar number assigned by the IRS).

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Chief, Appeals. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Tax returns and other filings made by the individual and agency entries made in the administration of the individual's tax account. FOIA administrative appeals and agency entries made in the administration of the FOIA appeal. Also, time reports prepared by Appeals Officers.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS  44.004**

**SYSTEM NAME:**

Art Case Files—Treasury/IRS.

**SYSTEM LOCATION:**

National Office (Appeals). (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Famous or noted artists whose works have been evaluated by the Commissioner's Art Panel or its staff for use in a taxpayer's case.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Commissioner's Art Panel or its staff decisions on values of works of art by named artists and appraisal documentation.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To establish value of art works for purposes of tax administration.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a Federal, state, local, or tribal agency, or other public authority, which has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(4) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(6) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(7) Disclose information to the news media as described in the IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(8) Disclose information to foreign governments in accordance with international agreements.

(9) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer, artist, and appraiser name.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Chief, Appeals. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix

**54118**    **Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices

B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Commissioner's Art panel and staff decisions and appraisal documentation.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 44.005**

**SYSTEM NAME:**

Expert Witness and Fee Appraiser Files—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Expert witnesses for litigation and appraisers, including Art Advisory Panelists whose services may be or are used.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Biographical data, application letters, or list of expert/appraiser names by specialty.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To track individuals available for expert witness and appraisal services.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has

agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a Federal, state, local, or tribal agency, or other public authority, which has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(4) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of, a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(6) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(7) Disclose information to the news media as described in the IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(8) Disclose information to foreign governments in accordance with international agreements.

(9) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or

confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

Expert witness or appraiser name.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Chief, Appeals. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

See "Records Access Procedure" above.

**RECORD SOURCE CATEGORIES:**

Expert witnesses, appraisers, or public sources.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 46.002**

**SYSTEM NAME:**

Criminal Investigation Management Information System (CIMIS) and Case Files—Treasury/IRS.

**SYSTEM LOCATION:**

National Office (Criminal Investigation), field, campus, and computing center offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Subjects and potential subjects of Criminal Investigation (CI) investigations and other individuals of interest to CI, such as witnesses and associates of subjects or potential subjects of CI investigations; individuals about whom CI has received information alleging their commission of, or involvement with, a violation of Federal laws with IRS jurisdiction, including individuals who may be victims of identity theft or other fraudulent refund or tax schemes; individuals identified as potentially posing a threat to the Commissioner, other Agency officials, or visiting dignitaries, or as having inappropriately contacted the Commissioner or other Agency officials; IRS employees assigned to work matters handled by CI.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records pertaining to possible violations of laws under the enforcement jurisdiction of the IRS, received by the IRS from other sources or developed during investigative activities, that identify or may identify criminal or civil nonconformance with Federal tax laws and other Federal laws delegated to CI for investigation or enforcement; information arising from investigative activities conducted by CI in conjunction with other Federal, state, local, or foreign law enforcement, regulatory, or intelligence agencies; personal, identification, criminal history, and other information, including information sources, pertaining to individuals identified as person(s) of interest by Special Agents assigned to the Dignitary Protection Detail; personnel and workload management information. Records include biographical, travel, communication, financial, and surveillance information.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, 31 U.S.C. 5311–5332, 26 U.S.C. 7801, and Department of the Treasury Delegation Orders and Directives authorizing CI to conduct investigations into specified non-tax crimes.

**PURPOSE:**

To maintain, analyze, and process sensitive investigative information that identifies or may identify criminal noncompliance with Federal tax laws and other Federal laws delegated to CI for investigation or enforcement, and that identifies or may identify the individuals connected to such activity. To establish linkages between identity theft and refund or other tax fraud schemes, and the individuals involved in such schemes, that may be used to further investigate such activity and to perfect filters that identify fraudulent returns upon filing and to facilitate tax account adjustments for taxpayer victimized by these schemes.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. Disclosure of information covered by 31 U.S.C. 5311, *et seq.* or 12 U.S.C. 1951, *et seq.* (Bank Secrecy Act) may be made only as provided by Title 31, U.S.C., and Treasury guidelines. Other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which the IRS collected the records and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice, or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by the proceeding, and the IRS determines that the records are relevant and useful.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof: (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a part to, has an interest in, or is likely to be affected by, the proceeding, and the IRS or the DOJ determines that the information is relevant and necessary. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to Federal, state, local, tribal, and foreign law enforcement and regulatory agencies regarding violations or possible violations of Bank Secrecy Act, money laundering, tax, and other financial laws when relevant and necessary to obtain information for an investigation or enforcement activity.

(4) Disclose information to a Federal, state, local, or tribal agency, or other public authority responsible for implementing, enforcing, investigating, or prosecuting the violation of a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to a contractor hired by the IRS, including an expert witness or a consultant, to the extent necessary for the performance of a contract.

(6) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(7) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(8) Disclose information to foreign governments in accordance with international agreements.

(9) Disclose information to the news media as described in IRS Policy Statement 11–94 (formerly P–1–183), News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.19.1.9.

(10) Disclose information to a defendant in a criminal prosecution, the DOJ, or a court of competent jurisdiction when required in criminal discovery or by the Due Process Clause of the Constitution.

(11) Disclose information, to the extent deemed necessary and appropriate for use in announcements to the general public that the IRS or the Department of the Treasury seeks to locate, detain or arrest specified individuals in connection with criminal activity under CI's investigative jurisdiction.

(12) Disclose information to appropriate agencies, entities, and

persons when: (a) The IRS suspects or has confirmed that the security or confidentially of information in the system of records has been compromise; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interest, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and to prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By name, address, Social Security Number, Taxpayer Identification Number, or telephone, passport, financial account, driver or professional license, or criminal record numbers, or other identifying detail contained in the investigative records, including financial information, geographical location/travel information, surveillance records, communication and contact information, or biographical data of the subject or an associate of the subject, a witness, or a victim of alleged identify theft or other fraudulent refund or tax scheme; identity of the individuals(s) who provided information; name or employee number of assigned employee(s).

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.2, Physical Security Program, and IRM 10.8, Information Technology (IT) Security.

**RETENTION AND DISPOSAL:**

Records pertaining to persons of interest identified by Special Agents assigned to the Dignitary Protection Detail are maintained until such time that the individual or group no longer poses a threat. Other records are retained and disposed of in accordance with the record control schedules applicable to the records of Criminal Investigation, Document 12990, Record Control Schedule 30 (formerly IRM 1.15.30).

**SYSTEM MANAGER AND ADDRESS:**

Chief, Criminal Investigation. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking notification of an access to any record contained in this system of records, or seeking to contest its content, may inquire in writing in accordance with instructions appearing at 31 CFR part 1, subpart C, Appendix B. Written inquiries should be addressed as stated in the Appendix published in the **Federal Register** on [Insert **Federal Register** Publication Date]. This system of records contains records that are exempt from the notification, access, and contest requirements pursuant to 5 U.S.C. 552a(j)(2).

**RECORD ACCESS PROCEDURES:**

See "Notification Procedure" above.

**CONTESTING RECORD PROCEDURES:**

See "Notification Procedure" above. 26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated exempt from sections (c)(3)–(4), (d)(1)–(4), (e)(1)–(3), (e)(4)(G)–(I), (e)(5), (e)(8), (f) and (g) of the Privacy Act, pursuant to 5 U.S.C. 552a(j)(2). (See 31 CFR 1.36).

**Treasury/IRS  46.003**

**SYSTEM NAME:**

Confidential Informants—Treasury/ IRS.

**SYSTEM LOCATION:**

National Office (Criminal Investigation) and field offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Current and former confidential informants; subjects of confidential informants' reports.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Information about current and former confidential informants, including their personal and financial information and investigative activities with which each confidential informant is connected.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, 26 U.S.C. 7801 and 7803; 31 U.S.C. 5311 *et seq.*, and Department of the Treasury delegation orders and directives authorizing CI to conduct investigations into specified non-tax crimes.

**PURPOSE:**

To maintain a file of the identities and background material of current and former confidential informants.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. Disclosure of information covered by 31 U.S.C. 5311, *et seq.* or 12 U.S.C. 1951, *et seq.* (Bank Secrecy Act) may be made only as provided by Title 31, U.S.C., and Treasury guidelines. Other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which the IRS collected the records and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice, or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by the proceeding, and the IRS determines that the records are relevant and useful.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a part to, has an interest in, or is likely to be affected by, the proceeding, and the IRS or the DOJ determines that the information is relevant and necessary. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to Federal, state, local, tribal, and foreign law enforcement and regulatory agencies regarding violations or possible violations of Bank Secrecy Act, money laundering, tax, and other financial laws when relevant and necessary to obtain information for an investigation or enforcement activity.

(4) Disclose information to a Federal, state, local, or tribal agency, or other public authority responsible for

implementing, enforcing, investigating, or prosecuting the violation of a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to a contractor hired by the IRS, including an expert witness or a consultant, to the extent necessary for the performance of a contract.

(6) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(7) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(8) Disclose information to foreign governments in accordance with international agreements.

(9) Disclose information to the news media as described in IRS Policy Statement 11–94 (formerly P–1–183), News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.19.1.9.

(10) Disclose information to a defendant in a criminal prosecution, the DOJ, or a court of competent jurisdiction when required in criminal discovery or by the Due Process Clause of the Constitution.

(11) Disclose information to appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromise; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interest, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and to prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By confidential informant's name, address, or Taxpayer Identification Number; investigation number; or other identifying detail (such as telephone, driver's license, passport, or financial account numbers); name of the subject or other persons identified in the confidential informant's report or memoranda; name or employee number of assigned employee(s).

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.2, Physical Security Program, and IRM 10.8, Information Technology (IT) Security.

**RETENTION AND DISPOSAL:**

Records are retained and disposed of in accordance with the record control schedules applicable to the records of Criminal Investigation, Document 12990, Record Control Schedule 30 (formerly IRM 1.15.30).

**SYSTEM MANAGER(S) AND ADDRESS:**

Chief, Criminal Investigation. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking notification of an access to any record contained in this system of records, or seeking to contest its content, may inquire in writing in accordance with instructions appearing at 31 CFR part 1, subpart C, Appendix B. Written inquiries should be addressed as stated in the Appendix published in the **Federal Register** on [Insert **Federal Register** Publication Date]. This system of records contains records that are exempt from the notification, access, and contest requirements pursuant to 5 U.S.C. 552a(j)(2).

**RECORD ACCESS PROCEDURES:**

See "Notification Procedure" above.

**CONTESTING RECORD PROCEDURES:**

See "Notification Procedure" above. 26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated exempt from sections (c)(3)–(4), (d)(1)–(4), (e)(1)–(3), (e)(4)(G)–(I), (e)(5), (e)(8), (f) and (g) of the Privacy Act, pursuant to 5 U.S.C. 552a(j)(2). (See 31 CFR 1.36).

**Treasury/IRS 46.005**

**SYSTEM NAME:**

Electronic Surveillance and Monitoring Records—Treasury/IRS.

**SYSTEM LOCATION:**

National Office (Criminal Investigation). (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Subjects of electronic surveillance including associates identified by the surveillance or otherwise.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Information received or developed during CI's investigative activities relating to authorized electronic surveillance activities; investigative reports and files regarding electronic surveillance conducted by CI independently or in conjunction with other Federal, state, local or foreign law enforcement, or intelligence agencies.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, and 26 U.S.C. 7801 and 7803; 31 U.S.C. 5311 *et seq.*, and Department of the Treasury delegation orders and directives authorizing CI to conduct investigations into specified non-tax crimes.

**PURPOSE:**

To maintain, analyze, and process sensitive investigative data obtained through authorized electronic surveillance that identifies or may identify criminal noncompliance with Federal tax law or other laws delegated to CI for enforcement.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. Disclosure of information covered by 31 U.S.C. 5311, *et seq.* or 12 U.S.C. 1951, *et seq.* (Bank Secrecy Act) may be made only as provided by Title 31, U.S.C., and Treasury guidelines. Other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which the IRS collected the records and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice, or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS

employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by the proceeding, and the IRS determines that the records are relevant and useful.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof: (b) Any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding, and the IRS or the DOJ determines that the information is relevant and necessary. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to Federal, state, local, tribal, and foreign law enforcement and regulatory agencies regarding violations or possible violations of Bank Secrecy Act, money laundering, tax, and other financial laws when relevant and necessary to obtain information for an investigation or enforcement activity.

(4) Disclose information to a Federal, state, local, or tribal agency, or other public authority responsible for implementing, enforcing, investigating, or prosecuting the violation of a statute, rule, regulation, order, or license, then a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to a contractor hired by the IRS, including an expert witness or a consultant, to the extent necessary for the performance of a contract.

(6) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(7) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(8) Disclose information to foreign governments in accordance with international agreements.

(9) Disclose information to the news media as described in IRS Policy Statement 11–94 (formerly P–1–183), News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.19.1.9.

(10) Disclose information to a defendant in a criminal prosecution, the DOJ, or a court of competent jurisdiction when required in criminal discovery or by the Due Process Clause of the Constitution.

(11) Disclose information to appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromise; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interest, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and to prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By name, address, Taxpayer Identification Number, or other identifying detail (telephone, driver's license, passport, criminal record, or financial account numbers) of the subject or an associate of the subject; investigation number; address, telephone number, or other locational criteria of the person or location under surveillance; name or employee number of assigned employee(s).

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.2, Physical Security Program, and IRM 10.8, Information Technology (IT) Security.

**RETENTION AND DISPOSAL:**

Records are retained and disposed of in accordance with the record control schedules applicable to the records of Criminal Investigation, Document 12990, Record Control Schedule 30 (formerly IRM 1.15.30).

**SYSTEM MANAGER AND ADDRESS:**

Chief, Criminal Investigation. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking notification of an access to any record contained in this system of records, or seeking to contest its content, may inquire in writing in accordance with instructions appearing at 31 CFR part 1, subpart C, Appendix B. Written inquiries should be addressed as stated in the Appendix published in the **Federal Register** on [Insert **Federal Register** Publication Date]. This system of records contains records that are exempt from the notification, access, and contest requirements pursuant to 5 U.S.C. 552a(j)(2).

**RECORD ACCESS PROCEDURES:**

See "Notification Process" above.

**CONTESTING RECORD PROCEDURES:**

See "Notification Process" above. 26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated exempt from sections (c)(3)–(4), (d)(1)–(4), (e)(1)–(3), (e)(4)(G)–(I), (e)(5), (e)(8), (f) and (g) of the Privacy Act, pursuant to 5 U.S.C. 552a(j)(2). (See 31 CFR 1.36).

**Treasury/IRS  46.015**

**SYSTEM NAME:**

Relocated Witnesses—Treasury/IRS.

**SYSTEM LOCATION:**

Chief, Criminal Investigation. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Relocated witnesses.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records pertaining to the relocation of witnesses for their protection.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

TD_0001135

**Federal Register**/Vol. 80, No. 173/Tuesday, September 8, 2015/Notices 54123

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By relocated witness' name.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Chief, Criminal Investigation. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(j)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(j)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated exempt from sections (c)(3)–(4), (d)(1)–(4), (e)(1)–(3), (e)(4)(G)–(I), (e)(5), (e)(8), (f) and (g) of the Privacy Act, pursuant to 5 U.S.C. 552a(j)(2). (See 31 CFR 1.36).

**Treasury/IRS 46.050**

**SYSTEM NAME:**

Automated Information Analysis and Recordkeeping System—Treasury/IRS.

**SYSTEM LOCATION:**

National Office (Criminal Investigation), field, campus, and computing center offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Taxpayers and other individuals involved in financial transactions that require the filing of information reflected in the ''Categories of records'' below.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Financial records pertaining to transactions with reporting requirements under the Internal Revenue Code, the Bank Secrecy Act, or other Federal law, and reports of suspicious activity pertaining to such transaction. Such transactions include international transportation of currency or monetary instruments, cash payments of $10,000 received in a trade or business, financial institution currency transaction reports, registrations of money services businesses, and maintenance of accounts in banks or other financial institutions outside the U.S. Some records in this system are copies from other systems of record, including: Customer Account Data Engine Individual Master File (Treasury/IRS 24.030); Customer Account Data Engine Business Master File (Treasury/IRS 24.046); Currency Transaction Reports (CTRs) (FinCEN.003); Report of International Transportation of Currency or Monetary Instruments (CMIRs)(FinCEN.003); Suspicious Activity Reports (SARs)(FinCEN.002); Foreign Bank and Financial Accounts (FBARs)(FinCEN.003); Reports of Cash Payments over $10,000 Received in a Trade or Business (FinCEN.003); Registration of Money Services Business; and other forms required by the Bank Secrecy Act (FinCEN.003).

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, and 26 U.S.C. 7801 and 7803; 31 U.S.C. 5311 *et seq.,* and Department of the Treasury delegation orders and directives authorizing CI to conduct investigations into specified non-tax crimes.

**PURPOSE:**

To maintain, analyze, and process records and information that may identify patterns of financial transactions indicative of criminal and/or civil noncompliance with tax, money laundering, Bank Secrecy Act, and other financial laws and regulations delegated to CI for investigation or enforcement, and that identifies or may identify the individuals connected to such activity. To establish linkages between fraudulent transactions or other activities, and the individuals involved in such actions, that may be used to further investigate such activity and to perfect filters that identify information pertaining to such activity.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. Disclosure of information covered by 31 U.S.C. 5311, *et seq.* or 12 U.S.C. 1951, *et seq.* (Bank Secrecy Act) may be made only as provided by Title 31, U.S.C., and Treasury guidelines. Other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which the IRS collected the records and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice, or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) Any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by the proceeding, and the IRS determines that the records are relevant and useful.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof: (b) Any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding, and the IRS or the DOJ determines that the information is relevant and necessary. Information may be disclosed to the adjudicative body to resolve issues of

relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to Federal, state, local, tribal, and foreign law enforcement and regulatory agencies regarding violations or possible violations of Bank Secrecy Act, money laundering, tax, and other financial laws when relevant and necessary to obtain information for an investigation or enforcement activity.

(4) Disclose information to a Federal, state, local, or tribal agency, or other public authority responsible for implementing, enforcing, investigating, or prosecuting the violation of a statute, rule, regulation, order, or license, then a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to a contractor hired by the IRS, including an expert witness or a consultant, to the extent necessary for the performance of a contract.

(6) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(7) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(8) Disclose information to foreign governments in accordance with international agreements.

(9) Disclose information to the news media as described in IRS Policy Statement 11–94 (formerly P–1–183), News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.19.1.9.

(10) Disclose information to a defendant in a criminal prosecution, the DOJ, or a court of competent jurisdiction when required in criminal discovery or by the Due Process Clause of the Constitution.

(11) Disclose information to appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromise; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interest, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and

(c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and to prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**
Paper records and electronic media.

**RETRIEVABILITY:**
By name, address, Taxpayer Identification Number, or other identifying detail (such as telephone, driver license, passport, criminal record, financial account, or professional license numbers) of the subject or an associate of the subject, a witness, or a victim of alleged identity theft or other fraudulent refund or tax scheme; identity of the individual who provided information; name or employee number of the assigned employee(s).Social Security Number

**SAFEGUARDS:**
Access controls are not less than those published in IRM 10.2, Physical Security Program, and IRM 10.8, Information Technology (IT) Security.

**RETENTION AND DISPOSAL:**
Records are retained and disposed of in accordance with the record control schedules applicable to the records of Criminal Investigation, Document 12990, Record Control Schedule 30 (formerly IRM 1.15.30).

**SYSTEM MANAGER AND ADDRESS:**
Chief, Criminal Investigation. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**
Individuals seeking notification of an access to any record contained in this system of records, or seeking to contest its content, may inquire in writing in accordance with instructions appearing at 31 CFR part 1, subpart C, Appendix B. Written inquiries should be addressed as stated in the Appendix published in the **Federal Register** on [Insert **Federal Register** Publication Date]. This system of records contains records that are exempt from the notification, access, and contest requirements pursuant to 5 U.S.C. 552a(j)(2).

**RECORD ACCESS PROCEDURES:**
See ''Notification Process'' above.

**CONTESTING RECORD PROCEDURES:**
See ''Notification Process'' above. 26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**
This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**
This system is exempt from 5 U.S.C. 552a(c)(3), (c)(4), (d)(1)–(4), (e)(1), (e)(2), (e)(3), (e)(4)(G), (e)(4)(H), (e)(4)(I), (e)(5), (e)(8), (f), and (g) of the Privacy Act pursuant to 5 U.S.C. 552a(j)(2) and (k)(2). Additionally, pursuant to 5 U.S.C. 552a(k)(2), it is exempt from 5 U.S.C. 552a (c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I) and (f) of the Privacy Act. (See 31 CFR 1.36).

**Treasury/IRS 48.001**

**SYSTEM NAME:**
Disclosure Records—Treasury/IRS.

**SYSTEM LOCATION:**
National Office, field, computing center, and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**
(1) Subjects of ex parte orders or written requests for tax information in non-tax criminal matters or with respect to terrorist activities under 26 U.S.C. 6103(i).

(2) Persons who have made requests or demands for IRS information under Treas. Reg. 301.9000–1 through –6 in matters falling under the jurisdiction of Privacy, Governmental Liaison and Disclosure (PGLD).

(3) Requesters of and intended recipients of letter forwarding services.

(4) Persons who have applied for Federal employment or presidential appointments and applicants for Department of Commerce ''E'' Awards, for whom tax checks have been requested.

(5) Requesters for access to records pursuant to 26 U.S.C. 6103, the Freedom of Information Act (FOIA), 5 U.S.C. 552, and initiators of requests for access, amendment or other action pursuant to the Privacy Act of 1974, 5 U.S.C. 552a.

(6) Individuals identified on Forms 10848, Report of Inadvertent Disclosure of Tax and Privacy Act Information.

(7) Individuals identified by, or initiating other correspondence or inquiries with, matters falling under the jurisdiction of PGLD.

**CATEGORIES OF RECORDS IN THE SYSTEM:**
Correspondence, demands and requests for IRS records, responses to those requests, notes and other background information, copies of records secured, testimony authorizations, tax check

documentation, Forms 10848, any documents related to the processing of FOIA, PA or other requests.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, 552, 552a and 26 U.S.C. 7801.

**PURPOSE:**

To track the processing of requests or demands for agency records under applicable laws and regulations concerning the disclosure of official information.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted:

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof: (b) Any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a part to, has an interest in, or is likely to be affected by, the proceeding, and the IRS or the DOJ determines that the information is relevant and necessary. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of, a statute,

rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(4) Disclose debtor information to a Federal payer agency for purposes of salary and administrative offsets, to a consumer reporting agency to obtain commercial credit reports, and to a debt collection agency for debt collection services.

(5) Disclose information to the news media as described in the IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(6) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By name or Taxpayer Identification Number (TIN) (*e.g.*, Social Security number (SSN), Employer Identification Number (EIN), or other similar number assigned by the IRS).

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management also see Documents 12829 and 12990.

**SYSTEM MANAGER AND ADDRESS:**

Director, Privacy, Governmental Liaison & Disclosure. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records. Other records are exempt from contest as stated in "Record Access Procedures" above.

**RECORD SOURCE CATEGORIES:**

This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system is exempt from 5 U.S.C. 552a(c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I) and (f) of the Privacy Act pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36).

**Treasury/IRS  48.008**

**SYSTEM NAME:**

Defunct Special Service Staff Files Being Retained Because of Congressional Directive—Treasury/IRS.

**SYSTEM LOCATION:**

National Office (Privacy, Governmental Liaison & Disclosure). (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals suspected of violating the internal revenue law by the Special Service Staff before its discontinuation on August 23, 1973.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Individual Master File printouts; returns and field reports; information from other law enforcement government investigative agencies; Congressional Reports, and news media articles.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To preserve under Congressional Directive the activities of the Special

Services Staff before its discontinuation in order to permit subjects of the former Special Services Staff to view records about themselves. This system is no longer being used by the Internal Revenue Service. The Special Service Staff was abolished on August 13, 1973.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS determines that the records are relevant and necessary to the proceeding or advice sought.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a part to, has an interest in, or is likely to be affected by, the proceeding, and the IRS or the DOJ determines that the information is relevant and necessary. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records.

**RETRIEVABILITY:**

By subject name.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Director, Privacy, Governmental Liaison & Disclosure. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below. The IRS may assert 5 U.S.C. 552a(d)(5) as appropriate.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

News media articles, taxpayers' returns and records, informant and third party information, other Federal agencies and examinations of related or other taxpayers.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 49.001**

**SYSTEM NAME:**

Collateral and Information Requests System—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field, campus, and computing center offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

U.S. citizens, resident aliens, and nonresident aliens whose tax matters come under the jurisdiction of the U.S. competent authority in accordance with pertinent provisions of tax treaties with foreign countries.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records of interviews with witnesses regarding financial transactions of taxpayers; employment data; bank and brokerage house records; probate records; property valuations; public documents; payments of foreign taxes; inventories of assets; business books and records.

These records relate to tax investigations conducted by the IRS where some aspects on an investigation must be pursued in foreign countries pursuant to the various tax conventions between the United States and foreign governments. The records also include individual case files of taxpayers on whom information (as is pertinent to carrying out the provisions of the convention or preventing fraud or fiscal evasion in relation to the taxes which are the subject of this convention) is exchanged with foreign tax officials of treaty countries.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To maintain records of correspondence and other documentation with respect to the exchange of information requests by or to foreign governments with which the U.S. maintains tax treaties.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Disclosure of tax treaty information may be made only as provided by 26 U.S.C. 6105. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. All other records may be used as described below if the IRS deems that the purpose of the disclosure is

compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioner, LB&I. See the IRS Appendix below for address.

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system is exempt from 5 U.S.C. 552a(c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I) and (f) of the Privacy Act pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36).

**Treasury/IRS 49.002**

**SYSTEM NAME:**

Tax Treaty Information Management System—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field, campus, and computing center offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

U.S. citizens, resident aliens, and nonresident aliens whose tax matters come under the jurisdiction of the U.S. competent authority in accordance with pertinent provisions of tax treaties with foreign countries.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Management information regarding investigations of, or information exchange requests about taxpayers pursuant to tax treaties between the United States and foreign governments, including information from the Master File, including the taxpayer's DIF Score, and a code identifying taxpayers that threatened or assaulted IRS employees.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To track the inventory of individual case files of taxpayers who request competent authority assistance pursuant to the provisions of income tax treaties, or about whom information exchange requests are made by foreign governments pursuant to applicable tax treaties.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Disclosure of tax treaty information may be made only as provided by 26 U.S.C. 6105. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER(S) AND ADDRESS:**

Division Commissioner, LB&I. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(2).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

This system of records contains investigatory material compiled for law enforcement purposes whose sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system is exempt from 5 U.S.C. 552a(c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I)

and (f) of the Privacy Act pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36).

**Treasury/IRS 50.001**

**SYSTEM NAME:**

Tax Exempt & Governmental Entities (TE/GE) Correspondence Control Records—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field, campus, and computing center offices (TE/GE). (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Requesters of letter rulings and determination letters, and subjects of field office requests for technical advice and assistance and other correspondence, including correspondence associated with section 527 organizations.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Name, date, nature and subject of an assignment, and work history. Sub-systems include case files and section 527 records that contain the correspondence, internal memoranda, digests of issues involved in proposed revenue rulings, and related material.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103 and 6104 where applicable. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By name of requester or the subject of a letter ruling, determination letter, or other correspondence.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioner, TE/GE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, Appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Individuals who request rulings, determination letters, or submit other correspondence, and field offices requesting technical advice or assistance.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 50.003**

**SYSTEM NAME:**

Tax Exempt & Government Entities (TE/GE) Reports of Significant Matters—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field, and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals who submit letter ruling requests or determination letter requests with respect to organizations, or who are the subjects of technical advice requests, where the matter raised has some significance to tax administration.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Summaries of significant technical matters pertaining to letter rulings or determination letters under the jurisdiction of the Division Commissioner, TE/GE.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103 and 6104 where applicable. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By name of the requester or the subject of a letter ruling, determination letter, or other correspondence.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices **54129**

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Division Commissioner, TE/GE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

Individuals seeking to determine if this system of records contains a record pertaining to themselves may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed as in "Record Access Procedures" below.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Individuals who submit determination or letter ruling requests and the employees who process them.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

None.

**Treasury/IRS 50.222**

**SYSTEM NAME:**

Tax Exempt/Government Entities (TE/GE) Case Management Records—Treasury/IRS.

**SYSTEM LOCATION:**

Office of the Division Commissioner, Tax Exempt/Government Entities (TE/GE), National Office, Area Offices, Local Offices, Service Campuses, and Computing Centers. (See the IRS Appendix below for addresses.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals who are the subject of or are connected to TE/GE examinations and tax determinations, including compliance projects, regarding Federal tax exemption requirements, employee plan requirements, and employment tax requirements.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

These records include case identification, assignment, and status information from TE/GE examination and tax determination files, information

about individuals pertaining to TE/GE's methods of investigating exempt organizations, retirement plans, and government entities with regard to their compliance with statutory Federal requirements and/or their tax exempt status. In addition, this system contains identifying information regarding informants who have provided information that is significant and relevant to TE/GE investigations of taxpayers.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301; 26 U.S.C. 7801.

**PURPOSE:**

This system will provide TE/GE records for case management, including employee assignments and file tracking. TE/GE maintains records on businesses, organizations, employee plans, government entities, and Indian Tribal Government entities and individuals, such as principals and officers, connected with these entities. Records in this system are used for law enforcement investigations and may contain identifying information about informants who have provided significant information relevant to investigations of taxpayers.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM INCLUDING CATEGORIES OF USERS AND PURPOSES OF SUCH USES:**

Disclosure of return and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer name, Taxpayer Identification Number (TIN) (e.g., Social Security Number (SSN), Employer Identification Number (EIN), or other similar number assigned by the IRS), or by IRS employee name or identification number for the employee who is assigned the case, project, or determination.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER(S) AND ADDRESS:**

Division Commissioner, TE/GE. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual. The records are exempt under 5 U.S.C. 552a(k)(2) from the notification provisions of the Privacy Act.

**RECORD ACCESS PROCEDURES:**

This system may not be accessed to inspect or contest the content of records. The records are exempt under 5 U.S.C. 552a(k)(2) from the access provisions of the Privacy Act.

**CONTESTING RECORDS PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORDS SOURCE CATEGORIES:**

Information is obtained from tax returns, application returns and supporting material, determination files, examination files, compliance review files, compliance programs and projects, and IRS personnel records.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated as exempt from sections (c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I), and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36.)

**Treasury/IRS 60.000**

**SYSTEM NAME:**

Employee Protection System Records—Treasury/IRS.

**SYSTEM LOCATION:**

National Office, field and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals attempting to interfere with the administration of internal revenue laws through assaults, threats, suicide threats, filing or threats of filing frivolous criminal or civil legal actions against Internal Revenue Service (IRS) employees, or IRS contractors or the employees' or contractors' immediate family members, or through forcible interference against any officer, government contractor or employee while discharging the official duties at his/her position. An individual is designated as a potentially dangerous taxpayer (PDT), based on reliable information, furnished to the IRS or Treasury Inspector General for Tax Administration (TIGTA), that fits any of the criteria (1) through (5) below: (1) Individuals who assault employees or members of the employees' immediate families; (2) individuals who attempt to intimidate or threaten employees or members of the employees' immediate families through specific threats of bodily harm, a show of weapons, the use of animals, or through other specific threatening or intimidating behavior; (3) individuals who are active members of groups that advocate violence against IRS employees specifically, or against Federal employees generally where advocating such violence could reasonably be understood to threaten the safety of IRS employees and impede the performance of their official duties; (4) individuals who have committed the acts set forth in any of the above criteria, but whose acts have been directed against employees or contractors of other governmental agencies at Federal, state, county, or local levels; and (5) individuals who are not designated as potentially dangerous taxpayers through application of the above criteria, but who have demonstrated a clear propensity toward violence through act(s) of violent behavior within the five-year period immediately preceding the time of referral of the individual to the Employee Protection System (EPS). An individual is designated as a taxpayer who should be approached with caution (CAU), based on reliable information furnished to the IRS or the TIGTA, individuals who have threatened physical harm that is less severe or immediate than necessary to satisfy PDT criteria, suicide threat by the taxpayer, or individuals who have filed or threatened to file a frivolous civil or criminal legal action (including

liens, civil complaints in a court, criminal charges) against any IRS employee or contractor, or their immediate families.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Documents reporting the incident; documentary evidence of the incident (*e.g.* threatening correspondence, copies of liens and legal actions); documentation of investigation of incident, with report of investigation, statements, affidavits, and related tax information; records of any legal action resulting from the incident; local police records of individual named in the incident, if such records are requested or otherwise provided during investigation of the incident; FBI record of individual named in the incident, if such records are requested or otherwise provided during investigation of the incident; newspaper or periodical items, or information from other sources, provided to the IRS or to TIGTA for investigation of individuals who have demonstrated a clear propensity toward violence; correspondence regarding the reporting of the incident, referrals for investigation, investigation of the incident; and result of investigation (*i.e.* designation as PDT or CAU).

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301 and 26 U.S.C. 7801.

**PURPOSE:**

To maintain reports by IRS employees or contractors of attempts by individuals to obstruct or impede them or other law enforcement personnel in the performance of their official duties, investigations into the matters reported, and determinations whether the taxpayers should be designated a PDT or CAU.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USE:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice, or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ

has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by the proceeding, and the IRS determines that the records are relevant and useful.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding and the IRS or DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a Federal, state, local, or tribal agency, or other public authority, which has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(4) Disclose information to an appropriate Federal, state, local, tribal, or foreign agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of, a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to the news media as described in the IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(6) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(7) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems

or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By name or Social Security Number (SSN) of individual with respect to whom the PDT or CAU designation is being considered and by administrative case control number.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER(S) AND ADDRESS:**

Chief, Office of Employee Protection. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(2).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed to inspect or contest the content of records. The records are exempt under 5 U.S.C. 552a(k)(2) from the access provisions of the Privacy Act.

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records. Other records are exempt from contest as stated in "Record Access Procedures" above.

SOURCE CATEGORIES:

The system contains material for which sources need not be reported.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system is exempt from 5 U.S.C. 552a(c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I) and (f) of the Privacy Act pursuant to 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36.).

**Treasury/IRS 70.001**

**SYSTEM NAME:**

Individual Income Tax Returns, Statistics of Income—Treasury/IRS.

**SYSTEM LOCATION:**

National Office and campus offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individual taxpayers whose data is selected for compilation into a statistical sample.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Sources of income, exemptions, deductions, income tax, and tax credits, as reported on Form 1040 series of U.S. Individual income tax return. The records are used to prepare and publish statistics. The statistics, studies, and compilations are designed so as to prevent disclosure of any particular taxpayer's identity.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301, 26 U.S.C. 6108 and 7801.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103 and 6108. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which IRS collected the records, and no privilege is asserted.

To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with IRS efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By taxpayer identification number (TIN) (e.g., Social Security Number (SSN), Employer Identification Number (EIN), or other similar number assigned by the IRS), or document locator number (DLN).

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are maintained in accordance with IRM 1.15, Records Management (also see Documents 12829 and 12990).

**SYSTEM MANAGER AND ADDRESS:**

Director, Research Analysis, and Statistics. (See the IRS Appendix below for address.)

**NOTIFICATION PROCEDURE:**

This system may not be accessed for purposes of determining whether the system contains a record pertaining to a particular individual; the records are exempt under 5 U.S.C. 552a(k)(4).

**RECORD ACCESS PROCEDURES:**

This system may not be accessed for purposes of inspection or in order to contest the content of records; the records are exempt under 5 U.S.C. 552a(k)(4).

**CONTESTING RECORD PROCEDURES:**

26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Form 1040 series of U.S. Individual Income Tax Returns.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

This system has been designated exempt from sections (c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I), and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(k)(4). See 31 CFR. 1.36.

**Treasury/IRS 90.001**

**SYSTEM NAME:**

Chief Counsel Management Information System Records —Treasury/IRS.

