ensure compliance with all applicable statutes, regulations, and policies regarding the creation, collection, use, processing, storage, maintenance, dissemination, disclosure, and disposal of PII by programs and information systems, developing and evaluating privacy policy, and managing privacy risks at the agency;[25]

c) Monitor Federal law, regulation, and policy for changes that affect privacy;

d) Limit the creation, collection, use, processing, storage, maintenance, dissemination, and disclosure of PII to that which is legally authorized, relevant, and reasonably deemed necessary for the proper performance of agency functions;

e) To the extent reasonably practicable, ensure that PII is accurate, relevant, timely, and complete, and reduce all PII to the minimum necessary for the proper performance of authorized agency functions;

f) Take steps to eliminate unnecessary collection, maintenance, and use of Social Security numbers, and explore alternatives to the use of Social Security numbers as a personal identifier;

g) Comply with all applicable privacy-related laws, including the requirements of the Privacy Act,[26] and ensure that the Privacy Act system of records notices are published, revised, and rescinded, as required;

h) Maintain all records with PII in accordance with applicable records retention or disposition schedules approved by the National Archives and Records Administration (NARA);

i) Conduct privacy impact assessments when developing, procuring, or using IT, in accordance with the E-Government Act,[27] and make the privacy impact assessments available to the public in accordance with OMB policy;

j) Maintain and post privacy policies on all agency websites, mobile applications, and other digital services, in accordance with the E-Government Act and OMB policy; and

k) Ensure that the SAOP and the agency's privacy personnel closely coordinate with the agency CIO, senior agency information security officer, and other agency offices and officials, as appropriate.

---

[25] The SAOP shall be designated by the head of the agency, pursuant to Executive Order 13719, *Establishment of the Federal Privacy Council* (2016), and OMB guidance.

[26] Agencies should also consult OMB policies on privacy, and OMB Circular A-108, *Federal Agency Responsibilities for Review, Reporting, and Publication under the Privacy Act.*

[27] Section 208(b) of the E-Government Act requires agencies, absent an applicable exception under that section, to conduct a PIA before: (i) developing or procuring IT that collects, maintains, or disseminates information that is in an identifiable form; or (ii) initiating a new collection of information that – (I) will be collected, maintained, or disseminated using IT; and (II) includes any information in an identifiable form permitting the physical or online contacting of a specific individual, if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons, other than agencies, instrumentalities, or employees of the Federal Government.

TD_0001243

2) Information Security

To provide proper safeguards, agencies shall:

a) Ensure that the CIO designates a senior agency information security officer to develop and maintain an agency-wide information security program in accordance with the Federal Information Security Modernization Act of 2014 (FISMA);

b) Protect information in a manner commensurate with the risk that would result from unauthorized access, use, disclosure, disruption, modification, or destruction of such information; and

c) Implement security policies issued by OMB, as well as requirements issued by the Department of Commerce, the Department of Homeland Security (DHS), the General Services Administration (GSA), and the Office of Personnel Management (OPM). This includes applying the standards and guidelines contained in the NIST FIPS, NIST SPs (e.g., 800 series guidelines), and where appropriate and directed by OMB, NIST Interagency or Internal Reports (NISTIRs). [28]

g. Electronic Signatures[29]

To support the transition to electronic government, agencies shall:

1) Allow individuals or entities that deal with the agencies the option to submit information or transact with the agency electronically, when practicable, and for agencies to maintain records electronically, when practicable. Electronic records and their related electronic signatures are not to be denied legal effect, validity, or enforceability merely because they are in electronic form;[30]

2) Promote the use of electronic contract formation, signatures, and recordkeeping in private commerce by establishing legal equivalence between: contracts written on paper and contracts in electronic form; pen-and-ink signatures and electronic signatures; and other legally required written documents (termed "records") and the same information in electronic form; and [31]

---

[28] NISTIRs describe research of a technical nature of interest to a specialized audience.

[29] In support of Government Paperwork Elimination Act (GPEA) and Electronic Signatures in Global and National Commerce Act (E-Sign), the Federal Chief Information Officers Council maintains guidance on use of Electronic Signatures (E-Signatures) in Federal organization transactions. The Federal Chief Information Officers Council guidance, *Use of Electronic Signatures in Federal Organization Transactions*, can be located at https://www.idmanagement.gov. This guidance expands upon OMB guidance.

[30] Pursuant to the Government Paperwork Elimination Act of 1998 (44 U.S.C. § 3504).

[31] Pursuant to E-Sign (15 U.S.C. Chapter 96). E-Sign applies broadly to commercial, consumer, and business transactions affecting interstate or foreign commerce, and to transactions regulated by both Federal and State Government.

3) Develop and implement processes to support use of digital signatures, a form of electronic signature, for employees and contractors.[32]

h. Records Management

Agencies shall:

1) Designate a senior agency official for records management (SAORM) who has overall agency-wide responsibility for records management;

2) Institute records management programs that provide documentation of agency activities;[33]

3) Manage electronic records in accordance with Government-wide requirements. This includes:

a) Managing all permanent electronic records electronically to the fullest extent possible for eventual transfer and accessioning by NARA in an electronic format; and

b) Managing all email records electronically and retaining them in an appropriate electronic system that supports records management and litigation requirements, including the capability to identify, retrieve, and retain the records for as long as they are needed;

4) Ensure the ability to access, retrieve, and manage records throughout their life cycle regardless of form or medium;

5) Ensure agency records managed by the SAORM are treated as information resources and follow the requirements in this Circular;

6) Establish and obtain the approval of the Archivist of the United States for retention schedules for Federal records in a timely fashion;

7) Ensure the proper and timely disposition of Federal records in accordance with a retention schedule approved by the Archivist of the United States; and

8) Provide training and guidance, as appropriate, to all agency employees and contractors regarding their Federal records management responsibilities.

i. Leveraging the Evolving Internet

In a global and connected economy, it is essential for the United States and the Federal Government to strive to ensure that Internet-based technologies remain competitive. The Federal Government needs to continue to lead in innovation, contribute to the free flow of information, participate in an open and available market, and do this in a way that is scalable and secure. Networking demands, escalating with the continued emergence of connecting technologies, has grown well beyond initial capabilities. The use of the newest Internet Protocol (currently, Internet Protocol Version 6 [IPv6]) is an essential part of accomplishing

---

[32] Digital signatures can help agencies streamline mission or business processes and transition manual processes to more automated processes to include, for example, online transactions.

[33] Additional information regarding adequate and proper documentation is available in 36 C.F.R. § 1222.22.

these goals and ensuring that the network infrastructure can meet our needs for growing capacity, security, and privacy, and keep the United States competitive in the ever-escalating global electronic economy. Therefore, agencies shall:

1) Implement agency-wide processes requiring that all IT acquisitions using Internet Protocol conform to the FAR; and[34]

2) Ensure that all public-facing Internet services and enterprise networks fully support the newest version of Internet Protocol as required by OMB policy.

### 6. Government-wide Responsibilities

a. Department of Commerce

The Secretary of Commerce shall:

1) Develop and issue standards and guidelines for the security and privacy of information in Federal information systems and systems which create, collect, process, store, transmit, disseminate, or dispose of information on behalf of the Federal Government;[35]

2) Provide OMB and the agencies with scientific and technical advisory services relating to the development and use of IT;[36]

3) Conduct studies and evaluations concerning telecommunications technology, and the improvement, expansion, testing, operation, and use of Federal telecommunications systems, and advise the Director of OMB and appropriate agencies of the recommendations that result from such studies;[37]

4) Develop, in consultation with the Secretary of State and the Director of OMB, plans, policies, and programs relating to international telecommunications issues affecting Federal information activities;[38]

5) Identify needs for standardization of telecommunications and information processing technology, and develop standards, in consultation with the Secretary of Defense and the Administrator of General Services, to ensure efficient application of such technology;[39]

---

[34] When acquiring information technology using Internet Protocol, agencies must include the appropriate Internet Protocol compliance requirements in accordance with § 11.002(g) of the FAR. For additional information, refer to https://www.acquisition.gov/.

[35] National Institute of Standards and Technologies (NIST) Act, 15 U.S.C. § 278g-3.

[36] Pursuant to the NIST Act (15 U.S.C. § 278g-3).

[37] Pursuant to the National Telecommunications and Information Administration (NTIA) Organization Act, as amended (47 U.S.C. § 902(b)(2)(F)).

[38] Pursuant to the NTIA Organization Act, as amended (47 U.S.C. §902(b)(2)(G)).

[39] Pursuant to the NIST Act, 15 U.S.C. §§ 272(b), 278g-3, and OMB A-119, Federal Participation in the Development and Use of Voluntary Consensus Standards and in Conformity Assessment Activities.

6) Ensure that the Federal Government is represented in the development of national and international (in consultation with the Secretary of State) IT standards, and advise the Director of OMB on such activities;[40]

7) Evaluate new information technologies to assess their security vulnerabilities, with technical assistance from the Department of Defense (DOD) and DHS;

8) Solicit and consider the recommendations of the Information Security and Privacy Advisory Board regarding such standards and guidelines;[41] and

9) Lead the development of a Cybersecurity Framework to reduce cyber risks to critical infrastructure pursuant to Executive Order 13636, Improving Critical Infrastructure Cybersecurity.

b. Department of Homeland Security

The Secretary of Homeland Security shall:[42]

1) Perform its responsibilities under FISMA, including assisting OMB in carrying out its statutory authorities and functions of information security oversight and policy responsibilities;[43]

2) Develop and oversee the implementation of binding operational directives pursuant to FISMA;[44]

3) Monitor agency implementation of information security policies and practices;

4) Convene meetings with senior agency officials to help ensure effective implementation of information security policies and procedures;

5) Coordinate Government-wide efforts on information security policies and practices, including consultation with the Federal Chief Information Officers Council, and the Director of NIST;

6) Provide operational and technical assistance to agencies in implementing policies, principles, standards, and guidelines on information security, including implementation of standards promulgated under 40 U.S.C. § 11331, including by:

    a) Operating the Federal information security incident center established under 44 U.S.C. § 3556;

    b) Upon request by an agency, deploying technology to assist the agency to continuously diagnose and mitigate cyber threats and vulnerabilities, with or without reimbursement;

---

[40] Pursuant to NIST Act, 15 U.S.C. §§ 272(b), 273, 278g–3 and OMB A-119, Federal Participation in the Development and Use of Voluntary Consensus Standards and in Conformity Assessment Activities.

[41] Pursuant to the National Institute of Standards and Technology Act (15 U.S.C. §278g–4).

[42] Pursuant to FISMA (44 U.S.C. § 3553).

[43] FISMA, 44 U.S.C. 3553(b)(1).

[44] FISMA, 44 U.S.C. § 3553(b)(2).

TD_0001247

    c) Compiling and analyzing data on agency information security; and

    d) Developing and conducting targeted operational evaluations, including threat and vulnerability assessments, on the information systems;

7) Consult with the Director of NIST regarding any binding operational directives that implements the standards and guidelines developed by NIST;

8) Coordinate the development of binding operational directives and the oversight of the implementation of such directives with OMB to ensure consistency with OMB policies;

9) Ensure that binding operational directives do not conflict with the guidelines issued under 40 U.S.C. § 11331;

10) Take other actions as the Director of OMB or the Secretary, in consultation with the Director of OMB, may determine necessary to carry out the implementation of effective agency information security policies and practices for information systems;

11) Manage Government-wide information security programs and provide and operate Federal information security shared services, in coordination with OMB and in accordance with OMB policies;

12) Provide, as appropriate, intelligence and other information about cyber threats, vulnerabilities, and incidents to agencies to assist in risk assessments conducted under FISMA;[45] and

13) Solicit and consider the recommendations of the Information Security Privacy Advisory Board, established by the National Institute of Standards and Technology Act (NIST Act).[46]

c. Federal Chief Information Officers Council (Federal CIO Council)

Pursuant to the E-Government Act of 2002, the Federal CIO Council shall:[47]

1) Develop recommendations for OMB on Government information resources management policies and requirements;

2) Share experiences, ideas, best practices, and innovative approaches related to information resources management;

3) Assist OMB in the identification, development, and coordination of multiagency projects and other innovation initiatives to improve Federal Government performance through use of IT;

4) Promote the development and use of common performance measures for agency information resources management, as further described in statute;

---

[45] 44 U.S.C. § 3556(a)(4).

[46] Pursuant to DHS current practices.

[47] E-Government Act of 2002 (44 U.S.C. § 3603).

TD_0001248

5) Work as appropriate with NIST and OMB to develop recommendations on IT standards developed under the NIST Act and promulgated under section 11331 of title 40, and maximize the use of commercial standards, as further described in statute;

6) Work with OPM to assess and address the hiring, training, classification, and professional development needs of the Federal Government related to information resources management;

7) Work with the Archivist of the United States to assess how the Federal Records Act can be addressed effectively by Federal information resources management activities; and

8) Solicit perspectives from the Chief Financial Officers Council, Federal Acquisition Officers Council, Chief Human Capital Officers' Council, Budget Officers Advisory Council, and other key groups in the Federal Government, as well as industry, academia, and other Federal, State, local, tribal and territorial governments, on matters of concern to the Council as appropriate.

d. Federal Privacy Council

Pursuant to Executive Order 13719, the Federal Privacy Council shall:[48]

1) Develop recommendations for OMB on Federal Government privacy policies and requirements;

2) Coordinate and share ideas, best practices, and approaches for protecting privacy and implementing appropriate privacy safeguards;

3) Assess and recommend how best to address the hiring, training, and professional development needs of the Federal Government with respect to privacy matters;

4) Perform other privacy-related functions, consistent with law, as designated by the Chair of the Federal Privacy Council; and

5) In performing its duties, engage in appropriate coordination as described in Executive Order 13719.[49]

---

[48] Executive Order 13719, *Establishment of the Federal Privacy Council* (2016).

[49] Executive Order 13719, *Establishment of the Federal Privacy Council (2016 )* at § 4(d), "Coordination":

(i) The Chair and the Privacy Council shall coordinate with the Federal Chief Information Officers Council (CIO Council) to promote consistency and efficiency across the executive branch when addressing privacy and information security issues. In addition, the Chairs of the Privacy Council and the CIO Council shall coordinate to ensure that the work of the two councils is complementary and not duplicative.

(ii) The Chair and the Privacy Council should coordinate, as appropriate, with such other interagency councils and councils and offices within the Executive Office of the President, as appropriate, including the President's Management Council, the Chief Financial Officers Council, the President's Council on Integrity and Efficiency, the National Science and Technology Council, the National Economic Council, the Domestic Policy Council, the National Security Council staff, the Office of Science and Technology Policy, the Interagency Council on Statistical Policy, the Federal Acquisition Regulatory Council, and the Small Agency Council.

23

e. General Services Administration

The Administrator of General Services shall:

1) Provide a Government-wide network services contract that leverages shared solutions for many agencies;[50]

2) Ensure that contract vehicles and services made available to agencies are cost-effective and provide for capabilities that are consistent with Government-wide requirements;[51]

3) Assist OMB in setting strategic direction for electronic government and overseeing Government-wide implementation, and recommend changes relating to Government-wide strategies and priorities;[52]

4) Promote innovative uses of IT by agencies, particularly initiatives involving multiagency collaboration, through support of pilot projects, research, experimentation, and the use of innovative technologies;[53]

5) Maintain a Federal public key infrastructure (PKI) framework to allow efficient interoperability among agencies when using digital certificates;[54] and

6) Ensure that effective controls are in place to protect the confidentiality, integrity, and availability of the Federal PKI framework components managed and overseen by the agency, to include performing information security continuous monitoring of the Federal PKI.

f. National Archives and Records Administration

The Archivist of the United States shall:

1) Administer the Federal Records Act and NARA regulations (36 CFR Subchapter B— Records Management);[55]

2) Develop regulations relating to electronic records management;[56]

3) Work with agencies to ensure the transfer of permanent Federal electronic records to the National Archives of the United States in digital or electronic form to the greatest extent possible;[57]

---

[50] Pursuant to the Clinger-Cohen Act (also known as the "Information Technology Management Reform Act of 1996") (40 U.S.C. § 11314(b)).

[51] Pursuant to the Clinger-Cohen Act (also known as the "Information Technology Management Reform Act of 1996") (40 U.S.C. §§ 11302, 11314(a)).

[52] Pursuant to the E-Government Act of 2002 (44 U.S.C. § 3602).

[53] Pursuant to the E-Government Act of 2002 (44 U.S.C. § 3602).

[54] Federal PKI provides the government with a common infrastructure to administer digital certificates and public-private key pairs, including the ability to issue, maintain, and revoke public key certificates.

[55] Pursuant to the Federal Records Act of 1950, as amended, codified (44 U.S.C. Chapters 21, 29, 31, 33).

[56] Pursuant to the Federal Records Act of 1950, as amended, codified (44 U.S.C. Chapters 31 and 33).

[57] Pursuant to the Federal Records Act of 1950, as amended, codified (44 U.S.C. Chapters 21, 29, 31, 33).

TD_0001250

4) Ensure agency compliance with records management requirements, provide records management training, and facilitate public access to high-value Government records;[58] and

5) Serve as the Executive Agent for the Controlled Unclassified Information (CUI) program.[59]

g. Office of Personnel Management

The Administrator of the Office of Personnel Management shall:[60]

1) Analyze, on an ongoing basis, the workforce needs of the Federal Government related to IT and information resources management, in conjunction with relevant agencies;

2) Identify training needs of the Federal Government workforce related to IT and information resources management;

3) Oversee the development of curricula, training methods, and training priorities that correspond to the projected personnel needs related to IT and information resources management; and

4) Assess the training of employees in IT disciplines to address information resources management needs.

## 7. Effectiveness

This Circular is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

## 8. Oversight

The Director of OMB shall use IT planning reviews, fiscal budget reviews, information collection reviews, management reviews, and such other measures as the Director deems necessary to evaluate the adequacy and efficiency of each agency's information resources management and compliance with this Circular.

The Director of OMB may, consistent with statute and upon written request of an agency, grant a waiver from particular requirements of this Circular. Requests for waivers must detail the reasons why a particular waiver is sought, identify the duration of the waiver sought, and include a plan for the prompt and orderly transition to full compliance with the requirements of this Circular. Notice of each waiver request must be published promptly by the agency in the Federal Register, with a copy of the waiver request made available to the public on request.

---

[58] Pursuant to the Federal Records Act of 1950, as amended, codified (44 U.S.C. Chapters 21, 29, 31, 33).

[59] Pursuant to Executive Order 13556, *Controlled Unclassified Information*.

[60] Pursuant to the E-Government Act of 2002 (44 U.S.C. § 3501 note; Pub. L. 107–347, § 209(b)(1)).

## 9. Authority

OMB issues this Circular pursuant to the Clinger-Cohen Act (also known as the "Information Technology Management Reform Act of 1996") (40 U.S.C. § 11101-11704); E-Government Act of 2002 (44 U.S.C. Chapters 35 and 36); Federal Information Security Modernization Act of 2014 (44 U.S.C. Chapter 35, Subchapter II); Federal Information Technology Acquisition Reform Act (FITARA) (Pub. L. 113-291)[61]; Paperwork Reduction Act (PRA) of 1980, as amended by the Paperwork Reduction Act of 1995 (44 U.S.C. Chapter 35); Privacy Act of 1974, as amended (5 U.S.C. § 552a); Digital Accountability and Transparency Act of 2014 (Pub. L. 113-101); Electronic Signatures in Global and National Commerce Act (E-Sign) (15 U.S.C. Chapter 96); Government Paperwork Elimination Act of 1998 (44 U.S.C. § 3504); Government Performance and Results Act (GPRA) of 1993, as amended by the Government Performance and Results Modernization Act (GPRA Modernization Act) of 2010 (5 U.S.C. § 306 and 31 U.S.C. §§ 1115 et seq.); Office of Federal Procurement Policy Act (41 U.S.C. Chapter 7); Budget and Accounting Procedures Act of 1950, as amended (31 U.S.C. Chapter 11); Chief Financial Officers Act (31 U.S.C. § 3512 et seq.); and Executive Order 13719, Establishment of the Federal Privacy Council (2016).

## 10. Definitions

a.  The following definitions are applicable within this policy:

1)  'Accessibility' means information technology products or services that are in full compliance with the standards of section 508 of the Rehabilitation Act of 1973.[62]

2)  'Adequate security' means security protections commensurate with the risk resulting from the unauthorized access, use, disclosure, disruption, modification, or destruction of information. This includes ensuring that information hosted on behalf of an agency and information systems and applications used by the agency operate effectively and provide appropriate confidentiality, integrity, and availability protections through the application of cost-effective security controls.

3)  'Agency' means any executive agency or department, military department, Federal Government corporation, Federal Government-controlled corporation, or other establishment in the Executive Branch of the Federal Government, or any independent regulatory agency.

4)  'Agency Strategic Plan' means a plan that provides general and long-term goals that the agency aims to achieve, the actions the agency will take to realize those goals, the

---

[61] Title VIII, Subtitle D of the National Defense Authorization Act (NDAA) for Fiscal Year 2015, Pub. L. 113-291. Further references in the text that refer to "FITARA" refer to these sections.

[62] The United States Architectural and Transportation Barriers Compliance Board's (Access Board) Information and Communication Technology Standards and Guidelines for information and communications technologies (ICT), known as the Section 508 Standards. The 508 standards apply to ICT developed, procured, maintained, or used by Federal agencies covered by section 508 of the Rehabilitation Act of 1973 (29 U.S.C. § 794d), as amended. Accessibility also refers to the guidelines for telecommunications equipment and customer premises equipment covered by Section 255 of the Communications Act of 1934 (47 U.S.C. § 151 *et seq*.).

TD_0001252

strategies planned, how the agency will deal with challenges and risks that may hinder achieving results, and the approaches it will use to monitor its progress.[63]

5) 'Agile Development' means a development methodology that uses an iterative approach to deliver solutions incrementally through close collaboration and frequent reassessment.

6) 'Authorization to Operate' means the official management decision given by a senior Federal official or officials to authorize operation of an information system and to explicitly accept the risk to agency operations (including mission, functions, image, or reputation), agency assets, individuals, other organizations, and the Nation based on the implementation of an agreed-upon set of security and privacy controls. Authorization also applies to common controls inherited by agency information systems.

7) 'Authorization boundary' means all components of an information system to be authorized for operation by an authorizing official. This excludes separately authorized systems to which the information system is connected.[64]

8) 'Authorization package' means the essential information that an authorizing official uses to determine whether to authorize the operation of an information system or the use of a designated set of common controls. At a minimum, the authorization package includes the information system security plan, privacy plan, security control assessment, privacy control assessment, and any relevant plans of action and milestones.

9) 'Authorizing official' means a senior Federal official or executive with the authority to authorize (i.e., assume responsibility for) the operation of an information system or the use a designated set of common controls at an acceptable level of risk to agency operations (including mission, functions, image, or reputation), agency assets, individuals, other organizations, and the Nation.

10) 'Binding Operational Directive' means a compulsory direction from the Department of Homeland Security to an agency that is for the purposes of safeguarding Federal information and information systems from a known or reasonably suspected information security threat, vulnerability, or risk; shall be in accordance with policies, principles, standards, and guidelines issued by the Director of the Office of Management and Budget; and may be revised or repealed by the Director if the direction issued on behalf of the Director is not in accordance with policies and principles developed by the Director (44 U.S.C. § 3552).

11) 'Business Continuity Plan' means a plan that focuses on sustaining an organization's mission or business processes during and after a disruption, and may be written for

---

[63] For additional information, refer to the Government Performance and Results Act (GPRA) of 1993, as amended by the Government Performance and Results Modernization Act (GPRA Modernization Act) of 2010 (5 U.S.C. § 306 and 31 U.S.C. § 1115 *et seq.*); and OMB Circular A-11, *Preparation, Submission, and Execution of the Budget.*

[64] Agencies have significant flexibility in determining what constitutes an information system and its associated boundary.

27

mission or business processes within a single business unit or may address the entire organization's processes.[65]

12) 'Chief Information Officer' means the senior official that provides advice and other assistance to the head of the agency and other senior management personnel of the agency to ensure that IT is acquired and information resources are managed for the agency in a manner that achieves the agency's strategic goals and information resources management goals; and is responsible for ensuring agency compliance with, and prompt, efficient, and effective implementation of, the information policies and information resources management responsibilities, including the reduction of information collection burdens on the public.

13) 'Chief Information Officers Council' means the Council codified in the E-Government Act of 2002 (44 U.S.C § 101).

14) 'Common control' means a security or privacy control that is inherited by multiple information systems or programs.[66]

15) 'Controlled Unclassified Information' means information that requires safeguarding or dissemination controls pursuant to and consistent with law, regulations, and Government-wide policies, excluding information classified under Executive Order 13526 of December 29, 2009, or the Atomic Energy Act, as amended.

16) 'Critical infrastructure' means systems and assets, whether physical or virtual, so vital to the United States that the incapacity or destruction of such systems and assets would have a debilitating impact on security, national economic security, national public health safety, or any combination of those matters (42 U.S.C. § 5195c(e)).

17) 'Cybersecurity' means prevention of damage to, protection of, and restoration of computers, electronic communications systems, electronic communications services, wire communication, and electronic communication, including information contained therein, to ensure its availability, integrity, authentication, confidentiality, and non-repudiation.

18) 'Dissemination' means the government-initiated distribution of information to a nongovernment entity, including the public. The term 'dissemination,' as used within this Circular, does not include distribution limited to Federal Government employees, intra- or interagency use or sharing of Federal information, and responses to requests for agency records under the Freedom of Information Act (5 U.S.C. § 552) or the Privacy Act (5 U.S.C. § 552a).

19) 'Enterprise architecture' (a) means – (i) a strategic information asset base, which defines the mission; (ii) the information necessary to perform the mission; (iii) the technologies necessary to perform the mission; and (iv) the transitional processes for implementing

---

[65] The Federal Information Security Modernization Act (44 U.S.C. § 3554(b))) requires each agency to develop, document, and implement an agency-wide information security program that includes plans and procedures to ensure continuity of operations for information systems that support the operations and assets of the agency.

[66] A control is inherited by an information system when the control is selected for the system but the control is developed, implemented, assessed, authorized, and monitored by entities other than those responsible for the system.

TD_0001254

new technologies in response to changing mission needs; and (b) includes – (i) a baseline architecture; (ii) a target architecture; and (iii) a sequencing plan (44 U.S.C. § 3601).

20) 'Environment of operation' means the physical surroundings in which an information system processes, stores, and transmits information.

21) 'Executive agency' has the meaning defined in Title 41, Public Contracts section 133 (41 U.S.C. § 133).

22) 'Federal information' means information created, collected, processed, maintained, disseminated, disclosed, or disposed of by or for the Federal Government, in any medium or form.

23) 'Federal information system' means an information system used or operated by an agency or by a contractor of an agency or by another organization on behalf of an agency.

24) 'Federal Privacy Council' means the Council established by Executive Order 13719.[67]

25) 'Government publication' means information that is published as an individual document at Government expense, or as required by law, in any medium or form (44 U.S.C. § 1901).

26) 'Hybrid control' means a security or privacy control that is implemented for an information system in part as a common control and in part as a system-specific control.

27) 'Incident' means an occurrence that actually or imminently jeopardizes, without lawful authority, the confidentiality, integrity, or availability of information or an information system; or constitutes a violation or imminent threat of violation of law, security policies, security procedures, or acceptable use policies (44 U.S.C. § 3552).

28) 'Information' means any communication or representation of knowledge such as facts, data, or opinions in any medium or form, including textual, numerical, graphic, cartographic, narrative, electronic, or audiovisual forms.

29) 'Information dissemination product' means any recorded information, regardless of physical form or characteristics, disseminated by an agency, or contractor thereof, to the public.

30) 'Information life cycle' means the stages through which information passes, typically characterized as creation or collection, processing, dissemination, use, storage, and disposition, to include destruction and deletion.

31) 'Information management' means the planning, budgeting, manipulating, and controlling of information throughout its life cycle. The term encompasses both information itself and the related resources, such as personnel, equipment, funds, and information technology.

32) 'Information resources' means information and related resources, such as personnel, equipment, funds, and information technology (44 U.S.C. § 3502).

---

[67] Executive Order 13719, *Establishment of the Federal Privacy Council* (2016).

33) 'Information resources management' means the process of managing information resources to accomplish agency missions. The term encompasses an agency's information and the related resources, such as personnel, equipment, funds, and information technology (44 U.S.C. § 3502).

34) 'Information Resource Management Strategy' means a strategy that demonstrates how information resources management decisions are integrated with organizational planning, budget, procurement, financial management, human resources management, and program decisions (44 U.S.C. 3506 (b)(2)).

35) 'Information security' means the protection of information and information systems from unauthorized access, use, disclosure, disruption, modification, or destruction in order to provide:

   a) Integrity, which means guarding against improper information modification or destruction, and includes ensuring information non-repudiation and authenticity;

   b) Confidentiality, which means preserving authorized restrictions on access and disclosure, including means for protecting personal privacy and proprietary information; and

   c) Availability, which means ensuring timely and reliable access to and use of information (44 U.S.C. § 3552).

36) 'Information security architecture' means an embedded, integral part of the enterprise architecture that describes the structure and behavior of the enterprise security processes, information security systems, personnel, and organizational subunits, showing their alignment with the enterprise's mission and strategic plans.

37) 'Information security continuous monitoring' means maintaining ongoing awareness of information security, vulnerabilities, threats, and incidents to support agency risk management decisions.[68]

38) 'Information security continuous monitoring program' means the compendium of methods, tools, and techniques necessary to implement the agency information continuous monitoring strategy in a way that is sufficient to inform risk-based decisions and maintain operations within established risk tolerances. The program includes determining monitoring metrics, establishing monitoring frequencies, and developing a monitoring architecture.

39) 'Information security continuous monitoring strategy' means a comprehensive plan to address monitoring requirements and activities at each organizational tier (organization, mission or business process, and information system).

40) 'Information system security plan' means a formal document that provides an overview of the security requirements for an information system and describes the security controls in place or planned for meeting those requirements.[69]

---

[68] The terms *continuous* and *ongoing* in this context mean that security controls and agency risks are assessed and analyzed at a frequency sufficient to support risk-based security decisions to adequately protect agency information.

[69] The information system security plan and the privacy plan may be integrated into one consolidated document.

30

41) 'Information security program plan' means a formal document that provides an overview of the security requirements for an organization-wide information security program and describes the program management controls and common controls in place or planned for meeting those requirements.

42) 'Information system' means a discrete set of information resources organized for the collection, processing, maintenance, use, sharing, dissemination, or disposition of information (44 U.S.C. § 3502).

43) 'Information system life cycle' means all phases in the useful life of an information system, including planning, acquiring, operating, maintaining, and disposing. (See also OMB A-11 Part 7, *Capital Programming Guide* and OMB Circular A-131, *Value Engineering* for more information regarding the costs and management of assets through their complete life cycle.)

44) 'Information system resilience' means the ability of an information system to operate under adverse conditions or stress, even if in a degraded or debilitated state, while maintaining essential operational capabilities, and to recover to an effective operational posture in a time frame consistent with mission needs.

45) 'Information technology' means any services or equipment, or interconnected system(s) or subsystem(s) of equipment, that are used in the automatic acquisition, storage, analysis, evaluation, manipulation, management, movement, control, display, switching, interchange, transmission, or reception of data or information by the agency.  For purposes of this definition, such services or equipment if used by the agency directly or is used by a contractor under a contract with the agency that requires its use; or to a significant extent, its use in the performance of a service or the furnishing of a product. The term "information technology" includes computers, ancillary equipment (including imaging peripherals, input, output, and storage devices necessary for security and surveillance), peripheral equipment designed to be controlled by the central processing unit of a computer, software, firmware and similar procedures, services (including cloud computing and help-desk services or other professional services which support any point of the life cycle of the equipment or service), and related resources.  The term "information technology" does not include any equipment that is acquired by a contractor incidental to a contract which does not require its use (40 U.S.C. § 11101).

46) 'Information technology investment' means an expenditure of information technology resources to address mission delivery and management support.  This may include a project or projects for the development, modernization, enhancement, or maintenance of a single information technology asset or group of information technology assets with related functionality, and the subsequent operation of those assets in a production environment.  These investments shall have a defined life cycle with start and end dates, with the end date representing the end of the currently estimated useful life of the investment, consistent with the investment's most current alternatives analysis if applicable.

47) 'Information Technology Investment Management' means a decision-making process that, in support of agency missions and business needs, provides for analyzing, tracking, and evaluating the risks, including information security and privacy risks, and results of

31

all major investments made by an agency for information systems. The process shall cover the life of each system and shall include explicit criteria for analyzing the projected and actual costs, benefits, and risks, including information security and privacy risks, associated with the investments.[70]

48) 'Information technology resources' means all agency budgetary resources, personnel, equipment, facilities, or services that are primarily used in the management, operation, acquisition, or other activity related to the life cycle of information technology; acquisitions or interagency agreements that include information technology and the services or equipment provided by such acquisitions or interagency agreements; but does not include grants that establish or support information technology not operated directly by the Federal Government.

49) 'Initial authorization' means the initial risk determination and risk acceptance decision based on a zero-base review[71] of the information system conducted prior to its entering the operations or maintenance phase of the system development life cycle. The zero-base review includes an assessment of all security and privacy controls (i.e., system-specific, hybrid, and common controls) contained in an information system security plan or in a privacy plan and implemented within an information system or the environment in which the system operates.

50) 'Interagency agreement' means, for the purposes of this document, a written agreement entered into between two or more Federal agencies that specifies the goods to be furnished or tasks to be accomplished by one agency (the servicing agency) in support of the other(s) (the requesting agency), including assisted acquisitions as described in OMB Memorandum: *Improving the Management and Use of Interagency Acquisitions* and other cases described in FAR Part 17.

51) 'Major information system' means a system that is part of an investment that requires special management attention as defined in OMB guidance[72] and agency policies, a "major automated information system" as defined in 10 U.S.C. § 2445, or a system that is part of a major acquisition as defined in the OMB Circular A-11, *Capital Programming Guide*, consisting of information resources.[73]

52) 'Major information technology investment' means an investment that requires special management attention as defined in OMB guidance and agency policies, a "major automated information system" as defined in 10 U.S.C. § 2445, or a major acquisition as

---

[70] See the Clinger Cohen Act of 1996 (40 U.S.C. § 11302) for statutory requirements.

[71] A zero-base review of an information system is the first complete security assessment performed in order to provide the authorizing official with a comprehensive set of security-related information to facilitate making an appropriate risk determination.

[72] For example, an information system requires special management attention because of its importance to an agency mission; its high development, operating, or maintenance costs; or its significant role in the administration of agency programs, finances, property, or other resources.

[73] All information systems are subject to the requirements of the Federal Information Security Modernization Act (44 U.S.C. Chapter 35) whether or not they are designated as a major information system.

defined in the OMB Circular A-11, *Capital Programming Guide*, consisting of information resources.

53) 'National security system' means any information system (including any telecommunications system) used or operated by an agency or by a contractor of an agency, or other organization on behalf of an agency, the function, operation, or use of which involves intelligence activities; involves cryptologic activities related to national security; involves command and control of military forces; involves equipment that is an integral part of a weapon or weapons system; or is critical to the direct fulfillment of military or intelligence missions (excluding a system that is to be used for routine administrative and business applications, for example, payroll, finance, logistics, and personnel management applications); or is protected at all times by procedures established for information that have been specifically authorized under criteria established by an executive order or an Act of Congress to be kept classified in the interest of national defense or foreign policy (44 U.S.C. § 3552).

54) 'Ongoing authorization' means the risk determinations and risk acceptance decisions subsequent to the initial authorization, taken at agreed-upon and documented frequencies in accordance with the agency's mission or business requirements and agency risk tolerance. Ongoing authorization is a time-driven or event-driven authorization process whereby the authorizing official is provided with the necessary and sufficient information regarding the security and privacy state of the information system to determine whether the mission or business risk of continued system operation is acceptable.

55) 'Open data' means publicly available data that are made available consistent with relevant privacy, confidentiality, security, and other valid access, use, and dissemination restrictions, and are structured in a way that enables the data to be fully discoverable and usable by end users. Generally, open data are consistent with principles, explained in OMB guidance, of such data being public, accessible, machine-readable, described, reusable, complete, timely, and managed post-release.

56) 'Overlay' means a specification of security or privacy controls, control enhancements, supplemental guidance, and other supporting information employed during the tailoring process, that is intended to complement (and further refine) security control baselines. The overlay specification may be more stringent or less stringent than the original security control baseline specification and can be applied to multiple information systems. (See "tailoring" definition.)

57) 'Personally identifiable information' means information that can be used to distinguish or trace an individual's identity, either alone or when combined with other information that is linked or linkable to a specific individual.

58) 'Privacy continuous monitoring' means maintaining ongoing awareness of privacy risks and assessing privacy controls at a frequency sufficient to ensure compliance with applicable privacy requirements and to manage privacy risks.

59) 'Privacy continuous monitoring program' means an agency-wide program that implements the agency's privacy continuous monitoring strategy and maintains ongoing awareness of threats and vulnerabilities that may pose privacy risks; monitors changes to

33

information systems and environments of operation that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII; and conducts privacy control assessments to verify the continued effectiveness of all privacy controls selected and implemented at an agency across the agency risk management tiers to ensure continued compliance with applicable privacy requirements and manage privacy risks.

60) 'Privacy continuous monitoring strategy' means a formal document that catalogs the available privacy controls implemented at an agency across the agency risk management tiers and ensures that the controls are effectively monitored on an ongoing basis by assigning an agency-defined assessment frequency to each control that is sufficient to ensure compliance with applicable privacy requirements and to manage privacy risks.

61) 'Privacy control' means the administrative, technical, and physical safeguards employed within an agency to ensure compliance with applicable privacy requirements and manage privacy risks.

62) 'Privacy control assessment' means the assessment of privacy controls to determine whether the controls are implemented correctly, operating as intended, and sufficient to ensure compliance with applicable privacy requirements and manage privacy risks. A privacy control assessment is both an assessment and a formal document detailing the process and the outcome of the assessment.

63) 'Privacy impact assessment' means an analysis of how information is handled to ensure handling conforms to applicable legal, regulatory, and policy requirements regarding privacy; to determine the risks and effects of creating, collecting, using, processing, storing, maintaining, disseminating, disclosing, and disposing of information in identifiable form in an electronic information system; and to examine and evaluate protections and alternate processes for handling information to mitigate potential privacy concerns. A privacy impact assessment is both an analysis and a formal document detailing the process and the outcome of the analysis.

64) 'Privacy program plan' means a formal document that provides an overview of an agency's privacy program, including a description of the structure of the privacy program, the resources dedicated to the privacy program, the role of the Senior Agency Official for Privacy and other privacy officials and staff, the strategic goals and objectives of the privacy program, and the program management controls and common controls in place or planned for meeting applicable privacy requirements and managing privacy risks.

65) 'Privacy plan' means a formal document that details the privacy controls selected for an information system or environment of operation that are in place or planned for meeting applicable privacy requirements and managing privacy risks, details how the controls have been implemented, and describes the methodologies and metrics that will be used to assess the controls.[74]

66) 'Program management control' means, in the context of information security and privacy, a control that is generally implemented at the agency level, independent of any

---

[74] The privacy plan and the information system security plan may be integrated into one consolidated document.

34

particular information system, and essential for managing information security or privacy programs.

67) 'Provisioned IT Service' means an information technology service that is owned, operated, and provided by an outside vendor or external government organization, and consumed by the agency.

68) 'Public information' means any information, regardless of form or format, that an agency discloses, disseminates, or makes available to the public (44 U.S.C. Chapter 35).

69) 'Reauthorization' means the risk determination and risk acceptance decision that occurs after an initial authorization. In general, reauthorization actions may be time-driven or event-driven; however, under ongoing authorization, reauthorization is typically an event-driven action initiated by the authorizing official or directed by the Risk Executive (function) in response to an event that drives risk above the previously agreed-upon agency risk tolerance.

70) 'Records' means all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them (44 U.S.C. § 3301).

71) 'Records management' means the planning, controlling, directing, organizing, training, promoting, and other managerial activities involved with respect to records creation, records maintenance and use, and records disposition in order to achieve adequate and proper documentation of the policies and transactions of the Federal Government and effective and economical management of agency operations (44 U.S.C. § 2901(2)).

72) 'Resilience' means the ability to prepare for and adapt to changing conditions and withstand and recover rapidly from disruption. Resilience includes the ability to withstand and recover from deliberate attacks, accidents, or naturally occurring threats or incidents.

73) 'Risk' means a measure of the extent to which an entity is threatened by a potential circumstance or event, and typically is a function of: (i) the adverse impact, or magnitude of harm, that would arise if the circumstance or event occurs; and (ii) the likelihood of occurrence.[75]

74) 'Risk management' means the program and supporting processes to manage risk to agency operations (including mission, functions, image, reputation), agency assets, individuals, other organizations, and the Nation, and includes: establishing the context for risk-related activities; assessing risk; responding to risk once determined; and monitoring risk over time.

75) 'Risk management strategy' means the description of how an agency intends to assess risk, respond to risk, and monitor risk, making explicit and transparent the risk

---

[75] Risk can include both information security and privacy risks.

perceptions that organizations routinely use in making both investment and operational decisions.

76) 'Risk response' means accepting, avoiding, mitigating, sharing, or transferring risk to agency operations, agency assets, individuals, other organizations, or the Nation.

77) 'Security category' means the characterization of information or an information system based on an assessment of the potential impact that a loss of confidentiality, integrity, or availability of such information or information system would have on agency operations, agency assets, individuals, other organizations, and the Nation.

78) 'Security control' means the safeguards or countermeasures prescribed for an information system or an organization to protect the confidentiality, integrity, and availability of the system and its information.

79) 'Security control assessment' means the testing or evaluation of security controls to determine the extent to which the controls are implemented correctly, operating as intended, and producing the desired outcome with respect to meeting the security requirements for an information system or organization.

80) 'Security control baseline' means the set of minimum security controls defined for a low-impact, moderate-impact, or high-impact information system.

81) 'Senior Agency Official for Privacy' means the senior official, designated by the head of each agency, who has agency-wide responsibility for privacy, including implementation of privacy protections; compliance with Federal laws, regulations, and policies relating to privacy; management of privacy risks at the agency; and a central policy-making role in the agency's development and evaluation of legislative, regulatory, and other policy proposals.

82) 'Senior Agency Official for Records Management' means the senior official who has direct responsibility for ensuring that the agency efficiently and appropriately complies with all applicable records management statutes, regulations, NARA policy and OMB policy.

83) 'Supply chain' means a linked set of resources and processes between multiple tiers of developers that begins with the sourcing of products and services and extends through the design, development, manufacturing, processing, handling, and delivery of products and services to the acquirer.

84) 'Supply chain risk' means risks that arise from the loss of confidentiality, integrity, or availability of information or information systems and reflect the potential adverse impacts to organizational operations (including mission, functions, image, or reputation), organizational assets, individuals, other organizations, and the Nation.

85) 'Supply chain risk management' means the process of identifying, assessing, and mitigating the risks associated with the global and distributed nature of information and communications technology product and service supply chains.

86) 'System-specific control' means a security or privacy control for an information system that is implemented at the system level and is not inherited by any other information system.

36

87) 'Systems security engineering' means a specialty engineering discipline of systems engineering. It applies scientific, mathematical, engineering, and measurement concepts, principles, and methods to deliver, consistent with defined constraints and necessary trade-offs, a trustworthy asset protection capability that satisfies stakeholder requirements; is seamlessly integrated into the delivered system; and presents residual risk that is deemed acceptable and manageable to stakeholders.

88) 'Tailoring' means the process by which security control baselines are modified by identifying and designating common controls; applying scoping considerations; selecting compensating controls; assigning specific values to agency-defined control parameters; supplementing baselines with additional controls or control enhancements; and providing additional specification information for control implementation. The tailoring process may also be applied to privacy controls. (See "overlay" definition.)

89) 'TechStat' means a face-to-face, evidence-based accountability review of an IT investment that enables the Federal Government to intervene to turn around, halt, or terminate IT projects that are failing or are not producing results for the American people.

90) 'Trustworthy information system' means an information system that is believed to be capable of operating within defined levels of risk despite the environmental disruptions, human errors, structural failures, and purposeful attacks that are expected to occur in its environment of operation.

b. Terms that are not specifically defined in this section are assumed to have standard dictionary meanings, or are defined in other OMB policy.

## 11. Inquiries

All questions or inquiries should be addressed to the Office of Management and Budget, Washington, D.C. 20503. Telephone: (202) 395-0379 or (202) 395-3785 or Email: A130@omb.eop.gov.

TD_0001263

## Appendix I to OMB Circular A-130
## Responsibilities for Protecting and Managing Federal Information Resources

### 1. Introduction

Agencies of the Federal Government depend on the secure acquisition, processing, storage, transmission, and disposition of information to carry out their core missions and business functions. This allows diverse information resources ranging from large enterprise information systems (or systems of systems) to small mobile computing devices to collect, process, store, maintain, transmit, and disseminate this information. The information relied upon is subject to a range of threats that could potentially harm or adversely affect organizational operations (e.g., mission, functions, image, or reputation), organizational assets, individuals, other organizations, or the Nation. These threats include environmental disruptions, purposeful attacks, structural failures, human errors, and other threats that can compromise Federal information resources. Personnel at all levels of the Federal Government must understand how to manage information security and protect privacy.

Federal agencies must implement information security programs and privacy programs with the flexibility to meet current and future information management needs and the sufficiency to comply with Federal requirements and manage risks. Emerging technologies and services may continue to shift the ways in which agencies acquire, develop, manage, and use information and technology. As technologies and services continue to change, so will the threat environment. Agency programs must have the capability to identify, respond to, and recover from current threats while protecting their information resources and the privacy of the individuals whose information they maintain. The programs must also have the capability to address new and emerging threats. To be effective, information security and privacy considerations must be part of the day-to-day operations of agencies. This can best be accomplished by planning for the requisite security and privacy capabilities as an integral part of the agency strategic planning and risk management processes, not as a separate activity. This includes, but is not limited to, the integration of Federal information security and privacy requirements (and security and privacy controls) into the enterprise architecture, system development life cycle activities, systems engineering processes, and acquisition processes.

To ensure that Federal agencies can successfully carry out their assigned missions and business operations in an environment of sophisticated and complex threats, they must deploy systems that are both trustworthy and resilient. To increase the level of trustworthiness and resilience of Federal information systems, the systems should employ technologies that can significantly increase the built-in protection capability of those systems and make them inherently less vulnerable. This can require a significant investment in appropriate architectures and the application of systems engineering concepts and principles in the design of Federal information systems.

As Federal agencies take advantage of emerging information technologies and services to obtain more effective mission and operational capabilities, achieve greater efficiencies, and reduce costs, they must also apply the principles and practices of risk management, information security, and privacy to the acquisition and use of those technologies and services. While there are certain security and privacy requirements and associated controls that are mandatory, agencies are

required to employ risk-based approaches and decision making to ensure that security and privacy capabilities are sufficient to protect agency assets, operations, and individuals. Such risk-based approaches involve framing, assessing, responding to, and monitoring security and privacy risks on an ongoing basis. Risk-based approaches can also support potential performance improvements and cost savings when agencies make decisions about maintaining, modernizing, or replacing existing information technologies and services or implementing new technologies and services that leverage internal, other government, or private sector innovative and market-driven solutions. These responsibilities extend to the creation, collection, use, processing, storage, maintenance, dissemination, disclosure, and disposal of Federal information when such information is hosted by non-Federal entities on behalf of the Federal Government. Ultimately, agency heads remain responsible and accountable for ensuring that information management practices comply with all Federal requirements, that information security and privacy programs are appropriately managed, and that Federal information is adequately protected commensurate with the risk resulting from the unauthorized access, use, disclosure, disruption, modification, or destruction of such information.

## 2. Purpose

This Appendix establishes minimum requirements for Federal information security programs, assigns Federal agency responsibilities for the security of information and information systems, and links agency information security programs and agency management control systems established in accordance with OMB Circular A-123, *Management's Responsibility for Enterprise Risk Management and Internal Controls*. This Appendix also establishes requirements for Federal agency privacy programs, assigns responsibilities for privacy program management, and describes how agencies should take a coordinated approach to implementing information security and privacy controls. Additionally, this Appendix incorporates requirements of statute, such as FISMA (44 U.S.C. Chapter 35), the E-Government Act of 2002 (44 U.S.C. Chapters 35 and 36), the Paperwork Reduction Act (44 U.S.C. Chapter 35), and the Privacy Act of 1974, and responsibilities assigned in executive orders and Presidential directives.

## 3. General Requirements

a.  Agencies shall implement an agency-wide risk management process that frames, assesses, responds to, and monitors information security and privacy risk on an ongoing basis across the three organizational tiers (i.e., organization level, mission or business process level, and information system level).[76]

b.  Agencies shall develop, implement, document, maintain, and oversee agency-wide information security and privacy programs including people, processes, and technologies to:

1)  Provide for agency information security and privacy policies, planning, budgeting, management, implementation, and oversight;

---

[76] NIST SP 800-39, *Managing Information Security Risk: Organization, Mission, and Information System View*, provides additional information on risk management processes and strategies. See also Section 5.b of this Appendix.

2) Protect information and information systems from unauthorized access, use, disclosure, disruption, modification, or destruction in order to provide for their confidentiality, integrity, and availability;

3) Provide adequate security for all information created, collected, processed, stored, transmitted, disseminated, or disposed of by or on behalf of the agency, to include Federal information residing in contractor information systems and networks;

4) Cost-effectively manage information security and privacy risks, which includes reducing such risks to an acceptable level;

5) Implement a risk management framework to guide and inform the categorization of Federal information and information systems; the selection, implementation, and assessment of security and privacy controls; the authorization of information systems and common controls; and the continuous monitoring of information systems;

6) Implement security and privacy controls, and verify that they are operating as intended, and continuously monitored and assessed; put procedures in place so that security and privacy controls remain effective over time, and that steps are taken to maintain risk at an acceptable level within organizational risk tolerance;

7) Employ systems security engineering principles, concepts, and techniques during the life cycle of information systems to facilitate the development, deployment, operation, and sustainment of trustworthy and adequately secure systems;

8) Implement supply chain risk management principles to protect against the insertion of counterfeits, unauthorized production, tampering, theft, insertion of malicious software, as well as poor manufacturing and development practices throughout the system development life cycle;

9) Implement policies and procedures to ensure that all personnel are held accountable for complying with agency-wide information security and privacy requirements and policies;

10) Ensure that, in a timely manner, agency CIOs and SAOPs are made aware of information systems and components that cannot be appropriately protected or secured and that such systems are given a high priority for upgrade, replacement, or retirement;[77] and

11) Ensure ongoing collaboration between the senior agency information security officer and the SAOP to ensure coordination of security and privacy activities.

c. Agencies that share PII shall require, as appropriate, other agencies and entities with which they share PII to maintain the PII in an information system with a particular NIST FIPS Publication 199 confidentiality impact level, as determined by the agency sharing the PII.

d. Agencies that share PII with other agencies or entities shall impose, where appropriate, conditions (including the selection and implementation of particular security and privacy controls) that govern the creation, collection, use, processing, storage, maintenance,

---

[77] Until such information systems or components are appropriately dispositioned, agencies are expected to immediately implement interim remediation measures such as limiting access or connectivity.

Appendix I - 3

dissemination, disclosure, and disposal of the PII through written agreements, including contracts, data use agreements, information exchange agreements, and memoranda of understanding.

e.  Agencies shall protect Controlled Unclassified Information (CUI) and shall apply NIST FIPS and NIST (800-series) SPs, as appropriate.  This includes limiting the disclosure of proprietary information to that which is legally authorized, and impose appropriate conditions on use where a continuing obligation to ensure the confidentiality of the information exists.

f.  Agencies shall ensure compliance with all applicable statutory, regulatory, and policy requirements and develop and maintain effective information security and privacy programs. This includes using privacy impact assessments and other tools to manage privacy risks.

g.  Agencies shall implement policies issued by OMB, as well as requirements issued by the Department of Commerce, DHS, GSA, and OPM.  This includes applying the standards and guidelines contained in NIST FIPS, NIST (800-series) SPs, and, where appropriate and directed by OMB, NISTIRs.

## 4.  Specific Requirements[78]

a.  Security Categorization

Agencies shall:

1)  Identify authorization boundaries for information systems in accordance with NIST SPs 800-18 and 800-37; and

2)  Categorize information and information systems, in accordance with FIPS Publication 199 and NIST SP 800-60, considering potential adverse security and privacy impacts to organizational operations and assets, individuals, other organizations, and the Nation.

b.  Planning, Budgeting, and Enterprise Architecture

Agencies shall:

1)  Identify and plan for the resources needed to implement information security and privacy programs;

2)  Ensure that information security and privacy are addressed throughout the life cycle of each agency information system, and that security and privacy activities and costs are identified and included in IT investment capital plans and budgetary requests;

3)  Plan and budget to upgrade, replace, or retire any information systems for which security and privacy protections commensurate with risk cannot be effectively implemented;

---

[78] The requirements in this section represent those areas deemed to be of fundamental importance to the achievement of effective agency information security programs and those areas deemed to require specific emphasis by OMB. The security programs developed and executed by agencies need not be limited to the aforementioned areas but can employ a comprehensive set of safeguards and countermeasures based on the principles, concepts, and methodologies defined NIST standards and guidelines.

Appendix I - 4

4) Ensure that investment plans submitted to OMB as part of the budget process meet the information security and privacy requirements appropriate for the life cycle stage of the investment; and

5) Incorporate Federal information security and privacy requirements into the agency's enterprise architecture to ensure that risk is addressed and information systems achieve the necessary levels of trustworthiness, protection, and resilience.

c. Plans, Controls, and Assessments

Agencies shall:

1) Develop and maintain an information security program plan that provides an overview of the organization-wide information security requirements and documents the program management controls and common controls in place or planned for meeting those requirements;

2) Develop and maintain a privacy program plan that provides an overview of the agency's privacy program, including a description of the structure of the privacy program, the resources dedicated to the privacy program, the role of the Senior Agency Official for Privacy and other privacy officials and staff, the strategic goals and objectives of the privacy program, the program management controls and common controls in place or planned for meeting applicable privacy requirements and managing privacy risks, and any other information determined necessary by the agency's privacy program;

3) Employ a system life cycle process that incorporates the principles, concepts, methods, and techniques of systems security engineering to ensure the development of trustworthy and resilient information systems;

4) Develop supply chain risk management plans as described in NIST SP 800-161 to ensure the integrity, security, resilience, and quality of information systems;

5) Employ a process to select and implement security controls for information systems and the environments in which those systems operate[79] that satisfies the minimum information security requirements in FIPS Publication 200 and security control baselines in NIST SP 800-53, tailored as appropriate;[80]

6) Employ a process to select and implement privacy controls for information systems and programs that satisfies applicable privacy requirements in OMB guidance, including, but not limited to, Appendix I to this Circular and OMB Circular A-108, *Federal Agency Responsibilities for Review, Reporting, and Publication under the Privacy Act*;

7) Implement information system security using sound systems security engineering principles, concepts, methods, practices, and techniques;

8) Develop and maintain security plans for information systems to document which security controls have been selected and how those controls have been implemented;

---

[79] The environment of operation includes the physical surroundings in which an information system processes, stores, and transmits information. Agencies should take the environment into account when selecting, implementing, documenting, and assessing security controls.

[80] Agencies must conduct tailoring activities in accordance with OMB policy.

9) Develop and maintain a privacy plan that details the privacy controls selected for an information system that are in place or planned for meeting applicable privacy requirements and managing privacy risks, details how the controls have been implemented, and describes the methodologies and metrics that will be used to assess the controls;

10) Deploy effective security controls to provide Federal employees and contractors with multifactor authentication, digital signature, and encryption capabilities that provide assurance of identity and are interoperable Government-wide and accepted across all Executive Branch agencies;

11) Adhere to Government-wide requirements in the deployment and use of identity credentials used by employees and contractors accessing Federal facilities;[81]

12) Designate common controls in order to provide cost-effective security and privacy capabilities that can be inherited by multiple agency information systems or programs;[82]

13) Conduct and document assessments of all selected and implemented security and privacy controls to determine whether security and privacy controls are implemented correctly, operating as intended, and sufficient to ensure compliance with applicable requirements and to manage security and privacy risks;

14) Conduct and document security and privacy control assessments prior to the operation of an information system, and periodically thereafter, consistent with the frequency defined in the agency information security continuous monitoring (ISCM) and privacy continuous monitoring (PCM) strategies and the agency risk tolerance;

15) Use agency plans of action and milestones (POA&Ms), and make available or provide access to OMB, DHS, inspectors general, and the U.S. Government Accountability Office, upon request, to record and manage the mitigation and remediation of identified weaknesses and deficiencies, not associated with accepted risks, in agency information systems; and

16) Obtain approval from the authorizing official for connections from the information system, as defined by its authorization boundary, to other information systems based on the risk to the agency's operations and assets, individuals, other organizations, and the Nation.

---

[81] NIST SP 800-116, *A Recommendation for the Use of PIV Credentials in Physical Access Control Systems (PACS)*, provides additional information on the use of PIV Credentials, the Government-wide standard identity credential, in physical access control systems. Physical access controls systems, which include, for example, servers, databases, workstations and network appliances in either shared or isolated networks, are considered information systems.

[82] When common controls protect multiple agency information systems of differing impact levels, the controls shall be implemented at the highest impact level among the systems. If such controls cannot be implemented at the highest impact level of the information systems, agencies shall factor this situation into their assessments of risk and take appropriate risk mitigation actions (e.g., adding security controls, changing assigned values of security control parameters, implementing compensating controls, changing certain aspects of mission or business processes, or separating the higher impact system into its own domain where it can be afforded appropriate levels of protection).

Appendix I - 6

d.  Authorization to Operate and Continuous Monitoring

Agencies shall:

1)  Designate senior Federal officials to formally authorize an information system to operate and authorize agency-designated common controls for use;[83]

2)  Complete an initial authorization to operate for each information system and all agency-designated common controls based on a determination of, and explicit acceptance of, the risk to agency operations and assets, individuals, other organizations, and the Nation, and prior to operational status;

3)  Transition information systems and common controls to an ongoing authorization process when eligible for such a process and with the formal approval of the respective authorizing officials;

4)  Reauthorize information systems and common controls as needed, on a time- or event-driven basis in accordance with agency risk tolerance;

5)  Develop and maintain an ISCM strategy to address information security risks and requirements across the organizational risk management tiers;[84]

6)  Implement and update, in accordance with organization-defined frequency, the ISCM strategy to reflect the effectiveness of deployed controls; significant changes to information systems; and adherence to Federal statutes, policies, directives, instructions, regulations, standards, and guidelines;

7)  Ensure that all selected and implemented controls are addressed in the ISCM strategy and are effectively monitored on an ongoing basis, as determined by the agency's ISCM program;[85]

8)  Establish and maintain an ISCM program that:

   a)  Provides an understanding of agency risk tolerance and helps officials set priorities and manage information security risk consistently throughout the agency;

   b)  Includes metrics that provide meaningful indications of security status and trend analysis at all risk management tiers;

   c)  Ensures the continued effectiveness of all security controls selected and implemented by monitoring controls with the frequencies specified in the ISCM strategy;

   d)  Verifies compliance with information security requirements derived from organizational missions or business functions, Federal statutes, directives, instructions, regulations, policies, standards and guidelines;

---

[83] Common controls are authorized for operation in the same manner as system-specific controls.

[84] NIST SP 800-39, *Managing Information Security Risk*, defines three risk management tiers for managing information security risk within organizations. These include an organization or governance tier, mission or business process tier, and information system tier.

[85] For greater efficiency, the ISCM and PCM strategies may be consolidated into a single unified continuous monitoring strategy. Similarly, the ISCM and PCM programs may also be consolidated into a single unified continuous monitoring program.

    e) Is informed by all applicable agency IT assets to help maintain visibility into the security of those assets and the protection of PII associated with those assets;

    f) Ensures knowledge and control of changes to information systems that have potential to affect security;

    g) Maintains awareness of threats and vulnerabilities that have the potential to affect security, including the mitigation of those threats and vulnerabilities;

9) Develop and maintain a PCM strategy, a formal document that:

    a) Catalogs the available privacy controls implemented at the agency across the agency risk management tiers; and

    b) Ensures that the privacy controls are effectively monitored on an ongoing basis by assigning an agency-defined assessment frequency to each control that is sufficient to ensure compliance with applicable privacy requirements and to manage privacy risks;

10) Establish and maintain an agency-wide PCM program that implements the agency's PCM strategy and:

    a) Conducts privacy control assessments to verify the continued effectiveness of all privacy controls selected and implemented at the agency across the agency risk management tiers to ensure continued compliance with applicable privacy requirements and manage privacy risks;

    b) Identifies assessment methodologies and metrics to determine whether privacy controls are implemented correctly, operating as intended, and sufficient to ensure compliance with applicable privacy requirements and manage privacy risks;

    c) Maintains ongoing awareness of threats and vulnerabilities that may pose privacy risks; and

    d) Monitors changes to information systems and environments of operation that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII;

11) Ensure that a robust ISCM program and PCM program are in place before agency information systems are eligible for ongoing authorization; and

12) Leverage available Federal shared services, where practicable and appropriate.

e. Privacy Controls for Federal Information Systems and Programs

The SAOP has agency-wide responsibility and accountability for developing, implementing, and maintaining an agency-wide privacy program to manage privacy risks, develop and evaluate privacy policy, and ensure compliance with all applicable statutes, regulations, and policies regarding the creation, collection, use, processing, storage, maintenance, dissemination, disclosure, and disposal of PII by programs and information systems. The SAOP shall:

1) Develop and maintain a privacy program plan that provides an overview of an agency's privacy program, including a description of the structure of the privacy program, the resources dedicated to the privacy program, the role of the SAOP and other privacy officials and staff, the strategic goals and objectives of the privacy program, and the

program management controls and common controls in place or planned for meeting applicable privacy requirements and managing privacy risks;

2) Develop and maintain a PCM strategy and PCM program to maintain ongoing awareness of privacy risks and assess privacy controls at a frequency sufficient to ensure compliance with applicable privacy requirements and manage privacy risks;

3) Conduct and document the results of privacy control assessments to verify the continued effectiveness of all privacy controls selected and implemented at the agency across all agency risk management tiers to ensure continued compliance with applicable privacy requirements and manage privacy risks;

4) Identify assessment methodologies and metrics to determine whether privacy controls are implemented correctly, operating as intended, and sufficient to ensure compliance with applicable privacy requirements and manage privacy risks;

5) Designate which privacy controls will be treated as program management, common, information system-specific, and hybrid privacy controls at the agency;

6) Review IT capital investment plans and budgetary requests to ensure that privacy requirements (and associated privacy controls), as well as any associated costs, are explicitly identified and included, with respect to any IT resources that will be used to create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII;

7) Review and approve, in accordance with NIST FIPS Publication 199 and NIST SP 800-60, the categorization of information systems that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII;[86]

8) Review and approve the privacy plans for agency information systems prior to authorization, reauthorization, or ongoing authorization;

9) Review authorization packages for information systems that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII to ensure compliance with applicable privacy requirements and manage privacy risks, prior to authorizing officials making risk determination and acceptance decisions; and

10) Coordinate with the CIO, the senior agency information security officer, and other agency officials in implementation of these requirements.

f. Incident Detection, Response, and Recovery

It is essential that agencies react appropriately to incidents after employing a risk-based approach to selecting and implementing their security and privacy controls for their information and information systems.

---

[86] The categorization of information systems that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII will depend on the sensitivity level of the PII, the privacy risks, and the associated risk to agency operations, agency assets, individuals, other organizations, and the Nation. Agencies should generally categorize information systems that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII at the moderate or high confidentiality impact level. See Appendix II for additional information regarding the sensitivity level of PII.

Agencies shall:[87]

1) Develop and implement incident management policies and procedures, in accordance with OMB policies and NIST guidelines that address incident detection, response, and recovery. This includes developing and implementing appropriate activities to identify the occurrence of an incident; developing and implementing appropriate activities to take action regarding a detected incident; and developing and implementing the appropriate activities to maintain plans for resilience and to restore any capabilities or services that were impaired due to an incident;

2) Designate sensitive positions and execute commensurate security clearance levels for appropriate agency personnel;

3) Establish clear roles and responsibilities to ensure the oversight and coordination of incident response activities and that incidents are documented, reported, investigated, and handled;

4) Periodically test incident response procedures to ensure effectiveness of such procedures;

5) Document lessons learned for incident response and update procedures annually or as required by OMB or DHS;

6) Ensure that processes are in place to verify corrective actions;

7) Maintain formal incident response capabilities and mechanisms to include notification to affected individuals and adequate training and awareness for employees and contractors on how to report and respond to incidents;

8) Implement formal incident management policies to include definitions, detection and analysis, containment, internal and external notification and reporting requirements, incident reporting methods, post-incident procedures, roles and responsibilities, and guidance on how to mitigate impacts to the agency and its respondents following an incident;

9) Report incidents to OMB, DHS, the CIO, the SAOP, their respective inspectors general and general counsel, law enforcement, and Congress in accordance with procedures issued by OMB; and

10) Provide reports on incidents as required by FISMA, OMB policy, DHS binding operational directives, Federal information security incident center guidelines, NIST guidelines, and agency procedures.

---

[87] Pursuant to FISMA (44 U.S.C. Chapter 35).

g.  Contingency Planning[88]

Agencies shall:

1)  Develop and test contingency plans[89] for information systems that:

a)  Identify essential missions and business functions and associated contingency requirements;

b)  Provide recovery objectives, restoration priorities, and metrics;

c)  Address contingency roles and responsibilities; and

d)  Address maintaining essential missions, functions, and services despite a disruption, compromise, or failure of information systems.

2)  Provide for the recovery and reconstitution of information systems to a known state after a disruption, compromise, or failure.

h.  Awareness and Training

Agencies shall:

1)  Develop, maintain, and implement mandatory agency-wide information security and privacy awareness and training programs for all employees and contractors;

2)  Ensure that the security and privacy awareness and training programs are consistent with applicable policies, standards, and guidelines issued by OMB, NIST, and OPM;

3)  Apprise agency employees about available security and privacy resources, such as products, techniques, or expertise;

4)  Provide foundational as well as more advanced levels of security and privacy training to information system users (including managers, senior executives, and contractors) and ensure that measures are in place to test the knowledge level of information system users;

5)  Provide role-based security and privacy training to employees and contractors with assigned security and privacy roles and responsibilities, including managers, before authorizing access to Federal information or information systems or performing assigned duties;

---

[88] The Federal Information Security Modernization Act of 2014 (44 U.S.C. Chapter 35) requires each agency to develop, document, and implement an agency-wide information security program that includes plans and procedures to ensure continuity of operations for information systems that support the operations and assets of the agency. Plans related to contingency plans for organizational information systems include, for example, Business Continuity Plans, Disaster Recovery Plans, Continuity of Operations Plans, Crisis Communications Plans, Critical Infrastructure Plans, Cyber Incident Response Plans, Insider Threat Implementation Plan, and Occupant Emergency Plans.

[89] Testing of contingency plans must be consistent with the assessment procedures in NIST SP 800-53A, *Guide for Assessing the Security Controls in Federal Information Systems and Organizations.* In addition, Homeland Security Presidential Directive 20, *National Continuity Directive*, requires the establishment and maintenance of an effective national continuity capability. Federal Continuity Directive 1, *Federal Executive Branch National Continuity Program and Requirements*, provides direction for the further development of continuity plans and programs.

6) Establish rules of behavior, including consequences for violating rules of behavior, for employees and contractors that have access to Federal information or information systems, including those that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII; and

7) Ensure that employees and contractors have read and agreed to abide by the rules of behavior for the Federal information and information systems for which they require access prior to being granted access.

i. Specific Safeguarding Measures to Reinforce the Protection of Federal Information and Information Systems[90]

Agencies shall:

1) Implement a policy of least functionality by only permitting the use of networks, systems, applications, and data, as well as programs, functions, ports, protocols, or services that are necessary in meeting mission or business needs;

2) Implement policies of least privilege at multiple layers – network, system, application, and data so that users have role-based access to only the information and resources that are necessary for a legitimate purpose;

3) Implement a policy of separation of duties to address the potential for abuse of authorized privileges and help to reduce the risk of malicious activity without collusion;

4) Isolate sensitive or critical information resources (e.g., information systems, system components, applications, databases, and information) into separate security domains with appropriate levels of protection based on the sensitivity or criticality of those resources;

5) Implement access control policies for information resources that ensure individuals have appropriate authorization and need, and that the appropriate level of identity proofing or background investigation is conducted prior to granting access;

6) Protect administrator, user, and system documentation related to the design, development, testing, operation, maintenance, and security of the hardware, firmware, and software components of information systems;

7) Continuously monitor, log, and audit the execution of information system functions by privileged users (that ordinary users are not authorized to perform) to detect misuse and to help reduce the risk from insider threats;

8) Prohibit the use of unsupported information systems and system components, and ensure that systems and components that cannot be appropriately protected or secured are given a high priority for upgrade or replacement;[91]

---

[90] NIST SP 800-53, *Security and Privacy Controls for Federal Information Systems and Organizations*, provides information on additional security safeguarding measures.

[91] Includes hardware, software, or firmware components no longer supported by developers, vendors, or manufacturers through the availability of software patches, firmware updates, replacement parts, and maintenance contracts. NIST SP 800-53, *Security and Privacy Controls for Federal Information Systems and Organizations*, provides additional guidance on unsupported software components.

Appendix I - 12

9) Implement and maintain current updates and patches for all software and firmware components of information systems;[92]

10) For systems that promote public access, ensure that identity proofing, registration, and authentication processes provide assurance of identity consistent with security and privacy requirements, in accordance with Executive Order 13681,[93] OMB policy, and NIST standards and guidelines;

11) Require use of multifactor authentication for employees and contractors in accordance with Government-wide identity management standards;[94]

12) Develop and implement processes to support use of digital signatures for employees and contractors;

13) Ensure that all public key infrastructure (PKI) certificates used by an agency and issued in accordance with Federal PKI policy validate to the Federal PKI trust anchor when being used for user signing, encrypting purposes, authentication and authorization;[95]

14) Encrypt all FIPS 199 moderate-impact and high-impact information at rest and in transit, unless encrypting such information is technically infeasible or would demonstrably affect the ability of agencies to carry out their respective missions, functions, or operations; and the risk of not encrypting is accepted by the authorizing official and approved by the agency CIO, in consultation with the SAOP (as appropriate);[96]

15) Implement the current encryption algorithms and validated cryptographic modules in accordance with NIST standards and guidelines;

16) Ensure that only individuals or processes acting on behalf of individuals with legitimate need for access have the ability to decrypt sensitive information;

17) Implement data-level protection and access controls to ensure the security of and access to Federal information; and

---

[92] Security-relevant software and firmware updates include, for example, patches, service packs, hot fixes, device drivers, basic input output system (BIOS), and antivirus signatures.

[93] Executive Order 13681, *Improving the Security of Consumer Financial Transactions*, October 2014.

[94] Pursuant to Homeland Security Presidential Directive 12, *Policy for a Common Identification Standard for Federal Employees and Contractors*, NIST FIPS 201 describes the initial Government-wide identity management standard for employees and contractors as a smartcard form factor (the PIV card). With the emergence of a newer generation of computing devices and in particular with mobile devices, the use of PIV cards has evolved technically to include other form factors that can be deployed directly with mobile devices as specified in NIST SP 800-157. The PIV credential associated with this alternative is called a Derived PIV Credential. Derived PIV Credentials are based on the general concept of derived credentials in NIST SP 800-63. Issuing a Derived PIV credential to PIV card holders does not require repeating identity proofing and vetting processes. The user simply proves possession and control of a valid PIV Card to receive a Derived PIV Credential.

[95] The trust anchor refers to the Federal PKI root certificate operated by the Federal PKI Management Authority. This root certificate is the trusted source of all Federal PKI certificates. For additional information, refer to https://www.idmanagement.gov and Federal PKI policy.

[96] The encryption of organizational information when in transit over a network and when at rest in storage devices ensures that such information is persistently protected and promotes a defense-in-depth security strategy.

18) Ensure that all Federal systems and services identified in the Domain Name System are protected with Domain Name System Security (DNSSEC) and that all systems are capable of validating DNSSEC protected information.[97]

j.  Non-Federal Entities

Agencies shall:

1) Ensure that terms and conditions in contracts and other agreements involving the creation, collection, use, processing, storage, maintenance, dissemination, disclosure, and disposal of Federal information, incorporate security and privacy requirements and are sufficient to enable agencies to meet Federal and agency-specific requirements pertaining to the protection of Federal information;[98]

2) Provide oversight of information systems used or operated by contractors or other entities on behalf of the Federal Government or that collect or maintain Federal information on behalf of the Federal Government, to include:

   a) Documenting and implementing policies and procedures for information security and privacy oversight, to include ensuring appropriate vetting and access control processes for contractors and others with access to information systems containing Federal information;

   b) Ensuring that security and privacy controls of such information systems and services are effectively implemented and comply with NIST standards and guidelines and agency requirements;

   c) Ensuring that these information systems are included in the agency's inventory of information systems;

   d) Ensuring that the interface characteristics, security requirements, and the nature of the information communicated is documented for each interface between these systems and agency-owned or operated information systems;

   e) Ensuring that procedures are in place for incident response for these information systems including timelines for notification of affected individuals and reporting to OMB, DHS, and other entities as required in OMB guidance;

   f) Requiring agreements (e.g., memoranda of understanding, interconnection security agreements, contracts) for interfaces between these information systems and agency-owned or operated information systems; and

3) Consistent with the agency's authority, ensure that the requirements of the Privacy Act apply to a Privacy Act system of records when a contractor operates the system of records on behalf of the agency to accomplish an agency function;

4) Collaborate with non-Federal entities and other agencies as appropriate to ensure that security and privacy requirements pertaining to these non-Federal entities, such as State,

---

[97] DNSSEC is a critical component of the Internet infrastructure. DNSSEC enables clients to cryptographically verify that each such translation is provided by a server with the authority to do so, and that the translation response from the server was not modified before reaching the client.

[98] For additional information and associated requirements pertaining to IT acquisitions, refer to the FAR.

TD_0001277

local, tribal, and territorial governments, are consistent to the greatest extent possible; and

5) Ensure that terms and conditions of contracts and other agreements include sufficient provisions for Federal Government notification and access, as well as cooperation with agency personnel and Inspectors General.

k. Mitigation of Deficiencies and Issuance of Status Reports

Agencies shall correct deficiencies that are identified through information security and privacy assessments, ISCM and PCM programs, or internal or external audits and reviews, to include OMB reviews.  OMB Circular A-123, *Management's Responsibility for Internal Controls*, provides guidance to determine whether a deficiency in controls is material when so judged by the agency head against other agency deficiencies.  Material deficiencies must be included in the annual Federal Managers Financial Integrity Act (FMFIA) report, and remediation tracked and managed through the agency's POA&M process. Less significant deficiencies need not be included in the FMFIA report, but must be tracked and managed through the agency's POA&M process.

l. Reporting

Agencies shall provide performance metrics information and FISMA reports in accordance with processes established by OMB and DHS pursuant to FISMA.

m. Independent Evaluations

Pursuant to FISMA, agencies shall:[99]

1) Perform an independent evaluation of the information security programs and practices to determine the effectiveness of such programs and practices, as further described in statute.[100]  The evaluation may include an evaluation of their privacy program and practices, as appropriate. Each evaluation shall include:

   a) Testing of the effectiveness of information security policies, procedures, and practices of a representative subset of the agency's Federal information systems;[101]

   b) An assessment of the effectiveness of the information security policies, procedures, and practices of the agency; and

   c) Separate presentations, as appropriate, regarding information security relating to national security systems.

---

[99] FISMA (44 U.S.C. § 3555).

[100] FISMA (44 U.S.C. § 3555).

[101] Agencies have flexibility in implementing the baseline controls in SP 800-53; however, agencies are required to justify, in their security plans or overlays, any tailoring actions.

## 5. Discussion of the Major Provisions in the Appendix

This section provides additional information regarding the requirements in this appendix.

a.  NIST Standards and Guidelines

NIST standards and guidelines associate each information system with an impact level.  The standards and guidelines also provide a corresponding starting set of baseline security controls and tailoring guidance[102] to ensure that the set of security controls in the information system security plan (approved by the authorizing official) and privacy controls in the privacy plan (approved by the SAOP) satisfy the information security, privacy, and mission or business protection needs of the agency.

For non-national security programs and information systems, agencies must apply NIST guidelines unless otherwise stated by OMB. FIPS are mandatory.[103]  There is flexibility within NIST's guidelines (specifically in the 800-series) in how agencies apply those guidelines.  Unless specified by additional implementing policy by OMB, the concepts and principles described in NIST guidelines must be applied.  However, NIST guidelines generally allow agencies latitude in their application.  Consequently, the application of NIST guidelines by agencies can result in different solutions that are equally acceptable and compliant with the guidelines.

For legacy information systems, agencies are expected to meet the requirements of, and be in compliance with, NIST standards and guidelines within one year of their respective publication dates unless otherwise directed by OMB.  The one-year compliance date for revisions to NIST publications applies only to new or updated material in the publications. For information systems under development or for legacy systems undergoing significant changes, agencies are expected to meet the requirements of, and be in compliance with, NIST standards and guidelines immediately upon deployment of the systems.

b.  Risk Management Strategy

Managing risk is a complex, multifaceted activity that requires the involvement of the entire agency—from senior leaders and executives providing the strategic vision and top-level goals and objectives for the agency; to mid-level leaders planning, executing, and managing projects; to individuals on the front lines operating the information systems supporting the agency's missions or business functions.  Risk management is a comprehensive process that requires agencies to establish the context in which risk-based decisions are made; assess risk; respond to risk once determined; and monitor risk on an ongoing basis using effective organizational communications and a feedback loop for continuous improvement in the risk-related activities of agencies.  Risk management is conducted as an agency-wide activity to ensure that risk-based decision-making is integrated into every aspect of the agency's planning and operations.

---

[102] Agencies must conduct tailoring activities in accordance with OMB policy.

[103] Pursuant to FISMA (44 U.S.C. Chapter 35).

Appendix I - 16

A key aspect of the risk management process is the development of the risk management strategy. The risk management strategy describes how an agency intends to assess risk, respond to risk, and monitor risk—making explicit and transparent the risk perceptions that agencies routinely use in making both investment and operational decisions. Establishing a realistic and credible risk management strategy requires that agencies identify their risk assumptions, risk constraints, risk tolerance, and priorities and trade-offs. The risk management strategy also includes any strategic-level decisions by senior leaders and executives regarding the management of risk to agency operations and assets, individuals, other organizations, and the Nation. The risk management strategy guides and informs the use and application of the Risk Management Framework.

c.   Risk Management Framework

The Risk Management Framework, as described in NIST SP 800-37, provides a disciplined and structured process that integrates information security and risk management activities into the system development life cycle. The Risk Management Framework requires agencies to categorize each information system and the information processed, stored, and transmitted by each system based on a mission or business impact analysis. Agencies select an initial set of baseline security controls for the information system based on the security categorization and then tailor the security control baseline as needed, based on an organizational assessment of risk and local conditions, as described in NIST SP 800-53. After implementing the security controls, agencies assess the controls using appropriate assessment methods as described in NIST SP 800-53A to determine whether the controls are implemented correctly, operating as intended, and producing the desired outcome with respect to meeting the security requirements for the system.

The authorization to operate the system is based on a determination of the risk to agency operations and assets, individuals, other organizations, and the Nation resulting from the operation and use of the system and the decision by the authorizing official that this risk is acceptable. Subsequent to the authorization decision and as part of an information security continuous monitoring strategy and program, agencies monitor the security controls in the system on an ongoing basis, as described in NIST SP 800-137. Monitoring includes, but is not limited to, assessing control effectiveness, documenting changes to the system or its environment of operation, conducting security impact analyses of the associated changes, and reporting the security state of the system to designated agency officials on an ongoing basis.

An effective implementation of the Risk Management Framework ensures that managing information system-related risks is consistent with the agency's mission or business objectives and overall risk management strategy, and risk tolerance established by the senior leadership through the risk executive function[104] as discussed in NIST SP 800-39. It also ensures that the requisite security and privacy requirements and controls are integrated into

---

[104] The *risk executive function* is an individual or group within an agency that helps to ensure that: (i) risk-related considerations for individual information systems, to include the authorization to operate decisions, are viewed from an agency-wide perspective with regard to the overall strategic goals and objectives of the agency in carrying out its missions and business functions; and (ii) managing information system-related risks is consistent across the agency, reflects the agency's risk tolerance, and is considered along with other agency risks affecting its missions or business functions.

the agency's enterprise architecture and system development life cycle processes.  Finally, the Risk Management Framework supports consistent, well-informed, and ongoing authorization decisions, transparency of risk management information, reciprocity, and information sharing.

d.  Security Control Baselines

It is important to achieve adequate security for Federal information and information systems and a consistent level of protection for such information and systems Government-wide.  To meet this objective, agencies must select an appropriate set of security controls for their information systems that satisfies the minimum security requirements set forth in FIPS Publication 200.  The security controls must include one of the three security control baselines from NIST SP 800-53 that are associated with the designated categorization (impact levels) of their information systems.  The security control baselines define the set of minimum security controls for a low-impact, moderate-impact, or high-impact information system and provide a starting point for the tailoring process.  Agencies are required to tailor the security control baselines to customize their safeguarding measures for specific missions, business lines, and operational environments—and to do so in a cost-effective, risk-based manner.  Tailoring allows agencies to designate common controls; apply scoping considerations; select compensating controls; assign specific values to agency-defined control parameters; supplement baselines with additional controls when necessary; and provide additional specification information for control implementation.  Agencies must include a justification, in their information system security plans or overlays, for any tailoring actions that result in changes to the initial security control baselines.  Agencies are not permitted to make changes to security control baselines when such changes result in control selections that are inconsistent with security requirements set forth in Federal statutes, executive orders, regulations, directives, or policies.

Agencies may also develop overlays for specific types of information or communities of interest (e.g., all web-based applications, all health care-related systems) as part of the security control selection process.  Overlays provide a specification of security or privacy controls, control enhancements, supplemental guidance, and other supporting information as part of the tailoring process, that is intended to complement (and further refine) security control baselines.  The overlay may be more stringent or less stringent than the original security control baseline and can be applied to multiple information systems.

All selected security controls must be documented in an information system security plan and implemented.  Agencies can use the priority code designations associated with each security control in NIST SP 800-53 to assist in making sequencing decisions for control implementation.  This prioritization helps to ensure that the foundational security controls upon which other controls depend are implemented first, thus enabling agencies to deploy controls in a more structured and timely manner in accordance with available resources.  Independent evaluations, when conducted, shall focus on the effectiveness of the security controls selected and implemented (as documented in agency information system security plans after all tailoring actions have been completed on the security control baselines) and the justification for any decisions to change the control baselines.

Appendix I - 18

e.  Security and Privacy Assessments

Agencies must ensure that periodic testing and evaluation of the effectiveness of information security and privacy policies, procedures, and practices are performed with a frequency depending on risk, but at least annually. However, this general requirement to test and evaluate the effectiveness of information security and privacy policies, procedures, and practices does not imply that agencies must assess every selected and implemented security and privacy control at least annually. Rather, agencies must continuously monitor all implemented security and privacy controls (i.e., system-specific, hybrid, and common controls) with a frequency determined by the agency in accordance with the ISCM and PCM strategies. These strategies will define the specific security and privacy controls selected for assessment during any one-year period (i.e., the annual assessment window) with the understanding that all controls may not be formally assessed every year. Rotational assessment of security and privacy controls is consistent with the transition to ongoing authorization and assumes the information system has completed an initial authorization where all controls were formally assessed for effectiveness. As the transition to ongoing authorization progresses and agency ISCM programs mature, agencies must ensure that assessment frequencies are determined in accordance with NIST SP 800-137.

Security and privacy control assessments shall ensure that security and privacy controls selected by agencies are implemented correctly, operating as intended, and effective in satisfying security and privacy requirements. The risk may change over time based on changes in the threat, agency missions or business functions, personnel, technology, or environments of operation. Consequently, maintaining a capability for real-time or near real-time analysis of the threat environment and situational awareness following an incident is paramount. The type, rigor, and frequency of control assessments, which is established by the agency's risk tolerance and risk management strategy, shall be commensurate with the level of awareness necessary for effectively determining information security and privacy risk. Technical security tools such as malicious code scanners, vulnerability assessment products (which look for known security weaknesses, configuration errors, and the installation of the latest patches), and penetration testing can assist in the ongoing assessment of information systems.

f.  Authorizing Official

The authorizing official is a senior agency official or executive with the authority to formally assume responsibility for operating an information system at an acceptable level of risk to agency operations and assets, individuals, other organizations, and the Nation. Authorizing officials have budgetary oversight for an information system or be responsible for the mission or business operations supported by the system. Through the authorization process, authorizing officials are responsible and accountable for the risks associated with information system operations. Because information security is closely related to the privacy protections required for PII, authorizing officials are also responsible and accountable for the privacy risks that arise from the operation of an information system. Accordingly, authorizing officials must be in management positions with a level of authority commensurate with understanding and accepting such information system-related security and privacy risks.

Appendix I - 19

Since the SAOP is the senior official, designated by the head of each agency, who has overall agency-wide responsibility for privacy, agencies must consider input and recommendations submitted by the SAOP in the authorization decision. Additionally, the SAOP has responsibility for reviewing the authorization package for information systems that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII, to ensure that privacy risks are managed prior to system authorization. In situations where the authorizing official and SAOP cannot reach a final resolution regarding the appropriate protection for the agency information and information system, the head of the agency must review the associated risks and requirements and make a final determination regarding the issuance of the authorization to operate. [105]

Agencies can choose from several different approaches when planning for and conducting authorizations. These include an authorization with a single authorizing official, an authorization with multiple authorizing officials, or leveraging an existing authorization (see Section 6j, *Joint and Leveraged Authorizations*). Agencies can, at their discretion, include the CIO or the SAOP as a co-authorizing official with a senior agency official who has budgetary oversight for an information system or is responsible for the mission or line of business supported by the system being authorized for operation. Regardless of the approach used, only Federal Government personnel may serve as an authorizing official.

g.  Authorization to Operate

The authorization to operate an information system and the authorization of agency-designated common controls granted by senior Federal officials provide an important quality control for agencies. The decision to authorize an information system to operate shall be based on a review of the authorization package and includes an assessment of compliance with applicable requirements and risk to agency operations and assets, individuals, other organizations, and the Nation. As stated above, the decision to authorize a system, or agency-defined common controls, shall be made by the appropriate authorizing official. Since the information system security plan and privacy plan establish the security and privacy controls selected for implementation, those plans are a critical part of the authorization package and shall form the basis for the authorization, supplemented by more specific information as needed.

In the event that there is a change in authorizing officials, the new authorizing official reviews the current authorization decision document, authorization package, and any updated documents created as a result of the continuous monitoring activities. If the new authorizing official is willing to accept the currently documented risk, then the official signs a new authorization decision document, thus formally transferring responsibility and accountability for the information system or the common controls and explicitly accepting the risk. If the new authorizing official is not willing to accept the previous authorization results (including the identified risk), a reauthorization action may need to be initiated or the new authorizing

---

[105] The head of the agency is the highest-level senior official or executive within an agency with the overall responsibility to provide information security protections commensurate with the risk and magnitude of harm (i.e., impact) to organizational operations and assets, individuals, other organizations, and the Nation.

Appendix I - 20

official may instead establish new terms and conditions for continuing the original authorization, but not extend the original authorization termination date.

h.  Ongoing Authorization

Ongoing authorization[106] is a process whereby the authorizing official makes risk determination and risk acceptance decisions subsequent to the initial authorization, taken at agreed-upon and documented frequencies in accordance with the agency's risk tolerance and mission or business requirements.  In order to implement an ongoing authorization process, and move from a static, point-in-time authorization process to a dynamic, near real-time ongoing authorization process for information systems and controls, two conditions must be met by agencies.  First, the information system or common controls must have been granted an initial authorization to operate by the designated authorizing official.  Second, ISCM and PCM programs must be in place to monitor all implemented security and privacy controls with the appropriate degree of rigor[107] and at the appropriate frequencies in accordance with applicable ISCM and PCM strategies, OMB guidance, and NIST guidelines.  Ongoing authorization can either be a time-driven or event-driven process whereby the authorizing official is provided with the necessary and sufficient information regarding the near real-time state of the information system and inherited common controls to determine whether all applicable security and privacy requirements have been satisfied and the mission or business risk is acceptable.  Effective ongoing authorization requires robust ISCM and PCM strategies and effective operational ISCM and PCM programs.

Agencies must define and implement a process to designate information systems or common controls that have satisfied the two conditions noted in the previous paragraph and are to be transitioned to ongoing authorization.  The process includes the means for the authorizing official to formally acknowledge that the information system or common controls are being managed under an ongoing authorization process and accept the responsibility for ensuring that all necessary activities associated with the ongoing authorization process are performed.  Until a formal approval is obtained from the authorizing official to transition to ongoing authorization, information systems (and common controls) remain under a static authorization process with specific authorization termination dates enforced by the agency.

i.  Reauthorization

Reauthorization consists of a review of the information system similar to the review carried out during the initial authorization but conducted during the operations or maintenance phase of the system development life cycle rather than prior to that phase. In general, reauthorization actions may be time-driven or event-driven.  However, under ongoing authorization, reauthorization is typically an event-driven action initiated by the authorizing official or directed by the Risk Executive (function) in response to an event or significant

---

[106] For additional information on Ongoing Authorization and its relationship to initial authorization and reauthorization, refer to NIST *Supplemental Guidance on Ongoing Authorization: Transitioning to Near Real-Time Risk Management,* http://csrc.nist.gov/publications.

[107] The term rigor is used in conjunction with security control assessments and monitoring.  It is typically associated with the application of assessment methods described in NIST SP 800-53A, and in particular, the attribute of depth which addresses the formality and comprehensiveness of the assessment or monitoring activity.

Appendix I - 21

change that increases information security or privacy risk above the previously agreed-upon agency risk tolerance. A significant change is defined as a change that is likely to affect the security or privacy state of an information system.

The reauthorization process differs from the initial authorization inasmuch as the authorizing official can initiate a complete zero-base review of the information system or common controls, or a targeted review based on the type of event or significant change that triggered the reauthorization, the assessment of risk related to the event, the risk response of the agency, and the agency risk tolerance. Reauthorization is a separate activity from the ongoing authorization process, though security- and privacy-related information from the agency's ISCM and PCM programs may still be leveraged to support reauthorization. Note also that reauthorization actions may necessitate a review of and changes to the ISCM or PCM strategy, which may in turn affect ongoing authorization.

j.    Joint and Leveraged Authorizations

Agencies are encouraged to use joint and leveraged authorizations whenever practicable.[108] Joint authorizations can be used when multiple agency officials either from the same agency or different agencies, have a shared interest in authorizing an information system or common controls. The participating officials are collectively responsible and accountable for the system and the common controls and jointly accept the risks that may adversely impact agency operations and assets, individuals, other organizations, and the Nation. Agencies choosing a joint authorization approach should work together on the planning and the execution of the Risk Management Framework tasks described in NIST SP 800-37 and document their agreement and progress in implementing the tasks. The specific terms and conditions of the joint authorization are established by the participating parties in the joint authorization including, for example, the process for ongoing determination and acceptance of risk. The joint authorization remains in effect only as long as there is mutual agreement among authorizing officials and the authorization meets the requirements established by Federal or agency policies.

Leveraged authorizations can be used when an agency chooses to accept some or all of the information in an existing authorization package generated by another agency based on the need to use the same information resources (e.g., information system or services provided by the system).[109] The leveraging agency reviews the owning agency's authorization package as the basis for determining risk to the leveraging agency. The leveraging agency considers risk factors such as the time elapsed since the authorization results were produced, differences in environments of operation (if applicable), the impact of the information to be processed, stored, or transmitted, and the overall risk tolerance of the leveraging agency. The leveraging agency may determine that additional security measures are needed and negotiate with the owning agency to provide such measures. To the extent that a leveraged authorization includes an information system that creates, collects, uses, processes, stores,

---

[108] NIST SP 800-37, *Guide for Applying the Risk Management Framework to Federal Information Systems*, provides guidance on joint and leveraged security authorizations.

[109] Agencies using leveraged authorization information from other (owning) agencies shall ensure that such information is included as part of their own Risk Management Framework to provide the appropriate context for managing risk within the leveraging organizations.

maintains, disseminates, discloses, or disposes of PII, leveraging agencies must consult their SAOP. The SAOP may determine that additional measures are required to manage privacy risks prior to leveraging the authorization.

k.  Continuous Monitoring

Agencies must develop ISCM and PCM strategies and implement ISCM and PCM activities in accordance with applicable statutes, directives, policies, instructions, regulations, standards, and guidelines. Agencies have the flexibility to develop an overarching ISCM and PCM strategy (e.g., at the agency, bureau, or component level) that addresses all information systems, or continuous monitoring strategies that address each agency information system individually. The ISCM and PCM strategies must document all available security and privacy controls selected and implemented by agencies, including the frequency of and degree of rigor associated with the monitoring process. ISCM and PCM strategies, which must be approved by the appropriate agency authorizing official and SAOP, respectively, must also include all common controls inherited by agency information systems.

l.  Critical Infrastructure

Agencies that operate information systems that are part of the critical infrastructure must conduct a risk assessment to ensure that security controls for those systems are appropriately tailored (including the deployment of additional controls, when necessary), thus providing the required level of protection for critical Federal missions and business operations. In addition, agencies must ensure that the privacy controls assigned to critical infrastructure meet applicable privacy requirements and manage privacy risks. This includes the continuous monitoring of deployed security and privacy controls in information systems designated as critical infrastructure to determine the ongoing effectiveness of those controls against current threats; improving the effectiveness of those controls, when necessary; managing associated changes to the systems and environments of operation; and satisfying specific protection and compliance requirements in statutes, executive orders, directives, and policies required for critical infrastructure protection.

m.  Encryption

When the assessed risk indicates the need, agencies must encrypt Federal information at rest and in transit unless otherwise protected by alternative physical and logical safeguards implemented at multiple layers, including networks, systems, applications, and data. Encrypting information at rest and in transit helps to protect the confidentiality and integrity of such information by making it less susceptible to unauthorized disclosure or modification. Agencies must apply encryption requirements to Federal information categorized as either moderate or high impact in accordance with FIPS Publication 199 unless encrypting such information is technically unfeasible or would demonstrably affect their ability to carry out their respective mission, functions, or operations. In situations where the use of encryption is technically infeasible, for example, due to an aging legacy system, agencies must initiate the appropriate system or system component upgrade or replacement actions at the earliest opportunity to be able to accommodate such safeguarding technologies. Authorizing officials who choose to operate information systems without the use of required encryption technologies must carefully assess the risk in doing so, and they must receive written

Appendix I - 23

approval for the exception from the agency CIO, in consultation with the SAOP (as appropriate). Only FIPS-validated cryptography is approved for use in Federal information systems covered by this policy.

n.  Digital Signatures

Digital signatures can mitigate a variety of security vulnerabilities by providing authentication and non-repudiation capabilities, and ensuring the integrity of Federal information whether such information is used in day-to-day operations or archived for future use. Additionally, digital signatures can help agencies streamline mission or business processes and transition manual processes to more automated processes to include, for example, online transactions. Because of the advantages provided by this technology, OMB expects agencies to implement digital signature capabilities in accordance with Federal PKI policy, and NIST standards and guidelines. For employees and contractors, agencies must require the use of the digital signature capability of Personal Identity Verification (PIV) credentials. For individuals that fall outside the scope of PIV applicability, agencies should leverage approved Federal PKI credentials when using digital signatures.

o.  Identity Assurance

Identity assurance is an essential element of an effective information security program. To streamline the process of citizens, businesses, and other partners[110] securely accessing Government services online requires a risk-appropriate demand of identity assurance. Identity assurance, in an online context, is the ability of an agency to determine that a claim to a particular identity made by an individual can be trusted to actually be the individual's true identity.[111] Citizens, businesses, and other partners that interact with the Federal Government need to have and be able to present electronic identity credentials to identify and authenticate themselves remotely and securely when accessing Federal information resources. An agency needs to be able to know, to a degree of certainty commensurate with the risk determination, that the presented electronic identity credential truly represents the individual presenting the credential before a transaction is authorized.[112] To transform processes for citizens, businesses, and other partners accessing Federal services online, OMB expects agencies to use a standards-based federated identity management approach that enables security, privacy, ease-of-use, and interoperability among electronic authentication systems.[113]

---

[110] "Other partners" may include contractors not subject to the NIST FIPS 201 identity standard.

[111] Pursuant to Executive Order 13681, *Improving the Security of Consumer Financial Transactions,* agencies making personal data accessible to citizens through digital applications shall require the use of multiple factors of authentication and an effective identity proofing process, as appropriate.

[112] NIST SP 800-63, *Electronic Authentication Guidance*, provides additional guidance on identity assurance.

[113] The requirements in this paragraph focus on citizens, businesses, and other partners that interact with the Federal Government. For Federal employees and contractors, with long-term access to Federal facilities and information systems, agencies are required to follow Personal Identity Verification requirements in accordance with OMB policy and NIST standards and guidelines.

p.   Unsupported Information System Components

Unsupported information system components (e.g., when developers or vendors are no longer providing critical software patches) provide a substantial opportunity for adversaries to exploit weaknesses discovered in the currently installed components. Prohibit the use of unsupported information systems and system components, and ensure that systems and components that cannot be appropriately protected or secured are given a high priority for upgrade or replacement. Exceptions to replacing unsupported system components may include, for example, systems that provide critical mission or business capability where newer technologies are not available or where the systems are so isolated that installing replacement components is not an option. For such systems, agencies can establish in-house support, for example, by developing customized patches for critical software components or securing the services of external providers who through contractual relationships, provide ongoing support for the designated unsupported components. Such contractual relationships can include, for example, open source software value-added vendors.

q.   Cybersecurity Framework

The Cybersecurity Framework was developed by NIST in response to Executive Order 13636, *Improving Critical Infrastructure Cybersecurity*. The Framework describes five core cybersecurity functions (i.e., Identify, Protect, Detect, Respond, and Recover) that may be helpful in raising awareness and facilitating communication among agency stakeholders, including executive leadership. The Cybersecurity Framework may also be helpful in improving communications across organizations, allowing cybersecurity expectations to be shared with business partners, suppliers, and among sectors. The Framework is not intended to duplicate the current information security and risk management practices in place within the Federal Government. However, in the course of managing information security risk using the established NIST Risk Management Framework and associated security standards and guidelines required by FISMA, agencies can leverage the Cybersecurity Framework to complement their current information security programs. NIST is responsible for providing guidance on how agencies can use the Cybersecurity Framework and in particular, how the two frameworks can work together to help agencies develop, implement, and continuously improve their information security programs.

r.   FISMA Applicability to Non-Federal Entities

FISMA describes Federal agency security responsibilities as including "information collected or maintained by or on behalf of an agency" and "information systems used or operated by an agency or by a contractor of an agency or other organization on behalf of an agency." FISMA requires each agency to provide information security for the information and "information systems that support the operations and assets of the agency, including those provided or managed by another agency, contractor, or other source." This includes services that are either fully or partially provided, including agency-hosted, outsourced, and cloud-based solutions.

Additionally, because FISMA applies to Federal information and information systems, in certain circumstances, its requirements also apply to a specific class of IT that the Clinger-Cohen Act of 1996 (40 U.S.C. § 11101(6)) did not include, i.e., "equipment that is acquired

TD_0001288

by a Federal contractor incidental to a Federal contract." Therefore, when Federal information is used within incidentally acquired equipment, the agency continues to be responsible and accountable for ensuring that FISMA requirements are met for such information.

s.  Controlled Unclassified Information

The Controlled Unclassified Information program, established by Executive Order 13556, is a system that standardizes and simplifies the way the agencies handle unclassified information that requires safeguarding or dissemination controls, pursuant to and consistent with applicable law, regulations, and Government-wide policies. The program emphasizes the openness and uniformity of Government-wide practices. Its purpose is to address inefficient and confusing processes that have historically led to inconsistent marking and safeguarding as well as restrictive dissemination policies.

## 6.  Other Requirements

Agencies must adhere to all other applicable information requirements such as privacy requirements in accordance with the Privacy Act of 1974, and its implementing OMB guidance; confidentiality protection requirements in accordance with the Confidentiality Information Protection and Statistical Efficiency Act of 2002 (CIPSEA) and its implementing OMB guidance; applicable requirements of statutes, and regulations pertaining to management of Federal records; and other relevant statutes, executive orders, Presidential directives, and policies.

## 7.  References[114]

a.  The following references are used within this policy:

1)  Executive Order 13556, *Controlled Unclassified Information*, November 2010.

2)  Executive Order 13636, *Improving Critical Infrastructure Cybersecurity*, February 2013.

3)  Executive Order 13681, *Improving the Security of Consumer Financial Transactions*, October 2014.

4)  Homeland Security Presidential Directive 12, *Policy for a Common Identification Standard for Federal Employees and Contractors*, August 2004.

5)  Homeland Security Presidential Directive 20 (National Security Presidential Directive 51), *National Continuity Policy*, May 2007.

6)  Federal Continuity Directive 1 (FCD 1), *Federal Executive Branch National Continuity Program and Requirements*, February 2008.

7)  National Communications System (NCS) Directive 3-10, *Minimum Requirements for Continuity Communications Capabilities*, July 2007.

---

[114] Statutes, executive orders, and Presidential directives relevant to this appendix are listed in the Authorities section of the main body. Additionally, OMB policy documents can be located at https://www.whitehouse.gov/omb/circulars_default and https://www.whitehouse.gov/omb/memoranda_default

TD_0001289

8) National Institute of Standards and Technology Federal Information Processing Standards Publication 199, *Standards for Security Categorization of Federal Information and Information Systems.*

9) National Institute of Standards and Technology Federal Information Processing Standards Publication 200, *Minimum Security Requirements for Federal Information and Information Systems.*

10) National Institute of Standards and Technology Federal Information Processing Standards Publication 201, *Personal Identity Verification of Federal Employees and Contractors.*

11) National Institute of Standards and Technology Special Publication 800-18, *Guide for Developing Security Plans for Federal Information Systems.*

12) National Institute of Standards and Technology Special Publication 800-30, *Guide for Conducting Risk Assessments.*

13) National Institute of Standards and Technology Special Publication 800-37, *Guide for Applying the Risk Management Framework to Federal Information Systems: A Security Life Cycle Approach.*

14) National Institute of Standards and Technology Special Publication 800-39, *Managing Information Security Risk: Organization, Mission, and Information System View.*

15) National Institute of Standards and Technology Special Publication 800-47, *Security Guide for Interconnecting Information Technology Systems.*

16) National Institute of Standards and Technology Special Publication 800-53, *Security and Privacy Controls for Federal Information Systems and Organizations.*

17) National Institute of Standards and Technology Special Publication 800-53A, *Guide for Assessing the Security Controls in Federal Information Systems and Organizations: Building Effective Security Assessment Plans.*

18) National Institute of Standards and Technology Special Publication 800-59, *Guideline for Identifying an Information System as a National Security System.*

19) National Institute of Standards and Technology Special Publication 800-60, *Guide for Mapping Types of Information and Information Systems to Security Categories.*

20) National Institute of Standards and Technology Special Publication 800-63, *Electronic Authentication Guideline.*

21) National Institute of Standards and Technology Special Publication 800-73, *Interfaces for Personal Identity Verification.*

22) National Institute of Standards and Technology Special Publication 800-76, *Biometric Specifications for Personal Identity Verification.*

23) National Institute of Standards and Technology Special Publication 800-78, *Cryptographic Algorithms and Key Sizes for Personal Identity Verification.*

Appendix I - 27

24) National Institute of Standards and Technology Special Publication 800-79, *Guidelines for the Authorization of Personal Identity Verification Card Issuers (PCI) and Derived PIV Credential Issuers (DPCI)*.

25) National Institute of Standards and Technology Special Publication 800-116, *Guidelines for the Use of PIV Credentials in Physical Access Control Systems (PACS)*.

26) National Institute of Standards and Technology Special Publication 800-122, *Guide to Protecting the Confidentiality of Personally Identifiable Information (PII)*.

27) National Institute of Standards and Technology Special Publication 800-137, *Information Security Continuous Monitoring for Federal Information Systems and Organizations*.

28) National Institute of Standards and Technology Special Publication 800-157, *Guidelines for Derived Personal Identity Verification Credentials*.

29) National Institute of Standards and Technology Special Publication 800-161, *Supply Chain Risk Management Practices for Federal Information Systems and Organizations*.

30) National Institute of Standards and Technology Special Publication 800-162, *Guide to Attribute Based Access Control (ABAC) Definition and Considerations*.

31) National Institute of Standards and Technology Special Publication 800-171, *Protecting Controlled Unclassified Information in Nonfederal Information Systems and Organizations.*

32) National Institute of Standards and Technology *Framework for Improving Critical Infrastructure Cybersecurity.*

33) National Institute of Standards and Technology *Supplemental Guidance on Ongoing Authorization: Transitioning to Near Real-Time Risk Management*.

b. References in this section without specific publication dates or revision numbers refer to the most recent updates to those publications.

**Appendix II to OMB Circular A-130**
**Responsibilities for Managing Personally Identifiable Information**

## 1. Purpose

This Appendix outlines some of the general responsibilities for Federal agencies managing information resources that involve personally identifiable information (PII) and summarizes the key privacy requirements included in other sections of this Circular. The requirements included in this Appendix apply to PII in any form or medium, including paper and electronic media. Although all of the requirements referenced in this Appendix concern the management of PII, some of the requirements are not solely the responsibility of agencies' privacy programs. The inclusion of shared requirements in this Appendix is not intended to suggest that agencies' privacy programs are solely or primarily responsible for meeting such requirements; however, agencies' privacy programs shall play a key role in meeting requirements that involve PII. This Appendix does not provide a comprehensive account of all the statutory and policy requirements associated with managing PII and protecting privacy. Agencies shall consult law, regulation, and policy, including OMB guidance, to understand all applicable requirements.

The main body of this Circular establishes general policies for Federal agencies managing information resources. Appendix I to this Circular establishes requirements for information security and privacy programs and provides guidance on how agencies should take a coordinated approach when managing Federal information resources. This Appendix and Appendix I are companion documents; it is important to review the appendices together in order to understand the coordination between privacy and security. As noted in the citations, all of the requirements summarized in the tables in this Appendix come from the main body or Appendix I to this Circular.

Previous versions of Circular A-130 included information about the reporting and publication requirements of the Privacy Act of 1974 ("Privacy Act") and additional OMB guidance. This information is being revised and will be reissued in OMB Circular A-108.[115] This Appendix does not extend or interpret the Privacy Act, including agency requirements under the Privacy Act.

## 2. Introduction

The Federal Government necessarily creates, collects, uses, processes, stores, maintains, disseminates, discloses, and disposes of PII to carry out missions mandated by Federal statute. The term PII, as defined in this Circular, refers to information that can be used to distinguish or trace an individual's identity, either alone or when combined with other information that is linked or linkable to a specific individual. Because there are many different types of information that can be used to distinguish or trace an individual's identity, the term PII is necessarily broad. To determine whether information is PII, the agency shall perform an assessment of the specific risk that an individual can be identified using the information with other information that is linked or linkable to the individual. In performing this assessment, it is important to recognize

---

[115] Agencies shall continue to apply the requirements in Appendix I of the 2000 version of Circular A-130 regarding review, reporting, and publication pertaining to the Privacy Act until OMB issues a revised version of those requirements in OMB Circular A-108.

Appendix II - 1

that information that is not PII can become PII whenever additional information becomes available – in any medium and from any source – that would make it possible to identify an individual.

Once the agency determines that an information system contains PII, the agency shall then consider the privacy risks and the associated risk to agency operations, agency assets, individuals, other organizations, and the Nation.  When considering privacy risks, the agency shall consider the risks to an individual or individuals associated with the agency's creation, collection, use, processing, storage, maintenance, dissemination, disclosure, and disposal of their PII.  In particular, the agency shall evaluate the sensitivity of each individual data element that is PII, as well as all of the data elements together.  The sensitivity level of the PII will depend on the context, including the purpose for which the PII is created, collected, used, processed, stored, maintained, disseminated, disclosed, or disposed.  For example, the sensitivity level of a list of individuals' names may depend on the source of the information, the other information associated with the list, the intended use of the information, the ways in which the information will be processed and shared, and the ability to access the information.  In addition, when determining the privacy and associated risks, the agency shall also consider the volume of PII.  A higher volume of PII about a single individual or multiple individuals may pose increased privacy or associated risks.

### 3.  Fair Information Practice Principles

The Fair Information Practice Principles (FIPPs) are a collection of widely accepted principles that agencies should use when evaluating information systems, processes, programs, and activities that affect individual privacy.  The FIPPs are not OMB requirements; rather, they are principles that should be applied by each agency according to the agency's particular mission and privacy program requirements.

Rooted in a 1973 Federal Government report from the Department of Health, Education, and Welfare Advisory Committee, "Records, Computers and the Rights of Citizens," the FIPPs have informed Federal statute and the laws of many U.S. states and foreign nations, and have been incorporated in the policies of many organizations around the world.  The precise expression of the FIPPs has varied over time and in different contexts.  However, the FIPPs retain a consistent set of core principles that are broadly relevant to agencies' information management practices. For purposes of this Circular, the FIPPs are as follows:

a.  *Access and Amendment*.  Agencies should provide individuals with appropriate access to PII and appropriate opportunity to correct or amend PII.[116]

b.  *Accountability*.  Agencies should be accountable for complying with these principles and applicable privacy requirements, and should appropriately monitor, audit, and document compliance.  Agencies should also clearly define the roles and responsibilities with respect to

---

[116] The Access and Amendment principle is included as part of the "Individual Participation" privacy control family in NIST SP 800-53, *Security and Privacy Controls for Federal Information Systems*.  OMB is including Access and Amendment as a stand-alone principle in this Circular to emphasize the importance of allowing individuals to access and amend their information when appropriate.

PII for all employees and contractors, and should provide appropriate training to all employees and contractors who have access to PII.

c. *Authority*.  Agencies should only create, collect, use, process, store, maintain, disseminate, or disclose PII if they have authority to do so, and should identify this authority in the appropriate notice.[117]

d. *Minimization*.  Agencies should only create, collect, use, process, store, maintain, disseminate, or disclose PII that is directly relevant and necessary to accomplish a legally authorized purpose, and should only maintain PII for as long as is necessary to accomplish the purpose.[118]

e. *Quality and Integrity*.  Agencies should create, collect, use, process, store, maintain, disseminate, or disclose PII with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to ensure fairness to the individual.

f. *Individual Participation*.  Agencies should involve the individual in the process of using PII and, to the extent practicable, seek individual consent for the creation, collection, use, processing, storage, maintenance, dissemination, or disclosure of PII. Agencies should also establish procedures to receive and address individuals' privacy-related complaints and inquiries.

g. *Purpose Specification and Use Limitation*.  Agencies should provide notice of the specific purpose for which PII is collected and should only use, process, store, maintain, disseminate, or disclose PII for a purpose that is explained in the notice and is compatible with the purpose for which the PII was collected, or that is otherwise legally authorized.

h. *Security*.  Agencies should establish administrative, technical, and physical safeguards to protect PII commensurate with the risk and magnitude of the harm that would result from its unauthorized access, use, modification, loss, destruction, dissemination, or disclosure.

i. *Transparency*.  Agencies should be transparent about information policies and practices with respect to PII, and should provide clear and accessible notice regarding creation, collection, use, processing, storage, maintenance, dissemination, and disclosure of PII.[119]

## 4.  Senior Agency Official for Privacy

Agencies are required to designate a Senior Agency Official for Privacy (SAOP) who has agency-wide responsibility and accountability for ensuring compliance with applicable privacy requirements and managing privacy risks.  The SAOP shall have a central policy-making role and shall ensure that the agency considers the privacy impact of all agency actions and policies that involve PII.  The SAOP's review of privacy risks should begin at the earliest planning and

---

[117] The Authority principle is included as part of the "Purpose Specification" privacy control family in NIST SP 800-53, *Security and Privacy Controls for Federal Information Systems*.  OMB is including Authority as a stand-alone principle in this Circular to emphasize the importance of identifying a specific authority for creating, collecting, using, processing, storing, maintaining, disseminating, or disclosing PII.

[118] In some versions of the FIPPs, the "minimization" principle is referred to under a different name, such as "collection limitation."

[119] In some versions of the FIPPs, the "transparency" principle is referred to under a different name, such as "openness."

TD_0001294

development stages of agency actions and policies that involve PII, and should continue throughout the life cycle of the information.

The SAOP shall ensure that the agency complies with applicable privacy requirements in statute, regulation, and policy.

## 5. Agency Privacy Program

In order to manage Federal information resources that involve PII, agencies shall develop, implement, document, maintain, and oversee agency-wide privacy programs that include people, processes, and technologies. Among other things, where PII is involved, agencies' privacy programs shall play a key role in information security, records management, strategic planning, budget and acquisition, contractors and third parties, workforce, training, incident response, and implementing the Risk Management Framework. This Appendix does not provide a comprehensive account of all the statutory and policy requirements associated with managing PII and protecting privacy. Agencies shall consult law, regulation, and policy, including OMB guidance, to understand all applicable requirements.

Agencies' privacy programs are led by the SAOP and are responsible for ensuring compliance with applicable privacy requirements, developing and evaluating privacy policy, and managing privacy risks. At the discretion of the SAOP and consistent with applicable law, other qualified agency personnel may perform particular privacy functions that are assigned to the SAOP. Many of the requirements summarized in this Appendix are shared requirements and are not solely the responsibility of agencies' privacy programs. The inclusion of shared requirements in this Appendix is intended to convey that agencies' privacy programs shall be responsible to the extent that the requirements pertain to the management of PII.

### a. General Requirements

Agencies shall have comprehensive privacy programs that ensure compliance with applicable privacy requirements, develop and evaluate privacy policy, and manage privacy risks. The following table summarizes many of the general privacy requirements that are set forth in this Circular. While some of the requirements summarized in the table are not exclusively privacy requirements, they may still require the involvement of agencies' privacy programs.

| Responsibility | Description | Citation |
|---|---|---|
| Establish and maintain a comprehensive privacy program. | Agencies shall establish and maintain a comprehensive privacy program that ensures compliance with applicable privacy requirements, develops and evaluates privacy policy, and manages privacy risks. | Main Body § 5(f)(1)(a); Appendix I §§ 3(b), 3(f), 4(e). |
| Ensure compliance with privacy requirements and manage privacy risks. | Agencies shall ensure compliance with all applicable statutory, regulatory, and policy requirements and use privacy impact assessments and other tools to manage privacy risks. Agencies shall cost-effectively manage privacy risks and reduce such risks to an acceptable level. | Main Body §§ 4(g), 5(e)(1)(d), 5(f)(1)(a); Appendix I § 3(a), 3(b)(4), 3(f), 3(g). |

Appendix II - 4

| Responsibility | Description | Citation |
|---|---|---|
| Monitor Federal law, regulation, and policy for changes. | Agencies shall monitor Federal law, regulation, and policy for changes that affect privacy. | Main Body § 5(f)(1)(c). |
| Develop and maintain a privacy program plan. | Agencies shall develop and maintain a privacy program plan that provides an overview of the agency's privacy program, including a description of the structure of the privacy program, the resources dedicated to the privacy program, the role of the SAOP and other privacy officials and staff, the strategic goals and objectives of the privacy program, the program management controls and common controls in place or planned for meeting applicable privacy requirements and managing privacy risks, and any other information determined necessary by the agency's privacy program. | Appendix I § 4(c)(2), 4(e)(1). |
| Designate a Senior Agency Official for Privacy. | The head of each agency shall designate an SAOP who has agency-wide responsibility and accountability for developing, implementing, and maintaining an agency-wide privacy program to ensure compliance with all applicable statues, regulations, and policies regarding the creation, collection, use, processing, storage, maintenance, dissemination, disclosure, and disposal of PII by programs and information systems, developing and evaluating privacy policy, and managing privacy risks at the agency. | Main Body § 5(f)(1)(b); Appendix I § 4(e). |
| Ensure coordination between privacy and other programs. | Agencies shall ensure that the SAOP and the agency's privacy personnel closely coordinate with the agency CIO, senior agency information security officer, and other agency offices and officials, as appropriate. | Main Body §§ 4(h), 5(f)(1)(k); Appendix I §§ 3(b)(11), 4(e)10). |
| Ensure that privacy is addressed throughout the life cycle of each information system. | Agencies shall ensure that privacy is addressed throughout the life cycle of each agency information system. | Main Body §§ 4(g), 5(a)(1)(c)(i), 5(b)(4); Appendix I § 4(b)(2). |
| Incorporate privacy requirements into enterprise architecture. | Agencies shall incorporate Federal privacy requirements into the agency's enterprise architecture to ensure that risk is addressed and information systems achieve the necessary levels of trustworthiness, protection, and resilience. | Appendix I § 4(b)(5). |
| Comply with the Privacy Act. | Agencies shall comply with the requirements of the Privacy Act and ensure that Privacy Act system of records notices are published, revised, and rescinded, as required. | Main Body § 5(f)(1)(g). |
| Conduct privacy impact assessments. | Agencies shall conduct privacy impact assessments in accordance with the E-Government Act and make the privacy impact assessments available to the public in accordance with OMB policy. | Main Body § 5(f)(1)(i). |

Appendix II - 5

| Responsibility | Description | Citation |
|---|---|---|
| Balance the need for information collection with the privacy risks. | Agencies shall ensure that the design of information collections is consistent with the intended use of the information, and the need for new information is balanced against any privacy risks. | Main Body § 4(i). |
| Comply with requirements for disclosure and dissemination. | Agencies shall comply with all applicable privacy statutes and policies governing the disclosure or dissemination of information and comply with any other valid access, use, and dissemination restrictions. | Main Body § 5(e)(1)(b)-(d), 5(e)(7)(h). |
| Maintain and post privacy policies on websites, mobile applications, and other digital services. | Agencies shall maintain and post privacy policies on all agency websites, mobile applications, and other digital services, in accordance with the E-Government Act and OMB policy. | Main Body § 5(f)(1)(j). |
| Provide performance metrics and reports. | Agencies shall provide performance metrics information and reports in accordance with processes established by OMB and DHS pursuant to FISMA. | Appendix I § 4(1). |

b.  Considerations for Managing PII

Agencies' privacy programs shall maintain an inventory of PII, regularly review all PII maintained by the agency, and comply with applicable requirements regarding the creation, collection, use, processing, storage, maintenance, dissemination, disclosure, and disposal of PII. In addition, agencies' privacy programs shall impose, where appropriate, conditions on other agencies and entities to which PII is being disclosed that govern the creation, collection, use, processing, storage, maintenance, dissemination, disclosure, and disposal of the PII.  The following table summarizes the privacy requirements in this Circular that pertain to the general management of PII.  While some requirements summarized in the table are not exclusively privacy requirements, they may still require the involvement of agencies' privacy programs.

| Responsibility | Description | Citation |
|---|---|---|
| Maintain an inventory of agency information systems that involve PII and regularly review and reduce PII to the minimum necessary. | Agencies shall maintain an inventory of the agency's information systems that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII to allow the agency to regularly review its PII and ensure, to the extent reasonably practicable, that such PII is accurate, relevant, timely, and complete; and to allow the agency to reduce its PII to the minimum necessary for the proper performance of authorized agency functions. | Main Body § 5(a)(1)(a)(ii), 5(f)(1)(e). |
| Eliminate unnecessary collection, maintenance, and use of Social Security numbers. | Agencies shall take steps to eliminate unnecessary collection, maintenance, and use of Social Security numbers, and explore alternatives to the use of Social Security numbers as a personal identifier. | Main Body § 5(f)(1)(f). |

Appendix II - 6

| Responsibility | Description | Citation |
|---|---|---|
| Follow approved records retention schedules for records with PII. | Agencies shall ensure that all records with PII are maintained in accordance with applicable records retention or disposition schedules approved by NARA. | Main Body § 5(f)(1)(h). |
| Limit the creation, collection, use, processing, storage, maintenance, dissemination, and disclosure of PII. | Agencies shall limit the creation, collection, use, processing, storage, maintenance, dissemination, and disclosure of PII to that which is legally authorized, relevant, and reasonably deemed necessary for the proper performance of agency functions. | Main Body § 5(f)(1)(d). |
| Require entities with which PII is shared to maintain the PII in an information system with a particular categorization level. | Agencies that share PII shall require, as appropriate, other agencies and entities with which they share PII to maintain the PII in an information system with a particular NIST FIPS Publication 199 confidentiality impact level, as determined by the agency sharing the PII. | Appendix I § 3(c). |
| Impose conditions on the creation, collection, use, processing, storage, maintenance, dissemination, disclosure, and disposal of shared PII through agreements. | Agencies that share PII with other agencies or entities shall impose, where appropriate, conditions (including the selection and implementation of particular security and privacy controls) that govern the creation, collection, use, processing, storage, maintenance, dissemination, disclosure, and disposal of the PII through written agreements, including contracts, data use agreements, information exchange agreements, and memoranda of understanding. | Appendix I § 3(d). |

### c.  Budget and Acquisition

Agencies' privacy programs shall have the resources needed to manage Federal information resources that involve PII.  This will require privacy programs to play a key role in the development of the agencies' budget requests, as well as any decisions to acquire or develop information system technologies and services.  The following table summarizes the privacy requirements in this Circular that pertain to budget and acquisition activities.  While some of the requirements summarized in the table are not exclusively privacy requirements, they may still require the involvement of agencies' privacy programs.

| Responsibility | Description | Citation |
|---|---|---|
| Identify and plan for resources needed for privacy program. | Agencies shall identify and plan for the resources needed to implement privacy programs. | Appendix I § 4(b)(1). |
| Include privacy requirements in IT solicitations. | Agencies shall include privacy requirements in solicitations for IT and services. | Main body § 5(d)(1)(j). |

Appendix II - 7

| Responsibility | Description | Citation |
|---|---|---|
| Establish a process to evaluate privacy risks for IT investments. | Agencies shall consider privacy when analyzing IT investments, and establish a decision-making process that shall cover the life of each information system and include explicit criteria for analyzing the projected and actual costs, benefits, and risks, including privacy risks, associated with the IT investments. | Main Body § 5(d)(3), 5(d)(4)(b). |
| Ensure that privacy risks are addressed and costs are included in IT capital investment plans and budgetary requests. | The SAOP shall review IT capital investment plans and budgetary requests to ensure that privacy requirements (and associated privacy controls), as well as any associated costs, are explicitly identified and included, with respect to any IT resources that will be used to create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII. Agencies shall ensure that agency budget justification materials, in their initial budget submission to OMB, include a statement affirming that the SAOP has conducted the necessary review. | Main Body § 5(a)(3)(e)(ii), 5(3)(3)(e); Appendix I § 4(b)(2), 4(e)(6). |
| Ensure that investment plans meet the privacy requirements appropriate for the life cycle stage of the investment. | Agencies shall ensure that investment plans submitted to OMB as part of the budget process meet the privacy requirements appropriate for the life cycle stage of the investment. | Appendix I § 4(b)(4). |
| Upgrade, replace, or retire unprotected information systems. | Agencies shall plan and budget to upgrade, replace, or retire any information systems for which protections commensurate with risk cannot be effectively implemented. | Appendix I § 4(b)(3). |
| Ensure that SAOPs are made aware of information systems and components that cannot be protected. | Agencies shall ensure that, in a timely manner, SAOPs are made aware of information systems and components that cannot be appropriately protected or secured, and that such systems are given a high priority for upgrade, replacement, or retirement. | Main Body § 5(a)(1)(c)(ii); Appendix I § 3(b)(10). |

d.   Contractors and Third Parties

Agencies' privacy programs shall ensure that entities that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of information on behalf of a Federal agency or that operate or use information systems on behalf of a Federal agency, comply with the privacy requirements in law and OMB policies. The following table summarizes the privacy requirements in this Circular that pertain to contractors and third parties. While some of the requirements summarized in the table are not exclusively privacy requirements, they may still require the involvement of agencies' privacy programs.

TD_0001299

| Responsibility | Description | Citation |
|---|---|---|
| Ensure that contracts and other agreements incorporate privacy requirements. | Agencies shall ensure that terms and conditions in contracts, and other agreements involving the creation, collection, use, processing, storage, maintenance, dissemination, disclosure, and disposal of Federal information, incorporate privacy requirements and are sufficient to enable agencies to meet Federal and agency-specific requirements pertaining to the protection of Federal information. | Main Body § 5(a)(1)(b)(ii); Appendix I § 4(j)(1). |
| Maintain agency-wide privacy training for all employees and contractors. | Agencies shall develop, maintain, and implement mandatory agency-wide privacy awareness and training programs for all employees and contractors. | Appendix I § 4(h)(1)-(2), (4)-(7). |
| Ensure that the Privacy Act applies to contractors where required. | Agencies shall, consistent with the agency's authority, ensure that the requirements of the Privacy Act apply to a Privacy Act system of records when a contractor operates the system of records on behalf of the agency to accomplish an agency function. | Appendix I § 4(j)(3). |
| Oversee information systems operated by contractors. | Agencies shall provide oversight of information systems used or operated by contractors or other entities on behalf of the Federal Government or that collect or maintain Federal information on behalf of the Federal Government. | Appendix I § 4(j)(2). |
| Implement policies on privacy oversight of contractors. | Agencies shall document and implement policies and procedures for privacy oversight of contractors and other entities, to include ensuring appropriate vetting and access control processes for contractors and others with access to information systems containing Federal information. | Appendix I § 4(j)(2)(a). |
| Ensure implementation of privacy controls for contractor information systems. | Agencies shall ensure that privacy controls of information systems and services used or operated by contractors or other entities on behalf of the agency are effectively implemented and comply with NIST standards and guidelines and agency requirements. | Appendix I § 4(j)(2)(b). |
| Maintain an inventory of contractor information systems. | Agencies shall ensure that information systems used or operated by contractors or other entities on behalf of the agency are included in the agency's inventory of information systems. | Appendix I § 4(j)(2)(c). |
| Ensure that incident response procedures are in place for contractor information systems. | Agencies shall ensure that procedures are in place for incident response for information systems used or operated by contractors or other entities on behalf of the agency, including timelines for notification of affected individuals and reporting to OMB, DHS, and other entities as required in OMB guidance. | Appendix I § 4(j)(2)(e). |

e.  Privacy Impact Assessments

As a general matter, an agency shall conduct a privacy impact assessment (PIA) under section 208(b) of the E-Government Act of 2002, absent an applicable exception under that section,

Appendix II - 9

when the agency develops, procures, or uses information technology to create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII.[120]  A PIA is an analysis of how PII is handled to ensure that handling conforms to applicable privacy requirements, determine the privacy risks associated with an information system or activity, and evaluate ways to mitigate privacy risks.  A PIA is both an analysis and a formal document detailing the process and the outcome of the analysis.

A PIA is one of the most valuable tools Federal agencies use to ensure compliance with applicable privacy requirements and manage privacy risks.  Agencies shall conduct and draft a PIA with sufficient clarity and specificity to demonstrate that the agency fully considered privacy and incorporated appropriate privacy protections from the earliest stages of the agency activity and throughout the information life cycle.  In order to conduct a meaningful PIA, the agency's SAOP shall work closely with the program managers, information system owners, information technology experts, security officials, counsel, and other relevant agency officials.

Moreover, a PIA is not a time-restricted activity that is limited to a particular milestone or stage of the information system or PII life cycles.  Rather, the privacy analysis shall continue throughout the information system and PII life cycles.  Accordingly, a PIA shall be considered a living document that agencies are required to update whenever changes to the information technology, changes to the agency's practices, or other factors alter the privacy risks associated with the use of such information technology.

In addition to serving as an important analytical tool for agencies, a PIA also serves as notice to the public regarding the agency's practices with respect to privacy and information technology. All PIAs shall be drafted in plain language and shall be posted on the agency's website, unless doing so would raise security concerns or reveal classified or sensitive information.  Although PIAs are generally required by law, such as by the E-Government Act of 2002, agencies may also develop policies to require PIAs in circumstances where a PIA would not be required by law.

f.  Workforce Management

Agencies' privacy programs shall play a key role in workforce management activities.  The SAOP shall be involved in assessing the hiring and professional development needs at the agency with respect to privacy.  The following table summarizes the privacy requirements in this Circular that pertain to workforce management activities.  While some of the requirements summarized in the table are not exclusively privacy requirements, they may still require the involvement of agencies' privacy programs.

---

[120] *See* 44 U.S.C. § 3501 note; Pub. L. 107–347, § 208(b).  Section 208(b) of the E-Government Act requires agencies, absent an applicable exception under this section, to conduct a PIA before: (i) developing or procuring IT that collects, maintains, or disseminates information that is in an identifiable form; or (ii) initiating a new collection of information that – (I) will be collected, maintained, or disseminated using IT; and (II) includes any information in an identifiable form permitting the physical or online contacting of a specific individual, if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons, other than agencies, instrumentalities, or employees of the Federal Government.

TD_0001301

| Responsibility | Description | Citation |
|---|---|---|
| Ensure that the SAOP is involved in assessing and addressing privacy hiring, training, and professional development needs. | Agencies shall ensure that the SAOP is involved in assessing and addressing the hiring, training, and professional development needs of the agency with respect to privacy. | Main Body § 5(c)(6). |
| Maintain a workforce planning process. | Agencies shall ensure that the CHCO, CIO, CAO, and SAOP develop and maintain a current workforce planning process to ensure that the agency can anticipate and respond to changing mission requirements, maintain workforce skills in a rapidly developing IT environment, and recruit and retain the IT talent needed to accomplish the mission. | Main Body § 5(c)(1). |
| Develop a set of privacy competency requirements. | Agencies shall ensure that the CHCO, CIO, CAO, and SAOP develop a set of competency requirements for information resources staff, including program managers and information security, privacy, and IT leadership positions. | Main Body § 5(c)(1). |
| Ensure that the workforce has the appropriate knowledge and skill. | Agencies shall ensure that the workforce, which supports the acquisition, management, maintenance, and use of information resources, has the appropriate knowledge and skill. | Main Body § 5(c)(2). |
| Take advantage of flexible hiring authorities for specialized positions. | Agencies shall ensure that the CIO, CHCO, SAOP, and other hiring managers take advantage of flexible hiring authorities for specialized positions, as established by OPM. | Main Body § 5(c)(7). |

## g.  Training and Accountability

Agencies' privacy programs shall develop, maintain, and provide agency-wide privacy awareness and training programs for all employees and contractors.  In addition, the privacy program shall establish rules of behavior for employees and contractors with access to PII and hold agency personnel accountable for complying with applicable privacy requirements and managing privacy risks.  The following table summarizes the privacy requirements in this Circular that pertain to training and accountability activities.  Some of the requirements summarized in the table are not solely privacy requirements but may require the involvement of agencies' privacy programs.

| Responsibility | Description | Citation |
|---|---|---|
| Maintain agency-wide privacy training for all employees and contractors. | Agencies shall develop, maintain, and implement mandatory agency-wide privacy awareness and training programs for all employees and contractors. | Appendix I § 4(h)(1). |
| Ensure that privacy training is consistent with applicable policies. | Agencies shall ensure that the privacy awareness and training programs are consistent with applicable policies, standards, and guidelines issued by OMB, NIST, and OPM. | Appendix I § 4(h)(2). |

TD_0001302

| Responsibility | Description | Citation |
|---|---|---|
| Apprise agency employees about available privacy resources. | Agencies shall apprise agency employees about available privacy resources, such as products, techniques, or expertise. | Appendix I § 4(h)(3). |
| Provide foundational and advanced privacy training. | Agencies shall provide foundational as well as more advanced levels of privacy training to information system users (including managers, senior executives, and contractors) and ensure that measures are in place to test the knowledge level of information system users. | Appendix I § 4(h)(4). |
| Provide role-based privacy training to appropriate employees and contractors. | Agencies shall provide role-based privacy training to employees and contractors with assigned privacy roles and responsibilities, including managers, before authorizing access to Federal information or information systems or performing assigned duties. | Appendix I § 4(h)(5). |
| Hold personnel accountable for complying with privacy requirements and policies. | Agencies shall implement policies and procedures to ensure that all personnel are held accountable for complying with agency-wide privacy requirements and policies. | Appendix I § 3(b)(9). |
| Establish rules of behavior for employees and contractors with access to PII and consequences for violating the rules. | Agencies shall establish rules of behavior, including consequences for violating rules of behavior, for employees and contractors that have access to Federal information or information systems, including those that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII. | Appendix I § 4(h)(6). |
| Ensure that employees and contractors read and agree to rules of behavior. | Agencies shall ensure that employees and contractors have read and agreed to abide by the rules of behavior for the Federal information and information systems for which they require access prior to being granted access. | Appendix I § 4(h)(7). |

## h.  Incident Response

Agencies' privacy programs shall develop and implement incident management and response capabilities.  The following table summarizes the privacy requirements in this Circular that pertain to incident response.  While some of the requirements summarized in the table are not solely privacy requirements, they may still require the involvement of agencies' privacy programs.

| Responsibility | Description | Citation |
|---|---|---|
| Maintain formal incident management and response policies and capabilities. | Agencies shall maintain formal incident response capabilities and mechanisms, implement formal incident management policies, and provide adequate training and awareness for employees and contractors on how to report and respond to incidents. | Appendix I § 4(f)(1), (7)-(8). |

Appendix II - 12

| Responsibility | Description | Citation |
|---|---|---|
| Establish roles and responsibilities to ensure oversight and coordination of incident response. | Agencies shall establish clear roles and responsibilities to ensure the oversight and coordination of incident response activities and that incidents are documented, reported, investigated, and handled. | Appendix I § 4(f)(3). |
| Periodically test incident response procedures. | Agencies shall periodically test incident response procedures to ensure effectiveness of such procedures. | Appendix I § 4(f)(4). |
| Document incident response lessons learned and update procedures. | Agencies shall document lessons learned for incident response and update procedures annually or as required by OMB or DHS. | Appendix I § 4(f)(5). |
| Ensure that processes are in place to verify corrective actions. | Agencies shall ensure that processes are in place to verify corrective actions. | Appendix I § 4(f)(6). |
| Report incidents in accordance with OMB guidance. | Agencies shall report incidents to OMB, DHS, the CIO, the SAOP, their respective inspectors general and general counsel, law enforcement, and Congress in accordance with procedures issued by OMB. | Appendix I § 4(f)(9). |
| Provide reports on incidents as required. | Agencies shall provide reports on incidents as required by FISMA, OMB policy, DHS binding operational directives, Federal information security incident center guidelines, NIST guidelines, and agency procedures. | Appendix I § 4(f)(10). |

i.   Risk Management Framework[121]

Agencies' privacy programs have responsibilities under the Risk Management Framework, which is also covered in Appendix I to this Circular. The Risk Management Framework provides a disciplined and structured process that integrates information security, privacy, and risk management activities into the information system development life cycle. This Circular requires agencies to use the Risk Management Framework to manage privacy risks beyond those that are typically included under the "confidentiality" objective of the term "information security."[122] While many privacy risks relate to the unauthorized access or disclosure of PII,

---

[121] Traditionally, the Risk Management Framework was a framework to help agencies address information security and related risks in the authorization process for Federal information systems. As explained in this Appendix, this Circular integrates agencies' privacy programs into the Risk Management Framework process. NIST has published a suite of standards and guidelines that describe how to implement an agency-wide risk management framework. As of the date of this publication, many of the existing NIST standards and guidelines that detail how to implement an agency-wide risk management framework do not fully address the role of privacy and agencies' privacy programs. In the future, NIST may revise or develop standards and guidelines to further clarify how privacy and agencies' privacy programs are integrated into the Risk Management Framework.

[122] The term "information security," as defined in law and in this Circular, includes three objectives: integrity, availability, and confidentiality. The term "confidentiality" means "preserving authorized restrictions on access and disclosure, including means for protecting personal privacy and proprietary information." *See* 44 U.S.C. § 3552.

Appendix II - 13

privacy risks may also result from other activities, including the creation, collection, use, and retention of PII; the inadequate quality or integrity of PII; and the lack of appropriate notice, transparency, or participation.[123]

The Risk Management Framework has the following steps:

1) *Categorize.* Agencies shall categorize each information system and the information processed, stored, and transmitted by that information system based on an assessment of the potential impact that a loss of confidentiality, integrity, or availability of such information or information system would have on agency operations, agency assets, individuals, other organizations, and the Nation.[124] Each information system is categorized at low, moderate, or high impact according to the criteria in NIST standards and guidelines. The SAOP is responsible for reviewing and approving the categorization of information systems that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII.

   The categorization of information systems that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII will depend on the sensitivity of the PII, the privacy risks, and the associated risk to agency operations, agency assets, individuals, other organizations, and the Nation. Agencies should generally categorize information systems that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII at the moderate or high confidentiality impact level.

2) *Select.* Agencies shall select security and privacy controls for each information system. A security control is a safeguard or countermeasure prescribed for an information system or an agency to protect the confidentiality, integrity, and availability of the system and its information. Security controls primarily pertain to security but they can also enhance privacy. Agencies shall select an initial set of baseline security controls for the information system based on the security categorization and then tailor the security control baseline, as needed, based on an assessment of security risk and local conditions.[125]

   A privacy control is an administrative, technical, or physical safeguard employed within an agency to ensure compliance with applicable privacy requirements and manage privacy risks.[126] In order to help agencies satisfy privacy requirements and manage privacy risks, NIST has developed a set of privacy controls, based on the FIPPs, in Special Publication (SP) 800-53, *Security and Privacy Controls for Federal Information*

---

[123] Refer to the Fair Information Practice Principles in section 3 of this Appendix.

[124] *See* National Institute of Standards and Technology FIPS Publication 199, *Standards for Security Categorization of Federal Information and Information Systems* (Feb. 2004), *available at* http://csrc.nist.gov/publications.

[125] The use of a privacy overlay may assist agencies in effectively selecting and tailoring security controls for information systems that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII.

[126] Privacy risks can include risks beyond those that are typically included under the "confidentiality" prong of the term "information security." Agencies shall use privacy controls to manage all privacy risks associated with PII or an information system, regardless of whether those risks would be considered information security risks.

TD_0001305

*Systems and Organizations.*[127]  Agencies are required to use the NIST privacy controls and shall implement a privacy control selection process for information systems. Agencies shall use NIST privacy controls in a manner that is consistent with the agency's authorities, missions, and operational needs.

For privacy controls, the SAOP is responsible for designating which controls the agency will treat as program management, common, information system-specific, and hybrid controls.  Privacy program management controls are controls that are generally implemented at the agency level and essential for managing the agency's privacy program.  Program management controls are distinct from common, information system-specific, and hybrid controls because program management controls are independent of any particular information system.  Agencies shall document program management controls in their privacy program plan.

The other types of controls – common, information system-specific, and hybrid controls – are necessarily implemented, at least in part, at the information system level.  Common controls are controls that are inherited by multiple information systems. When a control is inherited by an information system, the control is selected for the information system but the control is developed, implemented, assessed, authorized, and monitored by programs or officials other than those responsible for the information system. Information system-specific controls are controls that are implemented for a particular information system or the portion of a hybrid control that is implemented for a particular information system.  Hybrid controls are controls that are implemented for an information system in part as a common control and in part as an information system-specific control.

The determination as to whether a privacy control is a common, hybrid, or information system-specific control is based on context.  By assigning privacy controls to an information system as information system-specific, hybrid, or common controls, the agency assigns responsibility and accountability to specific agency programs or officials for the overall development, implementation, assessment, authorization, and monitoring of those controls.  Privacy controls designated by the agency as common controls are, in most cases, managed by an agency program or official other than the information system owner.  Moreover, privacy controls designated as information system-specific controls may be the primary responsibility of information system owners and their respective authorizing officials.  In all cases, the management of privacy controls shall be subject to the coordination and oversight of the SAOP.

3) *Implement.*  Agencies shall implement the security and privacy controls selected for an information system and document how the controls are deployed.  Agencies shall develop and maintain security plans and privacy plans for an information system that provide an overview of the security and privacy requirements for the information system and describe the security and privacy controls in place or planned for meeting those requirements.  All privacy controls that are selected for an information system shall be

---

[127] National Institute of Standards and Technology Special Publication 800-53, *Security and Privacy Controls for Federal Information Systems and Organizations* (Apr. 2013), *available at* http://csrc.nist.gov/publications.

documented in the privacy plan for the information system. The security plan and the privacy plan may be separate or integrated into one consolidated document.

4) *Assess.* Agencies shall assess the security and privacy controls using appropriate methods to determine the extent to which the controls are implemented correctly, operating as intended, and producing the desired outcome with respect to meeting the security and privacy requirements for the system and managing risks. The SAOP shall conduct an initial assessment of the privacy controls selected for an information system prior to operation, and shall assess the privacy controls periodically thereafter at a frequency sufficient to ensure compliance with applicable privacy requirements and to manage privacy risks. If a PIA is conducted for the information system, the agency may incorporate the initial assessment of the privacy controls into the PIA process.

5) *Authorize.* Agencies shall authorize an information system prior to operation and periodically thereafter. Authorization of an information system is an explicit acceptance of the risk to agency operations (including mission, functions, image, or reputation), agency assets, individuals, other organizations, and the Nation, based on the implementation of the security and privacy controls. The determination to authorize an information system shall be made by an agency's authorizing official or officials (which may include the SAOP) and shall be based on a review of the information system authorization package, which includes the security plan, the privacy plan, documented assessments of the security and privacy controls, and any relevant plans of action and milestones.

Authorizing officials are responsible and accountable for the risks associated with an information system. However, since the SAOP is the senior official, designated by the head of each agency, who has agency-wide responsibility for privacy, agencies shall consider recommendations submitted by the SAOP in the decision to authorize an information system. In addition, the SAOP is responsible for reviewing the authorization package for an information system that creates, collects, uses, processes, stores, maintains, disseminates, discloses, or disposes of PII, to ensure compliance with applicable privacy requirements and manage privacy risks prior to system authorization.

6) *Monitor.* Agencies shall monitor and assess security and privacy controls selected for an information system and shall continue to monitor and assess those controls on an ongoing basis. This includes assessing the effectiveness of the security and privacy controls, documenting changes to the information system, analyzing the security and privacy impact associated with the changes, and reporting the state of the system to appropriate agency officials. The type, rigor, and frequency of control assessments shall be sufficient to account for risks that change over time based on changes in the threat environment, agency missions and business functions, personnel, technology, or environments of operation.

The ongoing assessment of privacy risks and privacy controls is referred to as privacy continuous monitoring (PCM). The SAOP shall develop and maintain a written PCM strategy that catalogs the available privacy controls implemented at the agency across the agency risk management tiers and ensures that the controls are effectively monitored

on an ongoing basis by assigning an agency-defined assessment frequency to each control that is sufficient to ensure compliance with applicable privacy requirements and to manage privacy risks.

In addition, the SAOP shall establish and maintain a PCM program to implement the PCM strategy. The PCM program is an agency-wide program that is responsible for: maintaining ongoing awareness of threats and vulnerabilities that may pose privacy risks; monitoring changes to information systems and environments of operation that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII; and conducting privacy control assessments to verify the continued effectiveness of all privacy controls selected and implemented at the agency across the agency risk management tiers to ensure continued compliance with applicable privacy requirements and management of privacy risks.

Although the term "privacy continuous monitoring" is new to this Circular, the concept of conducting an ongoing assessment of privacy risks is not new. For many IT systems, agencies are already required to conduct PIAs that involve an analysis of privacy risks throughout the life cycle of the information system and the PII, and the drafting of a living document that is updated whenever changes to the IT or the agency's practices alter the privacy risks associated with the use of the IT.[128] In fact, for IT systems for which a PIA is conducted, agencies may use the PIA as the principal tool to satisfy the requirement to assess the privacy controls for an information system.

The requirement for agencies to implement the Risk Management Framework is described in more detail in Appendix I to this Circular. The following table summarizes the privacy requirements in this Circular that pertain to the Risk Management Framework. While some of the requirements summarized in the table are not exclusively privacy requirements, they may still require the involvement of the agencies' privacy programs.

| Responsibility | Description | Citation |
|---|---|---|
| Implement a risk management framework. | Agencies shall implement a risk management framework to guide and inform the categorization of Federal information and information systems; the selection, implementation, and assessment of privacy controls; the authorization of information systems and common controls; and the continuous monitoring of information systems. | Appendix I § 3(a), 3(b)(5). |
| Review and approve the categorization of information systems that involve PII. | The SAOP shall review and approve, in accordance with NIST FIPS Publication 199 and NIST Special Publication 800-60, the categorization of information systems that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII. | Appendix I § 4(a)(2), 4(e)(7). |

---

[128] Refer to section 5.e of this Appendix for additional information about PIAs.

Appendix II - 17

| Responsibility | Description | Citation |
|---|---|---|
| Designate program management, common, information system-specific, and hybrid privacy controls. | The SAOP shall designate which privacy controls will be treated as program management, common, information system-specific, and hybrid privacy controls at the agency. Agencies shall designate common controls in order to provide cost-effective privacy capabilities that can be inherited by multiple agency information systems or programs. | Appendix I § 4(c)(12), 4(e)(5). |
| Implement a privacy control selection process. | Agencies shall employ a process to select and implement privacy controls for information systems and programs that satisfies applicable privacy requirements in OMB guidance, including, but not limited to, Appendix I to this Circular and OMB Circular A-108, *Federal Agency Responsibilities for Review, Reporting, and Publication under the Privacy Act*. | Appendix I § 4(c)(6). |
| Develop, approve, and maintain privacy plans for information systems. | The SAOP shall review and approve the privacy plans for agency information systems prior to authorization, reauthorization, or ongoing authorization. Agencies shall develop and maintain a privacy plan that details the privacy controls selected for an information system that are in place or planned for meeting applicable privacy requirements and managing privacy risks, details how the controls have been implemented, and describes the methodologies and metrics that will be used to assess the controls. | Appendix I § 4(c)(9), 4(e)(8). |
| Identify privacy control assessment methodologies and metrics. | The SAOP shall identify assessment methodologies and metrics to determine whether privacy controls are implemented correctly, operating as intended, and sufficient to ensure compliance with applicable privacy requirements and manage privacy risks. | Appendix I § 4(e)(4). |
| Conduct assessments of privacy controls. | The SAOP shall conduct and document the results of privacy control assessments to verify the continued effectiveness of all privacy controls selected and implemented at the agency across all agency risk management tiers to ensure continued compliance with applicable privacy requirements and manage privacy risks. Agencies shall conduct and document privacy control assessments prior to the operation of an information system, and periodically thereafter, consistent with the frequency defined in the agency privacy continuous monitoring strategy and the agency risk tolerance. | Appendix I §§ 3(b)(6), 4(c)(13)-(14), 4(e)(3). |
| Correct deficiencies that are identified in information systems. | Agencies shall correct deficiencies that are identified through privacy assessments, the privacy continuous monitoring program, or internal or external audits and reviews, to include OMB reviews. Agencies shall use agency plans of action and milestones to record and manage the mitigation and remediation of identified weaknesses and deficiencies, not associated with accepted risks, in agency information systems. | Appendix I § 4(c)(15), 4(k). |

Appendix II - 18

| Responsibility | Description | Citation |
|---|---|---|
| Develop and maintain a privacy continuous monitoring strategy. | The SAOP shall develop and maintain a privacy continuous monitoring strategy, a formal document that catalogs the available privacy controls implemented at the agency across the agency risk management tiers and ensures that the privacy controls are effectively monitored on an ongoing basis by assigning an agency-defined assessment frequency to each control that is sufficient to ensure compliance with applicable privacy requirements and to manage privacy risks. | Appendix I § 4(d)(9), 4(e)(2). |
| Establish and maintain a privacy continuous monitoring program. | The SAOP shall establish and maintain an agency-wide privacy continuous monitoring program that implements the agency's privacy continuous monitoring strategy and maintains ongoing awareness of threats and vulnerabilities that may pose privacy risks; monitors changes to information systems and environments of operation that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII; and conducts privacy control assessments to verify the continued effectiveness of all privacy controls selected and implemented at the agency across the agency risk management tiers to ensure continued compliance with applicable privacy requirements and manage privacy risks. Agencies shall ensure that a robust privacy continuous monitoring program is in place before agency information systems are eligible for ongoing authorization. | Appendix I §§ 3(b)(6), 4(d)(10)-(11), 4(e)(2). |
| Review authorization packages for information systems that involve PII. | The SAOP shall review authorization packages for information systems that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII to ensure compliance with applicable privacy requirements and manage privacy risks, prior to authorizing officials making risk determination and acceptance decisions. | Appendix I § 4(e)(9). |
| Encrypt moderate-impact and high-impact information. | Agencies shall encrypt all NIST FIPS Publication 199 moderate-impact and high-impact information at rest and in transit, unless encrypting such information is technically infeasible or would demonstrably affect the ability of agencies to carry out their respective missions, functions, or operations; and the risk of not encrypting is accepted by the authorizing official and approved by the agency CIO, in consultation with the SAOP (as appropriate). | Appendix I § 4(i)(14). |

## 6. Managing PII Collected for Statistical Purposes Under a Pledge of Confidentiality

The Nation relies on the flow of credible statistics to support the decisions of individuals, households, governments, businesses, and other organizations. Any loss of trust in the relevance, accuracy, objectivity, or integrity of the Federal statistical system and its products can foster uncertainty about the validity of measures our Nation uses to monitor and assess performance, progress, and needs.

Appendix II - 19

Given the importance of robust and objective official Federal statistics, agencies and components charged with the production of these statistics are assigned particular responsibility. Specifically, information acquired by an agency or component under a pledge of confidentiality[129] and for exclusively statistical purposes shall be used by officers, employees, or agents of the agency exclusively for statistical purposes.[130]  As defined in the Confidential Information Protection and Statistical Efficiency Act of 2002 (CIPSEA), statistical purpose refers to the description, estimation, or analysis of the characteristics of groups, without identifying the individuals or organizations that comprise such groups; it includes the development, implementation, or maintenance of methods, technical or administrative procedures, or information resources that support such purposes.[131]  These agencies and components shall protect the integrity and confidentiality of this information against unauthorized access, use, disclosure, modification, or destruction throughout the life cycle of the information.  Further, these agencies and components shall adhere to legal requirements and should follow best practices for protecting the confidentiality of data, including training their employees and agents, and ensuring the physical and information system security of confidential information.

---

[129] The term "confidentiality" can have multiple meanings.  For example, in the context of general information security, the term means "preserving authorized restrictions on information access and disclosure, including means for protecting personal privacy and proprietary information." *See* 44 U.S.C. § 3552.  However, for the purposes of section 6 of Appendix II to this Circular, the term "confidentiality" refers to the requirement that "data or information acquired by an agency under a pledge of confidentiality for exclusively statistical purposes shall not be disclosed by an agency in identifiable form, for any use other than an exclusively statistical purpose, except with the informed consent of the respondent."  *See* 44 U.S.C. § 3501 note; Pub. L. 107–347, § 512(b)(1).

[130] 44 U.S.C. § 3501 note; Pub. L. 107-347, § 512(a).  There are some narrowly-delineated, authorized, nonstatistical uses of information collected for statistical purposes that are noted in Section 504 of CIPSEA, including providing information to a law enforcement agency for the prosecution of submissions to the collecting agency of false statistical information under statutes that authorize criminal or civil penalties for the provision of false statistical information, unless such disclosure or use would otherwise be prohibited under Federal law.

[131] 44 U.S.C. § 3501 note; Pub. L. 107-347, § 502(9)(A)).

Appendix II - 20



# The General Records Schedules

Internal Revenue Service General Records Schedule as published by:

**NATIONAL ARCHIVES AND RECORDS ADMINISTRATION**

This document contains the entire GRS as it stood as of the publication of GRS Transmittal 34 in June 2023.

Page headers change from schedule to schedule.  Headers identify the GRS Transmittal number under which each schedule has most recently been issued, and the date of that Transmittal.

All schedules, plus crosswalks from new to old schedules, plus frequently asked questions (FAQs) for each schedule can be found at https://www.archives.gov/records-mgmt/grs.

Transmittal No. 34                                                           General Records Schedules
June 2023

# Table of Contents

Page

**1.0 Finance**
    1.1 Financial Management and Reporting Records ....................................................... 4
    1.2 Grant and Cooperative Agreement Records ....................................................... 13
    1.3 Budgeting Records ....................................................................................... 16

**2.0 Human Resources**
    2.1 Employee Acquisition Records ....................................................................... 19
    2.2 Employee Management Records ..................................................................... 25
    2.3 Employee Relations Records ......................................................................... 31
    2.4 Employee Compensation and Benefits Records ................................................ 37
    2.5 Employee Separation Records ....................................................................... 43
    2.6 Employee Training Records ........................................................................... 46
    2.7 Employee Health and Safety Records ............................................................. 48
    2.8 Employee Ethics Records ............................................................................. 56

**3.0 Technology**
    3.1 General Technology Management Records ........................................................ 62
    3.2 Information Systems Security Records ............................................................. 70

**4.0 Information Management**
    4.1 Records Management Records ....................................................................... 76
    4.2 Information Access and Protection Records ...................................................... 79
    4.3 (*Rescinded*)
    4.4 Library Records .......................................................................................... 88
    4.5: Digitizing Records ..................................................................................... 90

**5.0 General Operations Support**
    5.1 Common Office Records ............................................................................... 93
    5.2 Transitory and Intermediary Records .............................................................. 96
    5.3 Continuity and Emergency Planning Records .................................................... 98
    5.4 Facility, Equipment, Vehicle, Property, and Supply Records ............................... 101
    5.5 Mail, Printing, and Telecommunication Service Management Records .................. 108
    5.6 Security Records ....................................................................................... 111
    5.7 Administrative Management and Oversight Records .......................................... 122
    5.8 Administrative Help Desk Records ................................................................. 127

**6.0 Mission Support**
    6.1 Email Managed under a Capstone Approach .................................................... 128
    6.2 Federal Advisory Committee Records ............................................................. 133
    6.3 Information Technology Records ................................................................... 1 40
    6.4 Public Affairs Records ................................................................................. 142
    6.5 Public Customer Service Records ................................................................... 146
    6.6 (*Rescinded*)

TD_0001314

# GENERAL RECORDS SCHEDULE 1.1:  Financial Management and Reporting Records

This schedule covers records created by Federal agencies in carrying out the work of financial management: procuring goods and services, paying bills, collecting debts, accounting for all financial transactions, and monitoring agencies' net worth.  It does not apply to copies of records forwarded to the Department of Treasury or the Office of Management and Budget in fulfillment of reporting requirements.  These forwarded copies serve unique business purposes at those agencies and are therefore scheduled separately as records of OMB and Treasury.

This schedule covers financial management records of grants and cooperative agreements but does not cover administrative records of such grants and agreements.  These administrative records are covered in GRS 1.2.

This schedule covers financial transactions and reporting but not overall planning for finance.  These records are covered under GRS 1.3.

This schedule covers contract records maintained by Federal agencies but not records maintained by contractors, which are governed by 48 CFR 4, subpart 4.7.

This schedule covers financial transactions as an administrative function common to all agencies, but not administrative records documenting unique agency missions, such as student loan collection or seeking reimbursement for Superfund cleanups.

Agencies must offer any records created prior to January 1, 1921, to the National Archives and Records Administration (NARA) before applying disposition instructions in this schedule.

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|---------------------|---|-------------------------|-----------------------|
| 001 | **Financial management and reporting administrative records.**<br>Records related to managing financial activities and reporting. Records include:<br>• correspondence<br>• subject files<br>• feeder reports<br>• workload management and assignment records | | **Temporary.** Destroy when 3 years old, but longer retention is authorized if needed for business use. | DAA-GRS-2016-0013-0001 |
| 010 | **Financial transaction records related to procuring goods and services, paying bills, collecting debts, and accounting.**<br>Many records included in this item are maintained by accountable officers to account for the availability and status of public funds, and are retained to enable GAO, Office of Inspector General, or other authority audit. | **Official record held in the office** | **Temporary.** Destroy 6 years after final payment or cancellation, but | DAA-GRS-2013-0003-0001 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| | Financial transaction records include those created in the course of procuring goods and services, paying bills, collecting debts, and accounting for all finance activity, per the following definitions. | **of record.** | longer retention is authorized if required for business use. | |
| 011 | **Procuring goods and services** is the acquisition of physical goods, products, personal property, capital assets, infrastructure services such as utilities, and contracted personnel services to be used by the Federal Government. **Paying bills** means disbursements of federal funds for goods and services, and fulfilling financial obligations to grant and cooperative agreement recipients. Procurement and payment include those such as:<br>• contracts<br>• requisitions<br>• purchase orders<br>• interagency agreements<br>• Military Interdepartmental Purchase Requests (MIPRs)<br>• printing requisitions to the Government Printing Office<br>• memoranda of agreement specifying a financial obligation<br>• solicitations/requests for bids, quotations or proposals for contracts and competitive grants<br>• proposals, quotations, bids (accepted, rejected, unopened) for contracts and competitive grants<br>• contingent fee justifications<br>• legal and financial instruments such as bond and surety records<br>• FAIR Act (A-76) records linked directly to specific procurement actions<br>• credit card/purchase card/charge card statements and supporting documentation<br>• vendor tax exemption records<br>• invoices<br>• leases<br>• recurring financial transactions such as utility and communications invoices<br>• documentation of contractual administrative requirements submitted by contractors such as status reports<br>• correspondence and papers pertaining to award, administration, receipt, inspection of and payment for goods and services in this list<br>• records of financing employee relocations | **All other copies.** Copies used for administrative or reference purposes | **Temporary.** Destroy when business use ceases. | DAA-GRS-2013-0003-0002 |

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|---------------------|-------------------------|----------------------|
|  | **Collecting debts** includes the collection of income from all sources (excluding taxation). Collections records document collection of monies from all sources excluding administrative claims, taxation (not covered under the GRS), and Congressional appropriation, such as:<br>• records documenting administration, receipt, and deposit of user fees for entry into and/or use of public facilities; for recovering costs of providing government services; and receipt of donations, bequests, and other collections from the public, including:<br>   ○ cash register transaction records<br>   ○ credit card and charge cards receipts<br>   ○ records documenting deposits<br>   ○ records documenting allocation of fees to funds/accounts<br>   ○ deposit lists and logs<br>   ○ customer orders<br>   ○ revolving fund records<br>• fee and fine collection records<br>• garnishments<br>• sale of excess and surplus personal property<br>• fee or rate schedules and supporting documentation<br>• out-leases of Federal property<br>• debt collection files and cash receipts<br>• writeoffs<br>• copies of checks<br>• payment billing coupons<br>• letters from lenders<br>• payment records<br>• money orders<br>• journal vouchers<br>• collection schedules<br><br>**Accounting** is the recording, classifying and summarizing of financial transactions and events related to assets, liabilities, revenue from all sources, and expenses to all payees to support financial reporting, enable audit, and accumulate and generate management information to assist in establishing an agency's resource allocation priorities. Accounting records include those such as: |  |  |

TD_0001317

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|-----------------------|----------------------|
| | • accountable officers' records concerned with the accounting for, availability, and status of public funds and maintained for Government Accountability Office (GAO) or other authority site audit, but excluding payroll records, and accounts pertaining to American Indians.  Includes:<br>  ○ statements of transactions<br>  ○ statements of accountability<br>  ○ collection schedules and vouchers<br>  ○ disbursement schedules and vouchers<br>• vouchers<br>• certificates of closed accounts<br>• certificates of periodic settlements<br>• general funds files<br>• general accounting ledgers<br>• appropriation, apportionment, and allotment files<br>• posting and control files<br>• bills of lading<br>• transportation and travel requests, authorizations, and vouchers<br>• commercial freight vouchers<br>• unused ticket redemption forms<br><br>**Legal citation:**  28 U.S. Code 2401(a)<br><br>**Note 1**:  Procurement and other financial files that stand out because of high dollar value, media attention, historical value, research value, or other extenuating circumstances may have permanent value.  Agencies that believe they hold such files should submit a records schedule to NARA.<br><br>**Note 2**:  Accounts and supporting documents pertaining to American Indians are not authorized for disposal by this schedule.  Such records should be reviewed and scheduled appropriately by the agency since they may be needed in litigation involving the Government's role as trustee of property held by the Government and managed for the benefit of Indians.<br><br>**Note 3**:  The Comptroller General has the right to require an agency to retain any portion of these records for a period of up to 10 years. | | |

TD_0001318

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|---------------------|---|-------------------------|-----------------------|
| | **Note 4:** Agencies must offer any records created prior to January 1, 1933, to the National Archives and Records Administration (NARA) before applying this disposition authority. | | | |
| 012 | **Bids and proposals neither solicited nor accepted.**<br>Bids and proposals that are both unsolicited and the subject of no further agency action. | | **Temporary.** Destroy when no longer required for business use. | DAA-GRS-2016-0001-0001 |
| 020 | **Records supporting compilation of agency financial statements and related audit, and all records of all other reports.**<br>Includes records such as:<br>• schedules and reconciliations prepared to support financial statements<br>• documentation of decisions re accounting treatments and issue resolutions<br>• audit reports, management letters, notifications of findings, and recommendations<br>• documentation of legal and management representations and negotiations<br>• correspondence and work papers<br>• interim, quarterly and other reports | | **Temporary.** Destroy 2 years after completion of audit or closure of financial statement /accounting treat-ment/issue, but longer retention is authorized if required for business use. | DAA-GRS-2013-0003-0011 |
| 030 | **Property, plant and equipment (PP&E) and other asset accounting.**<br>Records necessary for documenting the existence, acquisition, ownership, cost, valuation, depreciation, and classification of fixed assets such as real property, capitalized personal property, internal use software, equipment, and other assets and liabilities reported on an agency's annual financial statements (agency net worth or financial position), and non-capitalized but monitored PP&E, such as:<br>• purchase orders and contracts<br>• invoices<br>• appraisals<br>• costing and pricing data<br>• transactional schedules<br>• titles<br>• transfer, acceptance and inspection records<br>• asset retirement, excess and disposal records<br>• plant account cards and ledgers pertaining to structures | | **Temporary.** Destroy 2 years after asset is disposed of and/or removed from agency's financial statement, but longer retention is authorized if required for business use. | DAA-GRS-2013-0003-0004 |

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|---------------------|-------------------------|------------------------|
| | • correspondence and work papers<br><br>**Exclusion**:  Records concerning a historically significant structure or other stewardship assets (for instance, the structure appears on the National Register of Historic Places), are not authorized for disposal.  Agencies must submit a records schedule to NARA to cover these records or apply an existing schedule. | | |
| 040 | **Cost accounting for stores, inventory, and materials.**<br>Records providing accountability for receipt and custody of materials and showing accumulated cost data, including the direct and indirect costs of production, administration, and performance of program functions of the agency; such as:<br>• invoices or equivalent papers used for inventory accounting purposes<br>• inventory accounting returns and reports<br>• working files used in accumulating inventory accounting data<br>• plant account cards and ledgers, other than those pertaining to structures<br>• cost accounting reports and data<br>• depreciation lists/costs<br>• contractor cost reports re contractor-held-government-owned materials and parts<br>• receiving, inspection, and acceptance documentation | **Temporary**. Destroy when 3 years old, but longer retention is authorized if required for business use. | DAA-GRS-2013-0003-0012 |
| 050 | **Construction contractors' payroll files.**<br>Agency copy of contractors' payrolls for construction contracts submitted in accordance with Department of Labor regulations, with related certifications, anti-kickback and other affidavits, and other related papers. | **Temporary**. Destroy 3 years after completion of contract or conclusion of contract being subject to an enforcement action, but longer retention is authorized if required for business use. | DAA-GRS-2013-0003-0003 |

TD_0001320

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|---------------------|---|-------------------------|----------------------|
| 060 | **Contract appeals case files**.<br>Records of contract appeals arising under the Contracts Dispute Act.  Includes:<br>• notice of appeal<br>• acknowledgment of notice<br>• correspondence<br>• copies of contracts, plans, specifications, exhibits, change orders, and amendments<br>• hearing transcripts<br>• documents received from concerned parties<br>• final decisions<br>• other related papers | | **Temporary.** Destroy 1 year after final resolution, but longer retention is authorized if required for business use. | DAA-GRS-2016-0001-0003 |
| 070 | **Vendor and bidder information.**<br>Documentation of approved, suspended, and debarred vendors and bidders. | **Records of suspensions and debarments for violation of the Drug-Free Workplace Act.** | **Temporary.** Destroy 5 years after removal from approved status, but longer retention is authorized if required for business use. | DAA-GRS-2016-0001-0004 |
| 071 | | **Records of all other suspensions and debarments and all approved vendors and bidders.** | **Temporary.** Destroy 3 years after removal from approved status, but longer retention is authorized if required for business use. | DAA-GRS-2016-0001-0005 |
| 080 | **Administrative claims by or against the United States.**<br>Records of monetary or property claims *by* the United States subject to the Federal Claims Collection Standards, completed or closed by:<br>• payment in full | | **Temporary.** Destroy 7 years after final action, but longer | DAA-GRS-2017-0005-0001 |

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|------------------------|------------------------|
| | • compromise agreement<br>• termination of collection action<br>• determination that money or property is not owed to the United States<br>• approval or denial of claim waiver for erroneous payment of pay, travel, or relocation expenses to a civilian Federal employee or a member or former member of the uniformed services or the National Guard<br>• lifting of court order<br>Also, records of monetary claims *against* the United States, completed or closed by:<br>• disallowance in full<br>• allowance in full or in part with final payment awarded<br>• settlement, compromise, or withdrawal<br>• lifting of court order<br><br>**Legal Citations**:<br>  31 CFR 900-904<br>  28 U.S.C. 2401<br>  28 U.S.C. 2415(a)<br>  31 U.S.C. 3716(c)<br>  31 U.S.C. 3716(e) | retention is authorized if required for business use. | |
| 090 | **Government purchase card and travel credit card application and approval records.**<br>Applications by employees for Government credit cards issued in card-holder's name, whether for official travel expenses or for purchasing goods and services.  May include:<br>• application for credit card<br>• credit release form<br>• applicant credit report<br>• cardholder agreement<br>• acknowledgement of responsibilities and penalties for misuse<br>• approving official agreement<br>• certificate of appointment (warrant)<br>• card training certificate | **Temporary.** Destroy upon card holder separation or when card is returned to office and destroyed, as appropriate, but longer retention is authorized if required for business use. | DAA-GRS-2018-0003-0001 |
| 100 | **Small and Disadvantaged Business Utilization records.** | **Temporary.** Destroy when 3 years old, but | DAA-GRS-2018-0003-0002 |

| Item | Records Description | Disposition Instruction | Disposition Authority |
|---|---|---|---|
| | Records maintained by offices of Small and Disadvantaged Business Utilization (offices of Small Business Programs in the Department of Defense) established pursuant to the Small Business Act (15 U.S.C. 644(k), as supplemented).  Includes:<br>• inquiries or assistance requests from industry or the general public regarding small business contracting, subcontracting, or other funding opportunities<br>• materials negotiating and promoting small business contracting goals<br>• records of outreach events such as workshops, conferences, specialized vendor outreach sessions, and award ceremonies<br>• event evaluations, surveys, and other customer feedback<br>• reviews of proposed agency acquisitions for bundling and small business contracting opportunities<br>• spending management and goals<br>• forecasting and studies<br>• subcontracting and performance reports<br>• data reported to and gathered from central reporting systems [*Note: the systems are scheduled by their owners, not the GRS*]<br>• program director's recommendations to contracting officers regarding awards<br>• complaints and responses to them<br>• Small Business Administration requests or recommendations regarding set-aside of contracts or requirements or changes in acquisition strategies<br>• records documenting receipt and referral of unsolicited proposals or small business capability statements containing proprietary or confidential contractor information<br>• communications with the Small Business Administration Enforcement Ombudsman, per Public Law 104-121, section 30(b)(2)<br>• correspondence | longer retention is authorized if required for business use. | |

12

# GENERAL RECORDS SCHEDULE 1.2:   Grant and Cooperative Agreement Records

This schedule covers records created by Federal agency program offices responsible for managing grants and cooperative agreements such as program announcements, application files, case files and similar or related records, state plans, and final products or deliverables.  It does not cover records related to financial transactions.  Such financial transaction records are covered by GRS 1.1, Financial Management and Reporting Records.  Nor does this schedule cover policy records documenting the legal establishment, goals, objectives, development, implementation, modification, and termination of agency grant and cooperative agreement programs.  The type and significance of these programs vary widely among agencies, so no single disposition can be applied to the records on a Government-wide basis.  An agency must submit a records schedule to NARA to cover these records or apply an existing schedule.  This schedule also does not cover government-wide systems like GRANTS.GOV and USASPENDING.GOV.

A grant is an award of financial assistance in the form of money, or property in lieu of money, by the Federal Government to an eligible grantee.  The principal purpose of such award is to transfer a thing of value from a Federal agency to a State or local government or other recipient to carry out a public purpose of support or stimulation authorized by Federal statute (31 U.S.C. 6304).  A cooperative agreement is an award of financial assistance that is used to enter into the same kind of relationship as a grant.  It is distinguished from a grant in that it provides for substantial involvement between the grant-making Federal agency and the award recipient in carrying out the activity contemplated by the award (31 U.S.C. 6305).  A grant or cooperative agreement shall be used only when the principal purpose of a transaction is to accomplish a public purpose of support or stimulation authorized by Federal statute.  Grants are distinguished from contracts, which are used to acquire property or services for the Federal government's direct benefit or use.

| Item | Records Title/Description | Disposition Instruction | Disposition Authority |
|------|--------------------------|-------------------------|-----------------------|
| 010 | **Grant and cooperative agreement program management records.** Records related to the coordination, implementation, execution, monitoring, and completion of grant and cooperative agreement programs, such as:<br>• background files<br> ○ Program Announcements<br> ○ Notice of Funding Availability or Funding Opportunity Announcement, including Federal Register notices<br> ○ Requests for Proposals<br>• application packages (blank forms, instructions, guidelines, templates, checklists, evaluation criteria, etc. for a specific funding opportunity)<br>• application evaluation files (panel composition, correspondence, instructions, etc. for a specific funding opportunity)<br><br>**Note**:  If an agency believes certain program management records warrant permanent retention, it must submit a records schedule to NARA to cover these records.<br><br>**Exclusion 1**:  Policy records documenting the legal establishment, goals, objectives, development, implementation, | **Temporary**. Destroy 3 years after final action is taken on the file, but longer retention is authorized if required for business use. | DAA-GRS-2013-0008-0007 |

| Item | Records Title/Description | | Disposition Instruction | Disposition Authority |
|------|--------------------------|---|-------------------------|----------------------|
| | modification, and termination of agency grant and cooperative agreement programs are not authorized for disposal.  The type and significance of these programs vary widely among agencies, so no single disposition can be applied to the records on a Government-wide basis.  An agency must submit a records schedule to NARA to cover these records or apply an existing schedule.<br><br>**Exclusion 2**:  Records related to financial transactions stemming from activities of agency grant and cooperative agreement programs.  Such financial transaction records are covered by GRS 1.1. | | | |
| 020 | **Grant and cooperative agreement case files.**<br>Official record of applicant case files held in the office of record.  Case files containing records relating to individual grant or cooperative agreements.  Records include, but are not limited to:<br>• applications, forms, and budget documents<br>• evaluation reports, panelist comments, review ratings or scores<br>• Notice of Grant Award or equivalent and grant terms and conditions<br>• state plans, if any (submissions from states that assure compliance with all applicable Federal statutes and regulations in effect with respect to the period for which the State receives funding) | **Successful applications**.<br><br>**Note**:  If an agency believes certain case files warrant permanent retention, it must submit a records schedule to NARA to cover these records.<br><br>**Exclusion**:  Records related to financial transactions stemming from activities of agency grant and cooperative agreement programs.  Such financial transaction records are covered by GRS 1.1. | **Temporary.** Destroy 10 years after final action is taken on file, but longer retention is authorized if required for business use. | DAA-GRS-2013-0008-0001 |
| 021 | • amendment requests and actions, if any<br>• periodic and final performance reports (progress, narrative, financial)<br>• audit reports and/or other monitoring or oversight documentation<br>• summary reports and the like<br><br>**Legal citation**:  31 U.S.C. 3731(b), False Claims Act | **Unsuccessful applications**. | **Temporary**. Destroy 3 years after final action is taken on file, but longer retention is authorized if required for business use. | DAA-GRS-2013-0008-0006 |
| 022 | | **All other copies**.  Copies used for administrative or reference purposes. | **Temporary**. Destroy when business use | DAA-GRS-2013-0008-0002 |

TD_0001325

Last updated in Transmittal No. 23
September 2014

General Records Schedule 1.2

| Item | Records Title/Description | Disposition Instruction | Disposition Authority |
|------|--------------------------|------------------------|----------------------|
| | | ceases. | |
| 030 | **Final grant and cooperative agreement products or deliverables.** The tangible result of a completed grant or cooperative agreement produced/delivered by the recipient to satisfy the purpose of the award.  These are maintained separately from other program records and may include materials such as a: <br>• report, study, or publication <br>• conference paper and/or presentation <br>• book, journal article, or monograph <br>• training material, educational aid, or curriculum content <br>• plan, process, or analysis <br>• database or dataset <br>• audio, video, or still photography <br>• website content or other Internet component <br>• documentation related to any other kind of final product or deliverable (for example, documentation about a physical structure or element such as a building, kiosk, trail, or cabin; an instrument, device, or prototype) <br>• software or computer code <br><br>**Note 1**:  Not all grants and cooperative agreements result in tangible products or deliverables.  Some deliver services, assistance, training, or other intangible, though still measurable, outcomes. <br><br>**Note 2**:  If an agency believes the final product or deliverable of a grant or cooperative agreement warrants permanent retention, it must submit a records schedule to NARA to cover these records. | **Temporary**. Destroy when business use ceases. | DAA-GRS-2013-0008-0003 |

15

# GENERAL RECORDS SCHEDULE 1.3:  Budgeting Records

Budgeting involves determining priorities for spending, forecasting future needs and related expenditures, and distributing budget authority to achieve results consistent with the formulated budget.   This process includes records that document:  formulating a budget to submit to the Office of Management and Budget (OMB) and Congress; defending requests for funds before both bodies; and, after Congress enacts an appropriations bill, properly using funds throughout the period of time covered by the agency's appropriations.

Agencies create budget records at all organizational levels.   Single operating units at all levels create detailed working papers and budget statements.  Bureau- or equivalent-level agency units consolidate these detailed work papers and budget statements into submissions and forward them to the agency or department budget officer, who finalizes and submits them to the White House on behalf of the entire agency or department.  This schedule covers records an agency creates in both types of units: (1) offices that prepare and manage an entire agency's budget and submit it to the Office of Management and Budget for consideration by the President, and (2) local offices that request program funding and track expenses under their own approved budgets.

Related schedule:  An agency reflects its controls over appropriated funds in its expenditure accounting records and detailed expenditure information in the accountable officers' records, both covered under GRS 1.1 (Financial Management and Reporting Records), item 010.

This schedule does not apply to records OMB and the Department of the Treasury create and hold that document the Government-wide Federal budget.  It *does* apply to OMB's and Treasury's own agency and departmental budget records.  The Federal budgeting process as we know it dates from when Congress established the Bureau of the Budget (forerunner of OMB) in 1921.  While it is unlikely that agency budget records exist from prior to that date, users should note that agencies must offer budget records they created prior to January 1, 1921, to the National Archives and Records Administration (NARA) before they apply disposition instructions in this schedule.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|---------------------|-------------------------|-----------------------|
| | **Records created and held by offices that prepare an agency's budget proposal for the White House** | | |
| 010 | **Budget formulation, estimates, justification, and submission records, fiscal year 2017 and forward.** <br> Includes records such as: <br> • guidance and briefing materials <br> • agency or department copy of final submission to OMB and Congress <br> • narrative statements justifying or defending estimates (sometimes called "Green Books") <br> • briefing books and exhibits <br> • language sheets and schedules <br> • OMB and Congress pass-back responses and questions; agency appeals, responses, and answers <br> • testimony at, and other agency records of, Congressional hearings <br> • final settlement or approved appropriation | **Temporary**.  Destroy 6 years after close of fiscal year, but longer retention is authorized if required for business use. | DAA-GRS-2015-0006-0001 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|--|------------------------|----------------------|
| | **Exclusion:** This item applies only to agencies that submit their budget requests via OMB. Agencies that do not submit budget requests via OMB are excluded from using this item. Such agencies must submit schedules to NARA to cover their budget submission records. | | | |
| 020 | **Budget execution records.**<br>Records offices create and receive in the course of implementing and tracking an appropriation. Includes:<br>• allotment advice, revisions, and ceiling limitations<br>• apportionments and reapportionments<br>• obligations under each authorized appropriation<br>• rescissions and deferrals<br>• operating budgets<br>• outlay plans<br>• fund utilization records<br>• fund reviews<br>• workforce authorization and distribution<br>• continuing resolution guidance<br>• calculations<br>• impact statements<br>• carryover requests<br>• related records<br><br>**Exclusion:** Formal budget reports are covered in items 030 and 031. | | **Temporary.** Destroy 6 years after close of fiscal year, but longer retention is authorized if required for business use. | DAA-GRS-2015-0006-0002 |
| 030 | **Budget reports.**<br>Standard Form 133, Report on Budget Execution and Budgetary Resources, or equivalent. Periodic status reports on agency's proposed rate of expenditure, appropriations, obligations, apportionments and outlays. | **Full fiscal-year reports.** | **Temporary.** Destroy when 5 years old, but longer retention is authorized if required for business use. | DAA-GRS-2015-0006-0003 |
| 031 | | **All other reports.** | **Temporary.** Destroy when 3 years old, but longer retention is authorized if required for business use. | DAA-GRS-2015-0006-0004 |

TD_0001328

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|--|------------------------|----------------------|
| **Records any office creates and holds** | | | | |
| 040 | **Budget preparation background records.** Preliminary budget estimates, justifications, cost statements, narrative statements, rough data, and similar materials from internal agency components (individual offices, divisions, programs, etc.) for use in preparing annual, agency-wide budget requests. | Records held in office responsible for preparing agency's budget proposal to the White House. | **Temporary**. Destroy 2 years after close of the fiscal year to which the records relate, but longer retention is authorized if required for business use. | DAA-GRS-2015-0006-0005 |
| 041 | | Records held at all other offices. | **Temporary**. Destroy when 2 years old, but longer retention is authorized if required for business use. | DAA-GRS-2015-0006-0006 |
| 050 | **Budget administration records.** Records documenting administration of budget office responsibilities.  Includes: <ul><li>correspondence relating to routine administration, internal procedures, and other day-to-day matters</li><li>records monitoring expenditures under approved budget allocations</li><li>records of financial controls maintenance</li><li>spreadsheets and databases tracking income, expenditures, and trends</li><li>work planning documentation</li><li>cost structure and accounting code lists</li><li>feeder and statistical reports</li><li>related correspondence</li></ul> | | **Temporary**. Destroy when 3 years old, but longer retention is authorized if required for business use. | DAA-GRS-2015-0006-0007 |

TD_0001329

# GENERAL RECORDS SCHEDULE 2.1:  Employee Acquisition Records

This schedule covers records agencies create in the process of hiring employees for Federal civilian service, whether career service, senior executive service, political appointment, excepted service appointment, or temporary/special appointment.  It also covers records documenting job or position descriptions and classification.  The Office of Personnel Management (OPM) exercises oversight of many—but not all—Federal agencies' employee selection processes.   Its procedural rules and best practices are spelled out in its "Delegated Examining Operations Handbook."  This schedule reflects OPM's determinations on appropriate records retention periods.

This schedule applies only to civilian employee hiring records, although in both civilian and military agencies.  Military staff selection follows very different processes and creates records that are unique to only a few agencies.  Therefore these records are not covered in the GRS.

Agencies must offer any records created prior to January 1, 1921, to the National Archives and Records Administration (NARA) before applying disposition instructions in this schedule.

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| 010 | **Classification standards.**<br>Correspondence and other records relating to developing classification standards specific to a single agency or all agencies, including notice of Office of Personnel Management (OPM) approval or disapproval.<br><br>**Exclusion**:  OPM's case files on classification standards are not covered by this item. | | **Temporary**.  Destroy 2 years after standard is superseded, canceled, or disapproved by OPM (as appropriate) but longer retention is authorized if required for business use. | DAA-GRS-2014-0002-0001 |
| 020 | **Position descriptions.**<br>Records relating to developing, editing, classifying, and evaluating position descriptions, including information on title, series, grade, duties, and responsibilities. | **Official record copy of position description.**<br>Copy held at Human Resources office. | **Temporary**.  Destroy 2 years after position is abolished or description is superseded, but longer retention is authorized if required for business use. | DAA-GRS-2014-0002-0002 |
| 021 | | **Copies in employee Official Personnel File (OPF), Unofficial Personnel File (UPF) and supervisor's personnel file.** | Destroy in accordance with disposal instructions for associated file.   (See GRS 2.2 section on OPFs.) | |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|--|------------------------|----------------------|
| 022 | | **All other related records.**<br>Includes:<br>• case file at position's program office<br>• background material in Human Resources case file<br>• other copies of records in item 020 | **Temporary.** Destroy when position description is final, but longer retention is authorized if required for business use. | DAA-GRS-2014-0002-0003 |
| 030 | **Position reviews and classification appeals.**<br>Records an agency creates and receives when reviewing a position's classification in response to a classification appeal to the agency Human Resources function or directly to OPM, including records of desk audits.<br><br>Exclusion:  OPM's corresponding case file is not covered by this item. | | **Temporary.**  Destroy 3 years after final decision, but longer retention is authorized if required for business use. | DAA-GRS-2014-0002-0004 |
| 040 | **Certificates of classification.**<br>Certificates a Federal agency receives from OPM, stating final decision on a position classification appeal.<br><br>Exclusion:  OPM's file is not covered by this item. | | **Temporary.**  Destroy 2 years after position is abolished or description is superseded, but longer retention is authorized if required for business use. | DAA-GRS-2014-0002-0005 |
| 050 | **Job vacancy case files.**<br>Case files an agency creates when posting and filling competitive job vacancies.  Also known as case examining, competitive examination, or merit case files.  Includes:<br>• request for lists of eligible candidates<br>• job announcement<br>• examination announcement | **Records of one-time competitive and Senior Executive Service announcements/ selections.** | **Temporary.**  Destroy 2 years after selection certificate is closed or final settlement of any associated litigation; whichever is later. | DAA-GRS-2017-0011-0001 |
| 051 | • job analysis, assessment criteria, and crediting plan<br>• basis for certification<br>• applications, resumes, supplemental forms, other attachments<br>• list of eligible candidates or applicants screened, ranking or ratings assigned, and basis for certification<br>• certificates, registers or lists of eligible candidates issued to selecting officials<br>• job-related test records<br>• mandatory applicant drug test records | **Records of standing register competitive files for multiple positions filled over a period of time.** | **Temporary.**  Destroy 2 years after termination of register. | DAA-GRS-2017-0011-0002 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| | • annotated certificates of eligible candidates returned by selecting officials <br> • job offers <br> • records of job offer being accepted or declined <br> • correspondence/documentation of announcement or recruiting operation <br> **Legal citation:** 5 CFR 335.103 | | | |
| 060 | **Job application packages.** <br> Application packages for competitive positions, in USAJobs or its successors, and other systems, whether electronic or analog. Includes: <br> • application <br> • resume <br> • supplemental forms <br> • other attachments <br><br> **Note**: This item is only for copies of materials submitted to and maintained in systems that receive job applications. Copies of these records used to fill job vacancies are covered under job vacancy case files (Items 050 and 051). | | **Temporary.** Destroy 1 year after date of submission. | DAA-GRS-2014-0002-0011 |
| 070 | **Case files on lost or exposed job test materials**. <br> Files showing the circumstances of loss, nature of the recovery action, and corrective actions when Civil Service or job-specific test questions are erroneously made potentially available to candidates. | | **Temporary.** Destroy 5 years after date of final report. | DAA-GRS-2014-0002-0012 |
| 080 | **Requests for non-competitive personnel action**. <br> Agency copy of requests submitted to OPM for approval of non-competitive personnel action on such matters as promotion, transfer, reinstatement, or change in status. | | **Temporary.** Destroy 1 year after approval is granted or denied. | DAA-GRS-2014-0002-0013 |
| 090 | **Interview records.** <br> Case files related to filling job vacancies, held by hiring official and interview panel members. Includes: <br> • copies of records in the job vacancy case file (item 050 and 051) <br> • notes of interviews with selected and non-selected candidates <br> • reference check documentation <br><br> **Legal citations**: <br> 5 CFR 335.103, 5 CFR 300.104. According to 5 CFR 300.104, the time frame in which an appeal must be filed may be established by each agency at its own discretion. | | **Temporary.** Destroy 2 years after case is closed by hire or non-selection, expiration of right to appeal a non-selection, or final settlement of any associated litigation, whichever is later. | DAA-GRS-2014-0002-0008 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|--|------------------------|----------------------|
| 100 | **Political appointment (Schedule C) records.**<br>Records regarding evaluation of individuals' suitability for non-career positions by non-competitive appointment under Schedule C (as defined in 5 CFR 213.3101, 3201, 3301 and 3401).  Includes:<br>• applications for employment<br>• resumes | **Records (except ethics pledges and waivers) related to appointees.** | **Temporary.**  Destroy after separation.  Retention up to end of administration under which individual was hired is authorized if required for business use. | DAA-GRS-2014-0002-0014 |
| 101 | • individuals' background information<br>• ethics pledges and waivers<br>• security clearances | **Ethics pledges and waivers of appointees.** | File in appointee's Official Personnel File, per Executive Order 13490. | |
| 102 | • correspondence<br>• other documentation relating to the selection, clearance, and appointment of political appointees<br><br>**Exclusion:**  Records of Schedule C Presidential Appointments (PA) and Presidential Appointments with Senate Confirmation (PAS) are not covered by this item and must be scheduled by the agency.<br><br>**Legal authorities:**  5 CFR 213.3101, 3102, 3201, 3202, 3301, 3302, 3401, 3402. | **Records related to non-appointees.** | **Temporary.**  Destroy 1 year after consideration of the candidate ends.  Retention up to end of administration under which individual was considered is authorized if required for business use. | DAA-GRS-2014-0002-0015 |
| 110 | **Excepted service appointment records.**<br>Records created in filling permanent or temporary job vacancies by non-competitive appointment under Schedules A, B, or D (as defined in 5 CFR 213.3101, 3201, 3301 and 3401).  Includes (as appropriate):<br>• application, attachments, and supplemental forms<br>• documentation of eligibility for excepted service appointment<br>• proof of special qualifications<br>• resume or other proof of employment, education, or relevant experience<br>• proof of disability issued by a licensed medical professional<br>• certification of job readiness<br>• notice of appointment, terms, and acceptance | **Case files that document appointing individuals with intellectual disabilities, severe physical disabilities, or psychiatric disabilities as defined in 5 CFR 213.3102(u).** | **Temporary.**  Destroy 5 years after candidate enters on duty, is no longer under consideration, or declines offer. | DAA-GRS-2014-0002-0018 |
| 111 | **Note:**  Any of the above records appropriate to include in the OPF may be moved to the OPF when the agency creates it. | **Case files related to all other appointees.** | **Temporary.**  Destroy 2 years after candidate enters on duty, is no longer under | DAA-GRS-2014-0002-0019 |

Last updated in Transmittal No. 31
April 2020

General Records Schedule 2.1

| Item | Records Description | | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|---|
| | **Legal authorities:**  5 CFR 213.3101, 3102, 3201, 3202, 3301, 3302, 3401, 3402. | | | consideration, or declines offer. | |
| 120 | **Special hiring authority program records.** Records an agency creates and receives that document its administration of special hiring authority programs such as summer, student, intern, and other temporary hiring authorized by OPM. | | | **Temporary.**  Destroy 2 years after hiring authority closes but longer retention is authorized if required for business use. | DAA-GRS-2014-0002-0016 |
| 130 | **Records related to individual employees hired under special temporary authority.** Includes participant agreement, records of mentoring, documentation that employee fulfilled educational and other requirements, and conversion to a permanent position. | | | **Temporary.**  Destroy 2 years after employee is converted to a permanent position or leaves a program but longer retention is authorized if required for business use. | DAA-GRS-2014-0002-0017 |
| 140 | **Pre-appointment files.** Records created when vetting a prospective employee between the time a job offer is accepted and the time employee enters on duty. | **Records documenting background investigation or vetting of prospective employees to determine eligibility for security clearance and sensitive positions.** Included are forms in the SF-85 family, finger print charts, and related correspondence. | | Forward to appropriate security office after prospective employee enters on duty, declines appointment, or is no longer a candidate. | |
| 141 | | **Records appropriate for inclusion in OPF.** Such as designation of beneficiary, life insurance election, and health benefits registration. | **Records concerning prospective employees who enter on duty.** | Forward to appropriate human resources office to include in OPF after employee enters on duty. | |
| 142 | | | **Records concerning prospective employees who do not enter on duty.** | **Temporary.**  Destroy 1 year after prospective employee is no longer a candidate. | DAA-GRS-2014-0002-0009 |
| 143 | | **Copies of records included in Job vacancy case file (items 050 or 051).** | | **Temporary.**  Destroy after prospective employee enters on duty, declines appointment, or is no longer a candidate. | DAA-GRS-2014-0002-0010 |

TD_0001334

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|--|-------------------------|------------------------|
| 150 | **Records of delegation of authority for examination and certification.** Agreements and related records created under the authority of 5 U.S.C. 1104 by which OPM delegates to an agency the authority to examine and certify applicants for employment.  **Exclusion**: OPM's records are not covered by this item. | | **Temporary.** Destroy 3 years after agreement terminates but longer retention is authorized if required for business use. | DAA-GRS-2014-0002-0021 |
| 160 | **Delegated authority audits.** Reports of delegated examining operations audit delivered to the audited agency.  **Exclusion**: OPM's records are not covered by this item. | | **Temporary.** Destroy when 3 years old but longer retention is authorized if required for business use. | DAA-GRS-2014-0002-0022 |
| 170 | **Adverse impact files.** Records documenting the impact of tests and other selection procedures on peoples' employment opportunities, recorded by sex, race, and ethnic group in order to determine compliance with the Uniform Guidelines on Employee Selection Procedures. Includes records documenting: • number of applicants by sex, race, and national origin • number of people hired, promoted, and terminated, by sex, race, and national origin • selection procedures and their validity | **Records revealing no adverse impact.** | **Temporary.** Destroy when 3 years old, but longer retention is authorized if required for business use. | DAA-GRS-2018-0008-0001 |
| 171 | | **Records revealing an adverse impact.**  **Legal citation:** 29 CFR 1607.15A(2)(b) | **Temporary.** Destroy 2 years after eliminating the adverse impact, but longer retention is authorized if required for business use. | DAA-GRS-2018-0008-0002 |
| 180 | **Recruitment records.** Records documenting agency in-person and on-line recruitment efforts at career fairs, job fairs, visits to colleges, and similar venues. Includes: • records documenting planning and logistics of individual recruitment events • record copy of advertisement and materials for distribution (see Exclusion 2) • contact information and interest areas collected from potential job candidates • recruitment event reports • correspondence with prospective candidates  **Exclusion 1**: Military recruitment advertising records must be scheduled by military establishments.  **Exclusion 2**: Recruitment posters must be scheduled by agencies. | | **Temporary.** Destroy when 1 year old, but longer retention is authorized if required for business use. | DAA-GRS-2018-0008-0003 |

# GENERAL RECORDS SCHEDULE 2.2:  Employee Management Records

This schedule covers records Federal agencies create while carrying out the work of employee management: supervising employees, processing personnel actions, managing employee performance, and creating and maintaining personnel and volunteer service records.

Agencies must offer any records created prior to January 1, 1921, to the National Archives and Records Administration (NARA) before applying disposition instructions in this schedule.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|-----------------------|----------------------|
| 010 | **Employee management administrative records.**<br>Records on routine office program support, administration, and human resources operations. Includes:<br>• reports, including annual reports to the Department of State concerning the number of official passports issued and related matters<br>• reports from subordinate units regarding statistics and other reporting measures<br>• general correspondence with internal agency offices and with OPM<br>• general correspondence with travelers regarding official passport application procedures and documentation requirements<br>• statistics, including lists of official passport holders<br><br>**Exclusion:**  Agency reports received by the Department of State document the Department's mission and must be scheduled by the Department. | **Temporary.**  Destroy when 3 years old, but longer retention is authorized if required for business use. | DAA-GRS-2017-0007-0001 |
| 020 | **Workforce and succession planning records.**<br>Records about workforce planning and analysis, including succession planning, developed in support of executive-level and other agency planning initiatives. Includes:<br>• planning and analysis models<br>• planning data<br>• briefing materials<br>• studies and surveys<br>• lists of functions and staff at key locations<br><br>**Exclusion:** Records maintained by executives responsible for policy formulation or other high-level actions.  Schedule these on agency-specific schedules. | **Temporary**.  Destroy 3 years after issuing each new plan, but longer retention is authorized if required for business use. | DAA-GRS-2017-0007-0002 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| 030 | **Employee incentive award records.**<br>Agency awards files, including recommendations, approved nominations, correspondence, and reports about agency-sponsored cash and noncash awards (such as lump-sum cash awards, honorary awards, informal recognition awards, cost savings awards, and time off awards). Also, includes correspondence about awards from other Federal agencies or non-Federal organizations and to former employees.<br><br>Exclusion:  Records of Department-level awards require agency-specific schedules. | | **Temporary.**  Destroy when 2 years old or 2 years after award is approved or disapproved, whichever is later, but longer retention is authorized if required for business use. | DAA-GRS-2017-0007-0003 |
| 040 | **Official Personnel Folder (OPF)/electronic OPF (eOPF).**<br>The Official Personnel Folder (Standard Form 66) or its approved electronic equivalent documents an individual's employment history.<br><br>Exclusion:  Agencies not subject to OPM recordkeeping requirements under title 5, U.S. Code, should apply their own agency-specific schedule.<br><br>**Note 1:** For transferred employees, see Chapter 7 of *The Guide to Personnel Recordkeeping* for instructions.<br><br>**Note 2:** Hardcopy original personnel folders scanned into the Enterprise Human Resource Integration (EHRI) eOPF Database are covered by GRS 5.2, Transitory and Intermediary Records, item 020. | **Long-term records.**<br>Records of separated employees saved to the "permanent" folder in the eOPF or filed on the right side of the hardcopy OPF.<br><br>**Exclusion:**  OPFs for employees separated prior to December 31, 1973.  It is the responsibility of OPM to schedule these records. | **Temporary.**  Destroy when survivor or retirement claims are adjudicated or when records are 129 years old, whichever is sooner, but longer retention is authorized if required for business use. | DAA-GRS-2017-0007-0004 |
| 041 | | **Short-term records.**<br>Records of separated employees saved to the "temporary" folder in the eOPF or filed on the left side of the hardcopy OPF.<br><br>**Exclusion:** USCIS Form I-9 and performance-related records. See item 060 of this schedule for I-9 Forms and items 070, 071, 072, and 073 for disposition of temporary performance-related records. | **Temporary.**  Destroy when superseded or obsolete, or upon separation or transfer of employee, whichever is earlier. | DAA-GRS-2017-0007-0005 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| 050 | **Notifications of personnel actions.** | Copies of Standard Form 50, documenting all individual personnel actions such as hiring, promotions, transfers, and separation.  Includes chronological files, fact sheets, general correspondence, and forms about pending personnel actions maintained by agency Human Resources offices.<br><br>**Exclusion:**  SF-50s filed in the OPF.  Items 040 and 041 of this schedule cover these records. | **Temporary.**  Destroy when business use ceases. | DAA-GRS-2017-0007-0006 |
| 060 | **Employment eligibility verification records.** | Employment Eligibility Verification form I-9 and any supporting documentation. | **Temporary**.  Destroy 3 years after employee separates from service or transfers to another agency. | DAA-GRS-2017-0007-0007 |
| 070 | **Employee performance file system records.**<br>Employee performance records are ratings of record, the performance plans on which ratings are based, supporting documentation for those ratings, and any other performance-related material required by an agency's performance appraisal system.<br><br>**Exclusion:**<br>Performance records | **Acceptable performance appraisals of non-senior executive service employees.**<br>Performance records for employees as defined in 5 U.S.C. 4301(2)).<br><br>**Exclusion:** Performance records superseded through an administrative, judicial, or quasi-judicial procedure are covered by item 073 of this schedule.<br><br>**Legal citation:** 5 CFR Part 293.404 | **Temporary.**  Destroy no sooner than 4 years after date of appraisal, but longer retention is authorized if required for business use. | DAA-GRS-2017-0007-0008 |
| 071 | | **Unacceptable performance appraisals of non-senior executive service employees.**<br>Appraisals of unacceptable performance for non-senior executive service employees (as defined in 5 U.S.C. 4301(2)), where a notice of proposed demotion or removal is issued but not effected, and all related documents.<br><br>**Legal citations:** 5 U.S.C. section 4303(d) and 5 CFR Part 293.404 | **Temporary.** Destroy after employee completes 1 year of acceptable performance from the date of written advance notice of proposed removal or reduction-in-grade notice. This disposition instruction is mandatory; deviations are not allowed. | DAA-GRS-2017-0007-0009 |

27

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| 072 | of Presidential appointees are not covered by the GRS. Such records must be scheduled by submitting an agency-specific schedule to NARA. | **Records of senior executive service employees.** Performance records for employees as defined in 5 U.S.C. 3132a(2). Includes records of performance ratings boards.<br><br>**Exclusion:** Performance records superseded through an administrative, judicial, or quasi-judicial procedure are covered by item 073 of this schedule.<br><br>**Legal citation:** 5 CFR Part 293.404 | **Temporary.** Destroy no sooner than 5 years after date of appraisal, but longer retention is authorized if required for business use. | DAA-GRS-2017-0007-0010 |
| 073 | | **Performance records superseded through an administrative, judicial, or quasi-judicial procedure.** Superseded performance records of both non-senior executive service employees and senior executive service employees.<br><br>**Legal citation:** 5 CFR Part 293.404 | **Temporary.** Destroy when superseded. This disposition instruction is mandatory; deviations are not allowed. | DAA-GRS-2017-0007-0011 |
| 080 | **Supervisors' personnel files.** Records on positions, authorizations, pending actions, position descriptions, training records, individual development plans, telework agreements, award recommendations, and records on individual employees not duplicated in or not appropriate for the OPF. These records are sometimes called supervisors' working files, unofficial personnel files (UPFs), and employee work folders or "drop" files.<br><br>**Exclusion 1:** Records that become part of a grievance file, an appeal or discrimination complaint file, a performance-based reduction-in-grade or removal action, or an adverse action. These records are covered under GRS 2.3, Employee Relations Records.<br><br>**Exclusion 2:** Employee medical documents, unless part of employee's initial request for reasonable accommodation. Following approval, the agency's reasonable accommodation decision replaces medical documentation and becomes the record. Reasonable accommodation employee case files are covered under GRS 2.3, Employee Relations Records. | | **Temporary.** Review annually and destroy superseded documents. Destroy remaining documents 1 year after employee separation or transfer. | DAA-GRS-2017-0007-0012 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|--|------------------------|------------------------|
| 090 | **Records related to official passports.** The Department of State issues official passports to people traveling abroad to carry out official duties on behalf of the U.S. Government.<br><br>**Exclusion:** Agency and dependent requests for passports maintained by the Department of State are covered under an agency-specific schedule. | **Application records.** Records related to administering the application or renewal of official passports and visas, including:<br>• copies of passport and visa applications<br>• passport and visa requests<br>• special invitation letters<br>• visa authorization numbers<br>• courier receipts<br>• copies of travel authorizations | **Temporary.**  Destroy when 3 years old or upon employee separation or transfer, whichever is sooner; but longer retention is authorized if required for business use. | DAA-GRS-2017-0007-0013 |
| 091 | | **Official passport registers.** Registers and lists of agency personnel who have official passports. | **Temporary.**  Destroy when superseded or obsolete. | DAA-GRS-2017-0007-0014 |
| 092 | | **Official passports of transferred or separated agency personnel.** | Transfer to new agency or return to the Department of State upon expiration or upon separation of the employee. | None; filing instruction only. |
| 100 | **Volunteer service program administrative records.** Records documenting routine administration, internal procedures, and general activities, including:<br>• general correspondence<br>• annual reports on volunteer activities | | **Temporary.**  Destroy when 3 years old, but longer retention is authorized if required for business use. | DAA-GRS-2017-0007-0015 |
| 110 | **Volunteer service case files.** Records documenting service performed without compensation by people not under a Federal appointment. Includes both students as defined in 5 U.S.C. 3111 and non-students.  Records include:<br>• volunteer agreements documenting position title, office title, duty location, days/hours on duty<br>• parental approval forms | **Case files on volunteers.**<br><br>**Exclusion:** Records documenting service for volunteers (students) who receive Federal appointments or for whom service is creditable for leave or any other employee benefits.  Items 040 and 041 of this schedule cover these records. | **Temporary.**  Destroy 4 years after volunteer departs service, but longer retention is authorized if required for business use. | DAA-GRS-2017-0007-0016 |

TD_0001340

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|---------------------|---|-------------------------|----------------------|
| 111 | • performance evaluations<br>• training information<br>• certificates of appreciation<br>• correspondence documenting inclusive dates of service and total hours or days worked | **Case files on individuals whose applications were rejected or withdrawn.** | **Temporary.**  Destroy when 1 year old. | DAA-GRS-2017-0007-0017 |
| 120 | **Skill set records.**<br>Records detailing name, contact, and other information for people with specific skill sets, such as foreign languages, notaries, and sign language; used to assign work-related duties to employees and volunteers.<br><br>**Exclusion:**  Associated testing records.  Those related to non-mission functions are covered by GRS 2.6, Employee Training Records.  Those related to agency mission functions must be scheduled by the agency. | | **Temporary.**  Destroy when business use ceases. | DAA-GRS-2017-0007-0018 |

# GENERAL RECORDS SCHEDULE 2.3:  Employee Relations Records

This schedule covers records documenting activities related to managing relationships between the agency, its employees, and its unions and bargaining units. Additional copies of these records, when held by supervisors or managers in program offices, are supervisory files covered under GRS 2.2, item 080.

Agencies must offer any records created prior to January 1, 1921, to the National Archives and Records Administration (NARA) before applying disposition instructions in this schedule.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|---|---|---|---|
| 010 | **Employee relations programs' administrative records.**<br>Records documenting routine activities related to programs such as reasonable or religious accommodation, displaced employees, telework/alternative worksite opportunities, anti-harassment, Alternative Dispute Resolution (ADR), Equal Employment Opportunity (EEO), and other avenues for settling disputes.  Includes:<br>● program-related correspondence<br>● copies of statutes, regulations, directives, and instructions<br>● timetables and guidelines for processing case files and appealing decisions<br>● planning records<br>● meeting minutes<br>● program evaluations and reports to senior management<br>● statistical records tracking program participation and participants<br>● records tracking programs' compliance with relevant Executive Orders and other requirements<br>● records arranging for outside mediator and facilitator involvement in case settlements<br><br>**Exclusions:**<br>1. Records specific to individual cases (covered by items 020 to 111 in this schedule).<br>2. Reports to external oversight agencies (covered by GRS 5.7, item 050).<br>3. Records created by offices responsible for monitoring employee relations programs government-wide (must be scheduled individually by responsible offices). | **Temporary**.  Destroy when 3 years old, but longer retention is authorized if required for business use. | DAA-GRS-2022-0001-0001 |
| 020 | **Reasonable or religious accommodation case files.**<br>Individual employee files created, received, and maintained by EEO reasonable accommodation, diversity/disability programs, employee relations coordinators, supervisors, administrators, or Human Resource specialists containing records of requests for religious accommodation, reasonable | **Temporary**.  Destroy 3 years after employee separation from the agency or all appeals are | DAA-GRS-2022-0001-0002 |

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|-----------------------|----------------------|
| | accommodation and/or assistive technology devices and services that have been requested for or by an employee.   Includes:<br>● request, approvals and denials<br>● notice of procedures for informal dispute resolution or appeal processes<br>● forms, correspondence, records of oral conversations<br>● policy guidance documents<br>● medical records<br>● supporting notes and documentation | concluded, whichever is later, but longer retention is authorized if required for business use. | |
| 030 | **Dislocated worker program case files.**<br>Includes applications, registrations, supporting documentation. | **Temporary.**  Destroy 1 year after employee eligibility for program expires, but longer retention is authorized if required for business use. | DAA-GRS-2018-0002-0003 |
| 040 | **Telework/alternate worksite program case files.**<br>Includes:<br>● agency/employee agreements<br>● records such as questionnaires relating to the safety of the worksite<br>● records documenting worksite safety and equipment; hardware, and software installation and use; and offsite use of secure, classified information or data subject to the Privacy Act or agencies' Personally Identifiable Information policies | **Temporary.**  Destroy when superseded or obsolete or 1 year after end of employee's participation in program, whichever is sooner, but longer retention is authorized if required for business use. | DAA-GRS-2018-0002-0004 |
| 050 | **Harassment complaint case files.**<br>Records of complaints regarding unwelcome workplace conduct, filed in accordance with agency policies and procedures.  Includes:<br>● complaint, correspondence, notes, forms, and supporting material<br>● records of investigation, statements of witnesses<br>● determination as to whether harassment occurred<br>● documentation of preventive or corrective measures | **Temporary.**  Destroy 7 years after close of case, but longer retention is authorized if required for business use. | DAA-GRS-2018-0002-0005 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|---|------------------------|----------------------|
| | **Note:** If a harassment complaint is settled via the EEO, ADR, or grievance process, its records are scheduled under the item specific to that process. | | | |
| 060 | **Administrative grievance, disciplinary, performance-based, and adverse action case files.**<br>• Records of grievances filed by covered entities (for instance, employees who are not members of a bargaining unit). Includes:<br>  o statement of grievance, supporting documentation, and evidence<br>  o statements of witnesses, records of interviews and hearings<br>  o examiner's findings, recommendations, decisions<br>• Records of disciplinary and performance-based actions against employees. Includes:<br>  o performance appraisal, performance improvement plan, and supporting documents<br>  o recommended action, employee's reply<br>  o records of hearings and decisions<br>  o records of appeals<br>• Records of adverse actions (suspension, removal, reduction in grade, reduction in pay, or furlough) against employees. Includes:<br>  o proposed adverse action, employee's reply<br>  o statements of witnesses<br>  o records of hearings and decisions<br>  o letters of reprimand<br>  o records of appeals<br><br>**Note 1:** Letter of reprimand filed in an employee's Official Personnel File is scheduled by GRS 2.2, item 041.<br><br>**Note 2:** Per OPM, each agency must select one fixed retention period, between 4 and 7 years, for all administrative grievance, adverse action, and performance-based action case files. Agencies may not use different retention periods for individual cases. | | **Temporary.** Destroy no sooner than 4 years but no later than 7 years (see Note 2) after case is closed or final settlement on appeal, as appropriate. | DAA-GRS-2018-0002-0006 |
| 070 | **Alternative Dispute Resolution (ADR) case files.**<br>Includes:<br>• agreements to use ADR<br>• records of intake and process | **Informal process.**<br>Records not associated with another employee dispute, complaint or grievance process. | **Temporary.** Destroy 3 years after case is closed, but longer disposition is authorized if required for business use. | DAA-GRS-2018-0002-0007 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|---------------------|---|-------------------------|----------------------|
| 071 | • records of settlement or discontinuance of case<br>• parties' written evaluations of the process | **Formal process.** Records generated in response to a referral from another dispute, grievance or complaint process, such as EEO complaints or grievances. | **Temporary.** Destroy 7 years after case is closed, but longer retention is authorized if required for business use. | DAA-GRS-2018-0002-0008 |
| 080 | **Merit Systems Protection Board (MSPB) case files.**<br>Civil Service Reform Act appeal case files involving actions appealable to MSPB per 5 CFR 1201.3. May include:<br>• petitions for appeal, agencies' responses to petitions<br>• hearing notices, transcripts, testimony, briefs, and exhibits<br>• MSPB initial decisions<br>• petitions for review, responses of opposing party to petition<br>• orders granting or denying intervention<br>• MSPB final opinions, orders, and decisions<br><br>**Exclusion:** Corresponding case files at MSPB (must be scheduled by MSPB). | | **Temporary.** Destroy 3 years after final resolution of case, but longer retention is authorized if required for business use. | DAA-GRS-2018-0002-0009 |
| 090 | **Labor arbitration (negotiated grievance procedure) case records.**<br>  Records of workplace disputes processed under negotiated grievance procedures and settled by either agreement or binding arbitration. | | **Temporary.** Destroy 3 years after close of case, but longer retention is authorized if required for business use. | DAA-GRS-2018-0002-0010 |
| 100 | **Federal Labor Relations Authority (FLRA) case files.**<br>Records of cases filed under provisions of the Federal Labor Relations Act concerning representation, unfair labor practices, negotiability, and review of arbitration awards. May include:<br>• records of representation proceedings<br>  ○ petitions, notice of petitions, cross-petitions, motions<br>  ○ records documenting adequate showing of interest<br>  ○ challenges to the status of a labor organization<br>  ○ records of meetings, hearings, and prehearing conferences<br>  ○ statements of witnesses<br>  ○ dismissals of petitions | | **Temporary.** Destroy 3 years after final resolution of case, but longer retention is authorized if required for business use. | DAA-GRS-2018-0002-0011 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|--|-------------------------|-----------------------|
| | o   decisions, orders<br>• records of unfair labor practices proceedings<br>  o   charges/allegations of unfair labor practices, amendments, and supporting evidence<br>  o   records of charges/allegations investigation, including subpoenas<br>  o   complaints by FLRA Regional Director<br>  o   motions, responses, stipulations<br>  o   records of hearings<br>  o   records of decisions and settlements<br>• records of negotiability proceedings<br>  o   petitions for review<br>  o   records of post-petition conferences<br>  o   agencies' statements of position, unions' responses, and agencies' counter-responses<br>  o   records of post-petition conferences<br>  o   decisions, orders<br>• records of review of arbitration awards<br>  o   exceptions to arbitrators' award rendered pursuant to arbitrations<br>  o   oppositions to exceptions<br>  o   determination of grounds for review<br>  o   decisions, orders<br><br>**Exclusion**:  Corresponding case files at FLRA (must be scheduled by FLRA). | | | |
| 110 | **EEO discrimination complaint case files**.<br>Includes:<br>• intake sheet<br>• summary report<br>• notes<br>• supporting documentation<br>• correspondence | **Informal process.**<br>Records of cases that do not result in an EEO complaint, and cases resulting in a complaint but resolved prior to the formal process stage. | **Temporary**.  Destroy 3 years after resolution of case, but longer retention is authorized if required for business use**. | DAA-GRS-2018-0002-0012 |
| 111 | | **Formal process.**<br>Records at originating agency generated in response to formal complaints resolved within the agency, by the Equal Employment Opportunity Commission, or by a U.S. Court.  Includes records gathered in the preliminary informal process, complaints, exhibits, withdrawal notices, copies of decisions, and records of hearings and meetings. | **Temporary**.  Destroy 7 years after resolution of case, but longer retention is authorized if required for business use. | DAA-GRS-2018-0002-0013 |

TD_0001346

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|---------------------|---|-------------------------|------------------------|
| | | **Exclusion:**  Corresponding case files at EEOC (must be scheduled by EEOC). | | |
| 120 | **Records documenting contractor compliance with EEO regulations.**<br>Reviews, background documents, and correspondence relating to contractor employment practices. | | **Temporary.**  Destroy when 7 years old, but longer retention is authorized if required for business use. | DAA-GRS-2018-0002-0014 |
| 130 | **Labor management relations agreement negotiation records.**<br>Records relating to negotiations with labor unions.  Includes:<br>• negotiation agreements<br>• requests to bargain<br>• bargaining session records/notes<br>• correspondence, memoranda, forms<br>• reports<br>• other records relating to the negotiated agreements and general relationship between management, employee unions and other groups | | **Temporary.**  Destroy 5 years after expiration of agreement or final resolution of case, as appropriate, but longer retention is authorized if required for business use. | DAA-GRS-2018-0002-0015 |

TD_0001347

# GENERAL RECORDS SCHEDULE 2.4:  Employee Compensation and Benefits Records

This schedule covers records Federal agencies create while conducting agency payroll functions (items 010-061) and while managing specific programs that offer employees monetary or other tangible benefits (items 070 to 141).  See GRS 2.3 (Employee Relations Records) and GRS 2.7 (Employee Health and Safety Records) for other programs that provide intangible benefits, protections, or assistance to employees.

Most payroll is processed electronically.  Agencies create payroll system input records both electronically and on paper (brought into the system by scanning).  This schedule covers only versions the agency determines to be official payroll system records.  GRS 5.2, item 020 (Intermediary records) covers paper documents for which the agency designates their equivalent electronic versions to be the record copies.

This schedule does not cover Office of Personnel Management files that reflect its own or other agencies' personnel needs and problems.  Agencies must offer records they created prior to January 1, 1921, to the National Archives and Records Administration (NARA) before applying disposition instructions in this schedule.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|---------------------|-------------------------|-----------------------|
| **Payroll** | | | |
| 010 | **Records used to calculate payroll, arrange paycheck deposit, and change previously issued paychecks.** Includes: <br>• additions to paychecks <br>  ○ child care subsidies <br>  ○ Internal Revenue Service form W-9 (Request for Taxpayer Identification Number) <br>  ○ other additions <br>• deductions from paychecks <br>  ○ insurance <br>  ○ retirement accounts (e.g. Thrift Savings Plan, *my* Retirement Account, etc.) <br>  ○ flexible spending accounts, such as medical savings and dependent care assistance <br>  ○ union dues <br>  ○ Combined Federal Campaign <br>  ○ garnishments (IRS form 668A—Notice of Levy—and similar records) <br>  ○ Treasury bond purchases <br>  ○ other deductions <br>• authorizations for deposits into bank accounts <br>• changes or corrections to previous transactions either at paying agency or payroll processor <br>• Fair Labor Standards Act exemption worksheets | **Temporary.**  Destroy 3 years after paying agency or payroll processor validates data, but longer retention is authorized if required for business use. | DAA-GRS-2019-0004-0001 |

TD_0001348

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|-------------------|------------------------|----------------------|
| 020 | **Tax withholding and adjustment documents.**<br>Employee withholding allowance certificates such as Internal Revenue Service (IRS) W-4 series forms and state equivalents, and records of fringe benefits and expense reimbursements provided to employees.<br><br>**Legal citation:** IRS Publication 15 (2015), (Circular E), Employer's Tax Guide, section on Recordkeeping. | **Temporary.** Destroy 4 years after superseded or obsolete, but longer retention is authorized if required for business use. | DAA-GRS-2016-0015-0002 |
| 030 | **Time and attendance records.**<br>Sign-in/sign-out records, time cards, leave applications and approvals of all types (annual, sick, family medical, military service, jury duty, leave donations, etc.); overtime, compensatory, and credit time requests and approvals; premium pay authorizations; and other records documenting employees' presence at or absence from work.<br><br>**Legal citation:** 29 CFR 516.5a | **Temporary.** Destroy when 3 years old, but longer retention is authorized if required for business use. | DAA-GRS-2019-0004-0002 |
| 035 | **Phased-retirement employees' overtime documentation.**<br>Records documenting ordering or permitting phased-retirement employees to work overtime.<br><br>**Legal citation:** 5 CFR 831.1715, section 4 | **Temporary.** Destroy when 6 years old, but longer retention is authorized if required for business use. | DAA-GRS-2018-0001-0001 |
| 040 | **Agency payroll record for each pay period.**<br>Aggregate records documenting payroll disbursed in each pay period: base pay, additions to and deductions from pay, and leave balances of all civilian employees within an agency or employing entity.<br><br>**Legal citation:** 5 U.S.C. 8466 | **Temporary.** Destroy when 56 years old. | DAA-GRS-2016-0015-0004 |
| 050 | **Wage and tax statements.**<br>Agency copies of IRS form W-2 (Wage and Tax Statement, IRS form W-3 (Transmittal of Wage and Tax Statements), IRS forms in the 1099 series, and state equivalents.<br><br>**Legal citations:**<br>Form W-3, Purpose of Form section states, "The IRS recommends retaining copies of these forms for four years."  Agencies attach their copies of form W-2 to form W-3.<br>IRS Publication 15 (2014), (Circular E), Employer's Tax Guide, section on Recordkeeping (copies of returns filed and confirmation numbers). | **Temporary.** Destroy when 4 years old, but longer retention is authorized if required for business use. | DAA-GRS-2016-0015-0005 |

TD_0001349

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|---------------------|---|------------------------|----------------------|
| 060 | **Payroll program administrative records.** Records produced in administering and operating payroll functions of a general nature and not linked to an individual employee's pay. | **Administrative correspondence between agency and payroll processor, and system reports used for agency workload and or personnel management purposes.** | **Temporary**.  Destroy when 2 years old, but longer retention is authorized if required for business use. | DAA-GRS-2016-0015-0006 |
| 061 | | **Payroll system reports providing fiscal information on agency payroll.** | **Temporary**.  Destroy when 3 years old or after GAO audit, whichever comes sooner, but longer retention is authorized if required for business use. | DAA-GRS-2016-0015-0007 |
| **Compensation and Benefits Administrative Program Records** | | | | |
| 070 | **Donated leave program administrative records.** Records related to managing the program, including: <br>• records of leave bank management <br>• records of leave bank governing board award decisions <br>• publicity and program announcements <br>• statistical and narrative reports <br>• similar records not linked to individual employee participation | | **Temporary**.  Destroy when 3 years old, but longer retention is authorized if required for business use. | DAA-GRS-2016-0015-0008 |
| 071 | **Donated leave program individual case files.** Records documenting leave donation and receipt, including recipient applications; agency approvals or denials; medical or physician certifications; and records of leave donations, supervisor approvals, leave transfers, payroll notifications, and terminations from the program. | | **Temporary**.  Destroy 1 year after the employee receiving leave is no longer participating in the program, but longer retention is authorized if required for business use. | DAA-GRS-2016-0015-0009 |
| 080 | **Wage survey files.** Records created while conducting periodic surveys of wages paid to non-Government workers in a specified wage area to support and modify the Federal Wage System.  Includes survey data, background documents, correspondence and reports on area wages paid for each employee class; background papers establishing need, authorization, direction, and analysis of wage surveys; development and implementation of wage schedules; and request for an authorization of specific rates (excluding authorized wage schedules and wage survey recapitulation sheets). | | **Temporary**.  Destroy after completing second succeeding survey in the specific wage area (i.e., retain records of the two most recently completed surveys), but longer retention | DAA-GRS-2016-0015-0010 |

39

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| | | | is authorized if required for business use. | |
| 090 | **Incentive package records.**<br>Records of recruitment, relocation, and retention incentives; federal student loan repayment; and supervisory differentials offered under the Federal Employees Pay Comparability Act. | | **Temporary.**  Destroy 3 years after date of approval, completion of service agreement, or termination of incentive or differential payment, whichever is later, but longer retention is authorized if required for business use. | DAA-GRS-2016-0015-0011 |
| 100 | **Workers' Compensation (personnel injury compensation) records.**<br>Federal Employees' Compensation Act case files on injuries federal employees sustain, while performing their duties that result in lost time or death, whether or not the employee filed a workers' compensation claim.  Includes:<br>• forms, reports, correspondence, claims | **Records of agencies that forward case file material to DOL for retention in DOL's master OWCP records.** | **Temporary.**  Destroy 3 years after compensation ceases or when deadline for filing a claim has passed. | DAA-GRS-2016-0015-0012 |
| 101 | • medical and investigatory records<br>• administrative determinations or court rulings<br>• payment records<br><br>**Exclusion 1:**  Copies filed in the Employee Medical Folder.<br><br>**Exclusion 2:**  Records created and maintained by the Department of Labor's Office of Workers' Compensation. | **Records of agencies that do not forward case file material to DOL for retention in DOL's master OWCP records.** | **Temporary.**  Destroy 15 years after compensation ceases or when deadline for filing a claim has passed. | DAA-GRS-2016-0015-0013 |
| 110 | **Requests for health benefits under spouse equity**.<br>Applications and related papers.  If applications are denied, may include denial | **Successful applications, including those denied and successfully appealed.** | Transfer to appropriate retirement system after enrollment is cancelled or terminated, or annuity payment begins. | |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|---------------------|---|------------------------|----------------------|
| 111 | letters, appeal letters, and court orders. | **Denied applications.** | **Temporary.** Destroy 1 year after original denial, denial of appeal, or final court order, whichever is appropriate. | DAA-GRS-2016-0015-0014 |
| 120 | **Child care subsidy program administrative records.** Records related to managing the program, including: <br>• determining amount of subsidy available to employees <br>• verifying child care centers' accreditation <br>• tracking funds disbursed to individual child care centers <br>• publicity and program announcements <br>• statistical and narrative reports <br>• similar records not linked to individual employee participation | | **Temporary.** Destroy when 3 years old, but longer retention is authorized if required for business use. | DAA-GRS-2016-0015-0015 |
| 121 | **Child care subsidy program individual case files.** Case files of individual employee participation in child care subsidy programs, such as: <br>• enrollment documentation <br>• applications and supporting documents <br>• eligibility verification (employment, proof of income) <br>• records of other subsidies the employee received <br>• agreements between agencies and employees <br>• notice of approval or denial of participation in program <br>• child care provider information | | **Temporary.** Destroy 2 years after employee participation concludes, but longer retention is authorized if required for business use. | DAA-GRS-2016-0015-0016 |
| 130 | **Transportation subsidy program administrative records.** Records related to managing the program, including: <br>• determining subsidy amount available to employees <br>• publicity and program announcements <br>• records of program-wide benefit delivery and receipt <br>• statistical and narrative reports <br>• similar records not linked to individual employee participation | | **Temporary.** Destroy when 3 years old, but longer retention is authorized if required for business use. | DAA-GRS-2016-0015-0017 |
| 131 | **Transportation subsidy program individual case files.** Case files of individual employee participation in transportation subsidy programs, such as: <br>• applications and supporting documents <br>• eligibility verification | | **Temporary.** Destroy 2 years after employee participation concludes, but longer | DAA-GRS-2016-0015-0018 |

41

TD_0001352

| Item | Records Description | Disposition Instruction | Disposition Authority |
|---|---|---|---|
| | • notice of approval or denial of participation in program<br>• participant training documentation<br>• periodic estimates of transit expenses<br>• record of individual benefit delivery and receipt<br>• de-enrollment documents<br>• settlement of outstanding debts by employee or Government when employee leaves program | retention is authorized if required for business use. | |
| 140 | **Family Medical Leave Act program administrative records.**<br>Records related to managing the program, including copies of policies and guidance describing employee benefits and employee use of paid and unpaid leave under the FMLA, statistics, reports, and other records not linked to individual employee participation.<br><br>**Legal citation:** 29 CFR 825.500 | **Temporary.** Destroy 3 years after superseded or obsolete, but longer retention is authorized if required for business use. | DAA-GRS-2016-0015-0019 |
| 141 | **Family Medical Leave Act program individual case files.**<br>Includes:<br>• employee eligibility to participate in program<br>• eligibility notice given to employee<br>• notice of employee rights and responsibilities, questions from employees about those rights and responsibilities, and responses to them<br>• medical certifications<br>• employee identification data<br>• records of pay basis, compensation terms, normal hours per pay period, additions to or deductions from wages, total compensation normally paid<br>• leave request, approval/non-approval<br>• leave records<br>• records of premium payments of employee benefits<br>• records of disputes between employers and eligible employees regarding designation of leave as FMLA leave<br>• periodic reports of employee status and intent to return to work<br><br>**Legal citation:** 29 CFR 825.500 | **Temporary.** Destroy 3 years after conclusion of leave being taken, but longer retention is authorized if required for business use. | DAA-GRS-2016-0015-0020 |

TD_0001353

# GENERAL RECORDS SCHEDULE 2.5:  Employee Separation Records

This schedule covers records created in the process of employees leaving Federal service whether that service status is career, temporary, or political appointment.  These records divide into two categories:  records of managing an employee separation program in general, and case files specific to individual separations.   Bullet lists describe records that *may* be contained in these files.  They do not mean to convey that all of these records *must* be contained in every file.  In particular, records pertinent to individual separating employees will vary depending on the type of service (career, temporary, or political appointment) and an employee's responsibilities.

Agencies must offer any records created prior to January 1, 1921, to the National Archives and Records Administration (NARA) before applying disposition instructions in this schedule.

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|---------------------|---|-------------------------|----------------------|
| 010 | **Separation program management records**. Records documenting the general work process to release career, temporary, and political-appointment employees from employment status.   Includes: <ul><li>registers of separation or transfers such as SF-2807, SF-3103, or similar records</li><li>retention registers and related records</li><li>reports, correspondence,  and control documents</li><li>exit interview compilations identifying and tracking trends</li></ul> | **Records not specific to an agency separation initiative.** | **Temporary**.  Destroy when no longer required for business use. | DAA-GRS-2014-0004-0001 |
| 011 | | **Records specific to an agency separation initiative such as reduction-in-force, voluntary early retirement, voluntary separation, and similar programs.** | **Temporary**.  Destroy 2 years after date of program closure, but longer retention is authorized if required for business use. | DAA-GRS-2014-0004-0002 |
| 020 | **Individual employee separation case files**. Records not included in separating employee's Official Personnel Folder (OPF), documenting individual employees' transfer to another Federal agency or office or voluntary, involuntary, disability, early retirement, retirement, or death separation from career, temporary, and political appointment service; and legal and financial obligations of government to employee and employee to government.  Includes: <ul><li>records of counseling activities and outplacement services</li><li>exit interview records</li><li>exit clearances</li><li>checklists of returned property</li></ul> | | **Temporary**.  Destroy 1 year after date of separation or transfer, but longer retention is authorized if required for business use. | DAA-GRS-2014-0004-0003 |

| Item | Records Description | Disposition Instruction | Disposition Authority |
|---|---|---|---|
| | • certifications of removal/non-removal of government records<br>• records documenting notification of appropriate third parties (e.g., benefits providers, payroll, facility services, security, information technology) of impending separation<br>• records documenting terms and entitlements of separation (e.g., leave balance pay out or transfer of account, severance, pension, temporary continuation of coverage, annuity estimates, assistance)<br>• records documenting employee financial obligations to government (e.g., salary offset notices in effect at time of separation; student loan repayment; recruitment, retention, and relocation incentives; determinations of settlement)<br>• copy of leave record (see "Record of employee leave," item 040 of this schedule, for record copy) retained for agency use<br><br>• **Exclusion**:  Records required to be filed in employee's OPF are excluded from this item. | | |
| 030 | **Records documenting capture of institutional and specialized knowledge.**<br>Includes status updates on current and pending assignments, contact information for sources, and other job-related information an office may choose to obtain from a departing employee.<br><br>**Exclusion**:  Formal oral histories recorded with an employee before his/her departure are not covered by this item.  These must be scheduled separately by the agency. | **Temporary**.  Destroy when no longer required for business use. | DAA-GRS-2014-0004-0004 |
| 040 | **Individual employee separation records required to be placed in separating employee's OPF.**<br>As  identified in the Office of Personnel Management (OPM) Guide to Personnel  Recordkeeping, includes but is not limited to:<br>• resignation letter<br>• reason for separation (such as reduction in force)<br>• documentation of retirement-option elections and coverage<br>• documentation of indebtedness<br>• documentation of payment or repayment to, or refund from FERS or CSRS<br>• record of employee leave prepared upon transfer or separation<br>• records of most recent performance ratings<br>• designation of beneficiary | File on left side (short-term) or right side (long-term) of the Official Personnel Folder (OPF), as appropriate. | |

TD_0001355

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|---------------------|-------------------------|------------------------|
| 050 | **Phased retirement administrative records.**<br>Records related to managing the program, including:<br>• procedural guidance on program administration<br>• informational/marketing/publicizing materials<br>• general correspondence<br>• reports to OPM<br>• memoranda of understanding (MOU) and significant documentation of bargaining unit negotiations<br>• documentation of program structure and details as uniquely instituted by agency<br><br>**Exclusion:**  This item does not cover records held at the OPM office overseeing the phased retirement program for the entire Government. | **Temporary**.  Destroy when 3 years old or 3 years after revision or replacement, as appropriate, but longer retention is authorized if required for business use. | DAA-GRS-2016-0007-0001 |
| 051 | **Phased retirement individual case files.**<br>Case files of individual employee participation in phased retirement, such as:<br>• application for immediate retirement<br>• evidence of eligibility<br>• reviews/recommendations by supervisor and others<br>• notice of approval or disapproval<br>• retirement benefit estimates<br>• annuity calculations<br>• phased retirement agreement<br>• records documenting knowledge transfer activities<br>• confidentiality agreement with mentees<br>• action/project plans and logs<br>• correspondence<br><br>**Note:**  Agencies may choose to file these records with the employee's retirement file, in which case the agency should retain them according to the retention period for the retirement file, per GRS 2.5, item 020.<br><br>**Exclusion:**  This item does not cover records held at OPM concerning staff at other agencies. | **Temporary**.  Destroy 1 year after employee participation concludes or the employee retires, but longer retention is authorized if required for business use. | DAA-GRS-2016-0007-0002 |

TD_0001356

# GENERAL RECORDS SCHEDULE 2.6:  Employee Training Records

This schedule covers records about designing, developing, and implementing employee training within Federal agencies that is not mission-related.  Typically, such training is routine or mandatory and covers general knowledge and actions all agencies expect of employees, such as training on information security, anti-harassment, ethics, EEO compliance, drug-free workplace, records management, and travel card use.  In other words, training on administrative activities.  It does not include specialized training for firearms, health and safety, national defense, political appointees, or mission-specific training, which may document an agency's program objectives or illustrate program operations.  This schedule includes documentation of employee training provided from any source (internally or externally via private vendors or other agencies) and applies to all groups of Federal workers, civilian, military, and contractors.

Agencies must offer any records created prior to January 1, 1921, to the National Archives and Records Administration (NARA) before applying disposition instructions in this schedule.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|---|---|---|---|
| 010 | **Non-mission employee training program records.**<br>**Exclusion:** This item does not cover ethics-related training. Ethics training is scheduled by item 020. Records about planning, assessing, managing, and evaluating an agency's training program:<br>• plans, reports and program evaluations<br>• organizational and occupational needs assessments<br>• employee skills assessments<br>• employee training statistics<br>• notices about training opportunities, schedules, or courses<br>• mandatory training tracking and reporting files<br>• logistics and coordination documents<br>• Authorization, Agreement and Certification of Training (SF-182) and similar records<br>• registration forms, employee attendance records<br>• syllabi, presentations, instructor guides, handbooks, and lesson plans<br>• reference and working files on course content<br>• other course materials, such as presentations and videos<br>• student, class, or instructor evaluations<br><br>**Note**:  Financial records related to purchase of training or travel for training are scheduled under GRS 1.1, item 010. | **Temporary**.  Destroy when 3 years old, or 3 years after superseded or obsolete, whichever is appropriate, but longer retention is authorized if required for business use. | DAA-GRS-2016-0014-0001 |
| 020 | **Ethics training records.**<br>Records include but are not limited to: | **Temporary**.  Destroy when 6 years old or | DAA-GRS-2016-0014-0002 |

| | | | | |
|---|---|---|---|---|
| | | <ul><li>administration of new employee ethics orientations. annual, and other types of ethics training</li><li>agency's annual written plans</li><li>notices about training requirements and course offerings</li><li>rosters of employees required to attend and verification of training completed</li><li>instructor guides, handbooks, handouts and other materials</li></ul> | when superseded, whichever is later, but longer retention is authorized if required for business use. | |
| 030 | **Individual employee training records.** <br> Records documenting training required by all or most Federal agencies, such as information system security and anti-harassment training, and training to develop job skills.  Records may include: <ul><li>completion certificates or verification documents for mandatory training required of all Federal employees or specific groups of employees (e.g., supervisors, contractors)</li><li>Individual Development Plans (IDPs)</li><li>mentoring or coaching agreements</li></ul> **Exclusion:**  Academic transcripts, professional licenses, civil service exams, or documentation of mission-related training are not covered by this item. | | **Temporary.**  Destroy when superseded, 3 years old, or 1 year after separation, whichever comes first, but longer retention is authorized if required for business use. | DAA-GRS-2016-0014-0003 |
| 040 | **Senior Executive Service Candidate Development Program (SESCDP).** <br> SESCDP is an OPM-approved training program designed to develop employees with strong executive potential to qualify them for and authorize their initial career appointment in the Senior Executive Service. | **Program records.** <br> Records documenting program scope, policies, planning, budget, and curriculum planning. | **Temporary.**  Destroy when no longer needed for business use. | DAA-GRS-2016-0014-0004 |
| 041 | | **Case records on SESCDP participants.** <br> Records documenting training, developmental assignments, mentor agreements and evaluations, and SES Development Plans. | **Temporary.**  Destroy upon certification by OPM's Qualifications Review Board (QRB) or 1 year after separation from SESCDP, but longer retention is authorized if required for business use. | DAA-GRS-2016-0014-0005 |

# GENERAL RECORDS SCHEDULE 2.7:  Employee Health and Safety Records

This schedule covers records about employee health and safety functions within federal agencies.

**Conditions and Exclusions**

The following conditions and exclusions apply to all disposition authorities in this schedule.

1. Agencies must offer any records created prior to January 1, 1921, to the National Archives and Records Administration (NARA) before applying disposition instructions in this schedule.
2. This schedule does not apply to mission-related federal research, monitoring, standard-setting and enforcement activities to ensure environmental protection, occupational safety, and public health. Such records are covered by agency-specific schedules.
3. The terms "non-occupational" and "patient" are used in this schedule to refer to nonwork-required health services and to health conditions not causally connected to the employee's work or workplace. The terms "workplace" and "safety" refer to occupational records.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|-----------------------|----------------------|
| 010 | **Clinic scheduling records.**<br>Scheduling records of clinic visits, both occupational and non-occupational.  Includes:<br>• patient's name, time of appointment, and type of work to be performed<br>• details for pending, confirmed, and upcoming appointments, including date, time, clinic, care team and reason for visit<br>• notifications about appointment updates<br>• patient visit and other scheduling-related statistics | **Temporary.** Destroy when 3 years old, but longer retention is authorized if needed for business use. | DAA-GRS-2017-0010-0001 |
| **Occupational Health Records** | | | |
| 020 | **Occupational injury and illness program records.**<br>Records documenting the planning, management, reporting, and routine operations undertaken by occupational health and safety organizations.  Includes:<br>• miscellaneous reports, annual summaries or reports to the Secretary of Labor<br>• correspondence with internal agency offices and Occupational Safety and Health Administration (OSHA)<br>• OSHA 300 Log<br>• OSHA 301 Incident Report<br>• OSHA 300A Summary or equivalent<br><br>**Exclusion:**  Workers' Compensation (personnel injury compensation) records are covered under items 100 and 101 of GRS 2.4, Employee Compensation and Benefits Records. | **Temporary**.  Destroy when 6 years old, but longer retention is authorized if needed for business use. | DAA-GRS-2017-0010-0002 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| | Legal Citations: 29 CFR Part 1904.33 and 29 CFR Part 1960.69. | | | |
| 030 | **Occupational health and safety training records.**<br>Records of health and safety-related training on topics such as cardiopulmonary resuscitation (CPR), automatic external defibrillators (AED), personal protective equipment (PPE) use, safe sampling techniques, personal decontamination procedures, and emergency response procedures.<br><br>Exclusion 1:  Records appropriate for long-term retention in an Official Personnel Folder, such as academic transcripts and professional licenses. GRS 2.2, Employee Management Records, item 040 covers these.<br><br>Exclusion 2:  Training records related to job-specific activities or that may impact individual occupational health.  Items 060 and 061 of this schedule cover these.<br><br>Legal Citation:  29 CFR Part 1910.120 App E(9) | | **Temporary.**  Destroy 5 years after training participation or when superseded, whichever is applicable, but longer retention is authorized if required for business use. | DAA-GRS-2017-0010-0003 |
| 040 | **Workplace environmental monitoring and exposure records.**<br>Results or measurements of monitoring workplace air, toxic substances, or harmful physical agents, including personal, area, grab, wipe, or other methods of sampling results.<br><br>**Note 1:**  Biological monitoring results, such as blood and urine analysis results, designated as exposure records by specific Occupational Safety and Health Administration (OSHA) standards are maintained as | **OSHA-regulated substance monitoring and exposure records.**<br>Area/general occupational exposure records and select carcinogen exposure records from hazardous chemical use in laboratories. Includes the Chemical Hygiene Plan.<br><br>Exclusion: Employee-specific occupational exposure records appropriate for individual occupational medical case files are covered by item 060.<br><br>Legal Citations:  29 CFR Part 1910.1020(d)(1)(ii) and 29 CFR Part 1910.1020(d)(1)(iii) | **Temporary.**  Destroy no sooner than 30 years after monitoring is conducted, but longer retention is authorized if needed for business use. | DAA-GRS-2017-0010-0004 |
| 041 | | **Occupational noise monitoring and exposure records.**<br><br>Exclusion: Employee-specific occupational exposure records appropriate for individual occupational medical case files are covered by item 060.<br><br>Legal Citation:  29 CFR Part 1910.95(m)(3)(i) | **Temporary.**  Destroy no sooner than 2 years after monitoring is conducted, but longer retention is authorized if needed for business use. | DAA-GRS-2017-0010-0005 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|--|-------------------------|-----------------------|
| 042 | required by the specific standard governing their use. For more information, refer to 29 CFR 1910.1020(c)(5) – Employee exposure records and 29 CFR 1910.1020(c)(5)(ii). | **Lead (Pb), Coke Oven emissions, Dibromochloropropane (DBCP), Acrylonitrile, and Inorganic Arsenic monitoring and exposure records.**<br><br>**Exclusion:** Employee-specific occupational exposure records appropriate for individual occupational medical case files are covered by item 060.<br><br>**Legal Citation:** 29 CFR Part 1910.1045 App A(vi)(C) | **Temporary.** Destroy no sooner than 40 years after monitoring is conducted, but longer retention is authorized if needed for business use. | DAA-GRS-2017-0010-0006 |
| 043 | **Note 2:** These items are intended for agencies subject to Executive Order 12196, Occupational Safety and Health Programs for Federal Employees. Entities excluded from these requirements may use these items or agency-specific schedules. | **Background data.**<br>Records, such as consensus standards or other regulatory/non-regulatory documents, associated with related data.<br><br>**Note:** Use of this item requires that the agency retains the sampling results, the collection methodology (sampling plan), a description of the analytical and mathematical methods used, and a summary of other background data relevant to interpretation of the results obtained, for at least thirty (30) years.<br><br>**Legal Citation:** 29 CFR Part 1910.1020(d)(1)(ii)(A) | **Temporary.** Destroy no sooner than 1 year after monitoring is conducted, but longer retention is authorized if needed for business use. | DAA-GRS-2017-0010-0007 |
| 050 | **Safety Data Sheets (SDS).**<br>Includes other specified records concerning the identity of a substance or agent. These records were formerly called Material Safety Data Sheets (MSDS).<br><br>**Exclusion:** Copies placed in individual occupational medical case files to document substances or agents to which employees are exposed are covered under item 060 of this schedule.<br><br>**Note:** Based on OSHA requirements in 29 CFR 1910.1020 under paragraph (d)(1)(ii)(B), employers may discard safety data sheets if "some record of the identity (chemical name if known) of the substance or agent, where it was used, and when it was used is retained for at least thirty (30) years." Then, an employer may discard the original data sheet and retain only the new data sheet if a record on the original formulation is maintained.<br><br>**Legal citation:** 29 CFR Part 1910.1020(d)(1)(ii)(B) | | **Temporary.** Destroy when business use ceases. | DAA-GRS-2017-0010-0008 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| 060 | **Occupational individual medical case files.** These records are also referred to as Employee Medical Folders (EMFs), Occupational Safety and Health Administration (OSHA) medical records, and medical surveillance records.  Includes:<br>• personal and occupational health histories<br>• opinions and written evaluations generated in the course of diagnosis and employment-related treatment/ examination by medical health care professionals and technicians<br>• employee-specific occupational exposure records, which include employee-specific occupational records (exposures include, but are not limited to, gases, liquids, vapors, mists, dust particles and noise)<br>• employee audiometric testing records<br><br>**Note:**  For those entities subject to OPM's requirements, OPM determines which of these records are long-term and which are short-term records.  For guidance on which records qualify for this category, follow OPM guidance.  Other entities should follow agency policy. | **Long-term records.**<br><br>**Exclusion**: Individual non-occupational medical records are covered by item 070.<br><br>**Note 1:**  While non-occupational/patient records pertaining to an employee are not required to be included as a record within the individual occupational medical case files, under certain conditions, copies of such records are occupationally-related and, in those cases, may be included in the individual occupational medical case files.  (5 CFR 293.504)<br><br>**Note 2:** For transferred employees subject to OPM's requirements, see 5 CFR Part 293, Subpart E, Employee Medical File System Records, for implementing instructions.<br><br>**Note 3:** For separated employees subject to OPM's requirements, see 5 CFR Part 293, Subpart E, Employee Medical File System Records, for implementing instructions.<br><br>**Legal Citations:**  5 CFR Part 293.511(b), 29 CFR 1910.1020(d)(1)(i), and 29 CFR Part 1910.95(m)(3)(ii). | **Temporary**.  Destroy 30 years after employee separation or when the Official Personnel Folder (OPF) is destroyed, whichever is longer. | DAA-GRS-2017-0010-0009 |
| 061 | | **Short-term records.** | **Temporary.** Destroy 1 year after employee separation or transfer. | DAA-GRS-2017-0010-0010 |
| 062 | **Exclusion:** Records of claims filed under the Federal Employees Compensation Act (FECA) are covered under GRS 2.4, items 100 and 101. | **Individual employee health case files created prior to establishment of the Employee Medical File system in 1986.** | **Temporary.** Destroy 60 years after retirement to the NARA records storage facility. | DAA-GRS-2017-0010-0011 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|--|------------------------|----------------------|
| **Workplace Health Assessments** | | | | |
| 063 | **Vaccination attestations and proof of vaccination records.** Records attesting to an individuals' current vaccination status and providing proof or certification of vaccination. | **Federal employees and contractors.** Applies only to records related to federal employees and contractors of the agency collecting the records. **Note:** If agencies file these records in occupational health files, use the disposition authority for occupational health files instead. | **Temporary.** Destroy when 3 years old. | DAA-GRS-2021-0003-0001 |
| 064 | | **Visitors.** Includes federal employees and contractors visiting from other agencies. | **Temporary.** Destroy when 30 days old. | DAA-GRS-2021-0003-0002 |
| 065 | **Symptom screening and testing records.** Records related to screening and testing intended to detect a possible communicable or infectious disease, if collected. Includes: <br>● symptom check/screening data <br>● testing records/results | **Federal Employees.** Applies only to records related to federal employees of the agency collecting the records. | **Temporary.** Destroy when 1 year old. | DAA-GRS-2021-0003-0003 |
| 066 | | **Contractors and visitors.** Includes federal employees that are visiting from another agency. | **Temporary.** Destroy when 30 days old. | DAA-GRS-2021-0003-0004 |
| **Non-Occupational Health Records** | | | | |
| 070 | **Non-occupational individual medical case files.** Records of treatment or examination created and maintained by a health care facility or dispensary documenting an individual's medical history, physical condition, vaccinations, and first-aid visits for nonwork-related purposes.  Also referred to as "patient records" in Title 5 Part 293 Subpart E. **Legal Citations:**  AHIMA. "Retention and Destruction of Health Information." (Updated October 2013) and 31 U.S.C. 3731(b), False Claims Act. | | **Temporary**. Destroy 10 years after the most recent encounter, but longer retention is authorized if needed for business use. | DAA-GRS-2017-0010-0012 |
| 080 | **Non-occupational health and wellness program records.** Records documenting the planning, management, reporting, correspondence with internal agency offices, statistical summaries, and routine operations undertaken by employee health service organizations involving non-occupational worksite health and wellness programs, such as nursing mothers, Automated External Defibrillators (AEDs), alcohol and drug abuse programs, and tobacco cessation.  Includes: | | **Temporary**. Destroy 3 years after the project/activity/ or transaction is completed or | DAA-GRS-2017-0010-0013 |

TD_0001363

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|--|------------------------|----------------------|
| | <ul><li>health risk appraisals</li><li>biometric testing</li><li>health coaching</li><li>disease management</li><li>behavioral management</li><li>preventive services</li><li>fitness programs</li></ul> | | superseded, but longer retention is authorized if needed for business use. | |
| 090 | **Employee Assistance Program (EAP) counseling records.** Records of individuals who have sought or been referred to counseling services provided through the Employee Assistance Program (EAP). May include records of family members and dependents. | **Records related to employee performance or conduct.** Records of counseling services provided through the EAP for performance or conduct reasons. Records include documentation of:<ul><li>leave and attendance</li><li>performance</li><li>alleged inappropriate behavior or workplace violence</li><li>reason for referral</li><li>management interventions</li><li>illegal drug or alcohol use<ul><li>test results for use of illegal drugs</li><li>test results for alcohol consumption on the job</li><li>substance abuse assessment, treatment, aftercare, and monitoring records</li></ul></li></ul><br>**Note:** GRS 2.3, Employee Relations Records, covers adverse action files under item 061 and performance-based action files under item 062. | **Temporary.** Destroy once employee has met condition(s) specified by agreement or adverse action or performance-based action case file has been initiated. | DAA-GRS-2017-0010-0014 |
| 091 | | **Records not related to performance or conduct.** Records documenting nature of an individual's problem and participation in a treatment or rehabilitation program. Records may include documentation of treatment by a private therapist or a therapist at a federal, state, local government, or private institution. Includes:<ul><li>Privacy Act and signed written consent forms</li><li>psychosocial history and assessments</li><li>medical records</li><li>correspondence with the client</li><li>clinical and education interventions</li></ul> | **Temporary.** Destroy 7 years after termination of counseling for adults or 3 years after a minor reaches the age of majority, or when the state-specific statute of limitations has | DAA-GRS-2017-0010-0015 |

| Item | Records Description | Disposition Instruction | Disposition Authority |
|---|---|---|---|
| | <ul><li>records of attendance at treatment, kinds of treatment, and counseling programs</li><li>identity and contact information of treatment providers</li><li>name, address, and phone number of treatment facilities</li><li>notes and documentation of internal EAP counselors</li><li>insurance data</li><li>intervention outcomes</li></ul> | expired for contract providers subject to state requirements, but longer retention is authorized if needed for business use. | |
| **Drug-free Workplace Program Records** | | | |
| 100 | **Employee drug test plans, procedures, and scheduling records.** <br> Drug testing program records pertaining to the development of procedures, such as the determination of testing incumbents in designated positions and selection of specific employees/applicants for testing. Includes: <ul><li>agency copies of plans and procedures, with related drafts, correspondence, and memoranda</li><li>lists of selectees</li><li>notification letters</li><li>testing schedules</li></ul> **Exclusion 1:** Documents filed in record sets of formally issued documents, such as directives, procedure handbooks, and operating manuals.  Schedule these on agency-specific schedules. <br><br> **Exclusion 2:**  Consolidated statistical and narrative reports concerning the operation of agency programs, including annual reports to Congress, as required by Pub. L. 100-71, 503(f), are covered in GRS 5.7, Agency Accountability Records. <br><br> **Exclusion 3:** Oversight program records of the Department of Health and Human Services, the Office of Personnel Management, the Office of Management and Budget, the Office of National Drug Control Policy, and the Department of Justice.  Schedule these on agency-specific schedules. | **Temporary.** Destroy when 3 years old or when superseded or obsolete. | DAA-GRS-2017-0010-0016 |
| 110 | **Employee drug test acknowledgment of notice forms.** <br> Forms completed by employees whose positions are designated sensitive for drug testing purposes, acknowledging they have received notice and they may be tested. | **Temporary.** Destroy when employee separates from testing-designated position. | DAA-GRS-2017-0010-0017 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|---|-------------------------|------------------------|
| 120 | **Employee drug testing specimen records.** Identifying data on each specimen, recorded at each collection site in the order in which the specimen was collected. Includes records used to maintain control and accountability of specimens from the point of collection to final disposition, *e.g.*, chain-of-custody records. | | **Temporary.** Destroy 3 years after date of last entry or when 3 years old, whichever is later. | DAA-GRS-2017-0010-0018 |
| 130 | **Employee drug test results.** Records documenting individual test results, including testing reports, notification of employees and employing offices, and documents relating to follow-up testing. | **Positive results.** | **Temporary.** Destroy when employee leaves the agency or when 3 years old, whichever is later. | DAA-GRS-2017-0010-0019 |
| 131 | **Exclusion:** Drug test results of applicants for employment are covered by GRS 2.1, Employee Acquisition Records, items 050 and 051. | **Negative results.** | **Temporary.** Destroy when 3 years old. | DAA-GRS-2017-0010-0020 |

# GENERAL RECORDS SCHEDULE 2.8:  Employee Ethics Records

This schedule covers records documenting the activities of executive branch agency ethics program offices.

Records *not* covered by this schedule:  Records pertaining to legislative branch and judicial branch ethics programs, the Hatch Act, the Whistleblower Protection Act, procurement integrity, and other areas often associated with, but not expressly under, the authority of executive branch ethics programs.

Lists *not* included in this schedule:  Master Lists of financial disclosure report filers, individuals requesting outside employment and activities approval, and other types of ethics-related master lists.  Ethics-related master lists that are used solely for the purpose of tracking and controlling ethics records should be disposed of in accordance with GRS 4.1, *Tracking and Control Records*. Master Lists that are used for purposes other than tracking and controlling ethics records should be disposed of in accordance with the disposition for the underlying records as listed in this schedule or as otherwise scheduled.  For ethics training records, see GRS 2.6, *Employee Training Records*.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|---------------------|-------------------------|-----------------------|
| 010 | **General ethics program records.**<br>Records created and maintained to coordinate and manage an agency's ethics program. Records relate to the development, review, implementation, and interpretation of proposed or established executive branch standards of ethical conduct and other ethics regulations; conflict of interest and other ethics-related statutes and Executive Orders; and any agency supplemental standards of ethical conduct and other agency ethics-related regulations and directives.  Includes:<br>• Records documenting the review of proposed or established ethics-related statutes and regulations by ethics program officials, including copies of proposed legislation, comments, and all related records.<br>• Determinations, including advice and counseling to individual employees, and supporting records.<br>• Records relating to requests under agency supplemental standards of ethical conduct for prior approval of outside employment and activities. | **Temporary**.  Destroy 6 years following the conclusion of an ethics regulatory review, provision of advice to an employee, making a determination regarding outside employment or after such determination is no longer in effect or applicable, or when no longer needed for an active investigation; whichever is later, but longer retention is authorized if required for business use. | DAA-GRS-2016-0006-0001 |
| 020 | **Referrals and notifications of violations of criminal conflict of interest statutes and other potential violations files**.<br>Referrals to Inspectors General or the Department of Justice concerning ethics violations or suspected violations. This item also covers related background materials, including copies of disciplinary and corrective actions and disposition documents such as declinations of prosecution, and copies of OGE Form 202, *Notification of Conflict of Interest Referral*. | **Temporary**.  Destroy 6 years after final disposition of the referral to either the IG or DOJ, but longer retention is authorized if required for business use. | DAA-GRS-2014-0005-0002 |

TD_0001367

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| 030 | **Reports of payments accepted from non-Federal sources.** | **Agency reports.** Reports, including the "Semiannual Report of Payments Accepted from a Non-Federal Source," submitted by agencies to the Office of Government Ethics and reported on the OGE Form 1353 (SF 326).  Reports summarize payments made to the agency from non-Federal sources for travel, subsistence, and related expenses of an employee who attends a meeting or similar function relating to official duties. | **Temporary.**  Destroy 3 years following submission of the report to OGE, but longer retention is authorized if required for business use. | DAA-GRS-2014-0005-0003 |
| 031 | | **Supporting documentation.** Documentation, such as statements and forms, used to complete the submitted reports. | **Temporary.**  Destroy 1 year following submission of the report to OGE, but longer retention is authorized if required for business use. | DAA-GRS-2014-0005-0004 |
| 040 | **Office of Government Ethics program questionnaire records.** Questionnaires completed by ethics officials, such as the "Annual Agency Ethics Program Questionnaire," the "Annual Agency Ethics Officer (DAEO) Survey," and other questionnaires and surveys, including records created or collected to prepare responses to ethics program questionnaires and surveys. | | **Temporary.**  Destroy 3 years after submission, but longer retention is authorized if required for business use. | DAA-GRS-2014-0005-0005 |
| 050 | **Ethics program review records.** Records relating to OGE reviews of agency compliance with executive branch ethics laws and regulations in such areas as financial disclosure, education and training, and advice and counseling. This includes OGE program review reports, notes and background materials produced during OGE program reviews, agency 60-day response letters, and other follow-up records sent to OGE on the resolution of program deficiencies. | | **Temporary.**  Destroy 6 years after all outstanding ethics program review deficiencies have been resolved or when the documentation for the next program review is on file, whichever is later. Longer retention is authorized if needed for business use. | DAA-GRS-2014-0005-0006 |

TD_0001368

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|---------------------|--|-------------------------|-----------------------|
| 060 | **Public financial disclosure reports.** Executive Branch Personnel Public Financial Disclosure Reports (OGE Form 278) (formerly SF 278), OGE Form 278e, and related records. | **Reports for individuals filing in accordance with the Ethics in Government Act, as amended (5 U.S.C. app.), including the Stop Trading on Congressional Knowledge Act of 2012 (STOCK Act) (Pub. L. 112-105), and not subsequently confirmed by the U.S. Senate.**<br><br>**Legal Citation:** 5 U.S.C. app. section 105, 5 CFR 2634.603 | **Temporary.** Destroy 1 year after nominee ceases to be under consideration for the position or when no longer needed for active investigation, whichever is later. This disposition instruction is mandatory; deviations are not allowed. | DAA-GRS-2014-0005-0007 |
| 061 | | All other reports.<br><br>**Legal Citation:** 5 U.S.C. app. section 105, 5 CFR part 2634.603 | **Temporary.** Destroy 6 years after receipt of the OGE Form 278 or 278e by the agency or when no longer needed for active investigation, whichever is later. This disposition instruction is mandatory; deviations are not allowed. | DAA-GRS-2014-0005-0008 |
| 062 | | Periodic transaction reports.<br>OGE 278-T forms filed by reporting individuals in accordance with the STOCK Act of 2012, and related records.<br><br>**Legal Citation:** STOCK Act, Pub. L. 112-105 | **Temporary.** Destroy 7 years after receipt by the agency or when the related subsequent OGE Form 278 (SF 278) is ready for destruction 6 years later. The reports may be retained longer if needed for active investigation. This disposition instruction is mandatory; deviations are not allowed. | DAA-GRS-2014-0005-0009 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|---------------------|---|--------------------------|------------------------|
| 063 | | **Requests to inspect or receive copies of executive branch personnel public financial disclosure reports or other covered records (OGE Form 201 or agency equivalent form).**<br><br>**Legal Citation:** 5 U.S.C. app. section 105(b)(2) | **Temporary.** Destroy when the requested report is destroyed. This disposition instruction is mandatory; deviations are not allowed. | DAA-GRS-2014-0005-0010 |
| 070 | **Confidential financial disclosure reports.** Executive Branch Confidential Financial Disclosure Reports (OGE Form 450) and Confidential Certificates of No New Interests (OGE Optional Form 450-A), and related records. | **Reports for individuals not subsequently confirmed by the U.S. Senate.**<br><br>**Legal Citation:** 5 CFR 2634.604 | **Temporary.** Destroy 1 year after nominee ceases to be under consideration for the position or when no longer needed for active investigation, whichever is later. This disposition instruction is mandatory; deviations are not allowed. | DAA-GRS-2014-0005-0011 |
| 071 | | **All other reports.**<br><br>**Legal Citation:** 5 CFR 2634.604 | **Temporary.** Destroy 6 years after receipt of the OGE Form 450 by the agency, except when the OGE Form 450 supports one or more subsequent Optional OGE Form 450-As then destroy 6 years after receipt of the last related OGE Form 450-A by the agency, or when no longer needed for active investigation, whichever is later. This disposition instruction is mandatory; deviations are not allowed. | DAA-GRS-2014-0005-0012 |

TD_0001370

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|--|-------------------------|-----------------------|
| 072 | | **OGE Optional Form 450-A reports.**<br><br>**Legal Citation:** 5 CFR 2634.604, 5 CFR 2634.905<br><br>**Note**: The OGE Form 450-A, filed for up to 3 consecutive years following the filing of an OGE Form 450, is an alternative disclosure report to the OGE Form 450 when there are no new interests to be reported by the filer. The "supporting OGE Form 450" cannot be destroyed until the last OGE Form 450-A report is ready for destruction. | **Temporary.** Destroy 6 years after receipt of the OGE Form 450-A report by the agency, along with the associated OGE Form 450, or when no longer needed for active investigation, whichever is later. This disposition instruction is mandatory; deviations are not allowed. | DAA-GRS-2014-0005-0013 |
| 080 | **Alternative or additional financial disclosure reports and related records.** | **Reports for individuals not subsequently confirmed by the U.S. Senate.**<br><br>**Legal Citation:** 5 U.S.C. app. section 105 | **Temporary.** Destroy 1 year after nominee ceases to be under consideration for the position or when no longer needed for active investigation, whichever is later. This disposition instruction is mandatory; deviations are not allowed. | DAA-GRS-2014-0005-0014 |
| 081 | | **All other reports.**<br><br>**Legal Citation:** 5 U.S.C. app. section 105 | **Temporary.** Destroy 6 years after receipt of the financial disclosure report by the agency or when no longer needed for active investigation, whichever is later. This disposition instruction is mandatory; deviations are not allowed. | DAA-GRS-2014-0005-0015 |
| 090 | **Financial disclosure supporting documentation.**<br>Supporting documentation used to review and verify the filer's report submission. Includes records such as: | | **Temporary.** Destroy at the same time an individual's related financial disclosure | DAA-GRS-2014-0005-0016 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|--|------------------------|------------------------|
| | • reviewer's notes<br>• background research reports<br>• memorialized verbal comments of filer in response to reviewer questions | | report is destroyed or 6 years after the individual has submitted their last financial disclosure report; or when no longer needed for active investigation, whichever is later. | |
| 100 | **Ethics agreements records.**<br>Records documenting the review and issue of ethics agreements used to remedy the appearance of potential or actual financial conflicts of interest. Includes:<br>• review of recusals, resignations, reassignments, and divestitures<br>• determinations<br>• authorizations<br>• waivers<br>• waivers of disqualifications<br><br>**Note**: Ethics Pledges and associated waiver certifications are filed in the political appointee's Official Personnel Folder or equivalent folder under the authority of Executive Order 13490 (Jan. 21, 2009): *Prescribing Standards of Ethical Conduct for Government Officers and Employees*. | **Agreements for employees who do not file financial disclosure reports.** | **Temporary.** Destroy 6 years after the waiver or other agreed-upon determination or action has been issued or undertaken, or 6 years after it is no longer in effect, or when no longer needed for active investigation, whichever is later. Longer retention is authorized if needed for business use. | DAA-GRS-2014-0005-0017 |
| 101 | | **Agreements for employees who file financial disclosure reports.** | **Temporary.** Destroy at the same time as the employee's last related financial report is destroyed or when no longer needed for active investigation, whichever is later. Longer retention is authorized if needed for business use. | DAA-GRS-2014-0005-0018 |

TD_0001372

# GENERAL RECORDS SCHEDULE 3.1: General Technology Management Records

This schedule covers records created and maintained by Federal agencies related to the general management of technology.  It includes records related to developing, operating, and maintaining computer software, systems, and infrastructure improvements; complying with information technology policies and plans; and maintaining data standards.

This schedule does not apply to system data or content.  This schedule does not apply to records documenting the Office of Management and Budget and the US Federal Chief Information Officers Council government-wide information management planning and programming.   There may be copies of the Exhibit 300 records within these case files.  However, agencies should continue to file the recordkeeping copy as part of IT Capital Investment Records.  Records needed to support contracts should be in procurement files, which are scheduled under the GRS for General Financial Management Records.

| Item | Records Title/Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| 001 | **Technology management administrative records.** | Records on day-to-day, routine information technology management. Records include:<br>• correspondence<br>• subject files, including briefings, reports, presentations, and studies that do not relate to high-level decision-making<br>• data calls<br>• operational and managerial guidance to organizational segments of the agency<br><br>**Exclusion:** This item does not apply to the records of the Chief Information Officer. These records must be scheduled by the agency on an agency-specific schedule. | **Temporary.** Destroy when 5 years old, but longer retention is authorized if needed for business use. | DAA-GRS-2016-0013-0002 |
| 010 | **Information technology development project records.** | **Infrastructure project records.**<br>Information Technology (IT) infrastructure, systems, and services project records document the basic systems and services used to supply the agency and its staff with access to computers and data telecommunications. Includes requirements for and implementation of functions such as:<br>• maintaining network servers, desktop computers, and other hardware,<br>• installing and upgrading network operating systems and shared applications, and<br>• providing data telecommunications; and infrastructure development and maintenance such as acceptance/authorization of infrastructure components, analysis of component options, feasibility, costs and benefits, and work associated with implementation, modification, and troubleshooting.<br><br>Includes records such as: | **Temporary.** Destroy 5 years after project is terminated, but longer retention is authorized if required for business use. | DAA-GRS-2013-0005-0006 |

| Item | Records Title/Description | Disposition Instruction | Disposition Authority |
|------|--------------------------|-------------------------|-----------------------|
| | • installation and testing records<br>• installation reviews and briefings<br>• quality assurance and security review<br>• requirements specifications<br>• technology refresh plans<br>• operational support plans<br>• test plans<br>• models, diagrams, schematics, and technical documentation<br><br>**Exclusion**:  Records relating to specific systems that support or document mission goals are not covered by this item and must be scheduled individually by the agency by submission of a records schedule to NARA.<br><br>**Note**:  Records concerning the development of each information technology (IT) system and software application are covered under the item for System Development Records. | | |
| 011 | **System development records.**<br>These records relate to the development of information technology (IT) systems and software applications through their initial stages up until hand-off to production which includes planning, requirements analysis, design, verification and testing, procurement, and installation. Records include case files containing documentation of planning, decision making, designing, programming, testing, evaluation, and problem solving.  Includes records such as:<br>• project plans<br>• feasibility studies<br>• cost analyses<br>• requirements documents<br>• compliance documents including:<br>   ○ Privacy Threshold Analyses (PTAs)<br>   ○ Privacy Impact Assessments (PIAs)<br>   ○ Security Plan<br>   ○ Information Protection Plan<br>• change control records<br>• Project Schedule | **Temporary.** Destroy 5 years after system is superseded by a new iteration, or is terminated, defunded, or no longer needed for agency/IT administrative purposes, but longer retention is authorized if required for business use. | DAA-GRS-2013-0005-0007 |

TD_0001374

| Item | Records Title/Description | Disposition Instruction | Disposition Authority |
|------|--------------------------|-------------------------|----------------------|
| | • Plan of Action and Milestones (POA&M)<br>• Configuration Management Plan<br>• Resource Management Plan<br>• Risk Assessment/Mitigation Plan<br>• Security Plan<br>• Disaster Recovery Plan<br>• Test /Acceptance Plan<br>• Quality Control Plan<br>• Deployment Guide<br>• User Guide<br>• Training Guide<br><br>**Exclusion**:  This item does not apply to system data or content.<br><br>**Note 1**:  For certain technical documentation (e.g., data dictionaries, file specifications, code books, record layouts, etc.) related to the detailed, as-built design or maintenance of an electronic system containing permanent records, use the GRS item Documentation Necessary for Preservation of Permanent Electronic Records.<br><br>**Note 2**:  This is consistent with the fact that the most complete version of system documentation is retained within the maintenance phase. | | |
| 012 | **Special purpose computer programs and applications.**<br>Computer software programs or applications that are developed by the agency or under its direction solely to use or maintain a master file or database authorized for disposal in a GRS item or a NARA-approved records schedule.<br><br>**Exclusion 1**:  This item does not include software or applications necessary to use or maintain any unscheduled master file or database or any master file or database scheduled for transfer to the National Archives.<br><br>**Exclusion 2**:  This item does not cover commercial, off-the-shelf (COTS) programs or applications, unless the agency has modified such programs or applications considerably to perform a mission- | **Temporary.** Delete when related master file or database has been deleted, but longer retention is authorized if required for business use. | DAA-GRS-2013-0005-0008 |

TD_0001375

| Item | Records Title/Description | Disposition Instruction | Disposition Authority |
|------|--------------------------|-------------------------|------------------------|
| | related function.<br><br>**Note:** Computer software needs to be kept as long as needed to ensure access to, and use of, the electronic records in the system throughout the authorized retention period to comply with 36 CFR Sections 1236.10, 1236.12, 1236.14, and 1236.20. | | |
| 020 | **Information technology operations and maintenance records.**<br>Information Technology Operations and Maintenance records relate to the activities associated with the operations and maintenance of the basic systems and services used to supply the agency and its staff with access to computers and data telecommunications. Includes the activities associated with IT equipment, IT systems, and storage media, IT system performance testing, asset and configuration management, change management, and maintenance on network infrastructure.<br><br>Includes records such as:<br>• files identifying IT facilities and sites<br>• files concerning implementation of IT facility and site management<br>• equipment support services provided to specific sites:<br>    o reviews<br>    o site visit reports<br>    o trouble reports<br>    o equipment service histories<br>    o reports of follow-up actions<br>    o related correspondence<br>• inventories of IT assets, network circuits, and building or circuitry diagrams<br>• equipment control systems such as databases of barcodes affixed to IT physical assets, and tracking of [approved] personally-owned devices<br>• requests for service<br>• work orders<br>• service histories<br>• workload schedules<br>• run reports<br>• schedules of maintenance and support activities<br>• problem reports and related decision documents relating to the software infrastructure of the network or | **Temporary.** Destroy 3 years after agreement, control measures, procedures, project, activity, or transaction is obsolete, completed, terminated or superseded, but longer retention is authorized if required for business use. | DAA-GRS-2013-0005-0004 |

| Item | Records Title/Description | Disposition Instruction | Disposition Authority |
|------|--------------------------|------------------------|----------------------|
| | system<br>• reports on operations<br>    o measures of benchmarks<br>    o performance indicators<br>    o critical success factors<br>    o error and exception reporting<br>    o self-assessments<br>    o performance monitoring<br>    o management reports<br>• website administration<br>    o frames<br>    o templates<br>    o style sheets<br>    o site maps<br>    o codes that determine site architecture<br>    o change requests<br>    o site posting logs<br>    o clearance records<br>    o requests for correction of incorrect links or content posted<br>    o requests for removal of duplicate information<br>    o user logs<br>    o search engine logs<br>    o audit logs<br>• records to allocate charges and track payment for software and services<br><br>**Note 1**: If any maintenance activities have a major impact on a system or lead to a significant change, those records should be maintained as part of the Configuration and Change Management Records.<br><br>**Note 2**: Records needed to support contracts should be in procurement files, which are scheduled under the GRS for General Financial Management Records. | | |
| 030 | **Configuration and change management records.**<br>Records created and retained for asset management, performance and capacity management, system management, configuration and change management, and planning, follow-up, and impact assessment of | **Temporary.** Destroy 5 years after system is | DAA-GRS-2013-0005-0005 |

General Records Schedule 3.1

| Item | Records Title/Description | Disposition Instruction | Disposition Authority |
|---|---|---|---|
| | operational networks and systems.  Includes records such as:<br>• data and detailed reports on implementation of systems, applications and modifications<br>• application sizing, resource and demand management records<br>• documents identifying, requesting, and analyzing possible changes, authorizing changes, and documenting implementation of changes<br>• documentation of software distribution (including COTS software license management files) and release or version management<br><br>**Note 1**:  If any maintenance activities have a major impact on a system or lead to a significant change, those records should be maintained as part of the Configuration and Change Management Records.<br><br>**Note 2**:  Per NARA practice, documentation for permanent electronic records should be transferred with the related records using the disposition authority for the related electronic records rather than the GRS disposition authority.<br><br>**Note 3**:  Agencies may retain a copy of documentation related to permanent electronic records. This copy may be destroyed at any time after the transfer request has been signed by the National Archives. | superseded by a new iteration, or is terminated, defunded, or no longer needed for agency/IT administrative purposes, but longer retention is authorized if required for business use. | |
| 040 | **Information technology oversight and compliance records.**<br>Information Technology (IT) Oversight and Compliance records relate to compliance with IT policies, directives, and plans. Records are typically found in offices with agency-wide or bureau-wide responsibility for managing IT operations.   Includes records such as:<br>• recurring and special reports<br>• responses to findings and recommendations<br>• reports of follow-up activities<br>• statistical performance data<br>• metrics<br>• inventory of web activity<br>• web use statistics<br>• comments/feedback from web site or application users<br>• internal and external reporting for compliance requirements relating to the Privacy Act, and electronic and information technology accessibility under Section 508 of the Rehabilitation Act<br>• system availability reports | **Temporary.** Destroy 5 years after the project/activity/ transaction is completed or superseded, but longer retention is authorized if required for business use. | DAA-GRS-2013-0005-0010 |

| Item | Records Title/Description | Disposition Instruction | Disposition Authority |
|------|--------------------------|-------------------------|------------------------|
| | • target IT architecture reports<br>• systems development lifecycle handbooks<br>• computer network assessments and follow-up documentation<br>• vulnerability assessment reports<br>• assessment and authorization of equipment<br>• Independent Verification and Validation (IV&V) reports<br>• contractor evaluation reports<br>• quality assurance reviews and reports<br>• market analyses and performance surveys<br>• benefit-cost analyses<br>• make vs. buy analysis<br>• reports on implementation of plans<br>• compliance reviews<br>• data measuring or estimating impact and compliance<br><br>**Note 1**: Copies of security plans are scheduled under GRS 3.2, Information Systems Security Records. There may be copies interfiled within this series.<br><br>**Note 2**: SORNs are scheduled under GRS 4.2, item 150. | | |
| 050 | **Data administration records.**<br>Data Administration includes maintenance of data standards, corporate data models, registries, and data definitions and dictionaries. Records relate to administrative | **Documentation necessary for preservation of permanent electronic records.**<br>Data administration records and documentation relating to electronic records scheduled as permanent in the GRS or in a NARA-approved agency schedule must be transferred to the National Archives to allow for continued access to the records, including:<br>• data/database dictionary records  • record layouts<br>• data systems specifications  • metadata<br>• file specifications  • user guides<br>• code books  • output specifications<br><br>**Note 1**: Per NARA practice, documentation for permanent electronic records must be transferred with the related records using the disposition authority for the related electronic records rather than the GRS disposition authority.<br><br>**Note 2**: Agencies may retain a copy of documentation related to permanent electronic | **Permanent.** Transfer to the National Archives with the permanent electronic records to which the document-tation relates. | DAA-GRS-2013-0005-0002 |

TD_0001379

| Item | Records Title/Description | Disposition Instruction | Disposition Authority |
|------|--------------------------|-------------------------|------------------------|
| | support for the maintenance of data standards, data definitions and data dictionaries. This schedule includes records that explain the meaning, purpose, logical relationships, and use and origin of data. It also includes any documentation related to electronic records, whether the records are part of an electronic system or stand-alone, that allows a user to understand or access the information. | records. This copy may be destroyed at any time after the transfer request has been signed by the National Archives. | | |
| 051 | **All documentation for temporary electronic records and documentation not necessary for preservation of permanent records.** Data administration records and documentation relating to electronic records that are scheduled as temporary in the GRS or in a NARA-approved agency schedule or any types of data administration records not listed as permanent in item DAA-GRS-2013-0005-0002, including<br>• data/database dictionary records    • record layouts<br>• data systems specifications       • metadata<br>• file specifications                • user guides<br>• code books                   • output specifications<br>and also the following records for all electronic records whether scheduled as temporary or permanent<br>• software operating manuals<br>• data standards<br>• table and dependency descriptions<br>• taxonomies<br>• schemas<br>• registries<br>• source code<br>• physical data model<br>• logical data model | **Temporary.** Destroy 5 years after the project/activity/ transaction is completed or superseded, or the associated system is terminated, or the associated data is migrated to a successor system, but longer retention is authorized if required for business use | DAA-GRS-2013-0005-0003 |

# GENERAL RECORDS SCHEDULE 3.2: Information Systems Security Records

This schedule covers records created and maintained by Federal agencies related to protecting the security of information technology systems and data, and responding to computer security incidents.  This schedule does not apply to system data or content.

| Item | Records Title/Description | Disposition Instruction | Disposition Authority |
|------|--------------------------|-------------------------|----------------------|
| 010 | **Systems and data security records.**<br>These are records related to maintaining the security of information technology (IT) systems and data. Records outline official procedures for securing and maintaining IT infrastructure and relate to the specific systems for which they were written.  This series also includes analysis of security policies, processes, and guidelines, as well as system risk management and vulnerability analyses.  Includes records such as:<br>• System Security Plans<br>• Disaster Recovery Plans<br>• Continuity of Operations Plans<br>• published computer technical manuals and guides<br>• examples and references used to produce guidelines covering security issues related to specific systems and equipment<br>• records on disaster exercises and resulting evaluations<br>• network vulnerability assessments<br>• risk surveys<br>• service test plans<br>• test files and data | **Temporary.** Destroy 1 year(s) after system is superseded by a new iteration or when no longer needed for agency/IT administrative purposes to ensure a continuity of security controls throughout the life of the system. | DAA-GRS-2013-0006-0001 |
| 020 | **Computer security incident handling, reporting and follow-up records.**<br>A computer incident within the Federal Government as defined by NIST Special Publication 800-61, Computer Security Incident Handling Guide, Revision 2, (August 2012) is a violation or imminent threat of violation of computer security policies, acceptable use policies, or standard computer security practices. This item covers records relating to attempted or actual system security breaches, including break-ins ("hacks," including virus attacks), improper staff usage, failure of security provisions or procedures, and potentially compromised information assets. It also includes agency reporting of such incidents both internally and externally.   Includes records such as:<br>• reporting forms<br>• reporting tools<br>• narrative reports | **Temporary.** Destroy 3 year(s) after all necessary follow-up actions have been completed, but longer retention is authorized if required for business use. | DAA-GRS-2013-0006-0002 |

| Item | Records Title/Description | | Disposition Instruction | Disposition Authority |
|------|--------------------------|--|-------------------------|----------------------|
| | • background documentation<br><br>**Note:** Any significant incidents (e.g., a major system failure or compromise of critical government data) must be documented in program records, such as those in the office of the Inspector General, which must be scheduled separately by submitting an SF 115 to NARA. | | | |
| 030 | **System access records.**<br>These records are created as part of the user identification and authorization process to gain access to systems. Records are used to monitor inappropriate systems access by users. Includes records such as:<br>• user profiles<br>• log-in files<br>• password files<br>• audit trail files and extracts<br>• system usage files<br>• cost-back files used to assess charges for system use<br><br>**Exclusion 1.** Excludes records relating to electronic signatures.<br><br>**Exclusion 2.** Does not include monitoring for agency mission activities such as law enforcement. | **Systems not requiring special accountability for access.**<br>These are user identification records generated according to preset requirements, typically system generated. A system may, for example, prompt users for new passwords every 90 days for all users. | **Temporary.** Destroy when business use ceases. | DAA-GRS-2013-0006-0003 |
| 031 | | **Systems requiring special accountability for access.**<br>These are user identification records associated with systems which are highly sensitive and potentially vulnerable. | **Temporary.** Destroy 6 years after password is altered or user account is terminated, but longer retention is authorized if required for business use. | DAA-GRS-2013-0006-0004 |
| 035 | **Cybersecurity logging records.**<br><br>For additional information about these records, see OMB Memo M-21-31.<br><br>Note: The requirements in OMB Memo M-21-31 do not apply to national security systems. Agencies may | **Full packet capture data.**<br>Packet capture (PCAP) results from the interception and copying of a data packet that is crossing or moving over a specific computer network.<br><br>**Legal citation:** OMB Memo M-21-31 | **Temporary.** Destroy when 72 hours old. Longer retention is authorized for business use. | DAA-GRS-2022-0005-0001 |

TD_0001382

| Item | Records Title/Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| | use this GRS for national security systems or submit an agency-specific schedule. | **Not media neutral.** Applies to electronic records only. | | |
| 036 | | **Cybersecurity event logs.**<br>Logs required by OMB Memo M-21-31 to capture data used in the detection, investigation, and remediation of cyber threats.<br><br>Legal citation: OMB Memo M-21-31<br><br>**Not media neutral.** Applies to electronic records only. | **Temporary.** Destroy when 30 months old. Longer retention is authorized for business use. | DAA-GRS-2022-0005-0002 |
| 040 | **System backups and tape library records.**<br>Backup files maintained for potential system restoration in the event of a system failure or other unintentional loss of data. | **Incremental backup files.** | **Temporary.** Destroy when superseded by a full backup, or when no longer needed for system restoration, whichever is later. | DAA-GRS-2013-0006-0005 |
| 041 | | **Full backup files.** | **Temporary.** Destroy when second subsequent backup is verified as successful or when no longer needed for system restoration, whichever is later. | DAA-GRS-2013-0006-0006 |
| 050 | **Backups of master files and databases.**<br>Electronic copy, considered by the agency to be a Federal record, of the master copy of an electronic record or file and retained in case the master file or database is damaged or inadvertently erased. | **File identical to permanent records scheduled for transfer to the National Archives.** | **Temporary.** Destroy immediately after the identical records have been captured in a subsequent backup file or at any time after the transfer request has been signed by the | DAA-GRS-2013-0006-0007 |

TD_0001383

| Item | Records Title/Description | | Disposition Instruction | Disposition Authority |
|------|--------------------------|--|--------------------------|------------------------|
| | | | National Archives, but longer retention is authorized if required for business use. | |
| 051 | | File identical to temporary records authorized for destruction by a NARA-approved records schedule. | **Temporary.** Destroy immediately after the identical records have been deleted or replaced by a subsequent backup file, but longer retention is authorized if required for business use. | DAA-GRS-2013-0006-0008 |
| 060 | **PKI administrative records.** Records are PKI-unique administrative records that establish or support authentication by tying the user to a valid electronic credential and other administrative non-PKI records that are retained to attest to the reliability of the PKI transaction process. Included are policies and procedures planning records; stand-up configuration and validation records; operation records; audit and monitor records; and termination, consolidation, or reorganizing records. Policies and procedures planning records relate to defining and establishing PKI systems. Records relate to such activities as determining that a PKI should be established; creating project implementation plans; creating the certificate policy (CP), certification practice statement (CPS), and other key operating documents; developing procedures in accordance with the CP and CPS; conducting risk analyses; developing records management policies (including migration strategies); and selecting the entity that will serve as registration authority (RA). Stand-up configuration and validation records relate to installing and validating both the Certification Authority (CA) and Registration Authority (RA), obtaining final approval or rejection from the agency's oversight or authorizing body, creating and generating a CA signature key, testing security procedures for the CA and RA, validating certification revocation procedures, and establishing back-up and storage for the PKI system. Operation records relate to the certification application; certificate issuance and key generation (including key pair generation and private key loading and storage of | **FBCA CAs.** | **Temporary.** Destroy/delete when 7 years 6 months, 10 years 6 months, or 20 years 6 months old, based on the maximum level of operation of the CA, or when no longer needed for business, whichever is later. | N1-GRS-07-3, item 13a1 |
| 061 | | **Other (non-FBCA et. al.) CAs.** | **Temporary.** Destroy/delete when 7 years 6 months to 20 years 6 months old, based on the maximum level of operation of the CA, or when no longer needed for business, whichever is later. | N1-GRS-07-3 , item 13a2 |

| Item | Records Title/Description | Disposition Instruction | Disposition Authority |
|------|--------------------------|-------------------------|----------------------|
| | private keys and components of private keys); certificate acceptance, validation, revocation, suspension, replacement, and renewal; creating and maintaining an event log; and installing and validating software updates. Audit and monitor records relate to conducting periodic internal and external reviews of auditable events specified in the Federal Bridge Certification Authority (FBCA) X.509 Certificate Policy and other Entity CA policies, monitoring compliance with security requirements specified in the CPS and other operating procedures, investigating internal fraud or misconduct, and conducting internal and external audits of software and systems security. Termination, consolidation, or reorganization records relate to terminating, consolidating, or reorganizing a PKI; notifying subscribers of decisions, transferring inactive keys and revocation certificate lists to storage repositories, transferring consenting subscribers' and certificates and related materials to a new Certificate Authority, destroying sensitive records involving privacy (in accordance with an authorized records schedule), and shutting down and disposing of RA hardware and CA software.<br><br>**Note:** Select PKI administrative records serve as transaction records that must be retained as part of the trust documentation set with transaction-specific records. Agencies must determine which PKI administrative records are embedded with transaction-specific records as transaction records. These administrative records may vary from transaction-to-transaction. | | |
| 062 | **PKI transaction-specific records.**<br>Records relate to transaction-specific records that are generated for each transaction using PKI digital signature technology. Records are embedded or referenced within the transaction stream and may be appended to the transaction content or information record. Along with PKI administrative and other administrative records, transaction-specific records are part of the PKI trust documentation set that establish or support the trustworthiness of a transaction. They may vary from transaction-to-transaction and agency-to-agency. When retained to support the authentication of an electronic transaction content record (information record), PKI digital signature transaction records are program records.<br><br>**Note:** Extreme care must be taken when applying the GRS-PKI to transaction records. Destruction of the transaction-specific and administrative records embedded in the transaction stream prior to the authorized retention of the information record that they access/protect will render the PKI incapable of performing what it is designed to do-protect and provide access to the information record. Due to the | **Temporary.** Destroy/delete when 7 years 6 months to 20 years 6 months old, based on the maximum level of operation of the appropriate CA and after the information record the PKI is designed to protect and/or access is destroyed according to an authorized schedule, or in the case of permanent records, | N1-GRS-07-3, item 13b |

| Item | Records Title/Description | Disposition Instruction | Disposition Authority |
|------|--------------------------|-------------------------|-----------------------|
|  | relative newness of PKI technology, both from an implementation and a litigation perspective, it is recommended that agencies identify all PKI transaction records (including PKI select administrative records embedded in the transaction stream and transaction-specific records) to be retained as part of the trust documentation for the records the PKI is designed to protect and or access and link the retention of the transaction records with that of the information record it protects/accesses. Transaction records must be retained as trust documentation set records together with the content/information record. | when the record is transferred to NARA legal custody. Longer retention is authorized if the agency determines that transaction-specific PKI records are needed for a longer period. |  |

75

# GENERAL RECORDS SCHEDULE 4.1:  Records Management Records

This schedule covers records created and maintained by Federal agencies that relate to the management of records and information. It includes records related to tracking and controlling agency records and documents, records management, forms management, and managing vital or essential records.

Agencies must offer any records created prior to January 1, 1921, to the National Archives and Records Administration (NARA) before applying disposition instructions in this schedule.

| Item | Records Title/Description | Disposition Instruction | Disposition Authority |
|------|---------------------------|-------------------------|-----------------------|
| 010 | **Tracking and control records.**<br>Records used to provide access to and control of records authorized for destruction by the GRS or a NARA-approved records schedule.  Includes:<br>● indexes<br>● lists<br>● registers<br>● inventories<br>● logs<br>**Exclusion 1:** This schedule excludes records containing abstracts of records content or other information that can be used as an information source apart from the related records.<br><br>**Exclusion 2:** This authority does not apply to tracking and control records related to records scheduled as permanent. The value of these records varies, so tracking and control records related to permanent records must be scheduled. | **Temporary.**  Destroy when no longer needed. | DAA-GRS-2013-0002-0016 |
| 020 | **Records management program records.**<br>Records related to the policies, procedures, and management of agency business records from creation to eventual disposition. Includes records created and maintained while planning, managing, evaluating, administering, and performing the function of agency records management. Activities include:<br>● providing oversight of entire records management program<br>● transferring, destroying, and retrieving records<br>● inventorying records and conducting records surveys<br>● scheduling records<br>● providing other records management services to customer units (such as records storage/reference assistance, and technical assistance with files plans and other records management questions)<br>● conducting records "clean out" days | **Temporary.**  Destroy no sooner than 6 years after the project, activity, or transaction is completed or superseded, but longer retention is authorized if needed for business use. | DAA-GRS-2013-0002-0007 |

TD_0001387

| Item | Records Title/Description | Disposition Instruction | Disposition Authority |
|------|--------------------------|-------------------------|-----------------------|
| | • conducting special projects<br>Records include:<br>• agency records management program surveys or evaluations<br>• reports of surveys or evaluations<br>• reports of corrective action taken in response to agency program surveys or evaluations<br>• disposal authorizations, schedules, and reports<br>• records schedules, legacy records schedules (SF 115, Request for Records Disposition Authority)<br>• SF 135, Records Transmittal and Receipt<br>• OF 11, Reference Request<br>• Transfer Request (TR); Legal Transfer Instrument (LTI); SF 258, Agreement to Transfer Records to the National Archives of the United States<br><br>**Exclusion**: This schedule item covers copies of the records schedule, transfer request, legal transfer instrument, and similar forms maintained by agencies—not the copies maintained by NARA. | | |
| 030 | **Vital or essential records program records.**<br>Records involved in planning, operating, and managing the agency's vital or essential records program. Includes:<br>• vital records inventories<br>• vital records cycling plans<br>• results of tests, surveys, or evaluations<br>• reports of corrective action taken in response to agency vital records tests | **Temporary.** Destroy 3 years after project, activity, or transaction is completed or superseded, but longer retention is authorized if needed for business use. | DAA-GRS-2013-0002-0008 |
| 031 | **Copies of vital records.**<br>Copies of agency records deemed essential to restore agency functions in case of emergency. | **Temporary.** Destroy when superseded by the next cycle. | DAA-GRS-2013-0002-0015 |

TD_0001388

| Item | Records Title/Description | Disposition Instruction | Disposition Authority |
|---|---|---|---|
| 040 | **Forms management records.**<br>Records involved with ensuring use of standard Federal and agency forms to support effective record-keeping and ensuring that Federal standard forms are available and used as appropriate to support Federal record-keeping requirements.  Includes:<br>● registers or databases used to record and control the numbers and other identifying data assigned to each form<br>● official case files consisting of the record copy of each agency-originated form with related instructions and documentation showing inception, scope, and purpose of the form<br>● background materials and specifications | **Temporary.** Destroy 3 years after form is discontinued, superseded, or canceled, but longer retention is authorized if needed for business use. | DAA-GRS-2013-0002-0009 |
| 050 | **Superseded** (Validation records for digitized temporary records.)<br>DAA-GRS-2019-0003-0001 was superseded by DAA-GRS-2022-0010-0003 (GRS 4.5, item 021) | | |

# GENERAL RECORDS SCHEDULE 4.2:  Information Access and Protection Records

This schedule covers records created in the course of agencies (1) responding to requests for access to Government information and (2) protecting information that is classified or controlled unclassified, or contains personal data that is required by law to be protected.

Agencies must offer any records created prior to January 1, 1921, to the National Archives and Records Administration (NARA) before applying disposition instructions in this schedule.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|---|---|---|---|
| 001 | **FOIA, Privacy Act, and classified documents administrative records.** Records on managing information access and protection activities. Records include: <br>• correspondence related to routine implementation of the FOIA and Privacy Act and administration of document security classification <br>• associated subject files <br>• feeder and statistical reports <br><br>**Exclusion:** This item does not cover records documenting policies and procedures accumulated in offices having agency-wide responsibilities for FOIA, Privacy Act, and classified documents. These records must be scheduled by the agency on an agency-specific schedule. | **Temporary.** Destroy when 3 years old, but longer retention is authorized if needed for business use. | DAA-GRS-2019-0001-0001 |
| 010 | **Superseded** (General information request files.) <br>DAA-GRS-2013-0007-0001 was superseded by DAA-GRS-2022-0009-0001 (GRS 5.2, item 010). | | |
| 020 | **Access and disclosure request files**. Case files created in response to requests for information under the Freedom of Information Act (FOIA), Mandatory Declassification Review (MDR) process, Privacy Act (PA), Classification Challenge, and similar access programs, and completed by: <br>• granting the request in full <br>• granting the request in part <br>• denying the request for any reason including: <br>  ○ inability to fulfill request because records do not exist <br>  ○ inability to fulfill request because request inadequately describes records <br>  ○ inability to fulfill request because search or reproduction fees are not paid <br>• final adjudication on appeal to any of the above original settlements <br>• final agency action in response to court remand on appeal <br>Includes: | **Temporary.**  Destroy 6 years after final agency action or 3 years after final adjudication by the courts, whichever is later, but longer retention is authorized if required for business use. | DAA-GRS-2016-0002-0001 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| | | • requests (either first-party or third-party)<br>• replies<br>• copies of requested records<br>• administrative appeals<br>• related supporting documents (such as sanitizing instructions)<br><br>**Note 1**: Record copies of requested records remain covered by their original disposal authority, but if disposable sooner than their associated access/disclosure case file, may be retained under this item for disposition with that case file.<br><br>**Note 2**:  Agencies may wish to retain redacted copies of requested records for business use after the rest of the associated request case file is destroyed. | | |
| 030 | **Information access and protection operational records**. | **Records tracking and controlling access to protected information.**<br>Includes:<br>• records documenting receipt, internal routing, dispatch, or destruction of classified and controlled unclassified records<br>• tracking databases and other records used to manage overall access program<br>• requests and authorizations for individuals to have access to classified and controlled unclassified records and information<br><br>**Note**:  Records documenting individuals' security clearances are covered under GRS 5.6, items 180 and 181. | **Temporary**.  Destroy 2 years after last form entry, reply, or submission; or when associated documents are declassified, decontrolled, or destroyed; or when an individual's authorization expires; whichever is appropriate.  Longer retention is authorized if required for business use. | DAA-GRS-2019-0001-0002 |
| 031 | | **Access control records.**<br>Includes:<br>• safe and padlock combinations<br>• names or other personal identifiers of individuals who know combinations<br>• comparable data used to control access into classified document containers | **Temporary**.  Destroy when superseded or obsolete, but longer retention is authorized if required for business use. | DAA-GRS-2013-0007-0020 |

TD_0001391

Transmittal No. 34
June 2023

General Records Schedule 4.2

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|---------------------|---|------------------------|----------------------|
| 032 | | **Records relating to classified or controlled unclassified document containers.** Includes forms placed on safes, cabinets, or vaults that record opening, closing, and routine checking of container security, such as SF-701 and SF-702.<br><br>**Note**: Forms involved in investigations are not covered by this item. They are instead retained according to the schedule item for records of the investigation. | **Temporary**. Destroy 90 days after last entry on form, but longer retention is authorized if required for business use. | DAA-GRS-2016-0002-0003 |
| 040 | **Records of accounting for and controlling access to records requested under FOIA, PA, and MDR.** Records documenting identity of, and internal routing, control points, and accountability for information to which access has been requested. Includes:<br>• forms, registers, ledgers, logs, and tracking systems documenting requester identity and contact information, request date, and nature or purpose of request<br>• inventories<br>• forms accompanying documents to ensure continuing control, showing names of people handling the documents, inter-office routing, and comparable data<br>• agent and researcher files | | **Temporary**. Destroy 5 years after date of last entry or final action by agency, as appropriate, but longer retention is authorized if required for business use. | DAA-GRS-2019-0001-0003 |
| 050 | **Privacy Act accounting of disclosure files.** Files maintained under the provisions of 5 U.S.C. §552a(c) for an accurate accounting of the date, nature, and purpose of each disclosure of a record to any person or to another agency. Includes:<br>• forms with the subject individual's name<br>• records of the requester's name and address<br>• explanations of the purpose for the request<br>• date of disclosure<br>• proof of subject individual's consent | | **Temporary**. Dispose of in accordance with the approved disposition instructions for the related subject individual's records, or 5 years after the disclosure for which the accountability was made, whichever is later. | NC1-64-77-1 item 27 [DAL-GRS-2023-0001-0001] |
| 060 | **Erroneous release records.** Files relating to the inadvertent release of privileged information to unauthorized parties, containing information the disclosure of which would constitute an unwarranted invasion of personal privacy. Includes:<br>• requests for information | **Records filed with the record-keeping copy of the erroneously released records.** | **Temporary**. Follow the disposition instructions approved for the released record copy or destroy 6 years after the erroneous release, whichever is later. | DAA-GRS-2015-0002-0001 |

81

Transmittal No. 34
June 2023

General Records Schedule 4.2

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| 061 | • copies of replies<br>• all related supporting documents<br>May include:<br>• official copy of records requested or copies | **Records filed separately from the record-keeping copy of the released records.** | **Temporary**. Destroy 6 years after the erroneous release, but longer retention is authorized if required for business use. | DAA-GRS-2015-0002-0002 |
| 065 | **Privacy complaint files.**<br>Records of privacy complaints (and responses) agencies receive in these categories:<br>• process and procedural (consent, collection, and appropriate notice)<br>• redress (inquiries seeking resolution of difficulties or concerns about privacy matters not specifically outlined in the Privacy Act)<br>• operational (inquiries regarding Privacy Act matters but not including Privacy Act requests for access and/or correction)<br>• complaints referred to another organization | | **Temporary**. Destroy 3 years after resolution or referral, as appropriate, but longer retention is authorized if required for business use. | DAA-GRS-2019-0001-0004 |
| 070 | **Agency reports to the Congress, Department of Justice, or other entities regarding FOIA, MDR, PA, and similar access and disclosure programs.**<br><br>**Note**: This item does not apply to summary reports incorporating government-wide statistics. These must be scheduled separately by the summarizing agent. | | **Temporary**. Destroy 2 years after date of report, but longer retention is authorized if required for business use. | DAA-GRS-2013-0007-0006 |
| 080 | **Legal and regulatory compliance reporting records.**<br>Reports prepared in compliance with federal laws and regulations, such as the E-Government Act (Public Law 107-347), Federal Information Security Modernization Act of 2014, and Title V (Confidential Information Protection and Statistical Efficiency Act), as codified in 44 U.S.C. §101. | **Annual reports by agency CIO, Inspector General, or Senior Agency Official for Privacy.**<br><br>**Legal citation**: OMB M-07-16. | **Temporary**. Destroy 5 years after submission of report, but longer retention is authorized if required for business use. | DAA-GRS-2013-0007-0022 |
| 081 | | **All other agency reports and internal reports by individual system owners to the Senior Agency Official for Privacy (SAOP).** | **Temporary**. Destroy 2 years after submission of report, but longer retention is authorized if required for business use. | DAA-GRS-2013-0007-0023 |

TD_0001393

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| 090 | **Privacy Act amendment request files.**<br>Files relating to an individual's request to amend a record pertaining to that individual under 5 U.S.C. §552a(d)(2), to the individual's request for review of an agency's refusal to amend a record under 5 U.S.C. §552a(d)(3), and to any civil action or appeal brought by the individual against the refusing agency under 5 U.S.C. §552a(g).  Includes:<br>● requests to amend and to review refusal to amend<br>● copies of agency's replies<br>● statement of disagreement<br>● agency justification for refusal to amend a record<br>● appeals<br>● related materials | | **Temporary**.  Destroy with the records for which amendment was requested or 4 years after close of case (final determination by agency or final adjudication, whichever applies), whichever is later. Longer retention is authorized if required for business use. | DAA-GRS-2013-0007-0007 |
| 100 | **Automatic and systematic declassification review program records**.<br>Files related to the review of permanent records in anticipation of automatic declassification at 25, 50, or 75 years per Executive Order 13526, and the periodic review of records exempted from automatic declassification.  Files include program records documenting declassification decisions. | | **Temporary**.  Destroy or delete after conducting next review or when subject records are transferred to NARA, but longer retention is authorized if required for business use. | DAA-GRS-2020-0002-0001 |
| 110 | **Fundamental classification guidance review files.**<br>Reports, significant correspondence, drafts, received comments, and related materials responding to "fundamental classification guidance review" as required by Executive Order 13526 Section 1.9.<br><br>**Note**:  This item does not cover reports and correspondence received at the Information Security Oversight Office (ISOO). | | **Temporary**.  Destroy 5 years after report is submitted to ISOO, but longer retention is authorized if required for business use. | DAA-GRS-2013-0007-0011 |
| 120 | **Classified information nondisclosure agreements**.<br>Copies of nondisclosure agreements, such as SF 312, Classified Information Nondisclosure Agreement, | **Records maintained in the individual's official personnel folder.** | Apply the disposition for the official personnel folder. | |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|---------------------|---|-------------------------|----------------------|
| 121 | signed by civilian and military personnel with access to information that is classified under standards put forth by executive orders governing security classification. | **Records maintained separately from the individual's official personnel folder.**<br><br>**Legal citations:**<br>ICD 703, Protection of Classified National Intelligence; 32 CFR 2001.80(d)(2)(vii). | **Temporary**. Destroy when 50 years old. | DAA-GRS-2015-0002-0003 |
| 130 | **Superseded** (Personally identifiable information extracts.)<br>DAA-GRS-2013-0007-0012 was superseded by DAA-GRS-2022-0009-0001 (GRS 5.2, item 010). | | | |
| 140 | **Personally identifiable information extract logs.**<br>Logs that track the use of PII extracts by authorized users, containing some or all of: date and time of extract, name and component of information system from which data is extracted, user extracting data, data elements involved, business purpose for which the data will be used, length of time extracted information will be used. Also includes (if appropriate): justification and supervisory authorization for retaining extract longer than 90 days, and anticipated disposition date. | | **Temporary**. Destroy when business use ceases. | DAA-GRS-2013-0007-0013 |
| 150 | **Privacy Act System of Records Notices (SORNs).**<br>Agency copy of notices about the existence and character of systems of records, documenting publication in the Federal Register when the agency establishes or revises the system, per the Privacy Act of 1974 [5 U.S.C. 552a(e)(4) and 5 U.S.C. 552a(e)(11)], as amended. Also significant material documenting SORN formulation, other than Privacy Impact Assessment records (see item 161). | | **Temporary**. Destroy 2 years after supersession by a revised SORN or after system ceases operation, but longer retention is authorized if required for business use. | DAA-GRS-2016-0003-0002 |
| 160 | **Records analyzing Personally Identifiable Information (PII).**<br>Records documenting whether certain privacy and data security laws, regulations, and agency policies are required; how the agency collects, uses, shares, and maintains PII; and incorporation of privacy protections into records systems as required by the E- | **Records of Privacy Threshold Analyses (PTAs) and Initial Privacy Assessments (IPAs).**<br>Records of research on whether an agency should conduct a Privacy Impact Assessment (PIA). | **Temporary**. Destroy 3 years after associated PIA is published or determination that PIA is unnecessary, but longer retention is authorized if required for business use. | DAA-GRS-2016-0003-0003 |

TD_0001395

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| 161 | Government Act of 2002 (Public Law 107-347, section 208), the Privacy Act of 1974 (5 U.S.C. 552a), and other applicable privacy laws, regulations, and agency policies. Includes significant background material documenting formulation of final products. | **Records of Privacy Impact Assessments (PIAs).** | **Temporary**. Destroy 3 years after a superseding PIA is published, after system ceases operation, or (if PIA concerns a website) after website is no longer available to the public, as appropriate. Longer retention is authorized if required for business use. | DAA-GRS-2016-0003-0004 |
| 170 | **Computer matching program notices and agreements.**<br>Agency copy of notices of intent to share data in systems of records with other federal, state, or local government agencies via computer matching programs, and related records documenting publication of notice in the Federal Register per the Privacy Act of 1974 [5 U.S.C. 552a(e)(12)], as amended. Also agreements between agencies, commonly referred to as Computer Matching Agreements, prepared in accordance with Office of Management and Budget Final Guidance. Includes documentation of Data Integrity Board (DIB) review and approval of matching programs and agreements, and significant background material documenting formulation of notices and agreements. | | **Temporary**. Destroy upon supersession by a revised notice or agreement, or 2 years after matching program ceases operation, but longer retention is authorized if required for business use. | DAA-GRS-2016-0003-0005 |
| 180 | **Virtual public access library records.**<br>Records published by an agency on line to fulfill the requirement in 5 U.S.C. 552(a)(2)(A) through 5 U.S.C. 552(a)(2)(D) and 5 U.S.C. 552(g)(1) through 5 U.S.C. 552(g)(3) that agencies must make those records available for public inspection and copying. Includes:<br>● final concurring and dissenting opinions and orders agencies issue when adjudicating cases<br>● statements of policy and interpretations the agency adopts but does not publish in the *Federal Register*<br>● administrative staff manuals and instructions to staff that affect a member of the public<br>● copies of records requested under the Freedom of Information Act (FOIA) which, because of the nature of their subject matter, the agency determines are, or are likely to become, the subject of subsequent requests for substantially the same records or which have been requested three or more times | | **Temporary**. Destroy when no longer needed. | DAA-GRS-2016-0008-0001 |

TD_0001396

| Item | Records Description | Disposition Instruction | Disposition Authority |
|---|---|---|---|
| | • indexes of agency major information systems<br>• descriptions of agency major information and record locator systems<br>• handbooks for obtaining various types and categories of agency public information<br><br>**Exclusion:** This item refers only to copies an agency publishes on line for public reference. The agency record copy of such material may be of permanent value and the agency must schedule it.<br><br>Not media neutral. Applies to electronic records only. | | |
| Controlled Unclassified Information (CUI) program records. | | | |

**Controlled Unclassified Information (CUI) program records.**
   **Exclusion:** Records of the Controlled Unclassified Information Executive Agent office at the National Archives (NARA must schedule these records separately).

| Item | Records Description | Disposition Instruction | Disposition Authority |
|---|---|---|---|
| 190 | **CUI program implementation records.**<br>Records of overall program management. Includes:<br>• records documenting the process of planning agency policy and procedure<br>• agency submissions to the CUI Executive Agent of authorities (laws, federal regulations, or Government-wide policies containing safeguarding or dissemination controls) the agency proposes to include in the CUI Registry to designate unclassified information as CUI<br>• agency submissions to the CUI Executive Agent of proposed laws, federal regulations, or Government-wide policies that would establish, eliminate, or modify a category of CUI, or change information controls applicable to CUI<br>• correspondence with CUI Executive Agent<br><br>**Exclusion 1:** CUI directives and formal policy documents (agencies must schedule these separately).<br><br>**Exclusion 2:** Records of CUI self-inspections (GRS 5.7, item 020 covers these).<br><br>**Exclusion 3:** Records of annual program reports to the CUI Executive Agent (GRS 5.7, item 050 covers these). | **Temporary.** Destroy when 7 years old, but longer retention is authorized if required for business use. | DAA-GRS-2019-0001-0005 |
| 191 | **CUI information sharing agreements.**<br>Agreements in which agencies agree to share CUI with non-executive branch entities (*e.g.*, state and local police) and foreign entities that agree to protect the CUI.<br><br>**Exclusion:** Contracts involving CUI and contractor access to CUI; GRS 1.1, item 010 covers contracts. | **Temporary.** Destroy 7 years after canceled or superseded, but longer retention is authorized if required for business use. | DAA-GRS-2019-0001-0006 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|---------------------|---|-------------------------|------------------------|
| 192 | **Records of waivers of CUI requirements.** Description of and rationale for each waiver, documentation of alternate steps the agency takes to ensure it sufficiently protects the CUI covered by the waiver, and records of the agency notifying authorized recipients and the public of the waiver. | | **Temporary**. Destroy when waiver is rescinded, system is no longer in use, or all affected records are destroyed, as applicable, but longer retention is authorized if required for business use. | DAA-GRS-2019-0001-0007 |
| 193 | **Records of requests for decontrol and challenges to CUI designations.** Requests to decontrol CUI or challenging a CUI marking as incorrect (either improperly assigned or lacking), responses to requests, records of adjudication, and records of dispute resolution if adjudication is appealed. | **Records filed with the record-keeping copy of the CUI-marked records.** | Follow the disposition instructions approved for the records at issue. | |
| 194 | | **Records filed separately from the record-keeping copy of the CUI-marked records.** | **Temporary**. Destroy 6 years after change in CUI status, but longer retention is authorized if required for business use. | DAA-GRS-2019-0001-0008 |
| 195 | **Records of CUI misuse.** Allegations of CUI misuse, records of internal investigations, communications with and reports of findings from the CUI Executive Agent, and records of corrective actions.<br><br>**Exclusion**: If the agency assigns such investigations to its Inspector General (IG), the agency schedule for IG records covers the records created in the IG office. | | **Temporary**. Destroy 5 years after completing the investigation or completing all corrective actions, whichever is later, but longer retention is authorized if required for business use. | DAA-GRS-2019-0001-0009 |

TD_0001398

Last updated in Transmittal No. 32
March 2022

# GENERAL RECORDS SCHEDULE 4.4:  Library Records

Agency library and information centers collect material related to their agency's mission or focus.  This schedule only applies to library or information centers within agencies, not agencies that are themselves libraries. Library services include administering the program, collecting data and information, and transferring collected data and information to the end customer.  This schedule covers records that document agency library and information center administration and daily operations.

**Exclusions:**
1. Records of standalone libraries such as the Presidential libraries, the Library of Congress, the National Agricultural Library, the National Library of Education, the National Library of Medicine, and the National Transportation Library.
2. Non-record material such as library and museum material agencies make or acquire and preserve solely for reference or exhibition purposes, extra copies of documents agencies preserve only for convenient reference, and stocks of publications and processed documents.
3. Unique or special collections of data, technical information, or other records, which agencies must schedule based on their content.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|---|---|---|---|
| 010 | **Library administrative records.**<br>Records documenting a library's planning and management.   Records may document library policies, procedures, and statistics.  Includes records such as:<br>● strategic plans, project plans<br>● policies and procedures for developing collections, acquisitions, patron privacy, loans, and restricting library material<br>● promotional material describing library services and resources<br>● correspondence and records on library staffing and relations with other libraries<br>● quick guides to library databases and resources, topical or customized reading lists, and bibliographies<br><br>**Note:**  For records on purchasing licenses, subscriptions, vendor services, or interagency agreements, see GRS 1.1, Financial Management and Reporting Records. | **Temporary.**  Destroy when 3 years old or 3 years after superseded or obsolete, whichever is applicable. Longer retention is authorized for business use. | DAA-GRS-2015-0003-0001 |
| 020 | **Library operations records.**<br>Records documenting the daily activities of running a library.   Includes:<br>● reference inquiries and responses<br>● correspondence and records about normal cataloging, circulation, and document delivery activities<br>● visitor logs, sign-in sheets, computer sign-up sheets, and equipment or facility registration forms<br>● photocopying and digitization requests | **Temporary.**  Destroy when business use ceases. | DAA-GRS-2015-0003-0002 |

TD_0001399

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|---------------------|-------------------------|------------------------|
| 030 | **Inter Library-Loan (ILL) requests.** | **Temporary.** Destroy 5 years after completing the transaction. | DAA-GRS-2015-0003-0003 |

TD_0001400

# GENERAL RECORDS SCHEDULE 4.5: Digitizing Records

This schedule covers source records that have been digitized and documentation related to digitization projects and processes.

**Exclusions**
1. Final digitized versions of records. These records must be scheduled on an agency-specific schedule or an applicable General Records Schedule.
2. Input/source records for non-digitized records. GRS 5.2, item 020, covers these records.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|-----------------------|----------------------|
| 010 | **Source Records.**<br>Records from which a digitized version or digitized record is created that are:<br>• Scheduled as temporary in an approved records schedule; or<br>• Scheduled as permanent and that were created on or after 1 January 1950.<br><br>**Exclusions**<br>The following records are not covered by this authority. For additional information on how to proceed for excluded records see the Frequently Asked Questions (FAQs) for GRS 4.5, Digitizing Records.<br>1. Source records when the digitized versions do not meet the standards established in 36 CFR 1236 Subpart D - Digitizing Temporary Federal Records or Subpart E - Digitizing Permanent Federal Records.<br>2. Formats not covered by 36 CFR 1236 Subpart E - Digitizing Permanent Federal Records. Agencies must use agency-specific schedules for these records.<br>3. Source records that were created before 1 January 1950 that have been scheduled as permanent or are unscheduled.<br>4. Source records that have intrinsic value in the original medium that would be lost if the content were converted to another medium.<br><br>**Notes** | **Temporary.** Destroy after validating the digitization process meets NARA's digitization standards in regulation (36 CFR 1236 Subpart D and Subpart E). Longer retention is authorized for business use. | DAA-GRS-2022-0010-0001 |

TD_0001401

| | | | | |
|---|---|---|---|---|
| | 1. The regulations for digitizing records and this disposition authority do not address other business needs or legal constraints that may make it necessary for an agency to retain source records for a period of time after digitizing. Consult with legal counsel prior to disposal to ensure there are no concerns associated with rights and interests, appeal rights, benefits, national security, litigation holds, or other similar issues.<br>2. Agencies must schedule digitized records prior to disposing of any source records if they are unscheduled.<br><br>**Media limitation:** Applies to paper/analog records only.<br><br>**Legal citations:** 44 U.S.C. 3302 and 3312, 36 CFR 1236.36(a), 36 CFR 1236.56 (d),(f) and (g) | | | |
| 020 | **Digitization Project Records.**<br>Records used to manage digitizing projects and document (validate) that the digitized versions of records are of suitable quality to replace source records.<br><br>**Exclusion:** Digitized records and associated metadata; the appropriate current, approved agency-specific records schedule or applicable GRS item covers these. | **Documentation for digitizing permanent records.**<br>Specific documentation requirements for digitizing permanent records are listed in 36 CFR 1236.44, Documenting digitization projects.<br><br>**Exclusion:** Administrative, technical, and descriptive metadata captured during the digitization project must be transferred to NARA with the digitized records (36 CFR 1236.56(j)).<br><br>**Legal citation:** 36 CFR 1236.56 | **Temporary.** Destroy when the digitized records are transferred to the National Archives and NARA confirms legal custody has been accepted. Longer retention is authorized if required for business use. | DAA-GRS-2022-0010-0002 |

TD_0001402

| 021 | | **Documentation for digitizing temporary records.** Specific documentation requirements for digitizing temporary records are listed in 36 CFR 1236.34.<br><br>**Legal Citation:** 36 CFR 1236.34(c) | **Temporary.** Destroy when the records digitized using the validation process are destroyed, but longer retention is authorized if required for business use. | DAA-GRS-2022-0010-0003 |

92

# GENERAL RECORDS SCHEDULE 5.1: Common Office Records

This schedule covers certain records common to most offices in Federal agencies, whether those offices are involved in administrative or mission-related activities. Most of these records are administrative housekeeping records. Agencies create and maintain administrative records when carrying out general, non-mission-related activities that keep an office operating. In contrast, agencies create mission records when carrying out the unique activities for which the agency was established. The only mission-related records this schedule covers are non-recordkeeping copies of electronic records (item 020) that are maintained for decision-making purposes or taking action. Copies maintained solely for convenience of reference are considered non-record materials.  This schedule may be applied to records in offices that carry out mission-related activities, but only those records that are described here.

This schedule does not apply to transitory records, which are scheduled in GRS 5.2. The distinction between transitory and the records covered in this schedule is that the records here generally have a longer period of business use than transitory records. This schedule also does not cover materials an agency determines to be non-record or personal.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|------------------------|-----------------------|
| 010 | **Administrative records maintained in any agency office.**<br>Records accumulated by individual offices that relate to routine day-to-day administration and management of the office rather than the mission-specific activities for which the office exists. Records include:<br>• staff locators, unofficial organizational charts, and office seating charts (see Exclusion 1)<br>• office-level administrative policies and procedures and files related to their development (see Note 1)<br>• calendars or schedules of daily activities of non-high-level officials (high-level officials are defined in GRS 6.1; this item covers those positions not defined as high-level)<br>• informal requests and tracking of personnel training, travel, supplies, and equipment, excluding procurement and payment records and forms requesting training (e.g. SF-182)<br>• internal office activity and workload reports<br>• studies and analyses of office administrative functions and activities<br>• non-mission related management reviews and surveys<br>• minutes of meetings related to administrative activities<br><br>**Exclusion 1:** This item does not apply to recordkeeping copies of organizational charts, functional statements, and related records that document the mission-related organization, staffing, and procedures of the office.  Agencies must schedule those records on an agency-specific schedule. | **Temporary.** Destroy when business use ceases. | DAA-GRS-2016-0016-0001 |

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|---------------------|-------------------------|------------------------|
| | **Note 1:** This item covers administrative policies and procedures at the office/unit level. GRS 5.7 covers agency-level administrative issuances or directives. | | |
| 020 | **Non-recordkeeping copies of electronic records.**<br>Non-recordkeeping copies of electronic records agencies maintain in email systems, computer hard drives or networks, web servers, or other locations after agencies copy the records to a recordkeeping system or otherwise preserve the recordkeeping version. This includes:<br>• documents such as letters, memoranda, reports, handbooks, directives, manuals, briefings, or presentations created on office applications, including those in Portable Document Format (PDF) or its equivalent<br>• senders' and recipients' versions of electronic mail messages that meet the definition of Federal records, and any related attachments<br>• electronic spreadsheets<br>• digital still pictures or posters<br>• digital video or audio files<br>• digital maps or architectural drawings<br>• copies of the above electronic records maintained on websites or web servers, but EXCLUDING web pages themselves<br><br>**Note 1:** Non-recordkeeping copies may be Federal records. Often, copies are non-records and can be immediately destroyed, but not always. Copies are non-record if they are kept only for convenience of reference. If copies are used in the course of agency business to make decisions or take action, they are Federal records. The copies described here are Federal records if they are still being used by the agency for such business purposes, but are not recordkeeping copies of those records.<br><br>**Note 2:** For electronic mail records, the recordkeeping system must capture the names of sender and recipients, date (transmission data for recordkeeping purposes), and any receipt data, along with the message text. Sender/recipient information should be individual account information, not the name of a distribution list. | **Temporary.** Destroy immediately after copying to a recordkeeping system or otherwise preserving, but longer retention is authorized if required for business use. | DAA-GRS-2016-0016-0002 |
| 030 | **Records of non-mission related internal agency committees.**<br>Records created and maintained by committees established by an agency for facilitative or operational purposes unrelated to the agency's mission, such as organizing events, selecting interior furnishings, overseeing volunteer activities, or employee recreational activities. Records include:<br>• meeting minutes, summaries, agendas, and transcripts | **Temporary.** Destroy when business use ceases. | DAA-GRS-2016-0016-0003 |

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|-----|-----|
|  | <ul><li>reports and studies</li><li>membership records</li><li>correspondence, mailing, and distribution records</li></ul>**Exclusion:** These items do not cover records of Federal Advisory Committee Act or interagency committees. GRS 6.2 covers Federal Advisory Committee Act committee records.<br><br>**Note:** Records of mission-related committees are potentially permanent and agencies must schedule them by an agency-specific records schedule. |  |  |

TD_0001406

# GENERAL RECORDS SCHEDULE 5.2: Transitory and Intermediary Records

This schedule covers records of a transitory or intermediary nature. Transitory records are routine records of short-term value (generally less than 180 days). Intermediary records are those involved in creating a subsequent record. These records do not document significant decisions or actions an agency takes.

**Exclusions:**
1. Source records that have been digitized.  GRS 4.5, Digitizing Records, covers these records.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|---------------------|-------------------------|----------------------|
| 010 | **Transitory records.**<br>Records that meet the following conditions:<br>• They are required for only a short time (generally less than 180 days) **and**<br>• They are not required to meet legal or fiscal obligations, or to initiate, sustain, evaluate, or provide evidence of decision-making.<br><br>For specific examples, see the GRS 5.2 Frequently Asked Questions (FAQs).<br><br>**Exclusion:** This item does not include the following data output files, which must be scheduled on an agency-specific schedule:<br>• files created specifically for public access purposes<br>• summarized information from unscheduled electronic records or inaccessible permanent records<br>• data extracts produced by a process that significantly changes the content of the file from the source records' content, effectively creating a new data file | **Temporary.** Destroy when no longer needed for business use, or according to an agency predetermined time period or business rule. | DAA-GRS-2022-0009-0001 |

TD_0001407

| 020 | **Intermediary records.**<br>Records that meet the following conditions:<br>• They exist for the sole purpose of creating a subsequent record **and**<br>• They are not required to meet legal or fiscal obligations, or to initiate, sustain, evaluate, or provide evidence of decision-making.<br><br>This includes certain analog and electronic source records for electronic systems that are not otherwise excluded. For specific examples, see the GRS 5.2 Frequently Asked Questions (FAQs).<br><br>**Exclusion:** Source records that have been digitized. GRS 4.5, item 010, covers these records.<br><br>**Note:** The GRS provides disposition authority for copies of electronic records from one system that are used as source records to another system, for example an extracted data set. The GRS does not apply to either the originating system or the final system in which the final records reside. These systems must be disposed of per an agency-specific schedule, or if appropriate, another GRS. It is possible that sometimes information is moved from one system to another without the creation of an intermediary copy. | **Temporary.** Destroy upon creation or update of the final record, or when no longer needed for business use, whichever is later. | DAA-GRS-2022-0009-0002 |

97

# GENERAL RECORDS SCHEDULE 5.3:  Continuity and Emergency Planning Records

This schedule covers records related to federal agency internal emergency planning to protect people, government facilities, equipment, and records; safeguard classified or controlled unclassified information; ensure continuity of agency operations in the face of potential natural and man-made disasters; and facilitate timely recovery and return to normal agency operations once the emergency or disaster has passed.

Agencies must offer any records created prior to January 1, 1921, to the National Archives and Records Administration (NARA) before applying disposition instructions in this schedule.

This schedule does not include the following:
- external emergency planning records related to providing emergency response and recovery services to the public
- records related to high-level Government-wide Continuity of Government (COG) planning
- emergency response planning related to mission activities in the agency, e.g. NASA emergency plans for when a rocket explodes
- records related to a national disaster or incident response

These records may be of permanent value and must be scheduled on an agency-specific records schedule.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|---------------------|-------------------------|-----------------------|
| 010 | **Continuity planning and related emergency planning files.**<br>Records may include:<br>• records on continuity and emergency planning administrative and operational activities:<br>   o  briefing materials and presentations<br>   o  status reports<br>   o  informational papers<br>   o  files documenting policy or plan development, including policy studies<br>   o  procedures, operational manuals, and related development records<br>   o  implementation guidance<br>   o  related correspondence<br>   o  Memorandum (s) of Understanding<br>   o  Delegations of Authority/Orders of Succession<br>• continuity plans or directives and supporting documentation, including but not limited to:<br>   o  Continuity of Operations (COOP) plans<br>   o  Devolution Plans<br>   o  Occupant Emergency Plans (OEP)<br>   o  Emergency Action Plans (EAP) | **Temporary.** Destroy when 3 years old or 3 years after superseded or obsolete, whichever is applicable, but longer retention is authorized if required for business use. | DAA-GRS-2016-0004-0001 |

TD_0001409

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|---------------------|-------------------------|------------------------|
| |   ○ Facility Emergency Action Plans (FEAPS)<br>  ○ Records Emergency Plans (REMT)<br>  ○ Disaster Recovery Plans (DRP)<br>  ○ Pandemic Influenza Plans<br> • records on continuity or emergency tests or exercises, such as:<br>  ○ instructions to members participating in tests<br>  ○ staffing assignments<br>  ○ records of tests of communications and facilities<br> • evaluative reports on continuity or emergency tests or exercises, such as:<br>  ○ result reports<br>  ○ readiness reports<br>  ○ risk and vulnerability assessments<br>  ○ site evaluations and inspections<br>  ○ corrective action plans<br>  ○ after action reports/improvement plans<br><br>**Note 1:** Continuity or emergency plans that are acted upon in the event of a national emergency may be of permanent value. If an agency has such records that document response to significant events, it may submit a records schedule for NARA review. If an agency believes its continuity records generally warrant permanent retention, it must submit a records schedule to NARA to cover these records.<br><br>**Note 2:** Records on employee training for COOP are scheduled in GRS 2.6. Records on essential records management are scheduled in GRS 4.1.<br><br>**Exclusion 1:** This item does not include incident response records. These records may be of permanent value and should be scheduled by an agency-specific records schedule approved by NARA.<br><br>**Exclusion 2:** This item does not include high-level Government-wide Continuity of Government (COG) records, although it can cover agency specific COG records.<br><br>**Exclusion 3:** This item does not include the records of high-level officials (Capstone officials) as defined in GRS 6.1, item 010, or emergency plans that are part of a series of directives. Emergency plans issued as directives should be disposed of according to the disposition authority for agency directives. | | |

TD_0001410

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|-------------------|----------------------|---------------------|
| 020 | **Employee emergency contact information.**<br>Records used to account for and maintain communication with personnel during emergencies, office dismissal, and closure situations.  Records include name and emergency contact information such as phone numbers or addresses.  Records may also include other information on employees such as responsibilities assigned to the individual during an emergency situation.<br><br>**Exclusion:** This item does not include employee directories that contain information about where employees are located in facilities and work phone numbers (covered under GRS 5.5, item 020). | **Temporary.** Destroy when superseded or obsolete, or upon separation or transfer of employee. | DAA-GRS-2016-0004-0002 |

100

# GENERAL RECORDS SCHEDULE 5.4:  Facility, Equipment, Vehicle, Property, and Supply Records

This schedule covers records Federal agencies create and receive while managing, operating, and maintaining Government-owned and -leased real property, facilities, equipment, vehicles (land, water and air), personal property, and supplies.  This includes allocating space and managing supply stock.

Agencies must offer any records created prior to January 1, 1921, to the National Archives and Records Administration (NARA) before applying disposition instructions in this schedule.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|---|---|---|---|
| 010 | **Facility, space, vehicle, equipment, stock, and supply administrative and operational records.**<br>Records relating to administering and operating facilities, spaces, Federally owned and operated housing, land vehicles, water vessels, equipment, stocks, and supplies.  Includes:<br>● statistical and narrative reports<br>● studies<br>● requests for space using Standard Form 81 or equivalent<br>● space assignments and directories<br>● inventories of property, equipment, furnishings, stock, and supplies<br>● reports of survey regarding lost, damaged, missing, or destroyed property<br>● requisitions for supplies and equipment<br>● records tracking supply and procurement requirements<br>● records scheduling and dispatching vehicles, monitoring use, and reporting use<br>● related correspondence<br><br>**Exclusion 1:**  Records of aircraft operations (item 110 in this schedule covers these).<br><br>**Exclusion 2:**  Records of supply and property procurement (GRS 1.1, item 010 covers these).<br><br>**Exclusion 3:**  Requisition and supply records of the General Services Administration's GSA Global Supply program and Defense Logistics Agency records on military supply provision (supply is these agencies' mission so they must schedule the records separately). | **Temporary.**  Destroy when 3 years old or 3 years after superseded, as appropriate, but longer retention is authorized if required for business use. | DAA-GRS-2016-0011-0001 |
| **Ownership** | | | |

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|---------------------|-------------------------|------------------------|
| 020 | **Real property ownership records.**<br>Abstract or certificate of title documenting Federal real property ownership, surveys, easements, rights-of-way, and chain of title for property the Government acquired after December 31, 1920, by purchase, condemnation, donation, exchange, or otherwise.<br><br>**Exclusion 1:**  Records relating to property acquired prior to January 1, 1921 (agencies must schedule these separately).<br><br>**Exclusion 2:**  Reports of Excess Real Property (Standard Form 118) and associated real property case files (agencies must schedule these separately). | **Temporary.**  Transfer to new owner after unconditional sale or Government release of conditions, restrictions, mortgages, or other liens. | DAA-GRS-2016-0011-0002 |
| 030 | **Vehicle and equipment ownership records and operation manuals**.<br>Vehicle and equipment identification, registration, and warranty records.  Also manuals and similar documentation, whether produced locally or by the manufacturer. | **Temporary.**  Transfer with vehicle or item to new owner or destroy when item is excessed, as appropriate. | DAA-GRS-2016-0011-0003 |
| 040 | **Excess personal property, equipment, and vehicle records.**<br>Records agencies create when disposing of excess or surplus personal property by sale, donation, or destruction.  Includes:<br>● excess property inventories and lists<br>● lists and other records identifying approved receivers of excess property<br>● donation receipts<br>● destruction certificates<br>● documentation of vehicle transfer by sale, donation, or exchange, including Standard Form 97, United States Government Certificate to Obtain Title to a Motor Vehicle<br>● related correspondence<br><br>**Exclusion:**  Records documenting financial management of surplus property disposal by sale (GRS 1.1, item 010 covers these). | **Temporary.**  Destroy when 3 years old, but longer retention is authorized if required for business use. | DAA-GRS-2016-0011-0004 |
| **Facilities and equipment** | | | |

TD_0001413

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|---------------------|---|------------------------|----------------------|
| 050 | **Facility design, engineering, and construction records.** Architectural and engineering drawings and other design and construction records of buildings and structures not critical to agency mission, including office buildings, storage sheds, parking lots, maintenance shops, and service structures. | **Draft, preliminary, intermediate, working, and contract negotiation drawings.** | **Temporary.** Destroy when superseded, or when project terminates, as appropriate. | DAA-GRS-2016-0011-0005 |
| 051 | Includes:<br>● site maps and surveys<br>● plot plans<br>● structural drawings<br>● architectural renderings<br>● electricity, plumbing, communication services, and heating/ventilation/air conditioning (HVAC) drawings<br>● exterior delivery of utilities drawings<br>● materials plans and drawings<br>● minor routine part drawings such as fasteners, nuts, bolts, wires, screws, nails, pipe fittings, brackets, struts, plates, and beams<br>● construction progress photographs<br>● construction inspection reports<br>● equipment location plans<br>● paint plans and samples<br>● furniture design and layout drawings and plans<br>● space occupancy plans<br><br>**Exclusion 1**: Records documenting financial management of construction contracts (GRS 1.1, item 010 covers these).<br><br>**Exclusion 2:** Records documenting buildings deemed historically, architecturally, or technologically significant (agencies must schedule these because they may be of permanent value). | **Final and as-built drawings, plans, and designs; and all other records.** | **Temporary.** Destroy when superseded, or transfer to new owner, or destroy when structure is removed from Federal inventory, as appropriate. | DAA-GRS-2016-0011-0006 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|--|------------------------|----------------------|
| 060 | **Facility design, engineering, and construction operations records.** Records documenting operational support of facility design, engineering, and construction projects. Includes: <br>● project requests and approvals <br>● meeting agendas, minutes, and other records <br>● budget and cost working files <br>● task, punch, and action item lists <br>● work logs <br>● progress reports and presentation materials <br>● related correspondence and notes | | **Temporary.** Destroy 5 years after project completion or termination, but longer retention is authorized if required for business use. | DAA-GRS-2016-0011-0007 |
| 070 | ***Facility, space, and equipment inspection, maintenance, and service records.*** Records documenting inspection, maintenance, service, and repair activities relating to buildings, grounds, Federally owned and operated housing, equipment, and personal property.  Includes: <br>● repair and maintenance work orders, requisitions, and related papers <br>● maintenance and inspection logs and reports <br>● job orders, service call records, action sheets, and repair logs <br>● work, shop, or job schedules | **Records documenting facility structure and long-term maintenance.** | **Temporary.** Destroy when 3 years old, but longer retention is authorized if required for business use. | DAA-GRS-2016-0011-0008 |
| 071 | **Note 1**: Agencies that contract out facility management may wish to retain records longer than this item's disposition instruction to document contract performance. <br><br> **Note 2:** Agencies must offer any records created prior to January 1, 1939, to the National Archives and Records Administration (NARA) before applying this disposition instruction. <br><br> **Exclusion**: Records agencies hold to document expenditure of appropriated or non-appropriated funds (GRS 1.1, item 010 covers these). | **Superseded** (Records tracking completion of custodial and minor repair work.) DAA-GRS-2016-0011-0009 was superseded by DAA-GRS-2022-0009-0001 (GRS 5.2, item 010). | | |

TD_0001415

| Item | Records Description | Disposition Instruction | Disposition Authority |
|---|---|---|---|
| 080 | **Housing rental and lease records.**<br>Applications, leases, renewals, assignments, termination notices, and related documents regarding Federally owned and operated housing facilities. | **Temporary.** Destroy 3 years after lease termination, lapse, reassignment, rejection of application, cancellation of lease, or conclusion of litigation, as applicable. | DAA-GRS-2016-0011-0010 |
| **Vehicle maintenance and inspection records** | | | |
| 090 | **Land vehicle and water vessel inspection, maintenance, and service records.**<br>Records documenting inspection, maintenance, service, and repair activities relating to land vehicles and watercraft. Includes:<br>• work orders, service and repair requisitions, and logs<br>• descriptions of provided service and repair, and related papers<br><br>**Exclusion**: Records agencies hold to document expenditure of appropriated or non-appropriated funds (GRS 1.1, item 010 covers these). | **Temporary.** Destroy when 3 years old, but longer retention is authorized if required for business use. Transfer of extant records to new owner at sale or donation is authorized. | DAA-GRS-2016-0011-0011 |
| 100 | **Aircraft inspection, maintenance, and modification records.**<br>Records documenting general maintenance and inspection of and modifications to aircraft, aircraft components, engines, propellers, instruments, and accessories regarding:<br>• servicing, manufacturing, rebuilding and testing equipment<br>• classifying material's condition status<br>• preventive maintenance<br>• aircraft or equipment configuration and material alteration<br>• logistics services<br>Includes records such as:<br>• technical and non-technical correspondence<br>• maintenance manuals<br>• documentation of mechanical defects and evidence of repair<br>• annotated manuals or manuals different from those the manufacturer issued | **Temporary.** Destroy 6 years after disposing of aircraft or removing equipment from inventory, but longer retention is authorized if required for business use. | DAA-GRS-2016-0011-0013 |

TD_0001416

| Item | Records Description | Disposition Instruction | Disposition Authority |
|---|---|---|---|
| | <ul><li>bulletins directing specific inspections and records of action</li><li>logbooks</li><li>diagnostic checkouts</li><li>spot check inspections</li><li>maintenance requests</li></ul><br>**Exclusion 1:**  Maintenance manuals of unique or customized aircraft must be scheduled by the agency.<br><br>**Exclusion 2**:  Records of the Air Force, Navy, Army, and Federal Aviation Administration must be scheduled by those agencies. | | |
| **Vehicle and equipment operations and use records** | | | |
| 110 | **Vehicle and heavy equipment operator records**.<br>Records of individual employee operation of Government-owned vehicles and equipment, including tests, certifications, use authorization, safe driving/use awards, and related records.<br><br>**Exclusion**:  Records of operating vehicles and equipment specifically designed for military use (the agency must schedule these). | **Temporary.**  Destroy 3 years after separation of employee or 3 years after rescission of authorization to operate vehicles or equipment, whichever is sooner. | DAA-GRS-2016-0011-0014 |
| 120 | **Aircraft flight operations records.**<br>Records of day-to-day aircraft operations documenting flight requests, departures, takeoffs, destinations, and passengers; flight orders; flight plans; load manifests; dispatch releases; flight logs; and similar records.<br><br>**Exclusion**:  Records of the Air Force, Navy, Army, and Federal Aviation Administration must be scheduled by those agencies. | **Temporary.**  Destroy when 3 years old, but longer retention is authorized if required for business use. | DAA-GRS-2016-0011-0015 |

TD_0001417

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|-----------------------|----------------------|
| 130 | **Aircraft operational support records.**<br>Records documenting logistical support to flying activities, such as furnishing supplies, equipment, administrative assistance, and other needed logistics services.  Includes:<br>● comments on regulations<br>● directives and other records regarding logistics<br>● management improvement reports<br>● cost reduction reports<br>● requests for substantive information regarding logistics<br>● aircraft inventories | **Temporary.**  Destroy when 6 years old, but longer retention is authorized if required for business use. | DAA-GRS-2016-0011-0016 |
| 140 | **Vehicle and vessel accident and incident records.**<br>Records about vehicle and vessel accidents—land, water, and air—that vehicle management offices maintain, including:<br>● Standard Form 91, Motor Vehicle Accident Report<br>● Standard Form 94, Statement of Witness<br>● Standard Form 95, Claim for Damage, Injury, or Death<br>● *copies* of investigative reports (see Exclusion for original investigative reports)<br><br>**Exclusion**:  Original formal accident and incident investigation records (covered under GRS 5.6). | **Temporary.**  Destroy 3 years after case is closed, but longer retention is authorized if required for business use. | DAA-GRS-2016-0011-0017 |

TD_0001418

# GENERAL RECORDS SCHEDULE 5.5:
# Mail, Printing, and Telecommunication Service Management Records

This schedule covers records related to:
- organizing, planning, administering, controlling, and overseeing agency communications it sends and receives through any mail, messenger, courier, or shipping service
- administering and using all landline and mobile telecommunication equipment and devices that transmit and receive UHF, VHF, short-wave, satellite, and other radio frequencies
- administering printing/binding/duplicating services

Agencies must offer any records created prior to January 1, 1921, to the National Archives and Records Administration (NARA) before applying disposition instructions in this schedule.

This schedule specifically excludes certain records from coverage:
- objects relayed by any delivery system: hard copy mail, packages, and messages the agency sends or receives by telephone, email, text, or radio (the agency must schedule these according to the item's subject matter content)
- records documenting agency contracts with shipping, delivery, and telecommunication services (covered under GRS 1.1, item 010)
- information technology (IT) records (covered under GRS 3.1)
- unique agency publications produced by a printing service (the publishing agency must schedule these records)
- records documenting agency programs that provide printing services (*e.g.* the Government Printing Office and the Bureau of Engraving and Printing) and radio/broadcasting services (*e.g.* the Armed Forces Radio and Television Service) (those agencies must schedule these records)

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|---------------------|-------------------------|-----------------------|
| 010 | **Mail, printing, and telecommunication services administrative and operational records.** Records of internal mail room, printing/duplication services, and radio/telecommunication services administration and operation. Includes:<br>• agreements and related background data and other records regarding mail, printing, telecommunication, and radio services, the agency retains for administrative (not fiscal) use<br>• records that document acquiring, installing, changing, removing, and servicing mail, printing, telecommunication, and radio service equipment<br>• telephone and mobile device use records with details on call origin/destination, date, time, duration, downloads, messaging, cost, and other data<br>• records documenting allocation, distribution, and use of telephone calling cards | **Temporary.** Destroy when 3 years old, or 3 years after applicable agreement expires or is cancelled, as appropriate, but longer retention is authorized if required for business use. | DAA-GRS-2016-0012-0001 |

TD_0001419

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|-------------------|------------------------|----------------------|
| | • statistical reports on mail and package shipment volume and costs<br>• related correspondence<br><br>**Exclusion**:  Agreements used to support payment vouchers (GRS 1.1, item 010 covers these) | | |
| 020 | **Mail, printing, and telecommunication services control records**.<br>Records of general day-to-day communication service administration and specific transmission tracking. Includes:<br>• records that track shipment, routing, registration, certification, declared value, insurance, and receipt of incoming and outgoing mail, including overnight, express, special delivery, and specially tracked packages<br>• messenger and courier service logs, assignment records and instructions, dispatch records, delivery receipts, route schedules, and related records documenting messenger and courier service activity<br>• reports of loss, rifling, delayed or late delivery, wrong delivery, or other improper mail treatment<br>• records that document requisitioning and receiving stamps and postage meter balances<br>• documentation and tracking to intended destination of valuables (e.g. checks, cash, stamps, money orders, etc.) the agency receives by mail or private delivery/messenger<br>• staff and office directories the agency uses to ensure correct mail and package delivery<br>• printing requisitions, work orders, samples, manuscript clearances, and related documents<br>• mailing and contact lists a mailroom or similar office manages<br>• telephone message registers and logs<br><br>**Exclusion 1**:  United States Postal Service records tracking shipment, *etc.* (first bullet) and reports of loss, *etc.* (third bullet).  USPS must schedule these separately.<br><br>**Exclusion 2**:  Requisitions used to support payment vouchers (GRS 1.1, item 010 covers these)<br><br>**Exclusion 3**:  Mailing lists for public distribution of material (GRS 6.5, item 020 covers these) | **Temporary.**  Destroy when 1 year old or when superseded or obsolete, whichever is applicable, but longer retention is authorized if required for business use. | DAA-GRS-2016-0012-0002 |
| 030 | **Metered mail records.**<br>Official metered mail reports such as GSA-1390A, "Quarterly Postage Mail Report / Record of Accountable Metered Mail Report," and all related papers. | **Temporary.**  Destroy when 6 years old, but longer retention is authorized if required for business use. | DAA-GRS-2016-0012-0003 |

TD_0001420

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|------------------------|------------------------|
| 040 | **Lost, destroyed, or damaged shipment records.**<br>Records documenting shipment of valuables under the Government Losses in Shipment Act, including consignee and carrier identification; shipment description; value or replacement value declaration, and registry or lock number; date and time of delivery; registry and carrier receipts; shipment notice; shipment inspection; report of loss, destruction, or damage; and claim for replacement. | **Temporary**.  Destroy when 6 years old, but longer retention is authorized if required for business use. | DAA-GRS-2016-0012-0004 |

# GENERAL RECORDS SCHEDULE 5.6:  Security Management Records

Security Management involves the physical protection of an organization's personnel, assets, and facilities (including security clearance management). Activities include: security operations for protecting agency facilities, staff, and property; managing personnel security; and insider threat protection.

**Conditions and Exclusions**
The following conditions and exclusions apply to all disposition authorities in this schedule.
1.  Agencies must offer any records covered by this schedule that were created prior to January 1, 1921, to the National Archives and Records Administration (NARA) before applying disposition instructions in this schedule, except records covered by items 120 and 130. Agencies must offer records covered by items 120 and 130 to the National Archives if they were created prior to January 1, 1939.
2.  This schedule does not apply to records related to federal law enforcement activities and federal correctional activities (including records about their uniforms and equipment, body camera records, criminal surveillance records, records on accidents or incidents in incarceration or detention facilities, etc). Law enforcement and correctional functions differ from security functions and include border and transportation security and immigration and naturalization services. For additional description of these activities, see the FAQs for GRS 5.6. Agencies engaging in these activities must schedule such records on agency-specific schedules.
3.  This schedule does not apply to records related to securing data and information systems. GRS 3.2, Information Systems Security Records, covers such records.
4.  This schedule does not apply to records about protecting and accessing information. GRS 4.2, Information Access and Protection Records, covers such records.

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|---------------------|---|------------------------|----------------------|
| 010 | **Security management administrative records.**<br>Records about routine facility security, protective services, and personnel security program administration not covered elsewhere in this schedule.  Includes:<br>• administrative correspondence<br>• reports, including status reports on cleared individuals<br>• staffing level and work planning assessments, such as guard assignment records<br>• administrative subject files | | **Temporary.**  Destroy when 3 years old, but longer retention is authorized if required for business use. | DAA-GRS-2021-0001-0001 |
| 020 | **Key and card access accountability records.**<br>Records accounting for keys and electronic access cards. | **Areas requiring highest level security awareness.**<br>Includes areas designated by the Interagency Security Committee as Facility Security Level V. | **Temporary.**  Destroy 3 years after return of key, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0002 |

TD_0001422

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| 021 | | **All other facility security areas.** Includes areas designated by the Interagency Security Committee as Facility Security Levels I through IV. | **Temporary.** Destroy 6 months after return of key, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0003 |
| 030 | **Security uniform and equipment tracking records.** Records tracking uniforms and equipment issued to security management personnel, including: <br>• firearms (type, serial number, manufacturer, caliber, firearm registration date, storage location data, etc.) <br>• communication devices issued to security personnel, such as mobile radios and walkie-talkies <br>• body armor such as bullet-proof vests <br>• police baton and holder <br>• handcuffs and keys <br><br>**Exclusion:** Does not apply to uniform and equipment tracking records for federal law enforcement and correctional officers. federal law enforcement includes border and transportation security and immigration and naturalization services. | | **Temporary.** Destroy 3 months after return of equipment, but longer retention is authorized if required for business use. | DAA-GRS-2021-0001-0002 |
| 040 | **Property pass records.** Records authorizing removal of government and privately owned property or materials off premises owned or leased by the federal government.  Also includes hand receipts when used by staff to physically remove property. | | **Temporary.** Destroy 3 months after expiration or revocation, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0005 |
| 050 | **Records of credit card abuse and postal irregularities.** Records about irregularities in handling mail and improper use or misuse of telephone calling cards and government charge or purchase cards.  Includes: <br>• postal irregularities reports, such as loss or shortage of postage stamps or money orders, or loss or destruction of mail <br>• semi-annual reports on government charge card violations <br><br>**Exclusion:**  Mail service records; covered under GRS 5.5, Mail, Printing, and Telecommunication Service Management Records, item 020. | | **Temporary.** Destroy 3 years after completion of investigation or when 3 years old, whichever is later, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0006 |

Last updated in Transmittal No. 32
March 2022

General Records Schedule 5.6

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|--------------------|-------------------------|------------------------|
| 060 | **Unclaimed personal property records.**<br>Records accounting for non-government, personally owned property lost, abandoned, unclaimed, or believed stolen on premises owned or leased by the federal government.  Includes:<br>● lost-and-found logs and release forms<br>● loss statements<br>● receipts<br>● reports | **Records for property valued over $500.**<br><br>**Legal Citation:** 41 CFR 102-41.130 | **Temporary.**  Destroy when 3 years old or 3 years after the date title to the property vests in the government, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0007 |
| 061 | | **Records for property valued at $500 or less.**<br><br>**Legal citation:** 41 CFR 102-41.130 | **Temporary.**  Destroy 30 days after the property is found, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0008 |
| **Facility and physical security records.** | | | | |
| 070 | **Interagency Security Committee member records.**<br>Records are agency copies of committee records documenting the administration, operation, and decisions of the committee.  Includes:<br>● agendas<br>● meeting minutes<br>● best practice and standards documents<br>● funding documents for security countermeasures<br><br>**Exclusion:**  Records documenting the committee's establishment, organization, policy, membership, meetings, findings, recommendations, and accomplishments maintained by the Department of Homeland Security (DHS).  DHS covers these records under an agency-specific schedule. | | **Temporary.**  Destroy when 10 years old, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0009 |
| 080 | **Facility security assessment records.**<br>Surveys and inspections of security and safety measures at government or privately owned facilities assigned a security awareness status by government agencies.  Includes:<br>● facility notes<br>● inspector notes and reports | **Areas requiring highest level security awareness.**<br>Includes areas designated by the Interagency Security Committee as Facility Security Level V. | **Temporary.**  Destroy 5 years after updating the security assessment or terminating the security awareness status, whichever is sooner, but longer retention is | DAA-GRS-2017-0006-0010 |

TD_0001424

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| | • vulnerability assessments | | authorized if required for business use. | |
| 081 | | **All other facility security areas.**<br>    Includes areas designated by the Interagency Security Committee as Facility Security Levels I through IV. | **Temporary.** Destroy 3 years after updating the security assessment or terminating the security awareness status, whichever is sooner, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0011 |
| 090 | **Facility security management operations records.**<br>Records about detecting potential security risks, threats, or prohibited items carried onto federal property or impacting assets, including records documenting access control, screening, patrol and response, and control center operations.  Includes:<br>• control center key or code records<br>• registers of patrol and alarm services<br>• service reports on interruptions and tests<br>• emergency alarm contact call lists<br>• temporary identification cards<br>• correspondence or lists of facility occupants authorized to enter with a prohibited or controlled item on an identified date<br>• round and perimeter check reports, including facility patrol tour data<br>• surveillance records that do not document accidents or incidents<br>    ○ recordings of protective mobile radio transmissions<br>    ○ video surveillance recordings<br>    ○ closed circuit television (CCTV) records<br>• door slip summaries<br><br>Exclusions:<br>The following records are excluded and must be scheduled on agency-specific schedules: | | **Temporary.** Destroy when 30 days old, but longer retention is authorized if required for business use. | DAA-GRS-2021-0001-0003 |

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|------------------------|-----------------------|
| | 1. Records related to federal law enforcement and federal correctional activities, such as body camera recordings and criminal surveillance records.  federal law enforcement includes border and transportation security and immigration and naturalization services.<br>2. Records related to accident or incident investigations (see note 1 below).  Surveillance recordings that include accidents or incidents may be destroyed using this disposition authority provided a copy is retained in the accident or incident investigation records.<br><br>**Notes:**<br>1. Item 100 covers records of accidents and incidents.<br>2. Items 110 and 111 cover records of visitor processing. | | |
| 100 | **Accident and incident records.**<br>Records documenting accidents and incidents occurring on, in, or at government-owned or -leased facilities, vehicles (land, water, and air), and property used by federal agencies.  Includes:<br>● statements of witnesses<br>● warning notices<br>● records about arrests, commitments, and traffic violations<br>● accident and incident reports<br>● law enforcement agency requests for information<br><br>**Exclusions:**<br>1. Records of the Federal Aviation Administration (FAA) and the National Transportation Safety Board (NTSB) relating to aircraft used by federal agencies, including leased aircraft used by federal agencies.  The FAA and NTSB cover these records under agency-specific schedules.<br>2. Records related to federal law enforcement and federal correctional activities.  Federal law enforcement includes border and transportation security and immigration and naturalization services. Agencies that create these records must schedule them on agency-specific schedules.<br>3. Records of accidents or incidents in federal facilities involved in incarcerating or detaining individuals. Agencies that create these records must schedule them on agency-specific schedules.<br>4. Workers' compensation (personnel injury compensation) records.  GRS 2.4, Employee Compensation and Benefits Records, items 100 and 101, covers these records.<br>5. Records that vehicle management offices maintain about vehicle and vessel accidents—land, water, and air.  GRS 5.4, Facility, Equipment, Vehicle, Property, and Supply Records, item 140, covers these records. | **Temporary.**  Destroy 3 years after final investigation or reporting action or when 3 years old, whichever is later, but longer retention is authorized for business use. | DAA-GRS-2021-0001-0004 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|--|------------------------|----------------------|
| 110 | **Visitor processing records.**<br>Registers or logs recording names of outside contractors, service personnel, foreign national and other visitors, employees admitted to areas, and reports on vehicles and passengers. | **Areas requiring highest level security awareness.**<br>Includes areas designated by the Interagency Security Committee as Facility Security Level V. | **Temporary.** Destroy when 5 years old, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0014 |
| 111 | **Note:** GRS 4.2, Information Access and Protection Records, item 030, covers requests and authorizations for individuals to have access to classified files. | **All other facility security areas.**<br>Includes areas designated by the Interagency Security Committee as Facility Security Levels I through IV. | **Temporary.** Destroy when 2 years old, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0015 |
| 120 | **Personal identification credentials and cards.**<br>Records about credential badges (such as smart cards) that are (1) based on the HSPD-12 standards for identification cards issued to federal employees, contractors, and affiliates, and (2) used to verify the identity of individuals seeking physical access to federally controlled government facilities, and logical access to government information systems. Also referred to as Common Access Cards (CAC) cards, Personal Identity Verification (PIV) cards, and Homeland Security Presidential Directive 12 (HSPD-12) credentials.<br><br>**Exclusion:** Records of certain classes of government employee identification cards, such as those covered under special-risk security provisions or 44 U.S.C. Section 3542. Agencies must schedule these records on agency-specific schedules. | **Application and activation records.**<br>Applications and supporting documentation, such as chain-of-trust records, for identification credentials. Includes:<br>● application for identification card<br>● a log of activities that documents who took the action, what action was taken, when and where the action took place, and what data was collected<br>● lost or stolen credential documentation or police report<br><br>**Note 1:** Agencies must offer any records created prior to January 1, 1939, to the National Archives and Records Administration (NARA) before applying this disposition authority.<br><br>**Note 2:** GRS 3.2, Information Systems Security Records, covers applications for access to information systems. | **Temporary.** Destroy 6 years after the end of an employee or contractor's tenure, but longer retention is authorized if required for business use. | DAA-GRS-2021-0001-0005 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| 121 | | Cards. | **Temporary.** Destroy after expiration, confiscation, or return. | DAA-GRS-2017-0006-0017 |
| 130 | **Temporary and local facility identification and card access records.** Temporary employee, contractor, and occasional visitor facility and network identification access card and identity management system records. Identification verification credentials issued by facility or building managers to provide local verification credentials and cards issued by facility or building managers to provide local identification and access. Includes: <br>• temporary identification cards issued to temporary employees, contractors, and occasional visitors who do not meet the FIPS 201 Standard requirements for PIV issuance <br>• supplemental cards issued to access elevators <br>• personnel identification records stored in an identity management system for temporary card issuance <br>• parking permits <br><br>**Note:** Agencies must offer any records created prior to January 1, 1939, to the National Archives and Records Administration (NARA) before applying this disposition authority. | | **Temporary.** Destroy upon immediate collection once the temporary credential or card is returned for potential reissuance due to nearing expiration or not to exceed 6 months from time of issuance or when individual no longer requires access, whichever is sooner, but longer retention is authorized if required for business use. | DAA-GRS-2021-0001-0006 |
| 140 | **Sensitive Compartmented Information Facility (SCIF) accreditation records.** Physical security plans for SCIF construction, expansion, or modification. Includes: <br>• initial Fixed Facility Checklist <br>• pre-accreditation inspection report <br>• Construction Security Plan (CSP) <br>• TEMPEST Checklist | | **Temporary.** Destroy when SCIF receives final accreditation, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0019 |
| 150 | **Sensitive Compartmented Information Facility (SCIF) inspection records.** Inspection records required by Intelligence Community Directive (ICD) 705. Includes: <br>• Fixed Facility Checklists <br>• accreditation authorization documents <br>• inspection reports, including Technical Surveillance Counter Measures (TCSM) reports, for the entire period of SCIF accreditation <br>• operating procedures <br>• Special Security Officer/Contractor Special Security Officer (SSO/CSSO) appointment letters <br>• memoranda of agreements (MOAs) <br>• Emergency Action Plans | | **Temporary.** Destroy when 5 years old or after SCIF has been de-accredited for at least one year, whichever occurs sooner, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0020 |

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|------|--------------------|--|------------------------|------------------------|
| | • copies of any waivers granted by the Cognizant Security Authority (CSA)<br>• co-utilization approvals | | | |
| 160 | **Canine (K-9) service records.**<br>Records documenting acquisition, training, activities, care, and retirement of canine partners.  Includes:<br>• acquisition records<br>• breeder and lineage records<br>• vaccination and medical history records<br>• microchip number and identification records<br>• deficiencies/remedies<br>• training courses taken and resulting grades and certifications<br>• initial report of positive detections and bite incidents<br>• end-of-service documentation (through retirement or death | | **Temporary.**  Destroy when superseded or obsolete, or 3 years after dog is released from service, whichever is sooner, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0021 |
| **Personnel security records.** | | | | |
| 170 | **Personnel security investigative reports.**<br>Investigative reports and related documents agencies create or use to support initial favorable eligibility determinations, fitness determinations, and periodic reinvestigations, or to implement a continuous evaluation program. | **Personnel suitability and eligibility investigative reports.** | **Temporary.**  Destroy in accordance with the investigating agency instruction. | DAA-GRS-2017-0006-0022 |
| 171 | | **Reports and records created by agencies conducting investigations under delegated investigative authority.** | **Temporary.**  Destroy in accordance with delegated authority agreement or memorandum of understanding. | DAA-GRS-2017-0006-0023 |
| 180 | **Personnel security and access clearance records.**<br>Records about security clearances, and other clearances for access to government facilities or to controlled unclassified information, created to support initial favorable eligibility determinations, periodic reinvestigations, or to implement a continuous evaluation program.  Includes:<br>• questionnaires | **Records of people not issued clearances.**<br>Includes case files of applicants not hired.<br><br>**Exclusion:**  Copies of investigative reports covered in items 170 and 171. | **Temporary.**  Destroy 1 year after consideration of the candidate ends, but longer retention is authorized if required for business use. | DAA-GRS-2021-0001-0007 |

TD_0001429

| Item | Records Description | | Disposition Instruction | Disposition Authority |
|---|---|---|---|---|
| 181 | <ul><li>summaries of reports prepared by the investigating agency</li><li>documentation of agency adjudication process and final determination</li></ul> **Note:** GRS 3.2, Information Systems Security Records, items 030 and 031, covers Information system access records. | **Records of people issued clearances.** **Exclusion:** Copies of investigative reports covered in items 170 and 171. | **Temporary.** Destroy 5 years after employee or contractor relationship ends, but longer retention is authorized if required for business use. | DAA-GRS-2021-0001-0008 |
| 190 | **Index to the personnel security case files.** Lists or reports showing the current security clearance status of individuals. | | **Temporary.** Destroy when superseded or obsolete. | DAA-GRS-2017-0006-0026 |
| 200 | **Information security violations records.** Case files about investigating alleged violations of executive orders, laws, or agency regulations on safeguarding national security information. Includes allegations referred to the Department of Justice or Department of Defense. Includes final reports and products. **Exclusion 1:** Documents placed in Official Personnel Folders. GRS 2.2, Employee Management Records covers these records. **Exclusion 2:** Records of any subsequent investigations are covered under agency-specific schedules, such as Office of the Inspector General schedules. | | **Temporary.** Destroy 5 years after close of case or final action, whichever occurs sooner, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0027 |
| | **Insider threat records.** | | | |
| 210 | **Insider threat administrative and operations records.** Records about insider threat program and program activities. Includes: <ul><li>correspondence related to data gathering</li><li>briefing materials and presentations</li><li>status reports</li><li>procedures, operational manuals, and related development records</li><li>implementation guidance</li><li>periodic inventory of all information, files, and systems owned</li><li>plans or directives and supporting documentation, such as:<ul><li>independent and self-assessments</li></ul></li></ul> | | **Temporary.** Destroy when 7 years old, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0028 |

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|------------------------|----------------------|
|  |    o  corrective action plans<br>   o  evaluative reports<br><br>**Note**: GRS 2.6, Employee Training Records, covers records on mandatory employee training about insider threats. |  |  |
| 220 | **Insider threat inquiry records.**<br>Records about insider threat program inquiries initiated or triggered due to derogatory information or occurrence of an anomalous incident.  Includes initiated and final reports, referrals, and associated data sets.<br><br>**Exclusion:**  Records of any subsequent investigations are covered under agency-specific schedules, such as Office of the Inspector General schedules. | **Temporary.** Destroy 25 years after close of inquiry, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0029 |
| 230 | **Insider threat information.**<br>Data collected and maintained by insider threat programs undertaking analytic and risk-based data collection activities to implement insider threat directives and standards.  Includes, but is not limited to:<br>&bull; Counterintelligence and security information<br>   o  personnel security files<br>   o  polygraph examination reports<br>   o  facility access records, including visitor records<br>   o  security violation files<br>   o  travel records<br>   o  foreign contact reports<br>   o  financial disclosure filings<br>   o  referral records<br>   o  intelligence records<br>&bull; Information assurance information<br>   o  personnel usernames and aliases<br>   o  levels of network access<br>   o  levels of physical access<br>   o  enterprise audit data which is user attributable<br>   o  unauthorized use of removable media<br>   o  print logs<br>&bull; Human resources information | **Temporary.** Destroy when 25 years old, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0030 |

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|------------------------|-----------------------|
| |   ○ personnel files<br>  ○ payroll and voucher files<br>  ○ outside work and activities requests<br>  ○ disciplinary files<br>  ○ personal contact records<br>  ○ medical records/data<br> ● Investigatory and law enforcement information<br>  ○ statements of complainants, informants, suspects, and witnesses<br>  ○ agency, bureau, or department data<br> ● Public information<br>  ○ court records<br>  ○ private industry data<br>  ○ personal biographical and identification data, including U.S. Government name check data<br>  ○ generic open source and social media data<br><br>**Exclusion:** Case files of any subsequent investigations are covered under agency-specific schedules, such as Office of the Inspector General schedules. | | |
| 240 | **Insider threat user activity monitoring (UAM) data.**<br>User attributable data collected to monitor user activities on a network to enable insider threat programs and activities to:<br>● identify and evaluate anomalous activity involving National Security Systems (NSS)<br>● identify and assess misuse (witting or unwitting), or exploitation of NSS by insiders<br>● support authorized inquiries and investigations<br><br>**Exclusion:** Records of any subsequent investigations are covered under agency-specific schedules, such as Office of the Inspector General schedules.<br><br>**Legal authority:** CNSSD No. 504, 4 February 2014 | **Temporary.** Destroy no sooner than 5 years after inquiry has been opened, but longer retention is authorized if required for business use. | DAA-GRS-2017-0006-0031 |

# GENERAL RECORDS SCHEDULE 5.7:  Administrative Management and Oversight Records

This schedule covers records about administrative management activities in Federal agencies. It includes activities such as internal controls oversight and reporting, policies and procedures, and results management and reporting, but only when they relate to administrative functions.  It also includes some records related to the Federal Register.

**Exclusions and Conditions**
1. Excluded from this schedule are records about management and oversight of non-administrative activities, including agency mission-related performance management records, strategic plans, risk management records, audit records, organizational charts and reorganization studies, functional statements, delegations of authority, and agency histories.
2. Agencies must offer any records created prior to January 1, 1921, to the National Archives and Records Administration (NARA) before applying disposition instructions in this schedule.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|---------------------|-------------------------|-----------------------|
| **Administrative Internal Controls** | | | |
| 010 | **Administrative internal control management records.** Records related to internal evaluations of accounting and administrative controls, mandated or governed by: OMB Circulars A-123, A-130, and A-76; Government Accountability Office's (GAO) Standards for Internal Control in the Federal Government (the "Green Book"); and similar requirements or directives.  Includes: <ul><li>copies of internal and external directives outlining management control policy</li><li>management control plans and records of the planning process</li><li>comprehensive plans documenting agency efforts to comply with OMB Circular A-123 and similar requirements</li><li>reports and supporting materials used to document review of program areas for susceptibility to loss or unauthorized use of resources, errors in reports and information, and illegal and unethical actions</li><li>feeder reports and compliance statements from agency components contributing to consolidated reports the agency submits to the President/OMB or Congress (see Exclusion 2)</li><li>records tracking assignments, tasks, and responsibilities</li><li>related correspondence</li></ul> **Exclusion 1:**  Reports related to agency mission activities (agencies schedule these separately). **Exclusion 2:**  Consolidated final agency reports submitted to the President/OMB or Congress (agencies schedule these separately). | **Temporary**. Destroy 1 year after submission or when superseded, as appropriate, but longer retention is authorized if required for business use. | DAA-GRS-2020-0001-0001 |

TD_0001433

| Item | Records Description | Disposition Instruction | Disposition Authority |
|---|---|---|---|
| | **Exclusion 3:**  Reports that mandating agencies receive (these agencies must schedule them separately). | | |
| 020 | **Internal control review, response, and mitigation management records.**<br>Copies of reports and audits identifying internal administrative program weaknesses, mitigation action plans, corrective actions, tracking records, correspondence, and other records held by the office responsible for coordinating internal control functions.<br><br>**Exclusion:**  Records held by offices contributing to internal control review, response, and mitigation—but not responsible for overseeing it (GRS 5.1, item 010 covers these). | **Temporary.** Destroy 5 years after no further corrective action is needed, but longer retention is authorized if required for business use. | DAA-GRS-2017-0008-0002 |
| **Administrative Policy, Standards, and Guidelines** | | | |
| 030 | **Administrative directives and notices.**<br>Policy documents on administrative functions such as payroll, procurement, facilities, equipment, and human capital.  Includes records documenting development.<br><br>**Exclusion**: Documents related to mission activities (agencies schedule these separately). | **Temporary.** Destroy when superseded, obsolete, or no longer needed for business, whichever is later. | DAA-GRS-2017-0008-0003 |
| **Administrative Results Management and Reporting** | | | |
| 040 | **Administrative management report requirements records.**<br>Processing and submission files on mandatory management reports an agency creates or proposes. Includes:<br>• copies of authorizing directives<br>• preparation instructions<br>• descriptions of required or standardized formats<br>• clearance forms<br>• documents on evaluating, continuing, revising, and discontinuing reporting requirements.<br>This item applies only to management reports related to administrative activities. | **Temporary**. Destroy 2 years after the report is discontinued, but longer retention is authorized if required for business use. | DAA-GRS-2020-0001-0002 |

TD_0001434

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|-----------------------|----------------------|
| | **Exclusion:** Final reports created using these requirements. Use GRS 5.7, item 050, for mandatory reports related to administrative matters. | | |
| 050 | **Mandatory reports to external federal entities regarding administrative activities.** Agency-level reports that external federal oversight entities such as the White House, Congress, OMB, the Office of Personnel Management (OPM), and General Services Administration (GSA), require under authorities such as (but not limited to) OMB Circular A-123, the Federal Managers Financial Integrity Act (FMFIA), the Chief Financial Officers Act (CFOA), the Paperwork Reduction Act (PRA), Joint Committee on Printing requirements, and the FAIR Act.  Examples include: <ul><li>Agency Financial Report (AFR)</li><li>Statement of Assurance (per FMFIA), or equivalent</li><li>information collection clearances</li><li>report on financial management systems' compliance with requirements (per FMFIA), or equivalent</li><li>report on internal controls for corporations covered by the Government Corporation Control Act (per CFOA)</li><li>EEOC reports</li><li>Analysis and Action Plans and other reports required by EEOC's MD 715</li><li>No FEAR Act reports</li><li>service organization auditor report, or equivalent</li><li>improper payments report</li><li>premium class travel report</li><li>report on property provided to non-federal recipients, schools, and nonprofit educational institutions</li><li>feeder reports to the Status of Telework in the Federal Government Report to Congress</li><li>feeder reports to GSA fleet reports</li></ul> Includes ancillary records such as: <ul><li>background and research records</li><li>submission packets and compilations</li><li>related files</li></ul> **Exclusion 1:**  Oversight entities mandating the reports must separately schedule reports they receive. **Exclusion 2:** Mandatory reports and records related to agency management and oversight that are not limited to administrative matters, such as agency Annual Performance Plans, Annual Performance Reports, | **Temporary**. Destroy 6 years after report submission or oversight entity notice of approval, as appropriate, but longer retention is authorized if required for business use. | DAA-GRS-2020-0001-0003 |

TD_0001435

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|------------------------|------------------------|
| | Performance and Accountability Reports (PAR), and strategic planning records (agencies schedule these separately).<br><br>**Exclusion 3**:  Mandatory external reports on finance matters (GRS 1.1, items 020 and 040, cover these); mandatory external reports on employee ethics (various items in GRS 2.8 cover these); mandatory external reports on information access and protection (GRS 4.2, item 080, covers these). | | |
| 060 | **Records of allegations and claims that fall under U.S. Office of Special Counsel jurisdiction.**<br>Case files of interactions with the Office of Special Counsel (OSC) responding to allegations of illegality, waste, corruption, or other misconduct per the Civil Service Reform Act, Whistleblower Protection Act, Hatch Act, and Uniformed Services Employment & Reemployment Rights Act (USERRA).  Includes correspondence with and reports to and from the OSC; copies of testimony or hearing transcripts; copies of lists of corrective actions, orders or decisions, and appeals; and copies of final adjudications thereof.<br><br>**Exclusion 1**:  Records the Merit Systems Protection Board and the Office of Special Counsel create and hold (these entities schedule such records separately).<br><br>**Exclusion 2**:  Records of allegations of illegality, waste, corruption, or other misconduct reported to authorities within the whistleblower's own agency and handled without involving OSC (agencies must schedule such records separately). | **Temporary**. Destroy 3 years after final order or final adjudication of appeal, as appropriate, but longer retention is authorized if required for business use. | DAA-GRS-2017-0008-0006 |
| | **Records Related to the *Federal Register*** | | |
| 070 | ***Federal Register* notices other than proposed and final rules.**<br>Records of notices announcing public stakeholder meetings, hearings, investigations, petition filing, application filing, license issuance, license revocation, grant application deadlines, environmental impact statement availability, delegations of authority, hours of public opening, use of an agency's seal, guidance, System of Records Notices (SORNs), Paperwork Reduction Act Information Collection Requests (PRA ICRs), and other matters not codified in the Code of Federal Regulations.<br><br>**Note 1**:  SORNs *per se* are covered by GRS 4.2, item 150.<br><br>**Note 2**:  PRA Information Collection reports are covered by GRS 5.7, item 050.<br><br>**Note 3**:  Notices of meetings of committees established under the Federal Advisory Committee Act (FACA) are covered by GRS 6.2, item 050. | **Temporary**. Destroy when 1 year old, but longer retention is authorized if required for business use. | DAA-GRS-2017-0012-0004 |

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|-------------------|------------------------|----------------------|
| 080 | **Agency input into the unified agenda.**<br>Records that process agency input into the publication of:<br>● The Unified Agenda of Federal Regulatory and Deregulatory Actions (also known as the "unified agenda" or "semiannual regulatory agenda") published by General Services Administration (GSA) with input from the Office of Management and Budget (OMB)<br>● agency regulatory flexibility agendas<br>● The Regulatory Plan<br><br>**Exclusion:** Compiled records received by GSA, OMB, and the Office of the Federal Register; those entities must schedule these records. | **Temporary**. Destroy when 2 years old, but longer retention is authorized if required for business use. | DAA-GRS-2017-0012-0005 |

TD_0001437

# GENERAL RECORDS SCHEDULE 5.8:  Administrative Help Desk Records

Help desk services are provided by service centers to respond to Government and contract employees' technical and administrative questions.  This schedule covers records on managing administrative, technical, and information technology (IT) help desks.  It includes records on assistance provided both within the agency and through inter-agency service agreements on functions such as IT help, security, parking, payroll, timekeeping, human resources, etc.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|------------------------|----------------------|
| 010 | **Technical and administrative help desk operational records.**<br>• records of incoming requests (and responses) made by phone, email, web portal, etc.<br>• trouble tickets and tracking logs<br>• quick guides and "Frequently Asked Questions" (FAQs)<br>• evaluations and feedback about help desk services<br>• analysis and reports generated from customer management data<br>• customer/client feedback and satisfaction surveys, including survey instruments, data, background materials, and reports<br><br>**Exclusion:**  Public customer service records scheduled under GRS 6.5. | **Temporary.**  Destroy 1 year after resolved, or when no longer needed for business use, whichever is appropriate. | DAA-GRS-2017-0001- 0001 |

TD_0001438

# GENERAL RECORDS SCHEDULE 6.1:

# Email and Other Electronic Messages Managed under a Capstone Approach

This schedule applies *only* to federal agencies that implement a Capstone approach as described in this GRS. When implementing this GRS, agencies should consult the FAQs about GRS 6.1, Email and Other Electronic Messages Managed under a Capstone Approach.  Agencies are reminded that this GRS should not be implemented in isolation and should be supplemented with agency-wide policies and training.  Agencies must also incorporate this GRS into agency records management implementation tools, such as manuals and file plans. Agencies adopting a Capstone approach should consult other resources related to email and electronic message management, specifically the Capstone approach available on NARA's email management page.

Agencies must not implement this GRS until obtaining approval of NARA form 1005 (NA-1005), *Verification for Implementing GRS 6.1*. Agencies are required to obtain approval of a resubmitted NA-1005 at least every four years. Additional information, including a link to the form, may be found in the FAQs and in the instructions accompanying the form.

**GRS Scope**

This GRS provides disposition authority for email records and certain types of electronic messages.  Agencies using this GRS must apply it to email records, but may choose to also apply it to the other allowable types of electronic messages outlined below; this must be documented on the NA-1005.  Agencies wishing to schedule electronic messages outside the scope of this GRS may submit an agency-specific schedule proposing a different scope.

**Email**

This GRS applies to all email, regardless of how the email messages are managed or what email technology is used. Email, in the context of this GRS, also includes any associated attachments. This GRS may apply to records affiliated with other commonly available functions of email programs such as calendars/appointments and tasks.

**Other Types of Electronic Messages**

The GRS does not cover all types of electronic messages.  Agencies may choose to use this GRS for instant messages, text messages, and chat messages that serve a similar purpose as email to facilitate communication and information sharing.  This includes:

- messages affiliated with email system chat or messaging functions, and where the messages are managed independently from the email;
- messages from messaging services provided on mobile devices; and
- messages from messaging services on third-party applications.

Exclusions to all items below:

- messages affiliated with social media accounts/social media direct messaging services;
- messages affiliated with messaging services provided on video conferencing applications and services;
- voice mail (or similarly recorded) messages;
- messages affiliated with collaboration platforms; and
- messages from messaging systems that are ancillary to the purpose of a larger system (for example, a chat function built into a procurement system).

These records still require NARA-approved disposition authority but are not covered under this GRS. See the GRS 6.1 FAQ for specific examples of the inclusions and exclusions.

**Additional Scope**

Each agency is responsible for determining the scope of implementation when using Capstone, including, 1) whether implementation is to include only email, or to also include other types of electronic messages; 2) The range of implementation in an organization (agency-wide, specific office, etc.); and 3) the range of implementation regarding email and/or other types of electronic messaging technology and system platforms. Brief information on the scope of an agency's Capstone implementation is also required on the NA-1005.

Agencies are also responsible for defining (and documenting through policy) the official recordkeeping version of email and/or other types of electronic messages to be managed under a Capstone approach, especially when records are captured or retained in multiple locations (e.g., an email archive vs. the live system).  Agencies will need to determine the appropriate disposition for other versions of email and other types of records, whether disposable under GRS 5.1, item 020, or as non-record.

Agencies are expected to apply documented selection criteria to cull the records of Capstone officials (permanent accounts) to the greatest extent possible before transfer to NARA. Culling refers to the removal – or otherwise excluding from capture – of nonrecord, personal, or transitory messages and attachments. Culling typically includes the removal of spam, message blasts received (such as agency-wide communications), and personal materials (such as emails or messages to family members not related to agency business). Culling may be manual, automated, or a hybrid of both. Agencies may develop their own policies and procedures for the culling of temporary accounts.

**Applying this GRS**

When applying this GRS in part, agencies must ensure that all other records are covered by another NARA-approved disposition authority. Agencies NOT managing any of their email or other types of electronic messages under the Capstone approach are still responsible for managing these records by applying NARA-approved records schedules.

If an agency is implementing a Capstone disposition approach different from what is provided in this GRS, the agency must submit a records schedule. For example, an agency may want to narrow the list of required positions in item 010, use shorter retention lengths for temporary records, or extend the time frame for transfer of permanent records. Agencies who wish to use Capstone for a broader range of electronic messages, specifically those excluded from this GRS, may also submit an agency-specific schedule.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|------------------------|-----------------------|
| 010 | **Email and other electronic messages of Capstone officials.**<br>Capstone Officials are senior officials designated by account or position level.  This may be by email addresses, whether the addresses are based on an individual's name, title, a group, or a specific program function, and/or by phone number or other identifier for other types of electronic messages. Capstone officials include all those listed on an approved NARA form 1005 (NA-1005), *Verification for Implementing GRS 6.1*, and *must* include, when applicable:<br><br>1.  The head of the agency, such as Secretary, Commissioner, Administrator, Chairman or equivalent;<br><br>2.  Principal assistants to the head of the agency (second tier of management), such as Under Secretaries, Assistant Secretaries, Assistant Commissioners, and/or their equivalents; this includes officers of the Armed Forces serving in comparable position(s);<br><br>3.  Deputies of all positions in categories 1 and 2, and/or their equivalent(s);<br><br>4.  Staff assistants to those in categories 1 and 2, such as special assistants, confidential assistants, military assistants, and/or aides;<br><br>5.  Principal management positions, such as Chief Operating Officer, Chief Information Officer, Chief Knowledge Officer, Chief Technology Officer, and Chief Financial Officer, and/or their equivalent(s);<br><br>6.  Directors of significant program offices, and/or their equivalent(s);<br><br>7.  Principal regional officials, such as Regional Administrators, and/or their equivalent(s);<br><br>8.  Roles or positions that routinely provide advice and oversight to the agency, including those positions in categories 1 through 3 and 5 through 7, including: General Counsels, Chiefs of Staff, Inspectors General, etc.;<br><br>9.  Roles and positions not represented above and filled by Presidential Appointment with Senate Confirmation (PAS positions); and<br><br>10. Additional roles and positions that predominantly create permanent records related to mission critical functions or policy decisions and/or are of historical significance.<br><br>This item covers emails and/or other types of electronic messages of officials captured during their tenure as a Capstone official only. Therefore, records created prior to their designation as a Capstone official (e.g., prior to their promotion/rotation into a Capstone position) are excluded and should be disposed of with other NARA-approved disposition authorities, including - but not limited to - items 011 and 012 of this schedule. | **Permanent.** Cutoff and transfer in accordance with the agency's approved NA-1005, *Verification for Implementing GRS 6.1*. This will be between 15 and 30 years, or after declassification review (when applicable), whichever is later. | DAA-GRS-2022-0006-0001 |

This also includes those officials in an acting capacity for any of the above positions longer than 60 days. Agencies may also include individual emails and/or other types of electronic messages from otherwise temporary accounts appropriate for permanent disposition in this category.

This item *must* include all existing legacy email and/or other types of electronic messages that correlate to the roles and positions described above.

If a Capstone official has more than one agency-administered account, this item applies to all accounts. If a Capstone official has an email account managed by other staff (such as personal assistants, confidential assistants, military assistants, or administrative assistants), this item applies to those accounts. This item applies to all email and/or other types of messages regardless of the address names and/or phone number(s) used by the Capstone official for agency business, such as nicknames or office title names.  Email to or from personal or non-official email and/or other messaging accounts in which official agency business is conducted is also included – a complete copy of these records must be copied or forwarded to an official electronic messaging account of the officer or employee not later than 20 days after the original creation or transmission of the record.

Please consult the NA-1005 for more information on which positions are included within each category.

Not media neutral; applies to records managed in an electronic format only.

**Exclusions:** see exclusions under the GRS Scope section above.

**Notes:**
1. Cabinet level agencies implementing a Capstone approach that includes their components/operatives must apply the above definition to each component individually. In these cases, each component/operative is considered a separate agency in terms of the above definition of Capstone Officials. A component/operative of a cabinet level agency can implement a Capstone approach independent of their department but must also conform to the entirety of this definition.
2. Smaller agencies, micro-agencies or Commissions implementing a Capstone approach may find that some of their Capstone positions fall into several of the categories above and/or that they do not have applicable roles or positions for all categories.

| 011 | **Email and other types of electronic messages of Non-Capstone officials.** Email and/or other types of electronic messages of all other officials, staff, | All others except those in item 012. Includes positions and records not covered by items 010 or 012 of this schedule. | Temporary. Delete when 7 years old, but longer retention is authorized if | DAA-GRS-2022-0006-0002 |
|---|---|---|---|---|

TD_0001442

| | | | | |
|---|---|---|---|---|
| | and contractors not included in item 010.<br><br>**Note**: Agencies *only* using item 011 and/or item 012 of this GRS may not dispose of any records of officials in item 010, Email and other electronic messages of Capstone Officials, of this GRS without authority from NARA in the form of another GRS or agency-specific schedule. Submission and approval of NA-1005 is still required in these instances to document those being exempted from Capstone.<br><br>Agencies have discretion to designate individual email messages and/or other types of electronic messages, with their attachments as permanent, or as longer-term temporary records that should be cross-filed elsewhere pursuant to agency policies and business needs. | This item applies to the majority of email and other messaging accounts/users within an agency adopting a Capstone approach.<br><br>Not media neutral; applies to records managed in an electronic format only.<br><br>**Exclusions:** see exclusions under the GRS Scope section above. | required for business use. | |
| 012 | | **Support and/or administrative positions.**<br>Includes non-supervisory positions carrying out routine and/or administrative duties. These duties comprise general office or program support activities and frequently facilitate the work of federal agencies and their programs.  This includes, but is not limited to, roles and positions that: process routine transactions; provide customer service; involve mechanical crafts, or unskilled, semi-skilled, or skilled manual labor; respond to general requests for information; involve routine clerical work; and/or primarily receive nonrecord and/or duplicative email.<br><br>Not media neutral; applies to records managed in an electronic format only.<br><br>**Exclusions:** see exclusions under the GRS Scope section above. | **Temporary.** Delete when 3 years old, but longer retention is authorized if required for business use. | DAA-GRS-2022-0006-0003 |

132

TD_0001443

# GENERAL RECORDS SCHEDULE 6.2:  Federal Advisory Committee Records

This schedule covers Federal records created or received by Federal advisory committees and their subgroups pursuant to the Federal Advisory Committee Act (FACA) of 1972 (5 U.S.C., Appendix, as amended) and records related to the management of these committees by their sponsoring agencies or departments.

If a committee is a Presidential advisory committee, check with the agency's General Counsel before applying this schedule. If records are determined to fall under the Presidential Records Act, this schedule does not apply.

For convenience, the term "committee" is used in this schedule to mean "advisory committee" pursuant to FACA.

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|------------------------|----------------------|
| | **Committee Records** | | |
| 010 | **Substantive Committee Records (Non-Grant Review Committees)**<br>**Exclusion**: This item does not include records of committees whose sole purpose is grant review. See item 030 for these records.<br><br>Records documenting the establishment and formation of committees and their significant actions and decisions. Refer to agency administrative procedures to ascertain if these records are held by the CMO, GFO, or DFO. Only one copy of each record is considered permanent.  Not all records described below are necessarily created for all committees. Records  may include:<br>• records related to the establishment of the committee:<br>   o charters (original, renewal, re-establishment, and amended)<br>   o enacting legislation<br>   o explanation of committee need, when required<br>   o filing letters to Congress<br>   o organization charts<br>   o committee specific bylaws, standard operating procedures, or guidelines<br>   o any other materials that document the organization and functions of the committee and its components<br>• records related to committee membership:<br>   o memos or similar documentation of how and/or why individual members were selected<br>   o membership balance plans<br>   o membership rosters | **Permanent.** Transfer when records are 15 years old or upon termination of committee, whichever is sooner. | DAA-GRS-2015-0001-0001 |

| Item | Records Description | Disposition Instruction | Disposition Authority |
|---|---|---|---|
| | <ul><li>○ appointment letters, and all sub-categories of appointment letters, such as renewals, thank you letters, etc.</li><li>○ Resignation or termination letters</li></ul>• records of committee meetings and hearings:<ul><li>○ agency head's determination that a meeting or portion of a meeting may be closed to the public</li><li>○ agendas</li><li>○ materials presented to or prepared by or for the committee, such as briefing books, background materials, reports (including drafts), and presentations</li><li>○ meeting minutes</li><li>○ public comments</li><li>○ testimony received during hearings</li><li>○ transcripts of meetings and hearings (NOTE: If transcripts do not exist, audio/visual recordings are permanent under item 020)</li></ul>• records related to committee findings and recommendations:<ul><li>○ one copy each of final reports, memoranda, letters to agency, studies, and pamphlets produced by or for the committee</li><li>○ responses from agency to committee regarding recommendations</li><li>○ committee presentations or briefings of findings</li></ul>• records created by committee members:<ul><li>○ correspondence documenting discussions, decisions, or actions related to the work of the committee (excluding administrative or logistical matters), including electronic mail, exchanged between one or more committee members and/or agency committee staff (such as the Designated Federal Officer)</li></ul>• records related to research collected or created by the committee:<ul><li>○ records relating to research studies and other projects, including unpublished studies, reports, and research materials (may include electronic data)</li><li>○ raw data files created in connection with research studies and other projects where the information has been consolidated or aggregated for analyses, reports, or studies</li></ul>• documentation of advisory committee subcommittees (i.e., working groups, or other subgroups):<ul><li>○ records relating to the formation of the subcommittee or working group, if they exist<ul><li>▪ decision documents</li><li>▪ membership</li><li>▪ statement of purpose or other documentation of duties and responsibilities</li></ul></li><li>○ records that document the activities of subcommittees that support their reports and</li></ul> | | |

TD_0001445

| Item | Records Description | Disposition Instruction | Disposition Authority |
|------|--------------------|-----------------------|----------------------|
| | recommendations to the chartered or parent committee. This documentation may include, but is not limited to:<br>▪ meeting minutes<br>▪ transcripts<br>▪ reports<br>▪ briefing materials<br>▪ substantive correspondence, including electronic mail, exchanged between one or more subcommittee members, any other party that involves the work of the subcommittee, and/or agency committee staff (such as the Designated Federal Officer)<br>▪ background materials<br>• records related to committee termination (i.e., email, letter, memo, etc.).<br>• other records documenting decisions, discussions, or actions related to the work of a committee, including information on committee websites not captured elsewhere in committee records.<br><br>**Note:** Sponsoring agencies need to designate the recordkeeping copy of permanent committee records. Only one copy of the records should be the official recordkeeping copy that is transferred to NARA. Committee records should be arranged by committee, not by the type of record (e.g. NARA should not receive a collection of charters for multiple committees; original charters should be transferred with the other permanent records related to the committee, regardless of where they are maintained). | | |
| 020 | **Substantive Audiovisual Records (Non-Grant Review Committees)**<br>**Exclusion:** This item does not include records of committees whose sole purpose is grant review. See item 030 for these records.<br>Records include:<br>• audiotapes, videotapes, and/or other recordings of meetings and hearings not fully transcribed<br>• captioned formal and informal analog or digital photographs, and any related finding aids, of committee members and staff, meetings, or hearings<br>• posters (2 copies) produced by or for the committee | **Permanent.** Transfer when records are 3 years old or upon termination of committee, whichever is sooner. | DAA-GRS-2015-0001-0002 |
| 030 | **Grant Review Committee Records**<br>Committee establishment, membership, and meeting records related to FACA committees whose only activity is review of grant proposals.  (See item 010 for further definition of committee records.) This also includes digital and analog recordings of meetings, photographs, posters and other audiovisual materials.<br><br>**Note**: If the committee performs additional functions or activities other than review for grants, it should | **Temporary.** Destroy upon termination of committee. | DAA-GRS-2015-0001-0003 |

TD_0001446