UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR TAXPAYER RIGHTS et al.,

*Plaintiffs*,

v.

INTERNAL REVENUE SERVICE et al.,

*Defendants*.

Civil Action No. 25-cv-457-CKK

**NOTICE REGARDING OBJECTIONS TO DEFENDANTS' DESIGNATION OF THE ADMINISTRATIVE RECORD**

On October 29, 2025, Defendants filed their administrative record. *See* ECF No. 48. The Court ordered that Plaintiffs file any objections to Defendants' designation of the administrative record on or before November 3, 2025. ECF No. 46.

An administrative record must allow the Court to have "neither more nor less information than did the agency when it made its decision . . . [t]o review less than the full administrative record might allow a party to withhold evidence unfavorable to its case, and so the APA requires review of 'the whole record.'" *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).

Plaintiffs object to Defendants' exclusion of two documents from the administrative record. These documents are directly referenced within documents produced in the record, and

those descriptions of the omitted documents strongly suggest that the documents are highly relevant to Defendants' challenged final agency actions. The first is a communication concerning deficiencies in an Immigration and Customs Enforcement ("ICE") data request, and the second is a memorandum concerning IT delivery of results responsive to the ICE data request.

First, Defendants omitted a June 23, 2025, written communication from the then-Acting Chief Counsel of the Internal Revenue Service ("IRS") concerning deficiencies in a mass data request from ICE. In a Wednesday June 25, 2025, email from then-Acting IRS Chief Counsel Andrew De Mello entitled "DHS Update," Mr. De Mello twice referred to an earlier "written communication" from "Monday evening"—from the context this communication thus occurred on Monday June 23, 2025. ECF No. 48-3 at TD_0000093 (attached as Exhibit 1). Mr. De Mello described this June 23 communication as having "provided you a list of deficiencies contained in the data file" seeking information under the Memorandum of Understanding between IRS and the Department of Homeland Security ("DHS"). *Id*. Mr. De Mello noted that this communication stated the request was "not processible by the IRS." *Id*. Mr. De Mello reiterated deficiencies that he wrote had been included in his "Monday evening communication," identifying numerous ways in which ICE had failed to meet statutory requirements. *Id.* Defendants have not included the June 23rd communication within the record even though it concerned deficiencies in a data request from DHS and memorialized a final IRS decision that the request was "not processible." It therefore appears that this communication was highly relevant to the challenged conduct, was not predecisional, and was considered by IRS decisionmakers in their later, challenged action. It

2

should be included in the record.[1]

Second, Defendants omitted a memorandum concerning IRS's Information Technology ("IT") organization's delivery of results in response to ICE's mass request for data that was being completed little more than a week before IRS responded to ICE's mass data request. Nine days before IRS's mass response to ICE's data request on August 7, 2025, Acting Chief Privacy Officer John Walker emailed an "IRS-DHS ICE Update as of 7/29/2025.". ECF No. 48-4 at TD_0000131 (Exhibit 2). This email stated that IRS's Privacy, Governmental Liaison and Disclosure unit or "PGLD" was "completing an Interim Guidance Memo, to cover delegation for IT delivery of results." *Id*. Elsewhere the "update" provided results on the "matching run" for the DHS "data file," and noted that "[b]ecause of the unique circumstances of this data exchange, it is unclear if the Commissioner has been briefed by Chief Counsel or IT on the results." *Id*. The email also stated that the Commissioner's "approval will be required before any information is transmitted back to DHS." *Id*. These indications in the records strongly suggest that the "Interim Guidance Memo" contained factual information, as well as a final delegation, that was highly relevant to Defendants' challenged sharing with ICE and should therefore be included in the administrative record. The record indicates that this memo concerned the authority for the transfer of data to ICE, and it was relevant to communications to senior IRS leadership about that transfer. In conferral, Defendants confirmed the existence of this memo and did not claim that it is privileged.

The Court also ordered Defendants to file a motion to exclude materials from the

---

[1] In conferral, Defendants confirmed the existence of this document. Defendants disagreed that the document was "highly relevant" to the challenged conduct and stated it contained information subject to the deliberative process privilege. The June 25, 2025, email referencing the June 23rd document also contains some information withheld under that privilege, but also contains substantial non-privileged information that, in its author's characterization, is similar to the June 23rd communication.

3

administrative record based on assertions of privileges other than the deliberative process privilege following conferral with Plaintiffs. Plaintiffs conditionally consented to Defendants' redactions under claim of privilege based on information provided by counsel before the administrative record was disclosed. Plaintiffs continue to confer with Defendants regarding these non-deliberative process privilege assertions to narrow any disputes and, if possible, avoid motions practice.

