UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR TAXPAYER RIGHTS et al., <br><br> *Plaintiffs*, <br><br> v. <br><br><br><br> INTERNAL REVENUE SERVICE et al., <br><br> *Defendants*. | Civil Action No. 25-cv-457-CKK |

**PLAINTIFFS' SUPPLEMENT IN SUPPORT OF THEIR MOTION FOR PRELIMINARY RELIEF CONCERNING THE ADMINISTRATIVE RECORD**

The Administrative Record (the "Record") filed by Defendants on October 29, 2025, confirms facts discussed in Plaintiffs' briefing in support of their motion for preliminary relief, as discussed below. It also contains additional facts indicating that Defendants' sharing of Internal Revenue Service ("IRS") taxpayer information with Immigration and Customs Enforcement ("ICE") failed to comply with the requirements of the Internal Revenue Code, specifically 26 U.S.C. § 6103 (i)(2), because IRS did not require that ICE provide the "address of the taxpayer with respect to whom the requested return information relates," and because the IRS was aware that ICE was not conducting bona fide, individualized criminal investigations related to its requests. *See* 26 U.S.C. § 6103 (i)(2)(B)(i).

*First*, the Record shows that, in responding to ICE's mass data requests in automated

fashion, IRS did *not* require that ICE provide an individual's address or identify the relevant taxable period before providing return information, as is required by § 6103 (i)(2). The Record includes the DHS-ICE Data Exchange Overview, ECF No. 48-4 at TD_0000125, which sets forth the process by which requests are processed by the IRS. The IRS, after receiving a file from DHS, conducts a "pre-processing task," the purpose of which is to ensure the request contains the "requested business rules" and to ensure the request includes the required data elements. *Id*. The record reflects that this process is automated, using validation rules to determine whether requirements are met. For example, it requires that the "LName" field and the "FNn]ame" field "[m]ust not be empty," because they are "[r]equired for processing." *Id.* The same is true for the "TAXABLE PERIOD" field. *Id.* However, for the "EARM_ADDRESS" field, the IRS requires only that the field "[m]ust not be empty and must contain zip code." *Id.* It includes no requirement that a full or valid address be included. Other documents in the record also show that a full address is not required for processing. *See*, *e.g.*, ECF No. 48-4 at TD_0000137 (EARM-ADDRESS field: "Required, reject when zip code is not present").[1]

However, § 6103 (i)(2)(B)(i) expressly requires that a requesting law enforcement agency provide the "address of the taxpayer" for whom it seeks return information. A zip code, which can stretch for thousands of square miles and include more than 100,000 residents,[2] is not an "address,"

---

[1] The Record also reflects that DHS identified their lack of an address as an issue in early June, noting that "there may not always be an address available due to not being located in any other database that this data has been enriched with." ECF No. 48-3 at TD_0000084. Though in response, at that time, the IRS did not disclose the data, apparently at least in part because the information was not included, the Record does not reflect where a determination was made that a zip code could suffice as an address.

[2] *See* USPS, *Postal Facts* (last visited Nov. 3, 2025), https://perma.cc/VX6V-R2FU; Matt Stiles, *The ZIP Code Turns 50 Today; Here Are 9 That Stand Out*, NPR (July 1, 2013),

2

but a part of an address. And nowhere in the Exchange Overview document, or elsewhere in the Record, does it appear that the IRS has conducted an individual or manual review to ensure this statutory requirement is met for each request. The Record therefore does not show that the IRS followed the law; instead it supports a conclusion that the IRS violated 26 U.S.C. § 6103 (i)(2) when processing these requests.

*Second*, the Record demonstrates that the IRS is aware that ICE is not requesting this information for use in bona fide criminal investigations, as required by statute. Section 6103 (i)(2)(A) requires that return information be provided "solely" for use officers or employees "personally and directly engaged" in an investigation or proceeding "pertaining to the enforcement of a specifically designated Federal criminal statute."[3] Contemporaneous communications between ICE and the IRS show that ICE initially sought wide swaths of IRS information "to assist with orders of removal," a civil, not criminal matter. *See* ECF No. 48-3 at TD_0000003-05.[4] On June 5, 2025, ICE then sought last-known addresses for 7.3 million taxpayers—what it deemed the "full alien population"—a request that did not include any reference to criminal investigations. ECF No. 48-3 at TD_0000086. After IRS prompting concerning the statutory requirements for such requests, ICE stated that for each of the 7.3. million requests, ICE was conducting an

---

https://perma.cc/A25F-88HN; Census Bureau, *8701 - Census Bureau Search* (last visited Nov. 3, 2025), https://perma.cc/2TD3-CZAX; World Population Review, *Zip Codes by Population* (last visited Nov. 3, 2025), https://perma.cc/YM8X-XRFP.

[3] Note § 6103 (i)(2)(A)(i) cross references § 6103 (i)(1)(A)(i) to define eligible criminal proceedings.

