IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR TAXPAYER RIGHTS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>INTERNAL REVENUE SERVICE, *et al.*,<br><br>*Defendants*. | Civil Action No. 1:25-cv-457-CKK |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING (ECF NO. 50-1)**

Defendants filed a comprehensive and complete Administrative Record ("AR") that shows strict compliance with the requirements of 26 U.S.C. § 6103(i)(2). Defendants conducted careful and reasoned reviews of Immigration and Customs Enforcement's ("ICE") requests, performed qualitative and quantitative reviews of ICE datasets prior to any data processing, developed and implemented a process to match valid requests against Internal Revenue Service ("IRS") data, and quality controlled that process. Indeed, Plaintiffs filed only minor objections to the AR—objecting to the exclusion of two documents, *see* ECF No. 49—which Defendants resolved in the spirit of transparency and cooperation by providing those documents even though they were properly excluded from the AR. *See* ECF No. 51.

Against this backdrop, Plaintiffs seek to introduce—through a motion for leave to file a supplemental brief (ECF No. 50-1)—mischaracterizations of the AR that they describe as "factual matters of significance." Defendants oppose Plaintiffs' motion. There is no need for supplemental briefing in this case. The Court already has six briefs—three on the preliminary injunction motion,

1

and three on the motion to dismiss. The Court did not request additional briefing and can review the complete AR itself. Moreover, Plaintiffs' proposed supplement relies on erroneous factual conclusions and inferences that should not be considered and are inconsistent with the entirety of the AR, which demonstrates the IRS's strict compliance with the requirements of Section 6103. To the extent the Court would permit leave for Plaintiffs to file their proposed supplement, to prevent further rounds of briefing, Defendants respond as follows:

*First*, Plaintiffs argue that the AR shows that the "IRS did not require [] ICE [to] provide an individual's address or identify the relevant taxable period before providing return information, as is required by § 6103(i)(2)." ECF No. 50-1 at 2. But that conclusion is incorrect. The AR confirms that ICE both provided an individual's address (not just a zip code) and identified the relevant taxable period in conjunction with its June 27, 2025, request (June 27 Request). *See* 26 U.S.C. § 6103(i)(2)(B)(i), (ii) (requiring "the name and address of the taxpayer with respect to whom the requested return information relates" and "the taxable period or periods to which such return information relates").

Specifically, with respect to the addresses, Mr. McMaster, the Director of Policy & Planning at Treasury, explained to ICE in early June 2025 that Section "6103 is straightforward," that it requires an address, and that the IRS would reject requests without that information. *See* TD_83 (June 4-7, 2025 McMaster Email Chain).[1] Moreover, the AR shows that ICE has full address information (not just zip codes) and committed to supplying that information to the IRS. *See* TD_53-54, 100, 1070-71, 1159, 1166 (reflecting the systems of records from which ICE

---

[1] Citations to the AR in this Opposition reflect the Bates stamping, "TD_". The AR is located at ECF Nos. 48-3 through 48-15, with an Index at ECF No. 48-2. The time in the top email in document numbers 1, 2, 5, 10, 11, 14, 21, 24, 25, 27-31, 34-36, 38, and 40 is reflected in Coordinated Universal Time ("UTC"), which is four to five hours ahead of Eastern Standard Time.

2

retrieved its information and the contents of those systems). In fact, one of the IRS's matching processes (the "Name & Address-Based Processing") depended on the ICE-supplied full address "[b]e[ing] an exact match" to an IRS address before the IRS returned any information. *See* TD_126 (DHS-ICE Data Exchange Overview); TD_139 (Flow chart showing that the IRS "[p]arse[d] ADDRESS in to [sic] Address Line, City, State, ZIP").[2] Finally, and most importantly, the AR repeatedly references ICE's datafile with information about approximately 1.28 million individuals and includes an excerpt from that datafile. *See, e.g.*, TD_97-102 (excerpts from datafile); TD_108 (July 1, 2025 Pandya email), TD_131 (July 29, 2025 Walker email). Although redacted as personally identifiable information, the excerpt includes complete addresses, not simply zip codes. *Id*. Defendants will provide an unredacted copy of all or part of the excerpt (or any other portion) of the ICE datafile for in camera review at the Court's request.

