**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CENTER FOR TAXPAYER RIGHTS et al.,

*Plaintiffs*,

v.

Civil Action No. 25-cv-457-CKK

INTERNAL REVENUE SERVICE et al.,

*Defendants*.

**MOTION FOR INDICATIVE RULING THAT THE COURT WOULD
SUPPLEMENT THE RECORD AND GRANT LIMITED DISCOVERY**

Plaintiffs respectfully move to lift the stay in this matter for the purpose of issuing an indicative ruling that, if the Court had jurisdiction, it would supplement the basis for its order granting preliminary relief and would grant limited expedited discovery. Fed. R. Civ. P. 62.1.

Two days ago, on February 11, 2026, public reporting revealed that defendant-appellant Internal Revenue Service ("IRS") "improperly shared confidential tax information of thousands of individuals with immigration enforcement officials."[1]  Defendant Department of the Treasury has known this since at least January 23, 2026, when it notified the Department of Homeland Security ("DHS"). Dkt. No. 66-1, at ¶ 18. Defendants did not notify Plaintiffs or this Court of its breach of

---

[1] Jacob Bogage et al., *IRS improperly disclosed confidential immigrant tax data to DHS*, Wash. Post (Feb. 11, 2026), https://www.washingtonpost.com/business/2026/02/11/immigrants-irs-dhs-tax-data (Exhibit 2).

taxpayer data privacy until two days ago, after it was reported by *The Washington Post*, when Defendants filed a notice ("Notice") and accompanying "Supplemental Declaration" to "modify certain prior statements made by Defendants in this case." Declaration of Dottie Romo, Dkt. No. 66-1, at ¶ 3 ("Romo Decl."). Defendants have thus now admitted that they unlawfully shared confidential taxpayer information and attempted to explain how this illegal disclosure occurred. *See id.* at ¶¶ 11-17.

As this Court is aware, on November 21, 2025, it entered a stay under 5 U.S.C. § 705 and a preliminary injunction, Dkt. Nos. 53, 54, which Defendants appealed. Dkt. Nos. 59, 60. That appeal is pending in the D.C. Circuit, though the parties have not yet filed their briefs. Among other things, Defendants' new declaration acknowledges misstatements and omissions in representations Defendants previously made to this Court concerning information in Defendants' exclusive possession. These developments make clear that the Court does not yet have all relevant facts, that facts further supporting this Court's ruling are not accurately reflected in the record on appeal, and that this Court did not have the opportunity to consider them in ruling on Plaintiffs' motion for preliminary relief. Plaintiffs therefore request an indicative ruling that the Court would supplement the record on appeal with Defendants' new admissions; authorize limited discovery into the information disclosed (and questions raised) by Defendants' Notice and public reporting; and consider further supplementing the ample basis for its order granting preliminary relief.[2]

---

[2] Undersigned counsel conferred with counsel for Defendants, who indicated that they take no position on the request in Plaintiffs' motion to supplement the record on appeal with the Romo Declaration and oppose the request in Plaintiffs' motion to authorize limited discovery.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs challenge changes to the IRS's policies and practices concerning the sharing of taxpayers' sensitive information. *See* Dkt. 20 (operative complaint). In July and August 2025, the IRS processed a mass request from ICE for the last-known addresses of 1.28 million taxpayers and disclosed address information for approximately 47,000 individuals. Mem. Op., Dkt. No. 54 at 10. Plaintiffs promptly sought preliminary relief in the form of a stay under 5 U.S.C. § 705 or, in the alternative, a preliminary injunction. Dkt. No. 30.

This Court granted Plaintiffs' motion for emergency relief. Dkt. Nos. 53, 54. Defendants appealed (Dkt. Nos. 59, 60), and the IRS's opening brief is currently due February 19, 2026. Plaintiffs' response brief is due one month later, and the court of appeals intends to hear oral argument in May. *See* Order, *Ctr. For Taxpayer Rts., et al. v. IRS et al.*, No. 26-5006 (D.C. Cir. Jan. 16, 2026).