**SYSTEM LOCATION:**

Office of the Chief Counsel; Office of the Special Counsel to the National Taxpayer Advocate; Offices of the Associate Chief Counsel (Corporate),

(Financial Institutions & Products), (General Legal Services), (Income Tax & Accounting), (International), (Passthroughs & Special Industries), and (Procedure & Administration); Offices of the Division Counsel/Associate Chief Counsel, (Criminal Tax) and (Tax Exempt & Government Entities); and Office of the Division Counsel (Large Business & International), (Small Business/Self Employed) and (Wage & Investment); and Area Counsel offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

(1) Individuals who are the subjects of, or are connected to, matters received by or assigned to the Office of Chief Counsel.

(2) Chief Counsel employees.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Records that contain summary information concerning the description and status of assignments received in the Office of Chief Counsel. These records include the names or subjects of a case, the case file number, case status, issues, professional time expended, and due dates. These records may be used to produce management information on case inventory by taxpayer or employee name and professional time required to complete an assignment.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301; 26 U.S.C. 7801 and 7803; 31 U.S.C. 330.

**PURPOSE:**

The computerized Counsel Automated System Environment (CASE) system is used to track, count, and measure the workload of the Office of Chief Counsel, capturing summary information (such as the name of principal parties or subjects, case file numbers, assignments, status, and classification) of cases and other matters assigned to Counsel personnel throughout their life cycle. CASE is used to generate reports to assist management and other employees to keep track of resources and professional time devoted to individual assignments and broad categories of workload. CASE information is also useful in the preparation of budget requests and other reports to the IRS, to the Treasury Department, or the Congress. CASE also serves as a timekeeping function for employees of the Office of Chief Counsel directly involved in cases and other matters.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which the IRS collected the records and no privilege is asserted. Accordingly, the IRS may:

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice, or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by the proceeding, and the IRS determines that the records are relevant and useful.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding, and the IRS or the DOJ determines that the information is relevant and necessary. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to the parties and to an arbitrator, mediator, or other neutral party, in the context of alternative dispute resolution, to the extent relevant and necessary for resolution of the matters presented, including asserted privileges.

(4) Disclose information to a former employee of the IRS to the extent necessary to refresh their recollection for official purposes when the IRS requires information and/or consultation assistance from the former employee regarding a matter within that individual's former area of responsibility.

(5) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(6) Disclose information to a contractor hired by the IRS, including an expert witness or a consultant, to the extent necessary for the performance of a contract.

(7) Disclose information to a Federal, state, local, or tribal agency, or other public authority responsible for implementing, enforcing, investigating, or prosecuting the violation of a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(8) Disclose information to a Federal, state, local, or tribal agency, or other public authority that has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(9) To the extent consistent with the American Bar Association's Model Rules of Professional Conduct, Rule 4.2, disclose to any person the fact that his chosen legal representative may not be authorized to represent him before the IRS.

(10) Disclose information to a public, quasi-public, or private professional authority, agency, organization, or association, with which individuals covered by this system of records may be licensed by, subject to the jurisdiction of, a member of, or affiliated with, including but not limited to state bars and certified accountancy boards, to assist such authorities, agencies, organizations and associations in meeting their responsibilities in connection with the administration and maintenance of standards of integrity, conduct, and discipline.

(11) Disclose information to foreign governments in accordance with international agreements.

(12) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(13) Disclose information to appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems

TD_0001145

or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the IRS' efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

Records are retrieved by the name or Taxpayer Identification Number of the individual to whom they apply, employees assigned, and by workload case number. If there are multiple parties to a proceeding, then the record is generally retrieved only by the name of the first listed person in the complaint or other document.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are retained and disposed of in accordance with the records control schedules applicable to the records of the Office of Chief Counsel, Document 12990, Record Control Schedules 12 through 15 (formerly IRM 1.15.13 through 1.15.15).

**SYSTEM MANAGER(S) AND ADDRESS:**

Associate Chief Counsel (Finance & Management). See the IRS Appendix below for the address.

**NOTIFICATION PROCEDURE:**

Individuals seeking notification and access to any record contained in this system of records, or seeking to contest its content, may inquire in writing in accordance with instructions appearing at 31 CFR part 1, appendix B. Written inquiries should be addressed to Chief, Disclosure and Litigation Support Branch, Legal Processing Division, IRS Office of Chief Counsel, CC:PA:LPD:DLS, 1111 Constitution Avenue NW., Washington, DC 20224. This system of records may contain records that are exempt from the notification, access, and contest requirements pursuant to 5 U.S.C. 552a(j)(2) and (k)(2). The IRS may assert 5 U.S.C. 552a(d)(5) as appropriate.

**RECORD ACCESS PROCEDURES:**

See "Notification Procedure" above.

**CONTESTING RECORD PROCEDURES:**

See "Notification Procedure" above. 26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

IRS and Chief Counsel employees; Department of Treasury employees; court records.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

Some of the records in this system are exempt from sections (c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I), and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(j)(2) and 552a(k)(2). See 31 CFR 1.36.

**Treasury/IRS 90.002**

**SYSTEM NAME:**

Chief Counsel Litigation and Advice (Civil) Records—Treasury/IRS.

**SYSTEM LOCATION:**

Office of the Chief Counsel; Offices of the Associate Chief Counsel (Corporate), (Financial Institutions & Products), (General Legal Services), (Income Tax & Accounting), (International), (Passthroughs & Special Industries), and (Procedure & Administration); Office of the Division Counsel/Associate Chief Counsel (Tax Exempt & Government Entities); Offices of the Division Counsel (Large Business & International), (Small Business/Self Employed) and (Wage & Investment); Office of the Special Counsel to the National Taxpayer Advocate; Office of the Special Counsel to the Office of Professional Responsibility; and Area Counsel offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

(1) Individuals who have requested advice in the form of a letter ruling, closing agreement, or information letter as set forth under the first annual revenue procedure published by the IRS each year.

(2) Individuals who are the subject of technical advice that responds to any request on the interpretation and proper application of tax laws, tax treaties, regulations, revenue rulings, notices, or other precedents to a specific set of facts that concerns the treatment of an item in a year under examination or appeal, which is submitted under the second annual revenue procedure published by the IRS each year.

(3) Individuals about whom advice has been requested or provided under any other internal rules and procedures, such as may be set forth in the Internal Revenue Manual (IRM) or Chief Counsel Notices.

(4) Individuals who are subjects of, or provide information pertinent to,

matters under the jurisdiction of the Office of Professional Responsibility, when such matters are brought to the attention of Counsel;

(5) Individuals who are parties to litigation with the IRS, or in litigation in which the IRS has an interest, or in proceedings before an administrative law judge.

(6) Individuals who have corresponded with, or who are the subjects of correspondence to, the IRS regarding a matter under consideration by these offices.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

(1) Advice files;
(2) Litigation files;
(3) Correspondence files;
(4) Reference copies of selected work products.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301; 26 U.S.C. 7801 and 7803; 31 U.S.C. 330 and 5314.

**PURPOSE:**

To represent the IRS' interests in litigation before the United States Tax Court and in proceedings before administrative law judges; to assist the Department of Justice in representing the IRS' interests in litigation before other Federal and state courts; to provide legal advice and assistance on civil tax administration matters, including matters pertaining to practice before the IRS and the regulation of tax return preparers; to respond to general inquiries and other correspondence related to these matters; to assist Counsel staff in coordinating and preparing future litigation, advice, or correspondence, to ensure the consistency of such work products and to retain copies of work products for historical, legal research, investigational, and similar purposes.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. All other records may be used as described below if the IRS deems the purpose of the disclosure is compatible with the purpose for which the IRS collected the records, and no privilege is asserted. Accordingly, the IRS may:

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice, or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS

TD_0001146

employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by the proceeding, and the IRS determines that the records are relevant and useful.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by the proceeding and the IRS or the DOJ determines that the information is relevant and necessary. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to the parties and to an arbitrator, mediator, or other neutral, in the context of alternative dispute resolution, to the extent relevant and necessary for resolution of the matters presented, including asserted privileges.

(4) Disclose information to a former employee of the IRS to the extent necessary to refresh their recollection for official purposes when the IRS requires information and/or consultation assistance from the former employee regarding a matter within that individual's former area of responsibility.

(5) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(6) Disclose information to a contractor hired by the IRS, including an expert witness or a consultant, to the extent necessary for the performance of a contract.

(7) Disclose information to a Federal, state, local, or tribal agency, or other public authority responsible for implementing, enforcing, investigating, or prosecuting the violation of a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(8) Disclose information to a Federal, state, local, or tribal agency, or other public authority that has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(9) To the extent consistent with the American Bar Association's Model Rules of Professional Conduct, Rule 4.2, and Circular 230, disclose to any person the fact that his chosen legal representative may not be authorized to represent him before the IRS.

(10) Disclose information to a public, quasi-public, or private professional authority, agency, organization, or association, with which individuals covered by this system of records may be licensed by, subject to the jurisdiction of, a member of, or affiliated with, including but not limited to state bars and certified accountancy boards, to assist such authorities, agencies, organizations and associations in meeting their responsibilities in connection with the administration and maintenance of standards of integrity, conduct, and discipline.

(11) Disclose information to foreign governments in accordance with international agreements.

(12) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(13) Disclose information to the news media as described in the IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(14) Disclose information to other Federal agencies holding funds of an individual for the purpose of collecting a liability owed by the individual.

(15) Disclose information to appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the IRS' efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

Records of the Office of the Associate Chief Counsel (General Legal Services), including the various Area Counsel (General Legal Services), may also be used as described below if the IRS deems the purpose of the disclosure is compatible with the purpose for which the IRS collected the records, and no privilege is asserted.

(16) Disclose information to the Joint Board of Actuaries in enrollment and disciplinary matters.

(17) Disclose information to the Office of Personnel Management, Merit Systems Protection Board, the Office of Special Counsel, and the Equal Employment Opportunity Commission in personnel, discrimination, and labor management matters.

(18) Disclose information to arbitrators, the Federal Labor Relations Authority, including the Office of the General Counsel of that authority, the Federal Service Impasses Board, and the Federal Mediation and Conciliation Service in labor management matters.

(19) Disclose information to the General Services Administration in property management matters.

(20) Disclose information regarding financial disclosure statements to the IRS, which makes the statements available to the public as required by law.

(21) Disclose information to other federal agencies for the purpose of effectuating inter-agency salary offset or inter-agency administrative offset.

(22) Disclose information to the Office of Government Ethics in conflict of interest, conduct, financial statement reporting, and other ethics matters.

**DISCLOSURE TO CONSUMER REPORTING AGENCIES:**

Disclosures of debt information concerning a claim against an individual may be made from this system to consumer reporting agencies as defined in the Fair Credit Reporting Act, 15 U.S.C. 1681a(f) or the Federal Claims Collection Act of 1966, 31 U.S.C. 3701(a)(3).

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By the (1) name(s) of the individual(s) to whom the records pertain, and related individuals; (2) subject matter; (3) certain key administrative dates; and (4) the internal control number for correspondence. If there are multiple parties to litigation, or other proceeding, then the record is generally retrieved

TD_0001147

only by the name of the first listed person in the complaint or other document.

**SAFEGUARDS:**

A background investigation is made on personnel. Offices are located in secured areas. Access to keys to these offices is restricted. Access to records storage facilities is limited to authorized personnel or individuals in the company of authorized personnel. Access controls are not less than those provided by the Physical Security Standards, IRM 1.16, and Information Technology (IT) Security Policy and Standards, IRM 10.8.

**RETENTION AND DISPOSAL:**

Records are retained and disposed of in accordance with the records control schedules applicable to the records of the Office of Chief Counsel, Document 12990, Record Control Schedules 12 through 15, and 30 (formerly IRM 1.15.13 through 1.15.15, and 1.15.30).

**SYSTEM MANAGER(S) AND ADDRESS(ES):**

The Chief Counsel, Special Counsel to the National Taxpayer Advocate, Special Counsel to the Office of Professional Responsibility, each Associate Chief Counsel, and each Division Counsel is the system manager of the system in that office. See the IRS Appendix below for addresses.

**NOTIFICATION PROCEDURE:**

Individuals seeking notification and access to any record contained in this system of records, or seeking to contest its content, may inquire in writing in accordance with instructions appearing at 31 CFR part 1, appendix B. Written inquiries should be addressed to Chief, Disclosure and Litigation Support Branch, Legal Processing Division, IRS Office of Chief Counsel, CC:PA:LPD:DLS, 1111 Constitution Avenue NW., Washington, DC 20224. This system of records may contain records that are exempt from the notification, access, and contest requirements pursuant to 5 U.S.C. 552a(k)(2). The IRS may assert 5 U.S.C. 552a(d)(5) as appropriate.

**RECORD ACCESS PROCEDURES:**

See "Notification Procedure" above.

**CONTESTING RECORD PROCEDURES:**

See "Notification Procedure" above. 26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Taxpayers and their representatives; Department of the Treasury personnel; other Federal agencies; state, local, tribal, and foreign governments, and

other public authorities; witnesses; informants; parties to disputed matters of fact or law; judicial and administrative proceedings; congressional offices; labor organizations; public records such as telephone books, Internet Web sites, court documents, and real estate records; individual subjects of legal advice, written determinations, and other correspondence.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

Some of the records in this system are exempt from sections (c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I), and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(k)(2). See 31 CFR 1.36.

**Treasury/IRS 90.003**

**SYSTEM NAME:**

Chief Counsel Litigation and Advice (Criminal) Records—Treasury/IRS.

**SYSTEM LOCATION:**

Office of the Chief Counsel; Office of the Division Counsel/Associate Chief Counsel (Criminal Tax); and Area Counsel (Criminal Tax) offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

(1) Individual subjects of investigations as to their compliance with tax and other laws under the jurisdiction of IRS Criminal Investigation, with respect to whom criminal recommendations have been made.

(2) Individuals who have requested advice, and about whom advice has been requested, concerning tax-related and criminal offenses under the jurisdiction of IRS Criminal Investigation, where these matters or issues are brought to Counsel's attention.

(3) Individuals who have filed petitions for the remission or mitigation of forfeitures or who are otherwise directly involved as parties in judicial or administrative forfeiture matters.

(4) Individuals who have requested advice, about whom advice has been requested, or with respect to whom a criminal recommendation has been made concerning non-tax criminal matters delegated to the IRS for enforcement and investigation, such as money laundering (18 U.S.C. 1956 and 1957) and the Bank Secrecy Act (31 U.S.C. 5311–5330).

(5) Individuals about whom advice has been requested or provided under any internal rules and procedures, as may be set forth in the Internal Revenue Manual (IRM), Chief Counsel Notices, or other internal issuances.

(6) Individuals who are parties to litigation with the IRS, or in litigation in which the IRS has an interest.

(7) Individuals who have corresponded with the IRS regarding a matter under consideration by these offices.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

(1) Advice files;
(2) Litigation files;
(3) Correspondence files;
(4) Reference copies of selected work products.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301; 26 U.S.C. 7801 and 7803; 31 U.S.C. 330 and 5311–5332.

**PURPOSE:**

To provide legal advice and assistance on criminal tax administration matters, and on nontax criminal matters delegated to the IRS; to assist the Department of Justice (DOJ) in representing the IRS' interests in litigation before Federal and state courts; to respond to general inquiries and other correspondence related to these matters; to assist Counsel staff in coordinating and preparing future litigation, advice, or correspondence to ensure the consistency of such work products and to retain copies of work products for historical, legal research, investigational, and similar purposes.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. All other records may be used as described below if the IRS deems the purpose of the disclosure is compatible with the purpose for which the IRS collected the records, and no privilege is asserted. Accordingly, the IRS may:

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice, or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by the proceeding, and the IRS determines that the records are relevant and useful.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other

adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by the proceeding and the IRS or the DOJ determines that the information is relevant and necessary. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to the parties and to an arbitrator, mediator, or other neutral, in the context of alternative dispute resolution, to the extent relevant and necessary for resolution of the matters presented, including asserted privileges.

(4) Disclose information to a former employee of the IRS to the extent necessary to refresh their recollection for official purposes when the IRS requires information and/or consultation assistance from the former employee regarding a matter within that individual's former area of responsibility.

(5) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(6) Disclose information to a contractor hired by the IRS, including an expert witness or a consultant, to the extent necessary for the performance of a contract.

(7) Disclose information to a Federal, state, local, or tribal agency, or other public authority responsible for implementing, enforcing, investigating, or prosecuting the violation of a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(8) Disclose information to a Federal, state, local, or tribal agency, or other public authority that has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(9) To the extent consistent with the American Bar Association's Model Rules of Professional Conduct, Rule 4.2, disclose to any person the fact that his chosen legal representative may not be authorized to represent him before the IRS.

(10) Disclose information to a public, quasi-public, or private professional authority, agency, organization, or association, with which individuals covered by this system of records may be licensed by, subject to the jurisdiction of, a member of, or affiliated with, including but not limited to state bars and certified accountancy boards, to assist such authorities, agencies, organizations and associations in meeting their responsibilities in connection with the administration and maintenance of standards of integrity, conduct, and discipline.

(11) Disclose information to foreign governments in accordance with international agreements.

(12) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(13) Disclose information to the news media as described in the IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(14) Disclose information to other Federal agencies holding funds of an individual for the purpose of collecting a liability owed by the individual.

(15) Disclose information to appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the IRS' efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**
Paper records and electronic media.

**RETRIEVABILITY:**
By the (1) name(s) of the individual(s) to whom the records pertain, and related individuals; (2) subject matter; (3) certain key administrative dates; and (4) the internal control number for correspondence. If there are multiple parties to a proceeding, then the record is generally retrieved only by the name of the first listed person in the complaint or other document.

**SAFEGUARDS:**
Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**
Records are retained and disposed of in accordance with the records control schedules applicable to the records of the Office of Chief Counsel, Document 12990, Record Control Schedules 13 through 15, and 30 (formerly IRM 1.15.13 through 1.15.15, and 1.15.30).

**SYSTEM MANAGER(S) AND ADDRESS(ES):**
The Division Counsel/Associate Chief Counsel (Criminal Tax) is the system manager. See the IRS Appendix, below for addresses.

**NOTIFICATION PROCEDURE:**
Individuals seeking notification and access to any record contained in this system of records, or seeking to contest its content, may inquire in writing in accordance with instructions appearing at 31 CFR part 1, appendix B. Written inquiries should be addressed to Chief, Disclosure and Litigation Support Branch, Legal Processing Division, IRS Office of Chief Counsel, CC:PA:LPD:DLS, 1111 Constitution Avenue NW., Washington, DC 20224. This system of records may contain records that are exempt from the notification, access, and contest requirements pursuant to 5 U.S.C. 552a(j)(2). The IRS may assert 5 U.S.C. 552a(d)(5) as appropriate.

**RECORD ACCESS PROCEDURES:**
See "Notification Procedure" above.

**CONTESTING RECORD PROCEDURES:**
See "Notification Procedure" above. 26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**
Taxpayers, or other subjects of investigation, and their representatives; Department of the Treasury personnel; other Federal agencies; state, local, tribal and foreign governments, and other public authorities; witnesses; informants; parties to disputed matters of fact or law; judicial and administrative proceedings; congressional offices; labor organizations; public records such as telephone books, Internet Web sites, court documents, and real estate records; individual subjects of legal

advice, written determinations, and other correspondence.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

Some of the records in this system are exempt from sections (c)(3)–(4); (d)(1)–(4); (e)(1)–(3); (e)(4)(G)–(I); (e)(5); (e)(8); (f) and (g) of the Privacy Act, pursuant to 5 U.S.C. 552a(j)(2). (See 31 CFR 1.36).

**Treasury/IRS 90.004**

**SYSTEM NAME:**

Chief Counsel Legal Processing Division Records—Treasury/IRS.

**SYSTEM LOCATION:**

Office of the Associate Chief Counsel (Procedure & Administration), National Office. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals who communicate with the IRS regarding access requests under the Freedom of Information Act (FOIA), Privacy Act of 1974, or 26 U.S.C. 6110, where these matters or issues are brought to Counsel's attention; payers of user fees under 26 U.S.C. 7528, 6103(p), and 31 U.S.C. 9701; recipients of payments of court judgments; individual taxpayers who are the subject of written determinations or other work products processed for public inspection under the FOIA or 26 U.S.C. 6110.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

(1) Correspondence files.

(2) FOIA, Privacy Act, and 26 U.S.C. 6110 requests for Chief Counsel National Office records.

(3) Privacy Act requests to amend Chief Counsel National Office records.

(4) User fee files.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301; 552, and 552a; 26 U.S.C. 7801 and 7803.

**PURPOSE:**

To coordinate searches and to make disclosure determinations with respect to Chief Counsel National Office records sought under FOIA, the Privacy Act, and 26 U.S.C. 6110. To respond to Privacy Act requests to amend Chief Counsel National Office records. To process user fees pertaining to Private Letter Rulings, Change in Accounting Methods (Form 3115), Change in Accounting Periods (Form 1128), Advance Pricing Agreements, and Closing Agreements. To process files for the payment of court judgments.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which the IRS collected the records, and no privilege is asserted. Accordingly, the IRS may:

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice, or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by the proceeding, and the IRS determines that the records are relevant and useful.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by the proceeding, and the IRS or the DOJ determines that the information is relevant and necessary. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to the parties and to an arbitrator, mediator, or other neutral, in the context of alternative dispute resolution, to the extent relevant and necessary for resolution of the matters presented, including asserted privileges.

(4) Disclose information to a former employee of the IRS to the extent necessary to refresh their recollection for official purposes when the IRS requires information and/or consultation assistance from the former employee regarding a matter within that individual's former area of responsibility.

(5) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(6) Disclose information to a contractor hired by the IRS, including an expert witness or a consultant, to the extent necessary for the performance of a contract.

(7) Disclose information to an appropriate Federal, state, local, or tribal agency, or other public authority responsible for implementing, enforcing, investigating, or prosecuting the violation of a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(8) Disclose information to a Federal, state, local, or tribal agency, or other public authority that has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(9) To the extent consistent with the American Bar Association's Model Rules of Professional Conduct, Rule 4.2, disclose to any person the fact that his chosen legal representative may not be authorized to represent him before the IRS.

(10) Disclose information to a public, quasi-public, or private professional authority, agency, organization, or association, with which individuals covered by this system of records may be licensed by, subject to the jurisdiction of, a member of, or affiliated with, including but not limited to state bars and certified accountancy boards, to assist such authorities, agencies, organizations and associations in meeting their responsibilities in connection with the administration and maintenance of standards of integrity, conduct, and discipline.

(11) Disclose information to foreign governments in accordance with international agreements.

(12) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(13) Disclose information to the news media as described in the IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(14) Disclose information to other Federal agencies holding funds of an individual for the purpose of collecting a liability owed by the individual.

(15) Disclose information to appropriate agencies, entities, and

persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the IRS' efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

By the (1) name(s) of the individual(s) to whom the records pertain, and related individuals; (2) subject matter; (3) certain key administrative dates; and (4) the internal control number for correspondence. If there are multiple parties to a proceeding, then the record is generally retrieved only by the name of the first listed person in the complaint or other document.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are retained and disposed of in accordance with the records control schedules applicable to the records of the Office of Chief Counsel, Document 12990, Record Control Schedules 13 through 15 (formerly IRM 1.15.13 through 1.15.15). Freedom of Information Act request files are retained and disposed of in accordance with Schedule 13.

**SYSTEM MANAGER(S) AND ADDRESS:**

Associate Chief Counsel (Procedure & Administration), National Office. See the IRS Appendix below for the address.

**NOTIFICATION PROCEDURE:**

Individuals seeking notification and access to any record contained in this system of records, or seeking to contest its content, may inquire in writing in accordance with instructions appearing at 31 CFR part 1, appendix B. Written

inquiries should be addressed to Chief, Disclosure and Litigation Support Branch, Legal Processing Division, IRS Office of Chief Counsel, CC:PA:LPD:DLS, 1111 Constitution Avenue NW., Washington, DC 20224. This system of records may contain records that are exempt from the notification, access, and contest requirements pursuant to 5 U.S.C. 552a(j)(2) and (k)(2). The IRS may assert 5 U.S.C. 552a(d)(5) as appropriate.

**RECORD ACCESS PROCEDURES:**

See "Notification Procedure" above.

**CONTESTING RECORD PROCEDURES:**

See "Notification Procedure" above. 26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Persons who communicate with the IRS regarding FOIA, Privacy Act, and 26 U.S.C. 6110 requests, user fees or judgment payments; Department of Treasury employees; state, local, tribal, and foreign governments, and other public authorities; other Federal agencies; witnesses; informants; public sources such as telephone books, Internet Web sites, court documents, and real estate records.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

User fee and judgment payment files can be accessed as described above. All other records in this system have been designated as exempt from sections (c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I), and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(j)(2) and 5 U.S.C. 552a(k)(2). (See 31 CFR 1.36).

**Treasury/IRS 90.005**

**SYSTEM NAME:**

Chief Counsel Library Records

**SYSTEM LOCATION:**

Office of the Associate Chief Counsel (Finance & Management), National Office. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

(1) IRS employees who check out materials from the Library or through inter-library loans.
(2) Individuals who are the subject of the work products maintained for reference (legal research) purposes on tax issues.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

(1) Reference work product, including General Counsel Memoranda (GCMs), Office Memoranda (OMs), Actions on Decision (AODs), briefs, and other historical issuances dating back to 1916.

(2) Internal control records used to catalog and cross-reference records for legal research purposes.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301; 26 U.S.C. 7801 and 7803; and 31 U.S.C. 330.

**PURPOSE:**

To track the location of materials borrowed from the library or through inter-library loan and to permit the research of the internal revenue laws.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. Material covered by rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed only as permitted by that rule. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which the IRS collected the records, anxd no privilege is asserted. Accordingly, the IRS may:

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice, or for use in any proceeding, or in preparation for any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by the proceeding, and the IRS determines that the records are relevant and useful.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof, (b) any IRS employee in his or her official capacity, (c) any IRS employee in his or her personal capacity where the IRS or the Department of Justice (DOJ) has agreed to provide representation for the employee, or (d) the United States is a party to, has an interest in, or is likely to be affected by such proceeding, and the IRS or the DOJ determines that the information is relevant and necessary and not otherwise privileged. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

TD_0001151

**Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices    **54139**

(4) Disclose information to a Federal, state, local, or tribal agency, or other public authority, responsible for implementing or enforcing, or for investigating or prosecuting the violation of a statute, rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(5) Disclose information to a Federal, state, local, or tribal agency, or other public authority that has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(6) Disclose information to foreign governments in accordance with international agreements.

(7) Disclose information to the news media as described in the IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(8) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and necessary to their duties of exclusive representation.

(9) To appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the IRS' efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

Records are retrieved by the name of the individual(s) to whom they pertain. If there are multiple parties to a

proceeding, then the record is generally retrieved only by the identity of the first listed person in the complaint or other document.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are retained and disposed of in accordance with the records control schedules applicable to the records of the Office of Chief Counsel, Document 12990, Record Control Schedules 13 through 15 (formerly IRM 1.15.13 through 1.15.15).

**SYSTEM MANAGER(S) AND ADDRESS:**

Associate Chief Counsel (Finance & Management), National Office. See the IRS Appendix below for the address.

**NOTIFICATION PROCEDURE:**

Individuals seeking notification and access to any record contained in this system of records, or seeking to contest its content, may inquire in writing in accordance with instructions appearing at 31 CFR part 1, appendix B. Written inquiries should be addressed to Chief, Disclosure and Litigation Support Branch, Legal Processing Division, IRS Office of Chief Counsel, CC:PA:LPD:DLS, 1111 Constitution Avenue NW., Washington, DC 20224. This system of records may contain records that are exempt from the notification, access, and contest requirements pursuant to 5 U.S.C. 552a(j)(2) or (k)(2). The IRS may assert 5 U.S.C. 552a(d)(5) as appropriate.

**RECORD ACCESS PROCEDURES:**

See "Notification Procedure" above.

**CONTESTING RECORD PROCEDURES:**

See "Notification Procedure" above. 26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

IRS employees; Congress; Department of the Treasury personnel; taxpayers and their representatives; other Federal agencies; witnesses; informants; state, local, tribal, and foreign governments, and other public authorities; parties to disputed matters of fact and law; other persons who communicate with the IRS; libraries to and from which inter-library loans are made; public sources such as telephone books, Internet Web sites, court documents, and real estate records.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

Some of the records in this system are exempt from sections (c)(3)–(4); (d)(1)–

(4); (e)(1)–(3); (e)(4)(G)–(I); (e)(5); (e)(8); (f) and (g) of the Privacy Act, pursuant to 5 U.S.C. 552a(j)(2). Some of the records in this system are exempt from sections (c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I), and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(j)(2) and 5 U.S.C. 552a(k)(2). See 31 CFR 1.36.

**Treasury/IRS 90.006**

**SYSTEM NAME:**

Chief Counsel Human Resources and Administrative Records—Treasury/IRS.

**SYSTEM LOCATION:**

All Chief Counsel offices. (See the IRS Appendix below for address.)

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

(1) Current and former employees of the Office of Chief Counsel;

(2) Applicants for employment in the Office of Chief Counsel;

(3) Tax Court witnesses whose expenses are paid by the IRS.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

(1) Records relating to personnel actions and determinations made about an individual while employed with the Office of Chief Counsel. These records include the records maintained in current and former employees' Official Personnel Folders and Employee Performance Folders, in accordance with Office of Personnel Management (OPM)'s regulations and instructions, which are described in the notices of OPM's government-wide systems of records, OPM/GOVT–1 and OPM/GOVT–2, respectively. The records reflect employment qualifications; employment history (including performance improvement plan or discipline records); training and awards; reasonable accommodation and similar records potentially containing medical information; and other recognition. These records include data documenting reasons for personnel actions, decisions, or recommendations and background material leading to any personnel action (including adverse action).

(2) Records relating to payroll processing, such as employee name, date of birth, Social Security Number (SSN), home address, grade or rank, employing organization, timekeeper identity, salary, civil service retirement fund contributions, pay plan, number of hours worked, leave accrual rate, usage, and balances, deductions for Medicare and/or FICA, Federal, state and city tax withholdings, Federal Employees Governmental Life Insurance withholdings, Federal Employees Health Benefits withholdings, awards,

commercial garnishments, child support and/or alimony wage assignments, allotments, and Thrift Savings Plan contributions.

(3) Employee recruiting records for attorney and non-attorney Chief Counsel Employees (including application files, eligible applicant listings, and internal control records).

(4) Financial records such as travel expenses, notary public expenses, moving expenses, expenses of Tax Court witnesses, fees and expenses of expert witnesses, and miscellaneous expenses.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

5 U.S.C. 301; 26 U.S.C. 7801 and 7803; and 31 U.S.C. 330.

**PURPOSE:**

To carry out personnel management responsibilities, including but not limited to: (1) Recommending or taking personnel actions such as appointments, promotions, separations (*e.g.*, retirements, resignations), reassignments, within-grade increases, disciplinary or adverse actions; (2) employee training, recognition, or reasonable accommodation; (3) processing payroll so as to ensure that each employee receives the proper pay and allowances; that proper deductions and authorized allotments are made from employees' pay; and that employees are credited and charged with the proper amount of leave; (4) recruitment and other hiring decisions; and (5) to maintain records of individually based non-payroll expenditures such as expert witness and contractor expenses necessary to the operations of the Office. The records may also be used as a basis for staffing and budgetary planning and control, organizational planning, and human resource utilization.

**ROUTINE USES: OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

Disclosure of returns and return information may be made only as provided by 26 U.S.C. 6103. All other records may be used as described below if the IRS deems that the purpose of the disclosure is compatible with the purpose for which the IRS collected the records, and no privilege is asserted. Accordingly, the IRS may:

(1) Disclose information to the Department of Justice (DOJ) when seeking legal advice, or for use in any proceeding, when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her individual capacity if the IRS or the DOJ

has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by the proceeding, and the IRS determines that the records are both relevant and necessary to the proceeding or advice sought. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(2) Disclose information in a proceeding (including discovery) before a court, administrative tribunal, or other adjudicative body when: (a) The IRS or any component thereof; (b) any IRS employee in his or her official capacity; (c) any IRS employee in his or her personal capacity if the IRS or the DOJ has agreed to provide representation for the employee; or (d) the United States is a party to, has an interest in, or is likely to be affected by, the proceeding, and the IRS or the DOJ determines that the information is relevant and necessary to the proceeding. Information may be disclosed to the adjudicative body to resolve issues of relevancy, necessity, or privilege pertaining to the information.

(3) Disclose information to a court, authorized official acting pursuant to a court order or state or local law, a state agency, or the office of a bankruptcy trustee, for the purpose of implementing a garnishment or wage assignment order.

(4) Disclose information to all individuals, and/or a court, adjudicative body, or other administrative body, where multiple related individuals are represented before the Service by one attorney, and a potential or actual conflict of interest arises, and the attorney fails to provide adequate confirmation to the Service that full disclosure of the conflict of interest situation has been made to all taxpayers and that all agree to the representation.

(5) Disclose information to the defendant in a criminal prosecution, the Department of Justice, or a court of competent jurisdiction where required in criminal discovery or by the Due Process Clause of the Constitution.

(6) Disclose information to the parties and to arbitrators, the Federal Labor Relations Authority, including the Office of the General Counsel of that authority, the Federal Service Impasses Board and the Federal Mediation and Conciliation Service in labor management matters.

(7) Disclose the results of a drug test performed at the work site, as provided by section 503 of the Supplemental Appropriations Act of 1987, Pub. L. 100–71, (101 Stat. 391, 468–471).

(8) Disclose information to a former employee of the IRS to the extent necessary to refresh their recollection for official purposes when the IRS requires information and/or consultation assistance from the former employee regarding a matter within that individual's former area of responsibility.

(9) Disclose information to third parties during the course of an investigation to the extent necessary to obtain information pertinent to the investigation.

(10) Disclose information to a contractor hired by the IRS, including an expert witness or a consultant, to the extent necessary for the performance of a contract.

(11) Disclose pertinent information to a Federal, state, local, or tribal agency, or other public authority responsible for implementing, enforcing, investigating, or prosecuting the violation of a statute rule, regulation, order, or license, when a record on its face, or in conjunction with other records, indicates a potential violation of law or regulation and the information disclosed is relevant to any regulatory, enforcement, investigative, or prosecutorial responsibility of the receiving authority.

(12) Disclose information to a Federal, state, local, or tribal agency, or other public authority that has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

(13) To the extent consistent with the American Bar Association's Model Rules of Professional Conduct, Rule 4.2, disclose to any person the fact that his chosen legal representative may not be authorized to represent him before the IRS.

(14) Disclose information to a public, quasi-public, or private professional authority, agency, organization, or association, with which individuals covered by this system of records may be licensed by, subject to the jurisdiction of, a member of, or affiliated with, including but not limited to state bars and certified accountancy boards, to assist such authorities, agencies, organizations and associations in meeting their responsibilities in connection with the administration and maintenance of standards of integrity, conduct, and discipline.

(15) Disclose information to foreign governments in accordance with international agreements.

(16) Disclose information to officials of labor organizations recognized under 5 U.S.C. Chapter 71 when relevant and

necessary to their duties of exclusive representation.

(17) Disclose information to the news media as described in the IRS Policy Statement P–1–183, News Coverage to Advance Deterrent Value of Enforcement Activities Encouraged, IRM 1.2.1.2.41.

(18) Disclose information regarding financial disclosure statements to the IRS, which makes the statements available to the public as required by law.

(19) Disclose information to other Federal agencies holding funds of an individual for the purpose of collecting a liability owed by the individual.

(20) Disclose information to the Joint Board of Actuaries in enrollment and disciplinary matters.

(21) Disclose information to the Office of Personnel Management, Merit Systems Protection Board, the Office of Special Counsel, and the Equal Employment Opportunity Commission in personnel, discrimination, and labor management matters.

(22) Disclose information to the General Services Administration in property management matters.

(23) Disclose information to the Office of Government Ethics in conflict of interest, conduct, financial statement reporting, and other ethics matters.

(24) Disclose information to appropriate agencies, entities, and persons when: (a) The IRS suspects or has confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the IRS has determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the IRS or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the IRS' efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

(25) Disclose information to the General Services Administration Board of Contract Appeals, the Government Accountability Office, and other Federal agencies that address contracting issues in connection with disputes and protests of procurement actions and decisions.

**DISCLOSURE TO CONSUMER REPORTING AGENCIES:**

Disclosures of debt information concerning a claim against an individual may be made from this system to consumer reporting agencies as defined in the Fair Credit Reporting Act, 15 U.S.C. 1681a(f) or the Federal Claims Collection Act of 1966, 31 U.S.C. 3701(a)(3).