Dated: November 3, 2025

        Respectfully submitted,

        */s/ Daniel A. McGrath*
        Daniel A. McGrath (D.C. Bar No. 1531723)
        Johanna M. Hickman (D.C. Bar No. 981770)
        Madeline H. Gitomer (D.C. Bar No 1023447)
        Robin Thurston (D.C. Bar No. 1531399)
        Steven Y. Bressler (D.C. Bar No. 482492)
        Democracy Forward Foundation
        P.O. Box 34553
        Washington, DC 20043
        (202) 812-7824
        dmcgrath@democracyforward.org
        hhickman@democracyforward.org
        mgitomer@democracyforward.org
        rthurston@democracyforward.org
        sbressler@democracyforward.org

        *Counsel for Plaintiffs*

# Exhibit 1

# DHS Update

| | |
|---|---|
| **From:** | De Mello Andrew A <andrew.arthur.demello@irscounsel.treas.gov> |
| **To:** | "Pilkerton, Christopher" <christopher.pilkerton@treasury.gov>, "Badgley, Tyler" <tyler.badgley@treasury.gov>, "McMaster, Hunter" <george.mcmaster@treasury.gov> |
| **Date:** | Wed, 25 Jun 2025 16:39:40 -0400 |

Hunter,

This is an update. This email follows up my written communication to you on Monday evening in which I provided you a list of deficiencies contained in the data file which was not processible by the IRS pursuant to the MOU signed by the Department of Homeland Security and the Department of Treasury on April 7, 2025. Specifically I highlighted the following deficiencies in my Monday evening communication:

1. A written request from the head of Federal agency when submitting each request. This required item of information is set forth in Section 6(B) of the MOU, which states that each request must be made consistent with IRC § 6103(i)(2)(A). This section of the IRC requires a written request from the head of a Federal agency. The information submitted by ICE did not contain any written request;
2. The specific reason or reasons why disclosure is, or may be, relevant to the nontax criminal investigation or proceeding. This item of information is set forth in Section 6(C)(5) of the MOU and is derived from section 6103(i)(2)(B)(iv) of the IRC. The information submitted by ICE did not contain this item;
3. Identity information for the ICE officers and employees personally and directly engaged in the nontax criminal investigation that may result in criminal charges against the individual under the specifically designated Federal criminal statute ICE has identified. This item of information is set forth in section 6(C)(6) of the MOU and is derived from section 6103(i)(2)(A) of the IRC. The information submitted by ICE did not contain this item; and
4. Attestation for each request – stating the requested address information will only be used by officers and employees of ICE solely for the preparation for judicial or administrative proceedings, or investigation that may lead to such proceedings, pertaining to the enforcement of 8 U.S.C Section 1253(a)(1), other specifically designated Federal criminal statute, or any subsequent criminal proceedings. This item of information is set forth in section 6(D) of the MOU and is derived from section 6103(i)(2)(A) of the IRC. The information submitted by ICE did not contain this item.

We recently reviewed the new data transmission sent to the Internal Revenue Service (IRS) from the United States Immigration and Customs Enforcement (ICE) on June 24, 2025 which contained approximately 7.3 million records. Unfortunately, the above listed deficiencies remained and unfortunately, the IRS is again unable to process this data file in accordance with the MOU.



**DPP**

Thanks,
Andrew

# Exhibit 2

| | |
|---|---|
| From: | Walker John J [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=E88A1FC6BE7C419E9B4D00BA936332A0-[PII] |
| Sent: | 7/29/2025 5:52:53 PM |
| To: | [PII]@irs.gov]; Romo Dottie A [dottie.a.romo@irs.gov] |
| CC: | [PII]@irs.gov]; [PII]@irs.gov]; [PII]@irs.gov]; [PII]@irs.gov]; [PII]@irs.gov]; [PII]@irs.gov] |
| Subject: | IRS-DHS ICE Update (Information only) |

Dottie [PII]

I wanted to update you on the status of the DHS data sharing. PGLD continues to meet daily and work with Counsel and IT on this effort. One area that is not completely clear is who is updating the Commissioner on the status. Additionally, his approval will be required before any information is transmitted back to DHS.

Let me know if you have any questions.

### IRS-DHS ICE Update as of 7/29/2025

- 6/27/2025: DHS submitted the data file ~1.3M records.
- IT completed the matching run; result is:
    - 3.7% match,
    - 93.7% non-match,
    - 2.6% reject; data provided did not meet MOU specifications.
- Quality Control:
    - RAAS advised a sample of 406 records would provide a 95% confidence level, 203 match and 203 non-matches.
    - IT will provide the output file and an address file for PGLD to review for QC.
    - RAAS confirmed this sample and methodology will achieve 95 % confidence level.
- PGLD is completing an Interim Guidance Memo, to cover delegation for IT delivery of results.
- IT, Counsel, and PGLD have been coordinating IDR responses for the TIGTA audit for this matter. ***PGLD is lead stakeholder.***
- Because the unique circumstances of this data exchange, it is unclear if the Commissioner has been briefed by Chief Counsel or IT on these results.
- No data will be exchanged until CIR approval.

**Jack Walker**
**IRS Chief Privacy Officer (acting)**
Cell: [PII]
Office: [PII]