[4] In February, ICE sought 700,000 individuals' addresses and other information to carry out "the President's executive Orders on immigration enforcement." ECF No. 48-3 at TD_0000004. Then-Acting IRS Commissioner Douglas O'Donnell responded that IRS could not provide this information "to assist with orders of removal" because, in the legal analysis he relayed, such information must be "for the purposes of a criminal investigation or proceeding," as well as meeting other requirements. ECF No. 48-3 at TD_0000005.

investigation likely to lead to criminal proceedings under "8 USC 1325 – Improper entry by alien." ECF No. 48-3 at TD_0000084.[5] ICE also identified one individual purportedly personally and directly engaged in each of those 7.3 million investigations—ICE Acting Assistant Director Jesse Williams. *Id.* After the first purported basis for investigation failed to pass muster, presumably because of obvious logical and factual inconsistencies, less than 20 days later, ICE simply changed its story and indicated that the same ICE employee was personally and directly investigating 1.3 million individuals under a different criminal statute.[6] *See* ECF No. 48-3 at TD_000112; *compare* TD-000084 *with* TD_000100-0202. This Record evidence supports a likely conclusion that the purported criminal investigation that ICE relies upon to support these information requests is a pretext, and that the true purpose of these requests is—as the White House has said, Pls.' Mem. ISO Mot. for 705 Stay, ECF No. 30-1 at 17—to support mass deportation efforts, demonstrating both the illegality of the information transfers and the risk of imminent misuse of the data by ICE. These facts also show that the IRS had actual knowledge that ICE was changing its story to

---

[5] Section 1325 criminalizes certain actions in connection with an alien's entry into the country—for example, evading inspection by immigration officers or making a false or misleading representation—which are highly fact-specific and individual to each alien, and to which an alien's last-known address has no apparent relevance. *See* 8 U.S.C. § 1325(a). Indeed, the "specific reason(s) why disclosure is or may be relevant" ICE provided, as described in this June 6 email, appear neither to relate to the circumstances of each alien's entry into the United States nor explain how an alien's last-known address would be relevant to such an inquiry. *See* ECF No. 48-3 at TD_000084.

[6] The criminal statute ICE cited as the basis for this iteration of the request—8 U.S.C. § 1253(a)(1), which prohibits failing to depart the U.S. within 90 days of a removal order—is the same one Defendants relied upon in their briefing before this Court. The purported relevance of the requested information (each taxpayer's address) is "to verify presence within the United States of America," ECF No. 48-3 at TD_000097-99, although ICE does not appear to have narrowly tailored its requests to seek only the addresses reported by taxpayers in years following their removal orders, ECF No. 48-3 at TD_000100-02 (listing January 2022 – present as the relevant "taxable period" for each request, although the dates of these taxpayers' removal orders presumably varied).

overcome IRS officials' concerns about the illegality of the data request, rebutting the IRS's arguments in this case that it reasonably relied upon the representations of a sister agency.

*Finally*, the Record further confirms that Defendants changed their policy with respect to disclosures under 6103(i)(2) in a way that was arbitrary and capricious. As Plaintiffs' prior briefing explained, longstanding IRS policy had been that requests for addresses only were invalid. *See* Pls.' Mem. ISO Mot. for 705 Stay ECF No. 30-1 at 33.  Further, the prior policy was to engage in a "detailed, individualized process by which requests under 6103(i)(2) were carried out with numerous safeguards." Pls.' Reply, ECF No. 34 at 18. The Record shows that the ICE requests at issue in this case were handled very differently from this past practice. These requests sought addresses only, yet IRS undertook no individualized review for any of the requests before responding. In first requesting this information, ICE did not include information on which ICE employee was directly and personally engaged in each investigation. ECF No. 48-3 at TD_0000005, TD_0000086. Later, ICE identified Acting Director Williams as the official "personally and directly engaged" in the investigations referenced in the request. ECF No. 48-3 at TD_000112. However, there is no evidence in the Record that he communicated with the IRS regarding each request, or indeed any of the requests, as the IRS's prior policy required. *See* Pls.' Reply, ECF No. 34 at 19.  The Record shows that the IRS neither acknowledged nor justified these changes to its policy. Further, the Record shows the IRS did not consider issues related to the impact on participation and trust in the tax system, and it did not consider reliance interests in changing its disclosure policy. *See generally* ECF No. 48-3 at TD_0000001-116; ECF No. 48-4 at TD_0000117-47; Pls.' Mem. ISO Mot. for 705 Stay at 28-34. These facts—and the failure of the Record to provide any justification for the abrupt change in policy—support Plaintiffs' likelihood of success on the merits of their "arbitrary and capricious" claim.

Dated: November 3, 2025

Respectfully submitted,

/s/ Daniel A. McGrath
Daniel A. McGrath (D.C. Bar No. 1531723)
Johanna M. Hickman (D.C. Bar No. 981770)
Madeline H. Gitomer (D.C. Bar No 1023447)
Robin Thurston (D.C. Bar No. 1531399)
Steven Y. Bressler (D.C. Bar No. 482492)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 812-7824
dmcgrath@democracyforward.org
hhickman@democracyforward.org
mgitomer@democracyforward.org
rthurston@democracyforward.org
sbressler@democracyforward.org

*Counsel for Plaintiffs*