Plaintiffs ignore these portions of the AR, instead selectively relying on a snippet from the "DHS-ICE Data Exchange Overview" document that notes that the IRS's first processing step rejected individual requests when the "EARM_ADDRESS" field was empty or without a zip code. TD_125-128. This leads Plaintiffs to the incorrect conclusion, based only on speculation and unsupported in the context of the entire AR, that it is possible that ICE supplied, and the IRS processed, requests with only zip codes and not full addresses. ECF No. 50-1 at 1-3. But that is untrue, as confirmed by the citations to the AR in the paragraph above.

With respect to the "taxable period," the AR shows that the ICE datafile accompanying the June 27 Request included a field titled "Taxable Period" and that this field contained tax periods. *See* AR at TD_100-102 (stating, "Jan_2022_PRESENT'), TD_125 (DHS-ICE Data Exchange

---

[2] The IRS used this process when ICE did not supply an SSN or TIN. *See* TD_125-26 (DHS-ICE Data Exchange Overview).

Overview explaining that "Taxable Period" field must not be empty). Lest there be any remaining concerns, the IRS's processes relied on the "tax periods window" supplied by ICE (for the "SSN-Based Lookup") and information that "f[e]ll within the [ICE] requested tax periods" (for the "Name & Address-Based Processing") before the IRS provided a last known address to ICE. *See* TD_125-26. Plaintiffs offer no citations for their contrary position, nor could they because ICE provided taxable periods.

Additionally, Plaintiffs' assertion that "the IRS [failed to] conduct[] an individual or manual review to ensure" compliance with Section 6103, ECF No. 50-1 at 2, does not account for the entire quality control procedure. This procedure was informed by guidance from the IRS's Research, Applied Analytics and Statistics Division ("RAAS") and required the IRS to review a "random sample[]" to test the accuracy of its process. *See* TD_129-130 (DHS-ICE Data Exchange Draft QC); TD_131-33 (Walker Emails regarding QC process). Plaintiffs' assertion also fails because the AR shows that the IRS actually did an "individual . . . review" of all of the ICE-supplied information, albeit with the help of a computer. *See* TD_125-128 (DHS-ICE Data Exchange Overview). Any argument that Section 6103(i)(2) was violated because the IRS used computers to assist it has no basis in the statute, and Plaintiffs have pointed to no law suggesting that the IRS cannot use new technologies in support of its tasks. There is simply no basis to conclude that ICE failed to supply the IRS with full addresses or failed to identify a tax period.

*Second*, Plaintiffs misread the AR to suggest that the "IRS [wa]s aware that ICE is not requesting this information for use in bona fide criminal investigations" and is instead using the requests for information as "pretext . . . to support mass deportation efforts." ECF No. 50-1 at 3. They specifically point to ICE's initial request for assistance with removal matters and subsequent requests for information regarding approximately 7 million individuals, none of which resulted in

4

the IRS providing any information. ECF No. 50-1 at 3-4; *see also* TD_1-2 (February 2025 Email Chain); TD_83-89 (June 4-7, 2025 McMaster Email Chain); TD_93 (June 25, 2025 De Mello Email). These events show the opposite of what Plaintiffs proffer. That is, they show that, after some back and forth, ICE came to understand the requirements of Section 6103(i)(2) and provided the IRS with information for those individuals for whom ICE properly met the requirements. Even then, Defendants' process ensured that each individual's removal order was more than 90 days old, as the criminal statute ICE identified requires, and Defendants provided ICE with address information regarding only 3.7% of the individuals because only those requests both complied with Section 6103(i)(2) and matched IRS records. *See* TD_131 (July 29, 2025 Walker email showing 3.7% return rate), TD_125 (DHS-ICE Data Exchange Overview explaining that the final order "[m]ust be valid date and over 90 days" old). Far from evidencing a pretextual conspiracy, the AR shows that Defendants intended to, and in fact did, "follow the law" by meticulously complying with Section 6103(i)(2). *See* TD_1 (Chief of Staff to Secretary of Treasury affirming that the IRS will "follow the law" with respect to ICE's requests.).[3]

Relatedly, Plaintiffs make much of the fact that ICE identified one person who was "personally and directly engaged in the criminal proceeding or criminal investigation." TD_112-113 (June 27, 2025 Long Letter). But the IRS properly relied on its sister agency's attestation that

---

[3] In a footnote, ECF No. 50-1 at n.6, Plaintiffs suggest that ICE did not seek address information for years relevant to the criminal statute it cited, and they argue that is further evidence of the IRS's purported awareness of pretext. But this misunderstands the information ICE requested and the IRS, when appropriate, supplied. Specifically, ICE requested the "last known address." *See* TD_36 (MOU). This is a term of art, defined by regulation, that means the "address that appears on the taxpayer's most recently filed and properly processed Federal tax return," unless the IRS "is [later] given clear and concise notification of a different address." 26 C.F.R. § 301.6212-2. The latter of which can include address updates filed with the U.S. Postal Service. *Id*. ICE essentially requested current address information from the IRS, which comports with their stated purpose to verify presence within the United States and an investigation under 8 U.S.C. § 1253(a)(1).