Two days ago, *The Washington Post* reported that Defendant IRS "improperly shared confidential tax information of thousands of individuals with immigration enforcement officials." Ex. 2. These "erroneous" disclosures appear to have been made in conjunction with the disclosure, by the IRS and to DHS, of the addresses of 47,000 individuals—an act central to this litigation. *Id*; *see also* Dkt. No. 54, at 10. The report noted that the IRS's privacy department was "sidelined" and "its IT department took over implementing the data sharing." Ex. 2.

Following the *Washington Post* report, Defendant IRS filed a Supplemental Declaration acknowledging that it improperly disclosed information in sharing data with Immigration and Customs Enforcement ("ICE"). Defendants' filing states that on January 23, 2025, "Treasury notified DHS" of this issue. It does not state when the Department of the Treasury ("Treasury") first learned of these improper disclosures, but Defendants' filing occurred at least 19 days after Treasury notified DHS. *See* Romo Decl. ¶18. It is still not clear whether DHS and ICE have

3

properly disposed of the data. *See id.* ¶19.

Defendants' notice in this case comes one day after the government's filing in a related matter in another district suggesting that ICE has only recently taken action to ensure IRS data shared with the agency was adequately protected. In *Community Economic Development Center of Southeast Massachusetts v. Bessent*, the government filed a declaration in which ICE represented that on January 23, 2026, DHS granted access to IRS data shared with the agency in August to, only now, impose adequate safeguards in compliance with 26 U.S.C. § 6103(p). No. 1:25-cv-12822 (D. Mass. Feb. 10, 2026); Suppl. Decl. of Richard S. Fitzgerald at ¶ 5, Dkt. No. 78-1 (Exhibit 3).

As discussed below, the information disclosed in (and questions raised by) the Romo Declaration bears directly on the facts at the heart of this case, and the conclusions made by the Court.

## LEGAL STANDARDS

When a party makes a motion "that the court lacks authority to grant because of an appeal that has been docketed and is pending," the court may "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1.

This Court has "broad discretion over the structure, timing, and scope of discovery." *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1208 (D.C. Cir. 2020). The Court may grant expedited discovery without a Rule 26(f) conference, and while Rule 26 does not prescribe a standard, courts in this District generally apply a reasonableness test *See Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 –98 (D.D.C. 2014). Reasonableness is a discretionary inquiry, to be considered "in light of all of the surrounding circumstances." *Id.* at 98 (internal citations and quotations omitted). Those circumstances include: "(1) whether a preliminary injunction is pending; (2) the breadth of the

4

discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* (internal citations and quotations omitted).

The D.C. Circuit has held that, in APA cases, "it may sometimes be appropriate to resort to extra-record information to enable judicial review to become effective." *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989). Among the circumstances that may counsel supplementing the record with such evidence are where "evidence arising after the agency action shows whether the decision was correct or not," and cases where "relief is at issue, especially at the preliminary injunction stage." *Id*. Discovery in an APA case may also be appropriate to "fill[] in gaps in the record to determine what the agency actually did." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1227 (D.C. Cir. 1993). This may particularly be the case where an agency has put forward "declarations taken <u>after</u> the alleged policies or decisions took effect." *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Lab.*, 349 F.R.D. 243, 249 (D.D.C. 2025) ("*AFL-CIO*").  And "a 'strong showing of … improper behavior' . . . may justify extra-record discovery." *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).

## ARGUMENT

### I.    Defendants' New Admissions Bear Directly on the Facts at the Heart of this Case and Further Support the Court's Ruling on Appeal

Defendants' declaration provides information directly relevant to core questions about the lawfulness and arbitrary and capricious nature of their adoption of the Address-Sharing Policy, and directly contradicts assurances Defendants made while litigating Plaintiffs' motion for emergency relief. This Court's 705 stay and preliminary injunction order is extremely well-supported by the prior record, but to promote judicial efficiency and ensure the court of appeals

has the benefit of relevant facts, this Court should have an opportunity to consider the Romo admissions, as well as admissions Defendants made before another court (discussed below), and how they further support the conclusion that the Address-Sharing Policy is unlawful.