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Paper records and electronic media.

**RETRIEVABILITY:**

Records are generally retrieved by the name or taxpayer identity number of the individual to whom they apply. Records pertaining to expert witnesses may also be retrieved by the name of a party to the proceeding for which the expert was retained.

**SAFEGUARDS:**

Access controls are not less than those published in IRM 10.8, Information Technology (IT) Security, and IRM 10.2, Physical Security Program.

**RETENTION AND DISPOSAL:**

Records are retained and disposed of in accordance with the records control schedules applicable to the records of the Office of Chief Counsel, Document 12990, Record Control Schedules 13 through 15 (formerly IRM 1.15.13 through 1.15.15), and to personnel records, Document 12829, Record Control Schedules 38 and 39 (formerly IRM 1.15.38 and 1.15.39).

**SYSTEM MANAGER(S) AND ADDRESS:**

The Division Counsel/Associate Chief Counsel is the system manager of records in their respective offices. See the IRS Appendix below for addresses.

**NOTIFICATION PROCEDURE:**

Individuals seeking notification and access to any record contained in this system of records, or seeking to contest its content, may inquire in writing in accordance with instructions appearing at 31 CFR part 1, appendix B. Inquiries should be addressed as in ''Record Access Procedures'' below. This system of records may contain records that are exempt from the notification, access, and contest requirements pursuant to 5 U.S.C. 552a(k)(2). The IRS may assert 5 U.S.C. 552a(d)(5) as appropriate.

**RECORD ACCESS PROCEDURES:**

Individuals seeking access to any record contained in this system of records, or seeking to contest its content, may inquire in accordance with

instructions appearing at 31 CFR part 1, subpart C, appendix B. Inquiries should be addressed to the Disclosure Office for Privacy Act requests listed in the IRS Appendix below.

**CONTESTING RECORD PROCEDURES:**

See ''Notification Procedure'' above. 26 U.S.C. 7852(e) prohibits Privacy Act amendment of tax records.

**RECORD SOURCE CATEGORIES:**

Department of the Treasury personnel; Tax Court and expert witnesses; other Federal agencies; witnesses; state, local, tribal, and foreign governments, and other public authorities; references provided by the applicant, employee, or expert witness; former employers; public records such as telephone books, Internet Web sites, court documents, and real estate records.

**EXEMPTIONS CLAIMED FOR THE SYSTEM:**

Some of the records in this system are as exempt from sections (c)(3), (d)(1)–(4), (e)(1), (e)(4)(G)–(I), and (f) of the Privacy Act, pursuant to 5 U.S.C. 552a(k)(5). See 31 CFR 1.36.

### IRS Appendix

This appendix contains the addresses of Treasury/IRS system locations along with the title of the principal system manager(s). Internal Revenue Service (IRS) system locations are geographically dispersed through field offices. Additional information regarding the structure and locations of the IRS is available on the Internet at *www.irs.gov.* Select the ''About the IRS'' tab or contact one of the Disclosure Offices.

### Internal Revenue Service Disclosure Office for Privacy Act Requests

Access and amendment requests for records maintained in IRS systems should be marked ''Privacy Act Request'' on the outside and mailed to the following address: Internal Revenue Service, Disclosure Scanning Operation—Stop 93A, Post Office Box 621506, Atlanta, GA 30362–3006.

### IRS System Locations

The National Office of the IRS and the address for the following systems managers is: 1111 Constitution Avenue NW., Washington, DC. The listing below is arranged according to organizational lines. Any exception to the location of an office is indicated accordingly.

Commissioner, Internal Revenue Service
Chief of Staff, Office of the Secretariat
Chief, Communications and Liaison
Chief, Equal Employment
    Opportunity and Diversity

**54142**    **Federal Register** / Vol. 80, No. 173 / Tuesday, September 8, 2015 / Notices

Director, Research, Analysis &
Statistics
National Taxpayer Advocate
Chief, Appeals, 999 North Capitol Street
NW., Washington, DC
Director, Strategy & Finance
Director, Technical Services
Director, Field Operations—East
Director, Field Operations—West
Deputy Commissioner Operations
Support
Chief Technology Officer
Chief Financial Officer
Chief Human Capital Officer
Chief, Agency Wide Shared Services
Director, Privacy, Governmental
Liaison and Disclosure
Deputy Commissioner for Services &
Enforcement
Division Commissioner, Large
Business & International Division
(LB&I), 9th & H Street, Washington,
DC
Service & Enforcement Office Locations:
Division Commissioner, Small
Business/Self-Employed (SB/SE)
Division Commissioner, Tax Exempt
and Government Entities (TE/GE)
Division, 999 North Capitol Street
NE., Washington, DC
Division Commissioner, Wage and
Investment (W&I), 401 W Peachtree
Street, Atlanta, GA
Chief, Criminal Investigation
Director, Office of Professional
Responsibility
Director, Return Preparer Office
Director, Affordable Care Act Office
Director, Whistleblower Office
Large Business & International (LB&I),
9th & H Street, Washington, DC
Deputy Division Commissioner,
Domestic
Deputy Division Commissioner,
International
Director, Management & Finance
Director, Business Systems Planning
Director, Planning, Analysis,
Inventory and Research
Director, Division Planning, Oversight
Reporting & Liaison
Director, Management & Finance
Director, Equity, Diversity & Inclusion
Director, Pre-Filing and Technical
Guidance
Director, Shared Support
LB&I Industry Directors:
Industry Director, Communications,
Technology & Media, 1301 Clay
Street, Oakland, CA
Industry Director, Financial Services,
290 Broadway, New York, NY
Industry Director, Global High Wealth
Industry Director, Heavy
Manufacturing and
Pharmaceuticals, 111 Wood Avenue
South, Iselin, NJ
Industry Director, Natural Resources
and Construction, 1919 Smith

Street, Houston, TX
Industry Director, Retailers, Food,
Transportation, and Healthcare,
1901 Butterfield Road, Downers
Grove, IL
LB&I Overseas Offices:
Frankfort, Germany—Internal
Revenue Service, c/o U.S. Consulate
Frankfort, Unit 7900, Box 6600,
DPO AE 09213
London, England—Internal Revenue
Service, E/IRS—U.S. Embassy, Unit
8400, Box 44, DPO AE 09498–0044
Plantation, Florida (covers Mexico,
Central & South America,
Caribbean)—IRS, Plantation, 7850
SW., 6th Court, Plantation, FL
Paris, France—Internal Revenue
Service, Unit 9200, DPO AE 09777
Small Business/Self-Employed
Director, Communications and
Liaison
Director, Collection
Director, Compliance Services,
Campus Operations
Director, EEO
Director, Examination
Director, Fraud/BSA
Director, Specialty Programs
SB/SE Field Area Offices:
Collection Area Directors:
North Atlantic, 290 Broadway, New
York, NY
South Atlantic, 5000 Ellin Road,
Lanham, MD
Central Area, 477 Michigan Avenue,
Detroit, MI
Midwest Area, 211 West Wisconsin
Avenue, Milwaukee, WI
Gulf States Area, 801 Broadway,
Nashville, TN
Western Area, 915 Second Avenue,
Seattle, WA
Southwest Area, 2400 Avila Road,
Laguna Niguel, CA
Examination Area Directors
North Atlantic, 15 New Sudbury
Street, Boston, MA
Central Area, 600 Arch Street,
Philadelphia, PA
South Atlantic, 400 W. Bay,
Jacksonville, FL
Midwest, 316 N. Robert, St. Paul, MN
Gulf States, 2600 Citiplace, Baton
Rouge, LA
Western, 1900 Broadway, Denver, CO
Southwest Area, 300 North Los
Angeles Street, Los Angeles, CA
Tax Exempt & Government Entities, 999
North Capitol Street NW.,
Washington, DC
Director, Employee Plans
Director, Exempt Organizations
Director, Government Entities
Director, Shared Services
Director, Business Systems Planning
Director, Research and Analysis
Director, Communications and
Liaison

Director, Finance
Director, Human Resources
Director, Strategic Planning
Director, Equity, Diversity and
Inclusion
Wage & Investment, 401 West Peachtree
Street, Atlanta, GA
Director, Return Integrity &
Compliance Services
Director, Strategy & Finance
Director, Equity, Diversity and
Inclusion
Director, Business Modernization
Office
Director, Human Capital
Director, Customer Assistance,
Relationships and Education
Director, Customer Account Services
Director, Communications & Liaison
Criminal Investigation
Director, Operations Policy and
Support
Director, International Operations
Director, Strategy
Director, Refund Crimes
Director, CI Technology Operations &
Investigative Services
CI Directors of Field Operations (DFO):
DFO, Western Area
DFO, Southern Area
DFO, Northern Area
Information Technology Office:
Chief Technology Officer
Deputy Chief Information Officer
(CIO), Operations
Director, Management Services
Associate CIO, Strategy and Planning
Associate CIO, Cybersecurity
Associate CIO, Enterprise Services
Associate CIO, Enterprise Operations
Associate CIO, Affordable Care Act
Associate CIO, User Network Services
Associate CIO, Applications
Development
Associate CIO, Enterprise Information
Technology Program Management
Office
Computing Centers:
Martinsburg Computing Center,
Martinsburg, WV
Detroit Computing Center, 985
Michigan Avenue, Detroit, MI
Finance Office
Chief Financial Officer (CFO)
Associate CFO for Corporate Budget
Associate CFO for Financial
Management
Associate CFO for Corporate Planning
and Internal Control
Human Capital Office
Director, Engagement and Operational
Improvement
Director, Leadership, Education and
Delivery Services
Director, WorkLife, Benefits &
Performance
Director, Employment Talent &
Security
Director, Planning, Research &

Support
Director, Workforce Relations
Division
Agency-Wide Shared Services
Director, Employee Support Services
Director, Procurement
Director, Facilities Management and
Security Services
Director, Resources & Operations
Management
Privacy, Governmental Liaison and
Disclosure
Director, Governmental Liaison,
Disclosure and Safeguards
Director, Information and Records
Protection
Director, Privacy Policy and
Compliance
Chief Counsel System Locations:
The National Offices of the Chief
Counsel for the Internal Revenue
Service are located at: 1111 Constitution
Avenue NW., Washington, DC. Offices
at this address include:
Chief Counsel
Deputy Chief Counsel (Operations)
Deputy Chief Counsel (Technical)
Special Counsel to the National
Taxpayer Advocate
Associate Chief Counsel (Corporate),
(Financial Institutions & Products),
(Finance & Management), (General
Legal Services), (International),
(Income Tax & Accounting),
(Procedure & Administration), (Pass
throughs & Special Industries), and
(Tax Exempt & Government
Entities)
Associate Chief Counsel/Division
Counsel (Criminal Tax)
Division Counsel (Wage & Investment)
Division Counsel (Large Business &
International), National Office, 801
9th St. NW., Washington, DC.
Division Counsel (Small Business/
Self-Employed) National Office,
5000 Ellin Road, Lanham, MD.
Area Counsel Offices (Alphabetical by
State)

Various components of Chief Counsel
may have offices at the same Area
Counsel office location. The
abbreviations following each address
indicate the Chief Counsel divisions
having offices at that location. The
abbreviations represent the following
offices:
CT—Office of the Division Counsel/
Associate Chief Counsel (Criminal
Tax)

GLS—Office of the Associate Chief
Counsel (General Legal Services)
LB&I—Office of the Division Counsel
(Large Business & International)
SB/SE—Office of the Division Counsel
(Small Business/Self-Employed)
TE/GE—Office of the Division Counsel
(Tax Exempt & Government Entities)
**Note:** Matters involving taxpayers
falling under the jurisdiction of the
Office of Division Counsel (Wage &
Investment) are coordinated by area SB/
SE offices.
801 Tom Martin Drive, Birmingham,
AL. (SB/SE)
4041 N. Central Avenue, Phoenix, AZ.
(CT, LB&I, SB/SE)
24000 Avila Road, Laguna Niguel, CA.
(LB&I, SB/SE)
300 N. Los Angeles Street, Los Angeles,
CA. (CT, LB&I, SB/SE, TE/GE)
1301 Clay Street, Oakland, CA. (LB&I)
4330 Watt Avenue, Sacramento, CA.
(SB/SE)
701 B Street, San Diego, CA. (CT, LB&I,
SB/SE)
100 First Street, San Francisco, CA. (CT,
GLS, LB&I, SB/SE)
55 South Market Street, San Jose, CA.
(LB&I, SB/SE)
950 Hampshire Road, East Pavilion,
Thousand Oaks, CA. (SB/SE, TE/GE)
333 East River Drive, Commerce Center
One, East Hartford, CT. (CT, LB&I, SB/
SE)
600 17th Street, Denver, CO. (CT, LB&I,
SB/SE, TE/GE)
455 Massachusetts Avenue NW.,
Washington, DC (LB&I, SB/SE)
400 West Bay Street, Jacksonville, FL.
(CT, LB&I, SB/SE)
1000 South Pine Island Road,
Plantation, FL. (CT, LB&I, SB/SE)
51 SW. First Avenue, Miami, FL. (CT,
LB&I, SB/SE)
401 West Peachtree Street NW., Atlanta,
GA. (CT, GLS, LB&I, SB/SE)
300 Ala Moana Boulevard, Honolulu,
HI. (SB/SE)
200 West Adams Street, Chicago, IL.
(CT, GLS, LB&I, SB/SE, TE/GE)
1901 Butterfield Road, Downers Grove,
IL. (LB&I)
575 N. Pennsylvania Street,
Indianapolis, IN. (CT, SB/SE)
462 S. Fourth Street, Louisville, KY.
(CT, SB/SE)
600 South Maestri Place, New Orleans,
LA. (CT, SB/SE)

31 Hopkins Plaza, Baltimore, MD. (SB/
SE, TE/GE)
10 Causeway Street, Boston, MA. (CT,
LB&I, SB/SE)
500 Woodward Avenue, Detroit, MI.
(CT, LB&I, SB/SE)
380 Jackson Street, St. Paul, MN. (CT,
LB&I, SB/SE)
2345 Grand Boulevard, Kansas City,
MO. (LB&I, SB/SE)
1222 Spruce Street, St. Louis, MO. (CT,
SB/SE)
4905 Koger Blvd., Greensboro, NC (CT,
SB/SE)
1616 Capitol Avenue, Omaha, NE. (SB/
SE)
110 City Parkway, Las Vegas, NV. (CT,
SB/SE)
1085 Raymond Boulevard, Newark, NJ.
(CT, LB&I, SB/SE)
300 Pearl Street, Olympic Towers,
Buffalo, NY. (CT, LB&I, SB/SE)
33 Maiden Lane, New York, NY. (CT,
GLS, LB&I, SB/SE)
1600 Stewart Avenue, Westbury, NY.
(CT, LB&I, SB/SE, TE/GE)
312 Elm Street, Cincinnati, OH. (CT,
LB&I, SB/SE)
1375 East Ninth Street, Cleveland, OH.
(CT, SB/SE)
55 North Robinson Street, Oklahoma
City, OK. (LB&I, SB/SE)
1220 SW Third Avenue, Portland, OR.
(CT, SB/SE)
701 Market Street, Philadelphia, PA.
(CT, LB&I, SB/SE)
1000 Liberty Avenue, Pittsburgh, PA.
(SB/SE)
810 Broadway, Nashville, TN. (LB&I,
SB/SE)
300 East 8th Street, Austin, TX. (CT, SB/
SE)
4050 Alpha Road, Dallas, TX. (CT, GLS,
LB&I, SB/SE, TE/GE)
8701 South Gessner Street, Houston,
TX. (CT, LB&I, SB/SE)
1919 Smith Street, Houston, TX. (LB&I)
150 Social Hall Avenue, Salt Lake City,
UT. (SB/SE)
400 North 8th Street, Richmond, VA.
(CT, LB&I, SB/SE)
915 Second Avenue, Seattle, WA. (LB&I,
SB/SE)
211 West Wisconsin Avenue,
Milwaukee, WI. (LB&I, SB/SE)
[FR Doc. 2015–21980 Filed 9–4–15; 8:45 am]
**BILLING CODE 4830–01–P**

TD_0001156

However, we would like your comments on how you would be affected if we terminated monitoring HF-voice-only distress frequencies within the contiguous United States and Hawaii, particularly if you use HF, but do not currently have a commercial satellite radio or a HF DSC capable radio aboard your vessel.

We will consider all comments in response to this notice before deciding whether to terminate the monitoring of these HF voice-only distress frequencies within the contiguous United States and Hawaii. After considering comments received, the Coast Guard will issue a notice in the **Federal Register** indicating what course of action it has decided to take. This notice is issued under the authority of *14 U.S.C. 504*(a)(16) and *5 U.S.C. 552*(a).

Dated: November 16, 2020.

**J.L. Ulcek,**

*Chief, Spectrum Management and Communications Policy.*

[FR Doc. 2020–25605 Filed 11–19–20; 8:45 am]

**BILLING CODE 9110–04–P**

---

# DEPARTMENT OF HOMELAND SECURITY

**[Docket No. ICEB–2020–0002]**

## Privacy Act of 1974; System of Records

**AGENCY:** U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security.

**ACTION:** Notice of a Modified System of Records.

**SUMMARY:** In accordance with the Privacy Act of 1974, the U.S. Department of Homeland Security (DHS) proposes to modify and reissue a current system of records titled, "DHS/ U.S. Immigration and Customs Enforcement (ICE)–009 External Investigations System of Records." This system of records allows the DHS/ICE to collect and maintain records by ICE Homeland Security Investigations (HSI). This system of records covers information related to external audits, inquiries, and investigations pertaining to suspected violations of laws regulating the movement of people and goods into and out of the United States. DHS/ICE is updating this system of records to revise the purpose, update and expand the category of individuals, add new categories of records, modify and add to routine uses, update the records retention policies, and make non-substantive formatting changes.

**DATES:** Submit comments on or before December 21, 2020. This modified

system will be effective upon publication. New or modified routine uses will become effective December 21, 2020.

**ADDRESSES:** You may submit comments, identified by docket number ICEB–2020–0002 by one of the following methods:

€ *Federal e-Rulemaking Portal: http:// www.regulations.gov.* Follow the instructions for submitting comments.

€ *Fax:* 202–343–4010.

€ *Mail:* Constantina Kozanas, Chief Privacy Officer, Privacy Office, U.S. Department of Homeland Security, Washington, DC 20528–0655.

*Instructions:* All submissions received must include the agency name and docket number ICEB–2020–0002. All comments received will be posted without change to *http:// www.regulations.gov,* including any personal information provided.

*Docket:* For access to the docket to read background documents or comments received go to *http:// www.regulations.gov.*

**FOR FURTHER INFORMATION CONTACT:** For general questions please contact: Jordan Holz, (202) 732–3300, Privacy Officer, U.S. Immigration and Customs Enforcement (ICE), 500 12th Street SW, Mail Stop 5004, Washington, DC 20536. For privacy questions, please contact: Constantina Kozanas, (202) 343–1717, *Privacy@hq.dhs.gov,* Chief Privacy Officer, Privacy Office, U.S. Department of Homeland Security, Washington, DC 20528–0655.

**SUPPLEMENTARY INFORMATION:**

## I. Background

In accordance with the Privacy Act of 1974, 5 U.S.C. 552a, DHS/ICE proposes to modify and reissue a current DHS system of records notice (SORN) titled, "DHS/ICE–009 External Investigations System of Records." DHS/ICE is updating this system of records to better reflect and clarify the nature of law enforcement investigatory records collected, maintained, and shared by ICE.

The purpose of this system of records is to collect and maintain records related to external investigations and support conducted by ICE offices, primarily HSI. ICE/HSI is the largest investigative branch of the DHS. The agency was created to more effectively enforce immigration and customs laws and to protect the United States against terrorist attacks. ICE does this by targeting the people, money, and materials that support terrorism and other criminal activities. ICE investigates on its own and in conjunction with other agencies a broad

range of illegal activities, such as terrorism, organized crime, gangs, child exploitation, and intellectual property violations.

This system of records covers information related to external audits, inquiries, and investigations pertaining to suspected violations of laws regulating the movement of people and goods into and out of the United States. For example, this system of records will include investigatory records that are generated prior to the creation of an official case file, and records pertaining to immigration status inquiries that do not constitute an official criminal investigation.

This system of records was also used to support information requests from the U.S. Congress relating to potential recipients of private immigration relief. That purpose has since been transferred to the DHS/ICE–011 Criminal Arrest Records and Immigration Enforcement Records (CARIER) System of Records (*see* 81 FR 72080 (October 19, 2016)). This update modifies the system of records notice to excise the stated purpose, category of individuals, and routine use that related to supplying information to assist with private immigration relief.

The following list includes the full explanation of changes to this system of records notice:

(1) The category of individuals in this system of records has been modified to include family members and known associates of a subject of investigation, as well as individuals and third-party record holders who are served administrative subpoenas and summonses for the production of records and testimony.

(2) The category of records has been modified to include criminal history, immigration status and history, biometrics (*e.g.,* facial images, iris images, and fingerprints), record holder information (*e.g.,* biographical, contact), information derived from location tracking tools, License Plate Reader (LPR) information, social media information, suspicious financial activity, currency transaction reports, currency or monetary instrument reports, email addresses and the contents of email records, unique numerical identifiers assigned to biometrics, telecommunication device identifiers, telecommunications usage data, call and subscriber records, banking records, travel history records, and the statements of targets and witnesses. The categories of records will also include information pertaining to DNA tests conducted by ICE to verify a familial relationship.

(3) DHS is modifying Routine Use E and adding Routine Use F to conform to the Office of Management and Budget (OMB) Memorandum M–17–12 "Preparing for and Responding to a Breach of Personally Identifiable Information," (Jan. 3, 2017).

(4) ICE is also adding Routine Uses I, T, and U. Routine uses following Routine Use E are being renumbered to account for these additional routine uses. The following routine uses were added to:

○ (I) Allow data sharing between ICE and other federal agencies for a statistical or research purpose, including the development of methods or resources to support statistical or research activities.

○ (T) Allow sharing between ICE and the Department of State (DOS) in order to support DOS in making accurate passport and visa issuance, reissuance or revocation determinations;

○ (U) Allow data sharing between ICE and federal, state, local, tribal, territorial, international, or foreign governmental organizations when DHS desires to exchange relevant data for the purpose of developing, testing, or implementing new software or technology whose purpose is related to the purpose of this system of records.

(5) ICE is removing a routine use listed in the previous SORN as Routine Use N, which permitted sharing to any person or entity to the extent necessary to prevent immediate loss of life or serious bodily injury, such as disclosure of custodial release information to witnesses who have received threats from individuals in custody. This routine use was found to be duplicative of other routine uses, and has been removed.

(6) Additionally, DHS/ICE is making non-substantive edits to the routine uses to align with previously published Department of Records Notices and in accordance with Appendix I to OMB Circular A–130, Federal Agency Responsibilities for Maintaining Records About Individuals.

(7) DHS/ICE is also correcting the records retention schedule for the system of records from 75 years, as stated in the previous publication of this SORN, to 20 years. The former retention schedule was approved by the National Archives and Records Administration (NARA) for U.S. Customs, before ICE was created. The corrected schedule currently controls ICE records management, but ICE is in the process of creating a new schedule for approval by NARA.

Lastly, this notice includes non-substantive changes to simplify formatting and text of the previously published notice.

## II. Privacy Act

The Privacy Act embodies fair information principles in a statutory framework governing the means by which Federal Government agencies collect, maintain, use, and disseminate individuals' records. The Privacy Act applies to information that is maintained in a "system of records." A "system of records" is a group of any records under the control of an agency from which information is retrieved by the name of an individual or by some identifying number, symbol, or other identifying particular assigned to the individual. In the Privacy Act, an individual is defined to encompass United States citizens and lawful permanent residents. Additionally, the Judicial Redress Act (JRA) provides covered persons with a statutory right to make requests for access and amendment to covered records, as defined by the JRA, along with judicial review for denials of such requests. In addition, the JRA prohibits disclosures of covered records, except as otherwise permitted by the Privacy Act. Individuals may request access to their own records that are maintained in a system of records in the possession or under the control of DHS by complying with DHS Privacy Act regulations, 6 CFR part 5.

The Privacy Act requires each agency to publish in the **Federal Register** a description denoting the type and character of each system of records that the agency maintains, and the routine uses that are contained in each system in order to make agency record keeping practices transparent, to notify individuals regarding the uses to which personally identifiable information is put, and to assist individuals to more easily find such files within the agency. Below is the description of the DHS/ICE–009 External Investigations System of Records. In accordance with 5 U.S.C. 552a(r), DHS has provided a report of this system of records to the Office of Management and Budget (OMB) and to Congress.

### SYSTEM NAME AND NUMBER:

U.S. Department of Homeland Security (DHS)/Immigration and Customs Enforcement (ICE)–009 External Investigations.

### SECURITY CLASSIFICATION:

Unclassified and Law Enforcement Sensitive (LES).

### SYSTEM LOCATION:

Records are maintained at U.S. Immigration and Customs Enforcement Headquarters in Washington, DC and in field offices.

### SYSTEM MANAGER(S):

Immigration and Customs Enforcement, Mission Support Division, Unit Chief, Executive Information Unit/ Program Management Oversight (EIU/ PMO), Potomac Center North, 500 12th Street SW, Washington, DC 20536.

### AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

5 U.S.C. 301; 6 U.S.C. 201–203; 8 U.S.C. 1357; 18 U.S.C. 116; 18 U.S.C. 554; 18 U.S.C. 1091; 18 U.S.C. 2340A; 18 U.S.C. 2441; 18 U.S.C. 2442; 18 U.S.C. 2518; 19 U.S.C. 66; 19 U.S.C. 1431; 19 U.S.C. 1509; 19 U.S.C. 1603; 19 U.S.C. 2072; 21 U.S.C. 967; 22 U.S.C. 2778; 40 U.S.C. 1315; 50 U.S.C. 1701; 50 U.S.C. 2410; 50 U.S.C. 2411; other applicable authorities from Title 18, United States Code; and Title 19, United States Code as delegated by the Secretary of Homeland Security under his or her authority granted by the Homeland Security Act of 2002 (Pub. L. 107–296); 31 CFR part 103; Title 40 United States Code; INA 235(d)(4)(A); and INA 274A(e)(2)(C).

### PURPOSE OF THE SYSTEM:

(1) To document external audits, inquiries, and investigations performed by ICE pertaining to suspected violations of laws regulating the movement of people and goods into and out of the United States in addition to other violations of other laws within ICE's jurisdiction; (2) To facilitate communication between ICE and foreign and domestic law enforcement agencies for the purpose of enforcement and administration of laws, including immigration and customs laws; (3) To provide appropriate notification to victims in accordance with federal victim protection laws; (4) To support inquiries and investigations performed to enforce the administrative provisions of the INA; and (5) To identify potential criminal activity, immigration violations, and threats to homeland security; to uphold and enforce the law; and to ensure public safety.

### CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Categories of individuals covered by this system include: (1) Individuals who are the subjects of current or previous law enforcement investigations into violations of U.S. customs and immigration laws, as well as other laws and regulations within ICE's jurisdiction, including investigations led by other domestic or foreign agencies in which ICE is providing support and assistance; (2) Individuals who are the subjects of investigatory

referrals from other agencies, tips, and other leads acted on by ICE pertaining to potential violations of U.S. customs and immigration law, as well as other laws and regulations within ICE's jurisdiction; (3) Individuals who are or have been the subject of inquiries or investigations conducted by ICE related to the enforcement of the employment control provisions of the Immigration and Nationality Act (INA) and related criminal statutes including individuals who are being investigated or have been investigated to determine whether their employment-related activities are in violation of the employment control provisions of the INA and/or related criminal statutes; individuals who employ others in their individual capacity whether related to a business activity or not; and individuals who have submitted completed Form I–9 (Employment Eligibility Verification Form) and other documentation to establish identity and work eligibility/ authorization under the employment control provisions of the INA; (4) Family and known associates of subjects of investigation; (5) Victims and witnesses in ICE law enforcement investigations described above; (6) Individuals and third-party record holders who are served administrative subpoenas and summonses for the production of records or testimony; (7) Fugitives with outstanding federal or state warrants; (8) Operators of vehicles crossing U.S. borders who are the subject of an ICE investigation, including drivers of automobiles, private yacht masters, private pilots arriving in or leaving the United States; and (9) Regulatory and licensing agency personnel and other individuals who are involved with or supporting law enforcement investigations pertaining to U.S. export control matters conducted by ICE.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Categories of records in this system may include:

Subject Records:
€ Name and Aliases;
€ Addresses;
€ Social Security number;
€ Armed Forces Number;
€ Alien Registration number;
€ Date and place of birth;
€ Citizenship;
€ Passport and visa information;
€ License information for owners and operators of vehicles, aircraft, and vessels;
€ Criminal history;
€ Immigration status and history;
€ Employment history or business information;
€ Information related to the subject's entry and exit of the United States;

€ Other biographical information;
€ IP address;
€ Social media account information and publicly available social media posts;
€ Biometric information, including facial images, iris images, fingerprints, and voice audio;
€ Suspicious financial activity, currency transaction reports, and currency or monetary instrument reports; and
€ Information related to whether individuals have a verified familial relationship based on DNA test results.

Associate, Victim, and Witness Records:
€ Name;
€ Contact information, including address and telephone numbers;
€ Alien Registration number;
€ Date and place of birth;
€ Citizenship;
€ Passport and visa information;
€ Biometric information, including facial images, iris images, fingerprints, and voice audio;
€ Sworn statements, reports of interview, and testimony;
€ Relationship to subject of the investigation;
€ Social media handles or account names and publicly available social media posts;
€ Victim services needed; and
€ Other relevant biographical and background information, such as employment and education.

Location-Related Records:
€ Location tracking tools that maintain a list of tracking devices by serial number/Mobile Directory Number (MDN)/International Mobile Equipment Identity (IMEI)/Mobile Equipment ID (MEID), and their current locations using Global Positioning System (GPS) and/or assisted Cellular Tower coordinates. These location tracking tools are deployed on targets of investigations, vehicles of interest in investigations, contraband, but also on the official vehicles owned by ICE and used by agents and officers in the field;
€ License Plate Reader (LPR) information, including images of vehicles license plates associated with a target of investigation (a person or vehicle), date and time of image capture, and GPS coordinates for the location where the license plate was photographed;

Third-Party Records Holders:
€ Name;
€ Date of birth;
€ Contact information, including address and telephone numbers;
€ Social Security number, Alien Number, tax information number, or other personal identification numbers;

€ Importer and exporter numbers;
€ internet protocol (IP) addresses and uniform resource locators (URLs);
€ Bank account numbers;
€ Device identifiers and serial numbers.

Investigatory and Evidentiary Records:
€ ICE case number;
€ Unique numerical identifiers assigned to biometrics for administrative purposes;
€ Identifying information of assigned ICE personnel, including name, badge number, and contact information;
€ Incident reports;
€ Complaint forms and other records pertaining to potential or actual intellectual property crimes;
€ I–9 Forms and other records pertaining to employment control audits, inquiries, and investigations;
€ Emails;
€ Telecommunication device identifiers;
€ Telecommunications usage data;
€ Call and subscriber records;
€ Banking records;
€ Travel history records;
€ Reports and memoranda prepared by investigators during the course of the investigation or received from other agencies participating in or having information relevant to the investigation;
€ Statements of targets and witnesses;
€ Law enforcement intelligence reports;
€ Electronic surveillance reports;
€ Asset ownership information such as registration data and license data, for vehicles, vessels, merchandise, goods, and other assets;
€ Information about duties and penalties owed, assessed, and paid;
€ Information about goods and merchandise, such as import and export forms and declarations filed, lab or analytical reports, valuation and classification of goods, and other relevant data;
€ Correspondence and court filings;
€ Information received from other governmental agencies, confidential sources, and other sources pertaining to an investigation, as well as investigatory referrals from other agencies, tips, and other leads pertaining to potential violations of U.S. customs and immigration law, as well as other laws and regulations within ICE's jurisdiction; and
€ Any other evidence in any form, including papers, photographs, video, electronic recordings, electronic data, or video records that was obtained, seized, or otherwise lawfully acquired from any source during the course of the investigation, to the extent relevant and

necessary for the performance of ICE's statutory enforcement authorities.

**RECORD SOURCE CATEGORIES:**

ICE may receive information in the course of its law enforcement investigations from nearly any source. Sources of information include: domestic and foreign governmental and quasi-governmental agencies and data systems, public records, publicly available social media, commercial data aggregators, import and export records systems, immigration and alien admission records systems, members of the public, subjects of investigation, victims, witnesses, confidential sources, and those with knowledge of the alleged activity.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USES AND PURPOSES OF SUCH USES:**

In addition to those disclosures generally permitted under 5 U.S.C. 552a(b) of the Privacy Act, all or a portion of the records of information contained in this system may be disclosed outside DHS as a routine use pursuant to 5 U.S.C. 552a(b)(3) as follows:

A. To the Department of Justice, Offices of the U.S. Attorney, or other federal agencies conducting litigation or in proceedings before any court, adjudicative, or administrative body, when it is relevant or necessary to the litigation and one of the following is a party to the litigation or has an interest in such litigation:

1. DHS or any component thereof;
2. Any employee or former employee of DHS in his/her official capacity;
3. Any employee or former employee of DHS in his/her individual capacity, only when DOJ or DHS has agreed to represent the employee; or
4. The United States or any agency thereof.

B. To a congressional office from the record of an individual in response to an inquiry from that congressional office made at the request of the individual to whom the record pertains.

C. To the National Archives and Records Administration (NARA) or the General Services Administration pursuant to records management inspections being conducted under the authority of 44 U.S.C. secs. 2904 and 2906.

D. To an agency or organization for the purpose of performing audit or oversight operations as authorized by law, but only such information as is necessary and relevant to such audit or oversight function.

E. To appropriate agencies, entities, and persons when (1) DHS suspects or

has confirmed that there has been a breach of the system of records; (2) DHS has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, DHS (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with DHS's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

F. To another Federal agency or Federal entity, when DHS determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

G. To an appropriate federal, State, tribal, local, international, or foreign law enforcement agency or other appropriate authority charged with investigating or prosecuting a violation or enforcing or implementing a law, rule, regulation, or order, where a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure.

H. To contractors and their agents, grantees, experts, consultants, and others performing or working on a contract, service, grant, cooperative agreement, or other assignment for DHS, when necessary to accomplish an agency function related to this system of records. Individuals provided information under this routine use are subject to the same Privacy Act requirements and limitations on disclosure as are applicable to DHS officers and employees.

I. To a federal agency for a statistical or research purpose, including the development of methods or resources to support statistical or research activities, provided that the records support DHS programs and activities that relate to the purpose(s) stated in this SORN, and will not be used in whole or in part in making any determination regarding an individual's rights, benefits, or privileges under federal programs, or published in any manner that identifies an individual.

J. To third parties during the course of a law enforcement investigation to the extent necessary to obtain information pertinent to the investigation, provided disclosure is appropriate to the proper performance of the official duties of the officer making the disclosure.

K. To federal law enforcement and/or regulatory agencies, technical, or subject matter expert, or any other entity involved in or assisting with law enforcement efforts pertaining to suspected or confirmed export violations in accordance with Federal export laws, including the Arms Export Control Act, 22 U.S.C. sec. 2778 and the Export Administration Act, 50 U.S.C. sec. 2410.

L. To federal and foreign government intelligence or counterterrorism agencies or components when DHS becomes aware of an indication of a threat or potential threat to national or international security, or when such disclosure is to support the conduct of national intelligence and security investigations or to assist in anti-terrorism efforts.

M. To victims regarding custodial information, such as release on bond, order of supervision, removal from the United States, or death in custody, about an individual who is the subject of a criminal or immigration investigation, proceeding, or prosecution.

N. To international, foreign, intergovernmental, and multinational government agencies, authorities, and organizations in accordance with law and formal or informal international arrangements.

O. To a public or professional licensing organization when such information indicates, either by itself or in combination with other information, a violation or potential violation of professional standards, or reflects on the moral, educational, or professional qualifications of an individual who is licensed or who is seeking to become licensed.

P. To federal, state, local, tribal, territorial, or foreign government agencies or organizations, or international organizations, lawfully engaged in collecting law enforcement intelligence, whether civil or criminal, to enable these entities to carry out their law enforcement responsibilities, including the collection of law enforcement intelligence.