5

the person was personally involved in the investigation, and the IRS fulfilled the requirements of Section 6103(i)(2) given that (1) the IRS and ICE memorialized their understanding of Section 6103(i)(2) and their respective responsibilities in an MOU that correctly construes the law, (2) ICE attested that it will comply with Section 6103(i)(2)'s requirements, and (3) ICE provided the IRS with the information required by Section 6103(i)(2). *See* TD_34-48 (MOU); TD_52-55 (Implementation Agreement); TD_97-102 (Excerpt of ICE Datafile); TD_112-113 (June 27, 2025 Long Letter).

*Third*, Plaintiffs argue the AR shows that "Defendants changed their policy with respect to disclosures under [Section] 6103(i)(2) in a way that was arbitrary and capricious." ECF No. 50-1 at 5. Defendants have already briefed this issue in their opposition to Plaintiffs' motion for a preliminary injunction. *See* ECF No. 31 at 7, 28-30 ("As Judge Friedrich noted in *Centro*, it is possible to read the Manual and Reference Guide as simply reinforcing the requirement that a request for return information under Section 6103(i)(2) must include the taxpayer's address. 2025 WL 1380420, at *6. But even if the Manual and Reference Guide are read to support the limitation Plaintiffs propose, the Court's interpretation must yield to the statutory text, which imposes no such limitation."). Nothing in Plaintiffs' proposed supplement changes the analysis.

Further, as detailed in Defendants' opposition brief (ECF No. 31), about three months before the IRS disclosed return information to ICE, the *Centro* court confirmed that Defendants simply did not have "the discretion to turn down a lawful request for information" pursuant to Section 6103(i)(2), regardless of any internal IRS policies to the contrary. *See* TD_70-71 (Memorandum Opinion & Order, *Centro de Trabajadores Unidos v. Scott Bessent*, No. 25-cv-677-DLF, ECF No. 67, May 12, 2025). The court also observed that plaintiffs' reading of Section 6103(i)(2) "does not comport with the text of the statute" and "the Court cannot read

6

additional restrictions into the statute's clear text." TD_66. Judge Friedrich's opinion is properly in the AR because it was directly considered by the IRS in its evaluation of ICE requests and its ultimate release of certain information. See TD_56-71.[4]

Finally, regarding Plaintiffs' insinuation that there were no safeguards to verify that the data provided was accurate because there was no "individualized review," ECF No. 50-1 at 5, Plaintiffs are again incorrect for the reasons stated above. See infra at 4.

As evidenced by the AR, Defendants complied with the law—both 26 U.S.C. § 6103(i)(2) and the Administrative Procedure Act—when the IRS released address information in response to ICE's June 27 Request. See, e.g., TD_3 (stating that the IRS would not provide information to ICE to assist with orders of removal); TD_97-102 (Excerpt from ICE datafile); TD_112-113 (Jun. 27, 2025 Letter from ICE to the IRS). Defendants similarly complied with the law when the IRS *did not* release address information in response to ICE's earlier, insufficient requests. See TD_83-89 (June 4-7, 2025 McMaster Email Chain) and TD_93 (June 25, 2025 De Mello Email). For the reasons set forth above and in Defendants' opposition to Plaintiffs' motion for preliminary injunction, the Court should deny Plaintiffs' motion for preliminary injunction.

Dated: November 10, 2025             Respectfully submitted,

                                      BRETT A. SHUMATE
                                      Assistant Attorney General

                                      ELIZABETH J. SHAPIRO
                                      Deputy Director, Federal Programs Branch

                                      *J. Stephen Tagert*
                                      J. Stephen Tagert
                                      Trial Attorney

---

[4] Further, Judge Friedrich's decision in *Centro* has been fully briefed in the D.C. Circuit, and oral argument was held on October 3, 2025, though a decision has not yet been issued. See Docket, *Centro de Trabajadores Unidos v. Bessent*, No. 25-5181.

>United States Department of Justice
>Civil Division, Federal Programs Branch
>1100 L ST. N.W.
>Washington, DC 20005
>Tel: (202) 305-5486
>stephen.tagert@usdoj.gov
>
>*Counsel for Defendants*