The Court concluded that Defendants' actions were unlawful in part because they violated 6103(i)(2)(B)(i) by not "confirming whether the address ICE provided for [an] individual matched an address the IRS had in its system." Dkt. No. 54, at 56. The Court also concluded that the automated processes employed by the IRS reflected a significant and unexplained departure from prior policy, which "was rooted in individualized review, segmentation, and limited, last-resort disclosure," and was arbitrary and capricious *Id.* at 65. The Court reached these conclusions despite Defendants' unequivocal assertions that their processes did not risk unlawful disclosures. Defendants have now revealed that these processes not merely risked but *actually resulted in* unlawful disclosures, providing unequivocal factual support for the Court's conclusions. Even more fundamentally, the Court concluded that "the IRS's August 7 disclosure to ICE was likely unlawful." Dkt. 54, at 53. Defendants now concede that for at least a subset of the information, the disclosures were, in fact, unlawful.

Further, some of Defendants' statements in the record now appear inaccurate on their face. For example, Plaintiffs previously alerted the Court that the written description of the automated process the IRS used to process these requests appeared to "show that a full address" was not required by the IRS for processing, Dkt. No. 50-1 at 2, and Defendants forcefully denied this interpretation as "incorrect," "untrue," and "based only on speculation." Dkt. No. 52 at 2-3. They stated that the "AR confirms that ICE [] provided an individual's address" before the IRS shared taxpayer information and that "it is untrue" that the IRS provided taxpayer information without receiving "full addresses" from ICE. Dkt. No. 52 at 2- 3.

The new declaration makes clear that the IRS's statements were incorrect and that thousands of unlawful data transfers actually occurred. The IRS processed requests and disclosed information about thousands of taxpayers where ICE's request failed to include even a complete address, much less one that matched an address in IRS files. Romo Decl. ¶¶ 11-16. For example, the IRS shared data where ICE's request included in the "address" field only an apparent zip code, the name of a facility but no street address, or even "language indicating that the address was not complete, such as 'Failed to Provide,' 'Unknown Address,' or 'NA NA.'" *Id.* ¶¶13-14. Indeed, at the September 5, 2025, hearing, the Court asked Defendants about precisely this issue. Transcript, Dkt. No. 38 at 25 ("Did IRS conduct an independent review of the addresses that were provided by ICE on June 27th? For instance, did they audit the ICE-provided addresses to see whether they appeared to be, like, residential addresses as opposed to addresses associated with businesses or other organizations; do you know?"). Defendants responded that "For the names and addresses that ICE provided to IRS, IRS first determined to make sure that all of the information as required by the MOU was present," *id.* at 26, a representation that now appears to have been incorrect. The very mechanism by which IRS now acknowledges that it illegally shared information—responding to incoming requests where an address was not provided—is one that the agency *specifically* denied was possible as this Court was considering Plaintiffs' request for preliminary relief. *See* Dkt. No. 52.

Defendants also represented that "the MOU shows that IRS meticulously complied with the law by making sure that all of the requirements of the statute were followed and moreover that ICE was aware of all the statutory requirements before receiving the data." Dkt. No. 38 at 111. In a declaration filed this week in a related case in another district, ICE represented that on January 23, 2026, the day these improper disclosures were reported to DHS, "the [Homeland Security

Investigations] lead architect granted two individuals" access to the IRS data "for the purpose of allowing [Homeland Security Investigations] and [Enforcement and Removal Operations] to create an adequate system of safeguards for the data as required under I.R.C. § 6103(p)." Ex. 3 at ¶ 5. If adequate safeguards were only being "created" a few weeks ago, they were not in place as required prior to the IRS's data sharing with ICE.[3] Further, the MOU states that the "IRS will conduct periodic safeguard reviews of ICE to assess whether security and confidentiality of Federal tax returns and return information is maintained consistent with [certain] safeguarding protocols." MOU, Dkt. 30-6 at 8-9. Defendants represented that they had received assurances that such safeguards were in place. Transcript, Dkt. No. 38 at 76-77. When Plaintiffs argued that the IRS must have active, continued involvement with an agency it shares data with to ensure that it is guarded, *id*. at 54, Defendants pointed to the representations in the MOU as evidence, *id*. at 76-77, but they do not appear to have taken additional steps to ensure that IRS data was protected upon disclosure. Those steps were required by statute and the MOU, but the recent Fitzgerald Declaration in the District of Massachusetts underscores that the Address-Sharing Policy led to an abdication of the IRS's statutory responsibility to ensure the taxpayer data it shares is safeguarded. *See supra*.