Q. To the Department of State when it requires information to consider and/or provide an informed response to a request for information from a foreign, international, or intergovernmental agency, authority, or organization about

an alien or an enforcement operation with transnational implications.

R. To federal, state, local, territorial, tribal, international, or foreign criminal, civil, or regulatory law enforcement authorities when the information is necessary for collaboration, coordination, and de-confliction of investigative matters, prosecutions, and/ or other law enforcement actions to avoid duplicative or disruptive efforts and to ensure the safety of law enforcement officers who may be working on related law enforcement matters.

S. To the Department of Justice to facilitate the missions of the Organized Crime Drug Enforcement Task Force (OCDETF) Program and the International Organized Crime Intelligence and Operations Center (IOC–2).

T. To the Department of State for use in passport and visa revocation, issuance, or reissuance determinations.

U. To appropriate federal, state, local, tribal, or foreign governmental agencies or multilateral governmental organizations, with the approval of the Chief Privacy Officer, when DHS is aware of a need to use relevant data for purposes of testing new technology to be used by or on behalf of DHS.

V. To the news media and the public, with the approval of the Chief Privacy Officer in consultation with counsel, when there exists a legitimate public interest in the disclosure of the information, when disclosure is necessary to preserve confidence in the integrity of DHS, or when disclosure is necessary to demonstrate the accountability of DHS's officers, employees, or individuals covered by the system, except to the extent the Chief Privacy Officer determines that release of the specific information in the context of a particular case would constitute an unwarranted invasion of personal privacy.

**POLICIES AND PRACTICES FOR STORAGE OF RECORDS:**

Records in this system are stored electronically or on paper in secure facilities in a locked drawer behind a locked door. The records are stored on magnetic disc, tape, digital media, and CD–ROM.

**POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:**

Records are retrieved by individual's name, date of birth, ICE investigative file number, Social Security number, numerical identifiers assigned to biometrics collected (*e.g.,* fingerprint ID number); driver's license number, pilot's license number, vehicle license plate number, address, home telephone number, passport number, citizenship, country of birth, armed forces number, and date of entry into the United States.

**POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:**

Investigative files concerning munitions control cases are permanent records that are transferred to the Federal Records Center after one year, and then transferred to NARA fifteen years after case closure, in accordance with legacy Customs schedule N1–36– 86–1/162.38. Records for all other closed investigative cases are retained for 20 years in accordance with legacy customs schedule N1–36–86–1–161.3 (inv 7B). Destruction is by burning or shredding. An updated schedule for investigative records will be developed and submitted to NARA for approval.

**ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:**

DHS/ICE safeguards records in this system according to applicable rules and policies, including all applicable DHS automated system security and access policies. DHS/ICE has imposed strict controls to minimize the risk of compromising the information that is being stored. Access to the computer system containing the records in this system is limited to those individuals who have a need to know the information for the performance of their official duties and who have appropriate clearances or permissions. The system maintains a real-time auditing function of individuals who access the system. Additional safeguards may vary by component and program.

**RECORD ACCESS PROCEDURES:**

The Secretary of Homeland Security has exempted this system from the notification, access, and amendment procedures of the Privacy Act because it is a law enforcement system. However, ICE will consider requests to determine whether or not information may be released. Thus, individuals seeking notification of and access to any record contained in this system of records, or seeking to contest its content, may submit a request in writing to the U.S. Immigration and Customs Enforcement Freedom of Information Act (FOIA) Officer, whose contact information can be found at *http://www.dhs.gov/foia* under "Contact Information." If an individual believes more than one component maintains Privacy Act records concerning him or her, the individual may submit the request to the Chief Privacy Officer and Chief Freedom of Information Act Officer, U.S. Department of Homeland Security, 245 Murray Drive SW, Building 410, STOP–0550, Washington, DC 20528. Even if neither the Privacy Act nor the Judicial Redress Act provides a right of access, certain records about you may be available under the Freedom of Information Act.

When an individual is seeking records about himself or herself from this system of records or any other Departmental system of records, the individual's request must conform with the Privacy Act regulations set forth in 6 CFR part 5. The individual must first verify his/her identity, meaning that the individual must provide his/her full name, current address, and date and place of birth. The individual must sign the request, and the individual's signature must either be notarized or submitted under 28 U.S.C. 1746, a law that permits statements to be made under penalty of perjury as a substitute for notarization. While no specific form is required, you may obtain forms for this purpose from the Chief Privacy Officer and Chief Freedom of Information Act Officer, *http:// www.dhs.gov/foia* or 1–866–431–0486. In addition, the individual should:

€ Explain why he or she believes the Department would have information being requested;

€ Identify which component(s) of the Department he or she believes may have the information;

€ Specify when the individual believes the records would have been created; and

€ Provide any other information that will help the FOIA staff determine which DHS component agency may have responsive records.

If the request is seeking records pertaining to another living individual, the request must include an authorization from the individual whose record is being requested, authorizing the release to the requester.

Without the above information, the component(s) may not be able to conduct an effective search, and the individual's request may be denied due to lack of specificity or lack of compliance with applicable regulations.

**CONTESTING RECORD PROCEDURES:**

For records covered by the Privacy Act or covered JRA records, individuals may make a request for amendment or correction of a record of the Department about the individual by writing directly to the Department component that maintains the record, unless the record is not subject to amendment or correction. The request should identify each particular record in question, state the amendment or correction desired, and state why the individual believes

that the record is not accurate, relevant, timely, or complete. The individual may submit any documentation that would be helpful. If the individual believes that the same record is in more than one system of records, the request should state that and be addressed to each component that maintains a system of records containing the record.

Individuals who wish to contest the accuracy of records in this system of records should submit these requests to the Privacy Division of the ICE Information Governance & Privacy Office. Requests must comply with verification of identity requirements set forth in Department of Homeland Security Privacy Act regulations at 6 CFR 5.21(d). Please specify the nature of the complaint and provide any supporting documentation. By mail (please note substantial delivery delays exist): ICE Information Governance & Privacy Office, ATTN: Privacy Division, 500 12th Street SW, Mail Stop 5004, Washington, DC 20536. By email: *ICEPrivacy@ice.dhs.gov*.

Please contact the Privacy Division with any questions about submitting a request at (202) 732–3300 or *ICEPrivacy@ice.dhs.gov*.

**NOTIFICATION PROCEDURES:**

See ''Record Access Procedures'' above.

**EXEMPTIONS PROMULGATED FOR THE SYSTEM:**

The Secretary of Homeland Security, pursuant to 5 U.S.C. 552a(j)(2), has exempted this system from the following provisions of the Privacy Act: 5 U.S.C. 552a(c)(3), (c)(4); (d); (e)(1), (e)(2), (e)(3), (e)(4)(G), (e)(4)(H), (e)(5), and (e)(8); (f); and (g). Additionally, the Secretary of Homeland Security, pursuant to 5 U.S.C. 552a(k)(2), has exempted this system from the following provisions of the Privacy Act: 5 U.S.C. 552a(c)(3); (d); (e)(1), (e)(4)(G), and (e)(4)(H); and (f). To the extent a record contains information from other exempt systems of records, ICE will rely on the exemptions claimed for those systems.

**HISTORY:**

DHS/ICE–009 External Investigations, 75 FR 404 (January 5, 2010).

**Constantina Kozanas,**
*Chief Privacy Officer, U.S. Department of Homeland Security.*
[FR Doc. 2020–25619 Filed 11–19–20; 8:45 am]
**BILLING CODE 9111–28–P**

# DEPARTMENT OF HOMELAND SECURITY

**[Docket Number DHS–2020–0044]**

## Agency Information Collection Activities: Post-Award Contract, DHS Form 700–23, 700–26

**AGENCY:** Department of Homeland Security (DHS).

**ACTION:** 60-Day notice and request for comments; extension without change of a currently approved collection, 1600–0003.

**SUMMARY:** The Department of Homeland Security, will submit the following Information Collection Request (ICR) to the Office of Management and Budget (OMB) for review and clearance in accordance with the Paperwork Reduction Act of 1995.

**DATES:** Comments are encouraged and will be accepted until January 19, 2021. This process is conducted in accordance with 5 CFR 1320.1

**ADDRESSES:** You may submit comments, identified by docket number Docket # DHS–2020–0044, at:

○ *Federal eRulemaking Portal: http:// www.regulations.gov*. Please follow the instructions for submitting comments.

*Instructions:* All submissions received must include the agency name and docket number Docket # DHS–2020–0044. All comments received will be posted without change to *http:// www.regulations.gov,* including any personal information provided.

*Docket:* For access to the docket to read background documents or comments received, go to *http:// www.regulations.gov*.

**SUPPLEMENTARY INFORMATION:** The Department of Homeland Security (DHS) collects information, when necessary, in administering public contracts for supplies and services. The information is used to determine compliance with contract terms placed in the contract as authorized by the Federal Property and Administrative Services Act (41 U.S.C. 251 *et seq.*), the Federal Acquisition Regulation (FAR) (48 CFR Chapter 1), and the Homeland Security Acquisition Regulation (HSAR) (48 CFR Chapter 30). Respondents submit information based on the terms of the contract; the instructions in the contract deliverables mandatory reporting requirements; and correspondence from acquisition personnel requesting post-award contract information. The least active contracts and the simplest contracts will have little to no data to report. The most active and complex contracts, however, will contain more reporting

requirements. DHS believes that some of this information is already readily available as part of a company's business processes and that the largest businesses use computers to compile the data. However, a significant amount of time is spent correlating information to specific contract actions and gathering information for more complex contract actions.

The prior information collection request for OMB No. 1600–0003 was approved through May 31, 2022 by OMB, and includes the following:

€ 3052.204–70 Security requirements for unclassified information technology resources. *(Required in all solicitations and contracts that require submission of an IT Security Plan.)* This clause applies to all contractor systems connected to a DHS network and those contracts where the Contractor must have physical or electronic access to sensitive information contained in DHS unclassified systems. The contractor is asked to prepare, provide and maintain an IT Security Plan.

€ 3052.204–71 Contractor employee access. *(Required when contractor employees require recurring access to Government facilities or access to sensitive info.)* Contractors may be subject to background investigations and will have to provide information as required by the DHS Security Office. The information requested is in addition to the information requested through Standard Form (SF) 86.

€ 3052.205–70 Advertisements, Publicizing Awards, and Releases. *(Required for all contracts exceeding Simplified Acquisition Threshold.)* Contractors may have to provide copies of information related to advertisements and release statements to receive approval for publication.

€ 3052.209–72 Organizational Conflict of Interest, paragraphs (f) and (g) *(Included in solicitations and contracts where a potential organizational conflict of interest exists and mitigation may be possible.)* Contractors will have to provide information related to actual or potential conflicts of interest and a mitigation plan.

€ 3052.209–75 Prohibited Financial Interests for Lead System Integrators. (Required in solicitations and contracts for the acquisition of a major system when the acquisition strategy envisions the use of a lead system integrator or when the contractor will be the lead system integrator.) Contractors will have to provide information related to changes in financial interests.

€ 3052.209–76 Prohibition on Federal Protective Service Guard

| State and county | Location and case No. | Chief executive officer of community | Community map repository | Date of modification | Community No. |
|---|---|---|---|---|---|
| Wake (FEMA Docket No.: B–2424). | Town of Wake Forest (23–04–3741P). | The Honorable Vivian A. Jones, Mayor, Town of Wake Forest, 301 South Brooks Street, Wake Forest, NC 27587. | Planning Department, 301 South Brooks Street, Wake Forest, NC 27587. | Jun. 5, 2024 .... | 370244 |
| Wake (FEMA Docket No.: B–2424). | Unincorporated areas of Wake County (23–04–3741P). | Shinica Thomas, Chair, Wake County Board of Commissioners, P.O. Box 550, Raleigh, NC 27602. | Wake County Planning Department, 337 South Salisbury Street, Raleigh, NC 27601. | Jun. 5, 2024 .... | 370368 |
| Watauga (FEMA Docket No.: B–2424). | Unincorporated areas of Watauga County (22–04–4623P). | Larry Turnbow, Chair, Watauga County Board of Commissioners, 814 West King Street, Suite 205, Boone, NC 28607. | Watauga County Planning and Inspections Department, 126 Poplar Grove Connector, Suite 201 Boone, NC 28607. | May 23, 2024 .. | 370251 |
| Watauga (FEMA Docket No.: B–2437). | Unincorporated areas of Watauga County (23–04–3107P). | Larry Turnbow, Chair, Watauga County Board of Commissioners, 814 West King Street, Suite 205, Boone, NC 28607. | Watauga County Planning and Inspections Department, 126 Poplar Grove Connector, Suite 201, Boone, NC 28607. | May 16, 2024 .. | 370251 |
| Pennsylvania: Monroe (FEMA Docket No.: B–2418). | Township of Pocono (24–03–0116P). | Richard Wielebinski, President, Township of Pocono Board of Commissioners, 112 Township Drive, Tannersville, PA 18372. | Township Hall, 112 Township Drive, Tannersville, PA 18372. | Jun. 10, 2024 .. | 421892 |
| Texas: | | | | | |
| Denton (FEMA Docket No.: B–2418). | City of Fort Worth (23–06–1671P). | The Honorable Mattie Parker, Mayor, City of Fort Worth, 200 Texas Street, Fort Worth, TX 76102. | Department of Transportation and Public Works, Engineering Vault and Map Repository, 200 Texas Street, Fort Worth, TX 76102. | Jun. 10, 2024 .. | 480596 |
| Denton (FEMA Docket No.: B–2418). | Unincorporated areas of Denton County (23–06–1671P). | The Honorable Andy Eads, Denton County Judge, 1 Courthouse Drive, Suite 3100, Denton, TX 76208. | Denton County Development Services Department, 3900 Morse Street, Denton, TX 76208. | Jun. 10, 2024 .. | 480774 |
| Tarrant (FEMA Docket No.: B–2418). | City of Arlington (23–06–1085P). | The Honorable Jim Ross, Mayor, City of Arlington, P.O. Box 90231, Arlington, TX 76004. | Public Works Department, 101 West Abram Street, Arlington, TX 76010. | Jun. 17, 2024 .. | 485454 |
| Tarrant (FEMA Docket No.: B–2418). | City of Fort Worth (23–06–1412P). | The Honorable Mattie Parker, Mayor, City of Fort Worth, 200 Texas Street, Fort Worth, TX 76102. | Department of Transportation and Public Works, Engineering Vault and Map Repository, 200 Texas Street, Fort Worth, TX 76102. | Jun. 17, 2024 .. | 480596 |
| Webb (FEMA Docket No.: B–2424). | City of Laredo (23–06–2007P). | The Honorable Victor D. Treviño, Mayor, City of Laredo, 1110 Houston Street, Laredo, TX 78040. | Building Development Services Department, 1413 Houston Street, Laredo, TX 78040. | Jun. 20, 2024 .. | 480651 |
| Williamson (FEMA Docket No.: B–2424). | City of Cedar Park (23–06–1459P). | The Honorable Jim Penniman-Morin, Mayor, City of Cedar Park, 450 Cypress Creek Road, Building 4, Cedar Park, TX 78613. | City Hall, 450 Cypress Creek Road, Building 1, Cedar Park, TX 78613. | Jun. 6, 2024 .... | 481282 |
| Williamson, (FEMA Docket No.: B–2424). | Unincorporated areas of Williamson County (23–06–1459P). | The Honorable Bill Gravell, Jr., Williamson County Judge, 710 South Main Street, Suite 101, Georgetown, TX 78626. | Williamson County Engineering Department, 3151 Southeast Inner Loop, Georgetown, TX 78626. | Jun. 6, 2024 .... | 481079 |
| Virginia: | | | | | |
| Buchanan (FEMA Docket No.: B–2424). | Unincorporated areas of Buchanan County (23–03–1041P). | Robert Craig Horn, Buchanan County Administrator, P.O. Box 950, Grundy, VA 24614. | Buchanan County Government Center, 4447 Slate Creek Road, Grundy, VA 24614. | Jun. 21, 2024 .. | 510024 |
| Loudoun (FEMA Docket No.: B–2418). | Unincorporated areas of Loudoun County (23–03–0567P). | Tim Hemstreet, Loudoun County Administrator, 1 Harrison Street Southeast, 5th Floor, Leesburg, VA 20175. | Loudoun County Government Center, 1 Harrison Street Southeast, 3rd Floor, MSC #60, Leesburg, VA 20175. | Jun. 17, 2024 .. | 510090 |
| Wyoming: | | | | | |
| Teton (FEMA Docket No.: B–2418). | Town of Jackson (23–08–0655P). | The Honorable Hailey Morton Levinson, Mayor, Town of Jackson, P.O. Box 1687, Jackson, WY 83001. | Public Works Department, 450 West Snow King Avenue, Jackson, WY 83001. | Jun. 6, 2024 .... | 560052 |
| Teton (FEMA Docket No.: B–2418). | Unincorporated areas of Teton County (23–08–0655P). | The Honorable Luther Propst, Chair, Teton County Board of Commissioners, P.O. Box 3594, Jackson, WY 83001. | Teton County Public Works Department, 320 South King Street, Jackson, WY 83001. | Jun. 6, 2024 .... | 560094 |

[FR Doc. 2024–14749 Filed 7–3–24; 8:45 am]

**BILLING CODE 9110–12–P**

---

## DEPARTMENT OF HOMELAND SECURITY

[Docket No. ICEB–2023–0011]

**Privacy Act of 1974; System of Records**

**AGENCY:** Department of Homeland Security, U.S. Immigration and Customs Enforcement.

**ACTION:** Notice of a modified system of records.

**SUMMARY:** In accordance with the Privacy Act of 1974, the Department of Homeland Security (DHS) proposes to modify and reissue a current DHS system of records titled, ''DHS/U.S. Immigration and Customs Enforcement (ICE)-011 Criminal Arrest Records and Immigration Enforcement Records

TD_0001163

(CARIER) System of Records.'' DHS/ICE collects, uses, and maintains CARIER records to support the identification, apprehension, and removal of aliens (a term defined in law but used hereinafter as ''non-citizens'') unlawfully entering or present in the United States in violation of the Immigration and Nationality Act (INA), including fugitive non-citizens. DHS/ICE also uses CARIER to support the identification and arrest of individuals (both citizens and non-citizens) who commit violations of federal laws enforced by DHS. DHS/ICE is reissuing this system of records notice to update the purpose of the system, add new categories of individuals, add new categories of records, and modify, remove, and propose new routine uses. Additionally, this notice includes non-substantive changes to simplify the formatting and text of the previously published notice. This modified system will be included in the Department's inventory of record systems.

**DATES:** Submit comments on or before August 5, 2024. This modified system will be effective August 5, 2024.

**ADDRESSES:** You may submit comments, identified by docket number ICEB–2023–0011 by one of the following methods:
• *Federal e-Rulemaking Portal: http:// www.regulations.gov.* Follow the instructions for submitting comments.
• *Fax:* 202–343–4010.
• *Mail:* Mason C. Clutter, Chief Privacy Officer, Privacy Office, Department of Homeland Security, Washington, DC 20528–0655.
*Instructions:* All submissions received must include the agency name and docket number ICEB–2023–0011. All comments received will be posted without change to *http:// www.regulations.gov,* including any personal information provided.
*Docket:* For access to the docket to read background documents or comments received, please visit *http:// www.regulations.gov.*

**FOR FURTHER INFORMATION CONTACT:** For general questions, please contact: Ieshah Geary, Privacy Officer, Office of Information Governance and Privacy, *iceprivacy-generalmailbox@ice.dhs.gov,* U.S. Immigration and Customs Enforcement, 500 12th Street SW, Mail Stop 5004, Washington, DC 20536. For privacy questions, please contact: Mason C. Clutter, (202) 343–1717, *Privacy@hq.dhs.gov,* Chief Privacy Officer, Privacy Office, Department of Homeland Security, Washington, DC 20528.

**SUPPLEMENTARY INFORMATION:**

## I. Background

In accordance with the Privacy Act of 1974, 5 U.S.C. 552a, DHS/ICE proposes to modify and reissue a current DHS system of records titled, ''DHS/ICE–011 Criminal Arrest Records and Immigration Enforcement Records (CARIER) System of Records.'' DHS/ICE maintains the CARIER system of records to support the identification, apprehension, and removal of individuals unlawfully entering or present in the United States; and to support the identification and arrest of individuals who commit violations of federal laws enforced by DHS.

DHS/ICE is modifying and reissuing this system of records notice to update the purpose of the system to include the following purposes: (1) to monitor individuals unlawfully entering or present in the United States in violation of the Immigration and Nationality Act, including non-detained non-citizens; (2) to support geolocation tracking, biometric verification, and rapid enrollment of non-citizens into the ICE Enforcement and Removal Operations (ERO) Alternatives to Detention (ATD) program; and (3) to improve coordination necessary to efficiently transfer/transport individuals from the U.S. Customs and Border Protection (CBP) to ICE and subsequently from ICE to various family residential centers and detention facilities. DHS/ICE is also updating the categories of individuals covered by this system of records to include those individuals on the ''non-detained'' docket and Alternatives to Detention program. Additionally, DHS/ICE is updating the categories of records to include geolocation records derived from technologies such as the Global Positioning System (GPS) and records pertaining to family unit identification number (FAMU ID).

ICE is also removing several routine uses from the previous system of records notice. After careful review and consideration, ICE is removing previous redundancies to ensure the System of Records Notice is focused solely on the system's purpose, categories of individuals, records, and routine uses for the identification, apprehension, and removal of non-citizens unlawfully present in the United States. The previous routine uses have been removed: Routine Use O, Routine Use S, Routine Use V, Routine Use Z, Routine Use AA, Routine Use BB, Routine Use JJ, and Routine Use YY.

Finally, DHS/ICE is proposing to modify and add the following routine uses:
• Modify routine use (E) and add routine use (F) to allow DHS/ICE to

share records with appropriate federal agencies or entities when reasonably necessary to respond to a breach of personally identifiable information and to prevent, minimize, or remedy the risk of harm to individuals or the Federal Government, or assist an agency in locating individuals affected by a breach in accordance with Office of Management and Budget (OMB) Memorandum M–17–12 ''Preparing for and Responding to a Breach of Personally Identifiable Information,'' (Jan. 3, 2017).
• Add routine use (XX) to allow ICE to share records through the Law Enforcement Information Sharing Service (LEISS) with federal, state, local, tribal, regional, foreign, or international law enforcement agencies that are party to a LEISS Memorandum of Agreement. LEISS is a non-public facing web service that functions as a bi-directional data sharing system between DHS and member agencies for the purpose of criminal law enforcement, homeland/ national security, or applicant background investigations.
• Add routine use (YY) to allow ICE to share information with an appropriate federal, state, local, tribal, territorial, foreign, or international agency and third-party organizations assisting in the repatriation of non-citizens who are returning voluntarily to their home countries.

The Routine Use Section is also being renumbered to account for the added and removed routine uses listed above. Non-substantive language changes have been made to the added routine uses to clarify disclosure policies that are standard across DHS and to align with previously published DHS system of records notices.

Consistent with DHS's information sharing mission, information stored in the DHS/ICE–011 CARIER System of Records may be shared with other DHS Components that have a need to know the information to carry out their national security, law enforcement, immigration, intelligence, or other homeland security functions. In addition, DHS/ICE may share information with appropriate federal, state, local, tribal, territorial, foreign, or international government agencies consistent with the routine uses set forth in this system of records notice. This modified system will be included in DHS's inventory of records systems.

## II. Privacy Act

The fair information practice principles found in the Privacy Act underpin the statutory framework governing the means by which Federal Government agencies collect, maintain,

**55640**    **Federal Register**/Vol. 89, No. 129/Friday, July 5, 2024/Notices

use, and disseminate individuals' records. The Privacy Act applies to information that is maintained in a "system of records." A "system of records" is a group of any records under the control of an agency from which information is retrieved by the name of an individual or by some identifying number, symbol, or other identifying particular assigned to the individual. In the Privacy Act, an individual is defined to encompass U.S. citizens and lawful permanent residents. Additionally, and similarly, the Judicial Redress Act (JRA) provides a statutory right to covered persons to make requests for access to and amendment of covered records, as defined by the Judicial Redress Act, along with judicial review for denials of such requests. In addition, the Judicial Redress Act prohibits disclosures of covered records, except as otherwise permitted by the Privacy Act.

Below is the description of the DHS/ICE–011 CARIER System of Records.

In accordance with 5 U.S.C. 552a(r), DHS has provided a report of this system of records to the Office of Management and Budget and to Congress.

**SYSTEM NAME AND NUMBER:**

Department of Homeland Security (DHS)/U.S. Immigration and Customs Enforcement (ICE)-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER).

**SECURITY CLASSIFICATION:**

Unclassified. The data may be retained on classified networks, but this does not change the nature and character of the data until it is combined with classified information.

**SYSTEM LOCATION:**

Records are maintained in DHS/ICE information technology (IT) systems (*e.g.*, the Enforcement Integrated Database (EID) and their associated ICE applications. and contractor-owned IT systems, including those supporting the ICE Alternatives to Detention program). Records are also maintained in associated electronic and paper files located at ICE Headquarters in Washington, DC, ICE field and attaché offices, contractor offices, and detention facilities operated by or on behalf of ICE, or that otherwise house individuals arrested or detained by ICE. Finally, records are replicated from the operational DHS/ICE IT systems and maintained on DHS unclassified and classified networks used for analysis and vetting.

**SYSTEM MANAGER(S):**

Executive Associate Director, Office of Enforcement and Removal Operations,

U.S. Immigration & Customs Enforcement, 500 12th Street SW, Washington, DC 20536.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

Authority for maintaining this system is in sections 103, 235, 236, 274, 287, and 290 of the Immigration and Nationality Act (INA), 8 United States Code, sections 1103, 1225, 1226, 1324, 1357, 1360, and 1365(a)(b); Title 18, United States Code, Chapters 27, 77, 85, 95, 109A, 110, 113, and 117; Title 31, United States Code, Chapter 53, Subchapter II; Title 50 Appendix, United States Code; The Tariff Act of 1930; Justice for All Act of 2004 (Pub. L. 108–405); DNA Fingerprint Act of 2005 (Pub. L. 109–162); Adam Walsh Child Protection and Safety Act of 2006 (Pub. L. 109–248); and 28 CFR part 28, "DNA-Sample Collection and Biological Evidence Preservation in the Federal Jurisdiction."

**PURPOSE(S) OF THE SYSTEM:**

The purposes of this system are:
1. To support the identification, arrest, charging, monitoring, detention, and/or removal of individuals unlawfully entering or present in the United States in violation of the INA, including fugitive non-citizens, non-detained non-citizens, and non-lawful re-entrants.

2. To support the identification and arrest of individuals (both citizens and non-citizens) who commit violations of criminal laws enforced by DHS/ICE.

3. To track the process and results of administrative and criminal proceedings, including compliance with court orders and hearing dates, against individuals who are alleged to have violated the INA or other laws enforced by DHS.

4. To support the grant or denial of parole and tracking of individuals who seek or receive parole into the United States.

5. To provide criminal and immigration history information during DHS enforcement encounters, and to support background checks on applicants for DHS immigration benefits (*e.g.*, employment authorization and petitions).

6. To identify potential criminal activity, immigration violations, and threats to homeland security, to ensure public safety, and to uphold laws enforced by DHS.

7. To support the geolocation tracking, biometric verification, and rapid enrollment of non-citizens into the ICE Alternatives to Detention program.

8. To improve the coordination necessary to efficiently transfer/

transport individuals from CBP to ICE and from ICE to various detention facilities.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Categories of individuals covered by this system include: (1) individuals arrested, detained, or removed from the United States for criminal or administrative violations of the INA, or individuals issued a Notice to Appear in immigration court; (2) individuals who are the subject of an immigration detainer issued to another law enforcement or custodial agency; (3) individuals arrested by ICE for violations of criminal laws enforced by ICE or DHS; (4) individuals who fail to leave the United States after receiving a final order of removal, deportation, or exclusion, or who fail to report to ICE for removal after receiving notice to do so (fugitive non-citizens); (5) individuals who non-lawfully re-enter the United States after departing pursuant to an order of voluntary departure or being removed from the United States (non-lawful re-entrants); (6) individuals who request to be removed at their own expense or are eligible for voluntary removal from the United States pursuant to section 250 of the INA; (7) individuals who are granted parole into the United States under section 212(d)(5) of the INA (parolees); (8) individuals awaiting immigration proceedings under a "non-detained" or Alternatives to Detention program; (9) other individuals whose information may be collected or obtained during the course of an immigration enforcement or criminal matter, such as witnesses, associates, and relatives; (10) persons who post or arrange bond for the release of an individual from ICE detention, or receive custodial property of a detained non-citizen; (11) prisoners of the U.S. Marshals Service held in ICE detention facilities; and (12) attorneys or representatives who represent individuals listed in the categories above.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Biographic, biometric, descriptive, historical, and other identifying data, including:
• Full name;
• Alias(es);
• A-Number;
• Social Security number (SSN);
• Date of birth;
• Place of birth;
• Nationality;
• Fingerprint Identification Number (FIN);
• Federal Bureau of Investigation (FBI) number;

• Other unique identifying numbers (*e.g.*, federal, state, local, and tribal identification numbers);

• Government-issued identification (*e.g.*, passport, driver's license):
○ Document type;
○ Issuing organization;
○ Document number;
○ Expiration date;
• Visa information;
• Contact or location information (*e.g.*, known or possible addresses, phone numbers);
• Employment history;
• Education history;
• Immigration history (*e.g.*, citizenship/naturalization certificate number, removals, explanations);
• Domestic and foreign criminal history (*e.g.*, arrest, charges, dispositions, and sentencing, corresponding dates, jurisdictions);
• Physical description (*e.g.*, height, weight, eye color, hair color, race, ethnicity, identifying marks like scars, tattoos, or birthmarks); and
• Biometric data (*i.e.*, fingerprints, voiceprints, iris images, photographs, facial verification images/templates, and DNA samples).
○ DNA samples required by DOJ regulation (see 28 CFR part 28) are collected and sent to the FBI. DNA samples are not retained or analyzed by DHS, nor does ICE receive or maintain the results of the FBI's DNA analysis (*i.e.*, DNA sequences).
○ Information pertaining to ICE's collection of DNA samples, limited to the date and time of successful collection and confirmation from the FBI that the sample was able to be sequenced, is maintained by ICE and DHS.

Case-related data:
• Case number;
• Family unit identification number ID numbers;
• Record number;
• Case category;
• Description of charges and disposition of arrest;
• Case agent;
• Data initiated and completed;
• Location-related data, including geotags from metadata associated with other record categories collected; geographical indicators; and geolocation information (*e.g.*, GPS) derived from the ICE Alternatives to Detention program;
• National Sex Offender Registry (NSOR) status; and
• Other data describing an event involving alleged violations of criminal or immigration law (*i.e.*, location; date; time; type of criminal or immigration law violations alleged; type of property involved; use of violence, weapons, or assault against DHS personnel or third

parties; attempted escape; and other related information).

Information presented to or collected by ICE during immigration and law enforcement proceedings or activities:
• Date of birth;
• Place of birth;
• Marital status;
• Education history;
• Employment history;
• Travel history; and
• Other information derived from affidavits, certificates, manifests, and other documents. This data typically pertains to subjects, relatives, associates, and witnesses.

Detention data on non-citizens:
• Immigration detainers issued;
• Transportation information;
• Detention-related identification numbers;
• Detention facility;
• Security, risk, and custody classification:
• Custody recommendation and status;
• Flight risk indication;
• Book-in/book-out date and time;
• Mandatory detention and criminal flags;
• Aggravated felon status;
• Other alerts (*e.g.*, gang affiliation, community ties, health accommodation, humanitarian or medical considerations);
• Information about a non-citizen's release from custody on bond, recognizance, or supervision;
• Information related to prosecutorial discretion determinations;
• Property inventory and receipt;
• Information related to disciplinary issues or grievances;
• Documents and video recordings related to alleged misconduct and other incidents involving detainees; and
• Other detention-related information (*e.g.*, documentation of an allegation of sexual abuse or assault, documentation of strip and body cavity searches, documentation of reasons for segregation or other housing placement, documentation of participation in the orientation process).

Detention data for U.S. Marshals Service prisoners:
• Full name;
• Date of birth;
• Country of birth;
• Identification numbers (*e.g.*, detainee, FBI, state);
• Book-in/book-out date and time; and
• Security classification.

Limited health information relevant to an individual's placement in an ICE detention facility or transportation requirements:
• Medical alerts, mental competency, or general information on physical

disabilities or other special needs or vulnerabilities to facilitate placement in a facility or bed that best accommodates these needs. Medical records about individuals in ICE custody (*i.e.*, records relating to the diagnosis or treatment of individuals) are maintained in DHS/ICE–013 Alien Medical Records System of Records.

Progress, status, and final result of removal, prosecution, and other DHS processes and related appeals:
• Information relating to criminal convictions;
• Incarceration;
• Travel documents; and
• Other information pertaining to the actual removal of non-citizens from the United States.

Contact, biographical, and identifying data about Relatives, Attorneys, Representatives, Associates, or Witnesses of a noncitizen in proceedings initiated or conducted by DHS may include:
• Full name;
• Date of birth;
• Place of birth; and
• Contact or location information (*e.g.*, addresses, phone numbers, and business or agency name).

Data concerning personnel of other agencies that arrested, or assisted or participated in the arrest or investigation of, or are maintaining custody of an individual whose arrest record is contained in this system of records may include:
• Full name;
• Title; and
• Contact or location information (*e.g.*, addresses, phone numbers, and business or agency name).

Data about persons who post or arrange an immigration bond for the release of an individual from ICE custody, or receive custodial property of an individual in ICE custody may include:
• Full name;
• Address;
• Phone numbers; and
• Social Security number.

Recordings of detainee telephone calls when responding as part of an alternative to detention program or of detainee calls made in detention facilities. Information about these calls may include:
• Date;
• Time;
• Duration; and
• Phone number called. (Note: protected telephone calls, such as calls with an attorney, are not recorded and information about protected telephone calls is not retained.)

Information related to detainees' accounts for telephone or commissary services in a detention facility.

**RECORD SOURCE CATEGORIES:**

Records are obtained from several sources. In general, information is obtained from individuals covered by this system, and other federal, state, local, tribal, or foreign governments. More specifically, DHS/ICE–011 records derive from the following sources:

(a) Individuals covered by the system and other individuals (*e.g.,* witnesses, family members);

(b) Other federal, state, local, tribal, or foreign governments and government information systems;

(c) Business records;

(d) Evidence, contraband, and other seized material; and

(e) Public and commercial sources, including social media.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND PURPOSES OF SUCH USES:**

In addition to those disclosures generally permitted under 5 U.S.C. 552a(b) of the Privacy Act, all or a portion of the records or information contained in this system may be disclosed outside DHS as a routine use pursuant to 5 U.S.C. 552a(b)(3) as follows:

A. To the Department of Justice (DOJ), including Offices of the United States Attorneys, or other federal agencies conducting litigation or in proceedings before any court, adjudicative, or administrative body, when it is relevant and necessary to the litigation and one of the following is a party to the litigation or has an interest in such litigation:

1. DHS or any component thereof;

2. Any employee or former employee of DHS in their official capacity;

3. Any employee or former employee of DHS in their individual capacity when DOJ or DHS has agreed to represent the employee; or

4. The United States or any agency thereof.

B. To a congressional office from the record of an individual in response to an inquiry from that congressional office made at the request of the individual to whom the record pertains.

C. To the National Archives and Records Administration (NARA) or General Services Administration pursuant to records management inspections being conducted under the authority of 44 U.S.C. secs. 2904 and 2906.

D. To an agency or organization for the purpose of performing audit or oversight operations as authorized by law, but only such information as is necessary and relevant to such audit or oversight function.

E. To appropriate agencies, entities, and persons when (1) DHS suspects or has confirmed that there has been a breach of the system of records; (2) DHS has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, DHS (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with DHS's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

F. To another federal agency or federal entity when DHS determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the federal government, or national security resulting from a suspected or confirmed breach.

G. To an appropriate federal, state, tribal, local, international, or foreign law enforcement agency or other appropriate authority charged with investigating or prosecuting a violation or enforcing or implementing a law, rule, regulation, or order, when a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure.