As the court of appeals generally cannot consider new facts not before the district court, allowing supplementation of the record here would allow the Court to add to its bases for its order with the benefit of a complete record before appellate review. *See U. S. v. Peyton*, 745 F.3d 546, 557 (D.C. Cir. 2014) ("We are a court of review, not of first view"). *Cf. In re Sealed Case*, 552

---

[3] It also raises significant new questions about whether IRS data—including what is now known to be unlawfully shared data—was improperly shared or used within DHS, including in the five months before DHS apparently "created" what it considers adequate safeguards.

F.3d 841, 845 (D.C. Cir. 2009) ("[T]he Court of Appeals should not resolve in the first instance a factual dispute which had not been considered by the District Court." (cleaned up)). As discussed below, that includes not only the Romo Declaration (and Fitzgerald Declaration from Massachusetts) but additional information likely to exist. Defendants' admissions also raise significant questions and leaves gaps warranting limited, expedited discovery to uncover this new evidence and ensure a complete record.

## II.     Defendants' Admissions Raise New Questions Relevant to the Court's Ruling and to the Record on Appeal

Defendants now acknowledge that their mass data sharing policy led to the unlawful disclosure of thousands of taxpayers' information, even under their view of what the law permits. Romo Decl. ¶16. These revelations reveal both factual gaps and inaccurate information in what Defendants have provided to this Court, making discovery appropriate.

The Notice and public reporting raise additional questions concerning relevant issues. For example, (1) whether and to what extent Defendants' Policy actually sought to require ICE to provide full address information, (2) what mechanisms the agency did (or did not) have in place to ensure a purported complete address requirement was met, (3) the sufficiency of the IRS's automated quality check processes, (4) Defendants' engagement with DHS and ICE regarding ICE's provision of address information in requesting taxpayer information and safeguarding any information shared by Defendants, and (5)  whether or how Defendants considered the risk of this possibility in adopting the Data Sharing Policy.

The information provided in the new Romo Declaration itself also contains factual gaps. It does not state (1) when and how many individuals were actually affected by this unlawful disclosure, (2)  how the IRS learned of this unlawful disclosure, (3) whether the IRS has completed the electronic and manual subsequent review described in the Notice, (4) what the electronic and

manual review entailed, (5) who at the IRS conducted such review, (6) whether the IRS has investigated this incident or changed its policies in response to it, and (7) whether and to what extent the IRS Privacy Office was involved in the adoption of the Address Sharing Policy, the subsequent disclosure to ICE, and any review of the unlawful disclosure. Resolving these outstanding questions will shed light on the true contours of the Address Sharing Policy, including the extent to which it lacks meaningful safeguards and prioritizes disclosure over confidentiality.

Defendants' Notice also admitted they made, but failed to specifically identify, prior incorrect representations, nor did it identify any other incorrect factual information they placed in the record. Identifying those errors would further bolster the Court's determination that Defendants' policy violated 26 U.S.C. § 6103 and was arbitrary and capricious, and help ensure the court of appeals has an accurate and more complete record to consider.

III.    **The Court Should Indicate it Would Allow Limited Expedited Discovery to Facilitate Effective Judicial Review.**

Limited, expedited discovery is warranted here. While this Court's order of preliminary relief is well-justified on the extant record, the factual gaps and incorrect representations Defendants have introduced lead to an incomplete picture of the Address-Sharing Policy. This Court has recognized that in such a case, "further factual development is necessary 'to ascertain the contours of the precise policy at issue.'" Mem. Op., Dkt. No. 54 at 64 (quoting *Venetian Casino Resort, LLC v. EEOC.*, 409 F.3d 359, 367 (D.C. Cir. 2005)). Here, where the IRS was implementing a novel policy for sharing of protected information, where the government submitted declarations taking action and has made inaccurate material representations to the Court, limited discovery to obtain the truth of what occurred is plainly reasonable. The Court in *AFLCIO* ordered discovery in a similar circumstance where the agency's actual policy and practice in its treatment

of protected, confidential information raised serious factual questions that Defendants sought to address only through post-hoc declarations. *AFL-CIO v. FEC*, 349 F.R.D. at 249 (D.D.C. 2023).