H. To contractors and their agents, grantees, experts, consultants, and others performing or working on a contract, service, grant, cooperative agreement, or other assignment for DHS, when necessary to accomplish an agency function related to this system of records. Individuals provided information under this routine use are subject to the same Privacy Act requirements and limitations on disclosure as are applicable to DHS officers and employees.

I. To prospective claimants and their attorneys for the purpose of negotiating the settlement of an actual or prospective claim against DHS or its current or former employees, in advance of the initiation of formal litigation or proceedings.

J. To appropriate federal, state, local, tribal, territorial, or foreign government agencies, as well as to other individuals and organizations during the course of an investigation by DHS or the processing of a matter under DHS's jurisdiction, or during a proceeding within the purview of immigration and nationality laws, when DHS deems that such disclosure is necessary to carry out its functions and statutory mandates or to elicit information required by DHS to carry out its functions and statutory mandates.

K. To federal, state, local, tribal, or territorial government agencies, or other entities or individuals, or through established liaison channels to selected foreign governments, to provide intelligence, counterintelligence, or other information for the purposes of national security, intelligence, counterintelligence, or antiterrorism activities authorized by U.S. law, Executive Order, or other applicable national security directive.

L. To federal and foreign government intelligence or counterterrorism agencies or components when DHS becomes aware of an indication of a threat or potential threat to national or international security, or when such disclosure is to support the conduct of national intelligence and security investigations or to assist in anti-terrorism efforts.

M. To any federal agency to enable such agency to make determinations regarding the payment of federal benefits to the record subject in accordance with that agency's statutory responsibilities.

N. To foreign governments for the purpose of coordinating and conducting the removal of non-citizens from the United States to other nations under the Immigration and Nationality Act; and to international, foreign, intergovernmental, and multinational agencies, authorities, and organizations in accordance with law and formal or informal international arrangements.

O. To the DOJ Executive Office of Immigration Review (EOIR) or its contractors, consultants, or others performing or working on a contract for EOIR, for the purpose of providing information about non-citizens who are or may be placed in removal proceedings so that EOIR may arrange for the provision of educational services to those non-citizens under EOIR's Legal Orientation Program, or for other purposes or activities within the scope of the EOIR contract.

P. To disclose information to the DOJ EOIR and to the Board of Immigration Appeals, to the extent necessary to carry out their authorized duties pertaining to the adjudication of matters arising under the Immigration and Nationality Act.

Q. To attorneys or legal representatives for the purpose of facilitating group presentations to non-

TD_0001167

**Federal Register** / Vol. 89, No. 129 / Friday, July 5, 2024 / Notices **55643**

citizens in detention that will provide the non-citizens with information about their rights under U.S. immigration law and procedures.

R. To the Department of State in the processing of petitions or applications for benefits under the Immigration and Nationality Act, and all other immigration and nationality laws including treaties and reciprocal agreements; or when the Department of State requires information to consider or provide an informed response to a request for information from a foreign, international, or intergovernmental agency, authority, or organization about a non-citizen or an enforcement operation with transnational implications.

S. To OMB in connection with the review of private relief legislation as set forth in OMB Circular No. A–19 at any stage of the legislative coordination and clearance process as set forth in the Circular.

T. To federal, state, local, territorial, tribal, international, or foreign criminal, civil, or regulatory law enforcement authorities when the information is necessary for collaboration, coordination, and de-confliction of investigative matters, prosecutions, and/or other law enforcement actions to avoid duplicative or disruptive efforts and to ensure the safety of law enforcement officers who may be working on related law enforcement matters.

U. To the U.S. Marshals Service (USMS) concerning USMS prisoners that are or will be held in detention facilities operated by or on behalf of ICE, and to federal, state, local, tribal, or territorial law enforcement or correctional agencies concerning individuals in DHS custody that are to be transferred to such agency's custody, to coordinate the transportation, custody, and care of these individuals.

V. To third parties to facilitate placement or release of an individual (*e.g.,* at a group home, homeless shelter) who has been or is about to be released from DHS custody but only such information that is relevant and necessary to arrange housing, continuing medical care, or other social services for the individual.

W. To victims and witnesses regarding custodial information, such as transfer to another custodial agency or location, release on bond, order of supervision, removal from the United States, or death in custody, about an individual who is the subject of a criminal or immigration investigation, proceeding, or prosecution. This would also authorize disclosure of custodial information to individuals with a legal

responsibility to act on behalf of a victim or witness (*e.g.,* attorney, parent, legal guardian) and individuals acting at the request of a victim or witness; as well as external victim notification systems that make such information available to victims and witnesses in electronic form.

X. To the Federal Bureau of Prisons (BOP) and other federal, state, local, territorial, tribal, and foreign law enforcement or custodial agencies for the purpose of facilitating the transfer of custody of an individual to or from that agency. This will include the transfer of information about unaccompanied minor children to the U.S. Department of Health and Human Services (HHS) to facilitate the custodial transfer of such children from DHS to HHS.

Y. To DOJ and other law enforcement or custodial agencies to facilitate payments and reporting under the State Criminal Alien Assistance Program or similar programs.

Z. To any law enforcement agency or custodial agency (such as a jail or prison) to serve that agency with notice of an immigration detainer, or to update or remove a previously issued immigration detainer, for an individual who is believed to be in that agency's custody.

AA. To DOJ, disclosure of DNA samples and related information as required by 28 CFR part 28.

BB. To DOJ, disclosure of arrest and removal information for inclusion in relevant DOJ law enforcement databases and for use in the enforcement of federal firearms laws (*e.g.,* Brady Handgun Violence Prevention Act, as amended by the NICS Improvement Amendments Act).

CC. To the attorney or guardian ad litem of an individual's child, or to federal, state, local, tribal, territorial, or foreign governmental or quasi-governmental agencies or courts, to confirm the location, custodial status, removal, or voluntary departure of an individual from the United States, to facilitate the recipients' exercise of responsibilities pertaining to the custody, care, or legal rights (including issuance of a U.S. passport) of the individual's children, or the adjudication or collection of child support payments or other similar debts owed by the individual.

DD. To an individual or entity seeking to post or arrange, or who has already posted or arranged, an immigration bond for a noncitizen to aid the individual or entity in (1) identifying the location of the noncitizen; (2) posting the bond; (3) obtaining payments related to the bond; or (4) conducting other administrative or

financial management activities related to the bond.

EE. To federal, state, local, tribal, territorial, or foreign government agencies or entities or multinational governmental agencies when DHS needs to exchange relevant data for the purpose of developing, testing, or implementing new software or technology whose purpose is related to this system of records.

FF. Limited detainee biographical information will be publicly disclosed via the ICE Online Detainee Locator System or any successor system for the purpose of identifying whether a detainee is in ICE custody and the custodial location.

GG. To courts, magistrates, administrative tribunals, opposing counsel, parties, and witnesses, in immigration, civil, or criminal proceedings (including discovery, presentation of evidence, and settlement negotiations) and when DHS determines that use of such records is relevant and necessary to the litigation before a court or adjudicative body when any of the following is a party to or have an interest in the litigation:

1. DHS or any component thereof;

2. Any employee of DHS in their official capacity;

3. Any employee of DHS in their individual capacity when DOJ or DHS has agreed to represent the employee; or

4. The United States, when DHS determines that litigation is likely to affect DHS or any of its components.

HH. To federal, state, local, tribal, territorial, international, or foreign government agencies or entities for the purpose of consulting with that agency or entity:

1. To assist in making a determination regarding redress for an individual in connection with the operations of a DHS component or program;

2. To verify the identity of an individual seeking redress in connection with the operations of a DHS component or program; or

3. To verify the accuracy of information submitted by an individual who has requested such redress on behalf of another individual.

II. To federal, state, local, tribal, territorial, or foreign governmental agencies; multilateral governmental organizations; or other public health entities, for the purposes of protecting the vital interests of a record subject or other persons, including to assist such agencies or organizations during an epidemiological investigation, in facilitating continuity of care, in preventing exposure to or transmission of a communicable or quarantinable disease of public health significance, or

to combat other significant public health threats.

JJ. To foreign governments for the purpose of providing information about their citizens or permanent residents, or family members thereof, during local or national disasters or health emergencies.

KK. To a coroner for purposes of affirmatively identifying a deceased individual (whether or not such individual is deceased as a result of a crime) or cause of death.

LL. To a former employee of DHS for purposes of responding to an official inquiry by Federal, State, local, tribal, or territorial government agencies or professional licensing authorities; or facilitating communications with a former employee that may be relevant and necessary for personnel-related or other official purposes, when DHS requires information or consultation assistance from the former employee regarding a matter within that person's former area of responsibility.

MM. To federal, state, local, tribal, territorial, foreign, or international agencies, if the information is relevant and necessary to a requesting agency's decision concerning the hiring or retention of an individual, or the issuance, grant, renewal, suspension or revocation of a security clearance, license, contract, grant, or other benefit; or if the information is relevant and necessary to a DHS decision concerning the hiring or retention of an employee, the issuance of a security clearance, the reporting of an investigation of an employee, the letting of a contract, or the issuance of a license, grant, or other benefit.

NN. To a public or professional licensing organization when such information indicates, either by itself or in combination with other information, a violation or potential violation of professional standards, or reflects on the moral, educational, or professional qualifications of licensed professionals or those seeking to become licensed professionals.

OO. To an attorney or representative (as defined in 8 CFR 1.2, 202.1, 1001.1(f), or 1202.12) who is acting on behalf of an individual covered by this system of records in connection with any proceeding before U.S. Citizenship and Immigration Services (USCIS), ICE, CBP, or EOIR, as required by law or as deemed necessary in the discretion of the Department.

PP. To members of the public, with regard to disclosure of limited detainee biographical information for the purpose of facilitating the deposit of monies into detainees' accounts for telephone or commissary services in a detention facility.

QQ. To federal, state, local, tribal, or territorial government agencies seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law.

RR. To federal, state, local, tribal, and territorial courts or government agencies involved in criminal investigation or prosecution, pre-trial, sentencing, parole, probation, bail bonds, or any other aspect of the criminal justice process, and to defense counsel representing an individual in a domestic criminal proceeding, to ensure the integrity and efficiency of the criminal justice system by informing these recipients of the existence of an immigration detainer or the individual's status in removal proceedings, including removal or custodial status/location. Disclosure of the individual's A-Number and country of birth is also authorized to facilitate these recipients' use of the ICE Online Detainee Locator System for the purposes listed above.

SS. To a foreign government to notify it concerning its citizens or residents who are incapacitated, an unaccompanied minor, or deceased.

TT. To family members, guardians, committees, friends, or other agents identified by law or regulation to receive notification, decisions, and other papers as provided in 8 CFR 103.8 from DHS or EOIR following verification of a familial or agency relationship with a non-citizen when DHS is aware of indicia of incompetency or when a non-citizen has been determined to be mentally incompetent by an immigration judge.

UU. To an organization or person in either the public or private sector, either foreign or domestic, when there is a reason to believe that the recipient is or could become the target of a particular terrorist activity or conspiracy, or when the information is relevant to the protection of life, property, or other vital interests of a person.

VV. To clerks and judges of courts exercising naturalization jurisdiction for the purpose of granting or revoking naturalization.

WW. To federal, state, local, tribal, territorial, foreign, or international agencies, after discovery of such information, if DHS determines: (1) The information is relevant and necessary to that agency's decision concerning the hiring or retention of an individual, or issuance of a security clearance, license, contract, grant, or other benefit; and (2) Failure to disclose the information is likely to create a substantial risk to government facilities, equipment, or personnel; sensitive information; critical infrastructure; or public safety.

XX. To an appropriate federal, state, local, tribal, regional, foreign, or international law enforcement agency, where use is consistent with the official duties of the recipient agency and the requirements set forth in a related memorandum of agreement between DHS and the recipient agency authorizing information sharing through LEISS for the purpose of criminal law enforcement, homeland security, or to support applicant background investigations for ICE law enforcement partners.

YY. To an appropriate federal, state, local, tribal, territorial, foreign, or international agency and third-party organizations assisting in the repatriation of non-citizens who are returning voluntarily to their home countries.

ZZ. To the news media and the public, with the approval of the Chief Privacy Officer in consultation with counsel, when there exists a legitimate public interest in the disclosure of the information, when disclosure is necessary to preserve confidence in the integrity of DHS, or when disclosure is necessary to demonstrate the accountability of DHS's officers, employees, or individuals covered by the system, except to the extent the Chief Privacy Officer determines that release of the specific information in the context of a particular case would constitute a clearly unwarranted invasion of personal privacy.

**POLICIES AND PRACTICES FOR STORAGE OF RECORDS:**

DHS/ICE stores records in this system electronically or on paper in secure facilities in a locked drawer behind a locked door. The records may be stored on magnetic disc, tape, and digital media.

**POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:**

Records may be retrieved by name, biometric identifiers, identification numbers including, but not limited to, A-Number, fingerprint identification number, Social Security number, case or record number if applicable, case related data, or a combination of other personal identifiers including, but not limited to, date of birth and nationality.

**POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:**

ICE retains records in accordance with an applicable National Archives and Records Administration (NARA) General Records Schedule (GRS) or a NARA-approved agency-specific records control schedule. ICE retains records of arrests, detentions, and removals in the Enforcement Integrated Database and its

modules, such as the ENFORCE Alien Removal Module and the ICE Integrated Decision Support (IIDS), for seventy-five (75) years pursuant to the Biometric with Limited Biographical Data Schedule, DAA–563–2013–0001–0006.

The Online Detainee Locator System (ODLS) uses an extract of Enforcement Integrated Database data about current detainees and detainees that were released during the last sixty (60) days. Records are retained in the Online Detainee Locator System for as long as they meet the extract criteria in accordance with the schedule, N1–567–11–7. The electronic Travel Document System (eTD) stores travel documents for twenty (20) years after the issuance of a travel document or denial letter in accordance with the schedule, DAA–0567–2017–0004. Alternatives to Detention program records are retained for seven (7) years after the individual has been removed from the Alternatives to Detention program and is no longer being monitored in accordance with the schedule, DAA–567–2018–0001–0001.

**ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:**

DHS/ICE safeguards records in this system according to applicable rules and policies, including all applicable DHS automated systems security and access policies. DHS/ICE has imposed strict controls to minimize the risk of compromising the information that is being stored. Access to the computer system containing the records in this system is limited to those individuals who have a need to know the information for the performance of their official duties and who have appropriate clearances or permissions.

**RECORD ACCESS PROCEDURES:**

The Secretary of Homeland Security has exempted this system from the notification, access, and amendment procedures of the Privacy Act, and the Judicial Redress Act if applicable, because it is a law enforcement system. However, DHS/ICE will consider individual requests to determine whether or not information may be released. Thus, individuals seeking access to and notification of any record contained in this system of records, or seeking to contest its content, may submit a request in writing to the Chief Privacy Officer and ICE FOIA Officer whose contact information can be found at *http://www.dhs.gov/foia*. If an individual believes more than one component maintains Privacy Act records concerning them, the individual may submit the request to the Chief Privacy Officer and Chief Freedom of Information Act Officer, Department of Homeland Security, Washington, DC 20528–0655 or electronically at *https://www.dhs.gov/dhs-foia-privacy-act-request-submission-form*. Even if neither the Privacy Act nor the Judicial Redress Act provide a right of access, certain records about an individual may be available under the Freedom of Information Act.

When seeking records about oneself from this system of records or any other Departmental system of records, an individual's request must conform with the Privacy Act regulations set forth in 6 CFR part 5. The individual must first verify their identity, meaning that they must provide their full name, current address, and date and place of birth. The individual must sign the request, and their signature must either be notarized or submitted under 28 U.S.C. 1746, a law that permits statements to be made under penalty of perjury as a substitute for notarization. While no specific form is required, one may obtain forms for this purpose from the Chief Privacy Officer and Chief Freedom of Information Act Officer, *http://www.dhs.gov/foia* or 1–866–431–0486. In addition, individuals should:

• Explain why they believe the Department would have information on them;
• Identify which component(s) of the Department they believe may have the information about them;
• Specify when they believe the records would have been created; and
• Provide any other information that will help the FOIA staff determine which DHS component agency may have responsive records.

If the request is seeking records pertaining to another living individual, the request must include an authorization from the individual whose record is being requested, authorizing the release to the requester.

Without the above information, the component(s) may not be able to conduct an effective search, and the individual's request may be denied due to lack of specificity or lack of compliance with applicable regulations.

**CONTESTING RECORD PROCEDURES:**

For records covered by the Privacy Act or covered Judicial Redress Act records, individuals may make a request for amendment or correction of a Department record about the individual by writing directly to the Department component that maintains the record, unless the record is not subject to amendment or correction. The request should identify each record in question, state the amendment or correction desired, and state why the individual believes that the record is not accurate, relevant, timely, or complete. The individual may submit any documentation that would be helpful to support the request. If the individual believes that the same record is in more than one system of records, the request should state this belief and be addressed to each component that maintains a system of records containing the record.

**NOTIFICATION PROCEDURES:**

See "Record Access procedure."

**EXEMPTIONS PROMULGATED FOR THE SYSTEM:**

The Secretary of Homeland Security, pursuant to 5 U.S.C. 552a(j)(2), has exempted this system from the following provisions of the Privacy Act: 5 U.S.C. secs. 552a(c)(3), (c)(4); (d); (e)(1), (e)(2), (e)(3), (e)(4)(G), (e)(4)(H), (e)(5), (e)(8); (f); and (g). Additionally, the Secretary of Homeland Security, pursuant to 5 U.S.C. 552a(k)(2), has exempted this system of records from the following provisions of the Privacy Act: 5 U.S.C. secs. 552a(c)(3); (d); (e)(1), (e)(4)(G), (e)(4)(H); and (f). When a record received from another system has been exempted in that source system under 5 U.S.C. secs. 552a(j)(2) or (k)(2), DHS will claim the same exemptions for those records that are claimed for the original primary systems of records from which they originated and claim any additional exemptions set forth here.

**HISTORY:**

81 FR 72080 (November 18, 2016); 80 FR 24269 (April 30, 2015); 80 FR 11214 (March 2, 2015); 75 FR 23274 (May 3, 2010); 75 FR 9238 (March 1, 2010); 74 FR 20719 (May 5, 2009); 74 FR 5665 (January 30, 2009); 74 FR 4965 (January 28, 2009).

**Mason C. Clutter,**
*Chief Privacy Officer, Department of Homeland Security.*
[FR Doc. 2024–14768 Filed 7–3–24; 8:45 am]
**BILLING CODE 9111–28–P**

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

**[Docket No. FR–6086–N–09]**

**RIN 2577–AD05**

**Economic Growth Regulatory Relief and Consumer Protection Act: Implementation of National Standards for the Physical Inspection of Real Estate (NSPIRE); Extension of NSPIRE Compliance Date for HCV, PBV and Section 8 Moderate Rehab and CPD Programs**

**AGENCY:** Office of the Assistant Secretary for Public and Indian

T. 31, Subt. II, Ch. 13, Subch. III, Refs & Annos, 31 USCA Subt. II, Ch. 13, Subch. III,...

Case 1:25-cv-00457-CKK     Document 48-13     Filed 10/29/25     Page 153 of 224

United States Code Annotated
   Title 31. Money and Finance
      Subtitle II. The Budget Process
         Chapter 13. Appropriations
            Subchapter III. Limitations, Exceptions, and Penalties

31 U.S.C.A. Subt. II, Ch. 13, Subch. III, Refs & Annos
Currentness

31 U.S.C.A. Subt. II, Ch. 13, Subch. III, Refs & Annos, 31 USCA Subt. II, Ch. 13, Subch. III, Refs & Annos
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001171

United States Code Annotated
   Title 31. Money and Finance (Refs & Annos)
      Subtitle II. The Budget Process
         Chapter 13. Appropriations
            Subchapter III. Limitations, Exceptions, and Penalties (Refs & Annos)

31 U.S.C.A. § 1341

§ 1341. Limitations on expending and obligating amounts

Currentness

**(a)(1)** Except as specified in this subchapter or any other provision of law, an officer or employee of the United States Government or of the District of Columbia government may not--

**(A)** make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation;

**(B)** involve either government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law;

**(C)** make or authorize an expenditure or obligation of funds required to be sequestered under section 252 of the Balanced Budget and Emergency Deficit Control Act of 1985; or

**(D)** involve either government in a contract or obligation for the payment of money required to be sequestered under section 252 of the Balanced Budget and Emergency Deficit Control Act of 1985.

**(2)** This subsection does not apply to a corporation getting amounts to make loans (except paid in capital amounts) without legal liability of the United States Government.

**(b)** An article to be used by an executive department in the District of Columbia that could be bought out of an appropriation made to a regular contingent fund of the department may not be bought out of another amount available for obligation.

**(c)(1)** In this subsection--

**(A)** the term "covered lapse in appropriations" means any lapse in appropriations that begins on or after December 22, 2018;

**(B)** the term "District of Columbia public employer" means--

**(i)** the District of Columbia Courts;

TD_0001172

**(ii)** the Public Defender Service for the District of Columbia; or

**(iii)** the District of Columbia government;

**(C)** the term "employee" includes an officer; and

**(D)** the term "excepted employee" means an excepted employee or an employee performing emergency work, as such terms are defined by the Office of Personnel Management or the appropriate District of Columbia public employer, as applicable.

**(2)** Each employee of the United States Government or of a District of Columbia public employer furloughed as a result of a covered lapse in appropriations shall be paid for the period of the lapse in appropriations, and each excepted employee who is required to perform work during a covered lapse in appropriations shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates, and subject to the enactment of appropriations Acts ending the lapse.

**(3)** During a covered lapse in appropriations, each excepted employee who is required to perform work shall be entitled to use leave under chapter 63 of title 5, or any other applicable law governing the use of leave by the excepted employee, for which compensation shall be paid at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates.

## CREDIT(S)

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 923; Pub.L. 101-508, Title XIII, § 13213(a), Nov. 5, 1990, 104 Stat. 1388-621; Pub.L. 116-1, § 2, Jan. 16, 2019, 133 Stat. 3; Pub.L. 116-5, § 103, Jan. 25, 2019, 133 Stat. 11.)

Notes of Decisions (140)

31 U.S.C.A. § 1341, 31 USCA § 1341
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001173

Case 1:25-cv-00457-CKK    Document 48-13    Filed 10/29/25    Page 156 of 224

United States Code Annotated
    Title 31. Money and Finance (Refs & Annos)
        Subtitle II. The Budget Process
            Chapter 13. Appropriations
                Subchapter III. Limitations, Exceptions, and Penalties (Refs & Annos)

31 U.S.C.A. § 1342

§ 1342. Limitation on voluntary services

Currentness

An officer or employee of the United States Government or of the District of Columbia government may not accept voluntary services for either government or employ personal services exceeding that authorized by law except for emergencies involving the safety of human life or the protection of property. This section does not apply to a corporation getting amounts to make loans (except paid in capital amounts) without legal liability of the United States Government. As used in this section, the term "emergencies involving the safety of human life or the protection of property" does not include ongoing, regular functions of government the suspension of which would not imminently threaten the safety of human life or the protection of property.

**CREDIT(S)**

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 923; Pub.L. 101-508, Title XIII, § 13213(b), Nov. 5, 1990, 104 Stat. 1388-621; Pub.L. 104-92, Title III, § 310(a), Jan. 6, 1996, 110 Stat. 20.)

Notes of Decisions (23)

31 U.S.C.A. § 1342, 31 USCA § 1342
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001174

United States Code Annotated
    Title 31. Money and Finance (Refs & Annos)
        Subtitle II. The Budget Process
            Chapter 13. Appropriations
                Subchapter III. Limitations, Exceptions, and Penalties (Refs & Annos)

31 U.S.C.A. § 1343

§ 1343. Buying and leasing passenger motor vehicles and aircraft

Currentness

**(a)** In this section, buying a passenger motor vehicle or aircraft includes a transfer of the vehicle or aircraft between agencies.

**(b)** An appropriation may be expended to buy or lease passenger motor vehicles only--

**(1)** for the use of--

**(A)** the President;

**(B)** the secretaries to the President; or

**(C)** the heads of executive departments listed in section 101 of title 5; or

**(2)** as specifically provided by law.

**(c)(1)** Except as specifically provided by law, an agency may use an appropriation to buy a passenger motor vehicle (except a bus or ambulance) only at a total cost (except costs required only for transportation) that--

**(A)** includes the price of systems and equipment the Administrator of General Services decides is incorporated customarily in standard passenger motor vehicles completely equipped for ordinary operation;

**(B)** includes the value of a vehicle used in exchange;

**(C)** is not more than the maximum price established by the agency having authority under law to establish a maximum price; and

**(D)** is not more than the amount specified in a law.

TD_0001175

**(2)** Additional systems and equipment may be bought for a passenger motor vehicle if the Administrator decides the purchase is appropriate. The price of additional systems or equipment is not included in deciding whether the cost of the vehicle is within a maximum price specified in a law.

**(d)** An appropriation (except an appropriation for the armed forces) is available to buy, maintain, or operate an aircraft only if the appropriation specifically authorizes the purchase, maintenance, or operation.

**(e)** This section does not apply to--

**(1)** buying, maintaining, and repairing passenger motor vehicles by the United States Capitol Police;

**(2)** buying, maintaining, and repairing vehicles necessary to carry out projects to improve, preserve, and protect rivers and harbors; or

**(3)** leasing, maintaining, repairing, or operating motor passenger vehicles necessary in the field work of the Department of Agriculture.

### CREDIT(S)

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 924.)

31 U.S.C.A. § 1343, 31 USCA § 1343
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001176

United States Code Annotated
   Title 31. Money and Finance (Refs & Annos)
      Subtitle II. The Budget Process
         Chapter 13. Appropriations
            Subchapter III. Limitations, Exceptions, and Penalties (Refs & Annos)

31 U.S.C.A. § 1344

§ 1344. Passenger carrier use

Currentness

**(a)(1)** Funds available to a Federal agency, by appropriation or otherwise, may be expended by the Federal agency for the maintenance, operation, or repair of any passenger carrier only to the extent that such carrier is used to provide transportation for official purposes. Notwithstanding any other provision of law, transporting any individual other than the individuals listed in subsections (b) and (c) of this section between such individual's residence and such individual's place of employment is not transportation for an official purpose.

**(2)** For purposes of paragraph (1), transportation between the residence of an officer or employee and various locations that is--

  **(A)** required for the performance of field work, in accordance with regulations prescribed pursuant to subsection (e) of this section, or

  **(B)** essential for the safe and efficient performance of intelligence, counterintelligence, protective services, or criminal law enforcement duties, or transportation of federally owned canines associated with force protection duties of any part of the intelligence community (as defined in section 3 of the National Security Act of 1947 (50 U.S.C. 3003)),

is transportation for an official purpose, when approved in writing by the head of the Federal agency.

**(3)** For purposes of paragraph (1), the transportation of an individual between such individual's place of employment and a mass transit facility pursuant to subsection (g) is transportation for an official purpose.

**(b)** A passenger carrier may be used to transport between residence and place of employment the following officers and employees of Federal agencies:

  **(1)(A)** the President and the Vice President;

  **(B)** no more than 6 officers or employees in the Executive Office of the President, as designated by the President; and

  **(C)** no more than 10 additional officers or employees of Federal agencies, as designated by the President;

**(2)** the Chief Justice and the Associate Justices of the Supreme Court;

**(3)(A)** officers compensated at Level I of the Executive Schedule pursuant to section 5312 of title 5; and

**(B)** a single principal deputy to an officer described in subclause (A) of this clause, when a determination is made by such officer that such transportation is appropriate;

**(4)** principal diplomatic and consular officials abroad, and the United States Ambassador to the United Nations;

**(5)** the Deputy Secretary of Defense and Under Secretaries of Defense, the Secretary of the Air Force, the Secretary of the Army, the Secretary of the Navy, the members and Vice Chairman of the Joint Chiefs of Staff, and the Commandant of the Coast Guard;

**(6)** the Director of the Central Intelligence Agency, the Director of the Federal Bureau of Investigation, Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives [1] the Administrator of the Drug Enforcement Administration, and the Administrator of the National Aeronautics and Space Administration;

**(7)** the Chairman of the Board of Governors of the Federal Reserve System;

**(8)** the Comptroller General of the United States and the Postmaster General of the United States; and

**(9)** an officer or employee with regard to whom the head of a Federal agency makes a determination, in accordance with subsection (d) of this section and with regulations prescribed pursuant to paragraph (1) of subsection (e), that highly unusual circumstances present a clear and present danger, that an emergency exists, or that other compelling operational considerations make such transportation essential to the conduct of official business.

Except as provided in paragraph (2) of subsection (d), any authorization made pursuant to clause (9) of this subsection to permit the use of a passenger carrier to transport an officer or employee between residence and place of employment shall be effective for not more than 15 calendar days.

**(c)** A passenger carrier may be used to transport between residence and place of employment any person for whom protection is specifically authorized pursuant to section 3056(a) of title 18 or for whom transportation is authorized pursuant to section 28 of the State Department Basic Authorities Act of 1956, section 2637 of title 10, or section 8(a)(1) of the Central Intelligence Agency Act of 1949.

**(d)(1)** Any determination made under subsection (b)(9) of this section shall be in writing and shall include the name and title of the officer or employee affected, the reason for such determination, and the duration of the authorization for such officer or employee to use a passenger carrier for transportation between residence and place of employment.

TD_0001178

**(2)** If a clear and present danger, an emergency, or a compelling operational consideration described in subsection (b)(9) of this section extends or may extend for a period in excess of 15 calendar days, the head of the Federal agency shall determine whether an authorization under such paragraph shall be extended in excess of 15 calendar days for a period of not more than 90 additional calendar days. Determinations made under this paragraph may be reviewed by the head of such agency at the end of each such period, and, where appropriate, a subsequent determination may be made whether such danger, emergency, or consideration continues to exist and whether an additional extension, not to exceed 90 calendar days, may be authorized. Determinations made under this paragraph shall be in accordance with regulations prescribed pursuant to paragraph (1) of subsection (e).

**(3)** The authority to make designations under subsection (b)(1) of this section and to make determinations pursuant to subsections (a)(2) and (b)(3)(B) and (9) of this section and pursuant to paragraph (2) of this subsection may not be delegated, except that, with respect to the Executive Office of the President, the President may delegate the authority of the President under subsection (b)(9) of this section to an officer in the Executive Office of the President. No designation or determination under this section may be made solely or principally for the comfort or convenience of the officer or employee.

**(4)** Notification of each designation or determination made under subsection (b)(1), (3)(B), and (9) of this section and under paragraph (2) of this subsection, including the name and title of the officer or employee affected, the reason for any determination under subsection (b)(9), and the expected duration of any authorization under subsection (b)(9), shall be transmitted promptly to the Committee on Government Operations of the House of Representatives and the Committee on Governmental Affairs of the Senate.

**(e)(1)** Not later than March 15, 1987, the Administrator of General Services, after consultation with the Comptroller General, the Director of the Office of Management and Budget, and the Director of the Administrative Office of the United States Courts, shall promulgate regulations governing the heads of all Federal agencies in making the determinations authorized by subsections (a)(2)(A), (b)(9), and (d)(2) of this section. Such regulations shall specify that the comfort and convenience of an officer or employee is not sufficient justification for authorizations of transportation under this section.

**(2)** In promulgating regulations under paragraph (1) of this subsection, the Administrator of General Services shall provide criteria defining the term "field work" for purposes of subsection (a)(2)(A) of this section. Such criteria shall ensure that transportation between an employee's residence and the location of the field work will be authorized only to the extent that such transportation will substantially increase the efficiency and economy of the Government.

**(f)** Each Federal agency shall maintain logs or other records necessary to establish the official purpose for Government transportation provided between an individual's residence and such individual's place of employment pursuant to this section.

**(g)(1)** If and to the extent that the head of a Federal agency, in his or her sole discretion, deems it appropriate, a passenger carrier may be used to transport an officer or employee of a Federal agency between the officer's or employee's place of employment and a mass transit facility (whether or not publicly owned) in accordance with succeeding provisions of this subsection.

**(2)** Notwithstanding section 1343, a Federal agency that provides transportation services under this subsection (including by passenger carrier) may absorb the costs of such services using any funds available to such agency, whether by appropriation or otherwise.

TD_0001179

**(3)** In carrying out this subsection, a Federal agency, to the maximum extent practicable and consistent with sound budget policy, should--

**(A)** use alternative fuel vehicles for the provision of transportation services;

**(B)** to the extent consistent with the purposes of this subsection, provide transportation services in a manner that does not result in additional gross income for Federal income tax purposes; and

**(C)** coordinate with other Federal agencies to share, and otherwise avoid duplication of, transportation services provided under this subsection.

**(4)** For purposes of any determination under chapter 81 of title 5 or chapter 171 of title 28, an individual shall not be considered to be in the "performance of duty" or "acting within the scope of his or her office or employment" by virtue of the fact that such individual is receiving transportation services under this subsection. Nor shall any time during which an individual uses such services be considered when calculating the hours of work or employment for that individual for purposes of title 5 of the United States Code, including chapter 55 of that title.

**(5)(A)** The Administrator of General Services, after consultation with the appropriate agencies, shall prescribe any regulations necessary to carry out this subsection.

**(B)** Transportation services under this subsection shall be subject neither to the last sentence of subsection (d)(3) nor to any regulations under the last sentence of subsection (e)(1).

**(6)** In this subsection, the term "passenger carrier" means a passenger motor vehicle or similar means of transportation that is owned, leased, or provided pursuant to contract by the United States Government.

**(h)** As used in this section--

**(1)** the term "passenger carrier" means a passenger motor vehicle, aircraft, boat, ship, or other similar means of transportation that is owned or leased by the United States Government; and

**(2)** the term "Federal agency" means--

**(A)** a department--

**(i)** including independent establishments, other agencies, and wholly owned Government corporations; but

**(ii)** not including the Senate, House of Representatives, or Architect of the Capitol, or the officers or employees thereof;

TD_0001180

**(B)** an Executive department (as such term is defined in section 101 of title 5);

**(C)** a military department (as such term is defined in section 102 of title 5);

**(D)** a Government corporation (as such term is defined in section 103(1) of title 5);

**(E)** a Government controlled corporation (as such term is defined in section 103(2) of title 5);

**(F)** a mixed-ownership Government corporation (as such term is defined in section 9101(2) of this title);

**(G)** any establishment in the executive branch of the Government (including the Executive Office of the President);

**(H)** any independent regulatory agency (including an independent regulatory agency specified in section 3502(10) of title 44);

**(I)** the Smithsonian Institution; and

**(J)** any nonappropriated fund instrumentality of the United States,

except that such term does not include the government of the District of Columbia.

**(i)** Notwithstanding section 410(a) of title 39, this section applies to the United States Postal Service.

## CREDIT(S)

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 924; Pub.L. 99-550, § 1(a), Oct. 27, 1986, 100 Stat. 3067; Pub.L. 100-180, Div. A, Title XIII, § 1314(d)(2), Dec. 4, 1987, 101 Stat. 1176; Pub.L. 100-202, § 101(a) [Title IV, § 407], Dec. 22, 1987, 101 Stat. 1329, 1329-26; Pub.L. 101-510, Div. A, Title III, § 326(b), Nov. 5, 1990, 104 Stat. 1531; Pub.L. 103-272, § 4(f)(2), July 5, 1994, 108 Stat. 1363; Pub.L. 104-91, Title I, § 101(a), Jan. 6, 1996, 110 Stat. 11, amended Pub.L. 104-99, Title II, § 211, Jan. 26, 1996, 110 Stat. 37; Pub.L. 108-7, Div. K, Title IV, § 423, Feb. 20, 2003, 117 Stat. 526; Pub.L. 108-447, Div. B, Title I, § 117, Dec. 8, 2004, 118 Stat. 2870; Pub.L. 109-59, Title III, § 3049(b)(1), (2), Aug. 10, 2005, 119 Stat. 1712, 1713; Pub.L. 111-350, § 5(h)(4), Jan. 4, 2011, 124 Stat. 3849; Pub.L. 117-103, Div. X, Title III, § 306, Mar. 15, 2022, 136 Stat. 966.)