Further, given Defendants' forceful prior representations that the AR demonstrated the IRS *did* require full address information from ICE before the IRS would share information under the Address-Sharing Policy, and the scant detail provided by Defendants regarding their means of discovering that these representations were incorrect, discovery is warranted here to "fill[] in gaps in the record to determine what the agency actually did," and what more Plaintiffs and the Court do not yet know. *See Marshall Cnty. Health Care Auth.*, 988 F.2d at 1227. Similarly, Defendants had represented that the quality control procedure was sufficient, and that the IRS "actually did an 'individual . . . review of all the ICE-suppled information, albeit with the help of a computer." Dkt. No. 52 at 4. Defendants relied on this assertion in concluding that there was "simply no basis to conclude that ICE failed to supply the IRS with full addresses." *Id*. at 4. Accordingly, limited discovery to consider if further extra record "evidence arising after the agency action shows whether the decision was correct or not" is warranted here. *Esch*, 876 F.2d at 991; s*ee, e.g.*, Defs' Opp'n Mem. Dkt. No. 31 at 27 ("Where the required information [from ICE] was lacking as to any specific person, the IRS did not fulfill ICE's request.") (citing Walker Decl.); *id*. at 31 (Defendants' actions "fall[] squarely within the 'zone of reasonableness.'"); *id*. at 26 ("The IRS Has Complied Fully with Section 6103.").

Plaintiffs propose to take, in the first instance, expedited limited discovery in the form of 10 interrogatories and 6 requests for production. Plaintiffs would only seek additional discovery, such as deposition testimony, if necessary. Plaintiffs would, following discovery, seek to provide the Court with any additional evidence that may be relevant to its consideration of whether there are additional bases or findings to support its existing November 21, 2025, order. The information

responsive to Plaintiffs' proposed requests may identify (1) additional bases for concluding that the Address-Sharing Policy's adoption was arbitrary and capricious, including because of the failure of the policy to incorporate reasonable safeguards on automated processes, (2) additional bases for concluding that the Address-Sharing Policy is contrary to law because it necessarily leads to violations of Section 6103 requirements, including that the policy provided for the provision of address information by the IRS without first receiving address information as required by Section 6103, as well as how and whether the Policy impacts Defendants' ability to comply with its statutory obligation that "return information shall be confidential," and (3) further information regarding the accuracy of representations made to the Court in the course of this litigation, including about the reasonableness of the Policy's adoption.

Plaintiffs' proposed discovery requests are attached as Exhibit 1.

## CONCLUSION

Plaintiffs respectfully request that this Court issue an indicative ruling indicating that, if the Court had jurisdiction, it would supplement the record on appeal with the Romo Declaration and grant Plaintiffs limited, expedited discovery in order to consider additional factual information and complete the record relevant to the bases for its November 21, 2025, order that is currently on appeal. Alternatively, Plaintiffs request that this Court state that Plaintiffs' instant motion raises a substantial issue meriting the further consideration, such that the D.C. Circuit may take an appropriate action under Federal Rule of Appellate Procedure 12.1(b).

Dated: February 13, 2025

Respectfully submitted,

*/s/ Madeline H. Gitomer*
Daniel A. McGrath (D.C. Bar No. 1531723)
Johanna M. Hickman (D.C. Bar No. 981770)
Madeline H. Gitomer (D.C. Bar No 1023447)
Simon C. Brewer (D.C. Bar. No. 90042403)
Steven Y. Bressler (D.C. Bar No. 482492)
Robin Thurston (D.C. Bar No. 1531399)
Skye L. Perryman (D.C. Bar No. 984573)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 812-7824
dmcgrath@democracyforward.org
hhickman@democracyforward.org
mgitomer@democracyforward.org
sbrewer@democracyforward.org
sbressler@democracyforward.org
rthurston@democracyforward.org

*Counsel for Plaintiffs*