Notes of Decisions (12)

## Footnotes

1        So in original. Probably should be followed by a comma.

31 U.S.C.A. § 1344, 31 USCA § 1344
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document**                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
   Title 31. Money and Finance (Refs & Annos)
      Subtitle II. The Budget Process
         Chapter 13. Appropriations
            Subchapter III. Limitations, Exceptions, and Penalties (Refs & Annos)

31 U.S.C.A. § 1345

§ 1345. Expenses of meetings

Currentness

Except as specifically provided by law, an appropriation may not be used for travel, transportation, and subsistence expenses for a meeting. This section does not prohibit--

**(1)** an agency from paying the expenses of an officer or employee of the United States Government carrying out an official duty; and

**(2)** the Secretary of Agriculture from paying necessary expenses for a meeting called by the Secretary for 4-H Boys and Girls Clubs as part of the cooperative extension work of the Department of Agriculture.

**CREDIT(S)**

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 925.)

Notes of Decisions (1)

31 U.S.C.A. § 1345, 31 USCA § 1345
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 31. Money and Finance (Refs & Annos)
    Subtitle II. The Budget Process
      Chapter 13. Appropriations
        Subchapter III. Limitations, Exceptions, and Penalties (Refs & Annos)

31 U.S.C.A. § 1346

§ 1346. Commissions, councils, boards, and interagency and similar groups

Currentness

**(a)** Except as provided in this section--

**(1)** public money and appropriations are not available to pay--

**(A)** the pay or expenses of a commission, council, board, or similar group, or a member of that group;

**(B)** expenses related to the work or the results of work or action of that group; or

**(C)** for the detail or cost of personal services of an officer or employee from an executive agency in connection with that group; and

**(2)** an accounting or disbursing official, absent a special appropriation to pay the account or charge, may not allow or pay an account or charge related to that group.

**(b)** Appropriations of an executive agency are available for the expenses of an interagency group conducting activities of interest common to executive agencies when the group includes a representative of the agency. The representatives receive no additional pay because of membership in the group. An officer or employee of an executive agency not a representative of the group may not receive additional pay for providing services for the group.

**(c)** Subject to section 1347 of this title, this section does not apply to--

**(1)** commissions, councils, boards, or similar groups authorized by law;

**(2)** courts-martial or courts of inquiry of the armed forces; or

**(3)** the contingent fund related to foreign relations at the disposal of the President.

TD_0001184

Case 1:25-cv-00457-CKK    Document 48-13    Filed 10/29/25    Page 167 of 224

**CREDIT(S)**

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 925.)

Notes of Decisions (12)

31 U.S.C.A. § 1346, 31 USCA § 1346
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

End of Document        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001185

United States Code Annotated
  Title 31. Money and Finance (Refs & Annos)
    Subtitle II. The Budget Process
      Chapter 13. Appropriations
        Subchapter III. Limitations, Exceptions, and Penalties (Refs & Annos)

31 U.S.C.A. § 1347

§ 1347. Appropriations or authorizations required for agencies in existence for more than one year

Currentness

**(a)** An agency in existence for more than one year may not use amounts otherwise available for obligation to pay its expenses without a specific appropriation or specific authorization by law. If the principal duties and powers of the agency are substantially the same as or similar to the duties and powers of an agency established by executive order, the agency established later is deemed to have been in existence from the date the agency established by the order came into existence.

**(b)** Except as specifically authorized by law, another agency may not use amounts available for obligation to pay expenses to carry out duties and powers substantially the same as or similar to the principal duties and powers of an agency that is prohibited from using amounts under this section.

**CREDIT(S)**

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 925.)

31 U.S.C.A. § 1347, 31 USCA § 1347
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001186

United States Code Annotated
   Title 31. Money and Finance (Refs & Annos)
      Subtitle II. The Budget Process
         Chapter 13. Appropriations
            Subchapter III. Limitations, Exceptions, and Penalties (Refs & Annos)

31 U.S.C.A. § 1348

§ 1348. Telephone installation and charges

Currentness

**(a)(1)** Except as provided in this section, appropriations are not available to install telephones in private residences or for tolls or other charges for telephone service from private residences.

**(2)** Under regulations of the Secretary of State, appropriations may be used to install and pay for the use of telephones in residences owned or leased by the United States Government in foreign countries for the use of the Foreign Service.

**(b)** Under regulations prescribed by the Secretary of the Army on recommendation of the Chief of Engineers, not more than $30,000 may be expended each fiscal year to install and use in private residences telephones required for official business in constructing and operating locks and dams for navigation, flood control, and related water uses.

**(c)** Under regulations prescribed by the Secretary of Defense, funds appropriated to the Department of Defense are available to install, repair, and maintain telephone wiring in residences owned or leased by the United States Government and, if necessary for national defense purposes, in other private residences.

**CREDIT(S)**

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 926; Pub.L. 98-407, Title VIII, § 811(a), Aug. 28, 1984, 98 Stat. 1523; Pub.L. 104-201, Div. A, Title XVII, § 1721, Sept. 23, 1996, 110 Stat. 2758.)

Notes of Decisions (6)

31 U.S.C.A. § 1348, 31 USCA § 1348
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001187

United States Code Annotated
  Title 31. Money and Finance (Refs & Annos)
    Subtitle II. The Budget Process
      Chapter 13. Appropriations
        Subchapter III. Limitations, Exceptions, and Penalties (Refs & Annos)

31 U.S.C.A. § 1349

§ 1349. Adverse personnel actions

Currentness

**(a)** An officer or employee of the United States Government or of the District of Columbia government violating section 1341(a) or 1342 of this title shall be subject to appropriate administrative discipline including, when circumstances warrant, suspension from duty without pay or removal from office.

**(b)** An officer or employee who willfully uses or authorizes the use of a passenger motor vehicle or aircraft owned or leased by the United States Government (except for an official purpose authorized by section 1344 of this title) or otherwise violates section 1344 shall be suspended without pay by the head of the agency. The officer or employee shall be suspended for at least one month, and when circumstances warrant, for a longer period or summarily removed from office.

**CREDIT(S)**

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 926.)

Notes of Decisions (21)

31 U.S.C.A. § 1349, 31 USCA § 1349
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
    Title 31. Money and Finance (Refs & Annos)
        Subtitle II. The Budget Process
            Chapter 13. Appropriations
                Subchapter III. Limitations, Exceptions, and Penalties (Refs & Annos)

31 U.S.C.A. § 1350

§ 1350. Criminal penalty

Currentness

An officer or employee of the United States Government or of the District of Columbia government knowingly and willfully violating section 1341(a) or 1342 of this title shall be fined not more than $5,000, imprisoned for not more than 2 years, or both.

**CREDIT(S)**

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 926.)

31 U.S.C.A. § 1350, 31 USCA § 1350
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001189

United States Code Annotated
  Title 31. Money and Finance (Refs & Annos)
    Subtitle II. The Budget Process
      Chapter 13. Appropriations
        Subchapter III. Limitations, Exceptions, and Penalties (Refs & Annos)

31 U.S.C.A. § 1351

§ 1351. Reports on violations

Currentness

If an officer or employee of an executive agency or an officer or employee of the District of Columbia government violates section 1341(a) or 1342 of this title, the head of the agency or the Mayor of the District of Columbia, as the case may be, shall report immediately to the President and Congress all relevant facts and a statement of actions taken. A copy of each report shall also be transmitted to the Comptroller General on the same date the report is transmitted to the President and Congress.

**CREDIT(S)**

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 926; Pub.L. 108-447, Div. G, Title I, § 1401(a), Dec. 8, 2004, 118 Stat. 3192.)

Notes of Decisions (1)

31 U.S.C.A. § 1351, 31 USCA § 1351
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
   Title 31. Money and Finance (Refs & Annos)
      Subtitle II. The Budget Process
         Chapter 13. Appropriations
            Subchapter III. Limitations, Exceptions, and Penalties (Refs & Annos)

31 U.S.C.A. § 1352

§ 1352. Limitation on use of appropriated funds to influence certain Federal contracting and financial transactions

Currentness

**(a)(1)** None of the funds appropriated by any Act may be expended by the recipient of a Federal contract, grant, loan, or cooperative agreement to pay any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any Federal action described in paragraph (2) of this subsection.

**(2)** The prohibition in paragraph (1) of this subsection applies with respect to the following Federal actions:

  **(A)** The awarding of any Federal contract.

  **(B)** The making of any Federal grant.

  **(C)** The making of any Federal loan.

  **(D)** The entering into of any cooperative agreement.

  **(E)** The extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

**(b)(1)** Each person who requests or receives a Federal contract, grant, loan, or cooperative agreement from an agency or requests or receives from an agency a commitment providing for the United States to insure or guarantee a loan shall file with that agency, in accordance with paragraph (4) of this subsection--

  **(A)** a written declaration described in paragraph (2) or (3) of this subsection, as the case may be; and

  **(B)** copies of all declarations received by such person under paragraph (5).

**(2)** A declaration filed by a person pursuant to paragraph (1)(A) of this subsection in connection with a Federal contract, grant, loan, or cooperative agreement shall contain--

TD_0001191

**(A)** the name of any registrant under the Lobbying Disclosure Act of 1995 who has made lobbying contacts on behalf of the person with respect to that Federal contract, grant, loan, or cooperative agreement; and

**(B)** a certification that the person making the declaration has not made, and will not make, any payment prohibited by subsection (a).

**(3)** A declaration filed by a person pursuant to paragraph (1)(A) of this subsection in connection with a commitment providing for the United States to insure or guarantee a loan shall contain the name of any registrant under the Lobbying Disclosure Act of 1995 who has made lobbying contacts on behalf of the person in connection with that loan insurance or guarantee.

**(4)** A person referred to in paragraph (1)(A) of this subsection shall file a declaration referred to in that paragraph--

**(A)** with each submission by such person that initiates agency consideration of such person for award of a Federal contract, grant, loan, or cooperative agreement, or for grant of a commitment providing for the United States to insure or guarantee a loan;

**(B)** upon receipt by such person of a Federal contract, grant, loan, or cooperative agreement or of a commitment providing for the United States to insure or guarantee a loan, unless such person previously filed a declaration with respect to such contract, grant, loan, cooperative agreement or commitment pursuant to clause (A); and

**(C)** at the end of each calendar quarter in which there occurs any event that materially affects the accuracy of the information contained in any declaration previously filed by such person in connection with such Federal contract, grant, loan, cooperative agreement, loan insurance commitment, or loan guaranty commitment.

**(5)** Any person who requests or receives from a person referred to in paragraph (1) of this subsection a subcontract under a Federal contract, a subgrant or contract under a Federal grant, a contract or subcontract to carry out any purpose for which a particular Federal loan is made, or a contract under a Federal cooperative agreement shall be required to file with the person referred to in such paragraph a written declaration referred to in clause (A) of such paragraph.

**(6)** The Director of the Office of Management and Budget, after consulting with the Secretary of the Senate and the Clerk of the House of Representatives, shall issue guidance for agency implementation of, and compliance with, the requirements of this section.

**(c)(1)** Any person who makes an expenditure prohibited by subsection (a) of this section shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such expenditure.

**(2)(A)** Any person who fails to file or amend a declaration required to be filed or amended under subsection (b) of this section shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

TD_0001192

Case 1:25-cv-00457-CKK    Document 48-13    Filed 10/29/25    Page 175 of 224

**(B)** A filing of a declaration of a declaration amendment on or after the date on which an administrative action for the imposition of a civil penalty under this subsection is commenced does not prevent the imposition of such civil penalty for a failure occurring before that date. For the purposes of this subparagraph, an administrative action is commenced with respect to a failure when an investigating official determines in writing to commence an investigation of an allegation of such failure.

**(3)** Sections 3803 (except for subsection (c)), 3804, 3805, 3806, 3807, 3808, and 3812 of this title shall be applied, consistent with the requirements of this section, to the imposition and collection of civil penalties under this subsection.

**(4)** An imposition of a civil penalty under this subsection does not prevent the United States from seeking any other remedy that the United States may have for the same conduct that is the basis for the imposition of such civil penalty.

**(d)(1)(A)** Subsection (a)(1) of this section does not apply in the case of a payment of reasonable compensation made to an officer or employee of a person requesting or receiving a Federal contract, grant, loan, or cooperative agreement to the extent that the payment is for agency and legislative liaison activities not directly related to a Federal action referred to in subsection (a)(2) of this section.

**(B)** Subsection (a)(1) of this section does not prohibit any reasonable payment to a person in connection with, or any payment of reasonable compensation to an officer or employee of a person requesting or receiving, a Federal contract, grant, loan, or cooperative agreement or an extension, continuation, renewal, amendment, or modification of a Federal contract, grant, loan, or cooperative agreement if the payment is for professional or technical services rendered directly in the preparation, submission, or negotiation of any bid, proposal, or application for that Federal contract, grant, loan, or cooperative agreement or for meeting requirements imposed by or pursuant to law as a condition for receiving that Federal contract, grant, loan, or cooperative agreement.

**(C)** Nothing in this paragraph shall be construed as permitting the use of appropriated funds for making any payment prohibited in or pursuant to any other provision of law.

**(2)** The reporting requirement in subsection (b) of this section shall not apply to any person with respect to--

**(A)** payments of reasonable compensation made to regularly employed officers or employees of a person requesting or receiving a Federal contract, grant, loan, or cooperative agreement or a commitment providing for the United States to insure or guarantee a loan;

**(B)** a request for or receipt of a contract (other than a contract referred to in clause (C)), grant, cooperative agreement, subcontract (other than a subcontract referred to in clause (C)), or subgrant that does not exceed $100,000; and

**(C)** a request for or receipt of a loan, or a commitment providing for the United States to insure or guarantee a loan, that does not exceed $150,000, or the single family maximum mortgage limit for affected programs, whichever is greater, including a contract or subcontract to carry out any purpose for which such a loan is made.

TD_0001193

**(e)** The Secretary of Defense may exempt a Federal action described in subsection (a)(2) from the prohibition in subsection (a)(1) whenever the Secretary determines, in writing, that such an exemption is in the national interest. The Secretary shall transmit a copy of each such written exemption to Congress immediately after making such determination.

**(f)** The head of each Federal agency shall take such actions as are necessary to ensure that the provisions of this section are vigorously implemented and enforced in such agency.

**(g)** As used in this section:

**(1)** The term "recipient", with respect to funds received in connection with a Federal contract, grant, loan, or cooperative agreement--

    **(A)** includes the contractors, subcontractors, or subgrantees (as the case may be) of the recipient; but

    **(B)** does not include an Indian tribe, tribal organization, or any other Indian organization eligible to receive Federal contracts, grants, cooperative agreements, or loans from an agency but only with respect to expenditures that are by such tribe or organization for purposes specified in subsection (a) and are permitted by other Federal law.

**(2)** The term "agency" has the same meaning provided for such term in section 552(f) of title 5, and includes a Government corporation, as defined in section 9101(1) of this title.

**(3)** The term "person"--

    **(A)** includes an individual, corporation, company, association, authority, firm, partnership, society, State, and local government, regardless of whether such entity is operated for profit or not for profit; but

    **(B)** does not include an Indian tribe, tribal organization, or any other Indian organization eligible to receive Federal contracts, grants, cooperative agreements, or loans from an agency but only with respect to expenditures by such tribe or organization that are made for purposes specified in subsection (a) and are permitted by other Federal law.

**(4)** The term "State" means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, a territory or possession of the United States, an agency or instrumentality of a State, and a multi-State, regional, or interstate entity having governmental duties and powers.

**(5)** The term "local government" means a unit of government in a State and, if chartered, established, or otherwise recognized by a State for the performance of a governmental duty, the following entities:

    **(A)** A local public authority.

TD_0001194

**(B)** A special district.

**(C)** An intrastate district.

**(D)** A council of governments.

**(E)** A sponsor group representative organization.

**(F)** Any other instrumentality of a local government.

**(6)(A)** The terms "Federal contract", "Federal grant", "Federal cooperative agreement" mean, respectively--

**(i)** a contract awarded by an agency;

**(ii)** a grant made by an agency or a direct appropriation made by law to any person; and

**(iii)** a cooperative agreement entered into by an agency.

**(B)** Such terms do not include--

**(i)** direct United States cash assistance to an individual;

**(ii)** a loan;

**(iii)** loan insurance; or

**(iv)** a loan guaranty.

**(7)** The term "Federal loan" means a loan made by an agency. Such term does not include loan insurance or a loan guaranty.

**(8)** The term "reasonable payment" means, with respect to professional and other technical services, a payment in an amount that is consistent with the amount normally paid for such services in the private sector.

**(9)** The term "reasonable compensation" means, with respect to a regularly employed officer or employee of any person, compensation that is consistent with the normal compensation for such officer or employee for work that is not furnished to, not funded by, or not furnished in cooperation with the Federal Government.

TD_0001195

**(10)** The term "regularly employed", with respect to an officer or employee of a person requesting or receiving a Federal contract, grant, loan, or cooperative agreement or a commitment providing for the United States to insure or guarantee a loan, means an officer or employee who is employed by such person for at least 130 working days within one year immediately preceding the date of the submission that initiates agency consideration of such person for receipt of such contract, grant, loan, cooperative agreement, loan insurance commitment, or loan guaranty commitment.

**(11)** The terms "Indian tribe" and "tribal organization" have the meaning provided in section 4 of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450b). [1]

## CREDIT(S)

(Added Pub.L. 101-121, Title III, § 319(a)(1), Oct. 23, 1989, 103 Stat. 750; amended Pub.L. 101-512, Title III, § 320, Nov. 5, 1990, 104 Stat. 1977; Pub.L. 103-272, § 4(f)(1)(F), July 5, 1994, 108 Stat. 1362; Pub.L. 104-65, § 10, Dec. 19, 1995, 109 Stat. 700; Pub.L. 104-66, Title III, § 3001(b), Dec. 21, 1995, 109 Stat. 734; Pub.L. 104-106, Div. A, Title X, § 1064(c), Div. D, Title XLIII, § 4301(a)(2), Feb. 10, 1996, 110 Stat. 445, 656.)

---

### Footnotes

1    Reclassified to 25 U.S.C.A. § 5304. See References in Text note set out for this section.

31 U.S.C.A. § 1352, 31 USCA § 1352
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document**                         © 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001196

United States Code Annotated
   Title 31. Money and Finance (Refs & Annos)
      Subtitle II. The Budget Process
         Chapter 13. Appropriations
            Subchapter III. Limitations, Exceptions, and Penalties (Refs & Annos)

31 U.S.C.A. § 1353

§ 1353. Acceptance of travel and related expenses from non-Federal sources

Currentness

**(a)** Notwithstanding any other provision of law, the Administrator of General Services, in consultation with the Director of the Office of Government Ethics, shall prescribe by regulation the conditions under which an agency in the executive branch (including an independent agency) may accept payment, or authorize an employee of such agency to accept payment on the agency's behalf, from non-Federal sources for travel, subsistence, and related expenses with respect to attendance of the employee (or the spouse of such employee) at any meeting or similar function relating to the official duties of the employee. Any cash payment so accepted shall be credited to the appropriation applicable to such expenses. In the case of a payment in kind so accepted, a pro rata reduction shall be made in any entitlement of the employee to payment from the Government for such expenses.

**(b)** Except as provided in this section or section 4111 or 7342 of title 5, an agency or employee may not accept payment for expenses referred to in subsection (a). An employee who accepts any payment in violation of the preceding sentence--

   **(1)** may be required, in addition to any penalty provided by law, to repay, for deposit in the general fund of the Treasury, an amount equal to the amount of the payment so accepted; and

   **(2)** in the case of a repayment under paragraph (1), shall not be entitled to any payment from the Government for such expenses.

**(c)** As used in this section--

   **(1)** the term "executive branch" means all executive agencies (as such term is defined in section 105 of title 5); and

   **(2)** the term "employee in the executive branch" means--

      **(A)** an appointed officer or employee in the executive branch; and

      **(B)** an expert or consultant in the executive branch, under section 3109 of title 5; and

   **(3)** the term "payment" means a payment or reimbursement, in cash or in kind.

TD_0001197

**(d)(1)** The head of each agency of the executive branch shall, in the manner provided in paragraph (2), submit to the Director of the Office of Government Ethics reports of payments of more than $250 accepted under this section with respect to employees of the agency. The Director shall make such reports available for public inspection and copying.

**(2)** The reports required by paragraph (1) shall, with respect to each payment--

**(A)** specify the amount and method of payment, the name of the person making the payment, the name of the employee, the nature of the meeting or similar function, the time and place of travel, the nature of the expenses, and such other information as the Administrator of General Services may prescribe by regulation under subsection (a);

**(B)** be submitted not later than May 31 of each year with respect to payments in the preceding period beginning on October 1 and ending on March 31; and

**(C)** be submitted not later than November 30 of each year with respect to payments in the preceding period beginning on April 1 and ending on September 30.

### CREDIT(S)

(Added Pub.L. 101-194, Title III, § 302(a), Nov. 30, 1989, 103 Stat. 1745, § 1352; renumbered § 1353 and amended Pub.L. 101-280, § 4(b)(1), (c), May 4, 1990, 104 Stat. 157, 158.)

31 U.S.C.A. § 1353, 31 USCA § 1353
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2025 Thomson Reuters. No claim to original U.S. Government Works.   2

TD_0001198

United States Code Annotated
  Title 31. Money and Finance (Refs & Annos)
    Subtitle II. The Budget Process
      Chapter 13. Appropriations
        Subchapter III. Limitations, Exceptions, and Penalties (Refs & Annos)

31 U.S.C.A. § 1354

§ 1354. Limitation on use of appropriated funds for contracts with
entities not meeting veterans' employment reporting requirements

Currentness

**(a)(1)** Subject to paragraph (2), no agency may obligate or expend funds appropriated for the agency for a fiscal year to enter into a contract described in section 4212(a) of title 38 with a contractor from which a report was required under section 4212(d) of that title with respect to the preceding fiscal year if such contractor did not submit such report.

**(2)** Paragraph (1) shall cease to apply with respect to a contractor otherwise covered by that paragraph on the date on which the contractor submits the report required by such section 4212(d) for the fiscal year concerned.

**(b)** The Secretary of Labor shall make available in a database a list of the contractors that have complied with the provisions of such section 4212(d).

## CREDIT(S)

(Added Pub.L. 105-339, § 7(b)(1), Oct. 31, 1998, 112 Stat. 3189.)

Notes of Decisions (2)

31 U.S.C.A. § 1354, 31 USCA § 1354
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
   Title 31. Money and Finance (Refs & Annos)
      Subtitle II. The Budget Process
         Chapter 13. Appropriations
            Subchapter III. Limitations, Exceptions, and Penalties (Refs & Annos)

31 U.S.C.A. § 1355

§ 1355. Prohibition on use of funds for portraits

Currentness

**(a)** No funds appropriated or otherwise made available to the Federal Government may be used to pay for the painting of a portrait of an officer or employee of the Federal Government, including the President, the Vice President, a Member of Congress, the head of an executive agency, or the head of an office of the legislative branch.

**(b)** In this section--

   **(1)** the term "executive agency" has the meaning given the term in section 133 of title 41; and

   **(2)** the term "Member of Congress" includes a Delegate or Resident Commissioner to Congress.

**CREDIT(S)**

(Added Pub.L. 115-158, § 2(a), Mar. 27, 2018, 132 Stat. 1242.)

31 U.S.C.A. § 1355, 31 USCA § 1355
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document**　　　　　　　　　　　　　　　© 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001200

United States Code Annotated
   Title 31. Money and Finance (Refs & Annos)
      Subtitle II. The Budget Process
         Chapter 15. Appropriation Accounting
           Subchapter I. General

31 U.S.C.A. § 1501

§ 1501. Documentary evidence requirement for Government obligations

Currentness

**(a)** An amount shall be recorded as an obligation of the United States Government only when supported by documentary evidence of--

**(1)** a binding agreement between an agency and another person (including an agency) that is--

**(A)** in writing, in a way and form, and for a purpose authorized by law; and

**(B)** executed before the end of the period of availability for obligation of the appropriation or fund used for specific goods to be delivered, real property to be bought or leased, or work or service to be provided;

**(2)** a loan agreement showing the amount and terms of repayment;

**(3)** an order required by law to be placed with an agency;

**(4)** an order issued under a law authorizing purchases without advertising--

**(A)** when necessary because of a public exigency;

**(B)** for perishable subsistence supplies; or

**(C)** within specific monetary limits;

**(5)** a grant or subsidy payable--

**(A)** from appropriations made for payment of, or contributions to, amounts required to be paid in specific amounts fixed by law or under formulas prescribed by law;

TD_0001201

**(B)** under an agreement authorized by law; or

**(C)** under plans approved consistent with and authorized by law;

**(6)** a liability that may result from pending litigation;

**(7)** employment or services of persons or expenses of travel under law;

**(8)** services provided by public utilities; or

**(9)** other legal liability of the Government against an available appropriation or fund.

**(b)** A statement of obligations provided to Congress or a committee of Congress by an agency shall include only those amounts that are obligations consistent with subsection (a) of this section.

<div align="center">CREDIT(S)</div>

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 927.)

Notes of Decisions (15)

31 U.S.C.A. § 1501, 31 USCA § 1501
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001202

United States Code Annotated
  Title 31. Money and Finance (Refs & Annos)
    Subtitle II. The Budget Process
      Chapter 15. Appropriation Accounting
        Subchapter I. General

31 U.S.C.A. § 1502

§ 1502. Balances available

Currentness

**(a)** The balance of an appropriation or fund limited for obligation to a definite period is available only for payment of expenses properly incurred during the period of availability or to complete contracts properly made within that period of availability and obligated consistent with section 1501 of this title. However, the appropriation or fund is not available for expenditure for a period beyond the period otherwise authorized by law.

**(b)** A provision of law requiring that the balance of an appropriation or fund be returned to the general fund of the Treasury at the end of a definite period does not affect the status of lawsuits or rights of action involving the right to an amount payable from the balance.

**CREDIT(S)**

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 928.)

Notes of Decisions (2)

31 U.S.C.A. § 1502, 31 USCA § 1502
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001203

United States Code Annotated
  Title 31. Money and Finance (Refs & Annos)
    Subtitle II. The Budget Process
      Chapter 15. Appropriation Accounting
        Subchapter I. General

31 U.S.C.A. § 1503

§ 1503. Comptroller General reports of amounts for which no accounting is made

Currentness

The Comptroller General shall make a special report each year to Congress on recommendations for changes in laws, that the Comptroller General believes may be in the public interest, about amounts--

**(1)** for which no accounting is made to the Comptroller General; and

**(2)** that are in--

**(A)** accounts of the United States Government; or

**(B)** the custody of an officer or employee of the Government if the Government is financially concerned.

**CREDIT(S)**

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 928.)

31 U.S.C.A. § 1503, 31 USCA § 1503
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001204

Case 1:25-cv-00457-CKK    Document 48-13    Filed 10/29/25    Page 187 of 224

T. 31, Subt. II, Ch. 15, Subch. II, Refs & Annos, 31 USCA Subt. II, Ch. 15, Subch. II,...

United States Code Annotated
  Title 31. Money and Finance
    Subtitle II. The Budget Process
      Chapter 15. Appropriation Accounting
        Subchapter II. Apportionment

31 U.S.C.A. Subt. II, Ch. 15, Subch. II, Refs & Annos
Currentness

31 U.S.C.A. Subt. II, Ch. 15, Subch. II, Refs & Annos, 31 USCA Subt. II, Ch. 15, Subch. II, Refs & Annos
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
   Title 31. Money and Finance (Refs & Annos)
     Subtitle II. The Budget Process
       Chapter 15. Appropriation Accounting
         Subchapter II. Apportionment (Refs & Annos)

31 U.S.C.A. § 1511

§ 1511. Definition and application

Currentness

**(a)** In this subchapter, "appropriations" means--

**(1)** appropriated amounts;

**(2)** funds; and

**(3)** authority to make obligations by contract before appropriations.

**(b)** This subchapter does not apply to--

**(1)** amounts (except amounts for administrative expenses) available--

**(A)** for price support and surplus removal of agricultural commodities; and

**(B)** under section 32 of the Act of August 24, 1935 (7 U.S.C. 612c);

**(2)** a corporation getting amounts to make loans (except paid in capital amounts) without legal liability on the part of the United States Government; and

**(3)** the Senate, the House of Representatives, a committee of Congress, a member, officer, employee, or office of either House of Congress, or the Office of the Architect of the Capitol or an officer or employee of that Office.

**CREDIT(S)**

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 928.)

31 U.S.C.A. § 1511, 31 USCA § 1511
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

TD_0001206

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001207

United States Code Annotated
  Title 31. Money and Finance (Refs & Annos)
    Subtitle II. The Budget Process
      Chapter 15. Appropriation Accounting
        Subchapter II. Apportionment (Refs & Annos)

31 U.S.C.A. § 1512

§ 1512. Apportionment and reserves

Currentness

**(a)** Except as provided in this subchapter, an appropriation available for obligation for a definite period shall be apportioned to prevent obligation or expenditure at a rate that would indicate a necessity for a deficiency or supplemental appropriation for the period. An appropriation for an indefinite period and authority to make obligations by contract before appropriations shall be apportioned to achieve the most effective and economical use. An apportionment may be reapportioned under this section.

**(b)(1)** An appropriation subject to apportionment is apportioned by--

**(A)** months, calendar quarters, operating seasons, or other time periods;

**(B)** activities, functions, projects, or objects; or

**(C)** a combination of the ways referred to in clauses (A) and (B) of this paragraph.

**(2)** The official designated in section 1513 of this title to make apportionments shall apportion an appropriation under paragraph (1) of this subsection as the official considers appropriate. Except as specified by the official, an amount apportioned is available for obligation under the terms of the appropriation on a cumulative basis unless reapportioned.

**(c)(1)** In apportioning or reapportioning an appropriation, a reserve may be established only--

**(A)** to provide for contingencies;

**(B)** to achieve savings made possible by or through changes in requirements or greater efficiency of operations; or

**(C)** as specifically provided by law.

**(2)** A reserve established under this subsection may be changed as necessary to carry out the scope and objectives of the appropriation concerned. When an official designated in section 1513 of this title to make apportionments decides that an amount reserved will not be required to carry out the objectives and scope of the appropriation concerned, the official shall recommend

TD_0001208

Case 1:25-cv-00457-CKK    Document 48-13    Filed 10/29/25    Page 191 of 224

the rescission of the amount in the way provided in chapter 11 of this title for appropriation requests. Reserves established under this section shall be reported to Congress as provided in the Impoundment Control Act of 1974 (2 U.S.C. 681 et seq.).

**(d)** An apportionment or a reapportionment shall be reviewed at least 4 times a year by the official designated in section 1513 of this title to make apportionments.

## CREDIT(S)

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 929.)

Notes of Decisions (2)

31 U.S.C.A. § 1512, 31 USCA § 1512
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
   Title 31. Money and Finance (Refs & Annos)
      Subtitle II. The Budget Process
         Chapter 15. Appropriation Accounting
            Subchapter II. Apportionment (Refs & Annos)

31 U.S.C.A. § 1513

§ 1513. Officials controlling apportionments

Currentness

**(a)** The official having administrative control of an appropriation available to the legislative branch, the judicial branch, the United States International Trade Commission, or the District of Columbia government that is required to be apportioned under section 1512 of this title shall apportion the appropriation in writing. An appropriation shall be apportioned not later than the later of the following:

   **(1)** 30 days before the beginning of the fiscal year for which the appropriation is available; or

   **(2)** 30 days after the date of enactment of the law by which the appropriation is made available.

**(b)(1)** The President shall apportion in writing an appropriation available to an executive agency (except the Commission) that is required to be apportioned under section 1512 of this title. The head of each executive agency to which the appropriation is available shall submit to the President information required for the apportionment in the form and the way and at the time specified by the President. The information shall be submitted not later than the later of the following:

   **(A)** 40 days before the beginning of the fiscal year for which the appropriation is available; or

   **(B)** 15 days after the date of enactment of the law by which the appropriation is made available.

**(2)** The President shall notify the head of the executive agency of the action taken in apportioning the appropriation under paragraph (1) of this subsection not later than the later of the following:

   **(A)** 20 days before the beginning of the fiscal year for which the appropriation is available; or

   **(B)** 30 days after the date of enactment of the law by which the appropriation is made available.

**(c)** By the first day of each fiscal year, the head of each executive department of the United States Government shall apportion among the major organizational units of the department the maximum amount to be expended by each unit during the fiscal year out of each contingent fund appropriated for the entire year for the department. Each amount may be changed during the fiscal year only by written direction of the head of the department. The direction shall state the reasons for the change.

TD_0001210

**(d)** An appropriation apportioned under this subchapter may be divided and subdivided administratively within the limits of the apportionment.

**(e)** This section does not affect the initiation and operation of agricultural price support programs.

## CREDIT(S)

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 930.)

Notes of Decisions (11)

31 U.S.C.A. § 1513, 31 USCA § 1513
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document**                                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001211

United States Code Annotated
    Title 31. Money and Finance (Refs & Annos)
        Subtitle II. The Budget Process
            Chapter 15. Appropriation Accounting
                Subchapter II. Apportionment (Refs & Annos)

31 U.S.C.A. § 1514

§ 1514. Administrative division of apportionments

Currentness

**(a)** The official having administrative control of an appropriation available to the legislative branch, the judicial branch, the United States International Trade Commission, or the District of Columbia government, and, subject to the approval of the President, the head of each executive agency (except the Commission) shall prescribe by regulation a system of administrative control not inconsistent with accounting procedures prescribed under law. The system shall be designed to--

    **(1)** restrict obligations or expenditures from each appropriation to the amount of apportionments or reapportionments of the appropriation; and

    **(2)** enable the official or the head of the executive agency to fix responsibility for an obligation or expenditure exceeding an apportionment or reapportionment.

**(b)** To have a simplified system for administratively dividing appropriations, the head of each executive agency (except the Commission) shall work toward the objective of financing each operating unit, at the highest practical level, from not more than one administrative division for each appropriation affecting the unit.

**CREDIT(S)**

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 930.)

31 U.S.C.A. § 1514, 31 USCA § 1514
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 31. Money and Finance (Refs & Annos)
    Subtitle II. The Budget Process
      Chapter 15. Appropriation Accounting
        Subchapter II. Apportionment (Refs & Annos)

31 U.S.C.A. § 1515

§ 1515. Authorized apportionments necessitating deficiency or supplemental appropriations

Currentness

**(a)** An appropriation required to be apportioned under section 1512 of this title may be apportioned on a basis that indicates the need for a deficiency or supplemental appropriation to the extent necessary to permit payment of such pay increases as may be granted pursuant to law to civilian officers and employees (including prevailing rate employees whose pay is fixed and adjusted under subchapter IV of chapter 53 of title 5) and to retired and active military personnel.

**(b)(1)** Except as provided in subsection (a) of this section, an official may make, and the head of an executive agency may request, an apportionment under section 1512 of this title that would indicate a necessity for a deficiency or supplemental appropriation only when the official or agency head decides that the action is required because of--

  **(A)** a law enacted after submission to Congress of the estimates for an appropriation that requires an expenditure beyond administrative control; or

  **(B)** an emergency involving the safety of human life, the protection of property, or the immediate welfare of individuals when an appropriation that would allow the United States Government to pay, or contribute to, amounts required to be paid to individuals in specific amounts fixed by law or under formulas prescribed by law, is insufficient.

**(2)** If an official making an apportionment decides that an apportionment would indicate a necessity for a deficiency or supplemental appropriation, the official shall submit immediately a detailed report of the facts to Congress. The report shall be referred to in submitting a proposed deficiency or supplemental appropriation.

### CREDIT(S)

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 931; Pub.L. 100-202, § 105, Dec. 22, 1987, 101 Stat. 1329-433.)

31 U.S.C.A. § 1515, 31 USCA § 1515
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001213

United States Code Annotated
   Title 31. Money and Finance (Refs & Annos)
      Subtitle II. The Budget Process
         Chapter 15. Appropriation Accounting
            Subchapter II. Apportionment (Refs & Annos)

31 U.S.C.A. § 1516

§ 1516. Exemptions

Currentness

An official designated in section 1513 of this title to make apportionments may exempt from apportionment--

**(1)** a trust fund or working fund if an expenditure from the fund has no significant effect on the financial operations of the United States Government;

**(2)** a working capital fund or a revolving fund established for intragovernmental operations;

**(3)** receipts from industrial and power operations available under law; and

**(4)** appropriations made specifically for--

  **(A)** interest on, or retirement of, the public debt;

  **(B)** payment of claims, judgments, refunds, and drawbacks;

  **(C)** items the President decides are of a confidential nature;

  **(D)** payment under a law requiring payment of the total amount of the appropriation to a designated payee; and

  **(E)** grants to the States under the Social Security Act (42 U.S.C. 301 et seq.).

**CREDIT(S)**

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 931.)

31 U.S.C.A. § 1516, 31 USCA § 1516
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

TD_0001214

Case 1:25-cv-00457-CKK    Document 48-13    Filed 10/29/25    Page 197 of 224

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001215

United States Code Annotated
    Title 31. Money and Finance (Refs & Annos)
        Subtitle II. The Budget Process
            Chapter 15. Appropriation Accounting
                Subchapter II. Apportionment (Refs & Annos)

31 U.S.C.A. § 1517

§ 1517. Prohibited obligations and expenditures

Currentness

**(a)** An officer or employee of the United States Government or of the District of Columbia government may not make or authorize an expenditure or obligation exceeding--

**(1)** an apportionment; or

**(2)** the amount permitted by regulations prescribed under section 1514(a) of this title.

**(b)** If an officer or employee of an executive agency or of the District of Columbia government violates subsection (a) of this section, the head of the executive agency or the Mayor of the District of Columbia, as the case may be, shall report immediately to the President and Congress all relevant facts and a statement of actions taken. A copy of each report shall also be transmitted to the Comptroller General on the same date the report is transmitted to the President and Congress.

**CREDIT(S)**

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 932; Pub.L. 108-447, Div. G, Title I, § 1401(b), Dec. 8, 2004, 118 Stat. 3192.)

Notes of Decisions (1)

31 U.S.C.A. § 1517, 31 USCA § 1517
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

**End of Document**                                                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
   Title 31. Money and Finance (Refs & Annos)
      Subtitle II. The Budget Process
         Chapter 15. Appropriation Accounting
            Subchapter II. Apportionment (Refs & Annos)

31 U.S.C.A. § 1518

§ 1518. Adverse personnel actions

Currentness

An officer or employee of the United States Government or of the District of Columbia government violating  section 1517(a) of this title shall be subject to appropriate administrative discipline including, when circumstances warrant, suspension from duty without pay or removal from office.

**CREDIT(S)**

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 932.)

31 U.S.C.A. § 1518, 31 USCA § 1518
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

End of Document            © 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
　　Title 31. Money and Finance (Refs & Annos)
　　　　Subtitle II. The Budget Process
　　　　　　Chapter 15. Appropriation Accounting
　　　　　　　　Subchapter II. Apportionment (Refs & Annos)

31 U.S.C.A. § 1519

§ 1519. Criminal penalty

Currentness

An officer or employee of the United States Government or of the District of Columbia government knowingly and willfully violating section 1517(a) of this title shall be fined not more than $5,000, imprisoned for not more than 2 years, or both.

**CREDIT(S)**

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 932.)

31 U.S.C.A. § 1519, 31 USCA § 1519
Current through P.L. 119-36. Some statute sections may be more current, see credits for details.

End of Document　　　　　　　　　　　　　　　　© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00457-CKK    Document 48-13    Filed 10/29/25    Page 201 of 224

Code of Federal Regulations
  Title 26. Internal Revenue
    Chapter I. Internal Revenue Service, Department of the Treasury
      Subchapter F. Procedure and Administration
        Part 301. Procedure and Administration (Refs & Annos)
          Information and Returns
            Returns and Records
              Miscellaneous Provisions

26 C.F.R. § 301.6103(p)(4)–1, Treas. Reg. § 301.6103(p)(4)–1

§ 301.6103(p)(4)–1 Procedures relating to safeguards for returns or return information.

Currentness

For security guidelines and other safeguards for protecting returns and return information, see guidance published by the Internal Revenue Service. For procedures for administrative review of a determination that an authorized recipient has failed to safeguard returns or return information, see § 301.6103(p)(7)–1.

**Credits**
[T.D. 9445, 74 FR 6830, Feb. 11, 2009]

SOURCE: 32 FR 15241, Nov. 3, 1967; T.D. 9610, 78 FR 5994, Jan. 28, 2013; T.D. 9628, 78 FR 49369, Aug. 14, 2013; T.D. 9679, 79 FR 41891, July 18, 2014; T.D. 9687, 79 FR 47264, Aug. 12, 2014; T.D. 9764, 81 FR 25334, April 28, 2016; T.D. 9768, 81 FR 27322, May 6, 2016; T.D. 9780, 81 FR 51797, Aug. 5, 2016; T.D. 9844, 84 FR 6530, Feb. 27, 2019; T.D. 9849, 84 FR 9239, March 14, 2019; T.D. 9860, 84 FR 24382, May 28, 2019; T.D. 9922, 85 FR 72074, Nov. 12, 2020; T.D. 9940, 85 FR 83447, Dec. 22, 2020; T.D. 9964, 87 FR 50244, Aug. 16, 2022; T.D. 9969, 87 FR 75489, Dec. 9, 2022; T.D. 9972, 88 FR 11766, Feb. 23, 2023; T.D. 9988, 89 FR 17595, March 11, 2024; T.D. 9995, 37774, May 6, 2024; T.D. 10011, 89 FR 87785, Nov. 5, 2024; T.D. 10013, 89 FR 93175, Nov. 26, 2024; T.D. 10017, 89 FR 104422, Dec. 23, 2024; T.D. 10026, 90 FR 3021, Jan. 14, 2025; T.D. 10030, 90 FR 3662, Jan. 15, 2025, unless otherwise noted.

AUTHORITY: 26 U.S.C. 7805.; Section 301.1474–1 also issued under 26 U.S.C. 1474(f).; Section 301.6011–2 also issued under 26 U.S.C. 6011(e).; Section 301.6011–3 also issued under 26 U.S.C. 6011.; Section 301.6011–5 also issued under 26 U.S.C. 6011.; Section 301.6011–6 also issued under 26 U.S.C. 6011(a).; Section 301.6011–7 also issued under 26 U.S.C. 6011(e).; Section 301.6011–10 also issued under 26 U.S.C. 6011.; Section 301.6011–11 also issued under 26 U.S.C. 6011.; Section 301.6011–12 also issued under 26 U.S.C. 6011.; Section 301.6011–13 also issued under 26 U.S.C. 6011.; Section 301.6011–14 also issued under 26 U.S.C. 6011.; Section 301.6011–15 also issued under 26 U.S.C. 6011.; Section 301.6012–2 also issued under 26 U.S.C. 6012.; Section 301.6033–4 also issued under 26 U.S.C. 6033.; Section 301.6036–1 also issued under 26 U.S.C. 6036.; Section 301.6037–2 also issued under 26 U.S.C. 6037.; Section 301.6039E–1 also issued under 26 U.S.C. 6039E.; Section 301.6050M–1 also issued under 26 U.S.C. 6050M.; Section 301.6057–3 also issued under 26 U.S.C. 6011 and 6057.; Section 301.6058–2 also issued under 26 U.S.C. 6011 and 6058.; Section 301.6059–2 also issued under 26 U.S.C. 6011 and 6059.; Section 301.6061–1 also issued under 26 U.S.C. 6061.; Section 301.6081–2 also issued under 26 U.S.C. 6081(a).; Section 301.6103(c)–1 also issued under 26 U.S.C. 6103(c).; Section 301.6103(h)(4)–1 also issued under 26 U.S.C. 6103(h)(4) and 26 U.S.C. 6103(q).; Section 301.6103(j)(1)–1 also issued under 26 U.S.C. 6103(j)(1) and 6103(q).; Section 301.6103(j)(5)–1 also issued under 26 U.S.C. 6103(j)(5).; Section 301.6103(k)(6)–1 also issued under 26 U.S.C. 6103(k)(6).; Section 301.6103(k)(6)–

TD_0001219

Case 1:25-cv-00457-CKK    Document 48-13    Filed 10/29/25    Page 202 of 224

§ 301.6103(p)(4)–1 Procedures relating to safeguards for..., 26 C.F.R. §...

1T also issued under 26 U.S.C. 6103(k)(6).; Section 301.6103(k)(9)–1 also issued under 26 U.S.C. 6103(k)(9) and 26 U.S.C. 6103(q).; Section 301.6103(l)–1 also issued under 26 U.S.C. 6103(q).; Section 301.6103(l)(14)–1 also issued under 26 U.S.C. 6103(l)(14).; Section 301.6103(l)(21)–(1) also issued under 26 U.S.C. 6103(l)(21) and 6103(q).; Section 301.6103(m)–1 also issued under 26 U.S.C. 6103(q).; Section 301.6103(n)–1 also issued under 26 U.S.C. 6103(n).; Section 301.6103(n)–2 also issued under 26 U.S.C. 6103(n).; Section 301.6103(n)–2 also issued under 26 U.S.C. 6103(q).; Section 301.6103(p)(2)(B)–1 also issued under 26 U.S.C. 6103(p)(2).; Section 301.6103(p)(2)(B)–1T also issued under 26 U.S.C. 6103(p)(2).; Sections 301.6103(p)(4)–1 and 301.6103(p)(7)–1T also issued under 26 U.S.C. 6103(p)(4) and (7) and (q).; Section 301.6104(a)–6(d) is also issued under 5 U.S.C. 552.; Section 301.6104(b)–1(d)(4) is also issued under 5 U.S.C. 552.; Section 301.6104(c)–1 also issued under 26 U.S.C. 6104(c).; Section 301.6104(d)–1(d)(3)(i) is also issued under 5 U.S.C. 552.; Section 301.6104(d)–2 also issued under 26 U.S.C. 6104(d)(3).; Section 301.6104(d)–3 also issued under 26 U.S.C. 6104(d)(3).; Section 301.6104(d)–4 also issued under 26 U.S.C. 6104(e)(3).; Section 301.6104(d)–5 also issued under 26 U.S.C. 6104(e)(3).; Section 301.6109–1 also issued under 26 U.S.C. 6109 (a), (c), and (d).

Section 301.6109–3 also issued under 26 U.S.C. 6109.; Section 301.6111–1T also issued under 26 U.S.C. 6111.; Section 301.6111–2T also issued under 26 U.S.C. 6111(f)(4).; Section 301.6111–3 also issued under 26 U.S.C. 6111.; Section 301.6111–3T also issued under 26 U.S.C. 6111.; Section 301.6112–1T also issued under 26 U.S.C. 6112.; Section 301.6114–1 also issued under 26 U.S.C. 6114.; Section 301.6213–2 also issued under 26 U.S.C. 6213.; Section 301.6221(a)–1 also issued under 26 U.S.C. 6221.; Section 301.6221(b)–1 also issued under sections 6221 and 6241.; Section 301.6222–1 also issued under 26 U.S.C. 6222 and 6223.; Section 301.6222(a)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6222(a)–2T also issued under 26 U.S.C. 6230(k).; Section 301.6222(b)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6222(b)–2T also issued under 26 U.S.C. 6230(k).; Section 301.6222(b)–3T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6223(a)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6223(a)–2T also issued under 26 U.S.C. 6230(k).; Section 301.6223(b)–1T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6223(b)–2T also issued under 26 U.S.C. 6230(k).; Section 301.6223(c)–1T also issued under 26 U.S.C. 6223(c) and 6230 (i) and (k).; Section 301.6223(e)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6223(e)–2T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6223(f)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6223(g)–1T also issued under 26 U.S.C. 6223(g) and 6230 (i) and (k).; Section 301.6223(h)–1T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6224(a)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6224(b)–1T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6224(c)–1T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6224(c)–2T also issued under 26 U.S.C. 6230(k).; Section 301.6224(c)–3T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6225–1 also issued under 26 U.S.C. 6223 and 6225.; Section 301.6225–2 also issued under 26 U.S.C. 6225.; Section 301.6225–3 also issued under 26 U.S.C. 6225.; Section 301.6226–1 also issued under 26 U.S.C. 6223 and 6226.; Section 301.6226–2 also issued under 26 U.S.C. 6226.; Section 301.6226–3 also issued under 26 U.S.C. 6226.; Section 301.6226(a)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6226(b)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6226(e)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6226(f)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6227–1 also issued under 26 U.S.C. 6223 and 6227.; Section 301.6227–2 also issued under 26 U.S.C. 6227.; Section 301.6227–3 also issued under 26 U.S.C. 6227.; Section 301.6229(c)(2)–1 is also issued under 26 U.S.C. 6230(k).; Section 301.6229(c)(2)–1T is also issued under 26 U.S.C. § 6230(k).; Section 301.6231–1 also issued under 26 U.S.C. 6231.; Section 301.6231(a)(6)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6231(a)(7)–1 also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6231(a)(7)–2 also issued under 26 U.S.C. 6230 (i) and (k).

Section 301.6231(a)(12)–1T also issued under 26 U.S.C. 6230(k) and 6231(a)(12).; Section 301.6231(c)–1 also issued under 26 U.S.C. 6231(c)(1) and (3).; Section 301.6231(c)–2 also issued under 26 U.S.C. 6231(c)(1) and (3).; Section 301.6231(c)–3T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(c)–4T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(c)–5T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(c)–6T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(c)–7T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(c)–8T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(d)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6231(e)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6231(e)–2T also issued under 26 U.S.C. 6230(k).; Section 301.6231(f)–1T also issued under 26 U.S.C. 6230 (i) and (k) and 6231(f).; Section 301.6232–1 also issued under 26 U.S.C. 6232.; Section 301.6233–1T also issued under 26 U.S.C. 6230(k) and 6233.; Section 301.6233(a)–1 also issued under 26 U.S.C.

TD_0001220

Case 1:25-cv-00457-CKK    Document 48-13    Filed 10/29/25    Page 203 of 224

§ 301.6103(p)(4)–1 Procedures relating to safeguards for..., 26 C.F.R. §...

6233.; Section 301.6233(b)–1 also issued under 26 U.S.C. 6233.; Section 301.6234–1 also issued under 26 U.S.C. 6234.; Section 301.6235–1 also issued under 26 U.S.C. 6235.; Section 301.6241–1 also issued under sections 48D(d), 6241, and 6417.; Section 301.6241–2 also issued under 26 U.S.C. 6241.; Section 301.6241–3 also issued under 26 U.S.C. 6241.; Section 301.6241–4 also issued under 26 U.S.C. 6241.; Section 301.6241–5 also issued under 26 U.S.C. 6241.; Section 301.6241–6 also issued under 26 U.S.C. 6241.; Section 301.6241–7 also issued under sections 48D(d), 6241, and 6417.; Section 301.6311–2 also issued under 26 U.S.C. 6311.; Section 301.6323(f)–(1)(c) also issued under 26 U.S.C. 6323(f)(3).; Section 301.6325–1T also issued under 26 U.S.C. 6326.; Section 301.6335–1 also issued under 26 U.S.C. 6335(e)(2).; Section 301.6343–1 also issued under 26 U.S.C. 6343.; Section 301.6343–2 also issued under 26 U.S.C. 6343.; Section 301.6402–2(g) also issued under 26 U.S.C. 6402(n).; Section 301.6402–3 also issued under 95 Stat. 357 amending 88 Stat. 2351.; Section 301.6402–7 also issued under 26 U.S.C. 6402(i) and 6411(c).; Section 301.6404–2 also issued under 26 U.S.C. 6404.; Section 301.6404–3 also issued under 26 U.S.C. 6404(f)(3).; Section 301.6621–1 also issued under 26 U.S.C. 6230(k).; Section 301.6689–1 also issued under 26 U.S.C. 6689(a), 26 U.S.C. 6227(d), and 26 U.S.C. 6241(11).; Section 301.6689–1T also issued under 26 U.S.C. 6689(a).; Section 301.6708–1 also issued under 26 U.S.C. 6708.; Section 301.6721–1 also issued under 26 U.S.C. 6011 and 6721.; Section 301.6751(b)–1(a)(4) also issued under 26 U.S.C. 6751(b)(1).; Section 301.7216–2, paragraphs (o) and (p) also issued under 26 U.S.C. 7216(b)(3).; Section 301.7502–1 also issued under 26 U.S.C. 7502.; Section 301.7502–2 also issued under 26 U.S.C. 7502.; Section 301.7507–1 also issued under 26 U.S.C. 597.; Section 301.7507–9 also issued under 26 U.S.C. 597.; Section 301.7508–1 also issued under 26 U.S.C. 7508(a)(1)(K).; Section 301.7508A–1 also issued under 26 U.S.C. 7508(a)(1)(K) and 7508A(a).

Section 301.7605–1 also issued under Section 6228(b) of the Technical and Miscellaneous Revenue Act of 1988.; Sections 301.7623–1 through 301.7623–4 also issued under 26 U.S.C. 7623.; Section 301.7624–1 also issued under 26 U.S.C. 7624.; Section 301.7701–2 also issued under 26 U.S.C. 7701.; Sections 301.7701(b)–1 through 301.7701(b)–9 also issued under 26 U.S.C. 7701(b)(11).; Section 301.7701(i)–1(g)(1) also issued under 26 U.S.C. 7701(i)(2)(D).; Section 301.7701(i)–4(b) also issued under 26 U.S.C. 7701(i)(3).; Section 301.7705–1 also issued under 26 U.S.C. 7705(h).; Section 301.7705–2 also issued under 26 U.S.C. 7705(h).; Section 301.7803–2 is also issued under 26 U.S.C. 7803(e).; Section 301.7803–3 is also issued under 26 U.S.C. 7803(e).; Section 301.9000–1 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9000–2 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9000–3 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9000–4 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9000–5 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9000–6 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9100–1T also issued under 26 U.S.C. 6081.; Section 301.9100–2T also issued under 26 U.S.C. 6081.; Section 301.9100–3T also issued under 26 U.S.C. 6081.; Section 301.9100–4T also issued under 26 U.S.C. 168(f)(8)(G).; Section 301.9100–7T also issued under 26 U.S.C. 42, 48, 56, 83, 141, 142, 143, 145, 147, 165, 168, 216, 263, 263A, 448, 453C, 468B, 469, 474, 585, 616, 617, 1059, 2632, 2652, 3121, 4982, 7701; and under the Tax Reform Act of 1986, 100 Stat. 2746, sections 203, 204, 243, 311, 646, 801, 806, 905, 1704, 1801, 1802, and 1804.; Section 301.9100–8 also issued under 26 U.S.C. 1(i)(7), 41(h), 42(b)(2)(A)(ii), 42(d)(3), 42(f)(1), 42(g)(3), 42(i)(2)(B), 42(j)(5)(B), 121(d)(9), 142(i)(2), 165(l), 168(b)(2), 219(g)(4), 245(a)(10), 263A(d)(1), 263A(d)(3)(B), 263A(h), 460(b)(3), 643(g)(2), 831(b)(2)(A), 835(a), 865(f), 865(g)(3), 865(h)(2), 904(g)(10), 2056(b)(7)(c)(ii), 2056A(d), 2523(f)(6)(B), 3127, and 7520(a); the Technical and Miscellaneous Revenue Act of 1988, 102 Stat. 3324 [So in original; probably should read "102 Stat. 3342".], sections 1002(a)(23)(B), 1005(c)(11), 1006(d)(15), 1006(j)(1)(C), 1006(t)(18)(B), 1012(n)(3), 1014(c)(1), 1014(c)(2), 2004(j)(1), 2004(m)(5), 5012(e)(4), 6181(c)(2), and 6277; and under the Tax Reform Act of 1986, 100 Stat. 2746, section 905(a).; Sections 301.9100–9T, 301.9100–10T and 301.9100–11T also issued under 26 U.S.C. 1103 (g) and (h) and 6158(a).; Sections 301.9100–13T, 301.9100–14T and 301.9100–15T also issued under 26 U.S.C. 108(d)(8) and 1017(b)(3)(E).; Section 301.9100–16T also issued under 26 U.S.C. 463(d).; Section 301.9100–22T is also issued under section 1101(g)(4) of Public Law 114–74.

## HISTORICAL NOTES

### Effective and Applicability Notes

February 11, 2009. These regulations apply to all authorized recipients of returns and return information that are subject to the safeguard requirements set forth in § 6103(p)(4) on or after February 11, 2009.

Case 1:25-cv-00457-CKK    Document 48-13    Filed 10/29/25    Page 204 of 224

§ 301.6103(p)(4)–1 Procedures relating to safeguards for..., 26 C.F.R. §...

Current through October 16, 2025, 90 FR 48312. Some sections may be more current. See credits for details.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

TD_0001222

Case 1:25-cv-00457-CKK    Document 48-13    Filed 10/29/25    Page 205 of 224

§ 301.6103(p)(7)–1 Procedures for administrative review of..., 26 C.F.R. §...

Code of Federal Regulations
   Title 26. Internal Revenue
      Chapter I. Internal Revenue Service, Department of the Treasury
         Subchapter F. Procedure and Administration
            Part 301. Procedure and Administration (Refs & Annos)
               Information and Returns
                  Returns and Records
                     Miscellaneous Provisions

26 C.F.R. § 301.6103(p)(7)–1, Treas. Reg. § 301.6103(p)(7)–1

§ 301.6103(p)(7)–1 Procedures for administrative review of a determination
that an authorized recipient has failed to safeguard returns or return information.

Currentness

**(a) In general.** Notwithstanding any section of the Internal Revenue Code (Code), the Internal Revenue Service (IRS) may terminate or suspend disclosure of returns and return information to any authorized recipient specified in section (p)(4) of section 6103, if the IRS determines that:

    **(1)** The authorized recipient has allowed an unauthorized inspection or disclosure of returns or return information and that the authorized recipient has not taken adequate corrective action to prevent the recurrence of an unauthorized inspection or disclosure; or

    **(2)** The authorized recipient does not satisfactorily maintain the safeguards prescribed by section 6103(p)(4), and has made no adequate plan to improve its system to maintain the safeguards satisfactorily.

**(b) Notice of IRS's intention to terminate or suspend disclosure.** Prior to terminating or suspending authorized disclosures, the IRS will notify the authorized recipient in writing of the IRS's preliminary determination and of the IRS's intention to discontinue disclosure of returns and return information to the authorized recipient. Upon so notifying the authorized recipient, the IRS, if it determines that tax administration otherwise would be seriously impaired, may suspend further disclosures of returns and return information to the authorized recipient pending a final determination by the Commissioner or a Deputy Commissioner described in paragraph (d)(2) of this section.

**(c) Authorized recipient's right to appeal.** An authorized recipient shall have 30 days from the date of receipt of a notice described in paragraph (b) of this section to appeal the preliminary determination described in paragraph (b) of this section. The appeal shall be made directly to the Commissioner.

**(d) Procedures for administrative review. (1)** To appeal a preliminary determination described in paragraph (b) of this section, the authorized recipient shall send a written request for a conference to: Commissioner of Internal Revenue (Attention: SE:S:CLD:GLD), 1111 Constitution Avenue, NW., Washington, DC 20224. The request must include a complete description of the authorized recipient's present system of safeguarding returns or return information received by the authorized recipient (and its authorized contractors or agents, if any). The request must state the reason or reasons the authorized recipient believes

Case 1:25-cv-00457-CKK    Document 48-13    Filed 10/29/25    Page 206 of 224

§ 301.6103(p)(7)–1 Procedures for administrative review of..., 26 C.F.R. §...

that such system or practice (including improvements, if any, to such system or practice expected to be made in the near future) is or will be adequate to safeguard returns or return information.

(2) Within 45 days of the receipt of the request made in accordance with the provisions of paragraph (d)(1) of this section, the Commissioner or Deputy Commissioner personally shall hold a conference with representatives of the authorized recipient, after which the Commissioner or Deputy Commissioner shall make a final determination with respect to the appeal.

(e) **Effective/applicability date.** This section applies to all authorized recipients of returns and return information that are subject to the safeguard requirements set forth in section 6103(p)(4) on or after February 11, 2009.

**Credits**
[T.D. 9445, 74 FR 6830, Feb. 11, 2009]

SOURCE: 32 FR 15241, Nov. 3, 1967; T.D. 9610, 78 FR 5994, Jan. 28, 2013; T.D. 9628, 78 FR 49369, Aug. 14, 2013; T.D. 9679, 79 FR 41891, July 18, 2014; T.D. 9687, 79 FR 47264, Aug. 12, 2014; T.D. 9764, 81 FR 25334, April 28, 2016; T.D. 9768, 81 FR 27322, May 6, 2016; T.D. 9780, 81 FR 51797, Aug. 5, 2016; T.D. 9844, 84 FR 6530, Feb. 27, 2019; T.D. 9849, 84 FR 9239, March 14, 2019; T.D. 9860, 84 FR 24382, May 28, 2019; T.D. 9922, 85 FR 72074, Nov. 12, 2020; T.D. 9940, 85 FR 83447, Dec. 22, 2020; T.D. 9964, 87 FR 50244, Aug. 16, 2022; T.D. 9969, 87 FR 75489, Dec. 9, 2022; T.D. 9972, 88 FR 11766, Feb. 23, 2023; T.D. 9988, 89 FR 17595, March 11, 2024; T.D. 9995, 37774, May 6, 2024; T.D. 10011, 89 FR 87785, Nov. 5, 2024; T.D. 10013, 89 FR 93175, Nov. 26, 2024; T.D. 10017, 89 FR 104422, Dec. 23, 2024; T.D. 10026, 90 FR 3021, Jan. 14, 2025; T.D. 10030, 90 FR 3662, Jan. 15, 2025, unless otherwise noted.

AUTHORITY: 26 U.S.C. 7805.; Section 301.1474–1 also issued under 26 U.S.C. 1474(f).; Section 301.6011–2 also issued under 26 U.S.C. 6011(e).; Section 301.6011–3 also issued under 26 U.S.C. 6011.; Section 301.6011–5 also issued under 26 U.S.C. 6011.; Section 301.6011–6 also issued under 26 U.S.C. 6011(a).; Section 301.6011–7 also issued under 26 U.S.C. 6011(e).; Section 301.6011–10 also issued under 26 U.S.C. 6011.; Section 301.6011–11 also issued under 26 U.S.C. 6011.; Section 301.6011–12 also issued under 26 U.S.C. 6011.; Section 301.6011–13 also issued under 26 U.S.C. 6011.; Section 301.6011–14 also issued under 26 U.S.C. 6011.; Section 301.6011–15 also issued under 26 U.S.C. 6011.; Section 301.6012–2 also issued under 26 U.S.C. 6012.; Section 301.6033–4 also issued under 26 U.S.C. 6033.; Section 301.6036–1 also issued under 26 U.S.C. 6036.; Section 301.6037–2 also issued under 26 U.S.C. 6037.; Section 301.6039E–1 also issued under 26 U.S.C. 6039E.; Section 301.6050M–1 also issued under 26 U.S.C. 6050M.; Section 301.6057–3 also issued under 26 U.S.C. 6011 and 6057.; Section 301.6058–2 also issued under 26 U.S.C. 6011 and 6058.; Section 301.6059–2 also issued under 26 U.S.C. 6011 and 6059.; Section 301.6061–1 also issued under 26 U.S.C. 6061.; Section 301.6081–2 also issued under 26 U.S.C. 6081(a).; Section 301.6103(c)–1 also issued under 26 U.S.C. 6103(c).; Section 301.6103(h)(4)–1 also issued under 26 U.S.C. 6103(h)(4) and 26 U.S.C. 6103(q).; Section 301.6103(j)(1)–1 also issued under 26 U.S.C. 6103(j)(1) and 6103(q).; Section 301.6103(j)(5)–1 also issued under 26 U.S.C. 6103(j)(5).; Section 301.6103(k)(6)–1 also issued under 26 U.S.C. 6103(k)(6).; Section 301.6103(k)(6)–1T also issued under 26 U.S.C. 6103(k)(6).; Section 301.6103(k)(9)–1 also issued under 26 U.S.C. 6103(k)(9) and 26 U.S.C. 6103(q).; Section 301.6103(l)–1 also issued under 26 U.S.C. 6103(q).; Section 301.6103(l)(14)–1 also issued under 26 U.S.C. 6103(l)(14).; Section 301.6103(l)(21)–1(1) also issued under 26 U.S.C. 6103(l)(21) and 6103(q).; Section 301.6103(m)–1 also issued under 26 U.S.C. 6103(q).; Section 301.6103(n)–1 also issued under 26 U.S.C. 6103(n).; Section 301.6103(n)–2 also issued under 26 U.S.C. 6103(n).; Section 301.6103(n)–2 also issued under 26 U.S.C. 6103(q).; Section 301.6103(p)(2)(B)–1 also issued under 26 U.S.C. 6103(p)(2).; Section 301.6103(p)(2)(B)–1T also issued under 26 U.S.C. 6103(p)(2).; Sections 301.6103(p)(4)–1 and 301.6103(p)(7)–1T also issued under 26 U.S.C. 6103(p)(4) and (7) and (q).; Section 301.6104(a)–6(d) is also issued under 5 U.S.C. 552.; Section 301.6104(b)–1(d)(4) is also issued under 5 U.S.C. 552.; Section 301.6104(c)–1 also issued under 26 U.S.C. 6104(c).; Section 301.6104(d)–1(d)(3)(i) is also issued under 5 U.S.C. 552.; Section 301.6104(d)–2 also

TD_0001224

Case 1:25-cv-00457-CKK    Document 48-13    Filed 10/29/25    Page 207 of 224

§ 301.6103(p)(7)–1 Procedures for administrative review of..., 26 C.F.R. §...

issued under 26 U.S.C. 6104(d)(3).; Section 301.6104(d)–3 also issued under 26 U.S.C. 6104(d)(3).; Section 301.6104(d)–4 also issued under 26 U.S.C. 6104(e)(3).; Section 301.6104(d)–5 also issued under 26 U.S.C. 6104(e)(3).; Section 301.6109–1 also issued under 26 U.S.C. 6109 (a), (c), and (d).

Section 301.6109–3 also issued under 26 U.S.C. 6109.; Section 301.6111–1T also issued under 26 U.S.C. 6111.; Section 301.6111–2T also issued under 26 U.S.C. 6111(f)(4).; Section 301.6111–3 also issued under 26 U.S.C. 6111.; Section 301.6111–3T also issued under 26 U.S.C. 6111.; Section 301.6112–1T also issued under 26 U.S.C. 6112.; Section 301.6114–1 also issued under 26 U.S.C. 6114.; Section 301.6213–2 also issued under 26 U.S.C. 6213.; Section 301.6221(a)–1 also issued under 26 U.S.C. 6221.; Section 301.6221(b)–1 also issued under sections 6221 and 6241.; Section 301.6222–1 also issued under 26 U.S.C. 6222 and 6223.; Section 301.6222(a)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6222(a)–2T also issued under 26 U.S.C. 6230(k).; Section 301.6222(b)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6222(b)–2T also issued under 26 U.S.C. 6230(k).; Section 301.6222(b)–3T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6223(a)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6223(a)–2T also issued under 26 U.S.C. 6230(k).; Section 301.6223(b)–1T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6223(b)–2T also issued under 26 U.S.C. 6230(k).; Section 301.6223(c)–1T also issued under 26 U.S.C. 6223(c) and 6230 (i) and (k).; Section 301.6223(e)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6223(e)–2T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6223(f)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6223(g)–1T also issued under 26 U.S.C. 6223(g) and 6230 (i) and (k).; Section 301.6223(h)–1T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6224(a)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6224(b)–1T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6224(c)–1T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6224(c)–2T also issued under 26 U.S.C. 6230(k).; Section 301.6224(c)–3T also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6225–1 also issued under 26 U.S.C. 6225.; Section 301.6225–2 also issued under 26 U.S.C. 6223 and 6225.; Section 301.6225–3 also issued under 26 U.S.C. 6225.; Section 301.6226–1 also issued under 26 U.S.C. 6223 and 6226.; Section 301.6226–2 also issued under 26 U.S.C. 6226.; Section 301.6226–3 also issued under 26 U.S.C. 6226.; Section 301.6226(a)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6226(b)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6226(e)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6226(f)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6227–1 also issued under 26 U.S.C. 6223 and 6227.; Section 301.6227–2 also issued under 26 U.S.C. 6227.; Section 301.6227–3 also issued under 26 U.S.C. 6227.; Section 301.6229(c)(2)–1 is also issued under 26 U.S.C. 6230(k).; Section 301.6229(c)(2)–1T is also issued under 26 U.S.C. § 6230(k).; Section 301.6231–1 also issued under 26 U.S.C. 6231.; Section 301.6231(a)(6)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6231(a)(7)–1 also issued under 26 U.S.C. 6230 (i) and (k).; Section 301.6231(a)(7)–2 also issued under 26 U.S.C. 6230 (i) and (k).

Section 301.6231(a)(12)–1T also issued under 26 U.S.C. 6230(k) and 6231(a)(12).; Section 301.6231(c)–1 also issued under 26 U.S.C. 6231(c)(1) and (3).; Section 301.6231(c)–2 also issued under 26 U.S.C. 6231(c)(1) and (3).; Section 301.6231(c)–3T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(c)–4T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(c)–5T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(c)–6T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(c)–7T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(c)–8T also issued under 26 U.S.C. 6230(k) and 6231(c).; Section 301.6231(d)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6231(e)–1T also issued under 26 U.S.C. 6230(k).; Section 301.6231(e)–2T also issued under 26 U.S.C. 6230(k).; Section 301.6231(f)–1T also issued under 26 U.S.C. 6230 (i) and (k) and 6231(f).; Section 301.6232–1 also issued under 26 U.S.C. 6232.; Section 301.6233–1T also issued under 26 U.S.C. 6230(k) and 6233.; Section 301.6233(a)–1 also issued under 26 U.S.C. 6233.; Section 301.6233(b)–1 also issued under 26 U.S.C. 6233.; Section 301.6234–1 also issued under 26 U.S.C. 6234.; Section 301.6235–1 also issued under 26 U.S.C. 6235.; Section 301.6241–1 also issued under sections 48D(d), 6241, and 6417.; Section 301.6241–2 also issued under 26 U.S.C. 6241.; Section 301.6241–3 also issued under 26 U.S.C. 6241.; Section 301.6241–4 also issued under 26 U.S.C. 6241.; Section 301.6241–5 also issued under 26 U.S.C. 6241.; Section 301.6241–6 also issued under 26 U.S.C. 6241.; Section 301.6241–7 also issued under sections 48D(d), 6241, and 6417.; Section 301.6311–2 also issued under 26 U.S.C. 6311.; Section 301.6323(f)–(1)(c) also issued under 26 U.S.C. 6323(f)(3).; Section 301.6325–1T also issued under 26 U.S.C. 6326.; Section 301.6335–1 also issued under 26 U.S.C. 6335(e)(2).; Section 301.6343–1 also issued under 26 U.S.C. 6343.; Section 301.6343–2 also issued under 26 U.S.C. 6343.; Section 301.6402–2(g) also issued under 26 U.S.C. 6402(n).; Section 301.6402–3 also issued under 95 Stat. 357 amending 88 Stat. 2351.; Section 301.6402–7 also issued under 26 U.S.C.

TD_0001225

Case 1:25-cv-00457-CKK    Document 48-13    Filed 10/29/25    Page 208 of 224

§ 301.6103(p)(7)–1 Procedures for administrative review of.., 26 C.F.R. §...

6402(i) and 6411(c).; Section 301.6404–2 also issued under 26 U.S.C. 6404.; Section 301.6404–3 also issued under 26 U.S.C. 6404(f)(3).; Section 301.6621–1 also issued under 26 U.S.C. 6230(k).; Section 301.6689–1 also issued under 26 U.S.C. 6689(a), 26 U.S.C. 6227(d), and 26 U.S.C. 6241(11).; Section 301.6689–1T also issued under 26 U.S.C. 6689(a).; Section 301.6708–1 also issued under 26 U.S.C. 6708.; Section 301.6721–1 also issued under 26 U.S.C. 6011 and 6721.; Section 301.6751(b)–1(a) (4) also issued under 26 U.S.C. 6751(b)(1).; Section 301.7216–2, paragraphs (o) and (p) also issued under 26 U.S.C. 7216(b) (3).; Section 301.7502–1 also issued under 26 U.S.C. 7502.; Section 301.7502–2 also issued under 26 U.S.C. 7502.; Section 301.7507–1 also issued under 26 U.S.C. 597.; Section 301.7507–9 also issued under 26 U.S.C. 597.; Section 301.7508–1 also issued under 26 U.S.C. 7508(a)(1)(K).; Section 301.7508A–1 also issued under 26 U.S.C. 7508(a)(1)(K) and 7508A(a).

Section 301.7605–1 also issued under Section 6228(b) of the Technical and Miscellaneous Revenue Act of 1988.; Sections 301.7623–1 through 301.7623–4 also issued under 26 U.S.C. 7623.; Section 301.7624–1 also issued under 26 U.S.C. 7624.; Section 301.7701–2 also issued under 26 U.S.C. 7701.; Sections 301.7701(b)–1 through 301.7701(b)–9 also issued under 26 U.S.C. 7701(b)(11).; Section 301.7701(i)–1g(p)(1) also issued under 26 U.S.C. 7701(i)(2)(D).; Section 301.7701(i)–4(b) also issued under 26 U.S.C. 7701(i)(3).; Section 301.7705–1 also issued under 26 U.S.C. 7705(h).; Section 301.7705–2 also issued under 26 U.S.C. 7705(h).; Section 301.7803–2 is also issued under 26 U.S.C. 7803(e).; Section 301.7803–3 is also issued under 26 U.S.C. 7803(e).; Section 301.9000–1 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9000–2 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9000–3 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9000–4 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9000–5 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9000–6 also issued under 5 U.S.C. 301 and 26 U.S.C. 6103(q) and 7804.; Section 301.9100–1T also issued under 26 U.S.C. 6081.; Section 301.9100–2T also issued under 26 U.S.C. 6081.; Section 301.9100–3T also issued under 26 U.S.C. 6081.; Section 301.9100–4T also issued under 26 U.S.C. 168(f)(8)(G).; Section 301.9100–7T also issued under 26 U.S.C. 42, 48, 56, 83, 141, 142, 143, 145, 147, 165, 168, 216, 263, 263A, 448, 453C, 468B, 469, 474, 585, 616, 617, 1059, 2632, 2652, 3121, 4982, 7701; and under the Tax Reform Act of 1986, 100 Stat. 2746, sections 203, 204, 243, 311, 646, 801, 806, 905, 1704, 1801, 1802, and 1804.; Section 301.9100–8 also issued under 26 U.S.C. 1(i)(7), 41(h), 42(b)(2)(A)(ii), 42(d)(3), 42(f)(1), 42(g)(3), 42(i)(2)(B), 42(j)(5)(B), 121(d)(9), 142(i) (2), 165(l), 168(b)(2), 219(g)(4), 245(a)(10), 263A(d)(1), 263A(d)(3)(B), 263A(h), 460(b)(3), 643(g)(2), 831(b)(2)(A), 835(a), 865(f), 865(g)(3), 865(h)(2), 904(g)(10), 2056(b)(7)(c)(ii), 2056A(d), 2523(f)(6)(B), 3127, and 7520(a); the Technical and Miscellaneous Revenue Act of 1988, 102 Stat. 3324 [So in original; probably should read "102 Stat. 3342".], sections 1002(a) (23)(B), 1005(c)(11), 1006(d)(15), 1006(j)(1)(C), 1006(t)(18)(B), 1012(n)(3), 1014(c)(1), 1014(c)(2), 2004(m)(5), 5012(e)(4), 6181(c)(2), and 6277; and under the Tax Reform Act of 1986, 100 Stat. 2746, section 905(a).; Sections 301.9100– 9T, 301.9100–10T and 301.9100–11T also issued under 26 U.S.C. 1103 (g) and (h) and 6158(a).; Sections 301.9100–13T, 301.9100–14T and 301.9100–15T also issued under 26 U.S.C. 108(d)(8) and 1017(b)(3)(E).; Section 301.9100–16T also issued under 26 U.S.C. 463(d).; Section 301.9100–22T is also issued under section 1101(g)(4) of Public Law 114–74.

## HISTORICAL NOTES

### Effective and Applicability Notes

February 11, 2009. These regulations apply to all authorized recipients of returns and return information that are subject to the safeguard requirements set forth in § 6103(p)(4) on or after February 11, 2009.

Current through October 16, 2025, 90 FR 48312. Some sections may be more current. See credits for details.

---

**End of Document**                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**CIRCULAR NO. A-130**

**TO THE HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES**

**SUBJECT:**   Managing Information as a Strategic Resource

1.  Introduction
2.  Purpose
3.  Applicability
4.  Basic Considerations
5.  Policy
    a.   Planning and Budgeting
    b.   Governance
    c.   Leadership and Workforce
    d.   IT Investment Management
    e.   Information Management and Access
    f.   Privacy and Information Security
    g.   Electronic Signatures
    h.   Records Management
    i.   Leveraging the Evolving Internet
6.  Government-wide Responsibilities
7.  Effectiveness
8.  Oversight
9.  Authority
10. Definitions
11. Inquiries

**Appendix I: Responsibilities for Protecting and Managing Federal Information Resources**
1.  Introduction
2.  Purpose
3.  General Requirements
4.  Specific Requirements
5.  Government-wide Responsibilities
6.  Discussion of the Major Provisions in the Appendix
7.  Other Requirements
8.  References

**Appendix II: Responsibilities for Managing Personally Identifiable Information**
1.  Purpose
2.  Introduction
3.  Fair Information Practice Principles
4.  Senior Agency Official for Privacy
5.  Agency Privacy Program
6.  Managing PII Collected for Statistical Purposes Under a Pledge of Confidentiality

TD_0001227

## 1. Introduction

Information and information technology (IT) resources are critical to the U.S. social, political, and economic well-being.  They enable the Federal Government to provide quality services to citizens, generate and disseminate knowledge, and facilitate greater productivity and advancement as a Nation.  It is important for the Federal Government to maximize the quality and security of Federal information systems, and to develop and implement uniform and consistent information resources management policies in order to inform the public and improve the productivity, efficiency, and effectiveness of agency programs.  Additionally, as technology evolves, it is important that agencies manage information systems in a way that addresses and mitigates security and privacy risks associated with new information technologies and new information processing capabilities.

These new information technologies and information processing capabilities also provide significant opportunities for agencies.  The deeply embedded nature of IT in all Federal agency missions and business processes, and the emergence of the digital economy, combined with the increasing interconnection of technology and public services, has changed the way we share information, changed the way we use and view technology, and has forever changed Americans' expectations.  To meet expectations of the American people and facilitate innovation, the Federal Government must continue to transform itself to embrace and respond to the digital revolution by developing and maintaining a top-notch workforce and delivering secure, world-class digital services that serve the public.  With IT at the core of nearly everything the Federal Government does, agencies must continually identify ways to apply new and emerging technologies that can fundamentally improve the way Government works and delivers services to the American people in the most cost-effective way possible.  Delivering world-class digital services requires the Federal Government to change its approach to buying, building, and delivering IT and information.  This Circular is designed to help drive the transformation of the Federal Government and the way it builds, buys, and delivers technology by institutionalizing more agile approaches intended to facilitate the rapid adoption of changing technologies, in a way that enhances information security, privacy, and management of information resources across all Federal programs and services.

## 2. Purpose

This Circular[1] establishes general policy for the planning, budgeting, governance, acquisition, and management of Federal information, personnel, equipment, funds, IT resources and supporting infrastructure and services.  The appendices to this Circular also include responsibilities for protecting Federal information resources and managing personally identifiable information (PII).  While it is the responsibility of all agency leadership, program managers, and staff to implement the requirements of this Circular, agency heads have ultimate

---

[1] Although this Circular touches on many specific information resources management issues such as privacy, confidentiality, information quality, dissemination, and statistical policy, those topics are covered more fully in other Office of Management and Budget (OMB) policies, which are available on the OMB website.  Agencies shall implement the policies in this Circular and those in other OMB policy guidance in a mutually consistent fashion.

responsibility for ensuring that the requirements of this Circular are implemented for their agency.

## 3. Applicability

The requirements of this Circular apply to the information resources management activities of all agencies[2] of the Executive Branch of the Federal Government. The requirements of this Circular apply to management activities concerning all information resources in any medium (unless otherwise noted), including paper and electronic information. When an agency acts as a service provider, the ultimate responsibility for compliance with applicable requirements of this Circular is not shifted (to the service provider). Agencies shall describe the responsibilities of service providers in relevant agreements with the service providers. Agencies are not required to apply this Circular to national security systems (defined in 44 U.S.C. § 3552), but are encouraged to do so where appropriate. For national security systems, agencies shall follow applicable statutes, executive orders, directives, and internal agency policies.

## 4. Basic Considerations

Federal information is both a strategic asset and a valuable national resource. It enables the Government to carry out its mission and programs effectively. It provides the public with knowledge of the Government, society, economy, and environment – past, present, and future. Federal information is also a means to ensure the accountability of Government, to manage the Government's operations, and to maintain and enhance the performance of the economy, the public health, and welfare. Appropriate access to Federal information significantly enhances the value of the information and the return on the Nation's investment in its creation. The following considerations reflect these principles:

a. The free flow of information between the Government and the public is essential to a democratic society. Therefore, the management of Federal information resources shall protect the public's right of access to Federal information;

b. Government agencies shall be open, transparent, and accountable to the public. Promoting openness and interoperability, subject to applicable legal and policy requirements, increases operational efficiencies, reduces costs, improves services, supports mission needs, and increases public access to valuable Federal information;

c. Making Federal information discoverable, accessible, and usable can fuel entrepreneurship, innovation, and scientific discovery that improves the lives of Americans, and contributes significantly to national stability and prosperity, and fosters public participation in Government;

d. The Federal Government shall provide members of the public with access to public information on Government websites. This responsibility includes taking affirmative steps to ensure and maximize the quality, objectivity, utility, and integrity of Federal information prior to public dissemination, and maintaining processes for addressing requests for correction of information disseminated publicly;

---

[2] 'Agency' means any executive agency or department, military department, Federal Government corporation, Federal Government-controlled corporation, or other establishment in the Executive Branch of the Federal Government, or any independent regulatory agency.

e.  The open and efficient exchange of scientific and technical Federal information, subject to applicable security and privacy controls and the proprietary rights of others, fosters excellence in scientific research and effective use of Federal research and development resources;

f.  Federal information is a strategic asset subject to risks that must be managed to minimize harm;

g.  Protecting an individual's privacy is of utmost importance.  The Federal Government shall consider and protect an individual's privacy throughout the information life cycle;

h.  While security and privacy are independent and separate disciplines, they are closely related, and it is essential for agencies to take a coordinated approach to identifying and managing security and privacy risks and complying with applicable requirements;

i.  The design of information collections shall be consistent with the intended use of the information, and the need for new information shall be balanced against the burden imposed on the public, the cost of the collection, and any privacy risks;

j.  It is essential that the Federal Government minimize the Federal information collection burden on the public, minimize the costs of its information activities, and maximize the usefulness of Government information; and

k.  Attention to the management of Federal Government records from creation to disposition is an essential component of sound information resources management that promotes public accountability.  Together with records preservation, it helps protect the Federal Government's historical record and safeguards the legal and financial rights of the Federal Government and the public.

## 5.  Policy

Agencies shall establish a comprehensive approach to improve the acquisition and management of their information resources by: performing information resources management activities in an efficient, effective, economical, secure, and privacy-enhancing manner; focusing information resources planning to support their missions; implementing an IT investment management process that links to and supports budget formulation and execution; and rethinking and restructuring the way work is performed before investing in new information systems.

a.  Planning and Budgeting

Agencies shall establish agency-wide planning and budgeting processes in accordance with OMB guidance.  As discussed below, important components of planning and budgeting consist of developing and maintaining a strategy for managing and maintaining their information resources, referred to as the Information Resource Management (IRM) Strategic Plan, as well as ensuring effective collaboration between agency leadership on budget activities.

1)  Strategic Planning

In support of agency missions and business needs, and as part of the agency's overall strategic and performance planning processes, agencies shall develop and maintain an IRM Strategic Plan that describes the agency's technology and information resources

goals, including but not limited to, the processes described in this Circular. The IRM Strategic Plan must support the goals of the Agency Strategic Plan required by the Government Performance and Results Modernization Act of 2010 (GPRA Modernization Act). The IRM Strategic Plan shall demonstrate how the technology and information resources goals map to the agency's mission and organizational priorities. These goals shall be specific, verifiable, and measurable, so that progress against these goals can be tracked. The agency shall review its IRM Strategic Plan annually alongside the Annual Performance Plan reviews, required by the GPRA Modernization Act, to determine if there are any performance gaps or changes to mission needs, priorities, or goals. As part of the planning and maintenance of an effective information strategy, agencies shall meet the following requirements, in addition to all other requirements in this Circular:

a) Inventories

   Agencies shall:

   i.   Maintain an inventory[3] of the agency's major information systems,[4] information holdings, and dissemination products, at the level of detail that OMB and the agency determine is most appropriate for overseeing and managing the information resources; and

   ii.  Maintain an inventory of the agency's information systems that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII to allow the agency to regularly review its PII and ensure, to the extent reasonably practicable, that such PII is accurate, relevant, timely, and complete; and to allow the agency to reduce its PII to the minimum necessary for the proper performance of authorized agency functions.[5]

b) Information Management

   Agencies shall:

   i.   Continually facilitate adoption of new and emerging technologies, and regularly assess the following throughout the life of each information system: the inventory of the physical and software assets associated with the system[6]; the maintainability and sustainability of the information resources and infrastructure supporting the system; and actively determine when significant upgrades,

---

[3] The inventory of agency information resources shall include an enterprise-wide data inventory that accounts for data used in the agency's information systems.

[4] The inventory of major information systems is required in accordance with 44 U.S.C. § 3505(c). All information systems are subject to the requirements of the Federal Information Security Modernization Act (44 U.S.C. Chapter 35) whether or not they are designated as a major information system.

[5] This inventory may be combined with the agency's inventory of information systems, as described above.

[6] Agencies shall ensure that physical devices, software applications, hardware platforms, and systems within the organization are inventoried initially when obtained and updated on an ongoing basis.

5

replacements, or disposition is required to effectively support agency missions or business functions and adequately protect agency assets;[7] and

    ii.   Ensure the terms and conditions of contracts and other agreements involving the processing, storage, access to, transmission, and disposition of Federal information are linked to the IRM strategic plan goals, and are sufficient to enable agencies to meet their policy and legal requirements.

  c)  Risk Management

Agencies shall:

    i.   Consider information security, privacy, records management, public transparency, and supply chain security issues for all resource planning and management activities throughout the system development life cycle so that risks are appropriately managed;

    ii.   Develop plan, in consultation with Chief Information Officers (CIOs), Senior Agency Officials for Records Management (SAORMs), and Senior Agency Officials for Privacy (SAOPs), for information systems and components that cannot be appropriately protected or secured and ensure that such systems are given a high priority for upgrade, replacement, or retirement;[8]

    iii.   Regularly review and address risk regarding processes, people, and technology; and

    iv.   Consult National Institute of Standards and Technology (NIST) Federal Information Processing Standards (FIPS) and NIST Special Publications (SPs) (e.g., 500, 800, and 1800 series guidelines).

2)  Enterprise Architecture

Agencies shall develop an enterprise architecture (EA) that describes the baseline architecture, target architecture, and a transition plan to get to the target architecture. The agency's EA shall align to their IRM Strategic Plan. The EA should incorporate agency plans for significant upgrades, replacements, and disposition of information systems when the systems can no longer effectively support missions or business functions. The EA should align business and technology resources to achieve strategic outcomes. The process of describing the current and future state of the agency, and laying out a plan for transitioning from the current state to the desired future state, helps agencies to eliminate waste and duplication, increase shared services, close performance gaps, and promote engagement among Government, industry, and citizens.

---

[7] The assessment process is described in NIST SP 800-53A, *Guide for Assessing the Security Controls in Federal Information Systems and Organizations.*

[8] Includes hardware, software, or firmware components no longer supported by developers, vendors, or manufacturers through the availability of software patches, firmware updates, replacement parts, and maintenance contracts. NIST SP 800-53, *Security and Privacy Controls for Federal Information Systems and Organizations,* provides additional guidance on unsupported software components.

6

3)  Planning, Programming, and Budgeting

Agencies shall, in accordance with the Federal Information Technology Acquisition Reform Act (FITARA) and related OMB policy:[9]

a)  Ensure that IT resources are distinctly identified and separated from non-IT resources during the planning, programming, and budgeting processes in a manner that affords agency CIOs appropriate visibility and specificity to provide effective management and oversight of IT resources;

b)  Ensure that the agency-wide budget development process includes the CFO, CAO, and CIO in the planning, programming, and budgeting stages for programs that include IT resources (not just programs that are primarily information- and technology-oriented);

c)  The agency head, in consultation with the CFO, CAO, CIO, and program leadership, shall define the processes by which program leadership works with the CIO to plan an overall portfolio of IT resources that achieve program and business objectives efficiently and effectively by:

   i.   Weighing potential and ongoing IT investments and their underlying capabilities against other proposed and ongoing IT investments in the portfolio; and

   ii.  Identifying gaps between planned and actual cost, schedule, and performance goals for IT investments and developing a corrective action plan to close such gaps;

d)  Ensure that the CIO approves the IT components of any plans, through a process defined by the agency head that balances IT investments with other uses of agency funding.  Agencies shall also ensure that the CIO is included in the internal planning processes for how the agency uses information resources to achieve its objectives at all points in their life cycle, including operations and disposition or migration;

e)  Ensure that agency budget justification materials, in their initial budget submission to OMB, include a statement that affirms:

   i.   The CIO has reviewed and approves the IT investments portion of the budget request;

   ii.  The SAOP has reviewed the IT investments portion of the budget request to ensure that privacy requirements, as well as any associated costs, are explicitly identified and included with respect to any IT resources that will be used to create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII;

---

[9] OMB policy documents can be located at https://www.whitehouse.gov/omb/circulars_default  and https://www.whitehouse.gov/omb/memoranda_default  The Department of Defense (DoD), the Intelligence Community, and portions of other agencies that operate systems related to national security are subject to only certain portions of Federal Information Technology Acquisition Reform (FITARA) (Pub. L. 113-291), as provided for in the statute.

      iii.  The CFO and CIO jointly affirm that the CIO had a significant role in reviewing planned IT support for major program objectives and significant increases and decreases in IT resources; and

      iv.  The IT Portfolio includes appropriate estimates of all IT resources included in the budget request;

  f)  Ensure that the CFO, CAO, and CIO define agency-wide policy for the level of detail of planned expenditure reporting for all transactions that include IT resources.

4)   Business Continuity Planning

Agencies shall develop a Business Continuity Plan.[10]  A Business Continuity Plan to continue agency operations during times of service disruption is essential.  Therefore, agencies shall develop continuity strategies in order to ensure services and access can be restored in time to meet the mission needs.  Manual workarounds shall be part of the plan so business can continue while information systems are being restored.

b.   Governance

In support of agency missions and business needs, and in coordination with program managers, agencies shall:

1)   Define, implement, and maintain processes, standards, and policies applied to all information resources at the agency, in accordance with OMB guidance;

2)   Require that the CIO, in coordination with appropriate governance boards, defines processes and policies in sufficient detail to address information resources appropriately. At a minimum, these processes and policies shall require that:

  a)  Investments and projects in development are evaluated to determine the applicability of agile development;[11]

  b)  Open data standards are used to the maximum extent possible when implementing IT systems;

  c)  Appropriate measurements are used to evaluate the cost, schedule, and overall performance variances[12] of IT projects across the portfolio leveraging processes such

---

[10] The Federal Information Security Modernization Act of 2014 (FISMA) (44 U.S.C. Chapter 35) requires each agency to develop, document, and implement an agency-wide information security program that includes plans and procedures to ensure continuity of operations for information systems that support the operations and assets of the agency.  For additional information related to continuity planning and contingency planning, see Appendix I.

[11] This evaluation shall be conducted as part of the acquisition planning process and involve staff from the CIO of the department, the implementing program managers, the appropriate contracting office representatives, and other applicable agency officials;

[12] Standard definitions from budget or performance management practices, such as earned value management, shall be used for cost variance and schedule variance to measure progress.

TD_0001234

as IT investment management, enterprise architecture, and other agency IT or performance management processes;[13]

    d)  There are agency-wide policies and procedures for conducting IT investment reviews, operational analyses, or other applicable performance reviews to evaluate IT resources, including projects in development and ongoing activities;

    e)  Data and information needs are met through agency-wide data governance policies that clearly establish the roles, responsibilities, and processes by which agency personnel manage information as an asset and the relationships among technology, data, agency programs, strategies, legal and regulatory requirements, and business objectives;[14] and

    f)  Unsupported information systems and system components[15] are phased out as rapidly as possible, and planning and budgeting activities for all IT systems and services incorporate migration planning and resourcing to accomplish this requirement;

3)  Ensure that the CIO is a member of governance boards that inform decisions regarding IT resources to provide for early matching of appropriate information resources with program objectives.  The CIO may designate, in consultation with other senior agency officials, other agency officials to act as their representative to fulfill aspects of this responsibility so long as the CIO retains accountability;

4)  Require that information security and privacy be fully integrated into the system development process;

5)  Conduct TechStat reviews, led by the CIO, or use other applicable performance measurements to evaluate the use of agency information resources.  The CIO may recommend to the agency head the modification, pause, or termination of any acquisition, investment, or activity that includes a significant IT component based on the CIO's evaluation, within the terms of the relevant contracts and applicable regulations;

6)  Establish and maintain a process for the CIO to regularly engage with program managers to evaluate IT resources supporting each agency strategic objective.  It shall be the CIO and program managers' shared responsibility to ensure that legacy and ongoing IT investments are appropriately delivering customer value and meeting the business objectives of the agency and the programs that support the agency; and

7)  Measure performance in accordance with the GPRA Modernization Act and OMB Circular A-11, *Preparation, Submission, and Execution of the Budget*.

---

[13] The Federal Acquisition Streamlining Act of 1994 (Pub. L. 103-355) requires agencies to achieve, on average, ninety percent of the cost and schedule goals established for major and non-major acquisition programs of the agency without reducing the performance or capabilities of the items being acquired.

[14] In accordance with the information management responsibilities outlined in 44 U.S.C. § 3506(b).

[15] Includes hardware, software, or firmware components no longer supported by developers, vendors, manufacturers, or communities through the availability of software patches, firmware updates, replacement parts, and maintenance contracts.  NIST SP 800-53, *Security and Privacy Controls for Federal Information Systems and Organizations*, provides additional guidance on unsupported software components.

c.   Leadership and Workforce

Agencies shall:

1)   Require that the Chief Human Capital Officer (CHCO), CIO, CAO, and SAOP develop a set of competency requirements for information resources staff, including program managers, information security, privacy, and IT leadership positions, and develop and maintain a current workforce planning process to ensure that the agency can:

   a)   Anticipate and respond to changing mission requirements;

   b)   Maintain workforce skills in a rapidly developing IT environment; and

   c)   Recruit and retain the IT talent needed to accomplish the mission;

2)   Ensure that the workforce, which supports the acquisition, management, maintenance, and use of information resources, has the appropriate knowledge and skills to facilitate the achievement of the portfolio's performance goals and, further, evaluate the extent to which the agency's executive-level workforce has appropriate information and technology-related knowledge and skills;

3)   Implement innovative approaches and track performance of workforce development training, including cross-functional training, rotational development and assignments, and effective training and education used by the private sector, to maintain and enhance skills or obtain additional skills;

4)   Ensure that the CHCO and CIO jointly establish an agency-wide critical element (or elements) to be included in all component or bureau CIOs' performance evaluations.  In addition, the CIO shall identify key component or bureau CIOs and provide input to the rating official for these component or bureau CIOs at the time of the initial summary rating and for any required progress reviews.  The rating official will consider the input from the CIO when determining the initial summary rating and discuss it with the component or bureau CIO during progress reviews;

5)   Ensure that the CIO is involved in the recruitment, approves the selection, and provides input for the performance review of any component or bureau CIO, which includes any component or bureau leader who holds CIO duties but not necessarily the "CIO" title.  The title and responsibilities of current component or bureau CIOs should be designated or transferred to other agency personnel by the agency head or their designee as appropriate, and such decisions should take into consideration recommendations from the agency CIO;

6)   Ensure that the SAOP is involved in assessing and addressing the hiring, training, and professional development needs of the agency with respect to privacy; and

7)   Ensure that the CIO, CHCO, SAOP, and other hiring managers take advantage of flexible hiring authorities for specialized positions, as established by the Office of Personnel Management (OPM).

d.   IT Investment Management

1)   Acquisition of Information Technology and Services

Agencies shall:

10

a) Make use of adequate competition, analyze risks (including supply chain risks) associated with potential contractors and the products and services they provide, and allocate risk responsibility between Government and contractor when acquiring IT;

b) Conduct definitive technical, cost, and risk analyses of alternative design implementations, including consideration of the full life cycle costs of IT products and services, including but not limited to, planning, analysis, design, implementation, sustainment, maintenance, re-competition, and retraining costs, scaled to the size and complexity of individual requirements;[16]

c) Consider existing Federal contract solutions or shared services when developing planned information systems, available within the same agency, from other agencies, or from the private sector to meet agency needs to avoid duplicative IT investments;

d) Acquire IT products and services in accordance with Government-wide requirements;[17]

e) Ensure that decisions to improve existing information systems with custom-developed solutions or develop new information systems are initiated only when no existing alternative private sector or governmental source can efficiently meet the need, taking into account long-term sustainment and maintenance;

f) Structure acquisitions for major IT investments into useful segments, with a narrow scope and brief duration, in order to reduce risk, promote flexibility and interoperability, increase accountability, and better match mission need with current technology and market conditions;

g) To the extent practicable, modular contracts for IT, including orders for increments or useful segments of work, should be awarded within 180 days after the solicitation is issued.  If award cannot be made within 180 days, agencies shall consider cancelling the solicitation.  The IT acquired should be delivered within 18 months after the solicitation resulting in award of the contract was issued;[18]

h) Align IT procurement requirements with larger agency strategic goals;

i) Promote innovation in IT procurements, including conducting market research in order to maximize utilization of innovative ideas; and

j) Include security, privacy, accessibility, records management, and other relevant requirements in solicitations.

2) Agency Approval

Agencies shall ensure that all acquisition strategies, plans, and requirements (as described in FAR Part 7), or interagency agreements (such as those used to support

---

[16] Other acquisition planning provisions are set forth in the Federal Acquisition Regulation (FAR) Subpart 7.1, Acquisition Plans, and Part 10, Market Research.

[17] For information regarding Government-wide requirements, refer to OMB policy and the Federal Acquisition Regulation.  For the acquisition of Personal Identity Verification (PIV) and public key infrastructure (PKI) products and services, also refer to the FIPS 201 Evaluation Program at https://www.idmanagement.gov.

[18] Pursuant to Public Contracts statute (41 U.S.C. § 2308).

11

purchases through another agency) that include IT are reviewed and approved by the purchasing agency's CIO. These approvals shall consider the following factors:

a) Alignment with mission and program objectives in coordination with program leadership;

b) Appropriateness with respect to the mission and business objectives supported by the IRM Strategic Plan;

c) Inclusion of innovative solutions;

d) Appropriateness of contract type for IT-related resources;

e) Appropriateness of IT-related portions of statement of needs or statement of work;

f) Ability to deliver functionality in short increments;

g) Inclusion of Government-wide IT requirements, such as information security; and

h) Opportunities to migrate from end-of-life software and systems, and to retire those systems.

3) Investment Planning and Control

Agencies are responsible for establishing a decision-making process that shall cover the life of each information system and include explicit criteria for analyzing the projected and actual costs, benefits, and risks, including information security and privacy risks, associated with the IT investments. Agencies shall designate IT investments according to relevant statutes, regulations, and guidance in OMB Circular A-11, and execute processes commensurate with the size, scope, duration, and delivery risk of the investment. The IT investment processes shall encompass planning, budgeting, procurement, management, and assessment. For further guidance related to investment planning, refer to OMB Circular A-11, including the Capital Programming Guide. At a minimum, agencies shall ensure that:

a) All IT resources (see "Information Technology Resources" definition) are included in IT investment planning documents or artifacts;

b) Decisions related to major IT investments are supported by business cases with appropriate evidence;

c) IT investments implement an agile development approach, as appropriate;[19]

d) IT investments support and enable core mission and operational functions and processes related to the agency's missions and business requirements;

e) IT capital investment plans and budgetary requests are reviewed to ensure that Government-wide requirements, as well as any associated costs, are explicitly identified and included, with respect to any IT resources. This includes IT resources that will be used to create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII; and

---

[19] For additional information, refer to OMB memoranda at https://www.whitehouse.gov/omb/memoranda_default

f) Decisions to improve, enhance, or modernize existing IT investments or to develop new IT investments are made only after conducting an alternatives analysis that includes both government-provided (internal, interagency, and intra-agency where applicable) and commercially available options, and the option representing the best value to the Government has been selected.

4) Selection Criteria and Requirements

Agencies shall consider the following factors when analyzing IT investments:

a) Qualitative and quantitative research methods are used to determine the goals, needs, and behaviors of current and prospective managers and users of the service to strengthen the understanding of requirements;

b) All decisions concerning the selection of information system technologies and services – including decisions to acquire or develop custom or duplicative solutions – shall be merit-based and consider factors such as, but not limited to, ability to meet operational or mission requirements, total life cycle cost of ownership, performance, security, interoperability, privacy, accessibility, ability to share or reuse, resources required to switch vendors, and availability of quality support. Consistent with the FAR, contracts for custom software development are to include contractual provisions that reaffirm the right to reuse the software throughout the Federal Government;

c) Agencies shall consider use of suitable existing Federal information technology resources and commercially-available solutions in order to ensure effective management of Federal resources. Consistent with law and regulation, agencies should consider and evaluate the suitability of existing Federal information technologies and related services, including software, Federal shared services, and commercially-available solutions before embarking upon new developments of software and information technologies; and

d) Information systems security levels are commensurate with the impact that may result from unauthorized access, use, disclosure, disruption, modification, or destruction of such information consistent with NIST standards and guidelines.

5) IT Investment Design and Management

Agencies shall implement the following requirements:

a) Information systems and processes must support and maximize interoperability and access to information, where appropriate, by using documented, scalable, and continuously available application programming interfaces and open machine-readable formats;

b) IT investments must facilitate interoperability, application portability, and scalability across networks of heterogeneous hardware, software, and communications platforms;

c) Information systems, technologies, and processes shall facilitate accessibility under the Rehabilitation Act of 1973, as amended; in particular, see specific electronic and

13

IT accessibility requirements commonly known as "section 508" requirements (29 U.S.C. § 794d);

    d)  Records management functions and retention and disposition requirements must be fully incorporated into information life cycle processes and stages, including the design, development, implementation, and decommissioning of information systems, particularly Internet resources to include storage solutions and cloud-based services such as software as a service, platform as a service, and infrastructure as a service; and

    e)  IT investments use an Earned Value Management System (EVMS) and Integrated Baseline Review, when appropriate, as required by FAR Subpart 34.2. When an EVMS is required, agencies must have a documented process for accepting a contractor's EVMS. Agencies are encouraged to share information about their acceptance process with other agencies and to consider recognizing each other's acceptance of an EVMS so that a contractor is not required to complete a duplicative process. When an EVMS is not required, implement a baseline validation process as part of an overall investment risk management strategy consistent with OMB guidance.

e.  Information Management and Access

    1)  Agencies shall incorporate the following steps, as appropriate, in planning, budgeting, governance, and other policies:

        a)  Federal information is properly managed throughout its life cycle, including all stages through which the information passes, such as: creation, collection, use, processing, storage, maintenance, dissemination, disclosure, and disposition;

        b)  Federal information is managed by making information accessible, discoverable, and usable by the public to the extent permitted by law and subject to privacy, security (which includes confidentiality), or other valid restrictions pertaining to access, use, dissemination, and disclosure;

        c)  Federal information is managed consistent with applicable records retention and disposition requirements;

        d)  Federal information and information systems are managed in a manner that identifies and mitigates privacy and security risks; and

        e)  Federal information is managed with clearly designated roles and responsibilities to promote effective and efficient design and operation of information resources management processes within their agency.

    2)  Agencies have a responsibility to provide information to the public consistent with their missions and subject to Federal law and policy. Agencies will discharge this responsibility by:

        a)  Publishing public information online in a manner that promotes analysis and reuse for the widest possible range of purposes, meaning that the information is publicly accessible, machine-readable, appropriately described, complete, and timely. This

14

includes providing such public information in a format(s) accessible to employees and members of the public with disabilities;[20]

b) Avoiding establishing, or permitting others to establish on their behalf, exclusive, restricted, or other distribution arrangements that interfere with the agency's ability to disseminate its public information on a timely and equitable basis;

c) Avoiding charging fees or royalties for public information or establishing unnecessary restrictions on the resale or re-dissemination of public information by the public.  Agencies shall not, unless specifically authorized by statute, establish fees that exceed the cost of dissemination to the public, restrict or regulate the use, resale, or re-dissemination of public information by the public; or establish any mechanism that interferes with the timely and equitable availability of public information to the public;[21]

d) As appropriate, making Government publications available to depository libraries through the Government Publishing Office regardless of format;[22]

e) Taking advantage of all dissemination channels, including Federal, State, local, tribal, and territorial governments, libraries and educational institutions, for-profit and nonprofit organizations, and private sector entities, in discharging agency information dissemination responsibilities; and

f) Considering the impact of providing agency information and services over the Internet for individuals who do not own computers or lack Internet access and, to the extent practicable, pursuing additional or alternative modes of delivery to ensure that such information and services are accessible to, and their availability is not diminished for, such individuals.

3) Agencies shall establish policies, procedures, and standards that enable data governance so that information is managed and maintained according to relevant statute, regulations, and guidance.

4) Agencies shall collect or create information in a way that supports downstream interoperability among information systems and streamlines dissemination to the public, where appropriate, by creating or collecting all new information electronically by default, in machine-readable open formats, using relevant data standards, that upon creation includes standard extensible metadata in accordance with OMB guidance.

5) Agencies shall include appropriate provisions in contracts, and other agreements, to encourage recipients of Federal funding to maximize access to data developed under an award and to prepare data management plans that describe data to be created in funded programs and approaches for long-term preservation and access to created data.

---

[20] Pursuant to Section 508 of the Rehabilitation Act of 1973, as amended (29 U.S.C. § 794d).

[21] Pursuant to the Paperwork Reduction Act (PRA) of 1980, as amended by the Paperwork Reduction Act of 1995 (44 U.S.C. Chapter 35).

[22] Pursuant to the Depository Library Act of 1962 (44 U.S.C. Chapter 19).

TD_0001241

6)  Agencies shall ensure that there is a mechanism for the public to provide feedback about public information.

7)  Agencies shall manage information in accordance with the following principles as appropriate:

    a)  Providing notice of Federal agency practices for the creation, collection, use, processing, preservation, storage, maintenance, disclosure, dissemination, and disposal of information, as appropriate;

    b)  Providing adequate notice when initiating, substantially modifying, or terminating dissemination of significant information that the public may be using;

    c)  Identifying the source of the information disseminated to the public, if from outside the agency, where practicable;

    d)  Considering target audiences of Federal information when determining format, frequency of update, and other information management decisions;

    e)  Considering the impact of decisions and actions in each stage of the information life cycle on other stages;

    f)  Considering the effects of information management actions on members of the public and State, local, tribal and territorial governments and their access to Federal information and ensure consultation with the public and those governments as appropriate;

    g)  Seeking to satisfy new information needs through interagency or intergovernmental sharing of information, or through nongovernmental sources, where lawful and appropriate, before creating or collecting new information; and

    h)  Complying with all applicable statutes and policies governing the disclosure or dissemination of information, including those related to the quality, privacy, security, accessibility, and other valid access, use, and dissemination restrictions.

f.  Privacy and Information Security[23]

  1)  Privacy

    Agencies shall:

    a)  Establish and maintain a comprehensive privacy program that ensures compliance with applicable privacy requirements, develops and evaluates privacy policy, and manages privacy risks;[24]

    b)  Designate an SAOP who has agency-wide responsibility and accountability for developing, implementing, and maintaining an agency-wide privacy program to

---

[23] Although this section includes requirements for protecting Federal information resources, this area is covered more fully in the Appendices to this Circular.

[24] When considering privacy risks, privacy programs shall consider the risks to an individual or individuals associated with the agency's creation, collection, use, processing, storage, maintenance, dissemination, disclosure, or disposal of their PII.

TD_0001242